**FILED**

FEB 02 1999

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

| | |
|---|---|
| INTERNATIONAL HERITAGE, INCORPORATED | CASE NO. 98-02674-5-ATS<br>TAX I.D. NO. 87-0421191 |
| INTERNATIONAL HERITAGE, INC. | CASE NO. 98-02675-5-ATS<br>TAX I.D. NO. 56-1921093 |
| DEBTORS | CHAPTER 7 |

OBJECTION TO APPLICATION OF TRUSTEE TO ENTER INTO STIPULATION
AND CONSENT TO FINAL JUDGMENT AND PERMANENT INJUNCTION

NOW COMES Chittenden Bank ("Chittenden"), by and through counsel, and objects to the Application of Trustee to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction filed by Holmes P. Harden ("Trustee"), trustee in bankruptcy for the above-referenced Debtor, to show unto the Court the following:

1. Chittenden entered into an agreement with the above-referenced debtor International Heritage, Inc. ("IHI"), before IHI filed its bankruptcy petition under which Chittenden processed IHI's credit card transactions. Chittenden terminated its processing several months before IHI filed its petition.[1]

2. The Securities and Exchange Commission ("SEC") filed a lawsuit against the Debtors, Stanley H. Van Etten, Claude W. Savage, and Larry G. Smith, described in the Trustee's Application (the "Civil Action"), seeking to enjoin IHI and the other above-referenced

---

[1] Generally, a credit card processor serves as an intermediary between the merchant, in this instance IHI, and the issuer of the credit card, such as VISA. In essence, the Bank would arrange for IHI to receive payment in the amount of credit card slips submitted by IHI to the Bank, and the Bank would charge back to IHI certain types of claims.

RALEIGH/017980-002/175446v.01

debtor International Heritage, Incorporated (collectively referred to as "Debtors") from alleged violations of the securities laws and to require the Debtors to disgorge funds paid to the Debtors by "independent retail sales representatives" ("IRSR's") and by purchasers of convertible notes from the Debtors.

3. Some of the IRSR's paid the Debtors by use of credit cards, and many of them are now making claims for refunds or reimbursements from the issuers of the credit cards, more commonly referred to as "chargebacks." Chittenden typically must reimburse the card issuers for these chargebacks. Under Chittenden's agreement with IHI, IHI is obligated to reimburse Chittenden in the amount of all chargebacks.

4. Long before the filing of the petitions, Chittenden established a reserve account for IHI's obligation to reimburse Chittenden for chargebacks. As of the date of the filing of the petition, there was approximately $93,000 in the reserve account. The Trustee has demanded that Chittenden turn over the reserve account and Chittenden has declined to do so, on the basis that it has a security interest in the account, it has rights of recoupment and offset against the account, and other reasons.

5. Chittenden has processed chargebacks in excess of the amount of the reserve account, and Chittenden's claim against IHI for reimbursement may, therefore, well exceed the amount of the reserve account.

6. If the Trustee is successful in his claims against Chittenden, any claims of Chittenden against IHI will be unsecured claims.

7. The Trustee's Application is detrimental to the claims of unsecured creditors in the IHI case and fails to comply with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules for the following reasons, as more fully discussed below:

a. The Application requests the Court to authorize a settlement of the Civil Action, but fails to state the basis for the settlement and to otherwise comply with the requirements of Bankruptcy Rule 9019;

b. The Application proposes to pay certain unsecured creditors in preference to other unsecured creditors, and in particular, to pay unsecured creditors in preference to Chittenden, in violation of the priority scheme of 11 U.S.C. §507;

c. The Application provides for the entry of a judgment by the United States District Court for the Northern District of Georgia (the "District Court") which requires the payment to the Trustee of his full statutory fee under 11 U.S.C. §326 ($173,250.00 on a distribution of $5,000,000.00), thereby impermissibly depriving this Court of its duty to fix such a fee under 11 U.S.C. §326 and impermissibly depriving parties in interest of their right to object to such fees;

d. The proposed judgment by the District Court grants to that Court exclusive jurisdiction to determine the SEC's claims for penalties against the Debtors, impermissibly bifurcating the administration of this bankruptcy case, impermissibly interfering with this Court's exclusive authority to allow claims against the Debtors, and improperly requiring parties in interest who may wish to be heard on that issue to appear in Georgia rather than in this Court;

e. The proposed judgment to be entered by the District Court does not appear to satisfy the precondition of the bond for payment, and it therefore is unclear that the bond proceeds will be available even if the judgment is entered; and

f. The Trustee has failed to provide an evaluation of the claims of Stanley Van Etten to the bond proceeds, so that parties in interest cannot evaluate whether the bond proceeds will in fact be available for distribution to creditors.

### Failure to Comply with Bankruptcy Rule 9019

8. The District Court in the Civil Action required the Debtors to post a $5,000,000.00 surety bond which, by its terms, obligates the surety to pay $5,000,000.00 to the SEC if the SEC "obtains a judgment for damages and/or an order granting disgorgement or any other monetary relief against" the Debtors, and that judgment is not otherwise paid. (A copy of the bond is attached as Exhibit B to the Application).

9. According to IHI, that bond was supplied by the posting of cash security of $3,500,000 by Stanley Van Etten, an officer, director, and stockholder of IHI. IHI further explains that Mr. Van Etten claims a lien on those funds or ownership of them:

> Mr. Stanley Van Etten provided a $5.0 million bond in the action brought by the SEC. Mr. Van Etten was given a secured promissory note by the company on May 18, 1998 for $5.0 million. A total of $1.5 million was released to the company by the court and Mr. Van Etten, and the remaining $3.5 million was used to secure a conventional $5.0 million bond. Mr. Van Etten allowed the $1.5 million to be used by the company for operations and converted options to stock for the total of $1.5 million. A total of $3.5 million is still held as security for the bond. The Debtor has a right to the funds, to the extent they are not used to satisfy any claim of the SEC. Mr. Van Etten claims a lien on the funds at a minimum and may even claim outright ownership of the funds if they are released by the SEC.

International Heritage, Inc., Statement of Financial Affairs, Attachment to Question 14.

10. While the District Court in the Civil Action determined that the Debtors' business activities involved the sale of securities and therefore entered a preliminary injunction against the Debtors' continuing in certain activities, there has been no determination by any court of the Debtors' liability to disgorge any funds or to pay any damages.

11. The Application proposes that the Trustee consent, on the Debtors' behalf, to a judgment in favor of the SEC in the amount of $6,533,179.00, plus prejudgment interest. This is presumably all the relief to which the SEC would be entitled if it prevailed at trial. According to the Application, the SEC has filed proofs of claim in the amount of $6,450,000.00, so it appears the Trustee intends to consent to a judgment in an amount larger than that thus far claimed by the SEC. See Application, ¶3.

12. A settlement of litigation by the Trustee must be approved by this Court under Bankruptcy Rule 9019(a). The Court may approve such a compromise only if it considers the probability of success on the merits, difficulties of collection, the complexity of litigation and the expense, inconvenience and delay associated with litigation.

13. The Trustee has offered no information with respect to these factors, but has offered only the conclusory statement that his proposal is in the best interest of the Debtors' estates because it "will dispose of significant litigation against the Debtors without undue expense, will result in the reduction of a substantial portion of a principal unsecured claim in each of these cases, and will fund payment of administrative expense and other claims in these bankruptcies."[2] Application, ¶9.

---

[2] It is believed that the SEC has filed identical proofs of claim in each bankruptcy case, and that these claims are duplicative. The settlement is therefore really of only one unsecured claim.

14. The approval of a settlement based on mere boilerplate approval "phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law" is impermissible. Protective Committee of Independent Stockholders of TMT Trailer Fairy, Inc. v. Anderson, 390 U.S. 414, 434 (1968).

15. The bankruptcy court approving a compromise has an independent duty to inform itself of all the relevant factors and to make specific findings with respect to those factors. LaSalle National Bank v. Holland, 841 F.2d 159, 163 (7th Cir. 1987).

16. In light of the Debtors' bankruptcies, the conditions for payment under the bond, *i.e.*, a judgment or order against the Debtors, may never be satisfied. In that event, the deposit paid by the Debtors for the issuance of the bonds,[3] would be repaid to the Trustee. Those funds would then be distributed to creditors of the estate in accord with the priority scheme of the Bankruptcy Code, and, as more fully discussed below, might well result in a larger distribution to unsecured creditors than the Trustee's proposal.

17. The Trustee's Application does not discuss the merits of the SEC's case or the Debtors' defenses or the likelihood that the SEC would ever have the ability to draw under the bond.

### Violation of the Priority Scheme

18. The Application provides for the entry of a judgment by the District Court requiring the payment of $5,000,000.00 to the SEC and then to the Trustee, and further requiring its distribution in the following priority:

---

[3] As quoted above, the Debtors refer to a deposit of $3,500,000.00. The bond itself references a deposit of $3,650,000.00.

  a. <u>First</u>: Payment to the Chapter 7 Trustee of an amount "equal to the full statutory commission permitted pursuant to 11 U.S.C. §326 without reduction.";

  b. <u>Second</u>: Payment of administrative claims allowed by this Court in these bankruptcy cases;

  c. <u>Third</u>: Payment of outstanding fees of the receiver appointed in the Civil Action;

  d. <u>Fourth</u>: Pro rata payment of allowed claims by IRSR's who made payments to the Debtors but never received a product or commission;

  e. <u>Fifth</u>: Allowed claims of purchasers of the Debtors' convertible notes during 1997;

  f. <u>Sixth</u>: Allowed claims of any remaining IRSR's; and

  g. <u>Seventh</u>: "Allowed claims of other creditors . . . according to the priorities set forth in the United States Bankruptcy Code."

19. The proposed judgment further provides that none of the proceeds will be used to pay any claims of Stanley H. Van Etten, Claud W. Savage, or Larry G. Smith, or of any entity controlled by them, or of any other officer or director of the Debtors.

20. Claims of the IRSR's, the receiver[4], and the purchasers of convertible notes are simply unsecured claims, which under the priorities of 11 U.S.C. §507 must be paid <u>pro rata</u> with other unsecured creditors.

---

[4] The Memorandum Opinion and Order issued by the District Court on April 3, 1998, authorizes the Receiver to transfer the sum of $120,000.00 from the Debtors to his trust account to be held for payment of "the professional fees and expenses incurred by the receiver, the receiver's legal counsel, and the receiver's financial consultant . . ." The Application fails to mention this deposit and fails to mention whether any amounts are owed to the receiver beyond this deposit. The schedules of IHI list the amount owed to the receiver as "unknown.".

21. It is impermissible as a matter of law to vary the priority scheme of the Bankruptcy Code in this fashion so that the claims of these particular unsecured creditors will be paid before the claims of other unsecured creditors.

22. The Trustee has made no showing that the distribution under this newfangled priority scheme, even if it is permissible, would be of greater benefit to the unsecured creditors or to the estate than litigating the merits of the SEC's claim or seeking the return of the deposit on the bond.

### Impermissible Allowance of the Trustee's Fees

23. As stated above, the proposed judgment to be entered by the District Court in the Civil Action requires, before any other payments from the bond proceeds, the full statutory payment to the Trustee under 11 U.S.C. §326, which is the amount of $173,250.00  Section 326(a) grants to the bankruptcy court the exclusive authority to allow or disallow compensation to its appointed trustee.

24. Section 326(a) permits a bankruptcy court to fix a trustee's compensation within the allowable amounts on a permissive basis, and does not require the trustee to be paid the full amount provided by the statute. The proposed judgment by the District Court impermissibly removes that discretion from this Court.

25. While there may be factors which would justify the award of the maximum compensation to the Trustee in exchange for his conceding the validity of the SEC's claims, the Trustee has made no showing in that regard.

### Impermissible Bifurcation of Case Administration

26. The proposed judgment by the District Court in the Civil Action authorizes the SEC to request the District Court to make the determination that the financial information

provided by either Debtor in its schedules was fraudulent, misleading, inaccurate or incomplete in any material respect. If the District Court so finds, the SEC may ask that Court to consider all available remedies including: (1) "ordering the debtors to pay funds or assets; (2) directing the forfeiture of any assets; or (3) sanctions for contempt of" the judgment. The judgment further provides that the only issues with respect to such a request shall be whether the financial information was false, and "the amount of civil penalty to be imposed." The judgment specifically provides that the Trustee may not challenge the validity of the judgment, contest the allegations of the SEC's underlying complaint, or "assert the payment of a civil penalty should not be ordered."

27. The judgment could result in the Debtors' paying over to the SEC any funds then remaining in the estates without regard to the status of the bankruptcy cases in this Court or the priority scheme of the Bankruptcy Code.

28. This proposed procedure would require parties in interest who might wish to object to the amount of any civil penalty to do so in the District Court, which defeats the purpose of the centralized liquidation of a debtor in bankruptcy and which imposes a substantial and impermissible burden on parties in interest.

29. Penalties are commonly not allowable claims, and the Trustee offers no basis for permitting the SEC to recover a penalty in these cases.

30. Should the SEC successfully avail itself of the relief provided in this regard in the proposed judgment, it would divest the bankruptcy estates of any assets, thereby rendering meaningless the actions and activities which had been undertaken in these bankruptcy cases up to that time, such that parties in interest who had expended resources participating in the administration of these cases would have done so for naught.

31. The proposed judgment creates the possibility of an unseemly conflict between the District Court, in the event it orders the payment of penalties, and this Bankruptcy Court, which in the ordinary course of events in a Chapter 7 case would have entered various orders providing for the payment of monies of the estate or disposition of the estate's property.

### Unexplained Waiver of Rights of the Estate

32. The Trustee proposes to stipulate in the Civil Action that the surety bond is not an asset of the bankruptcy estate. The Trustee offers no support for that proposition, or perhaps more importantly, no support for the proposition that the apparent deposit of $3,650,000.00 delivered by the Debtors for the issuance of the bond is not property of the estate.

33. By necessary implication, the Trustee waives any right to require the surety to turn over the deposit under 11 U.S.C. §542 or other applicable law, all without explanation.

### Failure to Comply with Conditions of Bond

34. The bond specifically provides that it applies only to any judgment or order granting relief against both International Heritage, Inc., and International Heritage Incorporated.

35. The Trustee's proposed judgment to be entered by the District Court orders disgorgement only against International Heritage, Inc., and not against International Heritage Incorporated.

36. Accordingly, it appears that if the final judgment is entered and demand is made against the surety, the surety may refuse payment because the condition of the bond has not been satisfied.

### Failure to Provide Sufficient Information

37. As noted above, IHI has reported in its Statement of Affairs that Stanley Van Etten claims a lien on or ownership of the bond proceeds and/or the deposit.

38. The Trustee's Application fails to mention that controversy, and accordingly fails to analyze whether the proposed distribution of the proceeds will be delayed by Stanley Van Etten's claim, or whether it is possible that Mr. Van Etten may receive the proceeds without any creditors receiving any distribution.

WHEREFORE, the Trustee respectfully prays the Court to grant the following relief:

1. To deny the Trustee's Application;

2. To conduct a hearing on the matter; and

3. To grant such other and further relief as the Court deems just and appropriate.

This the 2nd day of February, 1999.

JAFFE, RAITT, HEUER & WEISS,
A Professional Corporation

By: *Louis P. Rochkind by KNK*
Louis P. Rochkind
MI State Bar Number P24121
Counsel to Chittenden Bank
One Woodward Avenue,, Suite 2400
Detroit, Michigan 48226
Telephone: (313) 961-8380
Facsimile: (313) 961-8358

POYNER & SPRUILL, L.L.P.

By: *Kathryn N. Koonce*
Kathryn N. Koonce
NC State Bar Number 19193
Local Counsel to Chittenden Bank
Post Office Box 10096
Raleigh, North Carolina 27605-0096
Telephone: (919) 783-6400
Facsimile: (919) 783-1075

## CERTIFICATE OF SERVICE

I, Kathryn N. Koonce of Poyner & Spruill, L.L.P., hereby certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 2nd day of February, 1999, I served a copy of the foregoing Objection to Application of Trustee to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction on:

>Holmes P. Harden, Esq.
>Chapter 7 Trustee
>Post Office Drawer 19764
>Raleigh, North Carolina 27619
>
>Marjorie K. Lynch, Esq.
>Bankruptcy Administrator
>Post Office Box 3758
>Wilson, North Carolina 27895-3758

by depositing the same in the United States mail, first class, postage prepaid.

I certify under penalty of perjury that the foregoing is true and correct.

This the 2nd day of February, 1999.

>POYNER & SPRUILL, L.L.P.
>
>By: *Kathryn Koonce*
>Kathryn N. Koonce
>NC State Bar Number 19193
>Local Counsel to Chittenden Bank
>Post Office Box 10096
>Raleigh, North Carolina 27605-0096
>Telephone: (919) 783-6400