FILED
WILSON

FEB 12 1999

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

PEGGY B. DEANS, CLERK
U. S. BANKRUPTCY COURT
EASTERN DISTRICT OF N. C.

| | | |
|---|---|---|
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO: 98-02675-5-ATS |
| | ) | |
| Debtor | ) | CHAPTER 7 |

ADDENDUM TO
AMENDED OBJECTION TO APPLICATION OF TRUSTEE
TO ENTER INTO STIPULATION AND CONSENT TO
FINAL JUDGMENT OF PERMANENT INJUNCTION
AND REQUEST FOR HEARING BY ACSTAR INSURANCE COMPANY

NOW COMES Acstar Insurance Company, by and through its undersigned counsel, and files this Addendum to Amended Objection to Application of Trustee to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction and Request for Hearing filed on February 10, 1999.

This the 11th day of February, 1999.

Paul A. Fanning
N.C. State Bar I.D. No.:025477
For the firm of
Ward and Smith, P.A.
120 West Fire Tower Road
Post Office Box 8088
Greenville, North Carolina 27835-8088
Telephone: (252) 355-3030
Facsimile: (252) 756-3689
Attorneys for Acstar Insurance Company

CERTIFICATE OF SERVICE

The undersigned, of 120 West Fire Tower Road, Post Office Box 8088, Greenville, North Carolina 27835-8088, certifies:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

*This document was erroneously filed in the Wilson division and accounts for the delay between the date the document is file stamped and the date it is entered on the docket. This is a Raleigh case and future filings should be in the Raleigh Office.*

That on the date set forth below I served copies of the foregoing ADDENDUM on the following on the attached mailing matrix by first class mail at their last known addresses.

I certify under penalty of perjury that the following is true and correct.

This the 10th day of February, 1999.

_____
Paul A. Fanning

9901038/0001
GVLMAIN\197671.1

**ACSTAR INSURANCE COMPANY**
233 MAIN STREET • P.O. BOX 2350
NEW BRITAIN, CT 06050-2350
(203) 224-2000

**United Coastal Insurance Company**
233 Main Street • P.O. Box 2350
New Britain, Connecticut 06050-2350
(203) 224-2000

# INDEMNITY AGREEMENT

This Agreement is made and entered into by the undersigned Indemnitor (Indemnitors) in favor of ACSTAR Insurance Company and United Coastal Insurance Company, 233 Main Street, New Britain, CT 06050-2350 collectively (Surety) for the purpose of inducing Surety to furnish bonds and/or insurance policies.

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond and/or insurance policies may have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the Indemnitors, in whose bonds and/or insurance policies the Indemnitors do hereby affirm to have a substantial material and beneficial interest, and as a condition precedent to the execution of any and all such bonds and/or insurance policies, the Surety requires execution of this Indemnity Agreement.

WHEREAS, the Indemnitors have or may have a substantial, material and beneficial interest in the obtaining of said bonds and/or insurance policies on behalf of various related companies, partnerships, entities, and/or individuals, it is agreed that this Agreement shall apply to any bonds executed and/or insurance policies issued on behalf of any individual, subsidiary, affiliated partnership, joint venture or corporation of the Indemnitors, now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled, or related as fully as if the names and signatures of such subsidiary or affiliates appeared herein as Indemnitors.

NOW, THEREFORE, in consideration of the foregoing premises, and of the execution or continuance of such bonds and/or insurance policies, and for other good and valuable considerations, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally agree with the Surety as follows:

1) The Indemnitors will pay, when due, all premiums for each of such bonds in accordance with the Surety's rates in effect on the date each of such bonds become effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the bonds or of all liability by reason thereof. The Indemnitors will pay, when due, all premiums and all deductibles for such insurance policies issued by Surety.

2) The Indemnitors will (a) perform all the conditions of each said bond or obligation, and any and all alterations, modifications, renewals, continuations, and extensions thereof, and (b) indemnify and save the Surety harmless from and against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason or in consequence of the execution of such bond or bonds and any renewal, continuation or successor thereof, including but not limited to, (i) sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, or (ii) expenses paid or incurred (A) in enforcing the terms hereof, (B) in procuring or attempting to procure release from liability, or (C) in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid. In the event of payments by the Surety, the Indemnitors agree to accept the voucher of the Surety or other evidence of such payments as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefor to the Surety.

3) If the Surety shall set up a reserve to cover any claim, liability, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such bond or bonds.

4) Any money, letter of credit, or property which shall have been, or shall hereafter be, pledged as collateral security on any bond or bonds shall be available, in the discretion of the Surety, as collateral security on all bonds coming within the scope of this instrument or for any other indebtedness of the Indemnitors to the Surety.

5) The Surety, in its sole discretion, is authorized but not required, a) to consent to any change in the contract or the contract documents including the plans and specifications; b) to make or guarantee advances or loans for the purposes of executing the contract without any obligation to see to the application thereof, it being understood that the amount of all such advances or loans shall be conclusively presumed to be a loss hereunder for which the Indemnitors are liable; and c) in the event of any breach, delay or default asserted by the obligee in any said bonds, or in the performance of the contract, or a breach of this Agreement or of any bond or bonds connected therewith, or the failure to diligently prosecute the work under any contract, or to pay for labor and materials used in the prosecution of the contract, or in the event work has ceased or been suspended on any contract or contracts covered by any said bonds, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion thereof, and to take any other action which the Surety may deem appropriate. The Indemnitors hereby release and discharge the Surety from any and all liability for all its actions and omissions.

6) The Indemnitors hereby transfer, assign, pledge and convey to the Surety a security interest in 1) all equipment, tools and material in which the Indemnitor, have any interest, whether on site or elsewhere or on order; 2) all sums due or to become due to Indemnitors or any of them in connection with any contract; and 3) all subcontracts let by Indemnitors in connection with any contract. The security interests granted herein are effective in the case of each contract as of the date of the contract. Indemnitors hereby agree to execute any form of financing statement or other agreement or writing which Surety, in its sole discretion, deems necessary or advisable to perfect the security interests granted herein, and further authorize Surety at its discretion and at any time to file or serve this instrument, or a true copy hereof, or any other instrument executed pursuant hereto as a financing statement or other notice under the Uniform Commercial Code or any similar law, and Indemnitors authorize Surety to complete this instrument in any manner required for such use, and to prepare an attached schedule describing items of security covered hereunder. The Indemnitors hereby appoint Surety as Attorney-In-Fact for each of them to endorse and to deposit or negotiate checks, drafts, and all similar instruments payable to Indemnitors, with the right, but not the obligation to exercise all of the rights of the Indemnitors assigned, transferred and set over to the Surety in this Agreement and in the name of the Indemnitors to make, execute and deliver any and all additional assignments, documents as deemed necessary and proper by the Surety to give full force and effect to this paragraph (6). The Indemnitors agree that all equipment, tools and material and all subcontracts are dedicated to the performance of the contract to which they pertain and that such equipment, tools and material and subcontracts shall be subject to a trust in favor of the contract owner and Surety and that they be used to that end.

7) The Surety shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Surety or the principal upon any such bond shall be settled or defended and the Surety's decision shall be final and binding upon the Indemnitors.

8) If any of the bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, Indemnitors covenant and agree that all payments due or received for or on account of said contract shall be held in trust for Surety for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood that all monies due and to become due under any contract or contracts covered by the bonds shall be held in trust, whether such monies are in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said bonds.

9) The Surety may, without incurring any liability, decline to execute any bond and if the Surety executes a bid or proposal bond it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the bid or proposal bond is given and such declination shall not diminish or alter the liability of the Indemnitors that may arise by reason of having executed the bid or proposal bond.

10) The Indemnitors hereby waive notice of the execution of any such bonds or of any act, fact or information coming to the knowledge or notice of the Surety concerning or affecting its rights or liabilities under any such bonds or rights or liabilities of the Indemnitors hereunder, notice of all such being hereby expressly waived.

11) If the Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such bond or bonds, this instrument shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give to it or them a direct right of action against the Indemnitors to enforce this instrument and, in that event, the word "Surety", wherever used herein, shall be deemed to include such company or companies, as their respective interest may appear.

12) The Indemnitors hereby waive all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state.

13) In the event any claim or demand is made by the Surety against Indemnitors, or any one or more of them, by reason of the execution of a bond or bonds, the Surety is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and the Indemnitors hereby expressly waive the right to be discharged and released by reason of the release of any one or more of the Indemnitors and hereby consent to any settlement or compromise that may hereafter be made. Separate suits may be brought hereunder as causes of action accrue and the bringing of suit or the recovery of judgment upon any cause of action shall not bar the bringing of other suits upon other causes of action whether theretofore or thereafter arising.

14) In the event any Indemnitor fails to execute this Agreement or in the event the execution hereof by any Indemnitor be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability of any other Indemnitor executing the same, but each and every party so executing shall be and remain fully bound and liable.

15) This Agreement may be terminated by any Indemnitor upon twenty days written notice received by the Surety but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the bonds and/or insurance policies that may have been theretofore executed.

16) This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed by the Surety and the Indemnitors to form a part hereof.

17) The Indemnitors agree to notify the Surety immediately upon their receiving any notice or knowledge that their liability insurance has been or will be cancelled or non-renewed, or that such coverage is or will be reduced.

18) At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payment of accounts.

19) The word Indemnitor or pronouns referring to said word, whether singular or plural, are to be construed as referring to each of the undersigned Indemnitors, individually and collectively, though the Indemnitor be one or more individuals, partnerships, associations, or corporations.

IN TESTIMONY WHEREOF the Indemnitors intending to be legally bound hereby have hereunto set their hands and affixed their seals this _____ day of _____, 19 _____.

Witness or Attest

All individual and corporate signatures must be acknowledged.

Name of Individual (Type):                                                Address
Signature _____          _____
SS # _____          _____

Name of Individual (Type):
Signature _____          _____
SS # _____          _____

Name of Individual (Type):                            Address
Signature _____
SS # _____

Name of Individual (Type):
Signature _____
SS # _____

✗ Name of Company (Type): International Heritage, Inc.
Signature By _(signature)_          2626 Glenwood Ave., Ste 200
Name _John D Brothers_         Raleigh, NC 27608
Title _Chief Operating Officer_

✗ Name of Company (Type): International Heritage Incorporated
Signature By _(signature)_          2626 Glenwood Ave., Ste 200
Name _John D Brothers_         Raleigh, NC 27608
Title _Chief Operating Officer_

## INDIVIDUAL(S) ACKNOWLEDGEMENT

STATE OF _____ )
                                     ) ss:
COUNTY OF _____ )

On this _____ day of _____, 19 ____, before me personally came _____, to me known and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that he/she/they executed same.

_____

STATE OF _____ )
                                     ) ss:
COUNTY OF _____ )

On this _____ day of _____, 19 ____, before me personally came _____, to me known and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that he/she/they executed same.

_____

STATE OF _____ )
                                     ) ss:
COUNTY OF _____ )

On this _____ day of _____, 19 ____, before me personally came _____, to me known and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that he/she/they executed same.

## PARTNER(S) ACKNOWLEDGMENT

STATE OF _____ )
                                ) ss:
COUNTY OF _____ )

On this _____ day of _____, 19____, before me personally came
_____, to me known,
and stated that he/she/they is (are) partner(s) in the firm of _____
_____ and acknowledge that he/she/they
executed the foregoing instrument as the act of the said firm.

_____

## CORPORATE ACKNOWLEDGMENT(S)

STATE OF NORTH CAROLINA )
                        ) ss:
COUNTY OF WAKE          )

On this 8TH day of JUNE, 1998, before me personally came JOHN D. BROTHERS, to me known, who, being by me duly sworn, did depose and say that he resides in RALEIGH, WAKE CO., NORTH CAROLINA that he is the CHIEF OPERATING OFFICER of the International Heritage, Inc. the corporation which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____

STATE OF NORTH CAROLINA )
                        ) ss:
COUNTY OF WAKE          )

On this 8TH day of JUNE, 1998, before me personally came JOHN D. BROTHERS, to me known, who, being by me duly sworn, did depose and say that he resides in RALEIGH, WAKE CO., NORTH CAROLINA that he is the CHIEF OPERATING OFFICER of the International Heritage, Incorporated the corporation which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____

STATE OF _____ )
                                ) ss:
COUNTY OF _____ )

On this _____ day of _____, 19____, before me personally came
_____, to me known,
who, being by me duly sworn, did depose and say that he resides in _____
that he is the _____ of the _____,
the corporation which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

0111 (2/95)