**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

*F I L E D*

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.
SEP - 9 1999

| | |
|---|---|
| *In re* ) | **CHAPTER 7** |
| ) | |
| ***INTERNATIONAL HERITAGE*** ) | **CASE NUMBER** |
| ***INCORPORATED,*** ) | **98-02674-5-ATS** |
| ) | |
| **and** ) | |
| ) | |
| ***INTERNATIONAL HERITAGE*** ) | **CASE NUMBER** |
| ***INC.,*** ) | **98-02675-5-ATS** |
| ) | |
| *Debtors.* ) | |

**MEMORANDUM OF THE**
**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
**IN OPPOSITION**
**TO THE APPLICATION OF TRUSTEE**
**FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT**

TO:    THE HONORABLE A. THOMAS SMALL
       CHIEF UNITED STATES BANKRUPTCY JUDGE

The **United States Securities and Exchange Commission** ("**Commission**") files this memorandum in opposition to the Application of Trustee for Authority to Enter into Settlement Agreement ("**Motion to Settle**"). The Commission appears in this case as a creditor and party in interest[1] and in support of its objection, the Commission respectfully states as follows:

---

1    The Commission is the agency of the United States of America responsible, *inter alia*, for regulating and enforcing compliance with federal securities laws. The Commission filed a proof of claim in these bankruptcy cases on January 5, 1999, asserting an unliquidated claim for disgorgement in an amount not less than $6.45 million, plus civil penalties and prejudgment interest arising out of a civil enforcement action filed by the Commission in the United States District Court for the Northern District of Georgia, *SEC v. International Heritage, Inc. et al.*, Civil Action No. 1-98-CV-0803-RWS ("the **District Court case**"). In its Complaint in the District Court case, the Commission alleged that IHI had operated as a massive pyramid scheme in violation of the federal securities laws, and had fraudulently raised more than $150 million from investors. On May 3, 1998, after a four-day evidentiary hearing, the District Court entered an Order imposing a preliminary injunction and finding that IHI had violated the

1

# I.  THE PROPOSED SETTLEMENT

The Trustee seeks authority of the Bankruptcy Court to settle an adversary proceeding instituted by the Trustee against the Debtor's officers' and directors' liability insurance carrier, Executive Risk Specialty Insurance Company ("**ERSIC**"), and a civil action commenced prepetition in the United States District Court for the Eastern District of North Carolina, Case No. 5:98-CV-542-F(3), by ERSIC against International Heritage, Inc. (the "**Debtor**" or "**IHI**"), and its officers and directors, Stanley H. Van Etten ("**Van Etten**"), Claude W. Savage ("**Savage**") and Larry G. Smith ("**Smith**") (together, "**the Officers and Directors**" or "**the Nondebtors**"). The coverage afforded under the Debtor's Directors and Officers Liability Insurance Policy ("**D&O Policy**") is at issue in both actions (the "**Coverage Actions**").  The Trustee seeks to enter into a settlement agreement ("**Settlement Agreement**") with Van Etten, Savage, Smith and ERSIC, pursuant to which ERSIC would pay $1,787,500 to IHI's estate and $275,000 to Van Etten under the D&O Policy in satisfaction of all claims against the D&O Policy.[2]  The payment is conditioned on this Court dismissing with prejudice all "civil actions"[3] pending against IHI and/or the Officers and Directors or enjoining any such actions that have not been dismissed, and staying a regulatory action brought by the Montana State Auditor against IHI, Van Etten and others.

---

registration and antifraud provisions of the federal securities laws.  A settlement proposal concerning the Commission's case against IHI and International Heritage, Incorporated (a Nevada corporation) has been approved by this Court and is presently being considered by the Commission.

[2]  According to the Trustee's Motion to Settle, the D&O Policy has limits of liability of $5 million maximum aggregate for all claims during any single policy year. Before the institution of the Coverage Actions, ERSIC advanced $500,000 to the Debtor and its Officers and Directors, as reimbursement of defense costs incurred in defending certain civil actions. Pursuant to the Settlement Agreement, the payments to the IHI estate and Van Etten, along with the $500,000 advance will constitute the entirety of ERSIC's obligation under the D&O Policy.

[3]  The term "civil action" is not defined in the Settlement Agreement, but six civil actions brought by private litigants, the Commission's District Court case, and an action brought by the Montana State Auditor's Office are listed in the Settlement Agreement as actions in which IHI and/or IHI's Officers and Directors are involved and which will be affected by the Settlement Agreement.

The Commission has no objection to the paying of money by ERSIC to the bankruptcy estate.[4] **The Commission, however, opposes dismissing or enjoining actions brought by private litigants, who are not parties to the litigation being settled in this Bankruptcy Court ("Nonparties"), against the Officers and Directors, who are not the Debtors in these bankruptcy cases**. Such action with respect to Nonparties' direct claims and causes of action that are not property of the estate[5] is extraordinary relief that effects a discharge or release of nondebtor third party liability in contravention of Sections 727 and 524(e) of the Bankruptcy Code ("**Code**"), 11 U.S.C. §§ 101, *et seq.*, as amended, and is unwarranted in this Chapter 7 liquidation case. Additionally, the Commission opposes a dismissal, injunction or stay of any regulatory action commenced by a governmental unit. Such action with respect to a regulatory agency runs afoul of Section 362(b)(4) of the Code, 11 U.S.C. § 362(b)(4).

The legal issues are ones in which the Commission has a strong interest. If the Bankruptcy Court can enjoin actions between third parties in connection with the settlement of an adversary proceeding within the bankruptcy, nondebtor third parties, such as officers and directors of a debtor corporation, could be released permanently from claims over which a bankruptcy court ordinarily lacks jurisdiction or the power to act, including potential securities fraud claims by public investors. The circumstances of this case are particularly compelling in light of the past egregious misconduct of many of the nondebtor defendants. Additionally, as a governmental entity, the Commission has a strong interest in ensuring that actions brought by a regulatory agency in furtherance of its police and regulatory power are allowed to proceed in accordance with the provisions of the Code.

---

[4]     A settlement proposal with Van Etten and IHI of the District Court case that sets an amount of disgorgement against Van Etten based upon Van Etten's financial resources is under consideration by the Commission. The Commission staff has disclosed to the Commission the terms of the Settlement Agreement that would result in Van Etten receiving money from ERSIC. The Commission staff does not know what effect, if any, the Settlement Agreement will have on the Commission's consideration of the proposed settlement of the District Court case.

[5]     A direct claim of a private litigant, in which the litigant seeks to redress the litigant's distinct and personal injury suffered as a result of an officer's or director's wrongdoing, may be contrasted with derivative claims brought on behalf of a corporation when a corporation has suffered an injury from actionable wrongs committed by its officers and directors. *See, e.g., In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 554-56 (D. Del. 1999). Derivative claims are property of the estate, and courts generally have recognized the power of the court in a bankruptcy proceeding to act pursuant to Section 105(a) of the Code, 11 U.S.C. § 105(a), to release derivative claims in the context of a settlement. *See, e.g., In re Energy Coop., Inc.*, 886 F.2d 921,930 (7th Cir. 1989); *In re All American of Ashburn, Inc.*, 805

**3**

## II.  ARGUMENT

### A.  The Code Does Not Authorize The Use Of Provisions That Effect A Discharge Of Third Party Nondebtor Liability In A Chapter 7 Liquidation Case.

#### 1.  Section 524(e) prohibits the discharge of third party nondebtor liability in this Chapter 7 liquidation case.

The proposed Settlement Agreement, which would result in a dismissal or injunction of Nonparty claims, effects a discharge of nondebtor third party liabilities, including the liabilities of IHI's Officers and Directors, by dismissing and permanently enjoining any Nonparty action against them. The Settlement Agreement, if approved, would relieve Van Etten and the other Officers and Directors, who are alleged to have defrauded more than one hundred thousand investors out of at least $150,000,000.00, from liability to public investors who are parties to the civil actions, and, in fact, would result in the payment of money to the individual the Commission alleges orchestrated the fraud. This result would be an absurd injustice, flying in the face of public policy and making a mockery of the principal purpose of bankruptcy law, which is to afford the honest but unfortunate debtor a fresh start.

Congress, in enacting the Code, never contemplated such relief.  Section 524(e) addresses the scope of a bankruptcy discharge in plain language, stating, in relevant part, that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).  The Code provides only for the discharge of the debtor, 11 U.S.C. §§ 524(e) and 727, and contemplates that a discharge only affects the debts of those submitting to its burdens. *See, e.g., In re Arrowmill Development Corp.*, 211 B.R. 497, 503 (Bankr. D. N. J. 1997). *Accord, F.T.L., Inc. v. Crestar Bank (In re F.T.L., Inc.)*, 152 B.R. 61, 63 (Bankr. E. D. Va. 1993) (absent compelling circumstances, individual must file his own bankruptcy petition to receive benefits of bankruptcy law).  The Officers and Directors, who would benefit from the settlement and the dismissal or enjoining of actions against them, are not debtors in this bankruptcy case and have not submitted their assets to the jurisdiction and scrutiny of this bankruptcy court.

The weight of case authority is consistent with the Commission's view that this type of provision runs afoul of the limitations on discharge set forth in Section 524(e) of the Code.  *See, e.g.,*

F.2d 1515, 1517 (11th Cir. 1986); *In re Texaco, Inc.*, 84 B.R. 893, 903-04 (Bankr. S. D. N. Y. 1988).

4

*In re Lowenschuss,* 67 F.3d 1394, 1401 (9th Cir. 1995), *cert. denied,* 116 S. Ct. 2497 (1996) ("Section 524 does not . . . provide for the release of third parties from liability"); *Zale Corp. v. Feld (In re Zale Corp.),* 62 F.3d 746, 760-61 (5th Cir. 1995) ("Section 524 prohibits the discharge of debts of nondebtors"); *First Fidelity Bank v. McAteer,* 985 F.2d 114, 117-18 (3d Cir. 1993) ("Section 524(e) specifically limits the effect of a discharge . . . This section assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from codebtors or other liable parties."); *Green v. Welsh,* 956 F.2d 30, 33 (2d Cir. 1992) ("the language of [Section 524(e)] reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit"); *In re Western Real Estate Fund, Inc.,* 922 F.2d 592, 602 (10th Cir. 1990), *modified sub nom., Abel v. West,* 932 F.2d 898 (10th Cir. 1991) (permanent injunction purporting to release nondebtors from liability improperly insulates nondebtors in violation of Section 524(e)).[6] *Contra Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.),* 880 F.2d 694, 702 (4th Cir. 1989), *cert. denied,* 493 U.S. 959 (1989) (Section 524(e) should not be applied literally in every case as a prohibition on the power of the bankruptcy court to issue a third party injunction).

The propriety of a bankruptcy court releasing, discharging or enjoining claims against third party nondebtors has received much attention by the courts and commentators in the context of Chapter 11 when a debtor seeks to confirm a plan that contains provisions that purport to release and discharge third party nondebtor liability. *See generally* Peter E. Meltzer, *Getting Out of Jail Free: Can the Bankruptcy Plan Process be Used to Release Nondebtor Parties?,* 71 Am. Bankr. L.J. 1 (1997). The Commission recognizes that the courts in cases too numerous to discuss have taken a variety of approaches in assessing the validity of Chapter 11 plan provisions purporting to release and discharge third party nondebtors. The Fourth Circuit, for example, has approved provisions releasing or discharging third party nondebtor in a Chapter 11 plan of reorganization, but only under exceptional circumstances, not present in the Debtor's case. In *Menard v. Mabey (In re A.. H. Robins),* 880 F.2d 694 (4th Cir. 1989), *cert. denied,* 493 U.S. 959 (1989), a

---

[6]    Indeed, some courts have found that bankruptcy courts lack jurisdiction over liabilities of nondebtor parties and, accordingly, cannot discharge liabilities of nondebtors. *See, e.g., In re Western Real Estate Fund, Inc.,* 922 F.2d 592 (10th Cir. 1990), *modified sub nom., Abel v. West,* 932 F.2d 898 (10th Cir. 1991); In re Sandy Ridge Dev. Corp., 881 F.2d 1346 (5th Cir. 1989). *See generally* Ralph Brubaker, *Nondebtor Releases and Injunctions in Chapter 11: Revisiting Jurisdictional Precepts and the Forgotten Callaway v. Benton case,* 72 Am. Bankr. L.J. 1 (Winter 1998).

corporate debtor initiated a Chapter 11 reorganization case to resolve approximately 200,000 contingent personal injury claims. Releases of nondebtor third parties were included in the debtor's Chapter 11 plan, when certain third party nondebtors made substantial monetary contributions to the bankruptcy estate that were integral to the adequate funding and implementation of the plan. The Fourth Circuit, in affirming confirmation of the plan, expressly limited its holding to the unusual facts before it, noting the overwhelming approval of the Plan by affected creditors, the establishment of a payment fund estimated to be adequate to provide a full recovery to all claimants (including late claimants),[7] and the fact that the entire reorganization hinged on the debtor being free from indirect claims. *Id.* at 702.

Unlike the *Robins* case, this case is not a Chapter 11 reorganization in which a viable economic entity may be salvaged upon confirmation of a plan of reorganization, but instead is a Chapter 7 liquidation. The successful resolution of the IHI case is not dependent on IHI being free from indirect claims: as a liquidating corporate debtor, IHI is not eligible for and will not receive a discharge. 11 U.S.C. § 727 (a)(1). *See, e.g., In re Optical Technologies, Inc.*, 216 B.R. 989, 994 (Bankr. M. D. Fla. 1997) (the factors that may warrant the release of third party nondebtors in a corporate reorganization are not present when the Chapter 11 debtor files a plan of liquidation). In this case, unlike *Robins,* the amount of money paid into the estate is obviously insufficient to pay any substantial portion of the claims of the affected Nonparties. Additionally, unlike the circumstances in *Robins* in which affected creditors and interestholders had the opportunity to vote on the Plan containing the releases, IHI creditors and interestholders have not had any opportunity to vote on the Settlement. In fact, it is questionable whether all affected creditors and interestholders received notice of the terms of the Settlement Agreement in the instant case. The Amended Notice of Application of Trustee for Authority to Enter Into Settlement Agreement ("**Amended Notice**") was served directly on less than 300 individuals and entities, does not disclose the proposed injunction of pending civil actions, and appears on its face to involve only monetary payments by ERSIC. Even though the Amended Notice and Motion to Settle were posted on the Debtor's internet site, it is questionable whether such notice is sufficient

---

[7]   The funding of the trust fund was based upon expert testimony estimating the amount of claims that could be made against the debtor's estate, and the amount of the trust fund was estimated to pay all claims in full.

**6**

when a significant property interest of Nonparties will be affected permanently.[8]  Fundamental principles of due process require notice and the opportunity to be heard when a property interest is at stake.  *See, e.g., Reliable Elec. Co., Inc. v. Olson Construction Co.*, 726 F.2d 620, 623 (10th Cir. 1984); *In re Bilder*, 108 B.R. 666, 666-67 (Bankr. E.D. Wis. 1989).

> **2.  *Section 105(a) of the Code does not authorize a Bankruptcy Court to dismiss or issue a permanent injunction against pursuit of the civil actions by the Nonparties against Nondebtors in a Chapter 7 case.***

The Trustee seeks relief under Section 105(a) of the Code, which authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]."  While the court in *Robins* relied on Section 105(a) in approving the permanent injunction as part of the debtor's Chapter 11 plan under the unusual circumstances of that case, the Commission staff was unable to locate a single case within the Fourth Circuit that extends the logic of *Robins* to a Chapter 7 case such as the case at bar.

Section 105 is not a license for the bankruptcy court to "disregard the clear language and meaning of the bankruptcy statutes and rules."  *Official Committee of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987), *cert. denied*, 485 U.S. 962 (1988).  *Accord, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").  Section 105(a) is not an independent source of power, but rather is an aid in "exercising other specific provisions and powers created by the Bankruptcy Code."  *In re Optical Technologies, Inc.*, 216 B.R. 989, 993 (Bankr. M.D. Fla. 1997).  *Accord, In re Arrowmill Dev. Corp.*, 211 B.R. 497, 505 n. 9 (Bankr. D.N.J. 1997).

The Supreme Court has recognized a bankruptcy court's jurisdiction to temporarily stay actions against third party nondebtors during the pendency of a Chapter 11 reorganization case,

---

[8]  The Commission staff has no knowledge of whether the private civil actions have been certified as class actions but notes that when a class action is instituted in federal court, Rule 23 of the Federal Rules of Civil Procedure provides for various safeguards to insure notice to affected parties, including individual notice to all members who can be identified through reasonable effort of the commencement of the action and their rights to be excluded therefrom and notice of the proposed settlement to all members of the class. Fed. R. Civ. P. 23(c)(2) &(e).  Because the Settlement Agreement will deprive Nonparties of property rights, affected parties should receive the best notice practicable under the circumstances.

expressly noting that the jurisdiction of the bankruptcy court may extend more broadly in a Chapter 11 case than in a Chapter 7 case. *Celotex Corp. v. Edwards*, 115 S. Ct. 1493, 1500 (1995). In *Celotex*, however, the Supreme Court explicitly reserved decision on whether the bankruptcy court had the power pursuant to Section 105(a) to temporarily enjoin nonparty actions, stating, "[w]e need not, and do not, address whether the bankruptcy court acted properly in issuing the Section 105 Injunction." 115 S. Ct. at 1501. While other courts have relied on Section 105(a) of the Code to approve a temporary stay of actions against third party nondebtor entities related to the debtor during the pendency of a bankruptcy case, most courts have acted with much circumspect before granting even temporary relief, typically requiring evidence that the injunction is necessary to aid the administration of the estate or evidence that the continuation of the nonparty action will have an adverse effect on the debtor's ability to reorganize or formulate a plan[9] but sometimes requiring the moving party to meet the more stringent requirements for the issuance of a preliminary injunction in non-bankruptcy litigation under Rule 65 of the Federal Rules of Civil Procedure.[10]

A permanent injunction, such as sought in the instant case, goes beyond the administration of the estate and permanently affects rights against nondebtors. The jurisdiction and power of the bankruptcy court to permanently bar the assertion of claims against nondebtors is less established than

---

[9] *See, e.g., Willis v. Celotex*, 978 F.2d 146 (4th Cir. 1992), *cert. denied*, 507 U. S. 1030 (1993) (actions against surety company, which had posted supersedeas bond, enjoined based upon bankruptcy court findings that continuation of action would impede Chapter 11 reorganization). *Cf. In re Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995) (before issuing a temporary injunction against third party action, court should determine whether there is an identity of interest between the nondebtor and debtor so that a suit against the nondebtor is essentially a suit against the debtor and whether the institution of the third party action will have an adverse impact on the debtor's ability to reorganize).

[10] *See, e.g., In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 561 (D. Del. 1999) (in Chapter 11 case, shareholders should not have been enjoined by the bankruptcy court, acting pursuant to Section 105(a) of the Code, from continuing actions against nondebtor third parties, including former officers, absent a showing by the debtor of probability of success on the merits); *In re F.T.L., Inc.*, 152 B.R. 61, 63 & 64 n.3. (Bankr. E.D. Va. 1993) (in a Chapter 11 case, court found that four part test for issuance of injunction had been met warranting the issuance of a temporary injunction enjoining pursuit of an action against a nondebtor, but court refused to issue a permanent injunction, noting that "[t]his type of extraordinary relief may be appropriate in rare circumstances like *A.H. Robins* but should not be liberally granted"). *Cf. Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (in a Chapter 7 liquidation case in which bankruptcy court issued an order pursuant to Section 105(a) temporarily enjoining investor claims against nondebtor third parties after finding the four traditional elements for issuing a preliminary injunction had been met, Seventh Circuit noted that all elements did not have to be met, but moving party must establish a likelihood of success on the merits, and court must address whether the issuance of the injunction will harm the public interest).

the jurisdiction to grant temporary stays. While some courts have adopted a *per se* rule prohibiting the discharge or release of third party nondebtor liability,[11] other courts have indicated a willingness to allow such relief when affected creditors affirmatively consent thereto,[12] or under exceptional circumstances such as those present in the *Robins* case, pursuant to Section 105(a).[13] Those courts that have not adopted a *per se* rule prohibiting the permanent release of third party nondebtor liability generally have addressed the release issue in Chapter 11 reorganization cases and have looked to the following factors, many of which were present in the *Robins* case, in determining whether to act pursuant to Section 105(a) to release third parties from liability to nonparties:

(1)   An **identity of interests** between the debtor and the third party, usually an indemnity relationship, such that a suit against the nondebtor either operates as a suit against the debtor or will deplete estate assets;

(2)   The **nondebtor has contributed substantial assets** to the reorganization;

(3)   The **injunction is essential to reorganization**, and, without it, there is little likelihood of success;

(4)   A **substantial majority of creditors agree** to such an injunction, and specifically, the impacted class, or classes, has overwhelmingly voted to accept the proposed treatment;

(5)   The plan provides a **mechanism for payment of all**, or substantially all, of the claims of the class or classes affected by the injunction.

---

[11]   *See, e.g., In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995), *cert. denied*, 116 S. Ct. 2497 (1996) (citations omitted) ("This court has repeatedly held, without exception that § 524(e) precludes bankruptcy courts from discharging the liabilities of nondebtors"). *Accord, In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592 (10th Cir. 1990), *modified sub nom., Abel v. West*, 932 F.2d 898 (10th Cir. 1991).

[12]   *See, e.g., In re AOV Industries*, 31 B.R. 1005 (D.D.C. 1983), *aff'd in part*, 792 F.2d 1140 (D.C. Cir. 1986); *In re Monroe Well Services, Inc.*, 80 B.R. 324 (E.D. Pa. 1987). Few courts are willing to impose such releases on creditors and interestholders without the consent of affected creditors. *See, e.g., In re Specialty Equipment Co., Inc.*, 3 F.3d 1043, 1045-47 (7th Cir. 1993); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997); *In re West Coast Video Enterprises, Inc.*, 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994).

[13]   Certain courts have found that "special circumstances" may warrant approval of nondebtor releases. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 113 S. Ct. 1070 (1993); *In re A.H. Robins*, 880 F.2d 694 (4th Cir. 1989), *cert. denied*, 493 U.S. 959 (1989); *In re Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1987), *cert. denied*, 488 U.S. 868 (1988). In each of those cases, the debtor and their agents were seeking to resolve mass tort claims or an avalanche of litigation in a Chapter 11 case.

*See generally*, Peter Meltzer, *Getting Out of Jail Free:  Can the Bankruptcy Plan Process Be Used to Release Nondebtor Parties?*, 71 Am. Bankr. L.J. 1 (Winter 1997). *See also In re Optical Technologies, Inc.*, 216 B.R. 989, 992 (Bankr. M.D. Fla. 1997) (citing list of factors but refusing to confirm liquidating plan releasing the liability of third party nondebtors); *In re West Coast Video Enterprises*, 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994).

NONE OF THESE FACTORS ARE PRESENT IN THIS CASE.  The Motion to Settle does not assert any claims for indemnification by the Officers and Directors as the basis for approving the Settlement Agreement.  There is no evidence that the Officers and Directors have contributed substantial assets to the bankruptcy estate of IHI.  This case is not a Chapter 11 reorganization, so the injunction is not necessary to insure the success of the bankruptcy.  There is no evidence that a substantial majority of affected creditors and interestholders have agreed to the dismissal of their civil actions nor is there any evidence that the settlement will result in full payment of the claims of affected creditors and interestholders.  In short, the circumstances of this case are not appropriate for this court to fashion a remedy pursuant to Section 105 that permanently bars Nonparties from seeking relief against the Third Party Nondebtors.

Although Bankruptcy Rule 9019 empowers this Court to approve compromises and settlements if they are in the best interest of the estate, *see, e.g., In re Marvel Entertainment Group, Inc.*, 222 B.R. 243 (D. Del. 1998), "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval."  *In re Zale Corp.*, 62 F.3d 746, 754 (5th Cir. 1995), quoting *Cullen v. Riley (In re Masters Mates & Pilots Pension Plan)*, 957 F.2d 1020, 1026 (2d Cir. 1992).  Accordingly, courts that have recognized the jurisdiction and consequent power of a court in a bankruptcy case to release claims that are property of the estate in the context of a settlement have scrutinized the terms of the settlement to insure that the settlement does not contain language that could be construed to bar permanently causes of action belonging exclusively to aggrieved claimants or interestholders.[14]  *See, e.g., In re Energy Coop., Inc.*, 886 F.2d 921, 930 (7th Cir. 1989); *In re All*

---

[14]  The Commission does not concede that this court has jurisdiction over the claims of the Nonparties that belong to individual creditors and interestholders and not to the bankruptcy estate.  If the bankruptcy court has no jurisdiction over the direct claims of nonparties against nondebtor defendants or persons and entities that are not parties to the litigation being settled, the bankruptcy court has no power to shield these claims from prosecution by approving a settlement that permanently bars and enjoins these claims.

*American of Ashburn, Inc.*, 805 F.2d 1515, 1517 (11th Cir. 1986). For example, *In re Energy Coop., Inc.*, the Seventh Circuit remanded an injunction included in a settlement order to the district court with instructions to limit the permanent injunction solely to claims that were the exclusive property of the estate. 886 F.2d at 930.

Although the Trustee's interest in settling the Coverage Actions is understandable, the Settlement Agreement tramples on the rights of the Nonparties. The use of Section 105(a) to grant the extraordinary relief of a permanent injunction in favor of the Officers and Directors in this case is unsupported by existing case law and is contrary to public policy.

### B. The Code Does not Authorize The Stay of Police and Regulatory Actions that Are Excepted From the Automatic Stay Pursuant to Section 362(b)(4)

Section 362(b)(4) of the Code affords an exemption from the automatic stay to governmental units seeking to enforce their police and regulatory power. 11 U.S.C. § 362(b)(4). The Settlement Agreement, if approved, would result in the dismissal of or injunction against the continuation of all civil actions pending against IHI and/or its Officers and Directors, which may include the police and regulatory actions instituted by the Commission and the Montana State Auditor's Office. Additionally, the Settlement Agreement, if approved, allows for this court to stay the regulatory action commenced by the Montana State Auditor. This result is contrary to law and public policy.

The legislative history to Section 362(b)(4) provides insight into the intent of Congress in enacting an exemption applicable to governmental units:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop **violation of fraud**, environmental protection, consumer protection, safety or similar police or regulatory laws, or **attempting to fix damages for violation of such a law**, the action or proceeding is not stayed under the automatic stay.

---

*See, e.g., In re Zale Corp.*, 62 F.3d 746, 756-57 (5th Cir. 1995).

H. Rep. No. 595, 95th Cong., 1st Sess. (1977) at 343; Senate Report No. 989, 95th Cong., 2nd Sess. (1978) at 52; *reprinted in* U. S. Code Cong. & Admin. News 1978 at 5787, 5838, 6229 [EMPHASIS ADDED].

IHI's Chapter 7 filing does not preclude the Commission and other regulatory agencies from pursuing actions against the Debtor, in furtherance of their police and regulatory powers, including obtaining an order fixing monetary relief. *See, e.g., SEC v. Towers Financial Corp.*, 205 B.R. 27 (S.D.N.Y. 1997) (Commission action not stayed against Chapter 7 debtor "'where a government unit is suing a debtor to prevent or stop violation of fraud, . . . or similar police or regulatory laws, *or attempting to fix damages for violation of such a law*") (quoting S. Rep. 95-989 at 52, reprinted in 1978 U.S.C.C.A.N. 5787, 5838); *In re Bilzerian*, 146 B.R. 871, 873 (Bankr. M.D. Fla. 1992) (Commission's action in seeking to set amount of disgorgement against Chapter 7 debtor is appropriate and prevents bankruptcy court from becoming a haven for wrongdoers). IHI's bankruptcy, moreover, does not effect regulatory agencies' actions against nondebtors, such as the Officers and Directors.

Section 105(a) should not be used to either prevent the commencement or continuation of an action by a governmental unit, such as the Commission or the Montana State Auditor, against IHI and its Officers and Directors. The use of Section 105(a) for such purposes overrides the specific provisions of Section 362(b)(4) and encourages the bankruptcy court to become a haven for wrongdoers. *See, e.g., In re Compton Corp.*, 90 B.R. 798, 806-07 (N.D. Tex. 1988), *appeal dismissed*, 889 F.2d 1104 (Temp. Emer. Ct. App. 1989) (Department of Energy proceedings that were consistent with provisions of the Code and were exempt from the automatic stay under Section 362(b)(4) were improperly enjoined under Section 105); *In re Wilner Wood Prod. Co. v. State of Maine, D.E.P.* 1,5 (D. Me. 1991) (Section 105 must be used in a matter consistent with the Code and cannot override clear statutory language).[15]

---

[15]   The Commission staff notes that some courts that have refused to grant an injunction pursuant to Section 105(a) to enjoin regulatory actions have noted in dicta that the bankruptcy court may have power to act pursuant to Section 105 in certain limited circumstances. *Cf. U.S. v. Commonwealth Companies, Inc.*, 913 F2d 518, 527 (8th Cir. 1990) (while finding that the governmental action was excepted from automatic stay and should be allowed to stay, court noted in dicta that in appropriate cases when debtor is able to meet the "usual rules governing the issuance of injunctions," an injunction against governmental action may be appropriate); *In re Brennan*, 198 B.R. 445, 450-52 (D.N.J. 1996) (Section 105(a) injunction appropriate to stay state police power only when there is a serious conflict between the continuance of the state action and the policies of the Bankruptcy Code and the elements for issuing injunctive relief have been established); *In re Wengert*

# III.  CONCLUSION

For the foregoing reasons, the Commission objects to the Settlement and requests the Court to deny the Motion to Settle. The Commission further requests that a hearing be held on this matter.

Dated:      September 7, 1999
            Atlanta, Georgia

Respectfully submitted,

WILLIAM P. HICKS
District Trial Counsel
Ga. Bar No. 351649

E. GORDON ROBINSON
Senior Trial Counsel/ Bankruptcy
Ga. Bar No. 610350

SUSAN R. SHERRILL
Senior Bankruptcy Counsel
North Carolina Bar No. 9462
Georgia Bar No. 001370

**ATTORNEYS FOR THE:**

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

Atlanta District Office
Suite 1000
3475 Lenox Road, N.E.
Atlanta, GA 30326-1232
    Telephone:     (404) 842-7626
    Fax:            (404) 842-7633

---

*Transportation, Inc. v. Crouse Cartage Co.*, 59 B.R. 226, 231-32 (Bankr. N.D. Iowa 1986) (court held that governmental injunction fell within exception from automatic stay set forth in Section 362(b)(4) and refused to issue an injunction pursuant to Section 105(a), noting in dicta that there may be appropriate circumstances for the issuance of injunction if the debtor alleges and proves the four elements necessary for the issuance of a preliminary injunction but also stating that Section 105(a) should be used sparingly in such circumstances and only when absolutely necessary to effectuate the policy of the Bankruptcy Code.) Even under those cases, the issuance of an injunction against regulatory action would be inappropriate in the instant case because the elements for the issuance of an injunction have not been alleged.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

|  |  |  |
|---|---|---|
| *In re* | ) | **CHAPTER 7** |
|  | ) |  |
| ***INTERNATIONAL HERITAGE*** | ) | **CASE NUMBER** |
| ***INCORPORATED,*** | ) | **98-02674-5-ATS** |
|  | ) |  |
| **and** | ) |  |
|  | ) |  |
| ***INTERNATIONAL HERITAGE*** | ) | **CASE NUMBER** |
| ***INC.,*** | ) | **98-02675-5-ATS** |
|  | ) |  |
| *Debtors.* | ) |  |

## CERTIFICATE OF SERVICE

I, Susan R. Sherrill, do hereby certify that a copy of the foregoing MEMORANDUM OF UNITED STATES SECURITIES AND EXCHANGE COMMISSION IN OPPOSITION TO THE APPLICATION OF TRUSTEE FOR AUTHORITY TO ENTER INTO SETTLEMENT has been served on this 8th of September, 1999, by first class mail, postage prepaid, to all interested parties listed on Exhibit "A" attached hereto.

SUSAN R. SHERRILL
Senior Bankruptcy Counsel
North Carolina Bar No. 9462

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Atlanta District Office
Suite 1000
3475 Lenox Road, N.E.
Atlanta, GA 30326-1232
   Telephone:   (404) 842-7626
   Fax:          (404) 842-7633

1

# Exhibit "A"

Holmes P. Harden, Esquire
Maupin Taylor & Ellis, P.A.
Post Office Drawer 19764
Raleigh, North Carolina  27619

Terri L. Gardner, Esquire
Smith Debnam Narron & Myers, L.L.P.
Post Office Box 26268
Raleigh, North Carolina  27611

Marjorie K. Lynch
Bankruptcy Administrator
U.S. Bankruptcy Court
P.O. Box 3079
Raleigh, North Carolina 27601-3039

Michael P. Flanagan, Esquire
Ward and Smith, P.A.
120 West Fire Tower Road
Post Office Box 8088
Greenville, North Carolina  27835-8088

Brent E. Wood, Esquire
P.O. Box 164
Raleigh, North Carolina  27602

Louis P. Richkind, Esquire
Counsel to Chittenden Bank
One Woodward Avenue, Suite 2400
Detroit, Michigan  48226

Kathryn N. Koonce, Esquire
Poyner & Spruill, LLP
P.O. Box 10096
Raleigh, North Carolina  27605-0096

Robert H. Frazer, Esquire
ACSTAR Insurance Company
233 Main Street
P.O. Box 2350
New Britain, Connecticut  06050-2350

N. Hunter Wyche, Jr., Esquire
Wyche & Story, RLLP
P.O. Drawer  1389
Raleigh, North Carolina  27602

Lloyd W. Gathings, II, Esquire
Robert W. Shore, Esquire
Gathings & Associates
P.O. Box 10545
Birmingham, Alabama  35202-0545

Ronald H. Garber, Esquire
Boxley, Bolton & Garber, LLP
Post Office Drawer 1429
Raleigh, North Carolina  27602

Lloyd T. Whitaker, President
Newleaf Corporation
2814 New Spring Road, Suite 330
Atlanta, Georgia  30339

Joel B. Piassick, Esquire
Kilpatrick & Stockton LLP
Suite 2800
1100 Peachtree Street, N.E.
Atlanta, Georgia  30309

2