**FILED**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

NOV 0 2 1999

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | | |
|---|---|---|
| IN RE: | ) | |
| INTERNATIONAL HERITAGE, INC. | ) ) | CASE NO.: 98-02675-5-ATS CHAPTER 7 |
| | ) | |
| INTERNATIONAL HERITAGE, INCORPORATED, | ) ) | CASE NO.: 98-02674-5-ATS CHAPTER 7 |
| | ) | |
| Debtors | ) ) | |

## TRUSTEE'S VERIFIED OBJECTION TO ACSTAR'S AMENDED PROOF OF CLAIM, NOTICE THEREOF AND CERTIFICATE OF SERVICE

NOW COMES Holmes P. Harden, Trustee in bankruptcy for International Heritage, Inc., and International Heritage, Incorporated ("Trustee"), by and through his undersigned counsel, and submits this Objection to ACSTAR'S Amended Proof of Claim. In support of said Objection, Trustee respectively shows unto the Court as follows:

### SUMMARY OF FACTS

1. On November 25, 1998, International Heritage, Inc. and International Heritage, Incorporated (jointly referred to as "IHI" or "debtor") filed voluntary petitions in bankruptcy. Holmes P. Harden was appointed Chapter 7 Trustee.

2. On March 16, 1998, the Securities and Exchange Commission ("SEC") brought a civil action against the Debtors and individual named defendants captioned Securities and Exchange Commission v. International Heritage, Inc., Stanley H. Van Etten, Claude W. Savage, Larry G. Smith, and International Heritage, Incorporated, a Nevada Corporation, civil action no. 1-98-CV-0803-RWS in the United District Court for the Northern District of Georgia ("SEC action").

3. At the outset of the SEC action, IHI was required to post a $5,000,000.00 cash bond with the District Court for the Northern District of Georgia ("the District Court"). The $5,000,000.00 was paid to the District Court by IHI pursuant to Notice of Posting of Cash Bond and Order Approving Cash Bond entered on April 3, 1998, attached hereto as "Exhibit A."

4. On July 1, 1998, the District Court for the Northern District of Georgia entered an Order approving a substitution of the cash bond with a payment bond, attached hereto as "Exhibit B." Pursuant to the terms of this Order, ACSTAR Insurance Company and United Coastal Insurance Company (jointly referred to as "ACSTAR") posted a surety payment bond in the penal amount of $5,000,000.00 ("the payment bond"). The payment bond replaced the $5,000,000.00 cash bond being held by the District Court. Prior to the issuance of the payment bond, ACSTAR required that $3,500,000.00 of the cash held by the District Court be payed to ACSTAR as collateral. ACSTAR also required IHI to pay ACSTAR $150,000.00 as a fee for ACSTAR issuing the payment bond.

5. On July 2, 1998, $3,650,000.00 was transferred from the District Court to ACSTAR by wire transfer. A copy of the letter from ACSTAR to the District Court confirming receipt of the $3,650,000.00 is attached hereto as "Exhibit C."

6. Prior to the time the original cash bond was posted by IHI, Stanley Van Etten ("Van Etten") loaned 5 million dollars to International Heritage, Inc. He received a note from International Heritage, Inc. for 5 million dollars and a security interest in all of International Heritage, Inc.'s assets, including any and all contracts. On May 27, 1998, Van Etten filed a financing statement with the North Carolina Secretary of State against International Heritage perfecting his security interest in the assets of International Heritage,

Inc. A copy of the note and certified copy of the financing statements are attached hereto as "Exhibit D". Subsequently, on October 20, 1999, and pursuant to settlement of the SEC action, Van Etten waived all rights in and assigned this security interest to International Heritage. (See Waiver and Assignment dated October 20, 1999 attached hereto as "Exhibit E"). Further, Van Etten agreed to enter into a consent judgment to avoid any and all security interests in the Debtors' assets. (See, Settlement Agreement attached hereto as "Exhibit F").

    7.    In connection with issuance of the payment bond, IHI signed an indemnity agreement with ACSTAR ("the Indemnity Agreement"). The Indemnity Agreement states that "the indemnitors hereby transfer, assign, pledge and convey to the Surety a security interest in. . .; 2) all sums due or to become due to indemnitors or any of them in connection with any contract. . ." The Indemnity Agreement also states:

> Indemnitors hereby agree to execute any form of financing statement or other agreement or writing which Surety, in its own discretion, deems necessary or advisable to perfect the security interest granted herein, and further authorize Surety at its discretion and at anytime to file or serve this instrument, or a true copy hereof, or any other instrument executed pursuant hereto as a financing statement or other notice under the Uniform Commercial Code. . .

To date, ACSTAR has not advised or requested International Heritage to execute any form of financing statement. Further, ACSTAR has not filed any financing statement against International Heritage with the North Carolina Secretary of State (See verified statement from the North Carolina Secretary of State attached hereto as "Exhibit G") or with the Wake County Register of Deeds (See verified statement from Wake County Register of Deeds attached hereto as "Exhibit H").

8. The SEC filed Proofs of Claim dated January 4, 1999, in the International Heritage, Inc. and International Heritage, Incorporated bankruptcy cases in the amount of $6,450,000.00. The claims are unliquidated, contingent, unsecured claims consistent with the prayer for relief in the SEC action.

9. On June 21, 1999, this Court entered an Order Approving Application of Trustee to Enter into Consent to Final Judgment of Permanent Injunction in the SEC action. (hereinafter referred to as "the June 21, 1999 Order" and attached hereto as "Exhibit I"). In the June 21, 1999 Order, this Court approved the proposed settlement of the SEC action, which settlement, in part, consisted of ACSTAR paying $4.1 million to the Trustee as full and final settlement of the SEC action. While the SEC claim was for $6,450,000.00 and the penal sum of the payment bond was $5,000,000.00, ACSTAR refused to pay its full obligation on the bond and negotiated for payment of only a portion of its obligation at mediation.

10. In the June 21, 1999 Order, this Court approved a payment plan for ACSTAR to pay the $4.1 million to the Trustee. The payment plan is outlined in the Consent Final Judgment of Permanent Injunction as to Defendants International Heritage, Inc. and International Heritage, Incorporated, a Nevada Corporation ("Consent Final Judgment"), in the SEC action as follows:

> $600,000.00 within 30 days of this Order; an additional $750,000.00 within 120 days of this Order; an additional $750,000.00 within 210 days of this Order; and the remaining $2,000,000.00 within 300 days of this Order. The payments on the bond shall be deposited into the registry of this Court. However, upon this Court's receipt of such payments by the Surety, the Clerk of the Court will issue a non-refundable check in the same amount to the Chapter 7 bankruptcy trustee . . . to be used first for the payment of his allowed §326(a)

> statutory commission without reduction and then for all administrative claims allowed pursuant to §330 and §503 of the United States Bankruptcy Code in the Bankruptcy cases, then for payment of any outstanding fees of Lloyd Whitaker, the monitor in this case, then for pro rata (i) payment of claims by independent retail sales representatives ("IRSRs") of IHI who made payments to IHI and never received a product or commission and (ii) the first $300,000.00 of any allowed claim which the surety (ACSTAR Insurance Company) may have against the Estate; then for claims of purchasers of IHI convertible notes during 1997.

(See Consent Final Judgment, pp. 5-6, Section V; included as attachment to Exhibit I).

11. On September 20, 1999, the Final Judgment of Permanent Injunction as to defendants International Heritage, Inc. and International Heritage, Incorporated, a Nevada Corporation, in the SEC action was entered providing for the settlement and payments outlined above. Accordingly, the first payment on the bond, $600,000.00, was due to be paid to the Court on October 20, 1999.

12. Of the $4.1 million to be paid by ACSTAR, $3.5 million was provided by Van Etten in the form of collateral which was posted to obtain issuance of the payment bond. Further, ACSTAR has been holding this $3.5 million since July 2, 1998. (Ex. C). ACSTAR has invested this money in corporate and municipal bonds and will earn interest on the investments made with this money during the payment period in the amount of $286,198.03. (See, Affidavit of Robert Frazier filed by ACSTAR). These funds are in addition to the bond premium received by ACSTAR in the amount of $150,000.00.

13. The settlement of the SEC action which resulted in this payment plan was negotiated at arm's length between counsel for ACSTAR, the bankruptcy Trustee, counsel for Van Etten and the other named Debtors, and counsel for the SEC at a court ordered

mediated settlement conference and represents a complete and final settlement of claims arising from the SEC action. This Court, in fact, had expressly requested that ACSTAR, the Trustee, the SEC and Van Etten enter into a global settlement of all matters relating to the payment bond. Apparently, in consideration of the possibility of being out of pocket approximately $300,000.00, ACSTAR negotiated for a $300,000.00 priority claim against the monies it paid over to the Trustee pursuant to the settlement as provided in the Order. This $300,000.00 claim was also expressly referenced in the June 21, 1999 Order, (Ex. I, p.5), and has the same priority as the claims of sales representatives of IHI who made payment to IHI but never received a product or commission. The only claims to the 4.1 million dollar settlement amount with greater priority are administrative claims.

14. Further, as a condition of entering into this settlement agreement, ACSTAR and the Trustee agreed to execute mutual releases. This Court, in the June 21, 1999 Order, directed that both the Trustee and ACSTAR "shall execute the mutual Releases attached hereto as Exhibit B". The mutual Release which the Court ordered ACSTAR to execute provided that:

> Acstar Insurance Company . . . do[es] hereby release, forever discharge and promise never to sue Holmes P. Harden, individually, as Chapter 7 Trustee for International Heritage, Inc. and International Heritage, Incorporated, . . ., their agents, attorneys, employees, officers, directors, <u>and insurance carriers (together referred to as "Harden")</u> . . . for any and all damages and claims arising from or related to [the SEC action] . . . and <u>any claims against Harden arising from, under, or against Payment Bond No. 7719 dated June 5, 1998 and a related Indemnity Agreement which were executed in connection with the aforesaid civil action.</u>

(See, unsigned Release, included as attachment to Exhibit I, emphasis added).

15. Trustee executed ACSTAR's Release as ordered. ACSTAR, however, has

heretofore not executed the Release negotiated between the parties that the Court ordered it to sign. Instead, ACSTAR unilaterally substantially revised the language of the Release and executed the new revised Release. A copy of the revised Release and accompanying letter is attached hereto as "Exhibit J".

16. Trustee filed his Application of Trustee To Enter Into Settlement Agreement with Executive Risk Specialty Insurance Company ("ERSIC") on August 9, 1999. It was not until after Trustee filed his Application of Trustee To Enter Into Settlement Agreement with Executive Risk Specialty Insurance Company ("ERSIC") that ACSTAR advised Trustee that it had attempted to unilaterally modify the Release required in the June 21, 1999 Order. The letter accompanying the revised Release is dated August 13, 1999. (Ex. J).

17. On September 27, 1999, this Court entered an Order Authorizing Trustee to Enter Into Settlement Agreement in two civil actions <u>Executive Risk Specialty Insurance Company v. International Heritage</u>, et al, Case No. 5: 98-CV-542-F(3)(EDNC) and <u>Holmes P. Harden, Trustee in Bankruptcy for International Heritage, Inc. v. Executive Risk Specialty Insurance Company</u>, adversary proceeding no. S-99-00015-5-AP(Bankr.EDNC), whereby $1,787,500.00 will be paid by ERSIC to Trustee and $275,000.00 will be paid by ERSIC to Van Etten in reimbursement for attorneys fees, expenses and losses incurred as a result of underlying actions filed during the policy period of the directors and officers' liability policy issued by ERSIC to International Heritage.

18. Prior to the entry of this Order, ACSTAR filed an objection to the settlement between ERSIC and Trustee on the grounds that ACSTAR had a security interest in the settlement funds being paid by ERSIC to the Trustee in the amount of $600,000.00,

representing the asserted amount ACSTAR would be out of pocket as a result of payment on the payment bond, discussed supra. Said objection was overruled, but the Court informed ACSTAR that it could file an amended proof of claim to assert this claim against the Estate.

19. On October 4, 1999, ACSTAR filed its Amended Proof of Claim for $805,781.41. In the Amended Proof of Claim, ACSTAR asserts that its total claim now includes $750,000.00 which "represents money paid by ACSTAR on behalf of IHI on the bond less the remaining collateral; and $55,781.41 represents fees of attorneys and other expenses which ACSTAR has incurred in recovering or attempting to recover losses or expenses paid or incurred in connection with the bond." The $750,000.00 sum is $150,000.00 greater than the $600,000.00 that ACSTAR originally asserted it was owed in ACSTAR's Objection to the ERSIC Settlement Agreement. Counsel for ACSTAR has represented to the undersigned counsel that this additional $150,000.00 is an annual premium that has come due in addition to the initial $150,000.00 bond fee paid. Counsel for ACSTAR has represented to the undersigned counsel that the purpose of this annual premium is to pay ACSTAR for potential risks and other expenses incurred by ACSTAR arising out of the bond.

20. ACSTAR asserts that it has a "perfected security interest" in the settlement payment to be made by ERSIC to the Trustee. ACSTAR also asserts that it has a claim to the settlement payment to be made by ERSIC to the Trustee under the Doctrine of Equitable Subrogation and 11 USC §509(b)(2). As discussed herein, ACSTAR's Amended Proof of Claim is both factually and legally insufficient.

## LEGAL ARGUMENTS IN SUPPORT OF TRUSTEE'S OBJECTION

**A.  Because any asserted security interest of ACSTAR is second in priority to Van Etten's security interest and the lien acquired by Van Etten has been avoided by the Estate and assigned to the Estate, 11 U.S.C. § 551 prevents any junior lienholder from improving their position at the expense of the Estate.**

21. Van Etten's perfected security interest was filed and perfected prior to ACSTAR receiving any asserted security interest. Pursuant to §25-9-312(5)(a), conflicting security interests rank in time. Therefore, Van Etten's security interest ranks ahead in priority to any asserted ACSTAR security interest.

22. Pursuant to the Trustee's court-approved settlement of the Estate's claims against Van Etten, Van Etten has consented to the avoidance of his security interest.

23. Pursuant to 11 U.S.C. § 547(b), the transfer of a security interest to Van Etten in International Heritage, Inc.'s assets is to be avoided. 11 U.S.C. § 551 states that "[A]ny transfer avoided under section . . . 547 . . . , is preserved for the benefit of the estate but only with respect to property of the estate."

24. This Court has previously recognized that proceeds from the ERSIC policy are property of the Estate. See April 29, 1999 Order Denying Motion for Relief from Automatice Stay.

25. The avoided security interest of Van Etten now innures solely to benefit the Estate. The rights of the Estate are protected from any junior lienholder 11 U.S.C. § 551. The asserted security interest of ACSTAR in the ERSIC insurance proceeds is second in time and therefore remains junior to Van Etten's avoided security interest. Van Etten has agreed to enter into a consent judgment avoiding this security interest. (Ex. F). Further, Van Etten has assigned all rights he had in his perfected security interest to Trustee. (Ex.

E).

**B.    Any asserted security interest of ACSTAR is unperfected.**

26.    The Indemnity Agreement provides that IHI is to execute any financing statement ACSTAR deems necessary and authorizes ACSTAR to file or serve a financing statement under the UCC.

27.    To date, ACSTAR has not advised or requested International Heritage to execute any form of financing statement. Further, ACSTAR has not filed any financing statement against International Heritage with the North Carolina Secretary of State (Ex. G) or with the Wake County Register of Deeds (Ex. H).

28.    N.C. Gen. Stat. §25-9-302 requires that a financing statement must be filed to perfect this security interest. Consequently, any security interest ACSTAR may have in the ERSIC settlement funds is an unperfected security interest avoidable by the Trustee. See, In re Environmental Aspecs, Inc., 235 B.R. 378 (E.D.N.C. 1999).

**C.    The Release that ACSTAR was ordered to execute in the June 21, 1999 Order bars the present claims against the Trustee.**

29.    The Release attached to the June 21, 1999 Order states:

> Acstar Insurance Company . . . do[es] hereby release, forever discharge and promise never to sue Holmes P. Harden, individually, as Chapter 7 Trustee for International Heritage, Inc. and International Heritage, Incorporated, . . ., their agents, attorneys, employees, officers, directors, and insurance carriers (together referred to as "Harden") . . . for any and all damages and claims arising from or related to [the SEC action] . . . and any claims against Harden arising from, under, or against Payment Bond No. 7719 dated June 5, 1998 and a related Indemnity Agreement which were executed in connection with the aforesaid civil action.

(Ex. I, emphasis added).

30. ACSTAR was ordered to execute this Release and, therefore, any claims against the Trustee arising out of the payment bond are barred.

### D. The Doctrine of Equitable Subrogation does not apply to insurance proceeds previously adjudicated as proceeds of the Estate.

31. Proceeds from the ERSIC policy have previously been determined by this Court to be property of the Estate. Consequently, the legal authority cited by ACSTAR in support of its argument for equitable subrogation are not applicable to the facts at hand.

32. In its Memorandum of Law In Support of Objection of ACSTAR Insurance Company to Application of Trustee for Authority to Enter Into Settlement Agreement ("ACSTAR Memorandum"), ACSTAR cites the case of In Re Alcon Demolition, Inc., 204 BR 440 (Bankr. DNJ 1997) and similar cases construing the doctrine of "equitable subrogation". Alcon was the general contractor on a demolition project. Alcon failed to perform and its surety stepped in to complete the project. The Court held that the surety had a right to reimbursement from "identifiable contract funds" arising out of the underlying contract and that equitable subrogation applied to monies derived from the original contract between the Debtor and the unpaid or harmed subcontractor or materialsman.

33. In the case at bar, the contract funds in which ACSTAR is claiming a right to equitable subrogation are not "identifiable contract funds" arising from an "underlying contract" between the Debtor and the original creditor, the SEC. The funds in which ACSTAR is attempting to claim an equitable subrogation right are in fact insurance proceeds that this Court has already determined are property of the Estate. These insurance proceeds are an entirely separate fund in no way connected or related to ACSTAR's payment under the payment bond.

34. While ACSTAR may argue that the Indemnity Agreement entered into between ACSTAR and International Heritage refers to a security interest in "any and all contracts", this Indemnity Agreement is only relevant to the question whether or not ACSTAR has a security interest. It is not relevant to the equitable subrogation argument.

35. The other cases cited by ACSTAR in its Memorandum all deal with contract disputes over funds specifically arising out of the underlying project between the Debtor and creditor. Unlike the case at bar, the surety's claims in such cases arose from its performance of its principal's obligations under the bonded contract. See Pearlman v. Reliance Insurance Company, 371 US 132, 83 S.Ct. 232 (1962); In Re QC Piping Installations, Inc., 225, BR 553 (Bankr. EDNY 1998).

E. **A review of the underlying facts and circumstances establishes that ACSTAR is not entitled to equitable relief from the Court in this case.**

36. Subrogation is not an absolute right, but one which depends on the equities and circumstances of each case. First Union National Bank of N.C. v. Lindley Laboratories, 132 N.C. App. 129, 510 S.E.2d 187 (1999).

37. ACSTAR declined to pay the full amount of the payment bond, $5,000,000.00. Instead, it was willing to pay only a portion of its obligation, $4.1 million. This took $900,000.00 out of the hands of the creditors of International Heritage.

38. ACSTAR charged a substantial premium in the amount of $150,000.00 up front. ACSTAR's overreaching is illustrated by the fact that ACSTAR has only recently made a claim for an additional $150,000 which it asserts constitutes an additional premium that has become due. Apparently, ACSTAR asserts that this premium, which ACSTAR counsel has represented covers potential risk, has become due after entry of the Order

approving the final settlement in the SEC action, which effectively discharged any further risk ACSTAR may have had on the bond. It is apparent that such claims for additional premium is not a loss incurred for having issued the payment bond.

39.     ACSTAR negotiated to receive a $300,000.00 unsecured claim with enhanced priority treatment which claim would be paid from the proceeds of the $4.1 million paid. As discussed supra, such negotiations were required by this Court. This Court specifically requested that the parties mediate a global settlement, and ACSTAR, after Trustee had filed his motion to approve the ERSIC settlement, is now attempting to avoid this bargained-for settlement arrangement for a better deal.

40.     ACSTAR never executed the Release it was ordered by this Court to execute. Despite ACSTAR's approval of the language and scope of the Release, it was not until after Trustee filed his motion to approve the ERSIC settlement that ACSTAR attempted to unilaterally modify the Release. Consistent with the global nature of the negotiated settlement, the Release ACSTAR was ordered to execute released the debtor's insurers and bars ACSTAR's present claims against the Estate for equitable subrogation. ACSTAR's unilateral attempt to revise the Release in its favor in order to avoid the effect of the global settlement at mediation is inequitable conduct and should not be approved or rewarded by this Court.

41.     ACSTAR will earn interest on the $3,500,000.00 it has been holding as collateral in the amount of $286,198.03. This amount, together with the $300,000.00 claim already allowed, and the $150,000.00 premium paid more than adequately compensates ACSTAR for any asserted out-of-pocket loss on the payment bond.

42.     It is readily apparent that ACSTAR, despite its issuance of the five million

payment bond, is faring far better than other creditors. The Court should reject its claim for "equitable subrogation."

### F. The creditors of IHI who have claims in bankruptcy will be injured if the Court applies equitable subrogation to this case.

43. One of the primary prerequisites before equitable subrogation may be applied is that the subrogation will not injure the rights of others. In re The Medicine Shoppe, Inc., 210 B.R. 310 (Bnkr. N.D. Ill. 1997).

44. In the case at bar, if equitable subrogation is not applied, the Debtor will not receive a windfall as would have occurred in the cases cited by ACSTAR in its Memorandum. The Debtor is in Chapter 7 bankruptcy and will receive none of the proceeds from the ERSIC settlement. To the contrary, if equitable subrogation is applied, the creditors in the bankruptcy case will be injured, and ACSTAR will in fact receive a windfall as it is already adequately compensated for any asserted out-of-pocket expenses or losses, discussed supra.

### G. The debt has not been paid in full, and therefore, ACSTAR is not entitled to equitable subrogation.

45. Another prerequisite for equitable subrogation to apply is that the entire debt must have been paid in full. Lumbermen's Mutual Ins. Co. v. Massachusetts Bonding and Ins. Co., 310 F.2d 627 (4th Cir. 1962).

46. In the case at bar, ACSTAR will not have paid the entire debt until on or about August 20, 2000. ACSTAR is not entitled to any asserted compensation under the doctrine of equitable subrogation until this date.

### H. Any subrogation due ACSTAR should not be granted to the extent of its allowed priority status claim in bankruptcy of $300,000.00.

47. ACSTAR negotiated for and received an enhanced status for its $300,000.00 claim to cover its potential out of pocket exposure on the bond. This priority status claim was memorialized in the June 21, 1999 Order. (Ex. I).

48. ACSTAR has also made a claim for subrogation under 11 U.S.C. § 509. 11 U.S.C. § 509(b) provides that the surety is not subrogated to the rights of the creditors to the extent that the surety's claim for reimbursement under 11 U.S.C. § 502 is allowed. Therefore, if the Court deems it appropriate to apply equitable subrogation, which Trustee asserts is contrary to both statutory and case authorities, as well as the underlying facts, ACSTAR's equitable subrogation claim is only for the amount this Court may deem equitable under the circumstances less ACSTAR's previously allowed priority status claim of $300,000.00.

WHEREFORE, Trustee respectively requests that the Court deny ACSTAR's Amended Proof of Claim.

Respectfully submitted, this the 2ND day of November, 1999.

LEWIS & ROBERTS, P.L.L.C.

BY: _____
James A. Roberts, III
State Bar No.: 10495

BY: _____
James T. Johnson
State Bar No.: 19087
Post Office Box 17529
Raleigh, North Carolina 27619-7529
Telephone: (919) 981-0191

NOTICE IS HEREBY GIVEN to the creditor/claimant named above that if no response to the above objection is filed in writing with the CLERK, U.S. BANKRUPTCY COURT, P.O. BOX 1441, RALEIGH, NORTH CAROLINA 27602-1441, within THIRTY (30) DAYS of the date of this objection and notice, the relief requested by the Trustee herein may be granted without hearing or further notice. Any party desiring a hearing must request a hearing in writing with the above Clerk within the time herein set forth; otherwise, no hearing will be conducted unless the Court, in its discretion, directs that a hearing be set. If a hearing is requested, such hearing will be conducted at a date, time and place to be later affixed by the Court and the parties requesting such hearing will be notified accordingly. Any party filing a response and requesting a hearing shall attend the hearing or costs may be assessed against him.

DATE OF OBJECTION AND NOTICE: __Nov 2, 1999__

_____
Trustee in Bankruptcy

00061820.WPD                                17

STATE OF NORTH CAROLINA

COUNTY OF WAKE

HOLMES P. HARDEN, being duly sworn, deposes and says: That he is the duly appointed and acting trustee in bankruptcy for the above-captioned debtor's' estate, that he has read the foregoing and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters therein stated upon information and belief, and as to those matters he believes them to be true.

_____
Holmes P. Harden, Trustee

Sworn to and subscribed before me this 2nd day of November, 1999.

_____
Notary Public

My Commission Expires:

__1/3/04__

00061820.WPD                                    18

## CERTIFICATE OF SERVICE

I, James T. Johnson, Post Office Box 17529, Raleigh, North Carolina 27619-7529, certify:

That I am, and all times hereinafter mentioned was, more than eighteen (18) years of age:

That on the 2nd day of November, 1999, I served copies of the foregoing objection to claims and notice of objection on the creditors named therein and, if known, their counsel of record, at the following addresses:

Marjorie K. Lynch
Bankruptcy Administrator
United States Bankruptcy Court
Post Office Box 3709
Raleigh, North Carolina 27602

Michael P. Flanagan
Ward and Smith, P.A.
120 West Fire Tower Road
Post Office Box 8088
Greenville, North Carolina 27835-8088
Attorneys for ACSTAR

LEWIS & ROBERTS, P.L.L.C.

BY: James T. Johnson
State Bar No.: 19087
Post Office Box 17529
Raleigh, North Carolina 27619-7529
Telephone: (919) 981-0191

00061820.WPD