FILED

NOV 2 1999

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

## WAIVER AND ASSIGNMENT

THIS WAIVER AND ASSIGNMENT made the 20th day of October, 1999, by Stanley

H. Van Etten, an individual (hereinafter "Van Etten"), to Holmes Harden, Chapter 7 Bankruptcy

Trustee (hereinafter "Trustee") in *In Re: International Heritage, Inc.*, case no. 98-02675-5-ATS

(Bankr. E.D.N.C.) and *In Re: International Heritage, Incorporated*, case no. 98-02674-5-ATS

(Bankr. E.D.N.C.) (hereinafter "Bankruptcy Cases").

## WITNESSETH:

WHEREAS, Van Etten has entered into a settlement with the Trustee in the Bankruptcy

Cases and has entered into a settlement with the Securities and Exchange Commission in a civil

action pending in the United States District Court for the Northern District of Georgia and

entitled: *Securities and Exchange Commission vs. International Heritage, Inc., Stanley H. Van

Etten, Claude W. Savage, Larry G. Smith and International Heritage, Incorporated, a Nevada

Corporation*, case no. 1-98-CV-0803-RWS (hereinafter "SEC Litigation"); and

WHEREAS, pursuant to Van Etten's settlements with the Trustee and the Securities and

Exchange Commission, Van Etten has agreed to assign certain assets and waive certain rights.

NOW, THEREFORE, in consideration of his settlements with the Trustee and the

Securities and Exchange Commission, the receipt and sufficient of which are acknowledged, Van

Etten hereby:

    1.    Waives any and all claims, save and except any claims against insurance proceeds

based on his personal claims from Executive Risk and TIG insurance companies, he or any of his

affiliated entities may have in the Bankruptcy Cases, including but not limited to: (a) Proof of



Claim filed in the Bankruptcy Cases by Van Etten in excess of Five Million Four Hundred Twenty Five Thousand Dollars ($5,425,000.00), a copy of which is attached hereto and incorporated herein by reference as Exhibit A; (b) Proof of Claim filed in the Bankruptcy Cases by Mayflower Capital, LLC, an affiliated entity, in the amount of One Million One Hundred Fifty Eight Thousand Five Hundred Twenty Dollars and 04/100 ($1,158,525.04), a copy of which is attached hereto and incorporated herein by reference as Exhibit B; and (c) Proof of Claim filed in the Bankruptcy Cases by Mayflower Holdings, Inc., an affiliated entity, in the amount of One Hundred Thirteen Thousand Four Hundred Fifty Six Dollars ($113,456.00), a copy of which is attached hereto and incorporated herein by reference as Exhibit C;

2.     Assigns to the Trustee any and all claims which he may have against the surety bond posted in the SEC Litigation and the bond collateral in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00) held by ACSTAR Insurance Company, including any reversionary interest, relating to the surety bond posted pursuant to the orders of the United States District Court for the Northern District of Georgia in the SEC Litigation; and

3.     Assigns and transfers all unencumbered and currently owned shares of common stock and options of International Heritage, Incorporated, a Nevada corporation, to the Trustee, which include 361,022 shares of stock and 5,541,800 options.

IN WITNESS WHEREOF, Van Etten has signed and sealed this instrument as of the date hereinabove written.

_____
Stanley H. Van Etten

f:\wp\ vanetten.bew.waiver.doc

2

Form B10 (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT EASTERN   DISTRICT OF NC | **PROOF OF CLAIM** |
|---|---|
| Name of Debtor: International Heritage, Inc. | Case Number 98-02675-5-ATS |

| Name of Creditor (The person or other entity to whom the debtor owes money or property): Stanley H. Van Etten | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars |
|---|---|
| Name and address where notices should be sent: c/o Brent E. Wood Wood & Francis, PLLC P. O. Box 164 Raleigh, NC 27602 Telephone number: (919) 828-0801 | ☐ Check box if you have never received any notices from the bankruptcy court in this case. ☐ Check box if the address differs from the address on the envelope sent to you by the court. |

F I L E D

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT CO.
MAR 30 1999

This Space is for Court Use Only

| Account or other number by which creditor identifies debtor: | Check here if this claim | ☐ replaces ☐ amends   a previously filed claim, dated: _____ |
|---|---|---|

1. **Basis for Claim**
   - ☐ Goods sold
   - ☒ Services performed
   - ☒ Money loaned
   - ☐ Personal injury/wrongful death
   - ☐ Taxes
   - ☒ Other   Equity Investments

   - ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   - ☒ Wages, salaries, and compensation (fill out below)
     Your SS# 266 77 5788
     Unpaid compensation for services performed
     from 08/28/98 to 11/25/98
         (date)      (date)

2. Date debt was incurred: Prior to Nov 25, 1998    3. If court judgment, date obtained: N/A

4. **Total Amount of Claim at Time Case Filed:** $ In excess of $5,420,000
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☒ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle
   ☒ Other Personal Property
   Value of Collateral: $ In excess of $3.5 Million

   Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

6. **Unsecured Priority Claim.**
   ☒ Check this box if you have an unsecured priority claim
   Amount entitled to priority $ 4,300
   Specify the priority of the claim:
   ☒ Wages, salaries, or commissions (up to $4300,) *earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
   ☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
   *Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

7. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. **Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. (See Attached Exhibit A)
   DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9. **Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is For Court Use Only

**EXHIBIT A**

| Date 3/30/99 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Brent E. Wood, Attorney |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:                                    )
INTERNATIONAL HERITAGE, INC.              )        CASE NO.: 98-02675-5-ATS
                                          )        CHAPTER 7
        Debtor.                           )

## EXHIBIT A

As an addition to the proof of claim of Stanley H. Van Etten filed in the above-captioned bankruptcy, Mr. Van Etten will provide the following explanation as to his proof of claim. Mr. Van Etten is entitled to an indemnification from International Heritage pursuant to the employment agreement attached hereto and incorporated herein by reference as Exhibit 1. As part of his indemnification claim, Mr. Van Etten has incurred approximately $265,000 in expenses since the time that the bankruptcy petition was filed by International Heritage, Inc. This includes approximately $225,000 in attorneys fees and approximately $40,000 in other expenses. Mr. Van Etten would contend that his indemnification claim is ongoing and he will be entitled to additional reimbursement in the future.

In addition, Mr. Van Etten is owed approximately $135,000 in unpaid payroll, $4,300 of which would be an unsecured priority claim. This total for payroll was calculated by adding approximately $50,000 in unpaid and uncalculated commissions owed pursuant to the employment agreement attached as Exhibit 1, as well as an additional $85,817.34 in unpaid direct payroll pursuant to that same employment agreement.

Mr. Van Etten's claim also includes $5,000,000 in funds which were provided by Mr. Van Etten to International Heritage, Inc. as part of a bond posted in litigation pending in the Northern District of Georgia. The collateral for that bond which has been posted with Actstar Insurance Company is $3,500,000, and Mr. Van Etten would claim an interest in those funds. As part of this bond agreement, Mr. Van Etten converted options to stock in the amount of $1,500,000. From this $1,500,000 total, International Heritage, Inc. is entitled to credits in approximately the following amount: $190,261.87, $251,293.52, and $64,484.42. These credits are reflected in the documents attached hereto and incorporated herein by reference as Exhibit 2 and 3.

Finally, Mr. Van Etten made an equity investment of approximately $20,000 into International Heritage near the inception of the company. The total of these amounts which are set forth in the claim, before making the credits set forth herein, is $5,420,000.

STATE OF NORTH CAROLINA                    EMPLOYMENT AGREEMENT

COUNTY OF WAKE

This Employment Agreement (hereinafter "Agreement") made and effective as of June
1, 1995, by and between International Heritage, Inc. and International Heritage of Canada, Inc.
(hereinafter collectively referred to as "Employer"), both of which are corporations with
International Heritage, Inc. being duly organized and existing under the laws of the State of
North Carolina, with a place of business at 2626 Glenwood Avenue, Suite 200, City of Raleigh,
County of Wake, and State of North Carolina, and with International Heritage of Canada, Inc.
being duly organized and existing under the laws of Canada, with a place of business at 885
West Georgia Street, Suite 1370, City of Vancouver, Province of British Columbia, and Stanley
H. Van Etten (hereinafter "Employee) with a residence at 11816 Mt. Batten Way, City of
Raleigh, County of Wake, and State of North Carolina. (Throughout the Agreement, Employer
and Employee will collectively be referred to as the "Parties.")

### RECITALS

WHEREAS, Employer is engaged in the business of multi-level network marketing, and
desires to employ the services of Employee as Chief Executive Officer of its current operations
and to assist in the opening and operation of additional regional offices; and

WHEREAS, Employee is willing to be employed by Employer, and Employer is willing
to employ Employee, on the terms, covenants, and conditions set forth in this Agreement.

NOW, THEREFORE, for the reasons set forth above, and in consideration of the mutual
promises and agreements set forth in this Agreement, Employer and Employee agree as follows:

1



## SECTION ONE: EMPLOYMENT

1.      Employer hereby employs, engages, and hires Employee as Chief Executive Officer of Employer to assist Employer in becoming a successful multi-level network marketing company and provide financial and management services to the Employer, and Employee hereby accepts and agrees to such employment, engagement, and hiring, subject to the supervision of and pursuant to the orders, advice, and direction of the Board of Directors of the Employer.

2.      Employee shall perform such other duties as are customarily performed by one holding such position in other, same, or similar businesses or enterprises as that engaged in by Employer, and shall additionally render such specific, other and unrelated services and duties as may be assigned to the Employee from time to time by the Board of Directors of the Employer.

## SECTION TWO: BEST EFFORTS OF EMPLOYEE

Employee agrees that he will at all times faithfully, industriously, and to the best of his ability, experience, and talents, perform all of the duties that may be required of and from him pursuant to the express and implicit terms of this Agreement, to the reasonable satisfaction of Employer. Such duties shall be rendered at 2626 Glenwood Avenue, City of Raleigh, State of North Carolina, and at 995 West Georgia Street, Suite 1370, City of Vancouver, Province of British Columbia, and such other place or places as Employer shall in good faith require on a temporary basis or as the interests, needs, business, or opportunities of Employer shall require.

## SECTION THREE: TERM OF EMPLOYMENT

The term of this Agreement shall be for three (3) years commencing June 1, 1995, and terminating May 31, 1998, subject, however, to prior termination as provided in this Agreement.

2

The execution of this Agreement after June 1, 1995, in no way limits or impacts the enforceability of this Agreement, and Employer hereby ratifies the terms of this Agreement for the time period of June 1, 1995, to the date of execution of this Agreement, and thereafter until termination of this Agreement pursuant to the provisions herein.

## SECTION FOUR: COMPENSATION OF EMPLOYEE

1.     Employer shall pay Employee, and Employee shall accept from Employer, in full payment of Employee's services as the Chief Executive Officer of Employer, a compensation equal to the greater of three percent (3%) of the net revenues of Employer, as defined by general accounting principals, or FOUR HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($425,000.00) per year, payable at least twice each month.[1]

2.     Employer shall reimburse Employee, pursuant to company policy, for all out-of-pocket expenses that Employee shall incur in connection with his services for Employer contemplated by this Agreement on presentation by Employee of appropriate vouchers or receipts for such expenses to Employer.

3.     In addition to the compensation referenced hereinabove, and in partial

---

[1] As of October 31, 1995, Employee has received compensation in the amount of $ 77,905.71 from Employer for services rendered between June 1, 1995, and October 31, 1995. Employer acknowledges that the compensation received by the Employee during this time period is not payment in full pursuant to the compensation agreement referenced above. Instead, the compensation received represents three percent (3%) of the net revenues of Employer as defined by general accounting principals between June 1, 1995, and October 31, 1995, which is less than the $425,000.00 annualized minimum. Therefore, the Employer acknowledges that additional compensation is owed to the Employee for services rendered as the Chief Executive Officer for the period of June 1, 1995, through October 31, 1995, in the amount of $ 99,177.62 . Pursuant to the terms of this Agreement, the Employer agrees to execute a promissory note for the balance owed as compensation, which promissory note shall be payable upon demand and shall bear interest at the rate of eight percent (8%) per annum. Furthermore, the Employer agrees to withhold from said additional compensation the necessary taxes due and owing the federal and state governments with respect to said compensation and withhold from its own gross revenues the necessary matching contribution due and owing the federal and state governments with respect to said compensation.

3

consideration for the guarantees previously executed by the Employee for the benefit of Employer, Employee shall be entitled to a stock bonus of one percent (1%) of the issued and outstanding common stock of Employer as of December 31, 1995, provided that Employer is open and doing business and provided that Employer has achieved gross revenue in excess of $5,000,000.00; and a bonus of two percent (2%) of the issued and outstanding common stock of Employer as of December 31, 1996, provided that Employer is open and doing business and provided that Employer has achieved gross revenue in excess of $25,000,000.00; and a bonus of three percent (3%) of the issued and outstanding common stock of Employer as of December 31, 1997, provided that Employer is open and doing business and provided that Employer has achieved gross revenue in excess of $75,000,000.00; and a bonus of three percent (3%) of the issued and outstanding common stock of Employer as of December 31, 1998, provided that Employer is open and doing business and provided that Employer has achieved gross revenue in excess of $125,000,000.00; and a bonus of three percent (3%) of the issued and outstanding common stock of Employer as of December 31, 1999, provided that Employer is open and doing business and provided that Employer has achieved gross revenue in excess of $200,000,000.00; and a bonus of three percent (3%) of the issued and outstanding common stock of Employer as of December 31, 2000, provided that Employer is open and doing business and provided that Employer has achieved gross revenue in excess of $275,000,000.00.

4.    In addition to the compensation set forth hereinabove, Employee shall receive a semi-annual bonus, which shall be payable no later than July 15th and January 15th (the first such installment being due no later than January 15, 1996, for the initial seven-month term of this agreement), equal to three percent (3%) of the operating profits of Employer before taxes,

4

debt service, and depreciation at that time and determined by the six-month financial statement of Employer as of June 30th and December 30th. For the purpose of this paragraph, debt service shall include any loan to the Employer for the purpose of conducting business which is payable over a period of one (1) year or more.

## SECTION FIVE: OTHER EMPLOYMENT

Employee shall devote a sufficient amount of his time, attention, knowledge, and skills solely to the business and interests of Employer. Employer shall be entitled to all of the benefits, profits, or other issues arising from or incident to all work, services, and advice of Employee and Employee shall not, during the term of this Agreement, be interested directly or indirectly, in any manner, as partner, officer, director, shareholder, advisor, employee, or in any other capacity in any other business similar to Employer's business or any allied trade; provided, however, that nothing contained in this section shall be deemed to prevent or to limit the right of the Employee to invest any of his money in the capital stock or other securities of any corporation whose stock or securities are publicly owned or are regularly traded on any public exchange, nor shall anything contained in this section be deemed to prevent Employee from investing or limiting Employee's right to invest his money in real estate. Furthermore, Employer acknowledges that the Employee currently has a substantial business relationship with Mayflower Holdings, Inc. and Mayflower Capital, LLC, which relationship the Employee shall not have to terminate during the term of this Agreement. The Employer acknowledges that nothing contained in this section shall prevent or limit the right of the Employee to continue his relationship with Mayflower Holdings, Inc. and Mayflower Capital, LLC, during the term of this Agreement, nor shall anything contained in this section prevent or limit the right of the

5

Employee to devote a limited amount of his time, attention, knowledge, and skills to Mayflower

Holdings, Inc.'s and Mayflower Capital, LLC's business or allied trade, so long as such

relationship does not interfere with Employee's performance under this Agreement.

## SECTION SIX: EMPLOYEE'S SERVICES AS DIRECTOR

Employee hereby consents to serve as a director of Employer or any parent, subsidiary,

or corporation affiliated with Employer, if duly elected and qualified, on condition that

Employee receive the same compensation paid to other directors of any such company for their

services as directors.

## SECTION SEVEN: VACATION

Employee shall be entitled to twenty (20) days of paid vacation each year during the term

of this Agreement, the time for such vacation to be determined by mutual agreement between

Employer and Employee.

## SECTION EIGHT: HEALTH AND DEATH BENEFITS

1.      Employer agrees to provide health benefits to the Employee and his immediate

family, which shall include the Employee's spouse and all children of Employee. In the event

Employee selects a health plan other than that provided to all employees of Employer, Employer

shall pay on behalf of Employee the amount that Employee and his immediate family would be

charged under the health care plan provided to all employees of Employer. Any difference in

health care benefit coverage shall be the responsibility of Employee.

2.      Employer agrees to purchase upon the execution of this Agreement a key man

insurance policy in the amount of $2,500,000.00, which will provide a death benefit of

$1,500,000.00 to Employer and a death benefit of $1,000,000.00 to Employee's designated

6

beneficiary or his heirs.

### SECTION NINE: TERMINATION FOR DISABILITY

In spite of anything in this Agreement to the contrary, Employer is hereby given the option to terminate this Agreement in the event that Employee shall, during the term of this Agreement, become permanently disabled as the term "permanently disabled" is fixed and defined in this section. Such option shall be exercised by Employer giving notice to Employee by registered mail addressed to him in care of the Employer at 2626 Glenwood Avenue, Suite 200, City of Raleigh, State of North Carolina, or at such other address as Employee shall designate in writing of Employer's intention to terminate this Agreement on the last day of the month during which such notice is mailed. On the giving of such notice, this Agreement shall cease on the last day of the month for which the notice is so mailed, with the same force and effect as if such last day of the month were the date originally set forth in this Agreement as the termination date of this Agreement; provided, however, that Employee shall receive from Employer compensation pursuant to the terms of this Agreement for a period of one (1) year following the effective date of such termination.

For the purposes of this Agreement, Employee shall be deemed to have become permanently disabled if, during any year of the term of this Agreement, because of ill health, physical or mental disability, or for other causes beyond Employee's control, he shall have been continuously unable or shall have failed to perform his duties under this Agreement for ninety (90) consecutive days, or if, during any year of the term of this Agreement, Employee shall have been unable or shall have failed to perform his duties for a total period of one hundred and twenty (120) days, irrespective of whether or not such days are consecutive. For the purposes

7

of this Agreement, the term "any year of the term of this Agreement" is defined to mean any

twelve (12) calendar months commencing on June 1, 1995, and terminating on May 31, 1998,

during the term of this Agreement.

## SECTION TEN: INDEMNIFICATION

In return for the services provided to Employer by Employee and many risks accepted

by the Employee on behalf of the Employer in the start-up of Employer, Employer shall

indemnify Employee to the fullest extent permitted by law against (1) reasonable expenses,

including attorneys' fees, actually and necessarily incurred by Employee in connection with any

threatened, pending, or completed action, suit, or proceeding, whether civil, criminal,

administrative, or investigative, seeking to hold Employee liable by reason of the fact that

Employee is or was acting in any capacity for Employer, and (2) payments made by Employee

on behalf of Employer in satisfaction of any judgment, money decree, fine, penalty, or

reasonable settlement for which Employee may have become liable in any such action, suit, or

proceeding.  In the event that there is any threatened or pending action, suit, or proceeding

initiated against the Employee pursuant to which the Employee may become liable, the Employee

shall have the right to demand and obtain from the Employer an advance of TWELVE

THOUSAND AND NO/100 DOLLARS ($12,000.00) to insure payment of any judgment,

money decree, fine, or penalty, which amount shall be deposited in the trust account of

Employee's chosen counsel, but which shall not relieve Employer from satisfying Employee's

attorneys' fees and expenses on a monthly basis while the action, suit, or proceeding is pending.

## SECTION ELEVEN: TERMINATION OF AGREEMENT

1.    This Agreement may be terminated by either party on thirty (30) days written

8

notice to the other; however, Employer can terminate this agreement "for cause" only, which cause must be set forth specifically within the written notice of termination provided to Employee. Within the Agreement, "for cause" termination will be limited to these situations when a majority of the Board of Directors has determined that the Employee has been grossly negligent with respect to his duties as Chief Executive Officer or determine that Employee is in material breach of this Agreement. If Employer shall so terminate this Agreement, Employee shall be entitled to compensation for one (1) year pursuant to the terms of this Agreement from the date of termination. If Employer terminates this Agreement, Employer will not be relieved of any obligation under this Agreement during the one (1) year period of full compensation. If Employee shall so terminate this Agreement, he shall be entitled to compensation for a period of six (6) months pursuant to the terms of this Agreement from the date of termination. Furthermore, regardless of how or when this Agreement is terminated, Employer shall at no time be relieved of its obligation to indemnify Employee pursuant to the terms of this Agreement.

2.      Even though the initial term of employment shall terminate on May 31, 1998, this Agreement shall automatically renew for successive three-year periods unless written notice of the termination of this Agreement is provided by one party to the other at least ninety (90) days prior to the end of the initial term of this Agreement or at the end of each successive term of this Agreement. Furthermore, the Employer agrees not to terminate this Agreement at the end of the initial term or any successive term unless good cause exists to terminate this Agreement, and Employer agrees to negotiate in good faith with the Employee at the end of the initial term of this Agreement and at the end of each successive term of this Agreement so that Employee

will be provided an employment and compensation package consistent with the value that Employee provides to Employer.

## SECTION TWELVE: AGREEMENTS OUTSIDE OF CONTRACT

This Agreement contains the complete understanding and agreement concerning the employment arrangement between the Parties and shall, as of the effective date hereof, supersede all other agreements, representations, promises or understandings, written or oral, between the Parties with respect to the subject matter of this Agreement.

## SECTION THIRTEEN: MODIFICATION OF AGREEMENT

Any modification of this Agreement or additional obligation assumed by either party in connection with the Agreement shall be binding only if evidenced in writing signed by the Parties or any authorized representative of the Parties.

## SECTION FOURTEEN: ARBITRATION

If there is a dispute over payment of fees or expenses under this Agreement, the dispute will be resolved by binding arbitration before the American Arbitration Association, and Employee and Employer agree to be bound by the final decision of that arbitration. Any prevailing party in arbitration shall have the right to recover all costs and fees, to include attorneys' fees incident to the arbitration. A demand for arbitration shall be made within a reasonable time after the claim, dispute, or other matter in question has arisen and in no event shall the demand for arbitration be made after the date when the institution of legal or equitable proceedings based on such dispute, claim, or controversy would be barred by the applicable statute of limitations.

## SECTION FIFTEEN: EFFECT OF PARTIAL INVALIDITY

The invalidity of any portion of this Agreement will not and shall not be deemed to affect the validity of any other provision. In the event that any provision of this Agreement is held to be invalid, the Parties agree that the remaining provisions shall be deemed to be in full force and effect as if they had been executed by both Parties subsequent to the expungement of the invalid provision.

## SECTION SIXTEEN: CHOICE OF LAW

It is the intention of the Parties to this Agreement that the performance under this Agreement, and all suits and special proceedings under this Agreement be construed in accordance with and under and pursuant to the laws of the State of North Carolina in that, in any action, special proceeding or any other proceeding that may be brought arising out of, in connection, or by reason of this Agreement, the laws of the State of North Carolina shall be applicable and shall govern to the exclusion of the law of any other forum, without regard to the jurisdiction in which any action or special proceeding may be instituted.

## SECTION SEVENTEEN: NO WAIVER

The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

## SECTION EIGHTEEN: ATTORNEYS' FEES

In the event that any action is filed in relation to this Agreement, the unsuccessful party

11

in the action shall pay to the successful party, in addition to all sums that either party may be called on to pay, a reasonable sum for the successful party's attorneys' fees.

### SECTION NINETEEN: PARAGRAPH HEADINGS

The titles to the paragraphs of this Agreement are solely for the convenience for the Parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this Agreement.

### SECTION TWENTY: PROMISSORY NOTE

Pursuant to the terms of this Agreement, and simultaneous with the execution of this Agreement, Employer shall execute a Promissory Note for the benefit of Employee for unpaid compensation between the period of June 1, 1995, and October 31, 1995.

IN WITNESS WHEREOF, each party to this Agreement has caused it to be executed under seal and on the date indicated below.

12

**EMPLOYEE**

_____ (SEAL)
Stanley H. Van Etten

DATE SIGNED: __12/11/95__

**EMPLOYER**

_____
Claude Savage, Director of Employer

DATE SIGNED: __12/11/95__

_____
Larry Smith, Director of Employer

DATE SIGNED: __12-18-95__

(CORPORATE SEAL)

13

ATTEST: I, Dwight Hallman, Secretary of International Heritage, Inc., a North Carolina corporation, and Secretary of International Heritage of Canada, Inc., certify that the Employment Agreement hereinabove was accepted and adopted by the Board of Directors of International Heritage, Inc. and International Heritage of Canada, Inc. attended by all members of the Board of Directors, at a meeting held on the _____ day of _____, 1995, and that the unanimous written consent of the Board of Directors was acknowledged by the signatures hereinabove, with the only remaining member of the Board of Directors, Stanley H. Van Etten, recusing himself from consideration of this proposal, and that the Board of Directors authorized that this Employment Agreement become a resolution of the corporation to be duly entered in the records of the Board of Directors meetings and consents, and is the only resolution adopted by the Board of Directors alluding to the subject matter of this resolution.

Witness by hand and the seal of the corporation on the _____ day of _____, 1995.

(CORPORATE SEAL)

_____
Dwight Hallman
Secretary of International Heritage, Inc. and
International Heritage of Canada, Inc.

c:\wp\agreot.van

14

NORTH CAROLINA

WAKE COUNTY                                                    **BILL OF SALE**

THIS BILL OF SALE is made this 12th day of November, 1998, by International Heritage, Incorporated (the "Seller") to Stanley H. Van Etten (the "Buyer").

Seller, for and in consideration of the reduction of obligations owed by the Seller to Buyer in the amount of $190,261.87, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has bargained and sold and by these presents does bargain, sell, grant, assign, transfer, set over, deliver, and convey unto Buyer, his heirs and assigns, certain articles of personal property, more particularly described as follows (the "Personal Property"): See attached Exhibits 1 and 2, which are incorporated herein by reference.

To have and to hold the Personal Property to the Buyer and his heirs and assigns in fee simple.

And Seller covenants that he is seized of said property in fee and has the right to convey the same in fee simple, that the same is free and clear of all encumbrances whatsoever, and that he will warrant and defend the title thereto against the lawful claims of all persons whomsoever.

FURTHER, the Seller hereby covenants and agrees to sign, execute, and deliver, or cause to be signed, executed, and delivered, and to do or make, or cause to be done or made, upon reasonable request of the Buyer, any and all agreements, instruments, papers, deeds, acts, or things, supplemental, confirmatory, or otherwise, as may be reasonably required by the Buyer for the purpose of or in connection with acquiring or more effectually vesting in the Buyer or

1



evidencing the vesting in the Buyer of all the right, title, and interest of the Seller in and to the Personal Property.

THE SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WHETHER OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, THE BUYER HAS MADE AND RELIED UPON HIS OWN INSPECTION OF THE PERSONAL PROPERTY AND ACCEPTS IT IN "AS IS" CONDITION.

IN TESTIMONY WHEREOF, the Seller has hereunto caused this Bill of Sale to be executed on its behalf the day and year first above written.

INTERNATIONAL HERITAGE, INCORPORATED

By: _____
Stanley H. Van Etten, President

ATTEST:

_Anna M. Washburn_
_____ Secretary (Corporate Seal)

NORTH CAROLINA

WAKE COUNTY

I, a Notary Public for said County and State, certify that _Anna M. Washburn_ personally came before me this day and acknowledged that (s)he is _____ Secretary of INTERNATIONAL HERITAGE, INCORPORATED, a corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its President, sealed with its corporate seal, and attested by him/her as its _____ Secretary.

2

Witness my hand and official seal or stamp, this the 18th day of November, 1998.

Notary Public
My Commission Expires: 7-29-2003

h:\wp\vanetten.billofsaleperprop2.doc

3

## International Heritage Furniture Proposal
## to Dynamic Essentials

| Qty | Description | IHI Cost | Selling Price .@.35 | Item Total at .35 | Selling Price .@.45 | Item Total at .45 |
|---|---|---|---|---|---|---|
| 1 | 8 Person Conf Table | $1,500 | $525 | $525 | $675 | $675 |
| 4 | Conf Room Chairs | $300 | $105 | $420 | $135 | $540 |
| 12 | Training Room Chairs | $217 | $76 | $911 | $98 | $1,172 |
| 3 | Sm round conf table 3-4 person | $280 | $98 | $294 | $126 | $378 |
| 2 | 48X96 Training Room Table - Green | $313 | $110 | $219 | $141 | $282 |
| 2 | RH Exec Desks w/Return | $805 | $282 | $564 | $362 | $725 |
| 3 | LH Exec Desks w/Return | $805 | $282 | $845 | $362 | $1,087 |
| 1 | Exec Desks double Ped | $805 | $282 | $282 | $362 | $362 |
| 3 | Secretarial Desk w\ lft return | $460 | $161 | $483 | $207 | $621 |
| 1 | Secretarial Desk w\ rh return | $460 | $161 | $161 | $207 | $207 |
| 1 | Mah. Credenza | $510 | $179 | $179 | $230 | $230 |
| 4 | Mahagony Bookcase | $350 | $123 | $490 | $158 | $630 |
| 3 | Mah. Lateral File Cabinet | $370 | $130 | $389 | $167 | $500 |
| 4 | Black High Back Exec Ch | $291 | $102 | $407 | $131 | $524 |
| 5 | Burgundy Side Chairs | $175 | $61 | $306 | $79 | $394 |
| 2 | GrnDsk w/Hch,kbd Tray | $970 | $340 | $679 | $437 | $873 |
| 22 | Black Task Chairs | $250 | $88 | $1,925 | $113 | $2,475 |
| 1 | Lobby Couch | $750 | $263 | $263 | $338 | $338 |
| 2 | Lobby Coffee table- 1 from SF 1 from Glenwood | $185 | $65 | $130 | $83 | $167 |
| 2 | Lobby Side Table | $95 | $33 | $67 | $43 | $86 |
| 2 | Lobby Side Chair | $415 | $145 | $291 | $187 | $374 |
| 1 | Lobby Corn Plant w/brass planter | $90 | $32 | $32 | $41 | $41 |
| 1 | Lobby green/white plant w/brass planter | $90 | $32 | $32 | $41 | $41 |
| 1 | Lobby Coffee table (Jeff's office) | $185 | $65 | $65 | $83 | $83 |
| 1 | Exec green leather chair (JB's office) | $400 | $140 | $140 | $180 | $180 |
| 1 | 4 drawer putty lateral cabinet 72" | $170 | $60 | $60 | $77 | $77 |
| 2 | 4 drawer gray lateral cabinet 72" | $170 | $60 | $119 | $77 | $153 |
| 2 | 5 drawer gray lateral filing cabinet 78" | $595 | $208 | $417 | $268 | $536 |
| 1 | 5 drawer putty lateral filing cabinet 78" | $595 | $208 | $208 | $268 | $268 |
| 4 | Black File Cabinets | $135 | $47 | $189 | $61 | $243 |
| 1 | Fire King Gray Lateral Cabinet | $1,795 | $628 | $628 | $808 | $808 |
| 1 | Gray supply cabinet w/lock (Mailroom) | $134 | $47 | $47 | $60 | $60 |
| 1 | Lobby Welcome Sign w/letters | $50 | $18 | $18 | $23 | $23 |
| 1 | Gray printer stand (Diana's area) | $95 | $33 | $33 | $43 | $43 |
| 15 | 30X60 Workstation Table | $140 | $49 | $735 | $63 | $945 |
| 15 | 3-drawer Workstation Pedestals | $95 | $33 | $499 | $43 | $641 |
| 35 | Bevis 48X60 Panel Charcoal | $170 | $60 | $2,083 | $77 | $2,678 |
| 1 | Leather Reception Couch from SF | $1,795 | $628 | $628 | $808 | $808 |
| 1 | Conference Room Credenza from SF | $450 | $158 | $158 | $203 | $203 |
| 1 | Reception Desk From SF | $570 | $200 | $200 | $257 | $257 |
| 20 | Successories Prints from SF | $100 | $35 | $700 | $45 | $900 |
| | | | totals: | $16,815 | or | $21,619 |

**IHI cost on these materials $48,043



EXHIBIT
1

| Units | Item | IHI Cost | 50% Cost | FMV | Ext FMV | Location | NC |
|---|---|---|---|---|---|---|---|
| 1 | COMPAQ Prosignia 200 6/233 4.3 SCSI 10/100N | 2292.00 | 1146.00 | 1146.00 | 1,146.00 | Canada | 1 |
| 1 | HP DAT 8 GIG Backup Tape Drive | 635.36 | 317.68 | 317.68 | 317.68 | Canada | 1 |
| 1 | Seagate Backup Exec - SS Edition | 488.11 | 244.06 | 244.06 | 244.06 | Canada | 1 |
| 1 | Windows NT - 4.0 10 User, Network Op System | 1129.00 | 564.50 | 564.50 | 564.50 | Canada | 1 |
| 1 | MS Exchange 5.5 - 10 User, Mail System | 1386.13 | 693.07 | 693.07 | 693.07 | Canada | 1 |
| 1 | JRG - ICE top - 6 User, Connectivity to K220 | 388.84 | 194.42 | 194.42 | 194.42 | Canada | 1 |
| 2 | HP 4000TN 2, 250 sheet Trays with JetDirect | 1625.00 | 812.50 | 812.50 | 1,625.00 | Canada | 1 |
|  | Monitor For Server | 235.00 | 117.50 | 117.50 | 117.50 | Canada | 1 |
|  | 3.5 to 5 1/4 bezel for Tape Drive | 7.13 | 3.57 | 3.57 | 3.57 | Canada | 1 |
| 1 | Cisco 1604 | 1402.35 | 701.16 | 701.18 | 701.18 | Canada | 1 |
| 1 | APC 400 Back UPS | 137.47 | 68.74 | 54.99 | 54.99 | Canada | 1 |
| 1 | APC 700 UPS | 448.10 | 224.05 | 224.05 | 224.05 | Canada | 1 |
| 1 | 3COM HUB - 12 port | 200.00 | 100.00 | 100.00 | 100.00 | Canada | 1 |
| 1 | 100BT Switch | 1844.00 | 922.00 | 737.60 | 737.60 | Storage | 1 |
| 3 | 3Com TP/12 Hub | 346.00 | 173.00 | 100.00 | 300.00 | Storage | 1 |
| 1 | Compaq Proliant 2500 | 11000.00 | 5500.00 | 4400.00 | 4,400.00 | Storage | 1 |
| 1 | NT Server - 10 CAL | 1129.00 | 564.50 | 564.50 | 564.50 | Storage | 1 |
| 1 | MS Exchange 5.5 - 10 User, Mail System | 1386.13 | 693.07 | 693.07 | 693.07 | Storage | 1 |
| 1 | APC Smart UPS 2200 | $125,000.00 | $62,500.00 | $70,000.00 | 70,000.00 | Storage | 1 |
| 1 | HP k370 | 4,278.00 | 2,139.00 | 2,800.00 | 2,800.00 | Storage | 1 |
| 1 | HP Laserjet 8000N | 1,606.00 | 903.00 | 734.00 | 734.00 | Storage | 1 |
| 1 | Cisco 2924 Router | 655.00 | 327.50 | 266.50 | 266.50 | Storage | 1 |
| 1 | ISDN Module | 1,387.00 | 693.50 | 560.00 | 560.00 | Storage | 1 |
| 1 | Serial Module | 346.00 | 173.00 | 100.00 | 300.00 | Storage | 1 |
| 1 | Alpha 4160c Reader Board | 5,000.00 | 2,500.00 | 2,000.00 | 2,000.00 | Storage | 1 |
| 1 | ADIX M/Links reporting package/Admn PC | 4,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | Storage | 1 |
| 1 | MS Exchange 5.5 - 10 User, Mail System | 50,000.00 | $25,000.00 | $23,000.00 | 25,000.00 | Storage | 1 |
| 1 | NEC/NeFAX 595 | - | - | 300.00 | 300.00 | Wicker D | 1 |
| 1 | Sharp FO-5550 | - | - | 300.00 | 300.00 | Wicker D | 1 |
| 3 | Superstack II Entry Hub - 24 Port | 815.00 | 407.50 | 326.00 | 978.00 | Storage | 2 |
| 2 | Superstack II Switch 1000 | 2,300.00 | 1,150.00 | 840.00 | 1,680.00 | Storage | 2 |
| 2 | APC Backups 400 UPS | 158.00 | 79.00 | 45.00 | 90.00 | Storage | 2 |
| 1 | Toshiba Portable TECRA 500CDT 16MB | 4,245.89 | 2,122.95 | 2,122.95 | 2,122.62 | Chris | 1 |
| 3 | Lasejet 4000TN | 2,025.00 | 1,012.50 | 1,000.00 | 3,000.00 | Storage | 1 |
| 3 | 19' Rack | 80.00 | 40.00 | 35.00 | 105.00 | Storage | 2 |
| 1 | Jason Time Data Time Clock (w/Card) | 4,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | Storage | 1 |
| 1 | HP Office Jet 630 | 701.18 | 350.59 | 350.58 | 350.59 | John | 1 |
| 4 | Workstations - P166/16 Meg | 1,404.00 | 702.00 | 550.00 | 2,200.00 | Canada | 4 |
| 4 | P150 with kbd/monitor/mouse/surge | 1,625.40 | 812.70 | 500.00 | 2,000.00 | Wicker D | 4 |
| 5 | 24 Port AMP Cat 5 Patch Panels | 103.00 | 51.50 | 50.00 | 250.00 | Storage | 5 |
| 12 | P133 with kbd/monitor/mouse/surge | 1,551.88 | 775.94 | 425.00 | 5,100.00 | Wicker D | 10 |
| 18 | P166 with kbd/monitor/mouse/surge | 1,562.64 | 781.32 | 550.00 | 9,900.00 | Wicker D | 6 |
| 38 | P120 with kbd/monitor/mouse/surge | 1,731.32 | 865.66 | 400.00 | 15,200.00 | Wicker D | 6 |
| 72 | ADIX 12 Button w/display & Speakerphone | 250.00 | 125.00 | 90.00 | 6,460.00 | Storage | 40 |
| | TOTALS | | | | $ 168,642.57 | | 0 |



EXHIBIT
2

NORTH CAROLINA

WAKE COUNTY                                                    **BILL OF SALE**

THIS BILL OF SALE is made this 18th day of November, 1998, by International Heritage, Incorporated (the "Seller") to Stanley H. Van Etten (the "Buyer").

Seller, for and in consideration of the reduction of obligations owed by the Seller to Buyer in the amount of $64,484.42, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has bargained and sold and by these presents does bargain, sell, grant, assign, transfer, set over, deliver, and convey unto Buyer, his heirs and assigns, certain articles of personal property, more particularly described as follows (the "Personal Property"): See attached Exhibit 1, which is incorporated herein by reference.

To have and to hold the Personal Property to the Buyer and his heirs and assigns in fee simple.

And Seller covenants that he is seized of said property in fee and has the right to convey the same in fee simple, that the same is free and clear of all encumbrances whatsoever, and that he will warrant and defend the title thereto against the lawful claims of all persons whomsoever.

FURTHER, the Seller hereby covenants and agrees to sign, execute, and deliver, or cause to be signed, executed, and delivered, and to do or make, or cause to be done or made, upon reasonable request of the Buyer, any and all agreements, instruments, papers, deeds, acts, or things, supplemental, confirmatory, or otherwise, as may be reasonably required by the Buyer for the purpose of or in connection with acquiring or more effectually vesting in the Buyer or

1



evidencing the vesting in the Buyer of all the right, title, and interest of the Seller in and to the Personal Property.

THE SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WHETHER OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, THE BUYER HAS MADE AND RELIED UPON HIS OWN INSPECTION OF THE PERSONAL PROPERTY AND ACCEPTS IT IN "AS IS" CONDITION.

IN TESTIMONY WHEREOF, the Seller has hereunto caused this Bill of Sale to be executed on its behalf the day and year first above written.

INTERNATIONAL HERITAGE, INCORPORATED

By:  _____
      Stanley H. Van Etten, President

ATTEST:

_Anna M. Washburn_
_____ Secretary (Corporate Seal)

NORTH CAROLINA

WAKE COUNTY

1, a Notary Public for said County and State, certify that _Anna M. Washburn_ personally came before me this day and acknowledged that (s)he is _____ Secretary of INTERNATIONAL HERITAGE, INCORPORATED, a corporation, and that by authority duly

2

given and as the act of the corporation, the foregoing instrument was signed in its name by its

President, sealed with its corporate seal, and attested by him/her as its _____ _____ Secretary.

Witness my hand and official seal or stamp, this the 18th day of November, 1998.

Angela F Cox

Notary Public
My Commission Expires: 7-29-2003

f:\wp\vanetten.billofsalcpcrprop5.doc

3

NUV-17-06 TUE 06:55 PM

# INTERNATIONAL HERITAGE INVENTORY LIST
## SOLD TO STAN VAN ETTEN

| ITEM # | QTY | CURRENT VALUE |
|--------|-----|---------------|
| 252 | 1 | $10.15 |
| 259 | 1 | $8.75 |
| 263 | 5 | $91.00 |
| 266 | 1 | $9.10 |
| 342 | 1 | $10.15 |
| 400 | 3 | $367.50 |
| 403 | 11 | $1,455.30 |
| 405 | 1 | $13.65 |
| 406 | 2 | $87.50 |
| 407 | 2 | $21.70 |
| 408 | 3 | $88.10 |
| 409 | 10 | $1,750.00 |
| 410 | 9 | $2,794.05 |
| 412 | 1 | $14.00 |
| 413 | 2 | $28.70 |
| 414 | 3 | $63.00 |
| 415 | 8 | $291.20 |
| 416 | 5 | $280.00 |
| 417 | 7 | $612.50 |
| 418 | 11 | $2,225.30 |
| 419 | 1 | $104.65 |
| 420 | 2 | $37.80 |
| 421 | 11 | $2,806.65 |
| 422 | 9 | $1,165.50 |
| 423 | 17 | $2,165.80 |
| 424 | 3 | $98.70 |
| 425 | 6 | $420.00 |
| 437 | 1 | $35.70 |
| 438 | 1 | $82.86 |
| 441 | 1 | $31.23 |
| 443 | 1 | $30.41 |
| 445 | 3 | $399.50 |
| 449 | 1 | $98.35 |
| 455 | 4 | $378.42 |
| 456 | 2 | $164.50 |
| 457 | 8 | $822.50 |
| 463 | 7 | $531.65 |
| 464 | 8 | $838.40 |
| 467 | 5 | $285.75 |
| 469 | 1 | $68.60 |
| 470 | 2 | $41.30 |
| 472 | 3 | $179.55 |
| 481 | 1 | $62.30 |
| 483 | 12 | $818.00 |
| 490 | 1 | $29.40 |
| 491 | 2 | $68.60 |
| 492 | 1 | $27.99 |
| 493 | 1 | $16.80 |
| 509 | 1 | $105.00 |

Products are identified by item numbers.
All products can be found in the International Heritage, Inc. product catalogs.

1

# INTERNATIONAL HERITAGE INVENTORY LIST
## SOLD TO STAN VAN ETTEN

| | | |
|---|---|---|
| 533 | 1 | $56.88 |
| 534 | 1 | $49.00 |
| 553 | 1 | $63.88 |
| 562 | 2 | $385.00 |
| 563 | 1 | $122.50 |
| 564 | 2 | $332.50 |
| 854 | 1 | $26.25 |
| 2058 | 1 | $81.55 |
| 2072 | 2 | $53.66 |
| 2088 | 1 | $175.00 |
| 2095 | 1 | $40.60 |
| 2106 | 1 | $59.15 |
| 2108 | 1 | $157.50 |
| 2109 | 1 | $59.15 |
| 2126 | 1 | $140.00 |
| 2131 | 1 | $57.75 |
| 2158 | 1 | $415.07 |
| 2174 | 1 | $81.25 |
| 2180 | 1 | $103.25 |
| 2191 | 1 | $54.25 |
| 2237 | 1 | $454.30 |
| 2238 | 1 | $454.30 |
| 2281 | 124 | $6,727.00 |
| 2284 | 1 | $23.80 |
| 2316 | 1 | $68.25 |
| 2320 | 1 | $63.00 |
| 4005 | 1 | $463.75 |
| 4008 | 1 | $772.10 |
| 4016 | 1 | $409.85 |
| 4017 | 1 | $650.65 |
| 4022 | 1 | $213.15 |
| 4028 | 1 | $171.15 |
| 4039 | 1 | $957.25 |
| 4047 | 1 | $106.75 |
| 4050 | 1 | $122.50 |
| 4063 | 1 | $185.15 |
| 4071 | 1 | $185.15 |
| 4073 | 1 | $185.15 |
| 4102 | 1 | $32.20 |
| 4107 | 1 | $21.00 |
| 4114 | 3 | $49.35 |
| 4116 | 1 | $15.40 |
| 4206 | 2 | $224.00 |
| 4210 | 1 | $112.00 |
| 4211 | 4 | $448.00 |
| 4307 | 1 | $16.80 |
| 4319 | 1 | $29.40 |
| 4362 | 2 | $31.50 |
| 4363 | 1 | $13.86 |
| 4367 | 1 | $13.86 |
| 4395 | 1 | $24.61 |

Products are identified by item numbers.
All products can be found in the International Heritage, Inc. product catalogs.

## INTERNATIONAL HERITAGE INVENTORY LIST
## SOLD TO STAN VAN ETTEN

| | | |
|---|---|---|
| 4408 | 3 | $89.83 |
| 4416 | 1 | $24.15 |
| 5062 | 1 | $52.60 |
| 5091 | 8 | $991.76 |
| 5092 | 12 | $1,487.64 |
| 5095 | 1 | $111.72 |
| 5096 | 1 | $111.72 |
| 5097 | 1 | $87.02 |
| 5099 | 2 | $406.90 |
| 5122 | 1 | $157.50 |
| 5128 | 1 | $157.50 |
| 5132 | 1 | $104.35 |
| 5141 | 1 | $114.27 |
| 5144 | 1 | $61.23 |
| 5157 | 4 | $457.80 |
| 5158 | 12 | $1,373.40 |
| 5205 | 1 | $52.50 |
| 5209 | 1 | $108.50 |
| 5210 | 1 | $118.13 |
| 5216 | 1 | $70.00 |
| 5221 | 2 | $70.00 |
| 5237 | 2 | $131.36 |
| 5258 | 2 | $315.00 |
| 5262 | 1 | $63.00 |
| 5272 | 3 | $144.90 |
| 5273 | 3 | $211.05 |
| 5274 | 3 | $255.15 |
| 5278 | 1 | $50.40 |
| 5281 | 1 | $89.25 |
| 5282 | 1 | $74.55 |
| 5284 | 3 | $337.05 |
| 5286 | 1 | $56.70 |
| 5291 | 1 | $152.25 |
| 5292 | 1 | $152.25 |
| 5293 | 1 | $152.25 |
| 5294 | 2 | $401.10 |
| 5298 | 2 | $186.90 |
| 5300 | 3 | $463.05 |
| 5302 | 1 | $283.50 |
| 5308 | 1 | $50.26 |
| 6485 | 1 | $105.00 |
| 7314 | 1 | $76.65 |
| 8218 | 1 | $36.05 |
| 8230 | 2 | $72.10 |
| 9101 | 1 | $124.25 |
| 9206 | 2 | $140.00 |
| 9403 | 3 | $262.50 |
| 40681 | 1 | $31.15 |
| 5126A | 1 | $69.65 |
| 5126B | 2 | $173.60 |
| 5128A | 1 | $75.95 |

Products are identified by item numbers.
All products can be found in the International Heritage, Inc. product catalogs.

3

## INTERNATIONAL HERITAGE INVENTORY LIST
## SOLD TO STAN VAN ETTEN

| | | |
|---|---|---|
| 5130A | 3 | $208.95 |
| 5141A | 2 | $136.69 |
| 5147A | 1 | $63.17 |
| 5216B | 1 | $149.63 |
| 720A | 1 | $77.91 |
| 720B | 1 | $77.91 |
| PR1015 | 1 | $189.00 |
| PR1019 | 2 | $378.00 |
| PR1021 | 1 | $189.00 |
| PR1024 | 1 | $189.00 |
| PR1028 | 27 | $5,103.00 |
| PR1029 | 1 | $189.00 |
| PR1030 | 5 | $945.00 |
| PR1031 | 2 | $378.00 |
| PR1032 | 5 | $945.00 |
| PR1037 | 6 | $1,134.00 |
| PR1038 | 2 | $378.00 |
| PR1043 | 1 | $189.00 |
| PR1047 | 1 | $189.00 |
| PR1066 | 1 | $189.00 |
| PR1069 | 1 | $189.00 |
| PR1088 | 7 | $1,323.00 |
| PR1090 | 1 | $189.00 |
| PR1091 | 4 | $756.00 |
| PR1092 | 4 | $756.00 |
| PR1093 | 1 | $189.00 |

| | | |
|---|---|---|
| MISC | | |
| | 2 | $24.50 |
| | 3 | $10.64 |
| | 11 | $77.00 |
| | 1 | $6.30 |
| | 1 | $31.50 |
| | 4 | $126.00 |
| | 8 | $252.00 |
| | 1 | $38.85 |
| | 1 | $35.61 |
| | 2 | $89.30 |
| | 2 | $37.80 |
| | 22 | $369.60 |
| | 1 | $81.95 |
| | 1 | $31.76 |
| | | $64,484.42 |

Products are identified by item numbers.
All products can be found in the International Heritage, Inc. product catalogs.

Form B10 (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT Eastern . | DISTRICT OF . NC . | |
|---|---|---|

| Name of Debtor:<br>International Heritage, Inc. | Case Number<br>98-02675-5-ATS |
|---|---|

**F I L E D**

MAR 30 1999

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Mayflower Capital, LLC | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars |
|---|---|

| Name and address where notices should be sent:<br>c/o Brent E. Wood<br>Wood & Francis, PLLC<br>P. O. Box 164<br>Raleigh, NC 27602<br>Telephone number: (919) 828-0801 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
|---|---|

This Space is for Court Use Only

| Account or other number by which creditor identifies debtor: | Check here if this claim | ☐ replaces<br>☐ amends   a previously filed claim, dated: _____ |
|---|---|---|

**1.** Basis for Claim
- ☐ Goods sold
- ☐ Services performed
- ☒☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)

Your SS# _____
Unpaid compensation for services performed
from _____ to _____
(date)        (date)

**2.** Date debt was incurred: Various Dates - See Att.   **3.** If court judgment, date obtained: N/A

**4.** Total Amount of Claim at Time Case Filed:    $ 1,158,520.04
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5.** Secured Claim.
☒☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☒☒ Other   Personal Property
Value of Collateral: $   unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6.** Unsecured Priority Claim.
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4300), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7.** Credits:   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.   (See attached Exhibit A)

**8.** Supporting Documents:   Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.   (See attached Exhibit A)
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9.** Date-Stamped Copy: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is For Court Use Only

**EXHIBIT**
**B**

Date: 3-30-99   Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

Brent E. Wood, Attorney

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:                                        )
INTERNATIONAL HERITAGE, INC.                  )    CASE NO.: 98-02675-5-ATS
                                              )    CHAPTER 7
        Debtor.                               )

## EXHIBIT A

As an addition to the proof of claim of Mayflower Capital, LLC filed in the above-captioned bankruptcy, Mayflower Capital, LLC will offer the following information relating to its claim. Mayflower Capital, LLC made the following loans to International Heritage, Inc.: $50,000 on June 16, 1998; $700,000 on June 12, 1998; $500,000 on July 10, 1998; $100,000 on October 14, 1998; and $75,188.08 on or about November 20, 1998. According to the calculations of Mayflower Capital, LLC, the total amount owed by International Heritage, Inc. to Mayflower Capital, LLC is $1,158,520.04. From this amount, International Heritage, Inc. is entitled to a credit of $26,069.50. Attached hereto as Exhibit 1 through 3 are the promissory notes relating to these loans. Attached hereto as Exhibit 4 is a breakdown for one of these loans, which was a covering of payroll for International Heritage, Inc. Attached hereto as Exhibit 5 is the credit to be applied to this debt owed.

JUSTIFICATION:                  as evidenced by
this Note has been _____ led in full this
__10th__ day of _July_ ____ 19 98
Signed: _____

# PROMISSORY NOTE

_Raleigh_____, N.C.

_June_ __16__, 19 _98_

FOR VALUE RECEIVED the undersigned, jointly and severally, promise to pay to _Mayflower Capital, LLC_____

_____, or order,

the principal sum of _$700,000 + $50,000_____

DOLLARS ( $ _____ ), with interest from _6/12/98 for $700,000_, at the rate of _twelve_
                                                  _6/16/98 for $ 50,000._

per cent ( _12_ %) per annum on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of America, at

the office of _____

or at such place as the legal holder hereof may designate in writing. It is understood and agreed that additional amounts may be advanced by the holder hereof as provided in the instruments, if any, securing this Note and such advances will be added to the principal of this Note and will accrue interest at the above specified rate of interest from the date of advance until paid. The principal and interest shall be due and payable as follows:

_payable as first available funds (when IHI bond is modified with_
_court). In addition, a $10,000 fee will be charged beyond the above_
_referenced interest rate._

If not sooner paid, the entire remaining indebtedness shall be due and payable on _____

If payable in installments, each such installment shall, unless otherwise provided, be applied first to payment of interest then accrued and due on the unpaid principal balance, with the remainder applied to the unpaid principal.

Unless otherwise provided, this Note may be prepaid in full or in part at any time without penalty or premium. Partial prepayments shall be applied to installments due in reverse order of their maturity.

In the event (a) default in payment of any installment of principal or interest hereof as the same becomes due and such default is not cured within ten (10) days from the due date, or (b) default under the terms of any instrument securing this Note, and such default is not cured within fifteen (15) days after written notice to maker, then in either such event the holder may without further notice, declare the remainder of the principal sum, together with all interest accrued thereon and, the prepayment premium, if any, at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The unpaid principal of this Note and any part thereof, accrued interest and all other sums due under this Note and the Deed of Trust,

if any, shall bear interest at the rate of _____ per cent ( _____ %) per annum after default until paid.

All parties to this Note, including maker and any sureties, endorsers, or guarantors hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note and the Deed of Trust notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

Upon default the holder of this Note hereby agree to pay to the holder reasonable attorney's fees not exceeding a sum equal to fifteen percent (15%) of the outstanding balance owing on said Note, plus all other reasonable expenses incurred by the holder in exercising any of the holder's rights and remedies upon default. The rights and remedies of the holder as provided in this Note and any instrument securing this Note shall be cumulative and may be pursued singly, successively, or together against the property described in the Deed of Trust or any other funds, property or security held by the holder for payment or security, in the sole discretion of the holder. The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any of them at another time.

This Note is to be governed and construed in accordance with the laws of the State of North Carolina.

This Note is given _all assets of International Heritage, Inc._____, and is secured by a

_____ which is a _____ lien upon the property therein described.

IN TESTIMONY WHEREOF, each corporate maker has caused this instrument to be executed in its corporate name by its _____ President, Attested by its _____ Secretary, and its corporate seal to be hereto affixed, all by order of its Board of Directors first duly given, the day and year first above written.

_International Heritage, Inc._
(Corporate Name)

By: _____ President

ATTEST: _On Van Pluck_____

_____ Secretary (Corporate Seal)

_____
(Corporate Name)

By: _____ President

ATTEST:

_____ Secretary (Corporate Seal)

IN TESTIMONY WHEREOF, each individual maker has hereunto set his hand and adopted as his seal the word "SEAL" appearing beside his name, the day and year first above written.

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

N.C. Bar Assn. Form No. 4 © 1976, Revised © 1985      Printed by Agreement with the N.C. Bar Assn.      Poole Printing Co., Inc. P.O. B

EXHIBIT

SATISFACTION: The debt evidenced by
this Note has been satisfied in full this
_____ day of _____, 19 ___.

Signed: _____

# PROMISSORY NOTE

Raleigh _____, N.C.

$ __500,000__        __10 July__ _____, 19 _98_

FOR VALUE RECEIVED the undersigned, jointly and severally, promise to pay to __Mayflower Capital, LLC, a__
__North Carolina limited liability company with its principal office at 2626 Glenwood Avenue,__
__Suite 100, Raleigh, North Carolina 27608__ _____ or order,

the principal sum of __Five Hundred Thousand__

DOLLARS ($ __500,000__ ), with interest from __10 July 1998__ , at the rate of __twelve__

per cent ( __12__ %) per annum on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of
America, at

the office of __Mayflower Capital, LLC__

or at such place as the legal holder hereof may designate in writing. It is understood and agreed that additional amounts may be advanced by the holder hereof
as provided in the instruments, if any, securing this Note and such advances will be added to the principal of this Note and will accrue interest at the above
specified rate of interest from the date of advance until paid. The principal and interest shall be due and payable as follows: __upon demand.__

If not sooner paid, the entire remaining indebtedness shall be due and payable on _____.

If payable in installments, each such installment shall, unless otherwise provided, be applied first to payment of interest then accrued and due on the
unpaid principal balance, with the remainder applied to the unpaid principal.

Unless otherwise provided, this Note may be prepaid in full or in part at any time without penalty or premium. Partial prepayments shall be applied to
installments due in reverse order of their maturity.

In the event of (a) default in payment of any installment of principal or interest hereof as the same becomes due and such default is not cured within ten (10)
days from the due date, or (b) default under the terms of any instrument securing this Note, and such default is not cured within fifteen (15) days after written
notice to maker, then in either such event the holder may without further notice, declare the remainder of the principal sum, together with all interest accrued
thereon and, the prepayment premium, if any, at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the
same at any other time. The unpaid principal of this Note and any part thereof, accrued interest and all other sums due under this Note and the Deed of Trust,
if any, shall bear interest at the rate of __eight__ _____ per cent ( __8__ %) per annum after default until paid.

All parties to this Note, including maker and any sureties, endorsers, or guarantors hereby waive protest, presentment, notice of dishonor, and notice of
acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note and the Deed of
Trust notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of
any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes
and agree that the same may be made without notice or consent of any of them.

Upon default the holder of this Note may employ an attorney to enforce the holder's rights and remedies and the maker, principal, surety, guarantor and
endorsers of this Note hereby agree to pay to the holder reasonable attorney's fees not exceeding a sum equal to fifteen percent (15%) of the outstanding
balance owing on said Note, plus all other reasonable expenses incurred by the holder in exercising any of the holder's rights and remedies upon default. The
rights and remedies of the holder as provided in this Note and any instrument securing this Note shall be cumulative and may be pursued singly, successively,
or together against the property described in the Deed of Trust or any other funds, property or security held by the holder for payment or security, in the sole
discretion of the holder. The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any
of them at another time.

This Note is to be governed and construed in accordance with the laws of the State of North Carolina.

This Note is given _____, and is secured by a
__Uniform Commercial Code Financing Statement filed with the NC Secretary of State and the__
__Wake County Register of Deeds__ _____ which is a __subordinate__ lien upon the property therein described.

IN TESTIMONY WHEREOF, each corporate maker has caused
this instrument to be executed in its corporate name by its
__Executive Vice__ _____ President, attested by its
_____ Secretary, and its corporate seal to be
hereto affixed, all by order of its Board of Directors first duly given,
the day and year first above written.

IN TESTIMONY WHEREOF, each individual maker has hereunto
set his hand and adopted as his seal the word "SEAL" appearing
beside his name, the day and year first above written.

__International Heritage, Inc.__
       (Corporate Name)

By: _____

Executive Vice _____ President, and COO

ATTEST: _____

Corporate _____ Secretary (Corporate Seal)

_____
(Corporate Name)

By: _____
       President

ATTEST: _____

_____
Secretary (Corporate Seal)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

EXHIBIT

SATISFACTION: The debt evidenced by this Note has been satisfied in full this _____ day of _____, 19 _____.

Signed: _____

# PROMISSORY NOTE

Raleigh _____, N. C.

14 October, 19 98

$ 100,000

FOR VALUE RECEIVED the undersigned, jointly and severally, promise to pay to **Mayflower Capital, LLC, a North Carolina limited liability company with its principal office at 2626 Glenwood Avenue, Suite 200, Raleigh, North Carolina 27608** or order,

the principal sum of **One Hundred Thousand and No/100**

DOLLARS ($ 100,000 ), with interest from **14 October, 1998** at the rate of **twelve**

per cent ( 12 %) per annum on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of America, at

the office of **Mayflower Capital, LLC**

or at such place as the legal holder hereof may designate in writing. It is understood and agreed that additional amounts may be advanced by the holder hereof as provided in the instruments, if any, securing this Note and such advances will be added to the principal of this Note and will accrue interest at the above specified rate of interest from the date of advance until paid. The principal and interest shall be due and payable as follows: **upon demand.**

If not sooner paid, the entire remaining indebtedness shall be due and payable on _____

If payable in installments, each such installment shall, unless otherwise provided, be applied first to payment of interest then accrued and due on the unpaid principal balance, with the remainder applied to the unpaid principal.

Unless otherwise provided, this Note may be prepaid in full or in part at any time without penalty or premium. Partial prepayments shall be applied to installments due in reverse order of their maturity.

In the event of (a) default in payment of any installment of principal or interest hereof as the same becomes due and such default is not cured within ten (10) days from the due date, or (b) default under the terms of any instrument securing this Note, and such default is not cured within fifteen (15) days after written notice to maker, then in either such event the holder may without further notice, declare the remainder of the principal sum, together with all interest accrued thereon and, the prepayment premium, if any, at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The unpaid principal of this Note and any part thereof, accrued interest and all other sums due under this Note and the Deed of Trust, if any, shall bear interest at the rate of _____ eight _____ per cent ( 8 %) per annum after default until paid.

All parties to this Note, including maker and any sureties, endorsers, or guarantors hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note and the Deed of Trust notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

Upon default the holder of this Note may employ an attorney to enforce the holder's rights and remedies and the maker, principal, surety, guarantor and endorser of this Note hereby agree to pay to the holder reasonable attorney's fees not exceeding a sum equal to fifteen percent (15%) of the outstanding balance owing on said Note, plus all other reasonable expenses incurred by the holder in exercising any of the holder's rights and remedies upon default. The rights and remedies of the holder as provided in this Note and any instrument securing this Note shall be cumulative and may be pursued singly, successively, or together against the property described in the Deed of Trust or any other funds, property or security held by the holder for payment or security, in the sole discretion of the holder. The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any of them at another time.

This Note is to be governed and construed in accordance with the laws of the State of North Carolina.

This Note is given _____, and is secured by a

~~Uniform Commercial Code financing statement filed with the Secretary of State~~
~~and with the Wake County Register of Deeds~~ which is subordinate lien upon the property therein described.

IN TESTIMONY WHEREOF, each corporate maker has caused this instrument to be executed in its corporate name by its _____ President, attested by its _____ Secretary, and its corporate seal to be hereto affixed, all by order of its Board of Directors first duly given, the day and year first above written.

International Heritage, Inc.
(Corporate Name)

By: _____ President

_____ Secretary (Corporate Seal)

_____
(Corporate Name)

By: _____ President

ATTEST: _____ Secretary (Corporate Seal)

IN TESTIMONY WHEREOF, each individual maker has hereunto set his hand and adopted as his seal the word "SEAL" appearing beside his name, the day and year first above written.

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)



EXHIBIT 3

MAR-29-99 MON 01:10 PM   MAYFLOWER CAPITAL, LLC        FAX NO. 14065218375              P. 09

Nov 6, 1998                                                                                        Page
12:16 pm

# Mayflower Capital LLC
## Check Register

| Check Number | Date | Vendor/ Invoice # | Invoice Amount | Amount Paid | Credits | Discounts | Net Amount |
|---|---|---|---|---|---|---|---|
| 1190 | 11/06/98 | OTHERCHK | Edward Carey | | | | 2571.50 |
| 1191 | 11/06/98 | OTHERCHK | Kenneth Hirsch | | | | 1487.72 |
| | | Report Total | | 0.00 | 0.00 | 0.00 | 4059.22 |

Nov 6, 1998                          **Mayflower Capital LLC**                          *Page*

12:54 pm                              **Check Register**

| Check Number | Date | Vendor/ Invoice # | Invoice Amount | Amount Paid | Credits | Discounts | Net Amount | |
|---|---|---|---|---|---|---|---|---|
| 1192 | 11/06/98 | OTHERCHK | Heather Slinkard | | | | 806.84 | |
| 1193 | 11/06/98 | OTHERCHK | Kendra McCarty | | | | 762.88 | |
| 1194 | 11/06/98 | OTHERCHK | Doug Troskey | | | | 197.02 | |
| 1195 | 11/06/98 | OTHERCHK | Carl Larsen | | | | 689.01 | |
| 1196 | 11/06/98 | OTHERCHK | Norma J. Baker | | | | 1163.60 | |
| 1197 | 11/06/98 | OTHERCHK | Joaquina Vaquiz | | | | 769.57 | |
| 1198 | 11/06/98 | OTHERCHK | Natasha Dantzler | | | | 875.34 | |
| 1199 | 11/06/98 | OTHERCHK | James Harris | | | | 1849.81 | |
| 1200 | 11/06/98 | OTHERCHK | Jie Yan | | | | 907.11 | |
| 1201 | 11/06/98 | OTHERCHK | Toby Kandies | | | | 756.13 | |
| 1202 | 11/06/98 | OTHERCHK | Alan Zhang | | | | 844.88 | |
| 1203 | 11/06/98 | OTHERCHK | James D. McDonald | | | | 366.33 | |
| 1204 | 11/06/98 | OTHERCHK | Shannon K. Zeko | | | | 904.38 | |
| 1205 | 11/06/98 | OTHERCHK | David Shane | | | | 1782.00 | |
| 1206 | 11/06/98 | OTHERCHK | David Scott | | | | 805.63 | |
| 1207 | 11/06/98 | OTHERCHK | Daniel Hague | | | | 828.54 | |
| | | Report Total | | 0.00 | 0.00 | 0.00 | 14309.07 | |

Nov 6, 1998

3:35 pm

# Mayflower Capital LLC
## Check Register

Page

| Check Number | Date | Vendor/ Invoice # | Invoice Amount | Amount Paid | Credits | Discounts | Net Amount |
|---|---|---|---|---|---|---|---|
| 1208 | 11/06/98 | OTHERCHK | Wendy Raynor | | | | 819.18 |
| 1209 | 11/06/98 | OTHERCHK | Catherine M. Riehle | | | | 727.01 |
| | | Report Total | | 0.00 | 0.00 | 0.00 | 1546.19 |

MAR-29-99 MON 01:12 PM   MAYFLOWER CAPITAL, LLC   FAX NO.   3818375   P. 12

# Mayflower Capital LLC
## Check Register

4:27 pm

| Check Number | Date | Vendor/ Invoice # | Invoice Amount | Amount Paid | Credits | Discounts | Net Amount |
|---|---|---|---|---|---|---|---|
| 1210 | 11/06/98 | OTHERCHK | Lisa R. Eddie | | | | 1016.91 |
| | | Report Total | | 0.00 | 0.00 | 0.00 | 1016.91 |

MAYFLOWER CAPITAL, LLC                                                1152

Mayflower Capital LLC

**MAYFLOWER CAPITAL, LLC**
2626 GLENWOOD AVENUE
SUITE 100
RALEIGH, NC 27608
PHONE: (919) 881-7993  TAX ID 56-1909205           1152  **1152**

WACHOVIA
WACHOVIA BANK, N.A.
2001 CLARK AVENUE
RALEIGH, NC 27605
66-763/531

**********One Thousand One Hundred Sixty Four & 77/100 Dollars

|  | DATE | AMOUNT |
|---|---|---|
|  | 11/05/98 | *****1,164.77 |

PAY
TO THE
ORDER
OF

Alex Ravenscraft

⑈00⅃⅃52⑈  ⑆053⅃07633⑇   6264  095930⑈

MAYFLOWER CAPITAL, LLC                                                1152

                                    11/05/98    Check #: **1152**

Payee: n/a

Case 98-02675-5-DMW    Doc 226    Filed 11/02/99    Entered 11/03/99 00:00:00    Page 41 of

MAR-29-99 MON 01:13 PM   MAYFLOWER CAPITAL, LLC        FAX NO.         18375            P. 14

Nov 9, 1998

# Mayflower Capital LLC
## Check Register

4:34 pm

Page

| Check Number | Date | Vendor/ Invoice # | Invoice Amount | Amount Paid | Credits | Discounts | Net Amount |
|---|---|---|---|---|---|---|---|
| 1216 | 11/09/98 | OTHERCHK | Chris Reid | | | | 2887.49 |
| | | Report Total | | 0.00 | 0.00 | 0.00 | 2887.49 |

MAYFLOWER CAPITAL, LLC                                                  1219

---

**MAYFLOWER CAPITAL. LLC**                          WACHOVIA                          1219
2826 GLENWOOD AVENUE                        WACHOVIA BANK, N.A.
SUITE 100                              2801 CLARK AVENUE
RALEIGH, NC 27608                         RALEIGH, NC 27405
PHONE: (919) 881-7993  TAX ID 56-1909205          66-762/531

———— Three thousand five hundred fifty & 29/100 dollars

                                        DATE                 AMOUNT
                                   Nov. 20, 1996        $ 3,550.29

PAY
TO THE
ORDER     Kevin D. Jones
OF

⑈001219⑈ ⑇053107633⑇  6264 095930⑈

MAYFLOWER CAPITAL, LLC                                                  1219

NORTH CAROLINA

WAKE COUNTY                                    **BILL OF SALE**

     THIS BILL OF SALE is made this 18th day of November, 1998, by International Heritage, Incorporated (the "Seller") to Stanley H. Van Etten (the "Buyer").

     Seller, for and in consideration of the reduction of obligations owed by the Seller to Buyer in the amount of $26,069.50, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has bargained and sold and by these presents does bargain, sell, grant, assign, transfer, set over, deliver, and convey unto Buyer, his heirs and assigns, certain articles of personal property, more particularly described as follows (the "Personal Property"): See attached Exhibit 1, which is incorporated herein by reference.

     To have and to hold the Personal Property to the Buyer and his heirs and assigns in fee simple.

     And Seller covenants that he is seized of said property in fee and has the right to convey the same in fee simple, that the same is free and clear of all encumbrances whatsoever, and that he will warrant and defend the title thereto against the lawful claims of all persons whomsoever.

     FURTHER, the Seller hereby covenants and agrees to sign, execute, and deliver, or cause to be signed, executed, and delivered, and to do or make, or cause to be done or made, upon reasonable request of the Buyer, any and all agreements, instruments, papers, deeds, acts, or things, supplemental, confirmatory, or otherwise, as may be reasonably required by the Buyer for the purpose of or in connection with acquiring or more effectually vesting in the Buyer or

1



evidencing the vesting in the Buyer of all the right, title, and interest of the Seller in and to the

Personal Property.

THE SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WHETHER OF

MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, THE

BUYER HAS MADE AND RELIED UPON HIS OWN INSPECTION OF THE PERSONAL

PROPERTY AND ACCEPTS IT IN "AS IS" CONDITION.

IN TESTIMONY WHEREOF, the Seller has hereunto caused this Bill of Sale to be

executed on its behalf the day and year first above written.

INTERNATIONAL HERITAGE, INCORPORATED

By: _____

Stanley H. Van Etten, President

ATTEST:

Secretary (Corporate Seal)

C:\wp\vanetten.billofsalepcrprop6.doc

2

Stan Van Etten
Asset Purchase
(Mayflower)

**Furniture**

| Qty | Description | Cost | Extended Cost |
|---|---|---|---|
| 1 | 2 Drawer Mahogany Standard File | $170.00 | $ 170.00 |
| 1 | Wooden Plant Stand | $ 20.00 | $ 20.00 |
| 4 | Potted Natural Plants | $ 15.00 | $ 60.00 |
| 1 | Silk Plant | $ 15.00 | $ 15.00 |
| 1 | Mahogany End table | $ 95.00 | $ 95.00 |
| 1 | Mahogany Coffee Table | $100.00 | $ 100.00 |
| 1 | 32" Mahogany Cabinet | $125.00 | $ 125.00 |
| 4 | Desk Lamps | $ 40.00 | $ 160.00 |
| 1 | 5 Shelf Wooden Bookcase | $150.00 | $ 150.00 |
| 1 | 3-Shelf Wooden Bookcase | $100.00 | $ 100.00 |
| 3 | Wooden Bookshelves with Cabinets | $175.00 | $ 525.00 |
| 6 | 2 Drawer Mahogany Lateral File | $185.00 | $ 1,110.00 |
| 1 | Bulletin Board | $ 5.00 | $ 5.00 |
| 6 | Framed Prints | $ 30.00 | $ 180.00 |
| 1 | Printer Stand | $ 25.00 | $ 25.00 |
| 1 | Table Lamp | $ 5.00 | $ 5.00 |
| 8 | Wooden Blinds | $ 80.00 | $ 640.00 |
| 2 | 52" Metal 4 Drawer Lateral File Cabinets | $200.00 | $ 400.00 |

|  |  |
|---|---|
| SUBTOTAL | $ 3,885.00 |
| TOTAL (ALL CATEGORIES) | $ 3,885.00 |
|  | $ 21,676.50 |
|  | $ 183.00 |
|  | $ 325.00 |
|  | $ 26,069.50 |


EXHIBIT

Form B10 (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT | EASTERN | DISTRICT OF | N.C | PROOF OF CLAIM |
|---|---|---|---|---|

| Name of Debtor | Case Number |
|---|---|
| International Heritage, Inc. | 98-02675-5-ATS |

| | |
|---|---|
| **Name of Creditor** (The person or other entity to whom the debtor owes money or property):<br><br>Mayflower Holdings, Inc.<br><br>**Name and address where notices should be sent:**<br>c/o Brent E. Wood<br>Wood & Francis, PLLC<br>P. O. Box 164<br>Raleigh, NC  27602<br>Telephone number: (919) 828-0801 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |

*(Right side box:)*
**F I L E D**
MAR 30 1999
PEGGY B. DEANS, Clerk
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C

This Space is for Court Use Only

| Account or other number by which creditor identifies debtor: | Check here if this claim | ☐ replaces<br>☐ amends   a previously filed claim, dated: _____ |
|---|---|---|

| **1.** | **Basis for Claim** | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
|---|---|---|
| | X☒ Goods sold | ☐ Wages, salaries, and compensation (fill out below) |
| | X☒ Services performed | Your SS# _____ |
| | ☐ Money loaned | Unpaid compensation for services performed |
| | ☐ Personal injury/wrongful death | from _____ to _____ |
| | ☐ Taxes | (date)         (date) |
| | X☒ Other  Equity Investments | |

| **2.** | Date debt was incurred: Prior to Nov. 25, 1998 | **3.** | If court judgment, date obtained: | N/A |
|---|---|---|---|---|

| **4.** | Total Amount of Claim at Time Case Filed: | $113,456.00 |
|---|---|---|

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| **5.** | **Secured Claim.** | **6.** | **Unsecured Priority Claim.** |
|---|---|---|---|
| | ☐ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br>☐ Real Estate   ☐ Motor Vehicle<br>☐ Other _____<br>Value of Collateral: $ _____ | | ☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $ _____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4300), *earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).<br>☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_).<br>*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____ | | | |

| **7.** | **Credits:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | This Space is For Court Use Only |
|---|---|---|
| **8.** | **Supporting Documents:**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  (See Attached Exhibit A)<br>DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. | **EXHIBIT**<br>C |
| **9.** | **Date-Stamped Copy:**  To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any: |
|---|---|
| 3/30/99 | Brent E. Wood, Attorney |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:                                     )
INTERNATIONAL HERITAGE, INC.               )        CASE NO.: 98-02675-5-ATS
                                           )        CHAPTER 7
        Debtor.                            )

## EXHIBIT A

As an explanation to the claim of Mayflower Holdings, Inc. in the above-captioned bankruptcy, Mayflower Holdings, Inc. will offer the following information. Mayflower Holdings, Inc. made an equity investment in International Heritage, Inc. near the inception of this company in the amount of $104,065.

In addition, International Heritage, Inc. purchased equipment from State Office Supply which ultimately had to be paid, in part, by Mayflower Holdings, Inc. in order for Mayflower Holdings, Inc. to maintain a relationship with State Office Supply.  The amount paid by Mayflower Holdings, Inc. to State Office Supply was $9,391.

As a result, the total amount of the claim of Mayflower Holdings, Inc. is $113,456.