**FILED**

**NOV 29 1999**

PEGGY B. DEANS, CLERK
UNITED STATES BANKRUPTCY COURT BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTHEASTERN DISTRICT OF N.C.
RALEIGH DIVISION

IN RE:

INTERNATIONAL HERITAGE,          )
INC.                             )     CASE NO. 98-02675-5-ATS
                                 )          CHAPTER 7
                                 )
INTERNATIONAL HERITAGE,          )
INCORPORATED,                    )     CASE NO. 98-02674-5-ATS
                Debtors          )          CHAPTER 7


RESPONSE TO TRUSTEE'S VERIFIED OBJECTION TO
ACSTAR'S AMENDED PROOF OF CLAIM

NOW COMES ACSTAR Insurance Company ("ACSTAR"), by and through its undersigned counsel, and submits this Response to the Trustee's Verified Objection filed on November 2, 1999, which objects to ACSTAR's Amended Proof of Claim filed on October 4, 1999. Acstar incorporates by reference the arguments set forth in its September 13, 1999 Memorandum of Law in Support of Objection of Acstar Insurance Company to Application of Trustee for Authority to Enter Into Settlement Agreement ("ACSTAR Memorandum"). A photocopy of the ACSTAR Memorandum, exclusive of Exhibits, is attached hereto and incorporated herein by reference as "Exhibit A."

## I. FACTS

The Trustee's Objection contains a Summary of Facts. These facts provide the basis for the Trustee's legal arguments. Since the persuasiveness of the legal arguments necessarily depend on the facts, it is crucial that they are accurately depicted. Therefore, ACSTAR clarifies the facts to preserve the integrity of the record. A brief, individual response to each numbered Paragraph of the Summary of Facts in the Trustee's Objection follows:

1.    ACSTAR concurs with the facts as summarized in Paragraph 1 of the Trustee's Objection.

WARD AND SMITH, P.A., ATTORNEYS AT LAW

211 copy recfd 11/29/99 Am

222

2.    ACSTAR concurs with the facts as summarized in Paragraph 2 of the Trustee's Objection.

3.    The original $5,000,000 cash bond required to be posted by International Heritage, Inc. and International Heritage Incorporated ("IHI") was not paid by IHI as the Trustee asserts. Stanley H. Van Etten ("Van Etten"), as surety for IHI, paid the $5,000,000 cash bond directly to the District Court. In fact, the District Court entered a Notice of Posting of Cash Bond and Order Approving Cash Bond on April 3, 1998 that states:

> Defendant Stanley H. Van Etten, in his individual capacity, and acting as a Surety on behalf of Defendants IHI (hereinafter "Surety"), has tendered and has agreed to transmit to the Clerk of Court for the United States District Court ... for deposit into the registry of the Court the sum of Five Million ($5,000,000.00) cash ....

A photocopy the April 3, 1998 Notice of Posting of Cash Bond and Order Approving Cash Bond is attached hereto and incorporated herein by reference as "Exhibit B."

Furthermore, Paragraph 12 of the Trustee's Objection clearly states that Van Etten provided the $3,500,000 collateral ACSTAR received in connection with its posting of the $5,000,000 Payment Bond.

4.    ACSTAR and IHI negotiated at arms-length the terms and conditions by which ACSTAR would post the $5,000,000 Payment Bond. Among the conditions upon which ACSTAR agreed to post the Payment Bond was the prior receipt by ACSTAR of $3,500,000 in collateral. Another condition was the advance payment of an annual premium of 3% of the Payment Bond, or $150,000.

5.    ACSTAR concurs with the facts as summarized in Paragraph 5 of the Trustee's Objection.

6.    ACSTAR denies Stanley H. Van Etten ("Van Etten") loaned $5 Million to IHI. ACSTAR also denies Van Etten received a security interest in all of IHI's assets, including any and all

WARD AND SMITH, P.A., ATTORNEYS AT LAW

2

contracts. ACSTAR does not deny that a Financing Statement was filed with the North Carolina Secretary of State on May 27, 1998. The perfection of any alleged security interest is a disputed issue. Any asserted perfection of a security interest is a conclusion of law that must be proven by the evidence. ACSTAR disputes the effect, if any, of Van Etten's Waiver and Assignment dated October 20, 1999, and any waiver, avoidance, or assignment of rights is a conclusion of law that must be proven by the evidence.

7. The Indemnity Agreement speaks for itself. Although ACSTAR has not solicited a Financing Statement or other document, ACSTAR's rights are discretionary and have no preclusive effect on its rights to the ERSIC policy proceeds. ACSTAR discusses this issue fully in the "ARGUMENT" section below.

8. ACSTAR concurs with the facts as summarized in Paragraph 8 of the Trustee's Objection.

9. The June 21, 1999 Order Approving Application of Trustee to Enter Into Consent to Final Judgment of Permanent Injunction in the SEC action was not a full and final settlement of all of ACSTAR's rights to collect damages in connection with the Payment Bond or the Indemnity Agreement. Before September 20, 1999, ACSTAR was not obligated to pay any amount under the Payment Bond. It is not accurate that ACSTAR refused to pay its full obligation on the bond. By way of clarification, ACSTAR has never refused to pay under the terms of the Payment Bond. ACSTAR contends that a collusive consent judgment between the bond principal (Trustee) and the beneficiary (SEC), without the consent of the surety (ACSTAR), would discharge the surety of any duties or obligations under the bond.

10. ACSTAR concurs with the facts as summarized in Paragraph 10 of the Trustee's Objection.

11. A Consent Final Judgment of Permanent Injunction as to Defendants IHI was entered on September 20, 1999, thereby

3

triggering ACSTAR's payment liability on the Payment Bond in connection with the SEC action. A photocopy of the Consent Final Judgment of Permanent Injunction as to Defendants IHI is attached hereto and incorporated herein by reference as "Exhibit C." The first payment on the Payment Bond of $600,000 was paid to the Clerk of Court of the United States District for the Northern District of Georgia, Atlanta Division in accordance with the Consent Final Judgment.

12. Van Etten did post $5,000,000 with the District Court, of which $3,500,000 was wired to ACSTAR as collateral for the Payment Bond on July 2, 1998. ACSTAR invested this money in corporate and municipal bonds and will earn approximately $228,816 in interest on investments made with this money during the payment period, not $286,198.03 as alleged by the Trustee. These funds are exclusive of any bond premium paid to ACSTAR. A photocopy of the Affidavit executed by Robert H. Frazer on October 21, 1999, is attached hereto and incorporated herein by reference as "Exhibit D."

13. The mediated settlement conference conducted on June 2, 1999 between ACSTAR, the Trustee, Van Etten, and the SEC resolved all outstanding issues in connection with the claims in the SEC action. The outcome allowed the Court to authorize the Trustee to enter into Stipulation and Consent to Final Judgment of Permanent Injunction in the SEC action. There is nothing in the record that would indicate that ACSTAR agreed to give up or waive its legal or equitable rights to contribution or subrogation in connection with the Payment Bond. ACSTAR preserved its legal and equitable rights as a surety to recover moneys from the ERSIC policy proceeds.

The Trustee speculates as follows: "Apparently, in consideration of the possibility of being out of pocket approximately $300,000.00, ACSTAR negotiated for a $300,000.00

4

priority claim against the monies it paid over to the Trustee pursuant to the settlement as provided in the Order". Objection, ¶13. This statement is wrong. To recoup some of its losses in the bankruptcy, ACSTAR negotiated for a $300,000 priority claim. The $300,000 claim has no significance and not connected to ACSTAR's out-of-pocket expenses. The amount to which ACSTAR is entitled is set forth in its Amended Proof of Claim.

14. A photocopy of the handwritten agreement which was prepared by the mediator at the mediated settlement ("Mediated Settlement") is attached hereto and incorporated herein by reference as "Exhibit E." The Mediated Settlement is signed by representatives from ACSTAR and the Trustee. The Mediated Settlement does not provide for the execution of any release.

However, as a result of a letter dated May 3, 1999 from Michael P. Flanagan, attorney for ACSTAR ("Flanagan"), to Holmes P. Harden ("Harden") requesting Harden to notify his malpractice carrier and the carrier for his Trustee's bond, and as an accommodation to Harden separate and apart from the Mediated Settlement, ACSTAR agreed to release Harden, personally, and his law firm as set forth in a separate handwritten statement. The release was never related to the SEC action or the Application of Trustee to Enter Into Stipulation and Consent to Final Judgment of Permanent Injunction.

A photocopy of the handwritten agreement of the parties at the mediated settlement with regard to releases is attached hereto and incorporated herein by reference as "Exhibit F," and reads as follows:

> Upon final approval of the ACSTAR-IHI-SEC dispute, ACSTAR and related companies will execute a general release in favor of Holmes Harden for any alleged wrongdoing (denied of course) relating to his seeking approval and attempting to settle the SEC litigation.

5

The correspondence transmitted between the parties following the Mediated Settlement supports this agreement. A photocopy of the correspondence transmitted between the parties is attached hereto and incorporated herein by reference as "Exhibit G."

Assuming ACSTAR was required to execute the release attached to this Court's Order dated June 21, 1999, the Trustee has seriously misrepresented its terms. The Trustee has used ellipses to omit material language. Ordinarily, ellipses are used to omit insignificant portions of a quote or statement. In this case, however, the omissions are material. The Release is set forth below. In addition, a photocopy of the Release is attached hereto and incorporated herein by reference as "Exhibit H." The language contained in the Trustee's Objection is in bold. The italicized language was specifically excluded from the Trustee's Objection. Aside from citing the SEC action, the underlined portions were added as emphasis in the Trustee's Objection and remain.

> *For valuable consideration, the receipt of which is hereby acknowledged,* **ACSTAR Insurance Company** *and United Coastal Insurance Company and their respective successors and assigns* **do[es] hereby release, forever discharge and promise never to sue Holmes P. Harden, individually, as Chapter 7 Trustee for International Heritage, Inc. and International Heritage, Incorporated,** *or as a principal in the law firm of Maupin, Taylor & Ellis, P.A., or the law firm of Maupin, Taylor & Ellis, P.A.,* **their agents, attorneys, employees, officers, directors, and insurance carriers (together referred to as "Harden") for any and all damages and claims arising from or related to [the SEC action]** *the civil action styled* United States Securities and Exchange Commission v. International Heritage, Inc., Stanley H. Van Etten, Claude W. Savage, Larry G. Smith, and International Heritage, Incorporated, a Nevada

WARD AND SMITH, P.A., ATTORNEYS AT LAW

6

> *Corporation, in the Northern District of Georgia, Atlanta Division, Civil Action No. 1--98-0803-RWS, including but not limited to Harden's filing of the Application of Trustee to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction (which Application was filed in the bankruptcy cases of International Heritage, Inc., Case No. 98-02675-5-ATS and International Heritage, Incorporated, Case No. 98-02674-4-ATS) and any claims relating to the subsequent Consent Order,* **and any claims against Harden arising from, under, or <u>against Payment Bond No. 7719 dated June 5, 1998 and a related Indemnity Agreement which were executed in connection with the aforesaid civil action.</u>**

Even if ACSTAR agreed and was bound to sign the ACSTAR Release as asserted by the Trustee, the ACSTAR Release as accurately set forth does not preclude ACSTAR from asserting any of its rights in connection with the Indemnity Agreement, or under the principles of equitable subrogation or contribution, against the ERSIC insurance policy. It simply releases Harden (individually, as Chapter 7 Trustee, and as principal in his law firm), his law firm, and the firm's agents, attorneys, employees, officers, directors, and insurance carriers. It does not release IHI or ERSIC.

15. The Trustee executed the Trustee Release prepared by ACSTAR and attached to the June 21, 1999 Order. A photocopy of the Release executed by ACSTAR is attached hereto and incorporated herein by reference as "Exhibit I."

16. The Trustee filed his Application of Trustee to Enter Into Settlement Agreement with Executive Risk Specialty Insurance Company ("ERSIC") ("Application") on August 9, 1999. ACSTAR did not receive a copy of the Application from the Trustee. Rather, ACSTAR received a Notice of the Application on August 10, 1999.

7

The Trustee states "[i]t was not until after the Trustee filed his Application ... that ACSTAR advised Trustee that it had attempted to unilaterally modify the Release required in the June 21, 1999 Order." Trustee's Objection, ¶16. This is false. Based on the facts contained in Paragraph 14, it is clear that the Trustee was advised by ACSTAR that the proposed ACSTAR Release was not approved long before the Application was filed. In fact, the ACSTAR Release was prepared and executed on August 5, 1999; prior to the Trustee's filing of the Application. See "Exhibit I" attached to this Response.

17. ACSTAR concurs with the facts as summarized in Paragraph 17 of the Trustee's Objection.

18. The Objection to the Trustee's Application filed by ACSTAR Insurance Company on August 27, 1999 does not refer to any dollar amount ACSTAR would be out of pocket. But, the Memorandum of Law in Support of Objection of ACSTAR to the Trustee's Application filed on September 13, 1999 does refer to an amount based on losses sustained by ACSTAR. Under the "FACTS" section of that Memorandum, it is stated as follows: "Therefore ACSTAR is out of pocket Six Hundred Thousand and No/100 Dollars ($600,000.00), exclusive of fees and expenses to which it is also entitled under the express terms of the Indemnity Agreement." In its Amended Proof of Claim, ACSTAR set forth the total amount of the expenses to which it is entitled. As a point of clarification, the Objection of ACSTAR to the Trustee's Application was not overruled as to any rights ACSTAR has to the ERSIC insurance policy or proceeds.

19. It is true that on October 4, 1999, ACSTAR filed its Amended Proof of Claim for $805,781.41. This represents the amount of money to which ACSTAR is entitled under the express terms of the Indemnity Agreement. This figure is not in any way in conflict with any prior pleadings filed by ACSTAR.

8

As previously stated, ACSTAR and IHI negotiated the terms upon which ACSTAR would post the dischargeable Payment Bond. One of the terms is a 3% annual premium to be paid in advance. ACSTAR was liable for the full amount of the Payment Bond up until September 20, 1999. That is the date upon which the District Court entered the Consent Final Judgment and ACSTAR's liability on the Payment Bond was established. As permitted by the terms of the Indemnity Agreement, the annual premium ACSTAR and IHI negotiated was removed from the collateral when due.

20.  The assertions of ACSTAR are more accurately set forth in the legal arguments below. ACSTAR's Amended Proof of Claim is not factually or legally insufficient. Based on the facts of this case and the applicable law, ACSTAR's Amended Proof of Claim should be allowed and paid in full from the proceeds of the ERSIC insurance policy.

## II. ARGUMENT

In his Objection, the Trustee makes eight different arguments as to why ACSTAR is not entitled to recover in this case. In the following section, ACSTAR addresses each argument in turn. As ACSTAR demonstrates, the Trustee's arguments are erroneous as to both law and fact, and this Court should reject them all.

### A. Stanley Van Etten's Purported Security Interest Does Not Outrank ACSTAR.

The Trustee first argues that Van Etten has a perfected security interest that ranks ahead of ACSTAR. Van Etten cannot have a perfected security interest in the proceeds from the ERSIC policy because, as discussed in detail in Section II.B. of this Response, the proceeds are not governed by UCC Article 9.

Moreover, as set forth in the facts, Van Etten's purported $5,000,000 loan to IHI is highly suspect. Indeed, contrary to the Trustee's assertions, IHI did not pay the $5,000,000 cash bond. The facts establish that Van Etten "in his

9

individual capacity, and acting as a surety on behalf of Defendants IHI," paid the cash bond. Clearly, Van Etten could not have loaned $5,000,000 to IHI before the Notice of Posting of Cash Bond and Order Approving Cash Bond entered on April 3, 1998. Indeed, the alleged Promissory Note executed by IHI in favor of Van Etten was executed over a month later, on May 13, 1998. Not surprisingly, the Trustee provides no evidence of any consideration given in exchange for the Promissory Note. Obviously, Van Etten cannot obtain a security interest in his own money.

Even assuming Van Etten had a perfected security interest, the plain terms of the Promissory Note demonstrate that it has been satisfied. The Promissory Note explicitly states that

> Principal and interest may be satisfied by replacing the cash bond posted in the action pending in the [SEC litigation] . . . with a conventional, pre-approved surety bond containing the same terms and conditions as the principal bond set forth in the Notice of Posting of Cash Bond and Order Approving Cash Bond dated April 3, 1998.

As stated before, ACSTAR and United Coastal Insurance Company, with the District Court's permission, jointly posted a $5,000,000 dischargeable surety Payment Bond. In doing so, Acstar satisfied all of IHI's obligations under the alleged Promissory Note and discharged any alleged perfected security interest.

The Trustee also contends that Van Etten's purported security interest ranks ahead of ACSTAR's rights pursuant to 11 U.S.C. § 551. But 11 U.S.C. § 551 only applies to property of the estate. The ERSIC policy proceeds (to the extent of ACSTAR's loss) are not property of the estate, and, for that reason, the Trustee may not rely on that statutory provision to argue that Van Etten's rights supercede those of ACSTAR.

10

The Trustee further contends that "this Court has previously recognized that proceeds from the ERSIC policy are property of the estate." The Trustee's argument mischaracterizes the effect of this Court's April 29, 1999 Order Denying Motion for Relief From Automatic Stay. In denying that motion, the Court mentioned that "insurance contracts are included as property of the estate." The Court relied on A.H. Robins, Inc. v. Piccinin (In re A.H. Robins, Inc.), 788 F.2d 994, 1001-02 (4th Cir. 1986), which held, without discussion, that insurance contracts are "property" under Section 541(a)(1) of the Bankruptcy Code. ACSTAR agrees that the insurance policy is property of the estate. ACSTAR submits, however, that those proceeds of the policy necessary to reimburse ACSTAR for its payment on the bond are not.

Several courts have recognized that funds necessary to reimburse a surety for sums actually paid out in accordance with its obligations under an Indemnity Agreement are not property of the estate. For instance, under payment and performance bonds, when a debtor defaults on an underlying contract he is not entitled to the contract funds. When a surety performs in the place of a debtor and completes the contract, the entitlement to contract funds arises. Equity demands that the debtor not receive a windfall. Thus, subrogation places the surety in the position to exercise the debtor's rights to identifiable contract funds, effectively removing that property from the estate and rendering it unavailable to general creditors. In re Modular Structures, Inc., 27 F.3d 72, 77-78 (3rd Cir. 1994). See also In re Alcon Demolition, Inc., 204 B.R. 440, 447 (Bankr. D.N.J. 1997); In re QC Piping Installations, Inc., 225, B.R. 553 (Bankr. E.D.N.Y. 1998).

In this case, the debtor (IHI) is not entitled to all of the ERSIC policy proceeds. Specifically, IHI is not entitled to that portion necessary to reimburse ACSTAR for its losses related to settlement of the SEC litigation on IHI's behalf. IHI, or its

11

insurer ERSIC, were the parties with the principal obligation to
pay the SEC litigation settlement.   The ERSIC policy covered IHI
for any settlements IHI had to pay due to claims for "securities
activity wrongful acts."   The SEC action against IHI included
claims for "securities activity wrongful acts." But since IHI did
not pay any part of the settlement, it has no legal or equitable
interest in the policy proceeds.   ACSTAR, through its equitable
lien on the proceeds and its right of subrogation, is entitled to
the ERSIC policy proceeds. Consequently, the ERSIC policy proceeds
are not property of the estate to the extent of ACSTAR's loss.

**B.     ACSTAR Did Not Have To Perfect Its Security Interest In
The ERSIC Policy Proceeds Because Its Security Interest
Is Not Governed By UCC Article 9.**

The Trustee misconstrues language in the Indemnity
Agreement that requires IHI to cooperate with ACSTAR in the filing
of any necessary financing statements.   The Trustee ignores the
Agreement's plain terms. ACSTAR may file financing statements with
IHI's assistance, but it is not required to do so.    It is a
decision vested within ACSTAR's discretion. ACSTAR's decision not
to file any financing statements does not alter the terms of the
Indemnity Agreement, nor does it prejudice ACSTAR's right to the
ERSIC policy proceeds.

More importantly, the Trustee harps on ACSTAR's failure
to   perfect its security interest in the ERSIC policy proceeds.
For instance, the Trustee argues that "N.C. Gen. Stat. § 25-9-302
requires that a financing statement must be filed to perfect this
security interest."    Trustee's Objection, ¶28.    This argument
evinces a fundamental misunderstanding of UCC Article 9 and North
Carolina law.

By virtue of its Indemnity Agreement with IHI, ACSTAR has
a security interest in the form of a conventional and equitable
lien in any sums due under the ERSIC insurance policy.  In <u>Stanley
v. Cox</u>, 253 N.C. 620, ___, 117 S.E.2d 826, 833 (1961),the North

WARD AND SMITH, P.A. · ATTORNEYS AT LAW

Carolina Supreme Court recognized a party's right to create an
equitable lien on another's property:

> [E]very express executory agreement in
> writing, whereby the contracting party
> sufficiently indicates an intention to make
> some particular property, real or personal, or
> fund, therein described or identified, a
> security for a debt or other obligation . . .
> creates an equitable lien upon the property so
> indicated, which is enforcable against the
> property in the hands not only of the original
> contractor, but of his heirs, administrators,
> executors, voluntary assignees and purchasers
> or encumbrancers with notice.

Id. at 630, 833.

The Court also held that these liens are "a right of
special nature" and "equity will enforce such charge against all
except those having a superior claim." Id. See also In re White,
183 B.R. 713 (Bankr. M.D.N.C. 1995). Recently, in In re Surplus
Furniture Liquidators, Inc., 199 B.R. 136 (Bankr. M.D.N.C.
1995),the Bankruptcy Court enforced an equitable lien over a
Trustee's claims.  The Court held that "if state law upholds
equitable liens and gives equitable liens priority over the
hypothetical judgment lien creditor created by §544(a)(1), then a
creditor with an equitable lien may prevail over the trustee in
bankruptcy despite his powers under §544(a)(1).  Once the Court
established that the party had an equitable lien, it enforced the
lien over the Trustee's claims. See also Angeles Real Estate Co.
v. Kerxton, 737 F.2d 416, 418 (4th Cir. 1984).

ACSTAR need not perfect its security interest in the proceeds
of the ERSIC policy.  Indeed, it cannot.  As a general rule,
Article 9 does not apply to insurance claims. Zorba's Inn, Inc. v.
Nationwide Mut. Fire Ins. Co., 93 N.C.App. 332, 334, 377 S.E.2d
797, 799 (1989); In re Barton Indus., Inc., 104 F.3d 1241, 1246
(10th Cir. 1997).  Specifically, UCC Article 9 does not apply "to

WARD AND SMITH, P.A., ATTORNEYS AT LAW

13

a transfer of an interest in or claim under any policy of insurance, except as provided with respect to proceeds (G.S. 25-9-306) and priorities in proceeds (G.S. 25-9-312)." N.C. Gen. Stat. § 25-9-104(g). The statute defines proceeds as:

> Whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable <u>by reason of loss or damage to the collateral</u> is proceeds, except to the extent that it is payable to a person other than the party to a security agreement.

N.C. Gen. Stat. § 25-9-306.

The ERSIC policy is a Directors and Officers Liability Insurance Policy. The policy does not pay for loss or damage to collateral. Therefore, the ERSIC policy does not fall under Article 9's definition of "proceeds," and it is not an exception to the general exclusion of insurance from Article 9.

Furthermore, indemnity agreements - and a surety's right of equitable subrogation and reimbursement - are outside the scope of the UCC. In <u>In Re J.V. Gleason Co.</u>, 452 F.2d 1219 (8th Cir. 1971), the Eighth Circuit held that the equitable subrogation claim of a surety did not constitute a "security interest" under the UCC, and was not required to be filed to be superior to the claim of a bankruptcy trustee. The Oklahoma Supreme Court reached an identical result in <u>Mid-Continent Cas. Co. v. First Natl. Bank & Trust Co.</u>, 531 P.2d 1370 (Ok. 1975), holding that their UCC "does not abrogate, modify, affect or abridge the equitable doctrine of subrogation, and Surety was not required to file under the Code to preserve its priority under the equitable right of subrogation." <u>Id.</u> at 1373. <u>See also</u> <u>McAtee v. United States Fidelity & Guar. Co.</u>, 401 F. Supp. 11 (N.D. Fla. 1975).

Finally, in <u>In re Alcon Demolition</u>, 204 B.R. 440 (Bankr. D. N.J. 1997), the court held that "equitable subrogation rights are superior in priority to perfected bank liens, even in the

14

absence of UCC filing."  Although ACSTAR has referred to its claim as a perfected security interest, the Surety in In re Alcon couched its claim similarly and the Court held "this is merely an assertion of an "equitable lien" through subrogation.   Thus, filing is unnecessary to achieve priority through subrogation."  Id. at 447.

In sum, since the ERSIC policy is not covered by Article 9, it is inconsequential that ACSTAR did not perfect its security interest in the policy proceeds.   And under the doctrine of equitable subrogation, ACSTAR's claim to the ERSIC policy proceeds is superior to the Trustee.

C.   **The Facts Unmistakably Establish That The Release Attached To The June 21, 1999 Order Does Not Bar ACSTAR's Claim Against The ERSIC Policy.**

As set forth in Section I. of this Response, the Release attached to the June 21, 1999 Order does not prohibit ACSTAR from reimbursement from the ERSIC policy proceeds. As set forth in the facts, the Release attached to the June 21, 1999 Order does not reflect the agreement between the parties.  In addition, the facts establish that the Release was an accommodation of, and applied only to, Harden and his law firm.  The Release was not related to the SEC litigation.

Even assuming the Release attached to the June 21, 1999 Order applies, nothing in it bars ACSTAR's claims against ERSIC. In his Objection, the Trustee only partially quotes the Release, and in doing so omits critical information that materially distorts its meaning.   The Release does not bar ACSTAR from asserting its rights against the ERSIC policy proceeds. ACSTAR assumes the Trustee based his flawed argument on selectively quoting the Release and misinterpreting a phrase stating that ACSTAR will not sue "insurance carriers."   But a casual reading of the complete Release demonstrates that the Trustee took the phrase wholly out of context and engaged in linguistic legerdemain.

15

The Release specifically provides that ACSTAR promises not to sue:

> Holmes P. Harden, individually, as Chapter 7 Trustee for [IHI], or as a principal in the law firm of Maupin, Taylor & Ellis, P.A., or the law firm of Maupin, Taylor & Ellis, P.A., their agents, attorneys, employees, officers, directors, <u>and insurance carriers</u> . . . .

The only logical interpretation of the Release is that the phrase "their agents, attorneys, employees, officers, directors, and insurance carriers" refers only to the law firm of Maupin, Taylor & Ellis. This follows logically from the sentence structure. The sentence identifies two entities that ACSTAR promises not to sue -- Holmes P. Harden and the law firm of Maupin, Taylor & Ellis. The two entities are separated by the disjunctive conjunction "or." On one side of the "or," ACSTAR promised not to sue Harden in three capacities: individually, as Trustee for IHI, or as a principal of Maupin, Taylor & Ellis, P.A.

On the other side of the "or," ACSTAR also promised not to sue "the law firm of Maupin, Taylor & Ellis, P.A., their agents, attorneys, employees, officers, directors, and insurance carriers." Obviously, the phrase "insurance carriers" refers only to Maupin, Taylor & Ellis's insurance carriers.

In addition to its location in the sentence, the phrase begins with the possessive plural pronoun "their." This pronoun, being plural, would make no sense were it to refer to Harden, in any of his capacities, because he is a singular entity. It plainly applies to the only plural entity ACSTAR promised not to sue -- Maupin, Taylor & Ellis. Moreover, even if it also applied to Harden, no interpretation could lead one reasonably to conclude that "insurance carriers" refers to IHI's insurers. The sentence just does not say that, and the Trustee's selective use of ellipses cannot change that fact.

16

D.   **Even If This Court Deems The ERSIC Policy Proceeds To Be Property Of The Estate, ACSTAR's Lien On The Proceeds Is Superior To All Other Parties, Including The Trustee.**

In _In re Alcon Demolition_, 204 B.R. 440 (Bankr. D. N.J. 1997), a case discussed extensively in ACSTAR's September 13, 1999 Memorandum and elsewhere in this Response, the Court held that a surety's equitable lien is superior to the claims of any other parties, including a bankruptcy trustee. The Trustee simply cannot distinguish this case. His suggestion that this case is different because "[t]hese insurance proceeds are an entirely separate fund in no way connected or related to ACSTAR's payment under the payment bond" simply ignores reality.   Trustee's Objection, ¶33. The ERSIC policy proceeds are directly related to ACSTAR's payment on the Bond.   In fact, ERSIC should have paid the SEC litigation settlement before ACSTAR.   ERSIC's policy covered IHI for any settlements that IHI was obligated to pay because of any claim for "securities activity wrongful acts." The SEC's claims against IHI included claims for securities activity wrongful acts.  But despite this, ERSIC paid nothing.   Nor did IHI pay any part of the SEC settlement.   Instead, ACSTAR – a surety that should have paid only as a last resort – agreed to pay the entirety ($4.1 million) of the SEC litigation settlement on IHI's behalf.

Similarly, the Trustee erroneously contends that other cases cited by ACSTAR are not applicable because "the surety's claims in such cases arose from its performance of the principal's obligations . . . ."   _Id._ ¶ 35.  But ACSTAR did perform IHI's obligations.   The SEC accused IHI and Van Etten, not ACSTAR, of securities activity wrongful acts.  ACSTAR settled those claims for IHI, and now ACSTAR is entitled to reimbursement from the ERSIC policy proceeds.

17

**E.    The Equities And Circumstances Of This Case Demand That ACSTAR Be Reimbursed From The ERSIC Policy Proceeds.**

As explained in Section I. of this Response, the Trustee's unsubstantiated insinuations regarding ACSTAR's motives and conduct in this matter are without merit.    Indeed, the principles of equitable subrogation demand that ACSTAR recover from the ERSIC policy proceeds.

Equitable subrogation is "founded on principles of natural reason and justice" and is a "highly favored doctrine and expansively applied." <u>Rinn v. First Union Nat. Bank of Maryland</u>, 176 B.R. 401, 408 (Bankr. D. Md. 1995). It exists to "place the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged, and to relieve entirely the insurer or surety who indemnified the loss and who in equity was not primarily liable therefor." <u>Fireman's Fund Ins. Co. v. Maryland Cas. Co.</u>, 65 Cal. App. 4th 1279, 77 Cal. Rptr. 2d 296 (1998).

Van Etten and IHI are the parties ultimately liable for the loss.  They committed the fraudulent acts that prompted the SEC litigation.  ACSTAR is innocent of all wrong-doing.  Moreover, by agreeing to pay the entirety of the SEC litigation settlement on IHI's behalf, ACSTAR has a $600,000 exposure, exclusive of fees and expenses, to which it is entitled to reimbursement.

Despite these facts, the Trustee repeatedly casts ACSTAR as a villain merely for exercising sound business judgment and litigation strategy in its dealings with the Trustee, IHI, and the SEC.  The Trustee forgets that IHI executed an Indemnity Agreement on ACSTAR'S behalf.    That Indemnity Agreement did not prohibit ACSTAR from collecting a premium for its services.    Nor did it prohibit ACSTAR from trying to minimize its losses by investing the $3,500,000 collateral.  ACSTAR is not a charity.  It is not in the business of giving money away to enterprises that run afoul of the

18

WARD AND SMITH, P.A., ATTORNEYS AT LAW

SEC. ACSTAR behaved like a surety company, not like a villain. It collected a premium and invested the collateral. ACSTAR's actions constituted prudent and customary business strategy, yet the Trustee attempts to vilify ACSTAR's conduct to deny it any recovery for its current out-of-pocket loss.

What is worse, the Trustee would have the ERSIC policy proceeds inure to the benefit of IHI and Van Etten, the very parties that orchestrated the security activity wrongful acts that the policy is meant to cover. If the Trustee's position prevails, IHI and Van Etten will be unjustly enriched by their own fraudulent acts, and at ACSTAR's expense. Not surprisingly, the North Carolina Supreme Court has upheld the use of equitable liens to prevent this type of unjust enrichment. <u>Embree Const. Group v. Rafcor, Inc.</u>, 330 N.C. 487, 496, 411 S.E.2d 916, 923 (1992). Clearly, the equities and circumstances of this case demand that ACSTAR, not Van Etten or IHI, be reimbursed from the ERSIC policy proceeds.

F.   **Contrary To The Trustee's Unsubstantiated Assertions, It Is the Debtor, Not ACSTAR, That Will Receive A Windfall If ACSTAR Is Denied Any Recovery Of The ERSIC Policy Proceeds.**

IHI paid nothing in connection with the SEC litigation. Van Etten posted a $5,000,000 cash bond. ACSTAR substituted a surety payment bond for Van Etten's cash bond. ACSTAR, not IHI, was ordered to pay $4.1 million to settle the SEC's claims. Therefore, ACSTAR, not IHI, is entitled to recover first from the ERSIC policy. Reimbursement for ACSTAR's losses will not create a windfall. It will merely be make ACSTAR whole. Contrary to the Trustee's claim that IHI's creditors will be injured, it is ACSTAR that will be unjustly injured if it is denied recovery from the ERSIC policy proceeds.

In <u>American Surety Co. of New York v. Bethlehem Nat. Bank</u>, 314 U.S. 314, 62 S.Ct. 226 (1941), the United States Supreme Court

WARD AND SMITH, P.A., ATTORNEYS AT LAW

acknowledged that "[t]o permit the surety to stand in the shoes of the secured creditor whose claim it has paid does not prejudice the rights of the general creditors." Id.at 228. Besides, ACSTAR's payments on the bond will be the source of recovery for those same creditors that, according to the Trustee, ACSTAR is purporting to injure. Consequently, ACSTAR may stand in the SEC's shoes and recover the ERSIC policy proceeds.

**G.   ACSTAR, By Virtue Of Its $600,000 Payment On The Payment Bond And Its Duty To Pay The Balance In The Future, Is Entitled To Bring Its Equitable Subrogation Claim Now.**

The Trustee misapplied the law in arguing that "ACSTAR is not entitled to any asserted compensation" until it pays the full amount of the Payment Bond. Trustee's Objection, ¶46. ACSTAR has already paid $600,000 on the Bond. Further, ACSTAR is bound by the District Court's September 20, 1999 Consent to Final Judgment to pay a total of $4,100,000 on the Payment Bond to the SEC on behalf of IHI. Therefore, ACSTAR is entitled to assert its rights in this proceeding. See Kimberly-Clark Corporation v. Alpha Building Company, 591 F.Supp. 198, 207 (N.D.Miss 1984)(holding that the right of subrogation begins as of the date of the execution of the bond requiring payment).

Moreoever, as a practical matter, ACSTAR's liability on the Payment Bond is fixed just as if it had already paid the full amount. Equity alone requires the Court to resolve ACSTAR's claims in this proceeding to avoid a multiplicity of lawsuits.

**H.   ACSTAR's $300,000 Priority Status Claim Does Not Preclude It From Recovering The ERSIC Policy Proceeds To Which It Is Entitled.**

The Trustee's final argument seeks to penalize ACSTAR for negotiating a $300,000 priority status claim in the bankruptcy. But there is nothing improper about ACSTAR's litigation strategy. ACSTAR's priority status claim, and its entitlement to the ERSIC policy proceeds, are not mutually-exclusive remedies.

WARD AND SMITH, P.A., ATTORNEYS AT LAW

When ACSTAR negotiated the $300,000 priority status claim, it did not preclude itself from pursuing any other avenues of recovery. For that reason, ACSTAR is entitled to also seek recovery under the ERSIC policy proceeds. ACSTAR's purpose is merely to be made whole, to recover its out-of-pocket losses. ACSTAR does not seek a double recovery. Regardless, the priority status claim does not bar ACSTAR's claims against the ERSIC policy. As a result, this argument, like the seven preceding it, should be rejected.

This the 24th day of Nov, 1999.

Paul A. Fanning
N.C. State Bar I.D. No.: 025477

Michael P. Flanagan
N.C. State Bar I.D. No.: 001461
For the firm of
Ward and Smith, P.A.
120 West Fire Tower Road
Post Office Box 8088
Greenville, North Carolina   27835-8088
Telephone:  (252) 355-3030
Facsimile:  (252) 756-3689
Attorneys for ACSTAR

WARD AND SMITH, P.A., ATTORNEYS AT LAW

## CERTIFICATE OF SERVICE

The undersigned, of 120 West Fire Tower Road, Post Office Box 8088, Greenville, North Carolina   27835-8088, certifies:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the date set forth below I served copies of the foregoing RESPONSE by first class mail at their last known addresses on the following:

Holmes P. Harden
Maupin, Taylor & Ellis, P.A.
Post Office Drawer 19764
Raleigh, NC 27619

Terri L. Gardner
Smith, Debnam, Narron & Myers, LLP
Post Office Box 26268
Raleigh, NC 27611

Marjorie K. Lynch
Bankruptcy Administrator
Post Office Box 3039
Raleigh, NC 27602

Brent E. Woods
Post Office Box 164
Raleigh, NC 27602

WARD AND SMITH, P.A., ATTORNEYS AT LAW

James T. Johnson
James A. Roberts, III
Lewis & Roberts, PLLC
Post Office Box 17529
Raleigh, NC  27619

I certify under penalty of perjury that the following is true and correct.

This the 24th day of November, 1999.

Paul A. Fanning

WARD AND SMITH, P.A., ATTORNEY'S AT LAW

9901038/0001
GVLMAIN\217127.1