EXHIBIT
FILED
COPY
"A"
SEP 13

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

|                                    |   |                           |
|------------------------------------|---|---------------------------|
| INTERNATIONAL HERITAGE, INC.       | ) | CASE NO. 98-02675-5-ATS   |
|                                    | ) | CHAPTER 7                 |
|                                    | ) |                           |
| INTERNATIONAL HERITAGE,            | ) | CASE NO. 98-02674-5-ATS   |
| INCORPORATED,                      | ) | CHAPTER 7                 |
|                    Debtors         | ) |                           |

MEMORANDUM OF LAW IN SUPPORT
OF OBJECTION OF ACSTAR INSURANCE COMPANY
TO APPLICATION OF TRUSTEE FOR AUTHORITY
TO ENTER INTO SETTLEMENT AGREEMENT

ACSTAR Insurance Company ("ACSTAR") submits the following Memorandum of Law in support of its Objection to the Application of Trustee for Authority to Enter into Settlement Agreement filed on August 27, 1999, and supplemented on September 10, 1999. The reasons and authorities in support of this Memorandum of Law are as follows:

I.    **INTRODUCTION**

This matter involves the Trustee's attempt to settle the claims of International Heritage, Inc., International Heritage, Incorporated (collectively "IHI") against Executive Risk Specialty Insurance Company ("ERSIC"), which provided a Directors and Officers Liability Policy to IHI and its officers and directors (the "ERSIC policy"). ACSTAR submits that the Trustee's Application should be denied for several reasons. First, the Application is defective because it provides no adequate basis to support the Trustee's decision to settle. Furthermore, the proposed settlement agreement completely ignores the indemnification rights of ACSTAR. Pursuant to the terms of a Payment Bond posted by ACSTAR for IHI's benefit, ACSTAR has agreed to pay $4.1 million to resolve claims of the Securities and

WARD AND SMITH, P.A., ATTORNEYS AT LAW

Exchange Commission ("SEC") against IHI.  An Indemnity Agreement executed by IHI in favor of ACSTAR contemporaneously with the Payment Bond entitles ACSTAR to reimbursement out of any proceeds from the ERSIC policy in preference to any other party, including the bankruptcy Trustee.  In fact, the amount to which ACSTAR is entitled as a result of the Indemnity Agreement is not property of the bankruptcy estate.  Additionally, ACSTAR is entitled to a portion of any proceeds from the ERSIC policy through its subrogation rights under 11 U.S.C. § 509 and under the doctrine of equitable subrogation.  Given these circumstances, the Trustee's Application should be denied.

## II.  FACTS

On March 16, 1998, the SEC brought a civil action in the United States District Court for the Northern District of Georgia, Atlanta Division, against IHI, Stanley H. Van Etten, Claude W. Savage, and Larry G. Smith.  That case bears Civil Action No. 1-98-CV-0803-RWS and is styled <u>Securities and Exchange Commission v. International Heritage, Inc., Stanley H. Van Etten, Claude W. Savage, Larry G. Smith, International Heritage Incorporated, a Nevada corporation</u> (the "SEC litigation").

In the SEC litigation, the District Court issued a Memorandum Opinion and Order filed on April 3, 1998.  It allowed IHI to resume its business activities under certain conditions. Among other provisions, the District Court ordered IHI to post a $5,000,000 dischargeable bond to ensure that at least that amount would be available to satisfy any amounts ordered paid by IHI in the SEC litigation.  The specific conditions of the bond were set out in a Notice of Posting of Cash Bond and Order Approving Cash Bond filed on April 3, 1998 and incorporated by reference in the Memorandum Opinion and Order.

Stanley H. Van Etten ("Van Etten"), then an officer and director of IHI, acting as surety on IHI's behalf, tendered to the

2

Clerk of Court for the District Court $5,000,000 cash for deposit into the registry of the Clerk of Court to ensure that IHI's liquid assets would not be diminished during the SEC litigation and would be available to satisfy to any judgment for damages or order granting disgorgement or other monetary relief against IHI.

The Notice of Posting of Cash Bond and Order Approving Cash Bond expressly permitted IHI to replace the bond with a conventional, pre-approved surety bond containing exactly the same terms and conditions during the period that the bond remained in place. The Defendants applied for an Order Approving Substitution of Cash Bond With Payment Bond on June 24, 1998. They proposed that ACSTAR would issue the surety bond and that United Coastal Insurance Company (United) would serve as co-surety. The District Court entered an Order on July 1, 1998 granting the Application for an Order Approving Substitution of Cash Bond with Payment Bond. It was pursuant to these terms that ACSTAR and United jointly posted a $5,000,000 dischargeable surety Payment Bond. $3,500,000 was transferred to ACSTAR from the Clerk of Court as collateral for the bond.

To induce ACSTAR and United to furnish the Payment Bond, IHI executed an Indemnity Agreement on June 8, 1998. The Indemnity Agreement was agreed upon contemporaneously with the execution of the bond. A photocopy of the Indemnity Agreement is attached hereto and incorporated herein by reference as "Exhibit A." Paragraph 2 of the Indemnity Agreement states that IHI will:

> indemnify and save the surety [ACSTAR]
> harmless from and against any and all
> liability, loss, costs, damages, fees of
> attorneys and other expenses which the surety
> may sustain or incur by reason or in
> consequence of the execution of such bond or
> bonds and any renewal, continuation or
> successor thereof, including but not limited
> to, (i) sums paid or liabilities incurred in
> settlement of, and expenses paid or incurred

3

in connection with claims, suits, or judgments under such bonds, or (ii) expenses paid or incurred (A) in enforcement the terms hereof, (B) in procuring or attempting to procure release from liability, or (C) in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

Paragraph 6 of the Indemnity Agreement specifically grants ACSTAR a security interest in "all sums due or to become due to indemnitors or any of them in connection with any contract."

On November 25, 1998, IHI filed for relief under Chapter 7 of the United States Bankruptcy Code. Holmes P. Hardin was appointed Chapter 7 Trustee in both cases.

On January 15, 1999, the Trustee filed an Application to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction. The Application requested an Order authorizing the Trustee to execute a pleading entitled Consent to Final Judgment of Permanent Injunction as to Defendants IHI in the underlying SEC litigation.

Before the Court ruled on this Application, the parties submitted to court-appointed mediation. As a result of the mediation, ACSTAR, in settlement of the SEC's claims against IHI, agreed to pay $4.1 million on the Payment Bond. Specifically, on June 21, 1999, this Court approved the Trustee's Application and entered an Order that stated in pertinent part:

> The Sureties (ACSTAR and United) have agreed to pay and the Trustee for International Heritage, Inc. has agreed to receive $4.1 million under the Bond and to disburse the proceeds of the Bond in the International Heritage, Inc. bankruptcy case according to Paragraph V of Exhibit A(1) attached hereto. The Commission stipulates that the United States Bankruptcy Court for the Eastern District of North Carolina has jurisdiction pursuant to 28 U.S.C. § 1334 over the administration of the surety Bond, and further stipulates that any and all proceeds of such

4

Bond shall be first subject to a payment to the Trustee of an amount equal to the full statutory commission permitted pursuant to 11 U.S.C. § 326(a) without reduction notwithstanding the foregoing stipulation that the Bond is not property of IHI Estate, and that in addition to the aforesaid payment to Trustee, to payment of all allowed IHI administrative claims. It is further agreed that the Sureties (ACSTAR and United) shall have claims in the International Heritage, Inc. bankruptcy case as set forth in Paragraph V of Exhibit A(1) attached hereto.

The obligations in the Order are contingent on the entry of a Final Judgment in the SEC Litigation. Notably, no amounts were paid to the SEC from the ERSIC policy.

On August 9, 1999, the Trustee filed an Application for Authority to Enter into Settlement Agreement (the "Application"). A photocopy of the Application is attached hereto and incorporated herein by reference as "Exhibit B." In the Application, Trustee, Van Etten, Savage, and Smith propose a settlement of two lawsuits involving IHI and ERSIC whereby ERSIC will pay $1,787,500 to the Trustee. ERSIC will also pay $275,000 to Van Etten in reimbursement for attorneys' fees and expenses incurred in the underlying actions. In addition, ERSIC will withdraw a proof of claim for $500,000 that it advanced, on an interim basis, for defense costs.

Paragraph 11 of the Trustee's Application states that "the settlement agreement is contingent upon the Court granting a motion for 11 U.S.C. § 105 injunction filed by Trustee in Adversary Proceeding No. S-99-00043-5-AP, extending the automatic stay to all co-defendants in the underlying actions enumerated therein." In the proposed Settlement Agreement and Release attached to the Application, Paragraph 6 states that the Agreement will not become effective before "the dismissal with prejudice of all civil actions pending against IHI and/or the directors and officers as of the

5

effective date of the settlement or the entry of an injunction by the Bankruptcy Court under 11 U.S.C. § 105 enjoining any such actions that have not been dismissed with prejudice by the effective date of the settlement." The proposed Settlement Agreement and Release also states that the Trustee shall file a motion with the Bankruptcy Court that, among other things, finds that "ERSIC is released from any and all obligations under the policy, whether known or unknown, anticipated or unanticipated, past, present or future." If the Application is approved, its terms would foreclose ACSTAR from pursuing any claims against ERSIC, IHI, Van Etten, Savage, or Smith.

ERSIC provided the insurance policy to IHI and its officers and directors for the policy period June 23, 1997 to June 23, 1998. (A photocopy of the insurance policy is attached hereto and incorporated herein by reference as "Exhibit C.") IHI is an insured under the ERSIC policy. The ERSIC policy covers IHI for claims for "Securities Activity Wrongful Acts," which is defined as any actual or alleged "(1) violation of Securities Laws; or (2) any act, error, omission, misstatement, misleading statement or breach of duty by an insured in connection with the purchase or sale, or offer purchase or sale, securities issued at any time by the Company." The SEC filed its suit against IHI and certain of its officers and directors on March 18, 1998, during the ERSIC policy period.

The ERSIC policy is a claims-made indemnity policy for claims made during the ERSIC policy period. It covers "loss," which is defined as Defense Expenses and any "damages, settlements, judgments or other amounts . . . that the Company . . . is obligated to pay as a result of any Claim for Securities Activity Wrongful Acts . . . ." Defense expenses are defined as "reasonable legal fees and expenses incurred in the defense or appeal of a Claim." The ERSIC Policy limits are $5,000,000 for all

6

claims made during any single policy year, with a $100,000 retention per claim.

In settlement of the SEC's claims against IHI, ACSTAR has agreed to pay $4.1 million on the Payment Bond.  ACSTAR received $3.5 million as collateral on the Payment Bond, therefore ACSTAR is out of pocket $600,000, exclusive of fees and expenses to which it is also entitled under the express terms of the Indemnity Agreement.

## III. ARGUMENT

**A.    The Court should deny the Trustee's Application because it does not contain a legally-sufficient basis to justify the Trustee's decision.**

The Trustee's Application provides no basis for verifying the Trustee's decision to settle with ERSIC.  This Court must approve any settlement of litigation by the Trustee.  According to Bankruptcy Rule 9019(a), the Court may approve a settlement only if it considers the probability of success on the merits, difficulties of collection, the complexity of litigation, and the expense, inconvenience, and delay associated with litigation.

The Trustee's Application does not discuss any of these factors.  Rather, it offers only conclusory and subjective statements that the settlement is in the Estate's best interest:

> Trustee is of the opinion that settling the above-described controversy is in the best interests of the expeditious administration of the debtor's estate, given the merits of the defenses and the complexity, expense, inconvenience and delay of litigation. Trustee therefore deems it appropriate and consistent with his duties to enter into the Settlement Agreement with ERSIC, Van Etten, Savage and Smith which settlement by its terms, inter alia, (a) brings substantial revenue into the bankruptcy estate without incurring additional costs or expenses, and (b) avoids complicated litigation concerning

WARD AND SMITH, P.A., ATTORNEYS AT LAW

7

the insurance coverage issues.   (Trustee's Application p.4.)

The United States Supreme Court has held that the approval of a settlement based on mere boiler-plate approval "phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law" is impermissible.   Protective Committee of Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434 (1968).   The Trustee's application fails to satisfy the Supreme Court's standard.   The Trustee offered no evaluation of the facts or analysis of the law in his Application.

Before the bankruptcy court can approve a settlement, it has an independent duty to inform itself of all the relevant factors and to make specific findings with respect to those factors.   LaSalle National Bank v. Holland, 841 F.2d 159, 163 (7th Cir. 1987).   In this case, the Trustee's Application does not discuss the merits of the two lawsuits or the estate's likelihood to prevail in those lawsuits.   Also, the Trustee's Application does not discuss the merits of ERSIC's arguments.   Specifically, the Trustee's Application does not discuss the coverage under the ERSIC policy, the basis for any claims against that policy, or the amounts of any possible claims against the ERSIC policy. Therefore, without more from the Trustee, the Court should reject his Application.

**B.     The Indemnity Agreement's express terms entitle ACSTAR to a portion of the insurance proceeds in priority to the bankruptcy Trustee.**

In addition to failing to adequately support his settlement Application, the Trustee completely disregards ACSTAR's rights to indemnification in the ERSIC policy.   IHI executed an Indemnity Agreement with ACSTAR contemporaneous with the Payment Bond.   Paragraph 2 of the Indemnity Agreement states that IHI will:

8

indemnify and save the surety [ACSTAR] harmless from and against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the surety may sustain or incur by reason or in consequence of the execution of such bond or bonds and any renewal, continuation or successor thereof, including but not limited to, (i) sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under such bonds, or (ii) expenses paid or incurred (A) in enforcement the terms hereof, (B) in procuring or attempting to procure release from liability, or (C) in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

Paragraph 6 of the Indemnity Agreement specifically grants ACSTAR a security interest in "all sums due or to become due to indemnitors or any of them in connection with any contract." Under North Carolina law, an insurance policy is a contract. Brown v. Lumbermans Mut. Cas. Co., 390 S.E.2d 150, 153, 326 N.C. 387 (1990). The insurance policy contract between IHI and ERSIC is such a contract in which ACSTAR has a security interest under the Indemnity Agreement. Consequently, in accordance with the Indemnity Agreement, ACSTAR has a security interest in the ERSIC policy. ACSTAR is entitled to recover any proceeds from the ERSIC policy before any other party as indemnity for the amount it pays on IHI's behalf.

The ERSIC policy covered IHI for any settlements that IHI was obligated to pay because of any claim for "securities activity wrongful acts." The SEC's claims against IHI clearly include claims for securities activities wrongful acts. IHI, however, did not pay any part of the settlement. Initially, Van Etten posted a $5,000,000 bond. Later, ACSTAR substituted a surety payment bond for Van Etten's cash bond. ACSTAR received $3.5 million as collateral for the payment bond. ACSTAR has agreed to pay the

9

entirety ($4.1 million) of the SEC litigation settlement on IHI's behalf. As a result, ACSTAR has a $600,000 exposure, exclusive of fees and expenses to which it is entitled.

ACSTAR, not IHI, has agreed to pay $4.1 million to settle the SEC's claims. Therefore, it is ACSTAR, not IHI that is entitled to recover first from the ERSIC policy. To hold otherwise would grant IHI an inequitable windfall at ACSTAR's expense. By-virtue of the Indemnity Agreement, the ERSIC policy proceeds inure to ACSTAR's benefit. Furthermore, equity demands that ACSTAR be reimbursed from the ERSIC policy proceeds for its loss.

In re Alcon Demolition, Inc., 204 B.R. 440 (Bankr. D.N.J. 1997) is directly on point. In that case, the surety, Connecticut Indemnity Company, issued payment and performance bonds to Alcon Demolition, Inc. Alcon subsequently filed for bankruptcy. The surety was required to pay over $378,000 in claims on Alcon's behalf for performance and payment bonds it issued on a construction contract.

In connection with the bonds, Alcon executed a General Agreement of Indemnity with the surety similar to the Indemnity Agreement between ACSTAR and IHI. Alcon agreed to indemnify and hold the surety harmless for any claims that might arise from the bonds. In the indemnity agreement, Alcon signed all its interests in construction contracts to the surety, and agreed that if it defaulted on a contract, the surety was subrogated to Alcon's rights in the contracts. Alcon sued the George Hyman Company on a construction contract and prevailed in an arbitration proceeding. The surety contended that $378,000 of the arbitration award was a claim secured under the indemnity agreement. The Court held that, pursuant to the terms of the indemnity agreement, the surety was first entitled to reimbursement out of the arbitration award to the extent of its loss.

10

In another analogous situation, the United States Supreme Court held that when a surety performs or pays subcontractors to perform pursuant to a performance and payment bond, it has rights to reimbursement from the remaining contract funds. A surety has an "equitable lien" against the identifiable proceeds of the underlying contract. Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 28 S. Ct. 389 (1908).

Just as the Alcon indemnity agreement gave the surety a security interest in Alcon's construction contracts, in this case the Indemnity Agreement grants ACSTAR a security interest in the ERSIC policy. ACSTAR has an equitable lien against the proceeds of the ERSIC policy. The Trustee does not have the authority to settle with ERSIC because of ACSTAR's pre-existing security interest in the proceeds of the ERSIC policy. ACSTAR is entitled to be paid before the bankruptcy Trustee as reimbursement for its $600,000 (exclusive of costs and attorneys' fees) exposure.

    **C.   The Bankruptcy Court should not approve the settlement because the ERSIC policy proceeds are not property of the Bankruptcy Estate to the extent of amounts owed to ACSTAR.**

The ERSIC policy proceeds are not property of the Estate. For that reason, the Bankruptcy Court does not have authority to approve this settlement. Under payment and performance bonds, when a debtor defaults on an underlying contract he is not entitled to the contract funds because performance has not been completed and because materialmen and laborers have not yet been paid. In re QC Piping Installations, Inc., 225 B.R. 553 (Bankruptcy E.D.N.Y 1998). When the surety, such as ACSTAR in this case, performs in the place of a debtor and completes the contract, the entitlement to contract funds arises. Equity demands that the debtor not receive a windfall. Thus, subrogation places the surety in the position to exercise the debtor's rights to identifiable contract funds, effectively removing that property from the estate and rendering it

11

unavailable to general creditors. In re Alcon Demolition, Inc., 204 Br. 440, 447 (Bankr. D.N.J. 1997). In In re Modular Structures, Inc., 27 F.3d 72, 77-78 (3rd Cir. 1994) the Third Circuit held that, to the extent necessary to reimburse a surety for monies actually paid out in accordance with its obligations under an indemnity agreement, such funds are not property of the estate.

In Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S. Ct. 232 (1962), the United States Supreme Court held that a surety on a payment bond has a superior right to funds than a bankruptcy trustee. The Court held that "the Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." Id. at 136. The Court reasoned that "if the surety at the time of adjudication was, as it claimed, either the outright legal or equitable owner of the fund, or had an equitable lien or prior right to it, this property interest of the surety never became a part of the bankruptcy estate." Id. at 136. In ruling that the surety's right to the fund was superior than the bankruptcy trustee's right, the Court recognized that "property interests in a fund not owned by a bankrupt of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee." Id. at 135.

All of these cases are on point. ACSTAR, as surety, has agreed to pay $4.1 million under the payment bond, and its total exposure is $600,000, exclusive of attorneys' fees and costs. ACSTAR has performed in place of the debtor - IHI. Therefore, ACSTAR has a right to that portion of the ERSIC policy proceeds necessary to reimburse it for its loss. The ERSIC policy is not property of the estate to the extent of ACSTAR's loss, and, for that reason, the Bankruptcy Court should not approve the Trustee's Application.

12

WARD AND SMITH, P.A., ATTORNEYS AT LAW

D.   **ACSTAR is subrogated to the SEC's rights pursuant to 11 U.S.C. § 509.**

Under 11 U.S.C. § 509, "an entity that is liable with the debtor on, or that has secured, a claim of the creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." This section applies to this case.   In posting the Payment Bond, ACSTAR partially secured the claims against IHI.   ACSTAR has agreed to pay $4.1 million to settle all claims against IHI in the SEC litigation. ACSTAR's total exposure is $600,000 plus expenses and attorney's fees.   Therefore, pursuant to Section 509, ACSTAR is subrogated to the SEC's rights to this extent.   Since the SEC is entitled to payment against ERSIC, ACSTAR, by stepping into the SEC's shoes, may also proceed against ERSIC.

Section 509(c) explicitly states that "the Court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise." Pursuant to Section 509, ACSTAR is entitled to reimbursement for its exposure under the Payment Bond in preference to any other party, including the Bankruptcy Trustee.

E.   **Under the equitable subrogation doctrine, ACSTAR is subrogated to the SEC's rights and is entitled to exercise all the SEC's rights against IHI.**

As a result of the payments to be made pursuant to the District Court's Order, ACSTAR is also equitably subrogated to all the SEC's rights.   Subrogation is the substitution of one party in the place of another with respect to a lawful claim or right so that the substituted party succeeds to the rights of the other.

13

Black's Law Dictionary, 1427 (6th Ed. 1990). The principle is one that arises out of obligation, rather than out of voluntary goodwill. National Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F.2d 843, 844 (1st Cir. 1969). Subrogation is a venerable doctrine of "pure unmixed equity, having its foundation in the principles of natural justice." Prairie State Nat'l Bank of Chicago v. United States, 164 U.S. 227, 231, 17th S. Ct., 142, 144 (1896). The concept is best understood in terms of one who has performed his obligatory duties, the subrogee, stepping into the shoes of another, the subrogor. In re Alcon Demolition, Inc., 204 Br. 440 (Bankr. D.N.J. 1997).

The equitable effect of subrogation is to ensure that the subrogee, who had no choice but to perform his duties, will be compensated through exercise of the subrogor's rights. To allow the subrogor to keep his rights would result in unjust enrichment. The United States Supreme Court has noted that "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136-37, 83 S. Ct. 232, 235 (1962).

North Carolina law recognizes the doctrine of equitable subrogation. In In re White, 183 B.R. 713 (Bankr. M.D. N.C. 1995), the Court stated that equitable subrogation treats the extinguished obligation "as still subsisting for the benefit of [the provider of the funds], who is thus substituted to the rights, remedies, and securities of another." The In re White Court also recognized that an equitable lien under the doctrine of equitable subrogation is superior to the trustee's "strong arm" powers under 11 U.S.C. 544(a)(1).

It is undisputed in this case that ACSTAR has agreed to pay $4.1 million to resolve the SEC's claims against IHI. As a consequence, ACSTAR is subrogated to the SEC's rights, and is

14

entitled to enforce its right to be reimbursed from the proceeds of the ERSIC policy.

> F.   **Equitable subrogation also allows ACSTAR to assert all of IHI's rights against ERSIC.**

As mentioned above, the Indemnity Agreement allows ACSTAR to proceed against ERSIC for reimbursement.   See In re Alcon Demolition, Inc., 204 Br. 440 (Bankr. D.N.J. 1997).   Even in the absence of the Indemnity Agreement, however, equitable subrogation also permits ACSTAR to recover on any of IHI's claims against ERSIC.   In a similar case, Krawczyk v. Bank of Sun Prairie, 553 N.W.2d 299 (C.A. Wis. 1996), Ohio Casualty issued a fidelity and theft policy to the Bank of Sun Prairie.   The bank served as trustee for two trust funds.   The trust funds sued the bank, alleging that the bank and one of its trust officers had negligently transferred the trust funds to unauthorized entities. Ohio Casualty settled the Plaintiff's claims against the bank and moved to substitute itself for the Plaintiffs and the bank in the underlying actions to pursue their claims against the trust officer and the bank's Directors and Officers Liability insurer.

The Court held that Ohio Casualty had a right to substitute to the bank's interest in the action.   The Court held that once a fidelity insurer pays the loss caused by the wrongful acts of a bonded employee, the insurer becomes subrogated to any right of action the employer may have against the employee.

The reasoning of Krawczyk applies to this case as well. Like Ohio Casualty, ACSTAR paid losses owed by IHI and caused by the wrongful acts of IHI's employees.   There can be no dispute by the Trustee that IHI is entitled to recover against ERSIC.   Indeed, in his Complaint for Declaratory Relief, the Trustee specifically alleged that IHI was covered under the ERSIC policy for the claims brought by the SEC.   But the Trustee errs in attempting to settle IHI's claims against ERSIC at the expense of ACSTAR.   Because

15

ACSTAR paid the SEC's claims for IHI, ACSTAR is subrogated to any right of action that IHI may have against its employees, and their directors and officer's liability insurer.  Although the proceeds of the ERSIC policy are for IHI's benefit, since ACSTAR has paid claims pursuant to its Payment Bond for IHI, it is entitled to a portion of these proceeds as reimbursement to the extent of its loss of $600,000 plus fees and expenses.  Any other result denies ACSTAR its proper right of reimbursement and grants IHI an inequitable windfall.

> ### G. The Trustee's Application impermissibly enjoins ACSTAR from pursing any reimbursement from IHI or ERSIC for its loss.

The Trustee's Application seeks a permanent injunction against any actions against IHI and ERSIC.  Specifically, the Settlement Agreement and Release states that the Agreement will not become effective before "the dismissal with prejudice of all civil actions pending against IHI and are the Directors and Officers as of the effective date of the settlement or the entry of an injunction by the Bankruptcy Court under 11 U.S.C § 105 enjoining any such actions that have not been dismissed with prejudice by the effective date of the settlement."  The Settlement Agreement and Release also states that the Trustee shall request that the Bankruptcy Court enter an Order "finding that ERSIC is released from any and all obligations under the policy, whether known or unknown, anticipated or unanticipated, past, present or future."

The Bankruptcy Court lacks the jurisdiction to grant a Release to a Non-Debtor third-party, which is exactly what the Trustee requests in his Application.  Callaway v. Benton, 336 U.S. 132 (1946); In re Digital Impact, 223 B.R.1 (Bankr. N.D.OK. 1998).  Although Callaway was decided under the former Bankruptcy Act, it is still binding precedent and precludes the court from approving the Trustee's Application.  Furthermore, the court should

16

not grant a complete and permanent Release to IHI and ERSIC because it will fatally prejudice ACSTAR's rights. As stated before, ACSTAR is entitled to reimbursement out of the ERSIC policy proceeds for its loss under the payment bond. If the court permanently enjoins all claims against IHI or ERSIC, ACSTAR's rights will be nullified.

## IV. CONCLUSION.

ACSTAR respectfully requests that the court deny the Trustee's Application for authority to enter into the Settlement Agreement. The Application is vague and does not establish an adequate factual and legal basis to support the settlement. Moreover, the proposed Settlement Agreement does not consider, or protect, the rights of ACSTAR. As discussed above, ACSTAR is entitled to proceeds from the ERSIC policy in preference to the Trustee. ACSTAR's rights derive from its Indemnity Agreement with IHI, Section 509 of the Bankruptcy Code, and the doctrine of equitable subrogation. In light of these reasons, the Trustee's Application should be denied.

This the 10th day of September, 1999.

Paul A. Fanning
N.C. State Bar I.D. No.: 025477

Michael P. Flanagan
N.C. State Bar I.D. No.: 001461
For the firm of
Ward and Smith, P.A.
120 West Fire Tower Road
Post Office Box 8088
Greenville, North Carolina  27835-8088
Telephone:  (252) 355-3030
Facsimile:  (252) 756-3689
Attorneys for Acstar Insurance Company

WARD AND SMITH, P.A., ATTORNEYS AT LAW

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 0 3 1998

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

    v.

INTERNATIONAL HERITAGE, INC.,
STANLEY H. VAN ETTEN, CLAUDE W.
SAVAGE, LARRY G. SMITH and
INTERNATIONAL HERITAGE
INCORPORATED, a Nevada corporation ,

      Defendants.

CIVIL ACTION

NO. 1:98-CV-803-RWS



EXHIBIT

"B"

## NOTICE OF POSTING OF CASH BOND AND ORDER APPROVING CASH BOND

WHEREAS, in open Court on 27 March, 1998 and in the above-captioned civil action pending in this Court between the Securities and Exchange Commission (hereinafter "SEC"), as Plaintiff, and the Defendants International Heritage, Inc. and International Heritage, Incorporated (hereinafter "Defendants IHI") and other individual Defendants, an Order was entered from the bench by the Honorable Richard W. Story, pending formalization of a subsequent written order requiring the Defendants IHI to post a dischargeable bond in the amount of Five Million Dollars ($5,000,000.00) to assure that the liquid assets of the Defendant IHI are not diminished during the pendency of this action and that such principal sum will be available to satisfy any amounts that may be ordered paid by the Defendants IHI in this proceeding; and

WHEREAS, the Defendant Stanley H. Van Etten, in his individual capacity, and acting as a Surety on behalf of the Defendants IHI (hereinafter "Surety"), has tendered and has agreed to transmit to the Clerk of Court for the United States District Court for the Northern District of

Georgia, Atlanta Division (hereinafter "Clerk of Court"), for deposit into the Registry of the Court the sum of Five Million Dollars ($5,000,000.00) cash (hereinafter "Bond") to assure that the liquid assets of the Defendants IHI are not diminished during the pendency of this action and to apply to any judgment for damages and/or order granting disgorgement or other monetary relief against the Defendants IHI, or either of them, up to the principal amount of Five Million Dollars ($5,000,000.00) that may result from this proceeding; and

WHEREAS, the Bond deposited by the Clerk of Court into the Registry of the Court shall be held pursuant to the terms of this order.

NOW, THEREFORE, BASED UPON THE FOREGOING, THE COURT HEREBY ORDERS that:

1.  The Bond posted by the Surety shall be deposited into the Registry of the Court to assure that the liquid assets of the Defendant IHI are not diminished during the pendency of this action and to make available at least the principal amount of Five Million Dollars ($5,000,000.00) to apply to any judgment for damages and/or any order granting disgorgement or other monetary relief against the Defendants IHI, or either of them in this proceeding.

2.  The condition of the obligation of the Bond is such that if the SEC shall fail to obtain a judgment for damages or an order granting disgorgement or other monetary relief against the Defendants IHI or either of them in this case, then this obligation shall be null and void and the principal amount of the Bond together with any then undisbursed accrued interest thereon shall be returned to the Surety upon receipt by

2

the Clerk of Cou. . an order releasing the Bond; otherwise, t     ond shall remain

in full force and effect, pending further order of this Court.

3.    A further condition of the obligation of the Bond is that if the SEC obtains a

judgment for damages and/or an order granting disgorgement or other monetary relief

against the Defendants IHI or either of them in this case, and that judgment is and any

order granting disgorgement or other monetary relief are satisfied in whole or in part

from the assets of the Defendant IHI either in full or, alternatively, in at least the

principal amount of Five Million Dollars ($5,000,000.00), the principal amount of

the Bond or any unapplied part of the principal amount of the Bond shall be returned

to the Surety; otherwise, the Bond shall remain in full force and effect, pending

further order of this Court.

4.    The Bond posted by the Surety shall be placed by the Clerk of Court in a Registry of

Court account by the Clerk of Court which will yield the highest interest rate

possible, with any interest earned being paid to and for the benefit of the Surety

quarterly, after any appropriate fees are deducted in accordance with any applicable

laws which govern the activities of the Clerk of court.

5.    The Defendants IHI may replace all or a portion of this Bond with a conventional,

pre-approved surety bond containing exactly the same terms and conditions during

the period that the Bond remains in place, so long as the replacement principal Bond

amount shall not be less than Five Million Dollars ($5,000,000.00), provided that all

aspects of the replacement are approved in advance by this Court and an additional

order is entered by this Court approving the replacement of the Bond and further

3

provided that no more than one (1) such Bond replacement shall be proposed by the Defendants IHI.

6.   In the event that the Surety shall no longer be employed by or serve as an officer or director or be a shareholder of either of the Defendants IHI, the Defendants IHI may, with the advance approval of this Court, replace this Bond either with a separate cash bond, or with a conventional, pre-approved surety bond containing precisely the same terms and conditions; provided, however, in no event shall the Bond be replaced unless and until the collective principal Bond amount is at least Five Million Dollars ($5,000,000.00) and all aspects of the replacement are approved by a written order entered by this Court.

SO ORDERED, this 3 ___ day of April, 1998.


RICHARD W. STORY
United States District Court Judge

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

SECURITIES AND EXCHANGE COMMISSION,

                          Plaintiff,

         v.

INTERNATIONAL HERITAGE, INC.,
STANLEY H. VAN ETTEN, CLAUDE W.
SAVAGE, LARRY G. SMITH and
INTERNATIONAL HERITAGE,
INCORPORATED, a Nevada corporation

                          Defendants.

CIVIL ACTION NO.
1-98-CV-0803-RWS

FILED IN CHAMBERS
RICHARD W. STORY
U.S.D.C. Atlanta

SEP 17 1999

LUTHER D. THOMAS, Clerk
By:
         Deputy Clerk

ENTERED ON DOCKET

SEP 20 1999

L.D.T. CLERK

Deputy Clerk

By:

---

## CONSENT FINAL JUDGMENT OF PERMANENT INJUNCTION AS TO DEFENDANTS INTERNATIONAL HERITAGE, INC. AND INTERNATIONAL HERITAGE, INCORPORATED, A NEVADA CORPORATION

Plaintiff, Securities and Exchange Commission ("Commission"), having filed its complaint in this matter against defendants International Heritage, Inc. ("IHI") and International Heritage, Incorporated, a Nevada corporation ("IHI Incorporated") and others, seeking injunctive and other relief, and defendants IHI and IHI Incorporated having entered general appearances, admitted the jurisdiction of this court over them and over the subject matter of this action, waived entry of findings of fact and conclusions of law pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure with respect to the relief granted in this order, and without admitting or denying any of the allegations of the complaint having consented to the entry of this order, it is hereby,

I.

ORDERED that defendant IHI, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them be, and they hereby are, permanently restrained and enjoined from, directly or indirectly:

(1) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell any securities through the use of any prospectus or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(2) carrying securities or causing them to be carried through the mails or in interstate commerce, by means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities;

(3) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, any interest in securities, unless and until a registration statement is filed with the Commission as to such security, or while a registration statement filed with the Commission as to such security is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or

2

examination under Section 8 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. 77h,

in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. 77e(a) and 77e(c).  Provided, however, that nothing in the foregoing portion of the preliminary injunction shall apply to any security or transaction which is exempt from the provisions of Section 5 of the Securities Act, 15 U.S.C. 77e.

## II.

IT IS FURTHER ORDERED that defendant IHI, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, in the offer or sale of securities, by use of any means or instruments of transportation or communication in interstate commerce, or by the mails, be, and they hereby are, restrained from, directly or indirectly:

(1) employing any device, scheme or artifice to defraud;

(2) engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or

(3) obtaining money or property by means of any untrue statement of a material fact, or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,

in violation of Section 17(a) of the Securities Act, 15 U.S.C. 77q(a).

3

## III.

IT IS FURTHER ORDERED that defendants IHI and IHI Incorporated, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, in connection with the purchase or sale of securities, by use of any means or instrumentalities of interstate commerce, or by the mails or any facility of any national securities exchange, be, and they hereby are, restrained from, directly or indirectly:

(1) employing any device, scheme or artifice to defraud;

(2) engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or

(3) making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading,

in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5, thereunder.

## IV.

IT IS FURTHER ORDERED that defendant IHI Incorporated, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, be and hereby are, restrained from, directly or indirectly, filing reports with the Commission, on Form 8-K or otherwise, which are false and misleading or fail to disclose material facts necessary to make the

4

statements made not misleading, in violation of Section 15(d) of the Exchange Act, 15 U.S.C. 78o(d), and Rule 15d-11, 17 C.F.R. 240.15d-11.

IT IS FURTHER ................... is set against defendant IHI in the ................... anting its ill-gotten gains from the ................... :omplaint, plus prejudgment interest. ................... rgement may be satisfied from the su ................... _____ been posted in this matter, which is not the property of IHI or of the bankruptcy estate of IHI.   Payments on the bond shall be : follows:  $600,000 within 30 days of this ( $750,000 within 120 days of this Order; an within 210 days of this Order; and the remaini 300 days of this Order.  The payments on ... .... .. deposited into the registry of this Court.  However, upon this Court's receipt of such payments by the surety, the clerk of the Court will issue a nonrefundable check in the same amount to the Chapter 7 bankruptcy trustee in In re International Heritage, Inc., Case No. 98-02675-5-ATS(Bankr. E.D.N.C.) (that case and In re International Heritage, Incorporated, Case No. 98-02674-5-ATS (Bankr. E.D.N.C.) hereinafter the ``Bankruptcy cases''), to be used first for the payment of his allowed || 326(a) statutory commission without reduction and then for all administrative claims allowed pursuant to □□ 330 and 503 of the United States Bankruptcy Code in

*Handwritten form box:*
TO: FILE ROOM    DATE:___/___/___
Circle One    Y    W    NB    GR    R
Client:_____
Matter: 990130-0001
File No.:_____
Subfile: play5
Filing Request submitted by:_____
Filed by:_____

*Handwritten note:* KDW - Please docket 2 weeks from ... for me, mPF & LPh. Tx, PqF

5



the Bankruptcy cases, then for payment of any outstanding fees of Lloyd Whitaker, the monitor in this case, then for pro rata (i) payment of claims by independent retail sales representatives (``IRSRs'') of IHI who made payments to IHI and never received a product or commission and (ii) the first $300,000 of any allowed claim which the surety (ACSTAR Insurance Company) may have against the estate; then for claims of purchasers of IHI convertible notes during 1997.   To the extent allowed by the Bankruptcy Court, proceeds can be used for pro rata payments to Chittenden Bank based on amounts paid by it to persons in categories i and ii, above, on chargeback requests from such persons as credit card holders.   Any remaining proceeds shall thereafter be used to first pay claims of other IRSRs and thereafter to pay the claims of other creditors according to the priorities set forth in the United States Bankruptcy Code.   Notwithstanding the foregoing, none of such proceeds shall be used to pay any claims of defendants Stanley H. Van Etten, Claude W. Savage or Larry G. Smith, or of any entity controlled by them, or of any other officer or director of IHI. Any disgorgement paid by the other defendants in this matter may, upon motion by the Commission, be transferred to the trustee for disbursement pursuant to the above terms.

## VI.

IT IS FURTHER ORDERED that based upon Defendant IHI's bankruptcy schedules filed December 16, 1998 and amended January 19, 1999, and Defendant IHI Incorporated's bankruptcy schedules dated December 16, 1998 and amended January 19, 1999, both

6

submitted to the Commission, the Court is not ordering IHI or IHI Incorporated to pay a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. 78u(d). The determination not to impose a civil penalty is contingent upon the accuracy and completeness of each defendant's bankruptcy schedules. If at any time following the entry of this Final Judgment the Commission obtains information indicating that IHI's or IHI Incorporated's representations in its bankruptcy schedules concerning its assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion, petition this Court for an order imposing a civil penalty payable in the bankruptcy cases, pursuant to 11 U.S.C. § 726(a)(4) if funds are available in accordance with IV, above against such defendant. In connection with any such petition, the only issues shall be whether the financial information provided by such defendant was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, and the amount of civil penalty to be imposed. [In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering such defendant to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Final Judgment, and the Commission may also request additional discovery.] Such defendant may not, by way of defense to such petition, challenge the validity of this Consent or the

7

Final Judgment, contest the allegations in the Complaint filed by the Commission, or assert that payment of a civil penalty should not be ordered.

## VII.

IT IS FURTHER ORDERED that, pending further order of this court, defendants IHI and IHI Incorporated, their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them, and each of them, are restrained and enjoined from destroying, transferring or otherwise rendering illegible all books, records, papers, ledgers, accounts, statements and other documents employed in any of such defendants' business, which reflect the business activities of any of the defendants, or which reflect the transactions described in the Commission's Complaint.

## VIII.

IT IS FURTHER ORDERED that this Court will retain jurisdiction over this matter and the defendants and will order other and further relief that this Court deems appropriate under the circumstances, and that defendants IHI and IHI Incorporated will remain parties to this case for purposes of discovery.

Done and ordered at _11:00_ o'clock _A_ m. this _17TH_ day of _September_, 1999 at _Atlanta_, Georgia.

_____
UNITED STATES DISTRICT JUDGE

8

AGREED

ACSTAR Insurance Company and
United Coastal Insurance Company
By:

9