FILED
JAN 3 2000
PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| INTERNATIONAL HERITAGE, INC., | 98-02675-5-ATS |
| INTERNATIONAL HERITAGE, INCORPORATED, | 98-02674-5-ATS |
| DEBTORS | |

## ORDER ALLOWING OBJECTION TO CLAIM

The matter before the court is the objection filed by Holmes P. Harden, chapter 7 trustee for International Heritage, Inc. and International Heritage, Incorporated, to the amended proof of claim filed by ACSTAR Insurance Company. A hearing was held in Raleigh, North Carolina on December 2, 1999. The objection will be allowed.

International Heritage, Inc. and International Heritage, Incorporated (together "IHI") both filed petitions for relief under chapter 7 of the Bankruptcy Code on November 25, 1998. Holmes P. Harden was appointed trustee in each case.

At the time of the bankruptcy petitions, IHI and its principals were defendants in a civil action brought by the Securities and Exchange Commission in the United States District Court for the Northern District of Georgia. <u>Securities and Exchange Commission v. International Heritage, Inc., Stanley H. Van Etten, Claude W. Savage, Larry G. Smith, and International</u>

Heritage, Incorporated, a Nevada Corporation, Civil Action No. 1-98-CV-0803-RWS.

In July 1998, ACSTAR and United Coastal Insurance Company posted a $5,000,000 surety bond with the District Court "to assure that the liquid assets of Principal [IHI] are not diminished during the pendency in the action" and to assure "that such FIVE MILLION DOLLARS sum will be available to satisfy any amounts that may be ordered paid by Principal [IHI] in the above proceeding." (Payment Bond No. 7719, Attached to ACSTAR's Amended Proof of Claim). IHI signed an indemnity agreement in favor of ACSTAR and United, and $3,500,000 in cash was paid to ACSTAR as collateral.

Mr. Harden, IHI's trustee, negotiated an agreement with the SEC and applied to this court for authority to settle the civil action in the Northern District of Georgia. ACSTAR, which would have been responsible for paying up to $5,000,000 of any judgment in the civil action, objected, and a hearing was scheduled for May 5, 1999. At the hearing, the court suggested that mediation might be helpful in bringing about a "global" resolution of the disputes involving IHI, IHI's principals, the SEC, ACSTAR, and other objecting creditors.

The court was advised that an agreement had been reached, and on June 21, 1999, the court entered an Order Approving Application of Trustee to Enter into Consent to Final Judgment of Permanent Injunction that authorized the trustee to settle the civil action pending in the Northern District of Georgia. U.S. District Judge Richard W. Story approved the settlement and a Consent Final

Judgment of Permanent Injunction as to Defendants International Heritage, Inc. and International Heritage, Incorporated, a Nevada Corporation was entered on September 20, 1999.

The final judgment provided that IHI would disgorge $6,533,179, but that ACSTAR would only have to pay $4,100,000 under the $5,000,000 payment bond. Additionally, even though ACSTAR held cash collateral of $3,500,000, it was allowed to pay the $4,100,000 obligation in installments.

The SEC was not the only entity making claims against IHI for securities violations, and ACSTAR was not the only insurer with exposure for IHI's obligations. IHI and its principals were insured under a $5,000,000 Directors and Officers Liability Insurance Policy issued by Executive Risk Specialty Insurance Co. Although Executive Risk paid $500,000 in attorney's fees defending claims against IHI and its principals, it denied coverage under the policy, and two proceedings to determine the extent of Executive Risk's liability were pending. _Executive Risk Specialty Ins. Co. v. International Heritage, et. al._, Case No. 5:98-CV-542-F(3)(E.D.N.C.) and _Holmes P. Harden, Trustee in Bankruptcy for International Heritage, Inc. v. Executive Risk Specialty Ins. Co._, Adversary Proceeding No. S-99-00015-5-AP (Bankr. E.D.N.C.).

The trustee negotiated an agreement with Executive Risk that provided that Executive Risk would pay $1,787,500 to the trustee, and on August 9, 1999, Mr. Harden applied to the court for authority to settle the two pending law suits. ACSTAR objected to the settlement on the ground that it claimed a security interest in

3

the proceeds of the settlement and wanted assurances that its security interest would be recognized. The trustee argued that ACSTAR did not have a perfected security interest in the insurance proceeds, and the settlement was approved on September 27, 1999, with the understanding that the dispute regarding ACSTAR's interest in the proceeds would be determined at a later date.

ACSTAR, which had previously filed a proof of claim on March 18, 1999, filed an amended proof of claim in which it asserted that pursuant to the payment bond and indemnity agreement, it has a claim of $805,781.41, and that the claim is secured by a perfected security interest in the proceeds realized from the Executive Risk settlement. ACSTAR's secured claim is also based on principles of subrogation. The trustee filed an objection to ACSTAR's amended proof of claim, and the hearing was held on December 2, 1999.

The trustee argues that ACSTAR does not have a perfected security interest in the proceeds from the Executive Risk settlement, and the court agrees.

The Indemnity Agreement in favor of ACSTAR provides that IHI will hold ACSTAR harmless from all liability on the payment bond. (Indemnity Agreement para. 2, Attachment to Amended Proof of Claim). The Indemnity Agreement also provides in paragraph 6 that

> The Indemnitors hereby transfer, assign, pledge and convey to the Surety a security interest in 1) all equipment, tools and material in which the Indemnitor, have any interest, whether on site or elsewhere or on order; 2) all sums due or to become due to Indemnitors or any of them in connection with any contract; and 3) all subcontracts let by Indemnitors in connection with any contract.

4

Clearly, ACSTAR does not have a valid perfected security interest in the insurance settlement proceeds under Article 9 of the Uniform Commercial Code as enacted in North Carolina. It is doubtful that the description contained in the Indemnity Agreement "all sums due or to become due . . . in connection with any contract" is sufficient to create a security interest in the Executive Risk insurance policy, but, in any event, ACSTAR never filed a financing statement. N.C. GEN. STAT. § 25-9-302. ACSTAR maintains that a financing statement was not required under North Carolina General Statute § 25-9-104(g), but ACSTAR has offered no evidence of any other form of perfection. There is no loss payable clause, no written assignment of the policy, and no evidence that Executive Risk was ever notified of ACSTAR's security interest.

According to ACSTAR, it has an equitable lien that arises under principles of equitable subrogation, and the lien is not subject to Article 9 of the Uniform Commercial. However, the equities in this case do not justify an equitable lien in favor of ACSTAR. There are circumstances in which a surety is allowed an equitable lien on contract proceeds, but typically those situations involve contracts directly related to payments or performance under the bond. The Executive Risk policy has no connection with the payment that ACSTAR agreed to make under its bond. The policy proceeds are property of the debtors' estates and do not arise from and are not related to ACSTAR's undertaking under the payment bond.

ACSTAR maintains that the Executive Risk policy protected IHI from liability related to securities law violations, and since

5

ACSTAR's liability arose from IHI's securities law infractions, ACSTAR is entitled to the insurance proceeds. Nevertheless, the SEC was not the only entity with claims against IHI based on violations of securities laws, and ACSTAR has no entitlement to the insurance proceeds. It would be inequitable and unfair to the victims of IHI's securities law infractions to allow ACSTAR to claim the Executive Risk proceeds. ACSTAR was a resource for redressing the losses of those injured by IHI but IHI's victims have not been paid in full, and it would be unjust to permit ACSTAR to invade other sources available to those who have been harmed by IHI's actions.

According to ACSTAR, Executive Risk should have paid the SEC judgment before ACSTAR's bond could be called. It is true that the terms of the Payment Bond required that IHI's assets be applied to the judgment before ACSTAR was required to make payment, but notwithstanding that provision, ACSTAR agreed to pay $4,100,000 to settle its obligations under the bond.

At the hearing on May 5, 1999, the court suggested that the parties attempt to reach a "global" settlement through mediation. The parties, including ACSTAR, agreed to mediate, and the court was advised that an agreement had been attained. The court was under the impression that a comprehensive settlement was what was being presented for approval, and that is what the court authorized.

The form of the release to be signed by ACSTAR was attached to the agreement presented to the court for approval, but the release was changed by ACSTAR before it was executed.

Nevertheless, under either version of the release, ACSTAR's claims against IHI arising from the payment bond are extinguished except as specifically provided in the settlement agreement.

According to ACSTAR, its release only absolves the trustee from his personal liability and does not affect ACSTAR's rights against the bankruptcy estates. It appears that prior to the settlement, ACSTAR notified the trustee that it would hold him and his law firm personally responsible for any loss ACSTAR sustained as a result of the proposed settlement with the SEC. Understandably, the trustee insisted on a release from personal liability as part of the settlement, but it would have been entirely improper for the trustee to compromise assets of the estates solely to gain a release for himself. Certainly ACSTAR could not have expected the court to have approved such an arrangement.

The trustee is the representative of the IHI bankruptcy estates, and the settlement with ACSTAR resolved the estates' claim against ACSTAR and ACSTAR's claim against the estates. ACSTAR agreed to pay $4,100,000 which is less than the full amount of the $5,000,000 payment bond. Additionally, ACSTAR was allowed to pay $4,100,000 in installments and to retain the income from the $3,500,000 cash collateral that it holds. Finally, ACSTAR was to have a $300,000 claim against the proceeds paid to the IHI trustee from the SEC settlement that has payment priority that assures the claim will be paid in full.

According to the terms of the settlement as approved by this court on June 21, 1999, ACSTAR was to have "claims in the International Heritage, Inc. bankruptcy case as set forth in Paragraph V of Exhibit A(1) attached hereto." (Order Approving Application of Trustee to Enter into Consent to Final Judgment of Permanent Injunction at p. 3). Exhibit A(1) to the approved settlement is a draft of the final judgment that was signed by Judge Story. Judge Story's order provided that after ACSTAR's $300,000 claim is paid, the next classes to be paid from the SEC settlement proceeds are the claims of 1997 purchasers of IHI convertible notes, followed by the claims of other independent retail sales representatives. (Consent Final Judgment of Permanent Injunction as to Defendants International Heritage, Inc. and International Heritage, Incorporated, a Nevada Corporation at p. 6). ACSTAR's claim to the SEC settlement proceeds in excess of the priority claim for $300,000 is subordinate to the claims of purchasers of convertible notes in 1997 and the claims of independent sales representatives.

The settlement approved by this court and Judge Story's order also provide that any other disgorgement may be transferred to the trustee and be disbursed pursuant to the same terms. (Consent Final Judgment at p. 6). Consequently, ACSTAR's claim with respect to other funds received by the trustee is also subordinate to the claims of purchasers of convertible notes and to the claims of independent sales representatives. Subordination of ACSTAR's claim

8

is consistent with a comprehensive settlement and with the terms of the release and Judge Story's order.

Accordingly, the trustee's objection to the amended proof of claim filed by ACSTAR is **ALLOWED**.

**SO ORDERED.**

DATED: **03 JAN** 2000

A. Thomas Small
Bankruptcy Judge

**U.S. Bankruptcy Court for the Eastern District of North Carolina**
U.S. BANKRUPTCY COURT, PO BOX 1441, RALEIGH, NC 27602-1441

In Re a *Petition for Relief under chapter 7 of Title 11, U.S. Code*, filed by or against the below-named Debtor(s) on November 25, 1998:
DEBTOR:   INTERNATIONAL HERITAGE, INC. of 2626 GLENWOOD AVE., #200, RALEIGH NC 27608,   SSAN: NA           TAX ID: 56-1921093

CASE NO. 98-02675-5-ATS

ORDER AND NOTICE
BY THE COURT

CERTIFICATE OF MAILING

I am a regularly appointed and qualified deputy clerk in the office of the clerk, in and for said court and district, and I hereby certify that a copy of the attached document was mailed in a postage prepaid envelope addressed to the following at their respective addresses, by placing said envelope in the regular mail in Raleigh, NC, on this date.

DATED:   03 JAN 2000

_Annie R Noel_
DEPUTY CLERK

INTERNATIONAL HERITAGE, INC.
2626 GLENWOOD AVE., #200
RALEIGH, NC 27608


Terri L. Gardner
PO Drawer 1389
Raleigh, NC 27602

Holmes P. Harden
P.O. Box 17169
Raleigh, NC 27619

Marjorie K. Lynch
Bankruptcy Administrator

James A. Roberts
James T. Johnson
Post Office Box 17529
Raleigh, NC 27619-7529

Michael P. Flanagan
Post Office Box 8088
Greenville, NC 27835-8088

aB JrU