UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                      )
                                            )       CHAPTER 7
INTERNATIONAL HERITAGE, INC.                )       CASE NO. 98-02675-5-ATS
                                            )
INTERNATIONAL HERITAGE,                     )
INCORPORATED,                               )
                                            )       CHAPTER 7
                                            )       CASE NO. 98-02674-5-ATS
              Debtors.                      )

## APPLICATION OF TRUSTEE FOR
## AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT

NOW COMES Holmes P. Harden, Trustee for the above-captioned Debtors, and requests

an order authorizing him to enter into a Settlement Agreement and Consent Order with the

Montana Securities Commissioner, (sometimes referred to herein as the State Auditor) a copy of

which is attached as Exhibit I and incorporated herein by reference.  In support of this

Application, Trustee states as follows:

1.     International Heritage, Inc. and International Heritage, Incorporated filed

voluntary petitions in bankruptcy on November 25, 1998 and Holmes P. Harden ("Trustee") was

appointed Chapter 7 Trustee.

2.     The Montana Securities Commissioner on April 3, 1998 issued a Cease and

Desist Order against International Heritage, Inc. and International Heritage, Incorporated

alleging violations of the Securities Act of Montana in the offer and sale of business

opportunities and the offer and sale of stock and debentures.  On or about April 20, 1998, the

Montana State Auditor's office issued a First Amended Cease and Desist Order, a copy of which

RAL/206885/1

is attached as part of Exhibit A to Exhibit I hereto.

     3.     An administrative hearing would be necessary to establish the violations of the Securities Act of Montana alleged in the Cease and Desist Order.

     4.     Trustee does not oppose making permanent the relief ordered in the Cease and Desist Order if no civil fines are imposed against the debtor estates and there is no finding or admission of liability.

     5.     The State Auditor and Trustee have agreed that after reviewing this case, it is in the best interest of the State Auditor's Office and International Heritage that the parties enter into a stipulated settlement.

     6.     Trustee is of the opinion that settling the above described controversy is fair and reasonable and is in the best interest of the expeditious administration of the Debtors' estates, given the uncertainty, complexity, expense, inconvenience and delay of litigation. Trustee therefore deems it appropriate and consistent with his duties and the paramount interest of creditors to enter into the proposed Settlement Agreement and Consent Order with the Montana Securities Commissioner because the settlement concludes complex litigation at no cost to the estates and saves the cost of defending same in Montana, without any admissions of liability by the Debtors.

     7.     Trustee is authorized to execute the Settlement Agreement with court approval.

     WHEREFORE, Trustee prays that the Court authorize him to enter into a Settlement Agreement and Consent Order in the form attached hereto as Exhibit "I" on behalf of the Debtors.

RAL/206885/1

2

This the 16th day of May, 2000.

MAUPIN TAYLOR & ELLIS, P.A.

BY: _____
Holmes P. Harden
Trustee for International Heritage, Inc., Debtors
N. C. State Bar No. 9835
Post Office Drawer 19764
Raleigh, NC 27619
Telephone: (919) 981-4000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE AUDITOR'S OFFICE
SECURITIES DEPARTMENT
HELENA, MONTANA

IN THE MATTER OF:                    )    Case No.: No. I 04-02-98-04
                                      )
INTERNATIONAL HERITAGE, INC.,        )    SETTLEMENT AGREEMENT and
STANLEY H. VAN ETTEN, CLAUDE W.      )    CONSENT ORDER
SAVAGE, LARRY G. SMITH, and          )
INTERNATIONAL HERITAGE               )
INCORPORATED, a Nevada Corporation,  )
and their agents and representatives,)
                                      )
                    Respondents.      )
_____)

       This agreement is made by and between the Montana Securities Commissioner and

Holmes Harden, trustee in bankruptcy for International Heritage Inc. and International Heritage

Incorporated, Respondents in the above captioned matter.

### A.    Recitals

       1.     International Heritage, Inc., (IHI) was a North Carolina corporation whose

principal offices were located in Raleigh, North Carolina.  International Heritage, Inc., was a

majority owned subsidiary of International Heritage Incorporated, a Nevada Corporation (IHIN)

(formerly "Kara International, Inc.").  On or about November 25, 1998, International Heritage

Inc. and International Heritage Incorporated filed a petition pursuant to Chapter 7 of the

Bankruptcy Code in the Eastern District of North Carolina.  Holmes P. Harden was appointed

Chapter 7 Trustee by the Bankruptcy Court.

       2.     The Montana Securities Commissioner on April 3, 1998, issued a Cease and

Desist Order against International Heritage, Inc., and International Heritage, Incorporated

alleging violations of the Securities Act of Montana in the offer and sale of business

opportunities and the offer and sale of stock and debentures.  On or about April 20, 1998, the

Montana State Auditor's office issued a First Amended Cease and Desist Order, a copy of which

is attached as Exhibit A hereto.  Those orders alleged specifically that Respondents violated the



anti-fraud and registration provisions of the Securities Act and that Respondents operated an illegal pyramid scheme in Montana.

3.    An administrative hearing would be necessary to establish the violations of the Securities Act of Montana alleged in the cease and desist order.

4.    Mr. Harden does not oppose making permanent the relief ordered in the Cease and Desist Order if no civil fines are imposed against the corporate respondents' estate or otherwise against the corporate respondents.

5.    The State Auditor and Mr. Harden agree that after reviewing this case, it is in the best interest of the State Auditor's Office and International Heritage that the parties enter into a Stipulated Settlement Agreement.

### B.    Stipulation

By virtue of his capacity as bankruptcy trustee and with the authority of the United States Bankruptcy Court for the Eastern District of North Carolina, Mr. Harden, on behalf of International Heritage Inc. and International Heritage Incorporated, without admitting the allegations set forth in the Cease and Desist Order and the First Amended Cease and Desist hereby stipulates and consents to the following:

1.    To the entry of a permanent cease and desist order in the above-captioned matter with respect to International Heritage Inc. and International Heritage Incorporated;

2.    To provide truthful and complete testimony in any future proceedings relating to this matter;

3.    To waive the right of International Heritage Inc. and International Heritage Incorporated to a hearing on the allegations contained herein;

4.    To agree that International Heritage Inc. and International Heritage Incorporated will comply with the Securities Act of Montana, and the rules and orders promulgated thereunder in the future;

5.    To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from conducting securities business in Montana;

6.    To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from offering and selling products and business opportunities in Montana;

7.    To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in multi-level marketing in Montana;

8.    To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from insurance transactions that are regulated by the Montana Insurance Code;

9.    To agree that the name and logo of International Heritage Inc. and International Heritage Incorporated shall not be used in Montana by any individual or entity in any capacity, including but not limited to the offer or sale of securities, business opportunities or products to or from Montana;

Pursuant to the stipulation and consent of Holmes P. Harden, Chapter 7 Bankruptcy Trustee for International Heritage Inc., and International Heritage, Incorporated, with the authorization of the United States Bankruptcy Court for the Eastern District of North Carolina, the Commissioner, under authority of the Securities Act of Montana and §2-4-603, MCA, hereby agrees that if the terms and conditions of this agreement are fully met, he will not pursue further civil or administrative action against International Heritage Inc. or International Heritage Incorporated regarding the allegations contained therein pursuant to §30-10-305, MCA.

ORDER

WHEREFORE, it is hereby ordered that the above-referenced Cease and Desist Order, as amended, is made permanent. It is further ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in the business of securities in Montana. It is ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in the offering of products and business opportunities in Montana. It is ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in multi-level marketing in

Stipulation, Settlement Agreement and Order - 3

Montana.  It is ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from insurance transactions that are regulated by the Montana Insurance Code.

WE CONSENT:

DATED this __ day of _____, 2000.


_____
RESPONDENT INTERNATIONAL HERITAGE INC. and
INTERNATIONAL HERITAGE INCORPORATED
By:      Holmes P. Harden
Its:      Bankruptcy Trustee

Subscribed and Sworn to before me this ____ day of _____ 2000.

(SEAL)                                           _____
                                                      Notary Public for the State of _____
                                                      Residing at _____
                                                      My commission expires _____


DATED this _____ day of _____, 2000.


_____
Mark O'Keefe, State Auditor and
Commissioner of Securities

Stipulation, Settlement Agreement and Order - 4

STATE AUDITOR'S OFFICE
SECURITIES DEPARTMENT
HELENA, MONTANA

IN THE MATTER OF:                              )         CASE NO. I-04-02-98-04
                                               )
International Heritage, Inc.,                   )         CEASE AND DESIST ORDER
Stanley H. Van Etten,                          )
Claude W. Savage,                              )
Larry G. Smith,                                )
and                                            )
International Heritage,                         )
Incorporated, a Nevada corporation,)
                                               )
        and their agents &                     )
        representatives,                        )
                                               )
        Respondents.                           )

The Montana Securities Commissioner (commissioner), pursuant

to the authority of the Securities Act of Montana, § 30-10-101, et

seq., hereby issues the following findings of fact, conclusions of

law, order and notice of right to a public hearing:

FINDINGS OF FACT

1.   International Heritage, Inc., (IHI) is a North Carolina

corporation whose principal offices are located in Raleigh, North

Carolina.   International Heritage, Inc., is a majority owned

subsidiary of International Heritage Incorporated, a Nevada

Corporation (IHI-N) (formerly "Kara International, Inc.").

2.   Stanley H. Van Etten (Van Etten), is a founder, chairman

of the board of directors, president, and chief executive officer

of IHI, and is chairman of the board and chief executive officer of



Page 1

1 IHI-N.

2    3.   Claude W. Savage (Savage) is a founder and a director of
3 IHI and is director of IHI-N.

4    4.   Larry G. Smith (Smith) is a founder and director of IHI
5 and a director of IHI-N.

6    5.   Johnny Daniels (Daniels) is an independent sales
7 representative of IHI who resides in Malta, Montana.  Daniels
8 conducts IHI training sessions and has marketed IHI business center
9 interests in Montana.

10    6.   IHI, its principals, employees, and agents solicited
11 investments in IHI's program in Montana through the use of
12 promotional materials, videotapes, recruitment meetings, and
13 internet web sites.  IHI, through Van Etten, Savage, Smith,
14 Daniels, and others solicited residents of Kalispell, Anaconda,
15 Butte, Billings, Bozeman, Lewistown, Great Falls, Glasgow, Malta,
16 Glendive, Roundup, Forsyth, Havre, Columbia Falls, Stevensville,
17 Helena, and other Montana towns to invest in a pyramid scheme.

18    7.   IHI interests are described as "business centers," of
19 which an investor may open one, three, or seven.  In order to open
20 or create a "certified" business center, Montana investors were
21 generally required to pay the sum of $200.00 to $250.00 toward the
22 purchase of an IHI product, sign a "retail business agreement,"
23 purchase an IHI retail business career kit for $100, and pay a
24 $25.00 administrative fee.

25

8.   At all times material hereto, IHI solicited Montana investors through the purported use of a "multi-level" marketing program in which prospective investors are recruited by investors who have already purchased interests in IHI.  IHI established an incentive for recruitment of downline sales representatives by promising payment of override commissions to independent sales representatives for IHI product and business center sales by that representative's downline (retail sales organization).

9.   According to the IHI's bi-lateral compensation plan, independent sales representatives could earn override commissions only if their own retail business center was "certified."

10.   At all times material hereto, IHI promotional and sales materials indicated that investors could earn up to $2,200 to $2,500 per retail business center weekly.  These projected earnings were based on the recruitment of downline independent sales representatives, rather than the sale of products on the retail market.  Similarly, the compensation structure, which included a compensation cap attached to single business center earnings, encouraged the purchase of multiple business centers by investors.

11.   Although commissions on the sale of products were described in the promotional and sales material, the income from the development of the retail sales organization was emphasized as the significant source of income from involvement with IHI.  Similarly, IHI disproportionately emphasized retail sales

Page 3

1 organization development through the promise of bonuses and

2 commissions which were not available to an independent sales

3 representative whose organization focused on retail product sales.

4     12. At all times material hereto, the IHI compensation

5 structure and sales pitch regarding "leveraging retail sales

6 business volume" served as incentive to develop the downline and

7 disincentive to generate retail sales business volume through the

8 sale of IHI products, thus perpetuating the pyramid scheme. The

9 IHI sales kit contains a book co-authored by Van Etten which

10 emphasizes the importance of downline regeneration. In addition to

11 emphasizing the importance of geometric growth in marketing the IHI

12 interests, IHI's training materials clearly discourage independent

13 sales representatives from developing the retail sale portion of

14 the representatives' businesses. Van Etten's book states:

> There are two things that the successful network marketer must
> be very good at doing which are altogether foreign to the
> traditional salesperson: (1) He must be an organization
> builder, and (2) He must be a teacher. We will speak of these
> two things at much greater length later in this chapter, but
> suffice it to say at this point that there is nothing in the
> experience of the traditional salesperson that would cause him
> to assign any value to either of these two skills which are so
> essential to the individual who wants to succeed in network
> marketing. In fact, the traditional salesperson's natural
> tendency would be to see both organization-building and
> teaching as irrelevant obstacles to be swept out of the way of
> what he sees as the one all-important task of every
> salesperson - selling.
>
>          ***
>
> Earlier in this chapter we said that there is a risk in
> sponsoring persons who have considerable experience in direct
> sales. This is a good place to explain why that is the case.
> An experienced salesperson might come into your downline and
> recruit like crazy. But if he fails to teach his recruits

1    the importance of the company's multilevel sales structure and
2    the necessity for "keeping it going," then he would **fill** your
     downline organization with dead-end roadblocks. (Emphasis in
3    original).

4        13.    Though references to minimum retail sales requirements

5    and inventory loading prohibitions are included in the independent

6    retail sales representative manual, IHI's compensation program is

7    based on orders of products, rather than actual sales of products,

8    and override commissions are promised for orders made within the

9    retail sales organization.   Furthermore, IHI's program structure

10   does not provide a method by which inventory loading requirements

11   and   requirements   for   retail   sales   to   non-participants   are

12   meaningfully   enforced.    As   of   the   date   of   this   order,   a

13   disproportionate amount of products ordered from IHI through the

14   use of the "retail business agreement" in Montana have never been

15   received by the purchasers of the product.

16       14.    On or about March 28, 1996, IHI issued a memorandum

17   addressed   to   all   IHI   representatives   which   required   that

18   representatives wishing to conduct due diligence on the company

19   should direct "all of [their] compliance, regulatory and legal

20   questions to the Compliance Department at the home office rather

21   than the Better Business Bureau or state regulators." IHI further

22   stated that "[i]f enough inquiries are made to any one particular

23   regulatory branch, within a particular state, the result could be

24   an investigation of the Company spurned {sic} by the mere volume of

25

Page 5

1 calls."  The memorandum further stated that:

2     The reason IHI is one of the only multilevel marketing
    companies with a Compliance Department is so representatives
3     will have a source for receiving answers to compliance,
    regulatory and legal questions and to assure that the Company
4     operates in compliance with the myriad of regulations
    affecting a direct marketing sales company with operations in
5     48 states and 3 Canadian provinces.

6 Though the memorandum was written in March, 1996, it was included

7 in an IHI business retail business career kit sold to a Montana

8 resident months later.

9     15.  Despite IHI's claims in sales presentations and materials

10 that its program complies with state and federal laws that affect

11 direct marketing organizations, IHI entered into agreements

12 limiting IHI activities in the state of North Carolina on June 3,

13 1997, and in the state of Georgia on February 10, 1998, as a result

14 of regulatory concerns in those states.  North Carolina regulators

15 alleged that IHI violated North Carolina pyramid laws.  These

16 actions were not disclosed to Montana residents offered or sold IHI

17 business center interests.

18     16.  Between August 5, 1997, and October 31, 1997, IHI,

19 through Van Etten, Savage, Smith, and others, raised $5 million by

20 selling IHI notes convertible into IHI common stock, to

21 approximately 95 persons in fourteen states, including at least 6

22 persons in Montana.

23     17.  On August 14, 1997, IHI filed a notice filing for an

24 exemption on Form D, indicating it sold an aggregate of $295,00 of

25

1   IHI units to six accredited Montana investors.  The application

2   indicated that WIN Capital was the broker/dealer making offers

3   and/or sales to Montana investors.

4       18.  In connection with the offer and sale of IHI notes, IHI

5   authorized the use of a "term sheet," dated July 17, 1997, which

6   disclosed that IHI had losses of approximately $1.9 million during

7   the first four months of 1997.  The term sheet did not disclose

8   that by the time of the offering IHI's losses for the year had

9   increased to $7.6 million, and that IHI had a shortage of operating

10  funds.

11      19.  The term sheet states that IHI pays commissions and

12  bonuses "derived solely from sales as opposed to headhunting or any

13  similar activities," despite IHI's emphasis on compensation

14  opportunities based on recruitment and development of retail sales

15  organizations.

16      20.  The term sheet states that representatives "who sponsor

17  other representatives must fulfill supervisory activities,

18  including ongoing communication and managerial supervision with the

19  IRSRs within their Retail Sales Organization in order to qualify

20  for ongoing commissions and bonuses," despite the absence of

21  enforcement efforts by IHI to ensure compliance.

22      21.  The term sheet represents that IHI has a "a prohibition

23  from presenting hypothetical earnings projections" in sales

24  presentations, despite IHI's standard use of projections that each

25

1 | business center could earn up to $2,500 weekly.

2 | 　22. Daniels, an IHI representative in Malta, Montana, offered
3 | Malta, Montana, residents the opportunity to purchase IHI notes in
4 | June, 1997.

5 | 　23. IHI represented to the Montana Securities Department that
6 | the offering of IHI notes would be conducted by WIN Capital Corp.,
7 | a registered broker-dealer. Daniels is not now, nor has he ever
8 | been registered as a salesperson with WIN Capital Corp.

9 | 　24. The records of the Montana Securities Department disclose
10 | that Respondents were not registered as broker-dealers or salesmen
11 | in this state prior to the date of this Order.

12 | 　25. The records of the Montana Securities Department disclose
13 | that the IHI business center program offered by Respondents was not
14 | registered as a security in this state prior to the date of this
15 | Order.

16 | 　26. In connection with the above offers of IHI business
17 | center interests to persons in Montana, Respondents failed to
18 | disclose the following material facts which facts were necessary to
19 | disclose in order to make the statements made about the investment,
20 | in light of the circumstances under which they were made, not
21 | misleading:

22 | 　a. the market for IHI business center interests will
23 | eventually become saturated as the supply of new members declines
24 | and representatives recruited near the bottom of the retail sales
25 |

organization structure may be unable to generate promised returns;

b.   IHI was the subject of regulatory actions or inquiries in at least three other states based on the allegation that IHI's program violated state pyramid and securities laws;

c.   that Savage and Smith were previously involved in a pyramid scheme which was the subject of state and federal administrative and criminal proceedings, including the issuance of a permanent cease and desist order in Montana;

d.   that IHI was not an authorized dealer for some of the products listed in its retail sales catalogs and brochures; and,

d.   at all times material hereto, IHI's program was not registered as a security in the state of Montana.

27.   In connection with the above offers and sales of IHI notes convertible to IHI common stock to persons in Montana, Respondents failed to disclose the following material facts which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.   that IHI's losses for the year of 1997 had increased to $7.6 million from the $1.9 million listed in IHI offering circular;

b.   that IHI's compensation scheme is premised primarily on recruitment of new members;

c.   that IHI did not adequately monitor or enforce compliance with IHI policies and procedures by independent sales

1  representatives; and,

2      d.   that IHI markets the business center program utilizing

3  and emphasizing hypothetical earnings projections.

4      28.  In connection with the above offers of securities to

5  persons in Montana, Respondents engaged in an act, practice, or

6  course of business which operates or would operate as a fraud or

7  deceit upon any person in that:

8      a.   the IHI business center program constituted a pyramid

9  scheme; and,

10     b.   IHI directed sales representatives not to contact state

11 regulators in order to avoid investigations or inquiries into the

12 IHI business center program.

13                    CONCLUSIONS OF LAW

14     1.  The commissioner has jurisdiction over this matter by

15 reason of Respondents' offer and sale of securities to persons in

16 or from Montana.

17     2.  Respondents' program is a security within the meaning of

18 the Securities Act of Montana, § 30-10-103(22), MCA.

19     3.  Offer or offer to sell includes "every attempt or offer

20 to dispose of or solicitation of an offer to buy a security or

21 interest in a security for value." Section 30-10-103(15), MCA.

22     4.  In connection with the above offers of securities to

23 persons in Montana, Respondents violated § 30-10-201(1), MCA, by

24 transacting business as broker-dealers or salesmen in Montana

25

1  without registering as such.

2      5.   In connection with the above offers of securities to

3  persons in Montana, Respondents violated § 30-10-202, MCA, by

4  transacting business in unregistered securities.

5      6.   In connection with the above offers of securities to

6  persons in Montana, Respondents violated § 30-10-301(1)(b), MCA, by

7  failing to disclose the following material facts, which facts were

8  necessary to disclose in order to make the statements made about

9  the investment, in light of the circumstances under which they were

10 made, not misleading:

11     a.   the market for IHI business center interests will

12 eventually become saturated as the supply of new members declines

13 and representatives recruited near the bottom of the retail sales

14 organization structure may be unable to generate promised returns;

15     b.   IHI was the subject of regulatory actions or inquiries in

16 at least three other states based on the allegation that IHI's

17 program violated state pyramid and securities laws;

18     c.   that Savage and Smith were previously involved in a

19 pyramid scheme which was the subject of state and federal

20 administrative and criminal proceedings;

21     d.   that IHI was not an authorized dealer for some of the

22 products listed in its retail sales catalogs and brochures; and,

23     d.   at all times material hereto, IHI's program was not

24 registered as a security in the state of Montana.

25

Page 11

7.   In connection with the above offers of securities to persons in Montana, Respondents violated § 30-10-301(1)(b), MCA, by failing to disclose the following material facts, which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.   that IHI's losses for the year of 1997 had increased to $7.6 million from the $1.9 million listed in IHI offering circular;

b.   that IHI's compensation scheme is premised primarily on recruitment of new members;

c.   that IHI did not adequately monitor or enforce compliance with IHI policies and procedures by independent sales representatives; and,

d.   that IHI markets the business center program utilizing and emphasizing hypothetical earnings projections.

8.   In connection with the above offers of securities to persons in Montana, Respondents violated § 30-10-301(1)(c), MCA, by engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in that:

a.   the IHI business center program constituted a pyramid scheme; and,

b.   IHI directed sales representatives not to contact state regulators in order to avoid investigations or inquiries into the IHI business center program.

Page 12

1
## ORDER

2      Respondents are hereby ordered to cease and desist issuing,

3 offering, and selling securities to persons in this state in

4 violation of the Securities Act of Montana.

5      The above-cited violations are sufficient grounds for the

6 imposition of an administrative fine not to exceed $5,000.00 per

7 violation upon any person found to have engaged in any act or

8 practice constituting a violation of any provision of the

9 Securities Act of Montana or any rule or order promulgated

10 thereunder.  Section 30-10-305, MCA.  The above-cited violations

11 are sufficient grounds for the imposition of and order requiring

12 the payment of restitution and other costs to investors.  Section

13 30-10-309, MCA.  You will receive notice and/or an opportunity to

14 be heard prior to the imposition of any fine or an order of

15 restitution.

16      Section 30-10-306(1), MCA, provides that any willful violation

17 of this order, upon conviction, may be punished by imprisonment for

18 not more than ten (10) years and/or a fine not exceeding five

19 thousand dollars ($5,000).

20
## NOTICE

21      Respondents are notified that this order has been issued by

22 the commissioner.  If Respondents wish to contest the allegations

23 herein, they shall make a written request for a hearing to

24 Elizabeth A. O'Halloran of this office within fifteen (15) days of

25

1 receipt of this order. The hearing shall then be held within

2 thirty (30) days of the commissioner's receipt of the hearing

3 request unless the time is extended by agreement of the parties.

4 If no hearing is requested within fifteen (15) days of receipt of

5 this order by Respondents, and none is ordered by the commissioner,

6 this order shall become permanent.

7 Should you request a hearing, you have the right to be

8 accompanied, represented, and advised by counsel. If the counsel

9 you choose has not been admitted to practice law in the State of

10 Montana, he or she must comply with the requirements of <u>Application</u>

11 <u>of American Smelting and Refining, Co.,</u> (1973), 164 Mont. 139, 520

12 P.2d 103.

13

14 DATED this third day of April, 1998.

15

16

17 Mark O'Keefe
State Auditor and
18 Commissioner of Securities

19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that I mailed a true and correct copy of the foregoing CEASE AND DESIST ORDER to the following persons by depositing the same in the U.S. Mail - certified - return receipt requested - on this _3rd_ day of _April_ , 1998.

International Heritage, Inc.
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Stanley H. Van Etten
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Claude W. Savage
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Larry G. Smith
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Johnny Daniels
Hwy. 191
Malta, MT 59538

International Heritage Incorporated
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

_Sandi Bunston_
State Auditor's Office

STATE AUDITOR'S OFFICE
SECURITIES DEPARTMENT
HELENA, MONTANA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. I-04-02-98-04 |
| International Heritage, Inc.,<br>Stanley H. Van Etten,<br>Claude W. Savage,<br>Larry G. Smith,<br>and<br>International Heritage,<br>Incorporated, a Nevada corporation, | )<br>)<br>)<br>)<br>)<br>)<br>) | FIRST AMENDED<br>CEASE AND DESIST ORDER |
| and their agents &<br>representatives, | )<br>)<br>) | |
| Respondents. | )<br>) | |

The Montana Securities Commissioner (Commissioner), pursuant to the authority of the Securities Act of Montana, § 30-10-101, et seq., hereby issues the following findings of fact, conclusions of law, order and notice of right to a public hearing:

### FINDINGS OF FACT

1.    International Heritage, Inc., (IHI) is a North Carolina corporation whose principal offices are located in Raleigh, North Carolina.  International Heritage, Inc., is a majority owned subsidiary of International Heritage Incorporated, a Nevada Corporation (IHI-N) (formerly "Kara International, Inc.").

2.    Stanley H. Van Etten (Van Etten), is a founder, chairman of the board of directors, president, and chief executive officer of IHI, and is chairman of the board and chief

1    executive officer of IHI-N.

2        3.    Claude W. Savage (Savage) is a founder and a director

3    of IHI and is director of IHI-N.

4        4.    Larry G. Smith (Smith) is a founder and director of IHI

5    and a director of IHI-N.

6        5.    IHI, its principals, employees, and agents solicited

7    investments in IHI's program in Montana through the use of

8    promotional materials, videotapes, recruitment meetings, and

9    internet web sites.  IHI, through Van Etten, Savage, Smith, and

10   others solicited residents of Kalispell, Anaconda, Butte,

11   Billings, Bozeman, Lewistown, Great Falls, Glasgow, Malta,

12   Glendive, Roundup, Forsyth, Havre, Columbia Falls, Stevensville,

13   Helena, and other Montana towns to invest in a pyramid scheme.

14       6.    IHI interests are described as "business centers," of

15   which an investor may open one, three, or seven.  In order to

16   open or create a "certified" business center, Montana investors

17   were generally required to pay the sum of $200.00 to $250.00

18   toward the purchase of an IHI product, sign a "retail business

19   agreement," purchase an IHI retail business career kit for $100,

20   and pay a $25.00 administrative fee.

21       7.    At all times material hereto, IHI solicited Montana

22   investors through the purported use of a "multi-level" marketing

23   program in which prospective investors are recruited by investors

24   who have already purchased interests in IHI.  IHI established an

25   incentive for recruitment of downline sales representatives by

---

First Amended Cease and Desist Order                        Page 2

1  promising payment of override commissions to independent sales

2  representatives for IHI product and business center sales by that

3  representative's downline (retail sales organization).

4      8.   According to the IHI's bi-lateral compensation plan,

5  independent sales representatives could earn override commissions

6  only if their own retail business center was "certified."

7      9.   At all times material hereto, IHI promotional and sales

8  materials indicated that investors could earn up to $2,200 to

9  $2,500 per retail business center weekly.  These projected

10  earnings were based on the recruitment of downline independent

11  sales representatives, rather than the sale of products on the

12  retail market.  Similarly, the compensation structure, which

13  included a compensation cap attached to single business center

14  earnings, encouraged the purchase of multiple business centers by

15  investors.

16      10.   Although commissions on the sale of products were

17  described in the promotional and sales material, the income from

18  the development of the retail sales organization was emphasized

19  as the significant source of income from involvement with IHI.

20  Similarly, IHI disproportionately emphasized retail sales

21  organization development through the promise of bonuses and

22  commissions which were not available to an independent sales

23  representative whose organization focused on retail product

24  sales.

25      11.   At all times material hereto, the IHI compensation

---

First Amended Cease and Desist Order                    Page 3

1  structure and sales pitch regarding "leveraging retail sales

2  business volume" served as incentive to develop the downline and

3  disincentive to generate retail sales business volume through the

4  sale of IHI products, thus perpetuating the pyramid scheme.  The

5  IHI sales kit contains a book co-authored by Van Etten which

6  emphasizes the importance of downline regeneration.  In addition

7  to emphasizing the importance of geometric growth in marketing

8  the IHI interests, IHI's training materials clearly discourage

9  independent sales representatives from developing the retail sale

10  portion of the representatives' businesses.    Van Etten's book

11  states:

12      There are two things that the successful network marketer
must be very good at doing which are altogether foreign to

13  the traditional salesperson: (1) He must be an organization
builder, and (2) He must be a teacher.  We will speak of

14  these two things at much greater length later in this
chapter, but suffice it to say at this point that there is

15  nothing in the experience of the traditional salesperson
that would cause him to assign any value to either of these

16  two skills which are so essential to the individual who
wants to succeed in network marketing.  In fact, the

17  traditional salesperson's natural tendency would be to see
both organization-building and teaching as irrelevant

18  obstacles to be swept out of the way of what he sees as the
one all-important task of every salesperson - selling.

19                      ***
Earlier in this chapter we said that there is a risk in

20  sponsoring persons who have considerable experience in
direct sales.  This is a good place to explain why that is

21  the case.  An experienced salesperson might come into your
downline and recruit like crazy.   But if he fails to teach

22  his recruits the importance of the company's multilevel
sales structure and the necessity for "keeping it going,"

23  then he would **fill** your downline organization with dead-end
roadblocks. (Emphasis in original).

24

25     12.   Though references to minimum retail sales requirements

---

First Amended Cease and Desist Order                                Page 4

1        regulations affecting a direct marketing sales company with

2        operations in 48 states and 3 Canadian provinces.

3  Though the memorandum was written in March 1996, it was included

4  in an IHI business retail business career kit sold to a Montana

5  resident months later.

6     14.  Despite IHI's claims in sales presentations and

7  materials that its program complies with state and federal laws

8  that affect direct marketing organizations, IHI entered into

9  agreements limiting IHI activities in the state of North Carolina

10  on June 3, 1997, and in the state of Georgia on February 10,

11  1998, as a result of regulatory concerns in those states.  North

12  Carolina regulators alleged that IHI violated North Carolina

13  pyramid laws.  These actions were not disclosed to Montana

14  residents offered or sold IHI business center interests.

15     15.  Between August 5, 1997, and October 31, 1997, IHI,

16  through Van Etten, Savage, Smith, and others, raised $5 million

17  by selling IHI notes convertible into IHI common stock, to

18  approximately 95 persons in fourteen states, including at least 6

19  persons in Montana.

20     16.  On August 14, 1997, IHI filed a notice filing for an

21  exemption on Form D, indicating it sold an aggregate of $295,00

22  of IHI units to six accredited Montana investors.  The

23  application indicated that WIN Capital was the broker/dealer

24  making offers and/or sales to Montana investors.

25     17.  In connection with the offer and sale of IHI notes, IHI

---

First Amended Cease and Desist Order               Page 6

1   and inventory loading prohibitions are included in the

2   independent retail sales representative manual, IHI's

3   compensation program is based on orders of products, rather than

4   actual sales of products, and override commissions are promised

5   for orders made within the retail sales organization.

6   Furthermore, IHI's program structure does not provide a method by

7   which inventory loading requirements and requirements for retail

8   sales to non-participants are meaningfully enforced.  As of the

9   date of this order, a disproportionate amount of products ordered

10  from IHI through the use of the "retail business agreement" in

11  Montana have never been received by the purchasers of the

12  product.

13       13.  On or about March 28, 1996, IHI issued a memorandum

14  addressed to all IHI representatives which required that

15  representatives wishing to conduct due diligence on the company

16  should direct "all of [their] compliance, regulatory and legal

17  questions to the Compliance Department at the home office rather

18  than the Better Business Bureau or state regulators."  IHI

19  further stated that "[i]f enough inquiries are made to any one

20  particular regulatory branch, within a particular state, the

21  result could be an investigation of the Company spurned {sic} by

22  the mere volume of calls."  The memorandum further stated that:

23       The reason IHI is one of the only multilevel marketing
         companies with a Compliance Department is so representatives
24       will have a source for receiving answers to compliance,
         regulatory and legal questions and to assure that the
25       Company operates in compliance with the myriad of

---

First Amended Cease and Desist Order                    Page 5

authorized the use of a "term sheet," dated July 17, 1997, which disclosed that IHI had losses of approximately $1.9 million during the first four months of 1997.  The term sheet did not disclose that by the time of the offering IHI's losses for the year had increased to $7.6 million, and that IHI had a shortage of operating funds.

18.   The term sheet states that IHI pays commissions and bonuses "derived solely from sales as opposed to headhunting or any similar activities," despite IHI's emphasis on compensation opportunities based on recruitment and development of retail sales organizations.

19.   The term sheet states that representatives "who sponsor other representatives must fulfill supervisory activities, including ongoing communication and managerial supervision with the  IRSRs within their Retail Sales Organization in order to qualify for ongoing commissions and bonuses," despite the absence of enforcement efforts by IHI to ensure compliance.

20.   The term sheet represents that IHI has a "a prohibition from presenting hypothetical earnings projections" in sales presentations, despite IHI's standard use of projections that each business center could earn up to $2,500 weekly.

21.   IHI represented to the Montana Securities Department that the offering of IHI notes would be conducted by WIN Capital Corp., a registered broker-dealer.

22.   The records of the Montana Securities Department

First Amended Cease and Desist Order                          Page 7

1 disclose that Respondents were not registered as broker-dealers
2 or salesmen in this state prior to the date of this Order.

3     23.  The records of the Montana Securities Department
4 disclose that the IHI business center program offered by
5 Respondents was not registered as a security in this state prior
6 to the date of this Order.

7     24.  In connection with the above offers of IHI business
8 center interests to persons in Montana, Respondents failed to
9 disclose the following material facts, which facts were necessary
10 to disclose in order to make the statements made about the
11 investment, in light of the circumstances under which they were
12 made, not misleading:

13     a.  the market for IHI business center interests will
14 eventually become saturated as the supply of new members declines
15 and representatives recruited near the bottom of the retail sales
16 organization structure may be unable to generate promised
17 returns;

18     b.  IHI was the subject of regulatory actions or inquiries
19 in at least three other states based on the allegation that IHI's
20 program violated state pyramid and securities laws;

21     c.  that Savage and Smith were previously involved in a
22 pyramid scheme which was the subject of state and federal
23 administrative and criminal proceedings, including the issuance
24 of a permanent Cease and Desist Order in Montana;

25     d.  that IHI was not an authorized dealer for some of the

First Amended Cease and Desist Order             Page 8

products listed in its retail sales catalogs and brochures; and,

e.   at all times material hereto, IHI's program was not registered as a security in the state of Montana.

25.   In connection with the above offers and sales of IHI notes convertible to IHI common stock to persons in Montana, Respondents failed to disclose the following material facts, which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.   that IHI's losses for the year of 1997 had increased to $7.6 million from the $1.9 million listed in IHI offering circular;

b.   that IHI's compensation scheme is premised primarily on recruitment of new members;

c.   that IHI did not adequately monitor or enforce compliance with IHI policies and procedures by independent sales representatives; and,

d.   that IHI markets the business center program utilizing and emphasizing hypothetical earnings projections.

26.   In connection with the above offers of securities to persons in Montana, Respondents engaged in an act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in that:

a.   the IHI business center program constituted a pyramid scheme; and,

First Amended Cease and Desist Order                     Page 9

1        b.   IHI directed sales representatives not to contact state

2   regulators in order to avoid investigations or inquiries into the

3   IHI business center program.

4       27.  Respondent Van Etten, on behalf of IHI, falsely

5   informed Montana agents and representatives of IHI on or about

6   April 8, 1998, that the Commissioner had agreed to rescind or

7   cancel the April 3, 1998, Cease and Desist Order and that IHI's

8   Montana representatives and agents were no longer subject to that

9   Order.

10      28.  Respondent Van Etten, on behalf of IHI, failed to

11   disclose to Montana agents and representatives of IHI on or about

12   April 9, 1998, the following material facts which facts were

13   necessary to disclose in order to make the statements made not

14   misleading in light of the circumstances under which they were

15   made:

16      a.  that the Commissioner had not agreed to rescind or

17   cancel the April 3, 1998, Cease and Desist Order;

18      b.  that IHI's Montana agents and representatives were still

19   subject to the Commissioner's April 3, 1998, Cease and Desist

20   Order.

21      29.  Respondent Van Etten, on behalf of IHI, falsely

22   informed Montana agents and representatives of IHI on or about

23   April 15, 1998, that "we've already solved the problem" of the

24   April 3, 1998, Cease and Desist Order; that the April 3, 1998,

25   Cease and Desist Order is "going away" and "we're off their radar

First Amended Cease and Desist Order                Page 10

scope"; and that the Commissioner had erred in issuing the Order.

## CONCLUSIONS OF LAW

1.   The Commissioner has jurisdiction over this matter by reason of Respondents' offer and sale of securities to persons in or from Montana.

2.   Respondents' program is a security within the meaning of the Securities Act of Montana, § 30-10-103(22), MCA.

3.   Offer or offer to sell includes "every attempt or offer to dispose of or solicitation of an offer to buy a security or interest in a security for value." Section 30-10-103(15), MCA.

4.   In connection with the above offers of securities to persons in Montana, Respondents violated § 30-10-201(1), MCA, by transacting business as broker-dealers or salesmen in Montana without registering as such.

5.   In connection with the above offers of securities to persons in Montana, Respondents violated § 30-10-202, MCA, by transacting business in unregistered securities.

6.   In connection with the above offers of securities to persons in Montana, Respondents violated § 30-10-301(1)(b), MCA, by failing to disclose the following material facts, which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.   the market for IHI business center interests will eventually become saturated as the supply of new members declines

First Amended Cease and Desist Order                    Page 11

1  and representatives recruited near the bottom of the retail sales
2  organization structure may be unable to generate promised
3  returns;

4      b.   IHI was the subject of regulatory actions or inquiries
5  in at least three other states based on the allegation that IHI's
6  program violated state pyramid and securities laws;

7      c.   that Savage and Smith were previously involved in a
8  pyramid scheme which was the subject of state and federal
9  administrative and criminal proceedings;

10     d.   that IHI was not an authorized dealer for some of the
11 products listed in its retail sales catalogs and brochures; and,

12     e.   at all times material hereto, IHI's program was not
13 registered as a security in the state of Montana.

14     7.   In connection with the above offers of securities to
15 persons in Montana, Respondents violated § 30-10-301(1)(b), MCA,
16 by failing to disclose the following material facts, which facts
17 were necessary to disclose in order to make the statements made
18 about the investment, in light of the circumstances under which
19 they were made, not misleading:

20     a.   that IHI's losses for the year of 1997 had increased to
21 $7.6 million from the $1.9 million listed in IHI offering
22 circular;

23     b.   that IHI's compensation scheme is premised primarily on
24 recruitment of new members;

25     c.   that IHI did not adequately monitor or enforce

First Amended Cease and Desist Order                    Page 12

1  compliance with IHI policies and procedures by independent sales
2  representatives; and,
3      d.   that IHI markets the business center program utilizing
4  and emphasizing hypothetical earnings projections.
5      8.   In connection with the above offers of securities to
6  persons in Montana, Respondents violated § 30-10-301(1)(c), MCA,
7  by engaging in an act, practice, or course of business which
8  operates or would operate as a fraud or deceit upon any person in
9  that:
10      a.   the IHI business center program constituted a pyramid
11  scheme; and,
12      b.   IHI directed sales representatives not to contact state
13  regulators in order to avoid investigations or inquiries into the
14  IHI business center program.
15      9.   In connection with the above offers of securities to
16  persons in Montana, Respondents Van Etten and IHI violated §30-
17  10-301(1), MCA, when they falsely informed Montana agents and
18  representatives of IHI on or about April 8, 1998, that the
19  Commissioner had agreed to rescind or cancel the April 3, 1998,
20  Cease and Desist Order and that they were no longer subject to
21  that Order.
22      10.  In connection with the above offers of securities to
23  persons in Montana, Respondents Van Etten and IHI violated §30-
24  10-301(1), MCA, when they falsely informed Montana agents and
25  representatives of IHI on or about April 15, 1998, that "we've

First Amended Cease and Desist Order                    Page 13

1  already solved the problem" of the April 3, 1998, Cease and

2  Desist Order; that the April 3, 1998, Cease and Desist Order is

3  "going away" and "we're off their radar scope"; and that the

4  Commissioner had erred in issuing the Order.

5      11.  Respondent Van Etten and IHI violated §30-10-302, MCA,

6  when they failed to disclose to Montana agents and

7  representatives of IHI on or about April 9, 1998, the following

8  material facts which facts were necessary to disclose in order to

9  make the statements made not misleading in light of the

10  circumstances under which they were made:

11      a.  that the Commissioner had not agreed to rescind or

12  cancel the April 3, 1998, Cease and Desist Order;

13      b.  that IHI's Montana agents and representatives were still

14  subject to the Commissioner's April 3, 1998, Cease and Desist

15  Order.

16      12.  Respondents Van Etten and IHI violated §30-10-302, MCA,

17  when they knowingly made a materially false or misleading

18  statement by informing Montana agents and representatives of IHI

19  on or about April 8, 1998, that the Commissioner had agreed to

20  rescind or cancel the April 3, 1998, Cease and Desist Order and

21  that they were no longer subject to that Order.

22      13.  Respondents Van Etten and IHI violated §30-10-302, MCA,

23  when they knowingly made a materially false or misleading

24  statement by informing Montana agents and representatives of IHI

25  on or about April 15, 1998, that "we've already solved the

---

First Amended Cease and Desist Order          Page 14

1   problem" of the April 3, 1998, Cease and Desist Order; that the

2   April 3, 1998, Cease and Desist Order is "going away" and "we're

3   off their radar scope"; and that the Commissioner had erred in

4   issuing the Order.

5                                    ORDER

6       Respondents are hereby ordered to cease and desist issuing,

7   offering, and selling securities to persons in this state in

8   violation of the Securities Act of Montana.  Respondents Van

9   Etten and IHI are also hereby ordered to cease and desist

10  knowingly making any materially false or misleading statement

11  regarding the April 3, 1998, Cease and Desist Order, the effect

12  of that Order, or the status of that Order.

13      The above-cited violations are sufficient grounds for the

14  imposition of an administrative fine not to exceed $5,000.00 per

15  violation upon any person found to have engaged in any act or

16  practice constituting a violation of any provision of the

17  Securities Act of Montana or any rule or order promulgated

18  thereunder.  Section 30-10-305, MCA.  The above-cited violations

19  are sufficient grounds for the imposition of an order requiring

20  the payment of restitution and other costs to investors.  Section

21  30-10-309, MCA.  Staff is recommending that the Commissioner

22  impose total fines of $250,000 and order Respondents Van Etten,

23  IHI, IHI-N, Savage, and Smith to make restitution for all

24  financial losses sustained by Montana residents as a result of

25  Respondents' violations of the Montana Securities Act.

---

First Amended Cease and Desist Order                          Page 15

1      Section 30-10-306(1), MCA, provides that any willful

2  violation of this order, upon conviction, may be punished by

3  imprisonment for not more than ten (10) years and/or a fine not

4  exceeding five thousand dollars ($5,000).

5  NOTICE

6      Respondents are notified that this Order has been issued by

7  the Commissioner.  If Respondents wish to contest the allegations

8  herein, they shall make a written request for a hearing to

9  Elizabeth A. O'Halloran of this office within fifteen (15) days

10  of receipt of this Order.  The hearing shall then be held within

11  thirty (30) days of the Commissioner's receipt of the hearing

12  request unless the time is extended by agreement of the parties.

13  If no hearing is requested within fifteen (15) days of receipt of

14  this order by Respondents, and none is ordered by the

15  Commissioner, this Order shall become permanent.

16      Should you request a hearing, you have the right to be

17  accompanied, represented, and advised by counsel.  If the counsel

18  you choose has not been admitted to practice law in the State of

19  Montana, he or she must comply with the requirements of

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

---

First Amended Cease and Desist Order          Page 16

1   Application of American Smelting and Refining, Co., (1973), 164

2   Mont. 139, 520 P.2d 103.

3

4        DATED this 20th day of April, 1998.

5

6

7                                    Mark O'Keefe

8                                    State Auditor and
                                     Commissioner of Securities

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

First Amended Cease and Desist Order

1

2    <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I hand-delivered a true and correct

3    copy of the foregoing Cease and Desist Order to the following

4    persons by depositing the same in the U.S. Mail - certified -

5    return receipt requested - on this _20_ day of _April_,

6    1998.

7

Dennis Loveless, Esq.
8    320 E.  6th Ave.
Helena, MT 59601

9

10

11    _____
State Auditor's Office

12

13

14

15

16

17

18

19

20

21

22

23

24

25

First Amended Cease and Desist Order                    Page 18

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 7 |
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO. 98-02675-5-ATS |
| | ) | |
| INTERNATIONAL HERITAGE, | ) | |
| INCORPORATED, | ) | CHAPTER 7 |
| | ) | CASE NO. 98-02674-5-ATS |
| Debtors. | ) | |

## NOTICE OF APPLICATION OF TRUSTEE FOR AUTHORITY
## TO ENTER INTO SETTLEMENT AGREEMENT

TO:     THE DEBTOR, ATTORNEY FOR THE DEBTOR, AND OTHER PARTIES IN INTEREST

NOTICE IS HEREBY GIVEN of the Trustee's Application for Authority to Enter into Settlement Agreement with Montana Securities Commissioner. According to the proposed settlement, a consent order will be entered making permanent the terms of a First Amended Cease and Desist order issued by the Montana Securities Commissioner on April 20, 1998. There will be no finding or admission of liability on the part of the debtors and no civil fines will be imposed. A more detailed description of the proposed settlement is contained in the Application filed simultaneously herewith by Holmes P. Harden, Trustee.

An objection to this Application may be filed with the Clerk, United States Bankruptcy Court, Post Office Box 1441, Raleigh, North Carolina 27602, with a copy served on the trustee whose name appears at the bottom of this notice, within twenty (20) days of the date of the mailing of this notice. A hearing on any objections to this Application for Authority to Enter into Settlement Agreement will be held on June 13, 2000 at 9:00 a.m. at the United States Courthouse and Post Office Building, Room 208, 300 Fayetteville Street Mall, Raleigh, North Carolina. Any party requesting a hearing shall appear at said hearing in support of such request or he may be assessed with costs.

FURTHER NOTICE IS HEREBY GIVEN that if a response and a request for a hearing is filed by the Debtor or other party in interest named herein in writing within the time indicated, a hearing will be conducted on the Application and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the Application and response thereto ex parte without further notice.

DATE OF NOTICE:  May **16**, 2000.

MAUPIN TAYLOR & ELLIS, P.A.

BY: _____
Holmes P. Harden, Trustee
N. C. State Bar No. 9835
Post Office Drawer 19764
Raleigh, NC   27619-9764
Telephone:  919/981-4000
Facsimile:  919/981-4300

RALEIGH\249900_1

## CERTIFICATE OF SERVICE

I, Holmes P. Harden, Chapter 7 Trustee, do hereby certify that the attached **NOTICE OF APPLICATION OF TRUSTEE FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT** was served by public notice via 888/895-8385 and 919-981-4033 and **www.nceb.uscourts.gov.,** and was served upon the attached parties of record by first class mail with its proper postage attached and deposited in an official depository under the exclusive care and custody of the United States Post Office, in Raleigh, North Carolina on August 9, 1999.

This _16_ day of _May_, 1999.

MAUPIN TAYLOR & ELLIS, P.A.

Holmes P. Harden
N.C. State Bar No. 9835
3200 Beechleaf Court, Suite 500
Post Office Drawer 19764
Raleigh, NC 27619
Telephone: 919/981-4000
Facsimile: 919/981-4300

SERVED:

Marjorie K. Lynch
Bankruptcy Administrator
U. S. Bankruptcy Court
1800 Parkwood Boulevard
P. O. Box 3758
Wilson, NC 27895

Brenda K. Elias, Staff Attorney
Securities Department
State Auditor
State of Montana
P. O. Box 4009
Helena, MT 59604-4009

Henry W. Noziko, Jr.
President
ACSTAR Insurance Company
P. O. Box 2350
New Britain, CT 06050-2350

Michael K. Wolensky
Robert G. Brunton
David J. Gellen
Kutak Rock
225 Peachtree Street,, NE, Suite 2100
Atlanta, GA 30303-1731

RAL/206885/1

Henry W. Noziko, Jr.
President
United Coastal Insurance Company
P. O. Box 2350
New Britain, CT 06050-2350

William P. Hicks
James E. Long
Securities and Exchange Commission
3475 Lenox Road, N.E.
Atlanta, GA 30326

Chittenden Bank
c/o Louis P. Rochkind
Jaffe, Raitt, Heuer & Weiss
One Woodward Avenue, Suite 2400
Detroit, MI 48226
Via Fax: 313/961-8358

Gerald A. Jeutter
Kilpatrick Stockton, LLP
4101 Lake Boone Trail, Suite 400
P. O. Box 300004
Raleigh, NC 27622

SEE ATTACHED MAIL MATRIX

SEE ATTACHED E-MAIL LIST

RAL/206885/1

Terri I. Gardner
Smith Debnam Narron & Myers, L.L.P.
P. O. Box 26268
Raleigh, NC 27611-6268

Managing Agent
International Heritage, Inc.
c/o Mayflower Capital LLC
2626 Glenwood Avenue, Suite 100
Raleigh, NC 27608

Brent E. Wood
Wood & Francis, PLLC
P. O. Box 164
Raleigh, NC 27602

Stephanie P. Wyatt
Coyle, Bascom & Bergman, P.C.
1000 Cambridge Square, Suite C
Alpharetta, GA 30004

James Russell Tucker
Bush, Hauder & Adkerson, P.C.
500 N. Akard Street, Suite 2100
Dallas, TX 75201

Jack T. Clary
214 St. Matthews Lane
Spartanburg, SC 29301

Richard Ieyoub, Attorney General
State of Louisiana
301 Main Street, Suite 1250
Baton Rouge, LA 70801

Susan Coon Bailey
5233 Floynell Drive
Baton Rouge, LA 70809

Dorothy H. Miller
102 Triangle Circle
Lafayette, LA 70508

Chittenden Bank
c/o Louis P. Rochkind
Jaffe, Raitt, Heuer & Weiss
One Woodward Avenue, Suite 2400
Detroit, MI 48226

Stacey Ostrom
3010 E. Nasa Road 1 #1302
Seabrook, TX 77586

Eugene W. Ellison
185 Biltmore Avenue
Asheville, NC 28801

Karl A. King
465 Sudden Valley
Bellingham, WA 98226

Securities and Exchange Commission
Attn: William P. Hicks
3475 Lenox Road, NE
Atlanta, GA 30326

Managing Agent
Internal Revenue Service
320 Federal Place
Greensboro, NC 27401

Managing Agent
North Carolina Dept. of Revenue
P. O. Box 1168
Raleigh, NC 27602

Marjorie K. Lynch
Bankruptcy Administrator
P. O. Box 3039
Raleigh, NC 27602-3039

Jane E. Chassey
1514 Azalea Drive
Saint Louis, Missouri 63119

Carolyn E. John
485 Broad River Blvd.
Beaufort, SC 29906

Managing Agent
Advanced Equities
P. O. Box 1042
Winnfield, LA 71483

Managing Agent
Centrum Bank AG, Vaduz
Heiligkreuz 8
Postfoch 1168
FL -9490 Vaduz   LIECHTENSTEIN

Gary D. McDowell
1138 Ascott Valley Dr.
Duluth, GA 30097

Jean Wedin
P. O. Box 1600
LaConner, WA 98257

Managing Agent
Jewels by Evonne
1879 Buford Hwy., Suite 7
Buford, GA 30518

Lois Coonc
P. O. Box 699
LaConner, WA 98257

Managing Agent
Mayflower Capital, LLC
2626 Glenwood Ave., Suite 100
Raleigh, NC 27608

Pamela Johnson
18488 Best Road
Mount Vernon, WA 98273

Managing Agent
Schweizer Verband
der Raiffeisen-banken
St. Gallen
Vadianstrasse 17
CH-9000 St. Gallen    SWITZERLAND

Managing Agent
Schweizerische Hypotheken
Handelsbank, Zurich
Bahnhofstrasse/
Schutzengasse 4
CH-8023 Zurich    SWITZERLAND

Stanley H. Van Etten
10504 Tredwood Drive
Raleigh, NC 27613

Managing Agent
UBS, Zuerich
Direktion
Bahnhofstrasse 45
Postfach
CH-8021 Zurich    SWITZERLAND

Charles Anderson
Smith Helms Mulliss & Moore
P. O. Box 27525
Raleigh, NC 27611

Marianne Kelley
142419 133 Ave.
Edmonton, Alberta
CANADA T5A5A5

Claude Savage
106 Benbow Land
Charlotte, NC 28214

Larry Smith
2435 E. North Street
Greenville, SC 29615

Anna M. Washburn
145 Christopher Drive
Clayton, NC 27520

Shawna Y. Staton
Jordan, Price, Wall, Gray,
  Jones & Carlton
P. O. Box 2021
Raleigh, NC 27602-2021

Henry W. Nozko, Jr., President
ACSTAR Insurance Company
P. O. Box 2350
New Britain, CT 06050-2350

Henry W. Nozko, Jr., President
United Coastal Insurance Company
P. O. Box 2350
New Britain, CT 06050-2350

Managing Agent
Coeco
2525 Atlantic Avenue
Raleigh, NC 27604

John Docken
Business Credit Leasing
115 West College Drive
Marshall, MN 56258

Managing Agent
EDS Financial Services
4800 Six Forks Road
Raleigh, NC 27609

Managing Agent
Centrum Bank AGVaduz
Heiligkreuz 8, Postfoch 1168
FL-9490 Vaduz    LIECHTENSTEIN

Managing Agent
Emil Schatz, St Gallen
Oberhofstettenstrasse 67C
CH-9012, Saint Gallen    SWITZERLAND

Managing Agent
Accurata Treuhand und Revisions AG Vaduz
Abundt 36
  FL-9490 Vaduz    LIECHTENSTEIN

Managing Agent
Mareco Treuhand Anstalt
Schlossweg 24
FL-9496 Balzers    LIECHTENSTEIN

Managing Agent
UBS AG, Zurich Direktion
Bahnhofstrasse 45
Postfach
CH-8021 Zurich    SWITZERLAND

Lloyd W. Gathings, II
Gathings & Associates
P. O. Box 10545
Birmingham, AL 35202

Robert W. Shores
Gathings & Associates
P. O. Box 10545
Birmingham, AL 35202

Mr. Herbert Towning
EPP
10 Gartenstrasse
Zurich, Switzerland
8022

Managing Agent
TransAmerica-TIG Insurance
650 California St. 2nd Floor
San Francisco, CA 94108-2702

Sherwin P. Robin
P. O. Box 9541
Savannah, GA 31412-9541

Tony Copeland
BTI
4300 Six Forks Road, Suite 500
Raleigh, NC 27609

RAL/179511/1

Michael P. Flanagan
Ward and Smith, P.A.
P. O. Box 8088
Greenville, NC 27835-8088

Vickie Corbitt, #11429
Attorney for Commissioner of Revenue
Legal Services
P. O. Box 198065
Nashville, TN 37219-8065

Jean Boyles
P. O. Box 10506
Raleigh, NC 27605

James A. Roberts, III
Lewis & Roberts, PLLC
P. O. Box 17529
Raleigh, NC 27619-7529

Stephani W. Humrickhouse, Esq.
Nicholls & Crampton
4300 Six Forks Road, Suite 700
Raleigh, NC 27609

Paul Faison S. Winborne
300/200 Parham Street, Suite F
P. O. Box 1547
Raleigh, NC 27602

Patrick H. Tyler
Bankruptcy & Collections Division
P. O. Box 12548
Austin, TX 78711-2548

Janet Cradeur
P. O. Box 66658
Baton Rouge, LA 70896

Missouri Department of Revenue
Attn: Brian S. Kuhlmann
P. O. Box 475
Jefferson City, MO 65105-0475

James K. Austin
Ellis Painter Ratterree & Bart LLP
P. O. Box 9946
Savannah, GA 31412-9946

Meredith P. Ezzell
Wyrick Robbins Yates & Ponton LLP
P. O. Drawer 17803
Raleigh, NC 27619

Marcia McGair Ippolito
R.I. Division of Taxation
One Capitol Hill
Providence, RI 02908-5800

J. Anthony Penry
Smith,Helms, Mulliss & Moore
2800 Two Hanover Square
Raleigh, NC 27601

William Woodward Webb
Broughton, Wilkins, Webb & Sugg, P.A.
P. O. Box 2387
Raleigh, NC 27602

Walter Calton
312 East Broad Street
Eufaula, AL 36072

Keith M. Jensen
Law Office of Keith M. Jensen
514 East Belknap
Fort Worth, TX 76102

Joseph N. Calloway, Esq.
Battle, Winslow, Scott & Wiley, P.A.
P. O. Box 7100
Rocky Mount, NC 27804-0100

L. C. Gilbert, Jr.
74 Hilltop Lane
Alpine, AL 35014

Randall L. Greene
Rt. 1, Box 155
Randlett, OK 73562

Andrew Clark
1901 Wilmer Avenue
Anniston, AL 36201

Jackson Wayne Murphy
Rt. 6, Box 154
Troy, AL 36081

James H. Thomas
101 Robin Drive
Troy, AL 36081

Craig T. Liebendorfer
7315 Hundley Blvd.
Dallas, TX 75231-4722

Denise Marsh
709 Summit Ridge
Lewisville, TX 75067

Felix Glen Ortega
9460 Dale Glade
Dallas, TX 75217

Lupe Ortega
9460 Dale Glad
Dallas, TX 75217

Sharon A. Meckenstock
1640 West 34th St., N.
Wichita, KS 67204

Dan H. Meckenstock
Custodian FBO Jean Carol Meckenstock
9685 Mohawk Trail
Cascade, CO 80809-1525

Wilbur E. Meckenstock
9685 Mohawk Trail
Cascade, CO 80809-1525

State Auditor's Office
Montana Securities Department
Mitchell Building, Room 270
State Capital Complex
Helen, MT 59620

William Swinney
3365 Silver Palm Drive
Jacksonville, FL 32250

Marshall Reddy
P. O. Box 806
Ponte Verde Beach, FL 32004

Henry W. Noziko, Jr.
United Coastal Insurance Company
P. O. Box 2350
New Britain, CT 06050-2350

Gerald A. Jeutter
Kilpatrick Stockton, LLP
P. O. Box 300004
Raleigh, NC 27622

Henry W. Noziko, Jr.
ACSTAR Insurance Company
P. O. Box 2350
New Britain, CT 06050-2350

Michael K. Wolensky
Robert G. Brunton
David J. Gellen
Kutak Rock
225 Peachtree St., NE, Suite 2100
Atlanta, GA 30303-1731

Donnie Kenneth Broderway
215 Sherwood Avenue
Troy, AL 36081

Gary V. Dixon
Ross Dixon & Bell, LLP
601 Pennsylvania Ave. NW
North Boulevard
Washington, DC 20004-2688

Ronald H. Garber
Boxley Bolton & Garber
P. O. Drawer 1429
Raleigh, NC 27602

Virginia Andrews Burdette
P. O. Box 47
Mukilteo, WA 98275

Scott L. Wilkinson
Assistant U.S. Attorney
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461

Joseph B. Cheshire V
Cheshire Parker Schneider Wells & Bryan
P. O. Box 1029
Raleigh, NC 27602

Managing Agent
International Heritage, Incorporated
c/o Mayflower Capital LLC
2626 Glenwood Avenue, Suite 100
Raleigh, NC 27608

**123**

E-mail:  yuanjunl@hotmail.com

E-mail:  beent@texoma.net

E-mail:  Cotner@wizard.net

E-mail:  x2-song@worldnet.att.net

E-mail:  hual@airmail.net

E-mail:  mayfi23@ipa.net

E-mail:  Buddha623@aol.com

E-mail:  pgorman@vantagepointcapital.com

E-mail:  Iwardcc2@aol.com

E-mail:  ridelga@pacbell.net

E-mail:  ridelga@pacbell.net

E-mail:  sstephe489@aol.com

E-mail:  wrightr@mindspring.com

E-mail:  mlafontaine@abbot-simses.com

E-mail:  TJWR21156@aol.com

E-mail:  rabbit@rockisland.com

E-mail:  cheryll.COSTANIINO@edmail.com

E-mail:  jasbircheema@amropictures.com

E-mail:  72320.316@compuserve.com

E-mail:  stann@colby.IXKS.com

E-mail:  lov.comptable@sympatico.ca

E-mail:  Cwin888@aol.com

E-mail:  myc888@webtv.net

E-mail:  virgilh@colby.ixks.com

E-mail:  gjack312@lntrstar.net

E-mail:  hdfrey@telusplanet.net

E-mail:  DLWARREN@BellSouth.net

E-mail:  michael_bhagat@hotmail.com

E-mail:  GBYRDJR@aol.com

E-mail:  rliston@spartanburg4.0rg

E-mail:  ghromero@aol.com

E-mail:  mommaeans@hotbot.com

E-mail:  joanchan@rocketmail.com

E-mail:  ZGU@atlantis.com

E-mail:  edeem@worldnet.att.net

E-mail:  DFITZPA400@aol.com

E-mail:  theboock@compuserve.com

E-mail:  pondman@memes.com

**123**

E-mail:  docchiro@ISLC.net

E-mail:  RIZMOE@NWRain.com

E-mail:  thodges@gateway.net

E-mail:  hlee@directv.com

E-mail:  fabb@telusplanet.net

E-mail:  cordw@deltapineseed.com

E-mail:  NBECK87570@aol.com

E-mail:  JYANG4@FORD.COM

E-mail:  mccarthy@mccarthyconsultant.com

E-mail:  BNLHATH@aol.com

E-mail:  nonfemett@worldnet.att.net

E-mail:  digger@bcsupernet.com

E-mail:  BREIDYIII@aol.com

E-mail:  Lindastime@aol.com

E-mail:  pak@jcnl.com

E-mail:  hornsjr@mindspring.com

E-mail:  lpartr1072@aol.com

E-mail:  leadership.possibilities.mak@worldnet.att.net

E-mail:  aqualite@digisys.net

E-mail:  TIMSAMUEL@aol.com

E-mail:  mtheisen@efn.org

E-mail:  MLGeller@aol.com

E-mail:  willy@ani.com

E-mail:  englishs@digisys.net

E-mail:  gmahalko@vvm.com

E-mail:  timmoore@aol.com

E-mail:  mooreem@harpo.tnstate.edu

E-mail:  sprklmagc@aol.com

E-mail:  backpain@keynet.net

E-mail:  Hbeckbari@aol.com

E-mail:  mwarhurst@yahoo.com

E-mail:  js.baum@srs.gov

E-mail:  wynellh@flash.net

E-mail:  dlatray@mcn.net

E-mail:  bwood@woodfran.com

E-mail:  tcrow@uab-admin.vpad.uab.edu

E-mail:  DickLynn.Ferency@compuserve.com

E-mail:  kaylorj@hal-pc.org

E-mail:  CHASSEYRAY@email.msn.com

E-mail:  jim.griffith@erols.com

**123**

E-mail: xiaokui.shan@bakernet.com

E-mail: xshan@aol.com

E-mail: kkandola@theresidences.com

E-mail: lrochkind@jafferaitt.com

E-mail: sdostrom@hotmail.com

E-mail: michaelhopkins@mailcity.com

E-mail: ellesw@aol.com

E-mail: sport@gvi.net

E-mail: dana-charles@worldnet.att.net

E-mail: class45@concentric.net

E-mail: options-galore@yahoo.com

E-mail: dadabca@netcom.ca

E-mail: bchap01@aol.com

E-mail: ceissngr@midrivers.com

E-mail: doubled@snowcrest.com

E-mail: glassgs@cadvision.com

E-mail: mbrown8967@aol.com

E-mail: nfl300@aol.com

E-mail: diemert@northerntel.net

E-mail: cgrumer@manatt.com

E-mail: shouli.yang@stjude.org

E-mail: RJWNLAW@aol.com

E-mail: sds98@eatel.net

E-mail: jwmaloy@aol.com

E-mail: jwmaloy@aol.com

E-mail: kanelos@mindspring.com

E-mail: blairc@iname.com

E-mail: Larry_Fletcher@bc.sympatico.ca

E-mail: JNRRICH@Intur.net

E-mail: aadrezin@Epix.net

E-mail: kimball.peed@bigfoot.com

E-mail: tammyr@falcon.ukans.cc.edu

E-mail: VTPALMER27@yahoo.com

E-mail: crandall@rock-springs.dowell.slb.com

E-mail: gedler@bellsouth.net

E-mail: sue_stephen@bc.sympatico.ca

E-mail: Nicklin98@aol.com

E-mail: r_brown@email.msn.com

E-mail: andrelee@earthlink.net

**123**

E-mail:  BrAnDin420@aol.com

E-mail:  hou@mail.med.upenn.edu

E-mail:  barrettcarter@mindspring.com

E-mail:  calinb@earthlink.net

E-mail:  BSID@CTC.NET

E-mail:  dsbarron@bellsouth.net

E-mail:  jamcgrath@yahoo.com

E-mail:  bbaum89@aol.com

E-mail:  dhilch@pacificcoast.net

E-mail:  dhilch@pacificcoast.net

E-mail:  bjsaw@ttc-cmc.net

E-mail:  smsutom@aol.com

E-mail:  lynn@dot.state.al.us

E-mail:  liuwd@earthlink.net

E-mail:  pingnas@ica.net

E-mail:  Hanna@tir.com

E-mail:  Hanna@tir.com

E-mail:  SteveG7574@aol.com

E-mail:  buddunn@auantumworld.com

E-mail:  Rahmati@ibm.net

E-mail:  Docnielsen@webtv.net

E-mail:  mjandcarlincc@juno.com

E-mail:  emlabeau@gateway.net

E-mail:  loking@wixmail.com

E-mail:  Jholt@Clemson.edu

E-mail:  jsmusa@mindspring.com

E-mail:  Mainland@ticnet.com

E-mail:  cce3@juno.com

E-mail:  mcnamer@bigsky.net

E-mail:  Remodelyou@aol.com

E-mail:  mwa@wnonline.net

E-mail:  lesterabs@mindspring.com

E-mail:  shanson@kearney.net

E-mail:  vickylanglois@atlasta.net

E-mail:  an667@hwcn.org

E-mail:  rconant@telusplanet.net

E-mail:  yu241703@yorku.ca

E-mail:  yu241703@yorku.ca

E-mail:  Michael Genge@bc.sympatico.ca

E-mail:  lihen

Baker, Janis                    4                    5/15/2000

**123**

E-mail: BSID@CTC.NET

E-mail: dsbarron@bellsouth.net

E-mail: jamcgrath@yahoo.com

E-mail: bbaum89@aol.com

E-mail: dhilch@pacificcoast.net

E-mail: bjsaw@ttc-cmc.net

E-mail: smsutom@aol.com

E-mail: lynn@dot.state.al.us

E-mail: liuwd@earthlink.net

E-mail: pingnas@ica.net

E-mail: Hanna@tir.com

E-mail: SteveG7574@aol.com

E-mail: buddunn@quantumworld.com

E-mail: Rahmati@ibm.net

E-mail: docnielsen@webtv.net

E-mail: mjandcarlincc@juno.com

E-mail: emlabeau@gateway.net

E-mail: loking@wixmail.com

E-mail: Jholt@Clemson.edu

E-mail: jsmusa@mindspring.com

E-mail: Mainland@ticnet.com

E-mail: cce3@juno.com

E-mail: mcnamer@bigsky.net

E-mail: Remodelyou@aol.com

E-mail: mwa@wnonline.net

E-mail: lesterabs@mindspring.com

E-mail: shanson@kearney.net

E-mail: vickylanglois@atlasta.net

E-mail: an667@hwcn.org

E-mail: rconant@telusplanet.net

E-mail: yu241703@yorku.ca

E-mail: Michael Genge@bc.sympatico.ca

E-mail: lihengelle@aol.com

E-mail: TJDeavers@aol.com

E-mail: PDQ2CU@aol.com

E-mail: BrAnDin420@aol.com

E-mail: hou@mail.med.upenn.edu

E-mail: calinb@earthlink.net

E-mail: MSB7158@bellsouth.net

E-mail: hsmiley@san.rr.com

Baker, Janis                    5                    5/15/2000

**123**



E-mail:  abmk@home.com

E-mail:  CTBallard@aol.com

E-mail:  beth_pattillo@shmm.org

E-mail:  beatty@home.msen.com

E-mail:  RJNele@aol.com

E-mail:  swede@dmea.net

E-mail:  kmaxeyjr@bayou.com

E-mail:  Wesglynn@aol.com

E-mail:  calinb@earthlink.net

E-mail:  johnsons@pacifier.com

E-mail:  ambc@rhweb.com

E-mail:  jwarren@wyche.com

E-mail:  dongming.zhao@jci.com

E-mail:  pkloosterman@juno.com

E-mail:  Dsalido@webtv.net

E-mail:  JEEPETTE99@aol.com

E-mail:  pingnas@ica.net

E-mail:  Karen0906@aol.com

E-mail:  lonni@pb.quik.com

E-mail:  cr80n@flash.net



E-mail:  Dana-Charles@Worldnet.Att.Net

E-mail:  Aventas@aol.com

E-mail:  kk_1200@kwikkopy.com

E-mail:  hewlett@cablelan.net

E-mail:  sonia_voldseth@burns.senate.gov

E-mail:  mychen@att.net

E-mail:  dzeigler@jsucc.jsu.edu

E-mail:  mchad@acnet.net

E-mail:  MYChen@att.net

E-mail:  albourassa@bigfoot.com

E-mail:  albourassa@bigfoot.com

E-mail:  Harden, Holmes

E-mail:  Mgutierrez@pirnie.com