**FILED**

JUN 14 2000

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 7 |
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO. 98-02675-5-ATS |
| | ) | |
| INTERNATIONAL HERITAGE, | ) | |
| INCORPORATED, | ) | CHAPTER 7 |
| | ) | CASE NO. 98-02674-5-ATS |
| Debtors. | ) | |

## ORDER AUTHORIZING TRUSTEE TO ENTER
## INTO SETTLEMENT AGREEMENT

This matter comes on for the consideration of the undersigned upon the Application of

Trustee for Authority to Enter into Settlement Agreement ("Application") filed May 16, 2000 by

Holmes P. Harden, Trustee, in the above-captioned case.  It appears to the Court as follows:

### FINDINGS OF FACT

1.      International Heritage, Inc. and International Heritage, Incorporated filed

voluntary petitions in bankruptcy on November 25, 1998 and Holmes P. Harden ("Trustee") was

appointed Chapter 7 Trustee.

2.      The Montana Securities Commissioner on April 3, 1998 issued a Cease and

Desist Order against International Heritage, Inc. and International Heritage, Incorporated

alleging violations of the Securities Act of Montana in the offer and sale of business

opportunities and the offer and sale of stock and debentures.  On or about April 20, 1998, the

Montana State Auditor's office issued a First Amended Cease and Desist Order, a copy of which

is attached as part of Exhibit A to Exhibit I hereto.

RALEIGH\249803_1

3.      An administrative hearing would be necessary to establish the violations of the Securities Act of Montana alleged in the Cease and Desist Order.

4.      Trustee does not oppose making permanent the relief ordered in the Cease and Desist Order if no civil fines are imposed against the debtor estates and there is no finding or admission of liability.

5.      The State Auditor and Trustee have agreed that after reviewing this case, it is in the best interest of the State Auditor's Office and International Heritage that the parties enter into a stipulated settlement.

6.      Trustee is of the opinion that settling the above described controversy is fair and reasonable and is in the best interest of the expeditious administration of the Debtors' estates, given the uncertainty, complexity, expense, inconvenience and delay of litigation.  Trustee therefore deems it appropriate and consistent with his duties and the paramount interest of creditors to enter into the proposed Settlement Agreement and Consent Order with the Montana Securities Commissioner because the settlement concludes complex litigation at no cost to the estates and saves the cost of defending same in Montana, without any admissions of liability by the Debtors.

7.      Trustee is authorized to execute the Settlement Agreement with court approval.

8.      Notice of the Application was properly served upon creditors and parties in interest.

## CONCLUSIONS OF LAW

9.      The proposed settlement is fair and reasonable.  Approval of the proposed

settlement is in the best interests of the expeditious administration of the Debtors' estates, given

the complexity, uncertainty, expense, inconvenience and delay of litigation.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Application is

hereby APPROVED.  The court hereby authorizes the parties to execute the Settlement

Agreement attached hereto as Exhibit "I".

This the 14th day of ___June___, 2000.

UNITED STATES BANKRUPTCY COURT JUDGE

RALEIGH\249803_1

STATE AUDITOR'S OFFICE
SECURITIES DEPARTMENT
HELENA, MONTANA

IN THE MATTER OF:                              )   Case No.: No. I 04-02-98-04
                                               )
INTERNATIONAL HERITAGE, INC.,                  )   SETTLEMENT AGREEMENT and
STANLEY H. VAN ETTEN, CLAUDE W.                )   CONSENT ORDER
SAVAGE, LARRY G. SMITH, and                    )
INTERNATIONAL HERITAGE                         )
INCORPORATED, a Nevada Corporation,            )
and their agents and representatives,          )
                                               )
           Respondents.                        )
                                               )
_____       )

This agreement is made by and between the Montana Securities Commissioner and

Holmes Harden, trustee in bankruptcy for International Heritage Inc. and International Heritage

Incorporated, Respondents in the above captioned matter.

**A.    Recitals**

1.       International Heritage, Inc., (IHI) was a North Carolina corporation whose .

principal offices were located in Raleigh, North Carolina. International Heritage, Inc., was a

majority owned subsidiary of International Heritage Incorporated, a Nevada Corporation (IHIN)

(formerly "Kara International, Inc."). On or about November 25, 1998, International Heritage

Inc. and International Heritage Incorporated filed a petition pursuant to Chapter 7 of the

Bankruptcy Code in the Eastern District of North Carolina. Holmes P. Harden was appointed

Chapter 7 Trustee by the Bankruptcy Court.

2.       The Montana Securities Commissioner on April 3, 1998, issued a Cease and

Desist Order against International Heritage, Inc., and International Heritage, Incorporated

alleging violations of the Securities Act of Montana in the offer and sale of business

opportunities and the offer and sale of stock and debentures. On or about April 20, 1998, the

Montana State Auditor's office issued a First Amended Cease and Desist Order, a copy of which

is attached as Exhibit A hereto. Those orders alleged specifically that Respondents violated the



anti-fraud and registration provisions of the Securities Act and that Respondents operated an illegal pyramid scheme in Montana.

3.     An administrative hearing would be necessary to establish the violations of the Securities Act of Montana alleged in the cease and desist order.

4.     Mr. Harden does not oppose making permanent the relief ordered in the Cease and Desist Order if no civil fines are imposed against the corporate respondents' estate or otherwise against the corporate respondents.

5.     The State Auditor and Mr. Harden agree that after reviewing this case, it is in the best interest of the State Auditor's Office and International Heritage that the parties enter into a Stipulated Settlement Agreement.

## B.     Stipulation

By virtue of his capacity as bankruptcy trustee and with the authority of the United States Bankruptcy Court for the Eastern District of North Carolina, Mr. Harden, on behalf of International Heritage Inc. and International Heritage Incorporated, without admitting the allegations set forth in the Cease and Desist Order and the First Amended Cease and Desist hereby stipulates and consents to the following:

1.     To the entry of a permanent cease and desist order in the above-captioned matter with respect to International Heritage Inc. and International Heritage Incorporated;

2.     To provide truthful and complete testimony in any future proceedings relating to this matter;

3.     To waive the right of International Heritage Inc. and International Heritage Incorporated to a hearing on the allegations contained herein;

4.     To agree that International Heritage Inc. and International Heritage Incorporated will comply with the Securities Act of Montana, and the rules and orders promulgated thereunder in the future;

5.     To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from conducting securities business in Montana;

6.   To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from offering and selling products and business opportunities in Montana;

7.   To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in multi-level marketing in Montana;

8.   To agree that International Heritage Inc. and International Heritage Incorporated are permanently barred from insurance transactions that are regulated by the Montana Insurance Code;

9.   To agree that the debtors' estates will not sell the name and/or logo of International Heritage Inc. and International Heritage Incorporated in Montana or consent to their use in Montana by any individual or entity in any capacity, including but not limited to the offer or sale of securities, business opportunities or products in Montana;

Pursuant to the stipulation and consent of Holmes P. Harden, Chapter 7 Bankruptcy Trustee for International Heritage Inc., and International Heritage, Incorporated, with the authorization of the United States Bankruptcy Court for the Eastern District of North Carolina, the Commissioner, under authority of the Securities Act of Montana and §2-4-603, MCA, hereby agrees that if the terms and conditions of this agreement are fully met, he will not pursue further civil or administrative action against International Heritage Inc. or International Heritage Incorporated regarding the allegations contained therein pursuant to §30-10-305, MCA.

### ORDER

WHEREFORE, it is hereby ordered that the above-referenced Cease and Desist Order, as amended, is made permanent. It is further ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in the business of securities in Montana. It is ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in the offering of products and business opportunities in Montana. It is ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from engaging in multi-level marketing in

Montana. It is ordered that International Heritage Inc. and International Heritage Incorporated are permanently barred from insurance transactions that are regulated by the Montana Insurance Code.

WE CONSENT:

        DATED this __ day of _____, 2000.



_____
RESPONDENT INTERNATIONAL HERITAGE INC. and
INTERNATIONAL HERITAGE INCORPORATED
By:     Holmes P. Harden
Its:     Bankruptcy Trustee

Subscribed and Sworn to before me this ____ day of _____ 2000.

(SEAL)                                          _____
                                                Notary Public for the State of _____
                                                Residing at _____
                                                My commission expires _____



        DATED this _____ day of _____, 2000.


_____
Mark O'Keefe, State Auditor and
Commissioner of Securities

Stipulation, Settlement Agreement and Order - 4

STATE AUDITOR'S OFFICE
SECURITIES DEPARTMENT
HELENA, MONTANA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. I-04-02-98-04 |
| | ) | |
| International Heritage, Inc., | ) | CEASE AND DESIST ORDER |
| Stanley H. Van Etten, | ) | |
| Claude W. Savage, | ) | |
| Larry G. Smith, | ) | |
| and | ) | |
| International Heritage, | ) | |
| Incorporated, a Nevada corporation,) | | |
| | ) | |
| and their agents & | ) | |
| representatives, | ) | |
| | ) | |
| Respondents. | ) | |

The Montana Securities Commissioner (commissioner), pursuant to the authority of the Securities Act of Montana, § 30-10-101, et seq., hereby issues the following findings of fact, conclusions of law, order and notice of right to a public hearing:

FINDINGS OF FACT

1.   International Heritage, Inc., (IHI) is a North Carolina corporation whose principal offices are located in Raleigh, North Carolina.   International Heritage, Inc., is a majority owned subsidiary of International Heritage Incorporated, a Nevada Corporation (IHI-N) (formerly "Kara International, Inc.").

2.   Stanley H. Van Etten (Van Etten), is a founder, chairman of the board of directors, president, and chief executive officer of IHI, and is chairman of the board and chief executive officer of

EXHIBIT
A

Page 1

1 | IHI-N.

2 |     3.   Claude W. Savage (Savage) is a founder and a director of
3 | IHI and is director of IHI-N.

4 |     4.   Larry G. Smith (Smith) is a founder and director of IHI
5 | and a director of IHI-N.

6 |     5.   Johnny Daniels (Daniels) is an independent sales
7 | representative of IHI who resides in Malta, Montana. Daniels
8 | conducts IHI training sessions and has marketed IHI business center
9 | interests in Montana.

10 |     6.   IHI, its principals, employees, and agents solicited
11 | investments in IHI's program in Montana through the use of
12 | promotional materials, videotapes, recruitment meetings, and
13 | internet web sites. IHI, through Van Etten, Savage, Smith,
14 | Daniels, and others solicited residents of Kalispell, Anaconda,
15 | Butte, Billings, Bozeman, Lewistown, Great Falls, Glasgow, Malta,
16 | Glendive, Roundup, Forsyth, Havre, Columbia Falls, Stevensville,
17 | Helena, and other Montana towns to invest in a pyramid scheme.

18 |     7.   IHI interests are described as "business centers," of
19 | which an investor may open one, three, or seven. In order to open
20 | or create a "certified" business center, Montana investors were
21 | generally required to pay the sum of $200.00 to $250.00 toward the
22 | purchase of an IHI product, sign a "retail business agreement,"
23 | purchase an IHI retail business career kit for $100, and pay a
24 | $25.00 administrative fee.

25 |

8.   At all times material hereto, IHI solicited Montana investors through the purported use of a "multi-level" marketing program in which prospective investors are recruited by investors who have already purchased interests in IHI.   IHI established an incentive for recruitment of downline sales representatives by promising payment of override commissions to independent sales representatives for IHI product and business center sales by that representative's downline (retail sales organization).

9.   According to the IHI's bi-lateral compensation plan, independent sales representatives could earn override commissions only if their own retail business center was "certified."

10.   At all times material hereto, IHI promotional and sales materials indicated that investors could earn up to $2,200 to $2,500 per retail business center weekly.   These projected earnings were based on the recruitment of downline independent sales representatives, rather than the sale of products on the retail market.   Similarly, the compensation structure, which included a compensation cap attached to single business center earnings, encouraged the purchase of multiple business centers by investors.

11.   Although commissions on the sale of products were described in the promotional and sales material, the income from the development of the retail sales organization was emphasized as the significant source of income from involvement with IHI. Similarly,   IHI   disproportionately   emphasized   retail   sales

1  organization development through the promise of bonuses and

2  commissions which were not available to an independent sales

3  representative whose organization focused on retail product sales.

4      12.  At all times material hereto, the IHI compensation

5  structure and sales pitch regarding "leveraging retail sales

6  business volume" served as incentive to develop the downline and

7  disincentive to generate retail sales business volume through the

8  sale of IHI products, thus perpetuating the pyramid scheme.  The

9  IHI sales kit contains a book co-authored by Van Etten which

10 emphasizes the importance of downline regeneration.  In addition to

11 emphasizing the importance of geometric growth in marketing the IHI

12 interests, IHI's training materials clearly discourage independent

13 sales representatives from developing the retail sale portion of

14 the representatives' businesses.  Van Etten's book states:

> There are two things that the successful network marketer must
> be very good at doing which are altogether foreign to the
> traditional salesperson: (1) He must be an organization
> builder, and (2) He must be a teacher.  We will speak of these
> two things at much greater length later in this chapter, but
> suffice it to say at this point that there is nothing in the
> experience of the traditional salesperson that would cause him
> to assign any value to either of these two skills which are so
> essential to the individual who wants to succeed in network
> marketing.  In fact, the traditional salesperson's natural
> tendency would be to see both organization-building and
> teaching as irrelevant obstacles to be swept out of the way of
> what he sees as the one all-important task of every
> salesperson - selling.
>
>                          * * *
>
> Earlier in this chapter we said that there is a risk in
> sponsoring persons who have considerable experience in direct
> sales.  This is a good place to explain why that is the case.
> An experienced salesperson might come into your downline and
> recruit like crazy.  But if he fails to teach his recruits

the importance of the company's multilevel sales structure and the necessity for "keeping it going," then he would fill your downline organization with dead-end roadblocks. (Emphasis in original).

13.   Though references to minimum retail sales requirements and inventory loading prohibitions are included in the independent retail sales representative manual, IHI's compensation program is based on orders of products, rather than actual sales of products, and override commissions are promised for orders made within the retail sales organization.   Furthermore, IHI's program structure does not provide a method by which inventory loading requirements and requirements for retail sales to non-participants are meaningfully enforced.   As of the date of this order, a disproportionate amount of products ordered from IHI through the use of the "retail business agreement" in Montana have never been received by the purchasers of the product.

14.   On or about March 28, 1996, IHI issued a memorandum addressed to all IHI representatives which required that representatives wishing to conduct due diligence on the company should direct "all of [their] compliance, regulatory and legal questions to the Compliance Department at the home office rather than the Better Business Bureau or state regulators."   IHI further stated that "[i]f enough inquiries are made to any one particular regulatory branch, within a particular state, the result could be an investigation of the Company spurned {sic} by the mere volume of

calls." The memorandum further stated that:

> The reason IHI is one of the only multilevel marketing companies with a Compliance Department is so representatives will have a source for receiving answers to compliance, regulatory and legal questions and to assure that the Company operates in compliance with the myriad of regulations affecting a direct marketing sales company with operations in 48 states and 3 Canadian provinces.

Though the memorandum was written in March, 1996, it was included in an IHI business retail business career kit sold to a Montana resident months later.

15.   Despite IHI's claims in sales presentations and materials that its program complies with state and federal laws that affect direct marketing organizations, IHI entered into agreements limiting IHI activities in the state of North Carolina on June 3, 1997, and in the state of Georgia on February 10, 1998, as a result of regulatory concerns in those states.  North Carolina regulators alleged that IHI violated North Carolina pyramid laws.  These actions were not disclosed to Montana residents offered or sold IHI business center interests.

16.   Between August 5, 1997, and October 31, 1997, IHI, through Van Etten, Savage, Smith, and others, raised $5 million by selling IHI notes convertible into IHI common stock, to approximately 95 persons in fourteen states, including at least 6 persons in Montana.

17.   On August 14, 1997, IHI filed a notice filing for an exemption on Form D, indicating it sold an aggregate of $295,00 of

Page 6

1  IHI units to six accredited Montana investors. The application

2  indicated that WIN Capital was the broker/dealer making offers

3  and/or sales to Montana investors.

4      18. In connection with the offer and sale of IHI notes, IHI

5  authorized the use of a "term sheet," dated July 17, 1997, which

6  disclosed that IHI had losses of approximately $1.9 million during

7  the first four months of 1997. The term sheet did not disclose

8  that by the time of the offering IHI's losses for the year had

9  increased to $7.6 million, and that IHI had a shortage of operating

10 funds.

11     19. The term sheet states that IHI pays commissions and

12 bonuses "derived solely from sales as opposed to headhunting or any

13 similar activities," despite IHI's emphasis on compensation

14 opportunities based on recruitment and development of retail sales

15 organizations.

16     20. The term sheet states that representatives "who sponsor

17 other representatives must fulfill supervisory activities,

18 including ongoing communication and managerial supervision with the

19 IRSRs within their Retail Sales Organization in order to qualify

20 for ongoing commissions and bonuses," despite the absence of

21 enforcement efforts by IHI to ensure compliance.

22     21. The term sheet represents that IHI has a "a prohibition

23 from presenting hypothetical earnings projections" in sales

24 presentations, despite IHI's standard use of projections that each

25

1  business center could earn up to $2,500 weekly.

2      22.  Daniels, an IHI representative in Malta, Montana, offered

3  Malta, Montana, residents the opportunity to purchase IHI notes in

4  June, 1997.

5      23.  IHI represented to the Montana Securities Department that

6  the offering of IHI notes would be conducted by WIN Capital Corp.,

7  a registered broker-dealer.  Daniels is not now, nor has he ever

8  been registered as a salesperson with WIN Capital Corp.

9      24.  The records of the Montana Securities Department disclose

10 that Respondents were not registered as broker-dealers or salesmen

11 in this state prior to the date of this Order.

12     25.  The records of the Montana Securities Department disclose

13 that the IHI business center program offered by Respondents was not

14 registered as a security in this state prior to the date of this

15 Order.

16     26.  In connection with the above offers of IHI business

17 center interests to persons in Montana, Respondents failed to

18 disclose the following material facts which facts were necessary to

19 disclose in order to make the statements made about the investment,

20 in light of the circumstances under which they were made, not

21 misleading:

22     a.  the market for IHI business center interests will

23 eventually become saturated as the supply of new members declines

24 and representatives recruited near the bottom of the retail sales

25

organization structure may be unable to generate promised returns;

b.   IHI was the subject of regulatory actions or inquiries in at least three other states based on the allegation that IHI's program violated state pyramid and securities laws;

c.   that Savage and Smith were previously involved in a pyramid scheme which was the subject of state and federal administrative and criminal proceedings, including the issuance of a permanent cease and desist order in Montana;

d.   that IHI was not an authorized dealer for some of the products listed in its retail sales catalogs and brochures; and,

d.   at all times material hereto, IHI's program was not registered as a security in the state of Montana.

27.  In connection with the above offers and sales of IHI notes convertible to IHI common stock to persons in Montana, Respondents failed to disclose the following material facts which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.   that IHI's losses for the year of 1997 had increased to $7.6 million from the $1.9 million listed in IHI offering circular;

b.   that IHI's compensation scheme is premised primarily on recruitment of new members;

c.   that IHI did not adequately monitor or enforce compliance with IHI policies and procedures by independent sales

Page 9

1  representatives; and,

2      d.   that IHI markets the business center program utilizing

3  and emphasizing hypothetical earnings projections.

4      28.  In connection with the above offers of securities to

5  persons in Montana, Respondents engaged in an act, practice, or

6  course of business which operates or would operate as a fraud or

7  deceit upon any person in that:

8      a.   the IHI business center program constituted a pyramid

9  scheme; and,

10      b.   IHI directed sales representatives not to contact state

11  regulators in order to avoid investigations or inquiries into the

12  IHI business center program.

13  <u>CONCLUSIONS OF LAW</u>

14      1.   The commissioner has jurisdiction over this matter by

15  reason of Respondents' offer and sale of securities to persons in

16  or from Montana.

17      2.   Respondents' program is a security within the meaning of

18  the Securities Act of Montana, § 30-10-103(22), MCA.

19      3.   Offer or offer to sell includes "every attempt or offer

20  to dispose of or solicitation of an offer to buy a security or

21  interest in a security for value." Section 30-10-103(15), MCA.

22      4.   In connection with the above offers of securities to

23  persons in Montana, Respondents violated § 30-10-201(1), MCA, by

24  transacting business as broker-dealers or salesmen in Montana

25

1  without registering as such.

2      5.   In connection with the above offers of securities to

3  persons in Montana, Respondents violated § 30-10-202, MCA, by

4  transacting business in unregistered securities.

5      6.   In connection with the above offers of securities to

6  persons in Montana, Respondents violated § 30-10-301(1)(b), MCA, by

7  failing to disclose the following material facts, which facts were

8  necessary to disclose in order to make the statements made about

9  the investment, in light of the circumstances under which they were

10 made, not misleading:

11     a.   the market for IHI business center interests will

12 eventually become saturated as the supply of new members declines

13 and representatives recruited near the bottom of the retail sales

14 organization structure may be unable to generate promised returns;

15     b.   IHI was the subject of regulatory actions or inquiries in

16 at least three other states based on the allegation that IHI's

17 program violated state pyramid and securities laws;

18     c.   that Savage and Smith were previously involved in a

19 pyramid scheme which was the subject of state and federal

20 administrative and criminal proceedings;

21     d.   that IHI was not an authorized dealer for some of the

22 products listed in its retail sales catalogs and brochures; and,

23     d.   at all times material hereto, IHI's program was not

24 registered as a security in the state of Montana.

25

Page 11

7.   In connection with the above offers of securities to persons in Montana, Respondents violated § 30-10-301(1)(b), MCA, by failing to disclose the following material facts, which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.   that IHI's losses for the year of 1997 had increased to $7.6 million from the $1.9 million listed in IHI offering circular;

b.   that IHI's compensation scheme is premised primarily on recruitment of new members;

c.   that IHI did not adequately monitor or enforce compliance with IHI policies and procedures by independent sales representatives; and,

d.   that IHI markets the business center program utilizing and emphasizing hypothetical earnings projections.

8.   In connection with the above offers of securities to persons in Montana, Respondents violated § 30-10-301(1)(c), MCA, by engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in that:

a.   the IHI business center program constituted a pyramid scheme; and,

b.   IHI directed sales representatives not to contact state regulators in order to avoid investigations or inquiries into the IHI business center program.

## ORDER

Respondents are hereby ordered to cease and desist issuing, offering, and selling securities to persons in this state in violation of the Securities Act of Montana.

The above-cited violations are sufficient grounds for the imposition of an administrative fine not to exceed $5,000.00 per violation upon any person found to have engaged in any act or practice constituting a violation of any provision of the Securities Act of Montana or any rule or order promulgated thereunder. Section 30-10-305, MCA. The above-cited violations are sufficient grounds for the imposition of and order requiring the payment of restitution and other costs to investors. Section 30-10-309, MCA. You will receive notice and/or an opportunity to be heard prior to the imposition of any fine or an order of restitution.

Section 30-10-306(1), MCA, provides that any willful violation of this order, upon conviction, may be punished by imprisonment for not more than ten (10) years and/or a fine not exceeding five thousand dollars ($5,000).

## NOTICE

Respondents are notified that this order has been issued by the commissioner. If Respondents wish to contest the allegations herein, they shall make a written request for a hearing to Elizabeth A. O'Halloran of this office within fifteen (15) days of

Page 13

receipt of this order.   The hearing shall then be held within thirty (30) days of the commissioner's receipt of the hearing request unless the time is extended by agreement of the parties. If no hearing is requested within fifteen (15) days of receipt of this order by Respondents, and none is ordered by the commissioner, this order shall become permanent.

Should you request a hearing, you have the right to be accompanied, represented, and advised by counsel.   If the counsel you choose has not been admitted to practice law in the State of Montana, he or she must comply with the requirements of Application of American Smelting and Refining, Co., (1973), 164 Mont. 139, 520 P.2d 103.


DATED this third day of April, 1998.

Mark O'Keefe
State Auditor and
Commissioner of Securities

## CERTIFICATE OF SERVICE

I hereby certify that I mailed a true and correct copy of the foregoing CEASE AND DESIST ORDER to the following persons by depositing the same in the U.S. Mail - certified - return receipt requested - on this 3rd day of April , 1998.

International Heritage, Inc.
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Stanley H. Van Etten
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Claude W. Savage
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Larry G. Smith
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Johnny Daniels
Hwy. 191
Malta, MT 59538

International Heritage Incorporated
2626 Glenwood Ave., Suite 200
Raleigh, NC 27608

Sandi Bunston
State Auditor's Office

Page 15

STATE AUDITOR'S OFFICE
SECURITIES DEPARTMENT
HELENA, MONTANA

| IN THE MATTER OF: | ) | CASE NO. I-04-02-98-04 |
|---|---|---|
| | ) | |
| International Heritage, Inc., | ) | FIRST AMENDED |
| Stanley H. Van Etten, | ) | CEASE AND DESIST ORDER |
| Claude W. Savage, | ) | |
| Larry G. Smith, | ) | |
| and | ) | |
| International Heritage, | ) | |
| Incorporated, a Nevada corporation, | ) | |
| | ) | |
| and their agents & | ) | |
| representatives, | ) | |
| | ) | |
| Respondents. | ) | |

The Montana Securities Commissioner (Commissioner), pursuant to the authority of the Securities Act of Montana, § 30-10-101, et seq., hereby issues the following findings of fact, conclusions of law, order and notice of right to a public hearing:

FINDINGS OF FACT

1.    International Heritage, Inc., (IHI) is a North Carolina corporation whose principal offices are located in Raleigh, North Carolina.  International Heritage, Inc., is a majority owned subsidiary of International Heritage Incorporated, a Nevada Corporation (IHI-N) (formerly "Kara International, Inc.").

2.    Stanley H. Van Etten (Van Etten), is a founder, chairman of the board of directors, president, and chief executive officer of IHI, and is chairman of the board and chief

First Amended Cease and Desist Order                                                    Page 1

1   executive officer of IHI-N.

2       3.   Claude W. Savage (Savage) is a founder and a director

3   of IHI and is director of IHI-N.

4       4.   Larry G. Smith (Smith) is a founder and director of IHI

5   and a director of IHI-N.

6       5.   IHI, its principals, employees, and agents solicited

7   investments in IHI's program in Montana through the use of

8   promotional materials, videotapes, recruitment meetings, and

9   internet web sites.  IHI, through Van Etten, Savage, Smith, and

10  others solicited residents of Kalispell, Anaconda, Butte,

11  Billings, Bozeman, Lewistown, Great Falls, Glasgow, Malta,

12  Glendive, Roundup, Forsyth, Havre, Columbia Falls, Stevensville,

13  Helena, and other Montana towns to invest in a pyramid scheme.

14      6.   IHI interests are described as "business centers," of

15  which an investor may open one, three, or seven.  In order to

16  open or create a "certified" business center, Montana investors

17  were generally required to pay the sum of $200.00 to $250.00

18  toward the purchase of an IHI product, sign a "retail business

19  agreement," purchase an IHI retail business career kit for $100,

20  and pay a $25.00 administrative fee.

21      7.   At all times material hereto, IHI solicited Montana

22  investors through the purported use of a "multi-level" marketing

23  program in which prospective investors are recruited by investors

24  who have already purchased interests in IHI.  IHI established an

25  incentive for recruitment of downline sales representatives by

First Amended Cease and Desist Order                    Page 2

1   promising payment of override commissions to independent sales

2   representatives for IHI product and business center sales by that

3   representative's downline (retail sales organization).

4       8.   According to the IHI's bi-lateral compensation plan,

5   independent sales representatives could earn override commissions

6   only if their own retail business center was "certified."

7       9.   At all times material hereto, IHI promotional and sales

8   materials indicated that investors could earn up to $2,200 to

9   $2,500 per retail business center weekly.  These projected

10  earnings were based on the recruitment of downline independent

11  sales representatives, rather than the sale of products on the

12  retail market.  Similarly, the compensation structure, which

13  included a compensation cap attached to single business center

14  earnings, encouraged the purchase of multiple business centers by

15  investors.

16      10.  Although commissions on the sale of products were

17  described in the promotional and sales material, the income from

18  the development of the retail sales organization was emphasized

19  as the significant source of income from involvement with IHI.

20  Similarly, IHI disproportionately emphasized retail sales

21  organization development through the promise of bonuses and

22  commissions which were not available to an independent sales

23  representative whose organization focused on retail product

24  sales.

25      11.  At all times material hereto, the IHI compensation

First Amended Cease and Desist Order                    Page 3

1  structure and sales pitch regarding "leveraging retail sales

2  business volume" served as incentive to develop the downline and

3  disincentive to generate retail sales business volume through the

4  sale of IHI products, thus perpetuating the pyramid scheme.  The

5  IHI sales kit contains a book co-authored by Van Etten which

6  emphasizes the importance of downline regeneration.  In addition

7  to emphasizing the importance of geometric growth in marketing

8  the IHI interests, IHI's training materials clearly discourage

9  independent sales representatives from developing the retail sale

10 portion of the representatives' businesses.   Van Etten's book

11 states:

12     There are two things that the successful network marketer
       must be very good at doing which are altogether foreign to
13     the traditional salesperson: (1) He must be an organization
       builder, and (2) He must be a teacher.  We will speak of
14     these two things at much greater length later in this
       chapter, but suffice it to say at this point that there is
15     nothing in the experience of the traditional salesperson
       that would cause him to assign any value to either of these
16     two skills which are so essential to the individual who
       wants to succeed in network marketing.  In fact, the
17     traditional salesperson's natural tendency would be to see
       both organization-building and teaching as irrelevant
18     obstacles to be swept out of the way of what he sees as the
       one all-important task of every salesperson - selling.
19                             ***
       Earlier in this chapter we said that there is a risk in
20     sponsoring persons who have considerable experience in
       direct sales.  This is a good place to explain why that is
21     the case.  An experienced salesperson might come into your
       downline and recruit like crazy.   But if he fails to teach
22     his recruits the importance of the company's multilevel
       sales structure and the necessity for "keeping it going,"
23     then he would fill your downline organization with dead-end
       roadblocks. (Emphasis in original).

24

25     12.  Though references to minimum retail sales requirements

regulations affecting a direct marketing sales company with operations in 48 states and 3 Canadian provinces.

Though the memorandum was written in March 1996, it was included in an IHI business retail business career kit sold to a Montana resident months later.

14.   Despite IHI's claims in sales presentations and materials that its program complies with state and federal laws that affect direct marketing organizations, IHI entered into agreements limiting IHI activities in the state of North Carolina on June 3, 1997, and in the state of Georgia on February 10, 1998, as a result of regulatory concerns in those states.   North Carolina regulators alleged that IHI violated North Carolina pyramid laws.   These actions were not disclosed to Montana residents offered or sold IHI business center interests.

15.   Between August 5, 1997, and October 31, 1997, IHI, through Van Etten, Savage, Smith, and others, raised $5 million by selling IHI notes convertible into IHI common stock, to approximately 95 persons in fourteen states, including at least 6 persons in Montana.

16.   On August 14, 1997, IHI filed a notice filing for an exemption on Form D, indicating it sold an aggregate of $295,00 of IHI units to six accredited Montana investors.   The application indicated that WIN Capital was the broker/dealer making offers and/or sales to Montana investors.

17.   In connection with the offer and sale of IHI notes, IHI

---

First Amended Cease and Desist Order                                Page 6

1  and inventory loading prohibitions are included in the

2  independent retail sales representative manual, IHI's

3  compensation program is based on orders of products, rather than

4  actual sales of products, and override commissions are promised

5  for orders made within the retail sales organization.

6  Furthermore, IHI's program structure does not provide a method by

7  which inventory loading requirements and requirements for retail

8  sales to non-participants are meaningfully enforced.  As of the

9  date of this order, a disproportionate amount of products ordered

10  from IHI through the use of the "retail business agreement" in

11  Montana have never been received by the purchasers of the

12  product.

13      13.  On or about March 28, 1996, IHI issued a memorandum

14  addressed to all IHI representatives which required that

15  representatives wishing to conduct due diligence on the company

16  should direct "all of [their] compliance, regulatory and legal

17  questions to the Compliance Department at the home office rather

18  than the Better Business Bureau or state regulators."  IHI

19  further stated that "[i]f enough inquiries are made to any one

20  particular regulatory branch, within a particular state, the

21  result could be an investigation of the Company spurned {sic} by

22  the mere volume of calls."  The memorandum further stated that:

23      The reason IHI is one of the only multilevel marketing
        companies with a Compliance Department is so representatives
24      will have a source for receiving answers to compliance,
        regulatory and legal questions and to assure that the
25      Company operates in compliance with the myriad of

First Amended Cease and Desist Order                    Page 5

1    authorized the use of a "term sheet," dated July 17, 1997, which
2    disclosed that IHI had losses of approximately $1.9 million
3    during the first four months of 1997.  The term sheet did not
4    disclose that by the time of the offering IHI's losses for the
5    year had increased to $7.6 million, and that IHI had a shortage
6    of operating funds.

7        18.   The term sheet states that IHI pays commissions and
8    bonuses "derived solely from sales as opposed to headhunting or
9    any similar activities," despite IHI's emphasis on compensation
10   opportunities based on recruitment and development of retail
11   sales organizations.

12       19.   The term sheet states that representatives "who sponsor
13   other representatives must fulfill supervisory activities,
14   including ongoing communication and managerial supervision with
15   the  IRSRs within their Retail Sales Organization in order to
16   qualify for ongoing commissions and bonuses," despite the absence
17   of enforcement efforts by IHI to ensure compliance.

18       20.   The term sheet represents that IHI has a "a prohibition
19   from presenting hypothetical earnings projections" in sales
20   presentations, despite IHI's standard use of projections that
21   each business center could earn up to $2,500 weekly.

22       21.   IHI represented to the Montana Securities Department
23   that the offering of IHI notes would be conducted by WIN Capital
24   Corp., a registered broker-dealer.

25       22.   The records of the Montana Securities Department

First Amended Cease and Desist Order                    Page 7

disclose that Respondents were not registered as broker-dealers or salesmen in this state prior to the date of this Order.

23.   The records of the Montana Securities Department disclose that the IHI business center program offered by Respondents was not registered as a security in this state prior to the date of this Order.

24.   In connection with the above offers of IHI business center interests to persons in Montana, Respondents failed to disclose the following material facts, which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.   the market for IHI business center interests will eventually become saturated as the supply of new members declines and representatives recruited near the bottom of the retail sales organization structure may be unable to generate promised returns;

b.   IHI was the subject of regulatory actions or inquiries in at least three other states based on the allegation that IHI's program violated state pyramid and securities laws;

c.   that Savage and Smith were previously involved in a pyramid scheme which was the subject of state and federal administrative and criminal proceedings, including the issuance of a permanent Cease and Desist Order in Montana;

d.   that IHI was not an authorized dealer for some of the

First Amended Cease and Desist Order                    Page 8

products listed in its retail sales catalogs and brochures; and,

e.    at all times material hereto, IHI's program was not registered as a security in the state of Montana.

25.    In connection with the above offers and sales of IHI notes convertible to IHI common stock to persons in Montana, Respondents failed to disclose the following material facts, which facts were necessary to disclose in order to make the statements made about the investment, in light of the circumstances under which they were made, not misleading:

a.    that IHI's losses for the year of 1997 had increased to $7.6 million from the $1.9 million listed in IHI offering circular;

b.    that IHI's compensation scheme is premised primarily on recruitment of new members;

c.    that IHI did not adequately monitor or enforce compliance with IHI policies and procedures by independent sales representatives; and,

d.    that IHI markets the business center program utilizing and emphasizing hypothetical earnings projections.

26.    In connection with the above offers of securities to persons in Montana, Respondents engaged in an act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in that:

a.    the IHI business center program constituted a pyramid scheme; and,

b.   IHI directed sales representatives not to contact state regulators in order to avoid investigations or inquiries into the IHI business center program.

27.   Respondent Van Etten, on behalf of IHI, falsely informed Montana agents and representatives of IHI on or about April 8, 1998, that the Commissioner had agreed to rescind or cancel the April 3, 1998, Cease and Desist Order and that IHI's Montana representatives and agents were no longer subject to that Order.

28.   Respondent Van Etten, on behalf of IHI, failed to disclose to Montana agents and representatives of IHI on or about April 9, 1998, the following material facts which facts were necessary to disclose in order to make the statements made not misleading in light of the circumstances under which they were made:

a.   that the Commissioner had not agreed to rescind or cancel the April 3, 1998, Cease and Desist Order;

b.   that IHI's Montana agents and representatives were still subject to the Commissioner's April 3, 1998, Cease and Desist Order.

29.   Respondent Van Etten, on behalf of IHI, falsely informed Montana agents and representatives of IHI on or about April 15, 1998, that "we've already solved the problem" of the April 3, 1998, Cease and Desist Order; that the April 3, 1998, Cease and Desist Order is "going away" and "we're off their radar

---

First Amended Cease and Desist Order                    Page 10

1   scope"; and that the Commissioner had erred in issuing the Order.

2   ## CONCLUSIONS OF LAW

3       1.   The Commissioner has jurisdiction over this matter by

4   reason of Respondents' offer and sale of securities to persons in

5   or from Montana.

6       2.   Respondents' program is a security within the meaning

7   of the Securities Act of Montana, § 30-10-103(22), MCA.

8       3.   Offer or offer to sell includes "every attempt or offer

9   to dispose of or solicitation of an offer to buy a security or

10  interest in a security for value." Section 30-10-103(15), MCA.

11      4.   In connection with the above offers of securities to

12  persons in Montana, Respondents violated § 30-10-201(1), MCA, by

13  transacting business as broker-dealers or salesmen in Montana

14  without registering as such.

15      5.   In connection with the above offers of securities to

16  persons in Montana, Respondents violated § 30-10-202, MCA, by

17  transacting business in unregistered securities.

18      6.   In connection with the above offers of securities to

19  persons in Montana, Respondents violated § 30-10-301(1)(b), MCA,

20  by failing to disclose the following material facts, which facts

21  were necessary to disclose in order to make the statements made

22  about the investment, in light of the circumstances under which

23  they were made, not misleading:

24      a.   the market for IHI business center interests will

25  eventually become saturated as the supply of new members declines

---

First Amended Cease and Desist Order              Page 11

1  and representatives recruited near the bottom of the retail sales

2  organization structure may be unable to generate promised

3  returns;

4      b.    IHI was the subject of regulatory actions or inquiries

5  in at least three other states based on the allegation that IHI's

6  program violated state pyramid and securities laws;

7      c.    that Savage and Smith were previously involved in a

8  pyramid scheme which was the subject of state and federal

9  administrative and criminal proceedings;

10     d.    that IHI was not an authorized dealer for some of the

11  products listed in its retail sales catalogs and brochures; and,

12     e.    at all times material hereto, IHI's program was not

13  registered as a security in the state of Montana.

14     7.    In connection with the above offers of securities to

15  persons in Montana, Respondents violated § 30-10-301(1)(b), MCA,

16  by failing to disclose the following material facts, which facts

17  were necessary to disclose in order to make the statements made

18  about the investment, in light of the circumstances under which

19  they were made, not misleading:

20     a.    that IHI's losses for the year of 1997 had increased to

21  $7.6 million from the $1.9 million listed in IHI offering

22  circular;

23     b.    that IHI's compensation scheme is premised primarily on

24  recruitment of new members;

25     c.    that IHI did not adequately monitor or enforce

---

First Amended Cease and Desist Order                    Page 12

1  compliance with IHI policies and procedures by independent sales

2  representatives; and,

3      d.   that IHI markets the business center program utilizing

4  and emphasizing hypothetical earnings projections.

5      8.   In connection with the above offers of securities to

6  persons in Montana, Respondents violated § 30-10-301(1)(c), MCA,

7  by engaging in an act, practice, or course of business which

8  operates or would operate as a fraud or deceit upon any person in

9  that:

10      a.   the IHI business center program constituted a pyramid

11  scheme; and,

12      b.   IHI directed sales representatives not to contact state

13  regulators in order to avoid investigations or inquiries into the

14  IHI business center program.

15      9.   In connection with the above offers of securities to

16  persons in Montana, Respondents Van Etten and IHI violated §30-

17  10-301(1), MCA, when they falsely informed Montana agents and

18  representatives of IHI on or about April 8, 1998, that the

19  Commissioner had agreed to rescind or cancel the April 3, 1998,

20  Cease and Desist Order and that they were no longer subject to

21  that Order.

22      10.   In connection with the above offers of securities to

23  persons in Montana, Respondents Van Etten and IHI violated §30-

24  10-301(1), MCA, when they falsely informed Montana agents and

25  representatives of IHI on or about April 15, 1998, that "we've

---

First Amended Cease and Desist Order          Page 13

1  already solved the problem" of the April 3, 1998, Cease and

2  Desist Order; that the April 3, 1998, Cease and Desist Order is

3  "going away" and "we're off their radar scope"; and that the

4  Commissioner had erred in issuing the Order.

5      11.   Respondent Van Etten and IHI violated §30-10-302, MCA,

6  when they failed to disclose to Montana agents and

7  representatives of IHI on or about April 9, 1998, the following

8  material facts which facts were necessary to disclose in order to

9  make the statements made not misleading in light of the

10  circumstances under which they were made:

11      a.   that the Commissioner had not agreed to rescind or

12  cancel the April 3, 1998, Cease and Desist Order;

13      b.   that IHI's Montana agents and representatives were still

14  subject to the Commissioner's April 3, 1998, Cease and Desist

15  Order.

16      12.   Respondents Van Etten and IHI violated §30-10-302, MCA,

17  when they knowingly made a materially false or misleading

18  statement by informing Montana agents and representatives of IHI

19  on or about April 8, 1998, that the Commissioner had agreed to

20  rescind or cancel the April 3, 1998, Cease and Desist Order and

21  that they were no longer subject to that Order.

22      13.   Respondents Van Etten and IHI violated §30-10-302, MCA,

23  when they knowingly made a materially false or misleading

24  statement by informing Montana agents and representatives of IHI

25  on or about April 15, 1998, that "we've already solved the

---

First Amended Cease and Desist Order                    Page 14

1   problem" of the April 3, 1998, Cease and Desist Order; that the

2   April 3, 1998, Cease and Desist Order is "going away" and "we're

3   off their radar scope"; and that the Commissioner had erred in

4   issuing the Order.

## ORDER

6      Respondents are hereby ordered to cease and desist issuing,

7   offering, and selling securities to persons in this state in

8   violation of the Securities Act of Montana.  Respondents Van

9   Etten and IHI are also hereby ordered to cease and desist

10  knowingly making any materially false or misleading statement

11  regarding the April 3, 1998, Cease and Desist Order, the effect

12  of that Order, or the status of that Order.

13     The above-cited violations are sufficient grounds for the

14  imposition of an administrative fine not to exceed $5,000.00 per

15  violation upon any person found to have engaged in any act or

16  practice constituting a violation of any provision of the

17  Securities Act of Montana or any rule or order promulgated

18  thereunder.  Section 30-10-305, MCA.  The above-cited violations

19  are sufficient grounds for the imposition of an order requiring

20  the payment of restitution and other costs to investors.  Section

21  30-10-309, MCA.  Staff is recommending that the Commissioner

22  impose total fines of $250,000 and order Respondents Van Etten,

23  IHI, IHI-N, Savage, and Smith to make restitution for all

24  financial losses sustained by Montana residents as a result of

25  Respondents' violations of the Montana Securities Act.

First Amended Cease and Desist Order                    Page 15

1       <u>Section 30-10-306(1), MCA, provides that any willful</u>

2 <u>violation of this order, upon conviction, may be punished by</u>

3 <u>imprisonment for not more than ten (10) years and/or a fine not</u>

4 <u>exceeding five thousand dollars ($5,000).</u>

5                          <u>NOTICE</u>

6     Respondents are notified that this Order has been issued by

7 the Commissioner.  If Respondents wish to contest the allegations

8 herein, they shall make a written request for a hearing to

9 Elizabeth A. O'Halloran of this office within fifteen (15) days

10 of receipt of this Order.  The hearing shall then be held within

11 thirty (30) days of the Commissioner's receipt of the hearing

12 request unless the time is extended by agreement of the parties.

13 If no hearing is requested within fifteen (15) days of receipt of

14 this order by Respondents, and none is ordered by the

15 Commissioner, this Order shall become permanent.

16     Should you request a hearing, you have the right to be

17 accompanied, represented, and advised by counsel.  If the counsel

18 you choose has not been admitted to practice law in the State of

19 Montana, he or she must comply with the requirements of

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

---

First Amended Cease and Desist Order               Page 16

1  Application of American Smelting and Refining, Co., (1973), 164

2  Mont. 139, 520 P.2d 103.

3

4       DATED this 20th day of April, 1998.

5

6

7                                   Mark O'Keefe
                                    State Auditor and
8                                   Commissioner of Securities

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

First Amended Cease and Desist Order                        Page 17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I hand-delivered a true and correct copy of the foregoing Cease and Desist Order to the following persons by depositing the same in the U.S. Mail - certified - return receipt requested - on this ___20___ day of ___April___, 1998.

Dennis Loveless, Esq.
320 E.  6th Ave.
Helena, MT 59601

_Darla Sautter_
State Auditor's Office

First Amended Cease and Desist Order                    Page 18

**U.S. Bankruptcy Court for the Eastern District of North Carolina**
CLERK, U.S. BANKRUPTCY COURT
POST OFFICE BOX 1441
RALEIGH, N.C. 27602-1441

In Re a *Petition for Relief under Chapter 7 of Title 11, U.S. Code*, filed by or against the below-named Debtor on November 25, 1998:
DEBTOR: INTERNATIONAL HERITAGE, INC. of C/O MAYFLOWER CAPITAL, LLC, 2626 GLENWOOD AVENUE, SUITE 100, RALEIGH, NC 27608; SSN: N/A, EIN: 56-1921093
CASE NO. **98-02675-5-ATS**

---

**ORDER AND NOTICE
BY THE COURT**

---

CERTIFICATE OF MAILING

I am a regularly appointed and qualified deputy clerk in the office of the clerk, in and for said court and district, and I hereby certify that a copy of the attached document was mailed in a postage prepaid envelope addressed to the following at their respective addresses, by placing said envelope in the regular mail in Raleigh, NC, on this date.

DATED:   **14 JUN 2000**

_Annie Noell_
DEPUTY CLERK

INTERNATIONAL HERITAGE, INC.
C/O MAYFLOWER CAPITAL, LLC
RALEIGH, NC 27608

'

Terri L. Gardner
PO Drawer 1389
Raleigh, NC 27602

Holmes P. Harden
P.O. Box 17169
Raleigh, NC 27619

Brent E. Wood
Post Office Box 164
Raleigh, NC  27602