UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

**F I L E D**

2 5 JUL 2000

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C

*IN RE:*    *INTERNATIONAL HERITAGE, INC.*
            *INTERNATIONAL HERITAGE, INCORPORATED*

*CASE NO.  99-02675-5-ATS*
           *99-02674-5-ATS*

TRANSCRIPT OF PROCEEDINGS

TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE AND
SETTLEMENT

MAY 31, 2000

RALEIGH, NORTH CAROLINA

BEFORE THE HONORABLE A. THOMAS SMALL
UNITED STATES BANKRUPTCY JUDGE

**APPEARANCES**

Trustee:  *Holmes P. Harden*

Attorney for Larry Smith, Stanley Van Etten, and
Wood & Francis:  *Brent Wood*

Attorneys for Stanley Van Etten:  *Wade Smith, Melissa Hill*

Attorneys for Georgina Mollick:  *Joseph B. Cheshire, V*

Attorney for Claude Savage:  *John P. O'Hale*

Attorney for John David Brothers and Dee Anne Brothers:
*Stephen T. Smith*

Courtroom Deputy:  *Christine A. Castelloe*

**Transcribed by:**    *Jane Clapp*
                       *3222 Springs Farm Lane*
                       *Charlotte, NC 28226*
                       *(704) 752-5882*

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1   (CALL TO ORDER)

2         THE COURT:  Mr. Harden?

3         MR. HARDEN:  Thank you, Your Honor.  I've given you

4   all of my cases.  I need one back. I want to give one to the

5   judge.  Judge, I'm handing up the *Weintraub* case.  It's a

6   Supreme Court case you may already be aware of.  It's my

7   opinion—of course, this is my motion to waive the

8   attorney/client and work product privileges in favor of the

9   U.S. Attorney--it's my opinion pursuant to the *Weintraub* case

10  that there's no question that the estate, the trustee, has

11  the authority to waive the attorney/client privilege.

12        As far as the work product privilege is concerned, I

13  think that's probably a dual privilege that's shared by the

14  client and his attorney, and what I want the Court to do

15  today, Judge, is to allow me to waive that to the extent I

16  possibly can.  I don't think that I can possibly waive say

17  Mr. Wood's objections to producing his internal memoranda or

18  legal opinions or ideas that he would call his own work

19  product; but to the extent that the estate or the debtor

20  prior to the bankruptcy produced any trial preparation sorts

21  of documents, I think it would be my privilege to waive the

22  right to receive access to those, and I would like the Court

23  to do that.

24        I did not know whether this proposal needed to be

25  noticed out under 9019, so I thought it was the better part

3

1    of valor to go ahead and do that, particularly assuming there

2    will be shareholders in this corporation who would not want

3    the attorney/client privilege waived—shareholders, officers,

4    and directors.

5          And my duty is to the estate obviously.  I have a

6    dual obligation to the shareholders and to the creditors, and

7    what I'd like the Court to find today is that the creditors

8    in this case should have the higher consideration and

9    priority in that obligation because this, pursuant to the

10   *Weintraub* case in particular, is I think the best thing for

11   the creditors.

12         It's my obligation obviously to make the estate

13   grow, and my reasoning is that the U.S. Attorney is going to

14   provide two things.  He will agree not to pursue any

15   forfeitures, fines, or penalties, and he will agree that any

16   restitution that may be paid if there are prosecutions and

17   convictions, that any restitution that may be paid, that he

18   would do his best to see that that money came back to the

19   estate to be paid to creditors similar to the arrangement

20   that we made with the SEC with the bond money there, and

21   frankly, I learned recently that there is a great deal of

22   information I haven't even seen, some 3½ inch thick stack of

23   privileged documents—lists, single space—of privileged

24   documents.  That may be wrong—Mr. Wood can correct me—but

25   there may be thousands of documents that I have not seen as

4

1   trustee, and I think it would be—it's my obligation to see

2   what's in those documents.  There may be information in those

3   documents that would lead me to causes of action against

4   other insiders that I don't know about right now, and this

5   would add another level of scrutiny to the case that hasn't

6   been available to me at this point.

7           If we don't do this deal, I think the U.S. Attorney

8   is going to do one of two things, or both.  He's going to go

9   over to the District Court and argue the crime fraud

10  exception to the waiver of the attorney/client privilege, or

11  to the attorney/client privilege in lieu of the waiver, and

12  I'm going to get dragged into that at the estate's expense.

13  There will not be a deal pursuant to that.  You know, if it

14  succeeds with the District Court, the estate will not benefit

15  whatsoever, and you might as well argue that we already

16  waived the privilege when we did the settlement with the SEC.

17  As you recall, one of the terms that they insisted upon was

18  that the trustee waive the attorney/client privilege, and in

19  this circuit, a waiver for one purpose is a waiver for

20  everything else.  So, you know, if that waiver for that

21  litigation was a valid waiver—it may or may not have been,

22  Your Honor—I don't know whether the SEC got hold of any

23  confidential information, but we did agree to provide that to

24  them.  It occurred at the end of that case.  And I can't tell

25  you whether in the litigation that sort of petered out at the

5

1   end, any confidential attorney/client information was

2   conveyed to the SEC, but we did agree to do that.

3        Again, if that argument prevails, there won't be any

4   benefit to the estate whatsoever.  I want to put the

5   creditors in a position to benefit.  I don't know whether

6   they would benefit monetarily from restitution or not.  There

7   may not be any prosecutions.  There may not be any

8   convictions.  But I don't see any downside, no compelling

9   reason, for me not to waive the privilege as has been

10  proposed.

11       The only negative that I can think of is that we

12  still have litigation ongoing with TIG Insurance Company, but

13  I've spoken to—and that could obviously create a waiver in

14  that case as well—I've spoken to Mr. Roberts.  I believe Mr.

15  Roberts is handling that matter for the estate, and we have

16  decided that whatever marginal advantage that might give to

17  TIG is not worth passing on this proposal from the U.S.

18  Attorney.  There may be some marginal benefit, but we just

19  don't think it's something that ought to derail the proposal

20  that's on the table.

21       And that's all I have to say at this point, Your

22  Honor.  I'd like to respond to the other attorneys.

23       THE COURT:  Okay.  Mr. Wood?

24       MR. WOOD:  Thank you, Your Honor.  As the clerk

25  indicated, I'm here in three capacities, obviously on behalf

6

1   of Mr. Van Etten, whom I have represented throughout this

2   matter; I'm here on a limited appearance on behalf of Mr.

3   Smith, who I had represented in some other bankruptcy

4   proceedings and he asked me to object on his behalf as to

5   this issue as an officer and director; and I'm here on behalf

6   of my firm.

7          And as Mr. Harden has correctly pointed out, there

8   are some related privileges that my firm has, and also, quite

9   frankly, Your Honor, my firm has duties to a lot of people as

10  a result of our representation, and frankly, I did not want

11  to run afoul of any state bar ethical issues by not letting

12  the Court know that by waiving the privilege, it creates—

13  places my firm and a lot of other law firms in the cross-

14  hairs of not necessarily liability but disputes between

15  obligations to different parties, and I think that will

16  become clear to the Court.

17         With me today are Wade Smith and Melissa Hill of the

18  firm Barrington Smith, and they represent Mr. Van Etten only.

19  I probably misled the clerk a little bit on that, but I

20  wanted to make sure I clarified that.  And Mr. Smith will be

21  making arguments, with the Court's permission, as well on

22  behalf of Mr. Van Etten after I conclude my comments.

23         We do, Your Honor—or we are here to vehemently

24  oppose the trustee's attempt to waive the privilege.  We

25  believe it's unnecessary.  This is a constitutionally

7

1    protected right which we do not believe, under the

2    circumstances that the trustee has presented, should be

3    waived.  I have handed to the clerk copies of a brief that my

4    firm has prepared in support of our position, and I will

5    reiterate some of the points that I've made in my brief and

6    ask the Court to consider both my oral and my written

7    arguments in this regard.

8           First, Your Honor, the trustee has failed to point

9    out to the Court—may not have been aware, and I do want to

10   give him the benefit of the doubt—the fact that this

11   corporation in its bylaws had an indemnification provision.

12   The key provision is set forth within my brief, and it

13   clearly indemnifies the officers and directors in this

14   situation.  While maybe not an indemnification from criminal

15   fines as a result of statutory authority that might prevent

16   that, in fact, Your Honor, it would provide them legal fees

17   in this situation.

18          Thus, what the trustee is ignoring is the fact that

19   these individuals, not just Mr. Van Etten, may have a claim

20   that would arise as a result of the trustee waiving the

21   privilege here.  They probably have a claim as of right now.

22   Similarly, Your Honor, Mr. Van Etten entered into an

23   employment agreement that had a similar indemnification

24   provision.  Again, it is set forth in my brief, so I will not

25   reiterate that.

8

1          Factually, Your Honor, I believe it's extremely
2     important for me to reiterate what the Court may already
3     know.   International Heritage was a multi-level marketing
4     company.   Multi-level marketing companies survive in a
5     complex legal environment.   They are scrutinized by a variety
6     of different state and federal regulatory agencies.   The
7     Court is well aware of the actions by the Montana State
8     Auditor's Office on securities issues, the Securities and
9     Exchange Commission on complicated securities issues under
10    our federal securities laws.   The Court may even be familiar
11    with the North Carolina Attorney General's Office, claims
12    that were made—that has come up, I believe, in proceedings
13    here before.   In that action that was not under a securities
14    statute; that was under North Carolina's pyramid statute.   In
15    different states there's lottery statutes, there's pyramid
16    statutes, there's securities statutes.

17          The Federal Drug Administration will regulate a lot
18    of multi-level marketing companies that are selling
19    nutritional products; the Federal Trade Commission regulates
20    unfair and deceptive trade practices federally; and then in
21    most states you have unfair and deceptive trade practice
22    statutes that are similar but not always identical.

23          The pyramid statutes are not the same in different
24    states.   They vary greatly as far as what needs to be done in
25    order for a company to be compliant with those laws, and many

9

1   multi-level marketing companies can make matters more legally

2   complex for them to operate nationwide.  They are not just

3   operating in a single environment.

4        My point here, Your Honor, is that multi-level

5   marketing companies necessarily, because of the complexities

6   of what they're doing, if they wish to comply with the law,

7   need legal assistance.  International Heritage from the very

8   beginning sought and obtained legal assistance.  Locally,

9   Your Honor, they sought legal assistance from Georgina

10  Mollick with Ragsdale Liggett & Foley at that time; Dan Bell

11  with Wyrick Robbin Yates & Ponton (phonetic), and then they

12  also retained the services of a lawyer who is an expert in

13  multi-level marketing, a gentlemen by the name of Jeff Badner

14  out of Oregon.

15       Later in the history of International Heritage,

16  after the Attorney General's Office made claims or

17  allegations against the company in or around March or April

18  of 1997, additional attorneys became involved with the

19  company.  At that time, I became more involved, my firm, Wood

20  & Francis, with the company in trying to assist them in the

21  regulatory environment with which they were involved.  In

22  addition, they retained the services of Smith Anderson Blunt

23  Dorsett Mitchell here locally to also assist them.

24       Now, at that time, Your Honor, the Attorney

25  General's claims were not only made against the company but

10

1    they were made against Mr. Van Etten; they were made against

2    Mr. Savage and Mr. Smith.  Myself, along with Smith Anderson

3    Blunt Dorsett & Mitchell, as well as the other lawyers, were

4    at that time providing legal advance, not only to the company

5    but also to other individuals, including Mr. Van Etten, Mr.

6    Smith, and Mr. Savage.  Everyone consented to that, in part

7    because of the indemnification provisions in the bylaws and

8    the indemnification provision in the employment agreement.

9         After the Attorney General's Office initiated its

10   allegations against the company and that matter became

11   resolved, or about the time it became resolved, the

12   Securities and Exchange Commission, as the Court may be

13   aware, initiated an investigation.  That investigation

14   started around the middle of 1997, and they were not just, as

15   the facts beared out to be, investigating International

16   Heritage; they were in fact investigating activities of

17   individuals, including Mr. Van Etten, Mr. Savage, and Mr.

18   Smith, and then by March of 1998, the SEC initiated their

19   litigation.

20        Now, when the SEC litigation was initiated, the

21   company and the individuals determined that it was necessary

22   to retain additional counsel, experts in securities law, and

23   they did retain the firm of Hutech Rock (phonetic) out of

24   Atlanta, Georgia.  Ultimately, when the SEC initiated its

25   litigation, Hutech Rock and myself entered appearances in

11

1  Atlanta on behalf of not only both of the corporate entities—

2  if the Court will recall, it was at this same time, March of

3  1998, that International Heritage merged with Kara, Inc., and

4  became International Heritage, Incorporated—but there were

5  appearances made in those proceedings in Atlanta by myself

6  and by Hutech Rock on behalf of the individuals and the

7  corporate entities.  Thus, they were being represented—were

8  not only representing the corporation; they were representing

9  individuals.

10         Thereafter, again as the Court is well aware, a

11  number of civil actions were initiated.  There were civil

12  actions:  two in Texas, two in Alabama, two in North

13  Carolina, and an administrative proceeding in Montana.

14  Additional lawyers had to be retained, if for no other

15  purpose but to try to coordinate these actions.  They were of

16  great magnitude, purported to be class actions, and the

17  company and the individuals retained the services of joint

18  counsel, counsel out of Washington D. C., Deckard Price and

19  Rhodes; out of Alabama, Sercdi and Permett; out of Texas,

20  Guardier and Wynne (phonetic spellings).

21         My point being, Your Honor, is that this is—and I'll

22  get to this more—this is very different than *Weintraub,* where

23  you have a true intermingling, because of the complexities of

24  what a multi-level marketing company does.  You have lawyers

25  representing not only the company, the corporate debtor

12

1   entity, but also the individuals, and it was reasonable to do

2   it at that time, Your Honor.  The companies are trying to

3   operate in a way that would maximize money for their

4   shareholders, which is their duty.

5          I would agree with Mr. Harden that the *Weintraub*

6   case is a case that we must look at, and we have addressed

7   that case, Your Honor, in our brief, and I will address it

8   again.  We would contend that *Weintraub* is distinguishable.

9   *Weintraub* deals with an administrative issue.  It's not a

10  criminal issue.  We're not dealing with a criminal

11  investigation in *Weintraub* like we're dealing with here.

12  This is much more complex.  In *Weintraub*, the attorney, Mr.

13  Weintraub, was asked to answer 23 questions, if I recall

14  correctly, in a deposition, and that is what became the

15  subject of the case itself that went to the Supreme Court.

16         As Mr. Harden correctly pointed out, it does not

17  deal with the work product privilege.  It deals solely with

18  the attorney/client privilege.  And I would point the Court's

19  attention very much so to what I believe is a final footnote

20  in *Weintraub*, which we address in our brief, and in that

21  footnote the Court points out the fact that they are not

22  dealing with the fiduciary duty that the trustee may have to

23  shareholders and to others.

24         Now, in this situation, Your Honor, the company

25  entered into an agreement with the bylaws and with the

13

1   employment agreement and said, "We will work together.  We

2   will indemnify you in this situation.  For everything that

3   you do when you're acting in your corporate capacities, we

4   will protect you."  And now Mr. Harden is willing to just

5   drop that under the rug and forget about it, and we would

6   claim—we would argue, Your Honor, that that's not

7   appropriate.  That is breaching a contract, a fiduciary duty,

8   we would argue, to these individuals and thus should not be

9   under these circumstances waived or forgotten.

10          We would also argue, Your Honor—and Mr. Smith is

11  going to address this much more than I will—that it's not in

12  the best interest of the debtor's estate for this Court to

13  approve this agreement.  Mr. Harden has come to you today.  I

14  understand his position about whether or not he needed to

15  come or not, but he has come here, and he's said, "I want you

16  to approve this settlement agreement," and he's presented

17  this settlement agreement.  And I would encourage, I would

18  beg the Court, to look at that agreement because as Mr. Smith

19  will point out to you and as we've argued in our brief, Your

20  Honor, that agreement, with all due respect, doesn't hold

21  water.  The U.S. Attorney's office is not offering anything

22  of substance to the debtor's estates.  If Mr. Harden wants to

23  come in here and tell you, "I want you to approve this

24  settlement agreement," I would argue that the Court needs to

25  look at what that agreement is.  There's not a written

14

1   agreement attached.  It's a representation by the trustee,

2   and certainly Mr. Harden is of good character and he wouldn't

3   present anything that's incorrect, but there's not anything

4   in writing.  The settlement agreements, while I have limited

5   agreement in here, all of the ones that I've seen, even the

6   Montana one that the trustee has just presented to the Court

7   for approval by motion, there is a written agreement.  There

8   is a clear agreement about what the Court will be approving.

9   That is not the case here.

10          I will point out again that the work product

11  privilege is not addressed in *Weintraub*, and that makes it

12  very distinguishable, and as a result, the Court will have to

13  look at the work product privilege outside of the *Weintraub*

14  decision, we would contend.

15          Furthermore, Your Honor, and because of the

16  complexities of this, as I've already stated factually, the

17  waiver of the privilege would compromise the individual

18  privileges that a number of people, not just Mr. Smith and

19  Mr. Savage and Mr. Van Etten, whose names I've mentioned

20  specifically have, but other officers and directors who had

21  legitimate reason to ask about liabilities that they may have

22  in the situations with which this company was faced.  And

23  that is, we would contend, extremely distinguishable.  It

24  drags in additional—it's distinguishable from *Weintraub*—and

25  it drags in complex constitutional issues, the ability to

1   protect the right for someone to speak frankly with their

2   lawyer.

3        Under the cases, Your Honor—and actually I will

4   point out to Your Honor—we have looked at the *Weintraub* case

5   and all of its progeny that we can locate, and we cannot find

6   a case that really fits into this situation where you're

7   dealing with a complex criminal investigation.  So again,

8   that would be another distinguishing factor.

9        As Mr. Harden pointed out, there is a possibility

10  that the U.S. Attorney's office may be presenting these same

11  issues to the District Court.  We would contend that that is

12  where this is best presented.  If the U.S. Attorney is going

13  to continue to investigate and potentially prosecute or

14  attempt to prosecute individuals and/or the corporations,

15  then these issues, very important constitutional issues,

16  should be before the District Court rather than trying to

17  force this Court to conduct potentially an *in camera* review

18  of the multitude of documents that are involved.

19       I will now address the issue about the number of

20  documents involved.  Mr. Van Etten, directly or indirectly

21  pursuant to subpoenas delivered to him or to others, has

22  produced approximately 175,000 pages of documents that were

23  in, with all due frankness, essentially in my possession.

24  They're in my possession largely because I was the attorney

25  working on these matters, and the other documents that he had

16

1  relating to International Heritage were turned over to the

2  U.S. trustee after the petitions were filed.  Those 175,000

3  pages, or whatever the number is, we would contend are not

4  privileged documents.  There are another 30,000 that are

5  either attorney/client privilege or work product privilege.

6      Mr. Harden may not recall, but I have told Mr.

7  Harden since the beginning of this case that I had documents

8  in my possession that might in part arguably belong to

9  International Heritage and I would be glad to do whatever he

10  wanted, and I always understood that he wanted me to keep

11  those.  I believe Ms. Gardner would back me up on those

12  representations to Mr. Harden, and it may be that she is the

13  one who told him that rather than me, but I feel extremely

14  confident saying it was presented—was told—to Mr. Harden.

15      It is from the privileged documents that we produced

16  pursuant to the subpoenas a list describing—and it is a long

17  list that describes these documents—in accordance with the

18  request of the U.S. Attorney's Office.  Again, the purpose of

19  not producing these documents is not because anybody believes

20  they're liable or they're going to lead to some smoking gun,

21  but the privilege is important to everyone, and that's why

22  we're here today, that Mr. Harden correctly realized that

23  it's important to a lot of different people, and he put it

24  before the Court.

25      So, Your Honor, for the reasons that I've stated and

17

1   for the reasons that the other fine lawyers who are here

2   today will tell you, we believe it's inappropriate for the

3   Court to approve this request by the trustee.  It's

4   distinguishable from *Weintraub*, it is a unique situation, and

5   the Court should deny the request, or, at the very least,

6   defer some ruling until something occurs over in Federal

7   District Court.  We believe without a written agreement

8   submitted to the Court, that it would be inappropriate for

9   this Court to approve it, so there is a basis without ever

10  addressing the attorney/client privilege of the *Weintraub*

11  case to deny this motion.

12      So, based upon those points, Your Honor, I would

13  respectfully request that you deny the request of the

14  trustee.  Thank you.

15      THE COURT:  All right.  Mr. Smith?

16      MR. SMITH:  Thank you very much.  Your Honor, we

17  appreciate very much the opportunity to be heard on this

18  very, very important matter, and I will not unduly trespass

19  upon the Court's time.  I would like to make two points, and

20  Melissa Hill and I, as you now know, are appearing on behalf

21  of Mr. Van Etten, Mr. Steve Smith, Mr. Jack O'Hale, and Mr.

22  Joseph Cheshire, here representing other people, but there's

23  an agreement that I will make these remarks on behalf of all

24  of us, so I make these brief remarks, Your Honor, for

25  everyone.

18

1          Your Honor, we are, as you know, dealing with a
2   very, very important constitutional right, and a very
3   important piece of the liberty package, not to be dramatic
4   about it, but we believe that this is a very crucial piece of
5   the package of liberties that we have as Americans; and, of
6   course, as Your Honor knows, the Supreme Court has dealt with
7   this matter fairly frequently, and the most recent, as I
8   recall, is in 1998 in the case in which Vincent Foster, just
9   shortly before he died, spoke with his lawyer.  His lawyer
10  took notes.  The office of the special prosecutor, special
11  counsel, initiated a proceeding to get those notes on the
12  ground that the attorney/client privilege should not survive
13  death, the issue being that if the client dies, the privilege
14  ought to die.  And Mr. Justice Rehnquist, speaking for a
15  majority in the United States Supreme Court, held that indeed
16  the attorney/client privilege is one of the most important
17  freedoms we cherish, and that it does in fact survive the
18  death of the client.  So the attorney/client privilege was
19  once again reaffirmed in that important decision.
20          We have read *Weintraub*.  We respect the decision in
21  *Weintraub*, and we respect the position of Mr. Harden.  We
22  know he is excellent counsel and doing what he believes is
23  right, but we do not believe, Your Honor, that you should
24  permit this waiver.  We think that this case does
25  significantly differ from *Weintraub*.

19

1    We don't know—I don't know—how many pages, documents

2    that Mr. Harden's talking about.  I'm told that it could be

3    many thousands, maybe 30,000 pages.  I don't know.  I don't

4    know whether anyone has reviewed those pages carefully.

5    That's not before Your Honor.  It's not on the record.  We

6    know that in those 30,000 or so pages there may be letters

7    written by lawyers to individuals, not just to a corporation

8    but to individuals.  Those letters may have been written

9    involving very important and crucial issues.  They were

10   written by lawyers who believed when they wrote them that

11   they would never be public documents.  They would include the

12   mental impressions of lawyers perhaps.  We don't know.  But

13   we would assume that there must be letters in there.  There

14   may be copies of letters from individuals back to their

15   lawyers, but those individuals would never dream that those

16   would be public.  We would have to assume that there may be

17   in that 30,000 or so documents drafts of pleadings, of

18   memoranda, mental impressions, opinions as to law, letters

19   containing legal advice.  So we know that there may be within

20   those pages two kinds of privileges, attorney/client

21   privileges and work product privileges.

22   And if we had all those documents in front of us and

23   could look at them and we made a pie chart, we would say,

24   well, there must be a slice of that pie that would be

25   attorney work product; there would be a slice of that pie in

20

1   which there would be individual attorney/client privilege

2   documents; there would be documents that attorneys could

3   assert a privilege because those would be work product; and

4   there may be corporate attorney/client privilege documents.

5          So what we could say, Your Honor, without

6   embellishing this and without trying to use flowery language,

7   is that this is literally a hotbed of privilege issues, and

8   in that way differs significantly from *Weintraub*, a hotbed, a

9   veritable hotbed, a prickly bed of privilege issues involving

10  very important constitutional rights.

11         And Your Honor, we know that there's an excellent

12  United States Attorney assigned to this case, very, very

13  able.  We know that he is working this case hard.  There is a

14  federal grand jury convening.  This United States Attorney is

15  absolutely capable of dealing with all these privilege issues

16  before sitting United States District Court Judges, who are

17  overseeing federal grand juries, who customarily every day

18  deal with criminal matters and who are there waiting to sort

19  out the prickly issues if they need to be sorted out.

20  And so, Your Honor, we respectfully ask, for those reasons,

21  that the Court not allow the waiver in this case.

22         So, our point number one is this.  This case is

23  entirely different.  This case involves very, very

24  significant and extraordinarily prickly issues that would

25  require separating documents out, looking at documents to see

21

1   which is which and what is what.

2        I'll make one additional point, Your Honor, and it's
3   brief, and then I'll sit down.

4        With all due respect to the United States Attorney,
5   who is, we submit, offering Mr. Harden everything that he
6   can, everything that he has the power to offer—he doesn't
7   have the power to offer any other things.  The truth of the
8   matter is that what he's offering cannot under the law be
9   very much at all.

10        Looking at Mr. Harden's Motion for Proof of
11   Compromise and Settlement, he says first that the Assistant
12   United States Attorney will agree not to recommend or seek
13   the imposition of any criminal penalties.  Well, Your Honor,
14   criminal penalties arise out of *Rico* actions, they are
15   mandatory with the United States District Court Judge, and we
16   would submit that, again with all due respect to the United
17   States Attorney, these decisions would be made by the
18   District Court Judge who would be sitting in this case,
19   standing before him being the convicted defendants, and what
20   he would do is by statute mandatory, and there's nothing, we
21   submit, that the United States Attorney can do for Mr. Harden
22   there.

23        The next thing the Motion for Approval of Compromise
24   and Settlement says is that the Assistant United States
25   Attorney will agree not to recommend or seek the imposition

22

1    of fines.  Well, in this instance there is some discretion on

2    the part of the United States District Court Judge, but the

3    judge would make the decision about fines based on very

4    strict rules set forth by statute relating to the ability of

5    the convicted defendant to pay and so on.  And we submit that

6    the U.S. District Court Judge would make decisions on those

7    fines based on the guidelines set forth in the statute.

8          Thirdly, the Assistant United States Attorney

9    promises not to recommend or seek imposition of any

10   forfeitures.  But Your Honor, forfeitures again are strictly

11   limited by the statutes and are mandatory, and we submit

12   there's nothing the Assistant United States Attorney can do

13   to help Mr. Harden in the situation with forfeitures.

14         Now, further, the United States Attorney says that

15   he or she would use best efforts to ensure that any

16   restitution imposed in any criminal proceedings against any

17   individuals or entities or affiliated or otherwise associated

18   with one or both debtors would be distributed to the

19   creditors.

20         If Your Honor pleases, we submit that in looking at

21   restitution, United States District Court Judges provide

22   restitution to victims, and in this case the creditors, if

23   there were a conviction, would be the victims.  And that

24   means that the judge would be providing restitution for the

25   creditors anyway.

23

1      So what we say is that Mr. Harden is not getting

2   anything for trading these valuable constitutional rights.

3   It is true that he's getting what the prosecutor has to

4   offer, but the prosecutor doesn't have anything to offer of

5   great significance.  It is not a robust offer.  It is a

6   little dainty tea cake of an offer.  And a little dainty tea

7   cake of an offer should not be enough to cause the trustee to

8   waive the substantial rights of the people involved in this

9   case.

10      Thank you very much, Your Honor.

11      THE COURT:  Okay.  Anyone else?  Mr. Cheshire, Mr.

12   Smith?  Okay.  Mr. Harden?

13      MR. HARDEN:  I was not aware that the corporate

14   bylaws had an indemnification provision.  I do know that Mr.

15   Van Etten's contract as executor has obviously been rejected

16   by the trustee simply because it wasn't assumed within the 60

17   days required, and I would also remind the Court that Mr. Van

18   Etten waived his claims against the estate when we settled

19   the SEC litigation in that global settlement.

20      Let me make it clear.  I'm not proposing to waive

21   anybody's personal attorney/client privileges, and I'm not

22   proposing to waive Mr. Wood's attorney work product

23   privilege, because I don't think I can.  But as Mr. Smith

24   pointed out, there are capable District Court Judges who

25   could take all these documents *in camera* and look at them and

24

1   tell the U.S. Attorney what will be admissible and what

2   won't, and I don't think we're talking about a hotbed of

3   prickly issues in that regard.  I mean they're going to get

4   plenty of scrutiny by the District Court.  It won't be your

5   job.  All I want you to do is make it possible for me to

6   waive the privilege and have that inspection take place in

7   that court.

8          I mean I don't have a written, specific, detailed

9   written letter from Mr. Wilkinson.  I do have a letter from

10  Mr. Wilkinson, which I understood was the extent to which he

11  could memorialize our agreement.  I probably should have

12  brought that today, but I didn't.  It's similar to what is

13  contained in the motions.  It's very simple.  It does not

14  embellish much, if at all, what I've noticed out to

15  creditors, but I'm sure that if the Court enters an order

16  approving this settlement, if you find other parameters

17  necessary, you can put those in the order, and that that

18  would suffice very satisfactorily.

19         I did know that there were documents in Mr. Wood's

20  possession, but I understood that Mr. Wood was reserving

21  those documents and had no intention whatsoever of turning

22  those over to me, and if for no other reason, Your Honor, you

23  know, we need to waive the privilege so I can see the

24  documents.  I want to see those documents.  I don't know how

25  I'm going to get them if Mr. Wood is telling me that

25

1 everything is privileged and that's why he took it to his
2 office. You know, I need some authority to get into those
3 documents, and this is as good a time and place as any. I
4 believe it's my duty to the creditors to inspect all of that
5 and see if there's anything there that needs to be brought
6 up.

7 The deal is obviously the best that the U.S.
8 Attorney can offer. I believe, Your Honor, that the—and Mr.
9 Smith is exactly right. This has occurred to me a thousand
10 times. If there were crimes, then the creditors in this case
11 were the victims, and I think that it is their right to
12 collect any restitution that might be payable. It's my
13 understanding that the restitution is not—that fines, you
14 know, fines, for example, would have to be paid, or that
15 there may be rigid statutory requirements about how money is
16 spent, but I understood from Mr. Wilkinson that there was
17 discretion of the court, in the District Court, and that he
18 would do his best to help us formulate a way, since we have
19 this bankruptcy in place, formulate a way to get the money
20 funneled in to the creditors, who would, if there are crimes,
21 be the victims.

22 I don't want to participate in a criminal trial. I
23 want to minimize the estate's involvement in this case. And
24 that aspect of it shouldn't go unacknowledged. I don't want
25 to get involved in a crime fraud exception argument over in

26

1    the District Court.  If we take this whole thing over there

2    and he tries to—and Mr. Wilkinson says to the District Court,

3    "Well, you know, all this attorney advice was given in the

4    context of a pyramid scheme and it's all a fraud and

5    therefore none of this stuff is privileged anyway," I'm going

6    to be drawn into that fight.  But if I get drawn into that

7    fight, there's no benefit for the creditors because there's

8    no deal.

9            So, you know, I strongly believe that the best thing

10   we can do is waive the privilege and let the District Court

11   sift through the documents, decide what's privileged and what

12   isn't, and that way we'll at least permit some benefit to the

13   creditors if that's possible down the road.

14           THE COURT:  Mr. Wood?

15           MR. WOOD:  Thank you, Your Honor.  Just a few

16   points.  First, Your Honor, any rejection of the employment

17   agreement, we would contend, by Mr. Harden as under

18   bankruptcy law, would not, we would argue, limit Mr. Van

19   Etten's rights to enforce that at this time.

20           Secondly, the settlement with Mr. Harden speaks for

21   itself, and we would argue that that is not a waiver as to

22   this claim at this time.  That it may be a claim that may be

23   asserted in the future by Mr. Van Etten under an

24   indemnification provision.

25           And on that same point, Your Honor, Mr. Etten's not

27

1    the only party involved here.  I represent Mr. Smith in this

2    proceeding, and there are other parties who would have those

3    same rights of indemnification. I'm not aware of all the

4    employment agreements, but certainly the bylaws speak for

5    themselves.

6         As to the documents that I have, to my knowledge Mr.

7    Harden's never asked for them before today.  This is the

8    closest he's ever come to asking for them.  Obviously there

9    was some misunderstanding between us, and Mr. Harden looking

10   at the documents is a far cry from waiving the privilege.

11   They're two different worlds apart.  Mr. Smith eloquently

12   explained that to the Court.

13        And we would contend finally, Your Honor, that Mr.

14   Harden is not necessarily minimizing the involvement of the

15   estate in these proceedings by waiving this privilege.  I

16   believe that the agreement could be interpreted that the

17   company can still be prosecuted, and that could involve a

18   large amount of work, or if, as it has in the Montana case

19   and even in the SEC case, Mr. Harden's involvement was

20   limited in the actual proceedings themselves.

21        So, as a result, we would again argue or urge this

22   Court to deny the request of the trustee, and if the Court is

23   inclined at all, we would urge this Court, very much so, to

24   place strict limitations as far as what the Court's ruling on

25   related to work product privilege and individual privileges

28

1    of a lot of different people, including my individual clients

2    in this proceeding, Mr. Van Etten and Mr. Smith.

3            Thank you, Your Honor.

4            THE COURT:  Mr. Smith?

5            MR. SMITH:  Nothing further.  Thank you, Your Honor.

6            THE COURT:  Okay.  Well, the Court certainly

7    recognizes the importance of the attorney/client privilege,

8    but we also have some very strong authority in the *Weintraub*

9    case that a Chapter 7 trustee for a corporation can waive the

10   privilege.  Before I rule on this matter though, I have not

11   had a chance to read the brief that you've handed up today,

12   and I want to read that.  I'll try not to take very long with

13   it, and I'll let you know my decision.  If I do decide to

14   allow Mr. Harden's request, I will make it clear exactly what

15   it is he can and cannot get.

16           Anyway, thank you.  That will conclude our hearing,

17   and I'll take this matter under advisement.

18                       (HEARING CONCLUDED)

19

20

21

22

23

24

25

In Re:      International Heritage, Inc.
            International Heritage, Incorporated
            99-02675-5-ATS
            99-02674-5-ATS


C E R T I F I C A T E

I, Jane W. Clapp, having been tested and approved by the Administrative Office of the Court in Washington, D.C., to provide transcription of legal proceedings from electronic sound recordings, do hereby certify that the foregoing is a true and accurate transcript, to the best of my ability, of the above entitled matter.


_____   7-26-00
Jane W. Clapp                   Date