**F I L E D**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA JUL 1 0 2000
RALEIGH DIVISION

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO. 98-02675-5-ATS |
| | ) | CHAPTER 7 |
| INTERNATIONAL HERITAGE, | ) | CASE NO. 98-02674-5-ATS |
| INCORPORATED, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER: (1) MODIFYING ORDER DENYING MOTIONS FOR STAYS PENDING APPEALS AND ORDER DIRECTING APPELLANTS TO IDENTIFY DOCUMENTS; AND (2) STAYING ORDER ALLOWING MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT PURSUANT TO RULE 8005 OF THE BANKRUPTCY RULES

NOW COME Stanley H. Van Etten (hereinafter "Mr. Van Etten") and Wood & Francis, PLLC (hereinafter "W&F), and in support of their Motion for Order: (1) Modifying Order Denying Motions for Stays Pending Appeals and Order Directing Appellants to Identify Documents; and (2) Staying Order Allowing Motion for Approval of Compromise and Settlement, submit the following Memorandum of Law to the United States District Court for the Eastern District of North Carolina:

<u>INTRODUCTION (STATEMENT OF THE CASE)</u>

On 28 March 2000, the Trustee in the above-captioned bankruptcy proceedings filed a Motion for Approval of Compromise and Settlement. A copy of that Motion is attached as Exhibit A. The substance of this Motion was the Trustee's request "for an order approving a waiver of the attorney client and work product privileges with respect to pre-bankruptcy

communications between the debtors and their legal counsel" in exchange for certain purported concessions by the Office of the United States Attorney for the Eastern District of North Carolina. Several of Debtors' officers and directors have objected to the Trustee's Motion, including Mr. Van Etten. One of Debtors' attorneys, W&F, has also objected to this Motion. Copies of the objections filed by Mr. Van Etten and W&F are attached as Exhibits B and C.

A hearing on the Trustee's Motion for Approval of Compromise and Settlement was held before the Honorable A. Thomas Small on 31 May 2000. Following that hearing, an Order Allowing Motion for Approval of Compromise and Settlement was entered by Judge Small. A copy of that Order is attached as Exhibit D. Thereafter, Mr. Van Etten and W&F filed a Notice of Appeal from the Order Allowing Motion for Approval of Compromise and Settlement. That Notice of Appeal was filed on 19 June 2000 and that appeal remains pending. Several of the Debtors' former officers and directors also filed Notices of Appeal from the Order Allowing Motion for Approval of Compromise and Settlement.

In addition to filing the Notice of Appeal, Mr. Van Etten and W&F also filed a Motion for Stay seeking a stay of the Order Allowing Motion for Approval of Compromise and Settlement. In addition, other former officers and directors of the Debtors filed similar Motions for Stay. On 28 June 2000, Judge Small entered an Order Denying Motions for Stays Pending Appeals and Order Directing Appellants to Identify Documents. A copy of that Order is attached as Exhibit E. In that Order, Judge Small refused to grant a stay pending the appeal; however, he "temporarily stay[ed] the effect of the order for ten days to permit the appellants to request a stay from the United States District Court". In accordance with Judge Small's Order entered 28 June 2000, Mr. Van Etten and W&F have filed a Motion for Order: (1) Modifying Order Denying Motions for Stays Pending Appeals and Order Directing Appellants to Identify Documents; and

2

(2) Staying Order Allowing Motion for Approval of Compromise and Settlement, which is the subject of this Memorandum of Law.

STATEMENT OF THE FACTS

In early 1995, the Debtor International Heritage, Inc. ("IHI") incorporated in North Carolina. After incorporation, the Board of Directors of IHI adopted By-laws in May of 1995 which included the following provision:

> Any person who at any time serves or has served as a director of the corporation, or who, while serving as a director of the corporation, serves or has served, at the request of the corporation, as a director, officer, partner, trustee, employee, or agent of another corporation, partnership, joint venture, trust, limited liability company or other enterprise, or as a trustee or administrator under an employee benefit plan, shall have a right to be indemnified by the corporation to the fullest extent permitted by law against (a) reasonable expenses, including attorneys' fees, incurred by him in connection with any threatened, pending, or completed civil, criminal, administrative, investigative, or arbitrative action, suit, or proceeding (and any appeal therein), whether or not brought by or on behalf of the corporation, seeking to hold him liable by reason of the fact that he is or was acting in such capacity, and (b) reasonable payments made by him in satisfaction of any judgment, money decree, fine (including an excise tax assessed with respect to an employee benefit plan), penalty, or settlement for which he may have become liable in any such action, suit, or proceeding.

> The Board of Directors of the corporation shall take all such action as may be necessary and appropriate to authorize the corporation to pay the indemnification required by this bylaw, including, without limitation, making a determination that indemnification is permissible in the circumstances and a good faith evaluation of the manner in which the claimant for indemnity acted and of the reasonable amount of indemnity due him. The Board of Directors may appoint a committee or special counsel to make such determination and evaluation. To the extent needed, the Board shall give notice to, and obtain approval by, the shareholders of the corporation for any decision to indemnify.

> Any person who at any time after the adoption of this bylaw serves or has served in the aforesaid capacity for or on behalf of the corporation shall be deemed to be doing or to have done so in reliance upon, and as consideration for, the right of indemnification provided herein. Such right shall inure to the benefit of the legal representatives of any such person and shall not be exclusive of any other rights to which such person may be entitled apart from the provision of this bylaw.

3

Those bylaws were amended on at least two occasions thereafter – December 16, 1996 and March 15, 1997 – however, on each occasion, the Board of Directors of IHI adopted the same exaction indemnification provision as was adopted in the initial bylaws of IHI. In reliance upon the indemnification of the bylaws of IHI, Mr. Van Etten, and numerous other individuals, continued to act as a director and/or officer of IHI until IHI sought protection under the Bankruptcy Code on November 25, 1998.

In December of 1995, IHI also entered into an employment agreement with Mr. Van Etten. Pursuant to that employment agreement, IHI again agreed to indemnify Mr. Van Etten. Specifically, that employment agreement provided as follows:

> In return for the services provided to Employee and many risks accepted by the Employee on behalf of the Employer in the start-up of Employer, Employer shall indemnify Employee to the fullest extent permitted by law against (1) reasonable expenses, including attorneys' fees, actually and necessarily incurred by Employee in connection with any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative, seeking to hold Employee liable by reason of the fact that Employee is or was acting in any capacity for Employer, and (2) payments made by Employee on behalf of Employer in satisfaction of any judgment, money decree, fine, penalty, or reasonable settlement for which Employee may have become liable in any such action, suit, or proceeding. In the event that there is any threatened or pending action, suit, or proceeding initiated against the Employee pursuant to which the Employee may become liable, the Employee shall have the right to demand and obtain from the Employer an advance of TWELVE THOUSAND AND NO/100 DOLLARS ($12,000.00) to insure payment of any judgment, money decree, fine, or penalty, which amount shall be deposited in the trust account of Employee's chosen counsel, but which shall not relieve Employer from satisfying Employee's attorneys' fees and expenses on a monthly basis while the action, suit, or proceeding is pending.

Again, Mr. Van Etten relied upon these representations of IHI while providing services to IHI as an officer and director

At all relevant times, IHI operated as a multi-level marketing company. Multi-level marketing companies, which are otherwise known as network marketing companies, are not

4

regulated by a single government entity even though they often operate nationwide; instead, multi-level marketing companies are regulated by a wide variety of laws and regulatory agencies. The applicable laws include lottery statutes, pyramid statutes, securities laws, Federal Trade Commission regulations, Federal Drug Administration regulations, and related registration regulations throughout the country. Obviously, these applicable laws and regulations vary between federal and state authorities, as well as between different state and state authorities. Furthermore, a variety of different regulatory agencies attempt to scrutinize the activities of multi-level marketing companies in the United States, including Attorneys General (or similar entities) in each state, Secretaries of State (or similar entities) in each state, the Securities and Exchange Commission, the Federal Drug Administration and the Federal Trade Commission. As one would expect, the laws and regulatory agencies are not always consistent. As such, a multi-level marketing company like IHI requires the guidance of numerous lawyers to assist the company with the maze of complicated regulatory issues which may arise while a multi-level marketing company is attempting to operate. IHI was no different.

When IHI was initiating its operations, IHI sought legal assistance from at least three different law firms: Jeffrey A. Babener of Babener & Associates ("Mr. Babener"); Daniel Bell of Wyrick, Robbins, Yates & Ponton ("Mr. Bell"); and Georgina Mollick, who was employed at that time by Ragsdale, Liggett & Foley ("Ms. Mollick"). While also providing legal assistance to IHI, these three law firms (at one time or another) also provided legal advice to Mr. Van Etten individually.

After IHI had operated for approximately two years, and in or around April of 1997, the North Carolina Attorney General surprised IHI (and its officers and directors) by alleging that IHI may be operating as a pyramid scheme. After making those allegations, an agreement was

5

reached between IHI, Mr. Van Etten, Larry Smith ("Mr. Smith"), and Claude Savage ("Mr. Savage") which resolved the allegations of the North Carolina Attorney General against IHI. After the allegations were made by the North Carolina Attorney General's office (and in addition to seeking the legal advice of Mr. Babener, Mr. Bell and Ms. Mollick), IHI, Mr. Van Etten, Mr. Smith, and Mr. Savage also sought legal advice from the undersigned (Brent E. Wood of Wood & Francis, PLLC) as well as Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan. Thereafter, the undersigned's involvement with IHI, Mr. Van Etten, Mr. Smith and Mr. Savage increased as a result of other events which will be briefly described hereinbelow.

Not long after the North Carolina Attorney General's office made allegations about IHI and others, the Securities and Exchange Commission ("SEC") initiated an informal investigation of IHI. Soon thereafter, IHI retained the services of Kutak Rock, a law firm in Atlanta, Georgia, to advise and assist the company with regard to its dealings with the SEC. Kutak Rock also provided legal advice to Mr. Van Etten individually, and others, during this investigation.

In March of 1998, the SEC initiated a civil action against IHI, Mr. Van Etten, Mr. Smith, Mr. Savage and International Heritage, Incorporated (a public company with whom IHI merged in March of 1998) (IHI and International Heritage, Incorporated will collectively be referred to as the "Debtors"). After the SEC initiated its litigation in Georgia, the Debtors, Mr. Van Etten, Mr. Smith and Mr. Savage were all represented in those proceedings by, at least, Kutak Rock, Mr. Bell and the undersigned.

Furthermore, after the SEC initiated its litigation in Georgia, other civil actions and one administrative proceeding were initiated against IHI, Mr. Van Etten, Mr. Smith, Mr. Savage, and other officers and directors of IHI. Those actions were initiated in the states of North Carolina, Texas, Alabama and Montana. In those proceedings, IHI, Mr. Van Etten, and other individuals

6

were represented by a number of additional law firms not previously mentioned herein, including: Dechert Price & Rhoads of Washington, D.C.; Gardere & Wynn, LLP of Dallas, Texas; and Sirote & Permutt of Birmingham, Alabama.  In one way or another, each of these civil actions have been resolved as to Mr. Van Etten and the Debtors.

After the Debtors sought protection under the Bankruptcy Code, the undersigned, who had a large volume of documents as a result of its past representation of the Debtors, communicated with the Trustee about documentation in his possession, at the same time that he was providing updates to the Trustee on other matters relating to the Debtors.  In a letter dated 19 January 1999, the undersigned provided the following information to the Trustee:

> As a reminder, I wanted to inform you again that I continue to hold some records which technically belong to IHI.  Before the bankruptcy was filed, in-house counsel with IHI and other officers delivered documentation to me that they believed may be protected by the attorney-client privilege.  I will continue to hold that information.  Certainly, if you believe there is some information that I hold that may be beneficial to you, please feel free to call me.  I do not believe that I hold any significant information that relates to any financial transactions.  In addition, and for the record, I also do not believe it is a good idea for you to waive the attorney-client privilege of IHI.

Following this written communication to the Trustee, the Trustee never requested from the undersigned the opportunity to review privileged documentation, including that referenced in the 19 January 1999 letter, held by the undersigned (until after the 7 June 2000 Order was entered by Judge Small).[1]  At some point after 19 January 1999, an Assistant United States Attorney for the Eastern District of North Carolina ("AUSA") has communicated with the Trustee for the Debtors about an ongoing criminal investigation of the Debtors and, presumably, some of its officers and directors.  As a result of those discussions, the Trustee has filed the motion which is the subject of the two orders entered by Judge Small dated 7 June

7

and 28 June 2000. In that investigation, the AUSA has issued grand jury subpoenas to IHI and Mr. Van Etten. Pursuant to those subpoenas, Mr. Van Etten has, directly or indirectly, produced approximately 175,000 pages of documents to the AUSA, as well as a detailed list describing approximately another 60,000 pages[2] of documents which are attorney-client or work-product privileged. Presumably, these privileged documents, many of which would be privileged as a result to the civil litigation discussed above, would be the subject, in part, of the Trustee's Motion for Approval of Compromise and Settlement as well as the two Orders entered by Judge Small dated 7 June and 28 June 2000.

## ARGUMENT

I.    THE STANDARD FOR A STAY ON APPEAL.

As Judge Small points out in his Order dated 28 June 2000, "[A] party seeking a stay pending appeal must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that the parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay". *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). Because of the importance of the attorney-client privilege under both constitutional and common law, the latter three elements of the holding in

---

[1] For the Court's information, the reference to the attorney-client privilege in the letter dated 19 January 1999 does not relate to the pending criminal investigation. Instead, this references a suggestion by the Trustee in a motion filed in the Bankruptcy Court seeking to waive the attorney-client privilege in a settlement proposed with the SEC.

[2] In an original Memorandum of Law filed with the Bankruptcy Court prior to the hearing on 31 May 2000, the undersigned indicated to the Bankruptcy Court that the number of documents held and presumed to be privileged was estimated to be approximately 30,000 pages. Since the entry of the order by Judge Small, the undersigned, and members of his firm, have attempted to amend the original list prepared for the AUSA, a copy of which is attached hereto as Exhibit F. The purpose of this continued amendment of the detailed list is to satisfy concerns of the AUSA and to confirm complete compliance with any orders entered by the Bankruptcy Court as well as the District Court on the privilege issue. With this additional detailed review, the undersigned has now learned that the original estimate of 30,000 pages may have been incorrect, and now believes that the number of privileged documents is approximately 60,000 pages. Again, all non-privileged documents held by Mr. Van Etten and W&F have been produced to the AUSA, and additional non-privileged documents expect to be delivered to the AUSA in the near future as a result of a second review of the documents originally believed to be attorney-client or work-product privileged. Obviously, the review of the massive number of records by W&F is a significant undertaking requiring great expense and time.

*Long* will be addressed prior to addressing the ability of Mr. Van Etten and W&F to prevail on the merits of the appeal.

II.     MR. VAN ETTEN, IN PARTICULAR, AND POTENTIALLY, W&F, WILL BE IRREPARABLY INJURED IF THE STAY IS DENIED.

In its Order dated 28 June 2000, the Bankruptcy Court has denied the request of Mr. Van Etten, and others, for a stay of its 7 June 2000 Order, in which the Bankruptcy Court determined that, under the circumstances of this case, the Trustee could waive the attorney-client privilege. With that waiver, presumably, a privilege which the Debtors used jointly with individuals like Mr. Van Etten in defending against a long series of litigation would be waived and thereby potentially opening the door to attacks on confidential communications between attorneys who jointly represented the Debtors and individuals with the consent of the Debtors prior to seeking protection under the Bankruptcy Code. If a stay is not entered and Mr. Van Etten, as well as others, prevail on the appeal, attorney-client privileged information presumably turned over to the AUSA, or others, by the Trustee as a result of the waiver of the privilege, would abolish the privilege despite the fact that Mr. Van Etten and others have prevailed on appeal. In other words, if Mr. Van Etten and others prevail on their appeal, the failure of the Bankruptcy Court to enter a stay would effectively moot the purpose of the appeal itself. Obviously, by turning over documents to the AUSA (which Mr. Van Etten and others presume will occur if a stay is not entered), irreparable injury will occur to Mr. Van Etten in the form of a waiver of privileges which he potentially has held jointly with the Debtors throughout the significant litigation that has taken place previously against Mr. Van Etten, the Debtors and others.

III.    THE TRUSTEE WILL BE HARMED IN NO WAY IF A STAY IS ENTERED.

There is no pending issue in the Bankruptcy proceedings which would in any way harm the Trustee or the Debtors if a stay is not entered, much less any issue which would cause the

Debtors or the Trustee to be substantially harmed if a stay is entered.  Since no harm can be caused to the Trustee or the Debtors if the Court simply allows Mr. Van Etten, W&F, and others to proceed forward with their appeal while a stay is pending, a stay should be entered in this action.

IV.     THE PUBLIC INTEREST WILL BE ABSOLUTELY SERVED BY THE GRANTING OF THE STAY.

Obviously, the attorney-client privilege is intended to foster "full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and the administration of justice". *Upjohn Company v. U. S.*, 449 U.S. 383, 389 (1981).  If the stay is not granted and privileged communications are disclosed to the AUSA, and the appellate courts (whether the District Court or otherwise) overrule the decision of the Bankruptcy Court on the motion to compromise filed by the Trustee, the very special position that the attorney-client privilege in this case will be moot, since, presumably, the information which would be privileged would already be released and the privilege waived (without the consent of all appropriate parties).  In other words, the failure to fully protect the attorney-client privilege in this very public litigation may encourage individuals, whether corporate officers or simply average employees seeking the advice of an attorney, to limit what they disclose to their attorney solely out of the fear that their questions may later be disclosed unnecessarily in a bankruptcy or other civil proceeding.  Certainly, this Court does not wish to hinder the frankness that individuals, including corporate officers and directors, have with counsel for a corporation, whether or not that counsel is representing the corporation and the individual or simply representing the corporation.

In summary, the public interest will be substantially served by the granting of the stay in this matter.  Individuals, including corporate officers, need to have comfort that they can have

full and frank discussions with their legal counsel. Even if Judge Small's Order is affirmed at a later time, in these circumstances, it is appropriate for the District Court to enter a stay until it has fully reviewed the legal issues which are the subject of the appeal.

IV.    MR. VAN ETTEN, AND OTHERS, WILL LIKELY PREVAIL ON THE MERITS OF THE APPEAL.

   A.    THE BANKRUPTCY COURT SHOULD HAVE DENIED THE TRUSTEE PERMISSION TO WAIVE THE DEBTORS' ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BECAUSE THIS WAIVER IS NOT IN THE BEST INTERESTS OF THE DEBTORS' ESTATES.

In *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985), the United States Supreme Court held that, generally, a bankruptcy trustee has the power to waive a debtor corporation's attorney-client privilege.[3] *Id.* at 358 (during an administrative investigation, the Commission sought to discover information from corporate counsel regarding the conduct of the corporation's prior managers). However, the Court recognized that this power is not unfettered and that "[t]he propriety of the trustee's waiver of the attorney-client privilege can, of course, be challenged on the ground that it violates the trustee's fiduciary duty." *Id.* at 355 (noting that those challenging the waiver argued that the trustee never had the power to waive the privilege and did not argue that the waiver violated the trustee's fiduciary duties). Based upon *Weintraub*, the Bankruptcy Court determined that the Trustee had the authority to waive the attorney-client privilege of the Debtors.

---

[3] This proposition from *Weintraub* has been accepted by a number of courts. However, at least one court has recognized that the rationale underlying this decision was somewhat flawed. *In re Hunt*, 153 B.R. 445, 451 (Bankr. N.D. Tex. 1992) (pointing out that the Supreme Court's factual conclusion that the trustee receives wide-ranging management authority over the debtor is rather suspect since, only in rare situations, may a Chapter 7 trustee take over any of the corporate debtor's business operations). While this Court cannot reject the *Weintraub* decision, it can apply this rule cautiously. *See e.g., Hunt*, 153 B.R. at 454 (holding that only individual debtors, and not the trustee, can waive an individual debtor's attorney client privilege).

Despite the ruling of the Bankruptcy Court, it should be noted that this case is distinguishable from *Weintraub* in that this case involves a potential criminal investigation and prosecution, while *Weintraub* involved an administrative investigation. Somewhat unlike *Weintraub*, the Trustee's Motion involves important constitutional issues relating to the rights of accused individuals and entities and to present a full and fair defense in a potential federal criminal trial. As a result, the issues surrounding the Trustee's Motion are more properly before a Criminal District Court Judge or Magistrate. These issues could be heard by a Criminal Court forthwith on a Motion to Compel Production of Documents filed by the office of the United States Attorney regarding the outstanding Grand Jury Subpoenas for which extensive attorney-client privilege lists have been produced. In the event that the Office of the United States Attorney seeks to introduce any of these privileged documents in a criminal trial, this issue will necessarily have to be addressed by a Criminal Court. Allowing the Criminal Court to hear the motion now may prevent duplication of effort and preserve judicial economy. Obviously, the waiver of the Debtors' attorney-client and work-product privileges would potentially subject the Debtors and its officers and directors to criminal prosecution and sanctions. While those officers and directors have vehemently denied any criminal or related civil liability associated with the business activities of the Debtors pre-bankruptcy, the waiver of those privileges associated with the attorney-client relationship could lead to unnecessary misinterpretations and the prosecution of innocent individuals. Accordingly, the decision whether to allow the Trustee to waive these privileges should be made cautiously and, more likely than not, preserved for a Criminal Court at a later time if necessary.

In addition, the Trustee would not fulfill his duties to the estate by waiving the privileges. "[T]he fiduciary duty of the trustee runs to shareholders as well as to creditors." *Weintraub*, 471

12

U.S. at 355. "[I]t is beyond dispute that the Trustee's duty is to act in the best interests of the Debtor's estate." *In re Washington Group, Inc.*, 476 F. Supp. 246 (M.D.N.C. 1979), *aff'd*, 636 F.2d 1213 (4th Cir. 1980). Furthermore, the Trustee's "actions must be calculated to bring direct benefit to the estate." *Id.*

In his Motion, the Trustee proposes to waive the privileges "in exchange" for the United States Attorney's "agree[ment] not to recommend or seek the imposition of any criminal penalties, fines or forfeitures against the debtor corporations." In addition, the Trustee mentions that the United States Attorney will "recommend and use its best efforts to insure that any restitution imposed in any criminal proceedings against any individuals and/or entities affiliated or otherwise associated with one or both debtors will be distributed to the creditors of International Heritage, Inc." The Trustee further opines that the waiver of these privileges "may result in the generation of funds with which to pay claims in the International Heritage, Inc. case." However, the Trustee has not attached any draft agreement between the Debtors and the United States Attorney which might clarify the generality set forth in the Trustee's motion.

Furthermore, it must be noted that, in the Motion for Approval of Compromise and Settlement, the Office of the United States Attorney does not agree to enter into a formal Plea Agreement with any corporate defendant (if in fact any corporate defendant is indicted in this matter, which remains to be seen). *See* Rule 11, Federal Rules of Criminal Procedure. Of course, the assent of criminal counsel for the corporate defendant would be necessary to the validity of such a Plea Agreement. And, in Eastern District of North Carolina practice, even such a formal Plea Agreement, signed by both parties and specifying the exact amount of the fine, restitution, criminal penalties, and forfeitures, would not be binding upon the Court. This is so because it is standard practice for the Courts of the Eastern District to accept only "non-

13

binding" Plea Agreements offered under Rule 11 (e)(1)(B) of the Federal Rules of Criminal Procedure and to refuse any "binding" Plea Agreements offered under Rule 11 (e)(1)(C) .

The Office of the United States Attorney's commitment that it *"will agree not to recommend or seek"* criminal penalties, fines, or forfeitures against the Debtors, and will *"use its best efforts to insure"* that any restitution imposed in a criminal proceeding be distributed to creditors, then, is a far cry from a even a "non-binding" formal Plea Agreement. This language is in fact so sketchy and tenuous that it would seem to bind the United States Attorney to do no more than utter a sentence or two to the Court at sentencing, in exchange for the waiver of a very important constitutional right - the right to speak frankly to one's attorney without fear of disclosure.   There is no assurance that the Office of the United States Attorney would *affirmatively ask* that the Court not impose criminal penalties, fines, or forfeitures; the Agreement *"not to recommend or seek"* would be satisfied if the United States Attorney simply *"stood silent"* when asked by the Court for a position on criminal penalties, fines, or forfeitures. Defense attorneys for individuals or for corporate entities would be free, of course, to argue strenuously that the Court should impose a heavy fine or penalty on the corporate defendants but should exercise restraint against the individuals, or to make any other argument they wish to make.

Furthermore, the assurances of the Office of the United States Attorney with respect to criminal penalties, fines, forfeitures, and restitution offered here would give the bankrupt estate virtually no added benefit beyond that which would occur in the normal course of events in a criminal case. The decision of a Criminal Court with respect to criminal penalties, fines, forfeitures, and restitution is controlled by statutes which outline in great detail the factors that must be considered by the Court in each instance. Thus, the "recommendations" and "best

14

efforts" of the Office of the United States Attorney, in this case, would have very little effect upon a Court's decision on these matters.

Section 1963 of Title 18, for example, governing criminal penalties to be imposed in the case of conviction of 18 U.S.C. 1962 (racketeering), clearly states that whoever violates any provision of Section 1962 "*shall*" be fined under this title or imprisoned not more than 20 years . . . . or both, and "*shall*" forfeit certain property to the United States. Under this provision, because a corporation cannot be imprisoned, a fine would be imposed against it. Similarly, section 3663A of Title 18, which governs restitution in the case of conviction of any offense committed against property, or by fraud or deceit, clearly states that the Court "*shall*" order restitution to the "victim" of the offense as victim is defined in section 3663A(a)(2). Subsection (c)(3) of section 3663A provides that the Court may decide to forgo restitution in the event that certain carefully proscribed circumstances exist relating to the number of victims and complexity of issues of fact; however, once again, a Criminal Court would rely on the dictates of the statute rather than the prosecution's "recommendation" in defining the class of victims and in determining whether restitution is appropriate; and would likely order that restitution go to the designated creditors of a bankrupt estate, even in the absence of a recommendation from the prosecution.

While the imposition of a fine in a criminal case is given to the Court's discretion, 18 U.S.C. section 3572 carefully outlines the factors that must be found and relied upon by the court in imposing or forgoing a fine. These factors include, for example, the defendant's income or financial resources, the burden that the fine would impose, and whether restitution has been ordered. Once again, the Court would be bound by the dictates of this statute rather than by the prosecutor's recommendation as to a criminal fine. In short, the proposal submitted to the

Bankruptcy Court offers little or nothing of substance to the Debtors and, therefore, should not have been approved by the Bankruptcy Court.

Despite the Trustee's contentions, the agreement between the United States Attorney and the Trustee is far from a guarantee that the Government will not prosecute the Debtors or seek criminal penalties against them. Likewise, it does not guarantee that the Debtors will ever receive any restitution imposed against individuals affiliated with the Debtors. In fact, should the waiver lead to the prosecution of the Debtors' officers and directors, the Debtors are obligated by their bylaws and articles of incorporation, as well as various employment agreements, to defend and indemnify their officers and directors. *See* Zolman Cavitch, *Business Organizations* § 156.08(4) (1995) (noting that, depending on the circumstances, a director's indemnification claim might be viewed as a pre-petition claim or a post-petition administrative expense). In addition, if the Debtors were prosecuted, the Government might seek the forfeiture of estate funds on the grounds that they were derived from allegedly fraudulent activity.[1] Accordingly, the waiver of these privileges may actually decrease the funds that are available to pay claims against the Debtors.

The Trustee also has the fiduciary duty to act as expeditiously as is compatible with the best interests of the parties in interest with respect to closing the bankruptcy estate. *In re Hutchinson*, 132 B.R. 827, 831 (Bankr. M.D.N.C. 1991) (discussing the Trustee's duties under 11 U.S.C. 704(1)). *See also In re Clements*, 201 B.R. 157 (Bankr. W.D. Va. 1996); Cavitch, *supra*, § 156.07(2) ("In a Chapter 7 case, the trustee's primary duty is to liquidate the property of

---

[1] Upon information and belief, the Trustee has reviewed only a small percentage, if any, of the documents and communications at issue in his Motion. Wood & Francis, PLLC, only one of 9 law firms that have represented the debtors and their individual officers and directors, estimates that it holds over 60,000 pages of documents to which the privilege may apply. Because he has not reviewed many of these documents and communications, the Trustee cannot be said to have fully contemplated the affects of this proposed compromise on the debtor, the debtor's estate, or its creditors.

16

the estate and make distributions to creditors in the most expeditious and efficient manner possible.").

The Trustee opines "that waiving the . . . privileges is in the best interest of the expeditious administration of the estates because it will minimize the need for the estates to participate in a defense of any criminal prosecution by the United States Attorney." However, as already discussed, the United States Attorney has not guaranteed to forego a criminal prosecution against the Debtors. In addition, should the United States Attorney seek to prosecute the Debtors' officers and directors, the Debtors are obligated by their bylaws and articles of incorporation, as well as various employment agreements, to defend and indemnify their officers and directors. By waiving the Debtors' privileges, the Trustee may be increasing the probability that the Debtors' estates will need to participate in the defense of a criminal prosecution. Accordingly, the Trustee may be actually delaying the closing of the Debtors' estate and breaching his duty to administer the estate expeditiously.

Finally, as mentioned above, the Debtors owe a contractual duty to their officers and directors to defend and indemnify them for liability incurred as a result of their status as officers or directors of the debtor. By waiving the Debtors' privileges, the Trustee potentially exposes the officers and directors to liability and breaches the Debtors' obligations under the bylaws, articles of incorporation and various employment agreements. This Court should not allow the Trustee to cause this breach of contractual duty and should protect the directors' and officers' expectations under the contracts.

As demonstrated above, the Trustee's proposed waiver of the Debtors' attorney-client and work-product privileges is inconsistent with the Trustee's duties and is not in the best interests of the Debtor's estate. Accordingly, the Bankruptcy Court should have refused the Trustee's

17

request to waive the Debtors' attorney-client and work-product privilege in all respects. Because the Bankruptcy Court did not grant such relief, it is clear that the Trustee's proposed waiver is inappropriate under the circumstances. Because the Trustee's proposed waiver is inappropriate under the circumstances, the movants herein, and others, will likely prevail on the merits of their appeal. Because they will likely prevail on the merits of their appeal, a stay should be entered at this time by the District Court.

      B.     THE BANKRUPTCY COURT SHOULD HAVE DENIED THE TRUSTEE PERMISSION TO WAIVE THE DEBTORS' ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BECAUSE THE WAIVER WOULD COMPROMISE THEIR OFFICERS' AND DIRECTORS' INDIVIDUAL PRIVILEGE CLAIMS.

In the present case, the Debtors and their officers and directors were represented by the same attorneys. Accordingly, the directors and officers possess their own attorney-client and work-product privileges that cannot be waived by the Trustee. The Bankruptcy Court should have denied the Trustee permission to waive the Debtors' privileges because this waiver also compromises their officers' and directors' individual privilege claims, which are constitutionally protected.

"It is long settled in all American jurisdictions that where two or more parties employ a lawyer as their common counsel, communications to that attorney are confidential and privileged as against all common adversaries." *Attorney-Client Privilege in Civil Litigation* at 399 (Vincent S. Walkowiak ed., 2d ed. 1997). It is undisputed that approximately 9 different law firms represented the Debtors and its officers and directors individually prior to the commencement of these bankruptcy proceedings. Most of these firms entered appearances in various courts on behalf of the Debtors and these individuals, and it is clear that these firms represented both the Debtors and individual officers and directors. "An attorney's appearance in a judicial or semi-

18

judicial proceeding creates a presumption that an attorney-client relationship exists between the attorney and the person with whom he appears." *See E.F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 387 (S.D. Tex. 1969) ("When the relationship is also evidenced by the entry of a formal appearance by the attorney on behalf of the person with whom he appears, the presumption becomes almost irrebutable, for the entry of a formal appearance has quite properly been called 'record evidence of the highest character.'").

Furthermore, even if the attorneys in this case had not made a personal appearance on behalf of the individual officers and directors, the circumstances surrounding the communications between these individuals and the attorneys would indicate that an attorney-client relationships existed. *See Maleski v. Corporate Life Ins. Co.*, 641 A.2d 1 (Pa. Commw. Ct. 1994) (liquidated corporation's former officers and directors held attorney-client privilege distinct from corporation's privilege where they approached counsel for purpose of seeking legal advice and clarified they were seeking advice in their individual capacities, counsel saw fit to communicate with them in individual capacities, the communications were confidential, and matters did not contain matters within company or general affairs of company). *See also United States v. Hart*, 1992 WL 348425 (E.D. La. 1992) (concluding that an indemnification provision in corporate bylaws could justify corporate officers and directors in believing that corporate attorney was providing legal services to them in their individual capacities, jointly with the corporation). (Attached as Unpublished Decision as Exhibit G).

If the communications between a corporate officer or director and corporate counsel specifically focus upon the individual officers' or directors' personal rights and liabilities, then the individual officer or director can assert a personal privilege, despite the fact that the privilege generally belongs to the corporation. *See In re Grand Jury Proceedings*, 156 F.3d 1038 (10th

Cir. 1998) ("For example, a corporate officer's discussion with his corporation's counsel may still be protected by a personal, individual attorney-client privilege when the conversation specifically concerns the officers personal liability for jail time based on conduct interrelated with corporate affairs.").

As indicated above, the individual officers and directors in this case were represented in their individual capacities by the same attorneys as the Debtors. Their communications necessarily concerned the officers' and directors' personal liability for conduct interrelated with corporate affairs. As such, these communications are protected by the officers' and directors' individual attorney-client privileges. The waiver of a corporate Debtor's privilege by its bankruptcy trustee does not waive its individual officers' and directors' personal attorney client privilege. *See Carter v. Donovan*, 62 B.R. 1007 (Bankr. C.D. Cal. 1986).

Even if the individual officers and directors were determined not to have employed or shared the same counsel, it is clear that, at the very least, the individuals and the Debtors worked together and chose for their attorneys to work together in a shared defense arrangement. *See Attorney Client Privilege in Civil Litigation* at 399 ("In a joint defense arrangement, the attorney-client privilege protects communications by a client to his own lawyer, even though the lawyer may subsequently share that information with co-defendants.") The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter. *See In re Grand Jury Subpoenas*, 902 F.2d 244, 248-49 (4th Cir. 1990) ("the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine). The joint defense privilege or common interest rule has been applied to, among other parties, civil co-defendants and potential parties to prospective litigation. *Id.* at 249. The joint defense privilege cannot be waived without

the consent of all parties who share the privilege. *Id.* at 248. *See In re Madison Management Group, Inc.*, 212 B.R. 894 (Bankr. N.D. Ill. 1997) (Chapter 7 trustee who brought adversary proceeding against debtor's former parent corporation, could not unilaterally waive attorney client privilege as to documents prepared for parent corporation while parent-subsidiary relationship was in place). At the very least, the Debtors and individual officers and directors in this case engaged in a joint defense or "common interest." The Trustee should not be allowed to waive the privilege as to information the Debtors obtained by virtue of this joint defense posture.

As demonstrated above, the individual officers and directors possess their own attorney-client privilege that cannot be waived unilaterally by the Trustee. Because of the danger that this privileged information would be revealed in the Trustee's efforts to waive the Debtors' privileges, the Bankruptcy Court should have refused to grant the Trustee the authority to waive these privileges or at least entered a stay pending appeal.

Because the Bankruptcy Court has entered an order allowing the Trustee to waive the privileges, the Bankruptcy Court has jeopardized the constitutional rights held by the former individual officers and directors of the Debtors. This is inappropriate and unlawful. As such, the movants herein, and others, will likely prevail on the merits of their appeal. Because they will likely prevail on the merits of their appeal, a stay should be entered by the District Court at this time.

## CONCLUSION

For the foregoing reasons, Stanley H. Van Etten and Wood & Francis, PLLC respectfully urge this Court to enter an order staying the effect of the Bankruptcy Court's Order entered 7 June 2000, or otherwise appropriately modifying the Order of the Bankruptcy Court entered 28 June 2000, and granting such other and further relief as the Court deems appropriate.

21

Respectfully submitted this the 10th day of July, 2000.

WOOD & FRANCIS, PLLC

Brent E. Wood
N.C. State Bar No. 16898
Two Hannover Square
424 Fayetteville Street, Suite 2300
Post Office Box 164
Raleigh, North Carolina 27602
Telephone: (919) 828-0801

## CERTIFICATE OF SERVICE

I, Brent E. Wood, attorney for Wood & Francis, PLLC, certify that I served the foregoing document on the 10th day July, 2000, upon the following parties, and in the manner below specified, by placing a copy thereof for each such party(ies) in a separate envelope bearing sufficient postage and depositing the same in the United States mail at Raleigh, North Carolina and/or by facsimile:

Wade Smith
Melissa Hill
Tharrington Smith
209 Fayetteville Street Mall
Raleigh, North Carolina 27601

Holmes Harden
Maupin Taylor & Ellis
P. O. Box 17169
Raleigh, NC 27619

Scott Wilkinson
Assistant United States Attorney
Suite 800 Federal Building
Raleigh, North Carolina 27601-1461

John "Jack" O'Hale
Attorney at Law
102 S. 3rd Street
Smithfield, North Carolina 27577-0454

Stephen T. Smith
McMillan Smith & Plyler
P. O. Box 150
Raleigh, North Carolina 27602-0150

Joseph Cheshire, V
Cheshire, Parker, Schneider, Wells & Bryan
P. O. Box 1029
Raleigh, NC 27602

Terri L. Gardner
Smith Debman Narron & Myers
4700 New Bern Avenue
P. O. Box 26268
Raleigh, NC 27611-6268

Marjorie K. Lynch
Bankruptcy Administrator
P. O. Box 3758
Wilson, NC 27894-3758

This the 10th day of July, 2000.

WOOD & FRANCIS, PLLC

Brent E. Wood, Esq.
Post Office Box 164
Raleigh, North Carolina 27602
Telephone: (919) 828-0801

f:\wp\hi-bk.MemoSupportOfMotionToStay.doc

23

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DIVISION
RALEIGH DIVISION

| | | |
|---|---|---|
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO. 98-02675-5-ATS |
| | ) | |
| INTERNATIONAL HERITAGE, INCORPORATED, | ) | CASE NO. 98-02674-5-ATS |
| | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

**EXHIBIT A**

**F I L E D**

MAR 2 8 2000

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

## MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT

The undersigned trustee in bankruptcy in the above-captioned case respectfully moves the Court pursuant to Bankruptcy Rules 6004 and 9019 for an order approving a waiver of the attorney client and work product privileges with respect to pre-bankruptcy communications between the debtors and their legal counsel in exchange for which the Office of the United States Attorney for the Eastern District of North Carolina will agree not to recommend or seek the imposition of any criminal penalties, fines or forfeitures against the debtor corporations,and to recommend and use its best efforts to insure that any restitution imposed in any criminal proceedings against any individuals and/or entities affiliated or otherwise associated with one or both debtors will be distributed to the creditors of International Heritage, Inc.

Trustee is of the opinion that waiving the aforesaid privileges is in the best interest of the expeditious administration of the estates because it will minimize the need for the estates to participate in a defense of any criminal prosecution by the United States Attorney and may result in the generation of funds with which to pay claims in the International Heritage, Inc. case.

WHEREFORE, trustee prays that the Court enter an order allowing the undersigned to waive the attorney client and work product privileges according to the terms set forth above.

243945

234

Respectfully submitted this 28 day of March, 2000.

MAUPIN TAYLOR & ELLIS, P.A.

BY: _____

Holmes P. Harden, Trustee
3200 Beechleaf Court, Suite 500
Post Office Drawer 19764
Raleigh, North Carolina 27619-9764
Telephone:  919/981-4000
Facsimile: 919/981-4300

243945

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

FILED

MAY 31 2000

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | | |
|---|---|---|
| IN RE: | ) | |
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO.: 98-02675-5-ATS |
| | ) | CHAPTER 7 |
| INTERNATIONAL HERITAGE, | ) | |
| INCORPORATED, | ) | CASE NO. 98-02674-4-ATS |
| | ) | CHAPTER 7 |
| Debtor. | ) | |

EXHIBIT

8

## OBJECTION TO APPLICATION OF TRUSTEE FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT

NOW COMES Stanley H. Van Etten, by and through counsel and in response to the

Application of Trustee for Authority to Enter into Settlement Agreement filed May 18, 2000

("Application"), objects to said Application, and requests a hearing on said Application in

accordance with the notice of the Trustee and the Federal Rules of Bankruptcy Procedure.

Respectfully submitted this the 30th day of May, 2000.

WOOD & FRANCIS, PLLC

Brent E. Wood
Attorney for Stanley H. Van Etten
State Bar No. 16898
Two Hannover Square
434 Fayetteville Street Mall, Suite 2300
Post Office Box 164
Raleigh, North Carolina 27602
(919) 828-0801

## CERTIFICATE OF SERVICE

I, Brent E. Wood, attorney for Stanley H. Van Etten, certify that I served the foregoing document on the 30th day May, 2000, upon the following parties, and in the manner below specified, by placing a copy thereof for each such party(ies) in a separate envelope bearing sufficient postage and depositing the same in the United States mail at Raleigh, North Carolina and/or by facsimile:

Holmes P. Harden, Esq.
Maupin, Taylor & Ellis, P.A.
3200 Beechleaf Ct., Suite 500
P. O. Drawer 19764
Raleigh, NC 27619-9764

Marjorie K. Lynch
Bankruptcy Administrator
P. O. Box 3758
Wilson, NC 27894-3758

Terri L. Gardner
Smith Debman Narron & Myers
4700 New Bern Avenue
P. O. Box 26268
Raleigh, NC 27611-6268

This the 30th day of May, 2000.

WOOD & FRANCIS, PLLC

Brent E. Wood
Two Hannover Square
424 Fayetteville Street Mall, Suite 2300
Post Office Box 164
Raleigh, North Carolina 27602
Telephone: (919) 828-0801

f:\wp\hi-bk.ObjToApplicationSVE.doc

2

FILED

APR 1 8 2000

[signature] B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO.: 98-02675-5-ATS |
| | ) | CHAPTER 7 |
| INTERNATIONAL HERITAGE, | ) | |
| INCORPORATED, | ) | CASE NO. 98-02674-4-ATS |
| | ) | CHAPTER 7 |
| Debtor. | ) | |

EXHIBIT
C

## OBJECTION TO AND REQUEST FOR HEARING ON
## MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT

NOW COMES Wood & Francis, PLLC, and in response to the Trustee's Motion for

Approval of Compromise and Settlement filed March 28, 2000 ("Motion"), objects to said

Motion, and requests a hearing on said Motion in accordance with the notice of the Trustee and

the Federal Rules of Bankruptcy Procedure.

Respectfully submitted this the 7th day of April, 2000.

WOOD & FRANCIS, PLLC

[signature]

Brent E. Wood
Attorney for Wood & Francis, PLLC
State Bar No. 16898
Two Hannover Square
434 Fayetteville Street Mall, Suite 2300
Post Office Box 164
Raleigh, North Carolina 27602
(919) 828-0801

## CERTIFICATE OF SERVICE

I, Brent E. Wood, attorney for Wood & Francis, PLLC, certify that I served the foregoing document on the 7th day April, 2000, upon the following parties, and in the manner below specified, by placing a copy thereof for each such party(ies) in a separate envelope bearing sufficient postage and depositing the same in the United States mail at Raleigh, North Carolina and/or by facsimile:

Holmes P. Harden, Esq.
Maupin, Taylor & Ellis, P.A.
3200 Beechleaf Ct., Suite 500
P. O. Drawer 19764
Raleigh, NC 27619-9764

Marjorie K. Lynch
Bankruptcy Administrator
P. O. Box 3758
Wilson, NC 27894-3758

Terri L. Gardner
Smith Debman Narron & Myers
4700 New Bern Avenue
P. O. Box 26268
Raleigh, NC 27611-6268

This the 7th day of April, 2000.

WOOD & FRANCIS, PLLC

Brent E. Wood
Attorney for Wood & Francis, PLLC
Two Hannover Square
424 Fayetteville Street Mall, Suite 2300
Post Office Box 164
Raleigh, North Carolina 27602
Telephone: (919) 828-0801

f:\wp\ihi-bk.ObjToCompromiseW&F.doc

2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION



IN RE:

INTERNATIONAL HERITAGE, INC.                    CASE NO. 98-02675-5-ATS
                                                        CHAPTER 7
INTERNATIONAL HERITAGE,                         CASE NO. 98-02674-5-ATS
INCORPORATED,                                            CHAPTER 7

**FILED**

JUN 0 7 2000

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NC

        DEBTOR

## ORDER ALLOWING MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT

The matter before the court is the trustee's Motion for Approval of Compromise and Settlement. In the motion, the trustee seeks approval of his intended waiver of the attorney-client privilege with respect to the debtors' pre-bankruptcy communications with counsel, and of an agreement reached by the trustee, on behalf of the debtors, with the office of the United States Attorney for the Eastern District of North Carolina. Objections to the motion were filed on behalf of Stanley Van Etten, Wood & Francis, PLLC, Claude William Savage, John David Brothers, Dee Anne Brothers, Georgina Mollick, and Larry Smith. A hearing was held in Raleigh, North Carolina on May 31, 2000. The motion will be allowed.

The debtors, International Heritage, Inc. and International Heritage Incorporated (collectively "IHI"), filed a petition under chapter 7 of the Bankruptcy Code on November 25, 1998. Holmes P. Harden is the trustee in bankruptcy for IHI. Subsequent to the bankruptcy filing, the United States Attorney's office communicated

with the trustee regarding an ongoing criminal investigation of IHI and, presumably, some of IHI's former officers and directors. The trustee reports that the Assistant United States Attorney ("AUSA"), in exchange for IHI's waiver of the attorney-client privilege, will agree not to seek or recommend the imposition of any criminal penalties, fines or forfeitures against the debtor corporations, and to recommend and use his best efforts to ensure that any restitution imposed in criminal proceedings against individuals or entities affiliated with the debtors be distributed to creditors. During the course of this investigation, grand jury subpoenas were issued to IHI and to Stanley Van Etten, a former officer and director. Counsel for Mr. Van Etten reports that approximately 175,000 pages of documents have been produced or made available to the AUSA, and that he maintains custody of approximately 30,000 additional pages of documents on grounds that they are protected from disclosure by the attorney-client privilege or the work-product doctrine. The trustee's request to waive the attorney-client privilege likely would result in the production of some portion of these documents to the AUSA.

In his motion, the trustee argues that waiver of the attorney-client privilege is in the best interest of the estates. It would conserve estate assets by making it unlikely that IHI would need to participate in a defense in a federal criminal prosecution, he argues, and possibly could generate funds with which to pay creditors' claims. The trustee contends that the United States Supreme Court, in Commodity Futures Trading Commission v.

2

<u>Weintraub</u>, 471 U.S. 343 (1985), authorized precisely the type of waiver at issue in this matter. The <u>Weintraub</u> Court reasoned that in cases of corporate bankruptcy, the power to waive the attorney-client privilege "passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors." <u>Id.</u> at 356. The trustee's ability to exercise this power is, of course, tempered by his obligation to "maximize the value of the estate," <u>id.</u> at 352, and to seek its expeditious closure. <u>See</u> 11 U.S.C. § 704(1).

In response, counsel for the debtors and for their former officers (collectively, the "objecting parties") contend that waiver of the privilege is not in the best interests of the estates, for several reasons. First, the objecting parties argue that waiver may place the former officers at increased risk of criminal prosecution, and that the agreement between the trustee and AUSA lacks substance. The objecting parties concede that the AUSA apparently has agreed to assist the debtors to the full extent that he can; however, they maintain, statutory regulations and guidelines control virtually all aspects of a district court's imposition of penalties, fines, and restitution. For that reason, they argue, the AUSA simply has too little to offer. Finally, the objecting parties maintain that contractual arrangements between IHI and some former officers and directors, as set out in the corporations' bylaws and in employment agreements, provide for indemnification in the event of litigation; by exposing the former

3

officers to a heightened risk of prosecution, they argue, IHI breaches these contractual agreements. In sum, the objecting parties believe that the trustee is giving up substantial protections and receiving practically nothing in return.

The court concludes that the precedent established in Weintraub makes clear that the trustee is empowered to assert and to waive the attorney-client privilege in this case. Further, the fact that the trustee's decision to waive the privilege is more directly advantageous to creditors than it is to shareholders, or to former officers or directors, does not weigh against waiver. As the Weintraub Court noted, "[o]ne of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors. In cases in which it is clear that the estate is not large enough to cover any shareholder claims, the trustee's exercise of the corporation's attorney-client privilege will benefit only creditors, but there is nothing anomalous in this result; rather, it is in keeping with the hierarchy of interests created by the bankruptcy laws." Id. at 355.

The Weintraub Court also addressed one of the concerns pressed most strongly to this court; namely, that allowing the trustee to waive the privilege will have a chilling effect on communications between individual officers and directors and corporate counsel, and also could compromise exercise of the privilege by the individual officers and directors. "[T]he chilling effect is no greater here than in the case of a solvent corporation," the Court

4

reasoned, "where individual officers and directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel." Id. at 357. Weintraub also recognized that the "privileges of parties other than the corporation would still be 'applicable' as against the trustee. For example, consistent with [§ 542(e) of the Bankruptcy Code], an attorney could invoke the personal attorney-client privilege of an individual manager." Id. at 350 (referring to the specific statute at issue in Weintraub). The right of individuals to claim the attorney-client privilege on their own behalf, when appropriate, is in no way impinged by Weintraub or this court's order.

Moreover, the fact that the AUSA's offer goes as far as it can but, in the view of the objecting parties, not far enough, is of little consequence. The trustee's power to waive the privilege is not dependent on his ability to extract a concrete or even a "good" deal from the AUSA. Instead, it is moderated by his obligation to act in the best interests of the bankruptcy estates. The trustee could rationally conclude that those interests are best served by cooperating fully with an ongoing criminal investigation in hopes of favorable treatment, absent any kind of agreement at all.

Finally, the court is well aware of the role of the attorney-client privilege in modern litigation, and of its historical significance in jurisprudence generally. See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (attorney client privilege is intended to foster "full and frank communication between

5

attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice"). By the same token, these privileges are "not favored, and even those rooted in the Constitution must give way in proper circumstances." Herbert v. Lando, 441 U.S. 153, 175 (1979). In this particular matter, the court notes that there is no effort afoot to carve out an exception to the attorney-client privilege, or to in any way challenge its application to the debtors' documents. Instead, the only issue before this court is whether, in this corporate bankruptcy, the trustee is empowered to assert the privilege on behalf of the debtors and, if so, whether he may also elect to waive it. That question is conclusively resolved in Weintraub.

The court specifically finds that the trustee holds the privilege on behalf of the corporate debtors, and that he can and has waived that privilege. The court also acknowledges that many issues remain open for resolution. The court makes no finding regarding documents presently withheld on grounds that they come within the work-product doctrine, or regarding documents that include confidential communications between attorneys and individuals seeking legal counsel in their individual capacities.

For the foregoing reasons, the trustee's Motion for Approval of Compromise and Settlement is ALLOWED.

SO ORDERED.

DATED: JUN 0 7 2000

A. Thomas Small
Bankruptcy Judge

6

FILED

JUN 28 2000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

IN RE:

CASE NO.

INTERNATIONAL HERITAGE, INC.,
INTERNATIONAL HERITAGE
INCORPORATED,

98-02675-5-ATS
98-02674-5-ATS

EXHIBIT
E

DEBTORS

**ORDER DENYING MOTIONS FOR STAYS PENDING APPEALS AND ORDER
DIRECTING APPELLANTS TO IDENTIFY DOCUMENTS**

On June 7, 2000, the court entered orders allowing Holmes P.
Harden, the chapter 7 trustee for International Heritage, Inc. and
International Heritage Incorporated, to enter into a settlement
with the United States Attorney for the Eastern District of North
Carolina. As part of the settlement, the trustee waived the
attorney-client privilege with respect to the debtors' prepetition
communications with counsel. Appeals were filed by Georgina
Mollick, John Brothers and Dee Brothers, Claude Savage, Stanley H.
Van Etten and Wood & Francis, PLLC. The appellants filed motions
for stays of the court's orders of June 7, 2000, pending the
appeals. The trustee objects to the stays and requests that the
court require "each of the movants to identify with specificity for
the Trustee each document that he or she alleges to be subject to
his or her individual claim of privilege and that all documents not
so identified be ordered delivered to the Trustee immediately."
(Trustee's Response, June 26, 2000).

"[A] party seeking a stay pending appeal must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that the parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970).

The trustee maintains that it is well established that a trustee for a chapter 7 corporation may waive the attorney-client privilege for the corporation and that it is unlikely that the orders of June 7, 2000, will be modified on appeal. Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 105 S. Ct. 1986 (1985). The court agrees with the trustee and will not grant a stay pending appeal. However, the court will temporarily stay the effect of the order for 10 days to permit the appellants to request a stay from the United States District Court. FED. R. BANKR. P. 8005.

If a stay is not granted by the district court, each appellant shall, before July 18, 2000, identify any documents that he or she alleges to be subject to his or her individual claim of privilege.

**SO ORDERED.**

DATED:    28 JUN 2000

A. Thomas Small
Bankruptcy Judge

2

## DESCRIPTION OF PRIVILEGED DOCUMENTS



| Abbreviation | Description | Name |
|---|---|---|
| AEF | Attorney | Anthony E. Flanagan |
| AS | IHI Employee | Angie Stewart |
| AW | IHI Employee | Anna Washburn (and/or Anna Busby) |
| BEW | Attorney | Brent Wood |
| BML | Attorney | Bettina M. Lawton |
| CR | Attorney | Chris Reid |
| CS | Defendant | Claude Savage |
| CTF | Attorney | Charles Francis |
| DA | Attorney | Dan Applewhite |
| DH | IHI Employee | Dwight Hallman |
| DL | Attorney | David Long |
| DM | IHI Employee | Dawn McIntyre |
| EJBM | Accounting Firm | Eilers, Jones, Brown, & McLeod |
| FDB | Attorney | F. Daniel Bell |
| GMM | Attorney | Georgina Mollick |
| JAB | Attorney | Jeffery A. Babener |
| JB | IHI Employee | John Brothers |
| JK | ? | John Keushner |
| KB | IHI Employee | Kimberly Barnes |
| KMS | Attorney | Kenneth M. Silverman |
| LS | Defendant | Larry Smith |
| LWB | Attorney | Leonard W. Burningham |
| MV | Attorney | Michael Valerio |
| RB | Attorney | Robert Brunton |
| RS | Attorney | Ryan Smith |
| RSH | Attorney | Richard S. Heller |
| SMH | Attorney | Susan M. Halpern |
| SVE | Defendant | Stan Van Etten |

**(WP)** - Work Product
**(A/CP)** - Attorney Client Privileged
**\*** - Possibly/Probably Non-Privileged

### BOX 96W342I 01

- GMM to Janet Quick, November 29, 1995 Ragsdale Liggett & Foley memorandum concerning IHI **(WP)**
- 5-1-95 Email from George Ragsdale to GMM concerning IHI **(A/CP)**
- 4-28-95 message from GMM to Ragsdale Liggett & Foley attorneys **(A/CP)**
- GMM to CS, LS, SVE, BEW 10-26-95 letter **(A/CP)**
- GMM to Gary Johnson (IHI employee) 10-5-95 letter **(A/CP)**
- GMM to file 10-5-95 memo **(A/CP)**
- GMM to Gary Johnson (IHI employee) 10-3-95 email transmission **(A/CP)**
- GMM to SVE 9-6-95 letter **(A/CP)**

1

- George Ragsdale to GMM email dated 5-1-95 **(A/CP)**
- GMM to file 9-19-95 letter regarding Jack Weatherly **(WP)**
- GMM to SVE 8-9-95 letter concerning IHI **(A/CP)**
- JAB to SVE 10-28-96 letter sent by fax 24 pages in length **(A/CP)**
- GMM to AW 5 page fax containing numerous handwritten notes by GMM **(A/CP)**
- AW to GMM fax communication 7 pages **(A/CP)**
- AW to GMM 10-18-96 twelve page fax **(A/CP)**
- SVE to JAB and FDB 9-13-96 letter with enclosures **(A/CP)**
- GMM to SVE 3-31-97 two page fax **(A/CP)**
- GMM to AS 2-5-97 ten page fax **(A/CP)**
- AS to GMM 10-29-96 eight page fax **(A/CP)**
- SVE to JAB and FDB 10-24-96 letter two pages with enclosures **(A/CP)**
- GMM to AS 8-14-96 letter with significant edits to James Welch, Assistant Attorney General, Topeka, Kansas **(WP)**
- AS to GMM 4-15-96 three page fax **(A/CP)**
- SVE to FDB and JAB 3-19-96 letter draft **(A/CP)**
- GMM to AS and SVE 3-19-96 four page fax **(A/CP)**
- GMM to AS and SVE 3-19-96 five page fax **(A/CP)**
- GMM to SVE 3-19-96 five page fax with numerous handwritten notes **(A/CP)**

- IHI's State of Michigan Folder

  - GMM to AS 12-2-96 six page fax **(A/CP)**

- Montana Inquiry

  - SVE to FDB 3-27-96 three page letter with enclosure **(A/CP)**
  - GMM to AS and SVE 3-28-96 five page fax **(A/CP)**
  - SVE to GMM 3-14-96 five page fax **(A/CP)**

- NC Inquiry

  - Handwritten notes of GMM **(WP)**
  - AS to GMM 4-18-96 four page fax **(A/CP)**

- State of Oklahoma Inquiries

  - IHI Employee A. Wilson to GMM 5-15-97 five page fax **(A/CP)**
  - FDB to Patricia Labarthe, Esq. May 9, 1997, three page letter **(A/CP)**
  - GMM to SVE JB, FDB and CR 5-1-97 five page fax **(A/CP)**
  - Patricia Labarthe to GMM 4-28-97 one page letter **(A/CP)**
  - GMM to SVE 12-23-96 four page fax **(A/CP)**
  - Work-Product – GMM handwritten notes and notes to legal assistant **(WP)**

- Texas Inquiry

  - GMM to SVE, JB, CR 5-16-97 letter with enclosures **(A/CP)**
  - GMM to SVE 5-12-97 letter with enclosures **(A/CP)**

2

- GMM to FDB 4-25-97 fourteen page fax **(A/CP)**
- FDB to Kenneth Cooper 4-25-97 three page letter **(A/CP)**
- GMM to FDB 4-25-97 two page letter **(A/CP)**
- Work-product – page of handwritten notes from GMM **(WP)**
- Work-product – draft letter to George Denslow with edits and notes from GMM **(WP)**
- Work-product – page of handwritten notes from GMM **(WP)**
- GMM to JB 4-22-97 three page fax **(A/CP)**
- GMM to FDB 4-15-97 two page letter with enclosures **(A/CP)**
- GMM to RSH 8-9-96 fax **(A/CP)**
- AS to GMM 4-10-97 eleven page fax - this document is actually a 13 page fax transmission **(A/CP)**
- Patrick Holt, Montana Jewlay Rep., GMM to SVE 5-21-96 eight page fax
- Work-product – 5-20-96 handwritten notes from GMM concerning meeting with SVE and JB **(WP)**
- GMM to SVE and FDB 5-20-96 **(A/CP)**
- GMM to SVE and FDB 5-7-96 two page fax **(A/CP)**
- GMM to JB and SVE 5-2-96 three page fax **(A/CP)**
- GMM to JAB and FDB 4-30-96 nine page fax **(A/CP)**
- Work-product – handwritten notes from GMM several pages **(WP)**
- GMM to SVE 4-30-96 five page fax **(A/CP)**
- GMM to SVE 4-29-96 four page fax **(A/CP)**
- Work-product – 4-29-96 handwritten notes by GMM concerning Pat Holt matter **(WP)**
- Knowles secured loan 7-19-95
- GMM to SVE 10-27-95 letter with enclosures **(A/CP)**

- Canadian Settlement and Release Agreement

  - Work-product – 4-11-96 handwritten notes from GMM telephone conference with Sabrina Wei **(WP)**
  - GMM to Stephani Harris at IHI 1-2-96 nine page fax **(A/CP)**
  - GMM to IHI Canada and Felix Li 12-15-95 letter with enclosure **(A/CP)**
  - Fax communications from GMM and SVE sent November and December 1995 **(A/CP)**
  - Handwritten notes by GMM **(WP)**

- IHI/Family of Eagles

  - GMM to SVE 11-15-95 fax **(A/CP)**

- Design of Stock Agreement

  - GMM to JAB 8-30-95 two page fax; 8-23-95 three page fax; 8-22-95 three page fax **(A/CP)**

- MLM Entrepreneur Conference Dallas 4-27-96

  - GMM to IHI Board of Directors Memorandum eight pages 5-1-96 **(A/CP)**
  - AS to GMM fax twelve pages, GMM to SVE eight page fax, 5-1-96 **(A/CP)**
  - Work-product – several pages 4-27-96 handwritten notes GMM **(WP)**

3

- Advertising periodical

- IHI Catalog

  - From IHI employee to GMM 8-24-95 two page fax with numerous edits by GMM **(A/CP)**

- IHI/Premium Concepts Licensing Agreement

  - SVE to GMM 7-14-95 thirteen page fax of draft manufacturing license agreement (A/CP)
  - Additional draft agreements with numerous handwritten notes by GMM **(WP)**
  - Handwritten notes by GMM **(WP)**

- Consolidated Balance Sheet 8-14-95

  - Preliminary drafts for discussion purposes only for IHI Consolidated Balance Sheet dated August 14, 1995 **(WP)**

- Blue Sky Research (States other than NC)

  - Folder contains handwritten notes of GMM, as well as state law research and Blue Sky regulations for Alabama, Louisiana, Nevada and Virginia **(WP)**

## BOX 96W342I 01A

- Van Etten/IHI Triangle Business Journal Article

  - 8-8-97 facsimile transmission from GMM to SVE **(A/CP)**
  - 8-8-97 facsimile transmission from GMM to RSH and Steven Wolosky **(A/CP)**
  - 4-23-97 facsimile transmission from GMM to RSH, Steven Wolosky and Ken Silverman **(A/CP)**

- Macon, Georgia
  - 3-5-97 handwritten notes from GMM **(WP)**
  - 3-4-97 facsimile transmission from AW to GMM **(A/CP)**
  - 3-3-97 facsimile transmission from AW to GMM **(A/CP)**
  - 2-28-97 facsimile transmission from AW to GMM **(A/CP)**
  - 2-28-97 facsimile transmission from AW to SVE c/o GMM **(A/CP)**
  - 2-24-97 memorandum from SVE to JAB, FDB and GMM **(A/CP)**
  - 2-19-97 draft letter to Special Agent Jalaine Ward **(WP)**

- Audit Inquiry

  - 1-15-97 letter from Clark Jones to GMM **(A/CP)**
  - 2-4-97 memorandum from GMM to John Austin, Julie Bell, CTF, BEW and Alan Woodlief **(A/CP) (WP)**
  - 2-5-97 email transmission from Julie Bell to GMM **(A/CP)**
  - 2-5-97 memorandum from CTF to GMM **(A/CP) (WP)**

4

- 2-4-97 memorandum from GMM to John Austin, Julie Bell, CTF, BEW and Alan Woodlief **(A/CP) (WP)**
- 1-3-97 billing statement from Wood & Francis, PLLC to IHI **(A/CP)**
- 7-31-96 letter from Clark Jones to GMM **(A/CP)**
- 7-31-96 facsimile transmission of Clark Jones letter to GMM sent from Pam Patrick to GMM **(A/CP)**

- IHI Employee Handbook

  - Draft of Employee Handbook for International Heritage, Incorporated with handwritten notations from GMM **(WP)**

- International Heritage, Inc. Employee Personnel Policies

  - 10-8-96 letter from Carolyn A. Bean, personnel manager IHI, to GMM with enclosure **(A/CP)**

- MCI

  - 3-26-97 letter from BEW to DH **(A/CP)**
  - 3-26-97 facsimile transmission from BEW to DH **(A/CP)**
  - 3-10-97 phone message from DH to BEW **(A/CP)**
  - 3-11-97 phone message from DH to BEW **(A/CP)**
  - 2-10-97, 3-26-97 and 4-14-97 pages of handwritten notes from BEW **(WP)**
  - 2-20-97 facsimile transmission from DH to BEW **(A/CP)**
  - 1-25-97 invoice from MCI with numerous handwritten notes **(WP)**

- Miscellaneous documents

  - 11-7-96 facsimile transmission from AW to GMM **(A/CP)**
  - 12-9-96 letter with enclosure from Linda Halstead of Wood & Francis to Clark Jones (IHI employee) **(A/CP)**
  - 4-17-97 handwritten notes from GMM with 4-4-97 facsimile transmission from Bill Ulmer to GMM **(WP)**
  - 4-16-97 handwritten notes of GMM **(WP)**
  - 3-26-97 handwritten notes from GMM **(WP)**
  - 3-25-97 handwritten notes from GMM **(WP)**
  - 4-12-97 handwritten notes from GMM **(WP)**
  - 2-26-97 handwritten notes of GMM **(WP)**
  - 3-27-97 nine page facsimile transmission from Ken Rudd to GMM **(A/CP)**

- TLC Communications

  - 7-15-97 facsimile transmission from GMM to CR **(A/CP)**
  - 7-1-97 draft letter to TLC Communications with substantial handwritten notes and edits from GMM **(WP)**
  - 6-30-97 facsimile transmission from CR to GMM **(A/CP)**

6-5-97 handwritten notes of GMM **(WP)**

## BOX 96W342I 02

- Tabulation Results

  - 8-21-95 handwritten notes of GMM **(WP)**
  - 8-24-95 five page fax to Sheila Stansill by GMM with attachments **(A/CP)**
  - 8-22-95 five page fax from GMM to Sheila Stansill **(A/CP)**

- U-7 Offering

  - Correspondence from Thomas Applewhite of Wyrick Robbins to GMM from August and November 1995 **(A/CP)**
  - Correspondence from FDB to SVE August **(A/CP)**
  - October and December 1995 handwritten notes of GMM **(WP)**
  - Several drafts of IHI offering circular, each containing handwritten notes of GMM **(WP)**
  - Draft of letter to Perry R. Boseman with handwritten notes from GMM **(WP)**

- NC Securities Exemption

  - June 13, 1995 correspondence from FDB to SVE **(A/CP)**
  - Handwritten notes from GMM **(WP)**
  - Blue Sky regulation research **(WP)**
  - Draft of IHI Statement of Issuer **(WP)**
  - Draft Uniform Form of Corp resolution of IHI **(WP)**

- Regulation A offering

  - Correspondence by and between GMM, SVE, FDB, RSH, as well as Randolph Fletcher of Moore & Van Allen **(A/CP)**
  - Attorney notes 3-25-96, 7-26-96 and other handwritten notes by GMM **(WP)**

- IHI Policies and Procedures drafting

  - Numerous draft documents by and from GMM to AS at IHI containing numerous handwritten notes and edits by GMM **(WP)**

## BOX 96W342I 03

- 5-9-95 client profile of IHI by Ragsdale, Liggett **(A/CP) (WP)**

- Correspondence (11-26-96)

  - Correspondence between: JSH, GMM, Steven Wolosky, AS and memorandum from AS to IHI Board of Directors **(A/CP)**
  - Correspondence included from GMM to DM, AS, BEW and CTF; items dated May, June and August 1997 **(A/CP)**

6

- Correspondence from GMM to SVE and correspondence June 11, 1997 from GMM to Eugene J. Stroz, Jr. **(A/CP)**
- 2-18-97 five page fax from GMM to DH, IHI with 2-18-97 handwritten notes of GMM **(A/CP)**
- 2-10-97 and 1-28-97 correspondence from Bruce Edwards to DH of IHI **(A/CP)**
- Correspondence from April and May 1997 from GMM to RSH, Steve Wolosky and BEW **(A/CP)**
- Correspondence from BEW to SVE and fax from Gary Williams to GMM **(A/CP)**
- Billing statements from Shustak, Jalil and Heller **(A/CP)**
- Various correspondence from GMM to IHI employees **(A/CP)**
- 2-25-97 Correspondence from GMM to JAB **(A/CP)**
- 1-29-97 correspondence from AS to GMM **(A/CP)**

- Correspondence 10    (8-1-96 through 11-25-96)

  - Correspondence by and between DM, GMM and AS from Sept. & Nov. 1996 (includes draft letter document with numerous handwritten edits by GMM sent to AS as well as other documents with edits by GMM) **(A/CP) (WP)**
  - 10-4-96 correspondence from GMM to JB **(A/CP)**
  - 9-27-96 correspondence from SVE to GMM **(A/CP)**
  - Correspondence from GMM to Clark Jones, AW, JSH, AS **(A/CP)**

- Correspondence 9    (4-1-96 through 7-1-96)

  - 7-16-96 correspondence from BEW to SVE **(A/CP)**
  - 7-22-96 correspondence from JAB to SVE **(A/CP)**
  - 6-7-96 correspondence from SVE to Frank Liggett, III **(A/CP)**
  - 7-1-96 correspondence from GMM to RSH **(A/CP)**
  - 6-19-96 correspondence from Steven P. Stewart (Ragsdale Liggett) to GMM **(A/CP)**
  - other correspondence between GMM and the Ragsdale Liggett law firm **(A/CP)**
  - Correspondence from IHI employees such as AS to GMM and from GMM to IHI employees and personnel **(A/CP)**
  - 5-13-96 correspondence from Pam Patrick to GMM **(A/CP)**
  - 4-20-96 memo from AW to IHI Board of Directors **(A/CP)**
  - 4-4-96 letter from GMM to James Law **(A/CP)**

- Correspondence 10 (8-1-96 through 11-25-96)

  - 10-10-96 correspondence from GMM to SVE **(A/CP)**
  - 8-8-96 correspondence from AW to SVE, Jeff Hooks and GMM **(A/CP)**
  - 8-2-96 correspondence from GMM to Diana Wilson **(A/CP)**

- Correspondence 8 (3-1-96 through 3-28-96)

  - Correspondence from GMM to SVE and Clark Jones (IHI employee), as well as correspondence from FDB to SVE and from GMM to Dawn McIntyre and AW **(A/CP)**
  - 3-6-96 letter from GMM to Richard Corbin re: International Heritage, Inc. **(A/CP)**

7

- Correspondence 7 (2-6-96 through 2-28-96)

  - Correspondence during the above dates from GMM to SVE, AW, LS, CS, Derrick Rogers (IHI employee), Barry Ackle and Sabrina Wei, JB, DH, DA, all concerning IHI matters **(A/CP)**

- Correspondence 6 (12-1-95 through 1-31-96)

  - Correspondence from GMM to AW, JSH, SVE, DH, FDB, Sabrina Wei, JB, Clark Jones, Crystal Anderson of IHI, LS and CS **(A/CP)**
  - Correspondence from SVE to GMM regarding career kits updated for representatives **(A/CP)**
  - Draft document from GMM to SVE with handwritten notations by GMM **(WP)**

- Correspondence 5 (10-3-95 through 11-30-95)

  - Correspondence during the above dates from GMM to CS, SVE, Dawn McIntyre, Clark Jones **(A/CP)**
  - Correspondence from SVE to GMM **(A/CP)**
  - Correspondence from DA to GMM **(A/CP)**
  - Correspondence from Sheila of IHI to GMM **(A/CP)**
  - Also included are handwritten notes of GMM dated 10-9-95 concerning a conversation with CS **(WP)**

- Correspondence 4 (9-6-95 through 9-28-95)

  - Correspondence during the above time frame from Sally Oberman of Ragsdale Ligget to Sheila Stansill of IHI **(A/CP)**
  - Correspondence from GMM to Sheila Stansill, SVE, Thomas Applewhite, LS **(A/CP)**
  - Correspondence from DA to GMM **(A/CP)**
  - Draft document with handwritten notes by GMM which was sent to Sheila Stansill (IHI employee) **(WP)**

- Correspondence 3 (8-1-95 through 8-31-95)

  - Correspondence from the above dates from GMM to Sheila Stansill (IHI employee), CS and wife **(A/CP)**
  - Correspondence from Sheila Stansill (IHI employee) to GMM **(A/CP)**
  - Correspondence from DA to GMM, SVE **(A/CP)**

- Correspondence 2 (6-1-95 through 7-27-95)

  - Correspondence from SVE to FDB and GMM **(A/CP)**
  - Correspondence from GMM to SVE, Sheila Stansill, FDB, Jean Savage **(A/CP)**
  - Correspondence from FDB to SVE **(A/CP)**
  - Draft document from GMM with handwritten notes to IHI **(WP)**

- Correspondence 1 (4-28-95 through 5-31-95)

8

- Correspondence from SVE to GMM **(A/CP)**
- Correspondence from GMM to SVE, Jean Savage, Secretary of IHI, LS and CS **(A/CP)**
- Draft documents: one to Jack Smith Jr. with handwritten notes from GMM, another draft document sent to SVE from GMM with numerous handwritten notes from GMM **(WP)**

## BOX 96W342I 4

- Meeting Proxy IHI 1996 Shareholders Meeting - Proxy Drafting.

  - 12-11-95 fax correspondence from KL Barnes to GMM **(A/CP)**
  - Handwritten draft documents from GMM and two draft documents which include numerous handwritten edits and notations from GMM related to Shareholder Meeting Proxy results **(WP)**

- July 1, 1996 Proxy

  - 6-26-96 fax communication from AW to GMM **A/CP)**
  - Computer generated shareholder lists with handwritten notations from GMM **(WP)**

- Proxy Project 08-1995

  - Correspondence from GMM to LS, SVE, DA, CS **(A/CP)**
  - Correspondence from DA to GMM, SVE **(A/CP)**
  - Draft articles of amendment with handwritten notes from GMM **(WP)**
  - Handwritten notes from GMM **(WP)**
  - Draft form entitled Proxy for Shareholder Action International Heritage Inc. vote to increase the number of authorized shares **(WP)**
  - Wyrick, Robbins working documents on floppy disk **(WP)**

- Rescission Offer

  - Correspondence from DA to SVE dated July 27th and August 4, 1995 **(A/CP)**

- Miscellaneous Documents

  - Draft documents including draft shareholder lists with handwritten and other notations from GMM **(WP)**
  - Handwritten shareholder list by GMM **(WP)**
  - A second shareholder list with handwritten notations by GMM **(WP)**
  - Correspondence from AS to GMM **(A/CP)**
  - Correspondence from GMM to SVE, AS, Gary Johnson, JB **(A/CP)**
  - Handwritten notes from GMM **(WP)**
  - A final correspondence from GMM to Sheila Stansill (IHI employee) **(A/CP)**

## BOX 96W342I 5

- IHI Corporate Update

- Correspondence from SVE dated 3-29-96 to GMM **(A/CP)**

- Management Compensation Review Committee

  - Correspondence from GMM to Barry Ackle, Jimmy Knowles, CS, LS, SVE, Sabrina Wei and Davin Brown dated April 11, 1996 **(A/CP)**
  - Correspondence from GMM to SVE, the IHI Board of Directors, the Management Compensation Review Committee from February 26, 1996 **(A/CP)**
  - Handwritten notes of GMM from April 96 and February 96 **(WP)**
  - Draft documents from April 96 from GMM to SVE with handwritten notations of GMM **(WP)**
  - An employment agreement document from Pam of Eilers Jones Brown & McLeod to GMM **(WP)**
  - Correspondence dated 2-17-96 from Sabrina Wei to GMM **(A/CP)**

- IHI/Rudd/Hooks Memo of Understanding

  - Correspondence dated 7-9-96 from GMM to Jeff Hooks
  - Correspondence dated 5-1-96 from GMM to SVE, Ken Rudd and Jeff Hooks **(A/CP)**
  - Handwritten notes of GMM dated 4-24-96 **(WP)**
  - Handwritten notes of GMM dated 5-20-96 **(WP)**
  - Draft document entitled Memorandum of Understanding **(WP)**

- Miscellaneous Documents

  - Correspondence from GMM to SVE dated 4-8-96 **(A/CP)**
  - Ragsdale, Liggett & Foley document dated 11-8-95 and 9-8-95 **(WP)**

- Prologica Merger

  - Correspondence from GMM to RSH, SVE and from RSH to GMM and SVE from May, June, July of 96 **(A/CP)**
  - Correspondence from AW to GMM from May 3, 96 **(A/CP)**
  - Correspondence from FDB to SVE dated March 27, 96 **(A/CP)**
  - Handwritten notes from GMM dated 5-16-96 **(WP)**
  - Draft document entitled Merger Plan between IHI and Prologica International Inc with handwritten notes from GMM **(WP)**
  - Draft letter of intent to Prologica with numerous handwritten notes from GMM **(WP)**
  - A second draft merger plan and a second letter of intent draft **(WP)**

- IHI/Prologica Merger Corporate General Attorney Notes

  - Numerous pages of handwritten notes from GMM from March 27, 96 through 11-5-96 **(WP)**

- IHI/Prologica Merger Corporate General Bridge Ventures Consulting Agreement

10

- Correspondence from RSH to GMM and correspondence from GMM to SVE from May and July of 96 **(A/CP)**
- One page of handwritten notes from GMM dated 7-2-96 **(WP)**
- One draft Bridge Ventures Inc Consulting Agreement and one draft of same with handwritten notes from GMM **(WP)**

- IHI Prologica Merger Corporate General Cyndell & Company Consulting Agreement

  - Correspondence from GMM to SVE from March 96 **(A/CP)**
  - Correspondence from RSH to GMM from March 96 **(A/CP)**
  - Correspondence from GMM to RSH from March 96 **(A/CP)**

- Miscellaneous Documents

  - Correspondence from October 96 from GMM to SVE, November 95 from SVE to GMM **(A/CP)**
  - October 96 Sheila Stansill to GMM **(A/CP)**
  - Sept. 95 from GMM to SVE **(A/CP)**
  - Nov. 95 Sheila Stansill to GMM **(A/CP)**
  - Aug 95 from Martha Hutchens to Dottie Burch of the same firm **(A/CP)**
  - Numerous handwritten notes from GMM from August and Oct of 95 **(WP)**
  - August 95 eleven page fax from Susan Ballard to Sheila Stansill **(A/CP)**

- International Heritage Inc/Corporate General Billing/Expense Documents

  - Billing statements from Ragsdale Liggett & Foley and Wood & Francis to IHI **(A/CP)**

## BOX 96W342I 7

- December 1995 Recession Offer Results

  - Correspondence from GMM to Clark Jones, SVE, KB and JB **(A/CP)**
  - Correspondence from DA to GMM from KB to GMM dated December 95 and January 96 **(A/CP)**
  - Draft documents dated December 15, 1995 – Rescission Offer **(WP)**
  - Shareholder list entitled IHI Rescission Offer dated December 15, 1995 which has minor notations from GMM **(WP)**
  - A list with handwritten notations from GMM **(WP)**
  - 12-13-95 draft entitled International Heritage Inc. Rescission Disclosure Circular with the numerous edits **(WP)**
  - Draft shareholder list entitled IHI Rescission Offer dated December 1995 labeled as a draft **(WP)**
  - 12-12-95 handwritten notes from GMM **(WP)**
  - Other handwritten notes from GMM **(WP)**

- Rescission Offer December 1995

  - Pages of handwritten lists from GMM labeled IHI Rescission November 1995 **(WP)**

11

- Draft document entitled Re International Heritage Inc. Rights to Shares of Common Stock with some handwritten edits from GMM **(WP)**
- Shareholder list labeled IHI Rescission offer December 1995 with handwritten edits from GMM **(WP)**

- Washington State Rescission Offer

  - Correspondence from GMM to FDB from March 1996 **(A/CP)**
  - Correspondence from AW to GMM from March 1996 **(A/CP)**
  - Handwritten notes from GMM **(WP)**

- Miscellaneous Documents

  - Correspondence from GMM to SVE, Clark Jones, DA, FDB, JK and SVE **(A/CP)**
  - Correspondence from DA to GMM which include significant attachments **(A/CP)**
  - All correspondence from January and February 1996  **(A/CP)**
  - Handwritten notes from GMM from December 1995
  - Other handwritten notes
  - Draft document entitled International Heritage Inc. Rescission Disclosure Circular **(WP)**

## BOX 96W342I 9

- S-1 Registration Statement Blue Sky

  - Correspondence from GMM to SVE, RSH, JAB and FDB, Ms. Terri L. Shulman **(A/CP)**
  - Correspondence from DA to GMM, JAB to GMM, RSH to GMM, AW to GMM and RSH to Office of the Secretary of State Securities Division dated July 12, 1996 and from Terri L. Shulman to GMM.  Except where noted, all correspondence ranges from August of 1996 through February of 1997 **(A/CP)**
  - Various pages of handwritten notes of GMM **(WP)**

- International Heritage, Inc. S-1 Registration Statement Drafting

  - Various drafts of the Securities and Exchange Commission Form S-1 for International Heritage, Inc.  Some labeled draft documents, all bearing various handwritten notations from GMM.  All from July 1996 **(WP)**
  - One International Heritage, Inc. shareholder list bearing handwritten notes from GMM **(WP)**

- International Heritage, Inc. Material for S-1 Amendment

  - Fax transmission from Clark A. Jones to GMM with handwritten notations from GMM **(WP and A/CP)**
  - Fax correspondence from RSH to GMM **(A/CP)**
  - Draft of International Heritage, Inc. Options Grants with numerous handwritten edits from GMM **(WP)**

  - **Except where noted above, all items are from August 1996**

12

- Amendment 1 to Form S-1 Computer Draft

  - Draft of the Securities and Exchange Commission Amendment No. 1 to Form S-1 Registration Statement for International Heritage, Inc. and copies Corporation Edgar submission header worksheet v.4.4 partially filled out **(WP)**

- Miscellaneous Documents

  - Numerous drafts of the Securities and Exchange Commission Amendment No. 1 to Form S-1 for International Heritage, Inc. all bearing various handwritten notes from GMM and one facsimile transmission from Pamela Patrick, Senior Accountant, to GMM.
  - Handwritten notes of GMM included within these documents **(WP)**

**BOX 96W342I 10**

- Underwriter's Comments to Form S-1 IHI

  - Draft of Securities and Exchange Commission Amendment No. 2 to Form S-1 Registration Statement under Securities Act of 1933 for IHI dated January 30, 1997. This document includes handwritten notes from GMM and numerous edits **(WP)**
  - January 3, 1997 correspondence from KMS to GMM with attachment **(A/CP)**
  - January 23, 1997 correspondence to GMM from Steve Wolosky with attachment which also contains numerous handwritten notations of either Wolosky or GMM **(A/CP)**

- IHI Amendment No. 2 to Form S-1 Drafting number 2

  - 03-04-97 draft letter to Becky Boland with comments from EJBM **(WP)**
  - Six drafts of the Securities and Exchange Commission Amendment No. 2 to Forms S-1 Registration Statement for IHI -- each bearing handwritten notations from GMM **(WP)**
  - 02-17-97 draft letter from GMM to prospective investors with numerous handwritten notations from GMM and edits **(WP)**
  - 2-10-97 correspondence from GMM to Steve Wolosky **(A/CP)**
  - 2-7-97 correspondence from Jonathan Nieman to GMM ? **(A/CP)**
  - 1-30-97 draft letter to Becky Boland bearing numerous handwritten notations and edits of GMM **(WP)**
  - 2-3-97 correspondence from GMM to RSH with enclosures bearing handwritten notations and edits from GMM **(A/CP)**
  - 1-31-97 correspondence from GMM to Robert Norris of Wisheart, Norris, Henninger & Pittman **(A/CP)**
  - 1-22-97 memorandum from GMM to IHI executive managers **(A/CP)**
  - 1-21-97 memorandum from GMM to executive management of IHI regarding Amendment No. 2 to the S-1 Registration Statement **(A/CP)**
  - 1-26-97 memorandum from GMM to SVE regarding Amendment No. 2 to the S-1 Registration Statement **(A/CP)**
  - 1-26-97 memorandum from GMM to SVE regarding Amendment No. 2 to the S-1 Registration Statement. This document bears numerous handwritten notes of GMM and has an attachment **(A/CP)**

13