*Ex Y cont*

- 9/16/98 AEF copy of email transmission from Pete Scanlon to AEF cc'd Wendy Rainerd and CR **(A/CP)**
- 9/11/98 draft letter from Pete Scanlon to Infinity Marketing, Doug & Page Sims **(WP)**
- 9/11/98 draft letter from Pete Scanlon to David and Lita Tillman **(WP)**
- 10/1/98 four page facsimile from GMM to AEF **(A/CP)**
- undated list of witnesses and parties to litigation against IHI **(WP)**
- 9/1/98 AEF copy of email transmission from BEW to AEF **(A/CP)**
- 9/28/98 nineteen page facsimile from Wendy Rainerd to AEF **(A/CP)**
- 10/1/98 correspondence from GMM to AEF **(A/CP)**
- 10/12/98 AEF copy of email transmission from Wendy Rainerd to AEF **(A/CP)**

### BOX 96W342I 146

- SEC Attorney Notes

  - 9/13/99 Peditto copy of email transmission BEW to Peditto **(A/CP)**
  - 8/30/99 BEW handwritten note **(WP)**
  - 9/1/99 BEW handwritten note **(WP)**
  - 10/14/99 BEW copy of email transmission from BEW to SVE and second party at TotalBodySystems.com **(A/CP)**
  - 8/26/99 transcript of voice mail message from Bill Hicks to BEW **(WP)**
  - 8/20/99 draft copy of SEC's Statement of Financial Condition of SVE with handwritten notations of BEW **(WP)**

- IHI – General Correspondence

  - 10/27/99 seven-page fax BEW to SVE **(A/CP)**
  - 10/13/99 fax BEW to SVE **(A/CP)**
  - 7/8/99 draft correspondence BEW to Herbert Towning cc SVE with handwritten notations and edits of SVE and BEW **(WP)**

- Montana

  - 4/16/99 four-page fax Dave R. Paoli to RB, BEW and Beth O'Halloran **(A/CP)**
  - 8/10/99 BEW to Linda M. Deola, Esq. cc SVE **(A/CP)**
  - 8/17/99 four-page fax BEW to SVE **(A/CP)**
  - 8/18/99 four-page fax Linda Deola to BEW **(A/CP)**
  - 8/19/99 two-page fax Deola to BEW **(A/CP)**
  - 8/20/99 BEW to Deola with enclosure **(A/CP)**
  - 8/20/99 BEW to SVE with enclosures **(A/CP)**
  - 8/25/99 22-page fax Deola to SVE cc BEW **(A/CP)**
  - 8/26/99 BEW to SVE, LS and CS **(A/CP)**
  - 8/26/99 BEW to Deola with enclosure **(A/CP)**
  - Undated BEW copy of email transmission from Deola cc SVE **(A/CP)**
  - 9/3/99 two-page fax Deola to Brenda Elias **(A/CP)**
  - 10/7/99 BEW to David R. Paoli with enclosures cc RB, Brenda Elias, Deola, Holmes P. Hardin and SVE **(A/CP)**
  - 10/7/99 BEW to Deola **(A/CP)**

*49 pages*

*553E*

- 10/7/99 BEW to RB **(A/CP)**
- 10/7/99 BEW to SVE **(A/CP)**
- 10/4/99 handwritten notes BEW **(A/CP)**
- 10/6/99 two-page fax Debra Slaughter to Peditto **(A/CP)**
- 10/5/99 handwritten notes BEW **(A/CP)**
- 10/22/99 BEW to Deola cc SVE and RB **(A/CP)**
- 10/22/99 BEW to SVE **(A/CP)**
- 9/1/99 two-page fax Deola to BEW **(A/CP)**
- 9/9/99 two-page fax Deola to BEW **(A/CP)**
- 10/13/99 handwritten notes BEW **(A/CP)**

- Miscellaneous Unfiled Documents

  - Undated copies of statutory and case law research **(WP)**
  - 12/13/99 handwritten notes BEW **(WP)**
  - 12/16/99 BEW to SVE **(A/CP)**
  - 12/16/99 BEW to R. Lippuner, Esq. cc SVE **(A/CP)**
  - 12/16/99 Peditto copy of email transmission Peditto to CS, UM, RELL at TotalBodySystems.com **(A/CP)**
  - 12/15/99 Peditto copy of email transmission from Peditto to Carol Summerall **(A/CP)**
  - 12/8/99 correspondence from Lippuner to BEW **(A/CP)**
  - 12/16/99 three-page fax BEW to SVE cover page only **(A/CP)**
  - 12/17/99 Peditto copy of email transmission from BEW to Carol Summerall and SVE cc Peditto **(A/CP)**
  - 12/2/99 handwritten notes BEW **(WP)**
  - 12/20/99 Memo BEW to SVE **(A/CP)**

### BOX 96W342I 147

- Miscellaneous Documents

  - 8/8/96 manilla envelope from IHI to Wood & Francis, PLLC containing the following: **(A/CP)**
  - 8/2/98 Memo from SVE to IHI Optionee with Business Week article enclosure **(A/CP)**

- Correspondence

  - 8/1/96 five-page fax Donna Crenshaw of Wood & Francis to SVE  **(A/CP)**
  - 7/16/96 BEW to SVE **(A/CP)**
  - 5/17/96 10-page fax BEW to DH **(A/CP)**
  - 5/17/96 BEW to DH with enclosure **(A/CP)**
  - 5/7/96 BEW to SVE **(A/CP)**
  - 2/29/96 BEW to SVE **(A/CP)**
  - 2/20/96 BEW to SVE **(A/CP)**
  - 2/20//96 BEW to GMM with enclosure **(A/CP)**
  - 2/13/96 GMM to SVE cc CS, LS, Sabrina Wei, Barry Ackle, Derek L. Rogers, JB, BEW, Dan Applewhite and FDB **(A/CP)**
  - 12/6/95 BEW to SVE **(A/CP)**

- 12/6/95 BEW to GMM **(A/CP)**
- 11/20/95 GMM to CS and LS with enclosure **(A/CP)**
- 11/17/95 BEW to GMM with enclosure **(A/CP)**
- 10/27/95 six-page fax BEW to SVE **(A/CP)**
- 10/23/95 David C. Smith to BEW re Carpe Diem **(A/CP)**
- 10/20/95 Dan Applewhite to SVE **(A/CP)**
- 10/19/95 four-page fax BEW to Dan Applewhite **(A/CP)**
- 10/27/95 five-page fax Dan Applewhite to BEW **(A/CP)**
- 10/16/95 36-page fax BEW to Dan Applewhite **(A/CP)**

- Miscellaneous Document

  - 9/28/94 Cynthia Wittmer, Fee Arbitration Committee to SVE re Fee Arbitration Petition No. FA940013 with enclosure

- Lease Issue

  - 5/10/96 two-page fax AW to BEW **(A/CP)**
  - 5/3/96 handwritten notes BEW **(WP)**
  - 4/29/96 handwritten notes BEW **(WP)**

- Attorney Notes

  - Undated draft North Carolina Security Agreement Between IHI and SVE **(WP)**
  - Undated draft North Carolina Security Agreement Between IHI and SVE **(WP)**
  - Undated draft North Carolina Security Agreement Between IHI and SVE **(WP)**
  - Undated draft North Carolina Security Agreement Between IHI and SVE **(WP)**
  - 2/29/96 transcription of voice mail message from GMM to BEW **(A/CP)**
  - 10/24/95 handwritten notes BEW **(WP)**
  - Undated Wood & Francis internal document **(WP)**

- Pleadings

  - 12/29/95 Trial Calendar
  - 2/13/96 Judge Barnett Order in the Resorts International Hotel, Inc. v. SVE litigation
  - 11/20/95 Memorandum of Law Resorts International v. SVE
  - 11/21/95 Court Order Resorts International v. SVE
  - 11/20/95 Calendar Request
  - 9/18/95 Notice of Right to Have Exemptions Designed
  - 11/8/95 Notice of Hearing
  - 10/30/95 Notice of Hearing on Exempt Property
  - 10/19/95 Objection and Response to Notice to Have Exemptions Designed by SVE
  - 10/19/95 Objection and Response to Notice to Have Exemptions Designed by SVE

- Original Release

  - 5/23/96 Elizabeth Kennedy-Gurnee, Esq. to BEW with enclosure

166

- 11/19/96 four-page fax Elizabeth Gurnee to BEW in Resorts International Hotel v. SVE litigation **(A/CP)**
- 7/17/96 BEW to SVE with enclosure **(A/CP)**
- 7/2/96 Kennedy-Gurnee to BEW with enclosure
- 5/28/96 BEW to SVE **(A/CP)**
- 4/12/96 BEW to SVE **(A/CP)**
- 4/10/96 Kennedy-Gurnee to BEW
- 4/10/96 two-page fax Kennedy-Gurnee to BEW
- 3/13/96 Kennedy-Gurnee to BEW
- 2/21/96 BEW to SVE with enclosure **(A/CP)**
- 2/16/96 Kennedy-Gurnee to BEW
- 2/6/96 three-page fax Kennedy-Gurnee to BEW
- 1/30/96 BEW to SVE with enclosure (A/CP)
- 1/26/96 one-page fax Kennedy-Gurnee to BEW
- 1/8/96 BEW to SVE **(A/CP)**
- 12/28/95 Kennedy-Gurnee to BEW
- 12/14/95 BEW to Kennedy-Gurnee with enclosure
- 11/20/95 BEW to SVE **(A/CP)**
- 11/20/95 BEW to Kennedy-Gurnee with enclosure
- 11/8/95 BEW to SVE **(A/CP)**
- 11/1/95 BEW to SVE with enclosure **(A/CP)**
- 10/26/95 Kennedy-Gurnee to BEW
- 10/19/95 BEW to SVE **(A/CP)**
- 10/19/95 BEW to Kennedy-Gurnee with enclosure

- Van Etten, Stan / Resorts International Inc. v. – Pleadings

  - 5/3/95 Notice of Filing of Foreign Judgment Resorts International v. SVE
  - 8/17/95 Kennedy-Gurnee to M. Toller Workman, Ragsdale, Liggett & Foley **(A/CP)**
  - 7/5/94 copy Summons State of New Jersey to SVE re Resorts International v SVE

- Van Etten, Stan / Resorts International, Inc. v. – Attorney Notes

  - 10/17/95 handwritten notes GMM **(WP)**
  - 8/31/94 handwritten notes GMM **(WP)**
  - 8/22/94 handwritten notes GMM **(WP)**
  - 8/19/94 receptionist note for GMM with handwritten notes GMM **(WP)**
  - 8/15/94 handwritten notes GMM **(WP)**

- Miscellaneous Document

  - 6/1/95 Memo Brian Tyson to M. Toller Workman

- Van Etten, Stan / Resorts International Hotel, Inc. v. – Billing/Expense

  - 12/8/95 GMM to SVE with enclosure **(A/CP)**
  - 11/7/95 SVE legal billing invoice **(A/CP)**
  - 10/16/95 GMM to SVE with enclosure **(A/CP)**

- 7/6/95 SVE billing invoice **(A/CP)**
- 6/12/95 SVE legal billing invoice **(A/CP)**
- 5/31/95 SVE legal billing invoice **(A/CP)**
- 9/16/94 GMM to SVE with enclosure **(A/CP)**
- 8/8/94 GMM to SVE with enclosure **(A/CP)**
- 8/27/94 copy of handwritten note SVE to GMM **(A/CP)**
- 5/12/95 GMM to SVE with enclosure **(A/CP)**
- 3/27/95 GMM to SVE with enclosure **(A/CP)**
- 3/9/95 GMM to SVE with enclosure **(A/CP)**
- 1/23/95 GMM to SVE with enclosure **(A/CP)**

- Attorney Notes

  - 4/2/96 transcript voice mail message from Elizabeth Gurnee to BEW **(WP)**
  - 2/22/96 transcribed voice mail message from Kennedy-Gurnee to BEW **(WP)**
  - Undated transcribed voice mail message from SVE to BEW **(WP)**
  - Undated copy of handwritten notes BEW **(WP)**
  - 1/29/96 handwritten notes BEW **(WP)**
  - Miscellaneous handwritten notes **(WP)**
  - 11/21/95 handwritten notes BEW **(WP)**
  - 11/20/95 handwritten notes BEW **(WP)**
  - 10/30/95 miscellaneous handwritten note **(WP)**
  - 10/19/95 Wood & Francis internal document **(WP)**

- Van Etten, Stan / Resorts International Hotel, Inc. v. – Research

  - Undated Gaming Contracts and Futures Statute **(WP)**
  - Undated Supreme Court case citation **(WP)**
  - Undated ALR Section **(WP)**

- Van Etten, Stan / Resorts International Hotel, Inc. v. – Correspondence

  - 10/17/95 GMM to SVE **(A/CP)**
  - 10/17/95 GMM to SVE **(A/CP)**
  - 10/11/95 four-page fax GMM to SVE **(A/CP)**
  - 10/11/95 four-page fax GMM to SVE **(A/CP)**
  - 8/1/95 SVE to Ms. Toller Workman, Esq. **(A/CP)**
  - 6/29/95 December 1987 Statement of Tax Balance Owed **(A/CP)**
  - 6/27/95 M. Toller Workman to SVE **(A/CP)**
  - 6/27/95 M. Toller Workman to Kennedy-Gurnee **(A/CP)**
  - 6/20/95 Kennedy-Gurnee to Toller Workman **(A/CP)**
  - 6/20/95 Kennedy-Gurnee to Toller Workman **(A/CP)**
  - 5/7/95 one-page fax to Toller Workman from SVE **(A/CP)**
  - 5/5/95 Workman to SVE with enclosure **(A/CP)**
  - 6/1/95 Memo Brian Tyson to Workman with attachment **(A/CP)**
  - 5/5/95 Workman to SVE with enclosure **(A/CP)**
  - 3/16/95 Kennedy-Gurnee to Workman with enclosure **(A/CP)**
  - 2/23/95 Workman to Kennedy-Gurnee **(A/CP)**

168

- 1/3/95 Kennedy-Gurnee to SVE **(A/CP)**

- Van Etten, Stan (Resorts International Hotel, Inc. v.)

  - 10/13/95 handwritten note GMM **(A/CP)**
  - 10/11/95 four-page fax GMM to SVE **(A/CP)**
  - 10/17/95 GMM to BEW with attachment **(A/CP)**

- Stan Van Etten/Fordham – Worthless Check Charges

- Miscellaneous Documents

  - Undated handwritten legal notes regarding North Carolina case law **(WP)**
  - Undated print-out of miscellaneous North Carolina case law cites from AmJur2d **(WP)**
  - 4/12/94 Memo from SVE to File with attachments
  - 1/18/95 one-page fax SVE to Wood & Francis
  - Second page of Criminal Summons **Missing**
  - 4/11/95 transcript of message from SVE to CTF

- Miscellaneous Documents

  - Undated handwritten notes CTF **(WP)**

- Van Etten/Check Charge

  - 11/15/95 handwritten note BEW **(WP)**
  - 1/18/95 handwritten notes CTF **(WP)**

- This is How I Record the Checkbook on 10/17/94

  - 10/17/94 SVE statement of daily account balance report with handwritten notes **(WP)**
  - 10/17/94 SVE statement of daily account balance report with handwritten notes **(WP)**
  - 10/17/94 SVE statement of daily account balance report with handwritten notes **(WP)**

- Miscellaneous Document

  - 3/15/95 GMM to CTF **(A/CP)**

- Correspondence

  - 5/29/96 BEW to SVE **(A/CP)**
  - 5/1/96 BEW to SVE **(A/CP)**
  - 2/28/95 BEW to SVE
  - 2/28/95 BEW to GMM cc SVE
  - 2/28/95 BEW to J. Anthony Penree, Esq. and John Ericson, Esq. cc SVE and GMM
  - 2/28/95 BEW to Anthony O. Whiteman, Esq. re Jerry Capp, et al. v. F & Wolf, et al. with enclosure
  - 1/19/95 BEW to SVE

- 1/4/95 BEW to SVE
- 1/4/95 BEW to Wilson Day, Esq.
- 12/2/94 Arbitration Decision and Award re SVE and Wilson Day
- 12/30/94 Angie Cox to SVE marked Privileged and Confidential
- Undated Miscellaneous handwritten list
- 12/13/94 BEW to SVE
- 1/31/94 eight-page fax SVE to BEW
- 1/31/94 SVE to BEW eight-page fax copy

- Attorney Notes

  - 5/1/97 handwritten notes GMM **(WP)**
  - 4/17/96 handwritten notes BEW **(WP)**
  - Undated miscellaneous handwritten notes regarding contact information for Wilson Day **(WP)**
  - 1/5/96 handwritten notes BEW **(WP)**
  - 1/15/96 handwritten notes BEW **(WP)**
  - Miscellaneous handwritten notes BEW **(WP)**
  - 12/11/95 Memo BEW to Victor S. Lee, Esq. **(WP)**
  - 11/17/95 copy of handwritten notes BEW **(WP)**
  - 2/27/95 handwritten notes BEW **(WP)**
  - 1/22/95 handwritten notes and message posted to BEW **(WP)**
  - 12/28/94 miscellaneous handwritten notes **(WP)**
  - 11/22/94 handwritten notes BEW **(WP)**
  - 7/19/94 handwritten notes BEW **(WP)**
  - 6/7/94 handwritten notes BEW **(WP)**
  - Undated internal document Wood & Francis **(WP)**

- Miscellaneous Handwritten Notes

  - 11/30/94 handwritten notes BEW **(WP)**
  - 11/30/94 handwritten notes BEW **(WP)**

- Research

  - 12/14/95 Memo from Victor S. Lee to BEW **(A/CP)**

- Correspondence

  - 8/18/94 three-page fax BEW to SVE **(A/CP)**
  - 8/15/94 four-page fax BEW to SVE **(A/CP)**

- Client Documents
  - Undated note to BEW from Angie Cox **(A/CP)**

- Attorney Notes

  - 4/17/96 Memo from BEW to Victor S. Lee, Esq. **(A/CP)**

- 11/3/94 handwritten notes BEW **(WP)**
- 8/17/94 handwritten notes BEW **(WP)**

## BOX 96W342I 148

- Correspondence

  - 12/15/97 Julie Bell to JB with enclosure **(A/CP)**
  - 12/3/97 BEW to JB **(A/CP)**
  - 11/18/97 Julie Bell to JB with enclosure **(A/CP)**
  - 10/24/97 BEW to JB **(A/CP)**
  - 10/14/97 BEW to CR **(A/CP)**
  - 10/3/97 BEW to CR **(A/CP)**
  - 9/29/97 BEW to CR with enclosure **(A/CP)**
  - 9/29/97 seven-page fax BEW to CR **(A/CP)**
  - 9/18/97 six-page fax BEW to CR **(A/CP)**
  - 9/9/97 BEW to JB **(A/CP)**
  - 9/9/97 BEW to JB with enclosure **(A/CP)**
  - 9/9/97 BEW to JB **(A/CP)**
  - 7/30/97 draft letter to Howard Cummings from Mike Russo, IHI re embezzelment **(A/CP)**
  - 8/5/97 three-page fax Mike Russo to BEW **(A/CP)**
  - 7/30/97 BEW to SVE cc Keith McKey **(A/CP)**
  - 7/30/97 BEW to SVE **(A/CP)**
  - 7/23/97 BEW to SVE with enclosure **(A/CP)**
  - 7/22/97 BEW to SVE with enclosure cc Jeff Trendel **(A/CP)**
  - 7/15/97 BEW to SVE with enclosure cc Jeff Trendel **(A/CP)**
  - 7/16/97 BEW to SVE with enclosure cc Jeff Trendel **(A/CP)**
  - 7/11/97 BEW to SVE with enclosure **(A/CP)**
  - 77/11/97 BEW to SVE with enclosure cc Jeff Trendel without enclosure **(A/CP)**
  - 7/11/97 BEW to SVE **(A/CP)**
  - 7/10/97 BEW to SVE with enclosure **(A/CP)**
  - 7/11/97 BEW to SVE with enclosure cc Jeff Trendel **(A/CP)**
  - 6/30/97 BEW to SVE cc Jeff Trendel and CTF with enclosure **(A/CP)**

- 
- Foreman Deposition 2/4/98

  - Undated handwritten notes Julie Bell **(WP)**
  - 2/4/98 handwritten notes BEW **(WP)**

- Material of Motion to Dismiss Hearing

  - Copy of facsimile transmission page with handwritten note from Julie Bell to BEW on yellow Post-It attached **(A/CP)(WP)**
  - Undated miscellaneous copy of Rule 4 North Carolina Rules of Civil Procedure *
  - Undated copy of North Carolina Court of Appeals case *
  - Undated copy of North Carolina Court of Appeals case **(WP)**

171

- Spreadsheets from IHI

  - Undated handwritten message from Sandi Lomax, IHI employee to Julie Bell **(A/CP)**

- Affidavits of Defendants

  - Undated draft affidavit of Ken Johnson in IHI v. Cedric Dobbins, et al. bearing handwritten notes of BEW **(WP)**

-
- Correspondence -- Volume 11

  - 10/16/98 Julie Bell to GMM cc BEW with enclosure **(A/CP)**
  - 9/24/98 Julie Bell to JB with enclosure **(A/CP)**
  - 9/22/98 Julie Bell to JB with enclosure **(A/CP)**
  - 9/1/98 Julie Bell to JB cc Rob Hukezalie and BEW with enclosure **(A/CP)**
  - 8/17/98 Julie Bell to JB cc Rob Hukezalie and BEW with enclosure **(A/CP)**
  - 7/23/98 Julie Bell to JB with enclosure cc Rob Hukezalie and BEW without enclosure **(A/CP)**
  - 7/10/98 Julie Bell to JB cc Rob Hukezalie with enclosure cc BEW without enclosure **(A/CP)**
  - 5/5/98 Julie Bell to JB with enclosure Rob Hukezalie and BEW without enclosure **(A/CP)**
  - 3/12/98 Julie Bell to JB with enclosure cc Rob Hukezalie and BEW without enclosure **(A/CP)**
  - 3/2/98 Mike James Russo, IHI employee to Julie Bell **(A/CP)**
  - 3/3/98 Julie Bell to JB with enclosure cc Rob Hukezalie and BEW without enclosure **(A/CP)**
  - 3/3/98 three-page fax Julie Bell to JB **(A/CP)**
  - 2/24/98 Julie Bell to JB with enclosure **(A/CP)**
  - 2/16/98 Julie Bell to JB with enclosure cc BEW without enclosure **(A/CP)**
  - 1/21/98 Statement of Wood & Francis Trust Account **(A/CP)**
  - 1/14/98 two-page fax Julie Bell to Mike Russo **(A/CP)**
  - 1/13/98 Julie Bell to JB **(A/CP)**
  - 1/8/98 Statement of Wood & Francis Trust Account **(A/CP)**

## BOX 96W342I 151

- Requests for Reimbursement

  - Variously dated assorted receipts and invoices for travel and expenses incurred by BEW and Mary K. Wood on behalf of client, IHI **(A/CP)**

- For Your Signature

  - 11/20/98 Statement of Wood & Francis Trust Account for a time period 11/1/98 through 11/20/98 **(A/CP)**

172

- 11/20/98 Statement of Accounts Payable for November with handwritten note addressed to BEW (A/CP)
- 9/29/98 Docutrust invoice to Wood & Francis for document storage with handwritten note from BEW (A/CP)

- Miscellaneous Legal Invoices

  - 10/30/98 eight-page fax RB to BEW (A/CP)
  - 10/23/98 Sirote & Permutt to IHI - Statement of Account (A/CP)
  - 11/2/98 14-page fax FDB to BEW (A/CP)
  - 11/2/98 Wyrick, Robbins, Yates & Ponton Statement of Legal Fees to IHI with note to BEW from FDB attached (A/CP)
  - 10/29/98 James L. Martin, PC to BEW re statement of legal expenses (A/CP)
  - 10/30/98 RB to BEW cc Mike K. Wolensky and Edward M. Ford with enclosure (A/CP)
  - 10/27/98 six-page fax BML to BEW (A/CP)
  - 10/26/98 BML to BEW cc Rob Huzalie with enclosure (A/CP)
  - 10/27/98 Susan Halpern to BEW and SVE with enclosure cc Douglas Lang without enclosure (A/CP)
  - 10/27/98 17-page fax Susan Halpern to BEW (A/CP)
  - 10/27/98 BML to BEW cc Rob Huzalie with enclosure (A/CP)
  - 10/29/98 12-page fax David W. Long, Esq. re legal expenditures and fees (A/CP)
  - 10/29/98 four-page fax James L. Martin to BEW re legal fees (A/CP)
  - 10/27/98 copy of Wyrick, Robbins, Yates & Ponton invoice sent to IHI with attached note from FDB to BEW (A/CP)
  - 10/27/98 Susan Halpern to BEW and SVE with enclosure cc Douglas Lang (A/CP)
  - 11/6/98 six-page fax Susan Halpern to SVE (A/CP)
  - 11/9/98 Sirote & Permutt billing statement to IHI c/o BEW  A/CP)
  - 11/2/98 14-page fax FDB to SVE (A/CP)
  - 11/6/98 Susan Halpern to BEW and SVE with enclosures (A/CP)
  - 11/6/98 six-page fax Susan Halpner to BEW (A/CP)
  - 11/9/98 nine-page fax Jean Heatherly to BEW - NOTE:  Heatherly is of Sirote & Permutt (A/CP)
  - 10/22/98 Billing invoice from Herbert Towning to Wood & Francis, PLLC with receipts, invoices and expense bills attached (A/CP)
  - 10/22/98 two-page fax Herbert Towning to BEW (A/CP)
  - 11/20/98 four-page fax BML to BEW (A/CP)
  - 11/20/98 eight-page fax AW to BEW (A/CP)
  - 11/20/98 seven-page fax AW to BEW (A/CP)
  - 11/23/98 Trust Account Statement of Wood & Francis for 11/1/98 through 11/23/98 (A/CP)
  - 11/23/98 two-page fax AW to BEW (A/CP)
  - 11/23/98 Humbolt Bank Merchant ledger sent from Dwight Hallman to BEW (A/CP)
  - 11/23/98 three-page fax from Dwight Hallman to BEW (A/CP)
  - 11/23/98 two-page fax Peditto to AW (A/CP)

f:\wp\aef\VanEtten.AttorneyGeneral.DescriptionOfPrivInfo.judy.doc

Not Reported in F.Supp.
(Cite as: 1993 WL 483525 (E.D.La.))

In the Matter of CRESCENT TOWING &
SALVAGE COMPANY, INC.

Civ. A. No. 93-1892.

United States District Court, E.D. Louisiana.

Nov. 15, 1993.

ORDER AND REASONS

WYNNE, United States Magistrate Judge.

*1 Before the Magistrate Judge is a motion of Crescent Towing & Salvage Company, Inc. ["Crescent"], to compel the return of a privileged communication. This action involves a collision between a tug (being steered by Michael Henson) and another vessel. Henson has alleged injuries and filed a claim for damages. After investigation, Crescent's counsel prepared a twelve-page memorandum setting out synopses of interviews with witnesses and experts and discussing trial strategy and the opinions of counsel. Counsel sent the memorandum to Crescent. A union official visiting Crescent came into possession of the memorandum and sent a copy to Henson, who provided it to his attorney, who called Crescent's counsel and told him he had it. The union official, when contacted by Crescent's counsel, returned a copy of the memorandum which he had retained. Henson's counsel has refused to return his copy.

Crescent has presented affidavits from a vice president and a supervisor stating that they were the only persons at Crescent with copies of the memorandum and that they neither personally provided nor instructed anyone else to provide a copy to the union official and that they do not know how he came to have a copy. Crescent has also submitted a letter from the union representative stating that he requested information and was given the report, perhaps inadvertently. He does not state who gave it to him.

Henson's counsel did not file an opposition to this motion and does not dispute that the memorandum is privileged; but at the hearing he suggested that any privilege had been waived by the client's providing the report to the union official and that he wished to retain it for possible impeachment purposes. A copy of the memorandum was provided for in camera inspection, which shows that it is protected by the attorney-client and work-product privileges.

The attorney-client privilege exists to protect confidential communications and the attorney-client relationship and may be waived by disclosure of the communication to a third party. Alldread v. City of Grenada, 988 F.2d 1425 (5th Cir.1993). However, inadvertent disclosure may or may not be a waiver of the attorney-client privilege; that determination depends on the facts of the disclosure. Alldread, at 1433-1434.

The work-product privilege is distinct from and broader than the attorney-client privilege. United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170 n. 11 (1975). The work product doctrine protects any document prepared by or for an attorney in anticipation of litigation; and, while the client must invoke the attorney-client privilege, both the attorney and the client may invoke work product. In re Antitrust Grand Jury, 805 F.2d 155 (6th Cir.1986). The work product privilege is the attorney's, not the client's. Duplan Corporation v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480 (4th Cir.1973). Further, even if the client somehow acts to waive the privilege, the attorney may still successfully assert it. In re Antitrust Grand Jury, supra, at 164. Mere voluntary disclosure of work product materials to a third party is not sufficient in itself to waive the privilege. Shields v. Sturm, Ruger & Company, 864 F.2d 379, 382 (5th Cir.1989).

*2 While it is not clear how the union official came into possession of the memorandum, the submissions of Crescent indicate that the disclosure was, at most, an inadvertent act by the client. The memorandum is very clearly and obviously the work-product of the attorneys for Crescent, who assert their privilege. Based upon the facts of the matter, the Magistrate Judge finds that the inadvertent disclosure by the client does not act as a waiver of the work-product privilege. Accordingly,

IT IS ORDERED that counsel for Henson is to return to counsel for Crescent, within two days of receipt of this order, any and all copies of the memorandum which may be in the possession or control of counsel or client.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1992 WL 348425, *2 (E.D.La.))

corporation or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

Pat Gallagher, President of the corporation, stated that his general policy was that the company would protect its employees in the case of civil or criminal proceedings involving the employees.

While the indemnification provision is not dispositive of the attorney-client privilege issue, in the absence of any advice by Gill or Hardin to the contrary, defendants were justified in believing that Gill and Hardin were there to protect their individual interests as well as those of the corporation. [FN1] Also significant is the fact that the communications between the defendants and Gill and Hardin were initiated, not by the defendants, but by Gill and Hardin as part of a "factfinding" mission.

Given this background, defendants reasonably believed that, during their conversations with Gill and Hardin, they were clients of Gill and Hardin, that they were communicating with them in their capacities as lawyers, and that they were providing legal services to them in their individual capacities, jointly with the corporation. In Re Grand Jury Proceedings, 517 F.2d 666, 670 (5th Cir.1975); Upjohn Co. v. United States, 449 U.S. 383, 396 (1981),

This Court finds that defendants, Walters and Van der Voort, are entitled to assert an attorney-client privilege as to all communications made to Ben Gill and Pauline Hardin in the course of Gill's and Hardin's investigation, preventing disclosure of those communications until such time as defendants choose to waive this privilege.

Accordingly,

IT IS ORDERED that all communications between corporate counsel, Ben Gill and Pauline Hardin, and the defendants, David Walters and Craig Van der Voort, are protected by the attorney-client privilege belonging to Walters and Van der Voort.

FN1. The Court notes that, under Rule 1.13(d) of the ABA Model Rules of Professional Conduct, Gill and Hardin should have informed the defendants at the inception of their conversation that any revelations made by them might not be covered by the privilege in the event that Gill decided that they should obtain separate counsel, which he ultimately did advise.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:02-CR-263-1-BO3
NO. 5:02-CR-263-2-BO3
NO. 5:02-CR-263-4-BO3
NO. 5:02-CR-263-5-BO3



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **UNITED STATES' MOTION** |
| v. | ) | **FOR THE COURT TO APPOINT A** |
| | ) | **SPECIAL MASTER TO ASSESS** |
| STANLEY H. VAN ETTEN | ) | **CLAIMS OF ATTORNEY-CLIENT** |
| CLAUDE WILLIAM SAVAGE | ) | **PRIVILEGE** |
| JOHN DAVID BROTHERS | ) | |
| DAVIN WALTER BROWN | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby submits its Motion for the Court to Appoint a Special Master to Assess Claims of Attorney-Client Privilege, and offers the following:

<u>REQUEST FOR SPECIAL MASTER</u>

1.   Previously, several of the defendants in this case alleged that the United States intentionally procured attorney-client privileged documents from defendants' former attorneys. <u>See</u>, <u>e.g.</u>, Defendant Van Etten's Motion for Information Obtained in Violation of Attorney/Client Privilege, dated September 12, 2003. The Court has rejected these allegations in no uncertain terms, holding that the United States "has acted consistent with any legitimate attorney-client privilege." <u>See</u> Court's Oct. 28, 2003 Order at 2.

2.   Several of the defendants have, more generally, raised non-specific claims of attorney-client privilege, which the United States believes lack merit.

-1-

3.    Continuing its attention to this issue, the United States is requesting the appointment of an impartial Special Master to assess defendants' claims of attorney-client privilege with respect to two categories of documents: (1) documents obtained by the United States via search warrant during the investigation of the matter; and (2) documents subpoenaed or requested by the United States from former attorneys for International Heritage, Inc. during the investigation of the matter, but withheld on the basis of attorney-client privilege.  The use of a Special Master for this purpose is common.  See, e.g., United States v. KPMG, 2003 WL 22336072 (D.D.C. October 10, 2003).

4.    Appointment of a Special Master will protect both the rights of the defendants and the United States, and allow for an orderly disposition of defendants' assertions of privilege.  The Special Master should be authorized to secure the documents containing potentially privileged information, review them, and permit access the documents consistent with his or her findings.

## SEARCH WARRANTS

5.    Four search warrants were executed by special agents of the Federal Bureau of Investigation (FBI) and the Internal Revenue Service (IRS-CI) regarding Defendant Stanley H. Van Etten.  See Search Warrant Table, attached as an Exhibit.

6.    As indicated in the attachments to the Search Warrant Table (TABS 1-3), the seized documents were removed from the sites of the searches by federal special agents.  The documents are presently secured and stored in the Terry Sanford Federal Building at 310 New Bern Avenue in Raleigh, North Carolina.

Attorney (AUSA) and an AUSA.  This Taint Team conducted a review of the seized documents on October 8, 2003, and an additional Taint Team consisting of a Supervisory AUSA, two AUSAs, and one paralegal returned on November 5-6, 2003.

11.  The Taint Team reviewed the seized documents and has made a preliminary determination that several documents are arguably covered by attorney-client privilege.  The documents were separated out from the others.

<u>SUBPOENAED DOCUMENTS</u>

12.  In the course of the investigation of this case, documents were provided to the United States pursuant to various grand jury subpoenas.  Where grand jury subpoenas were directed to attorneys, appropriate Department of Justice procedures were followed.  The United States believes that the producing parties (or their attorneys) performed a review of the documents before their production in order to withhold attorney-client information. Most of the parties created and produced detailed "Privilege Logs" which have been made available to defendants.  The privilege logs suggest that a significant number of documents otherwise responsive to grand jury subpoenas have been withheld.

13.  This withholding of documents based on attorney-client privilege is subject to dispute, due to a variety of factors, including IHI's waiver of its attorney-client privilege in bankruptcy court and the crime-fraud exception to the attorney-client privilege.  The attorney-client privilege is central to our

-4-

legal system, but the burden of establishing it is more than a cursory one.[1]

<u>PROPOSED PLAN FOR SPECIAL MASTER</u>

14.  As to the search warrant documents, defendant Van Etten should be directed to produce to the Special Master any information specifying and documenting his claims of personal attorney-client relationships, such as engagement letters and billing records. Then the Special Master should conduct a review of the documents separated out by the "Taint Team" as arguably privileged and such other documents as the Special Master deems appropriate.   To expedite this work, the Special Master may contact the "Taint Team," who will not share any information about such contact with the prosecution team.   If the Special Master determines that any of the reviewed documents are in fact privileged, he or she should generate a log of those documents and file it with the Court along with the copies of the documents, under seal.   The originals may then be returned to Mr. Van Etten.

---

[1]The traditional elements of the attorney-client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to be a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." <u>In re Grand Jury Subpoena</u>, 318 F.3d 379, 862 (2nd Cir. 2003).

15.  As to the documents subpoenaed or requested from law firms which were withheld and itemized on a privilege log, any of the defendants who claim that the privilege log identifies documents in which they hold a personal attorney-client privilege should specify and document such claims to the Special Master.  The Special Master should then review the "privilege logs" produced by said law firms and consult as deemed necessary with counsel for the firms.  The Special Master should then make a determination whether the law firms' assertions of privilege are valid.  It is not necessary for the Special Master to review the documents already produced to the grand jury pursuant to subpoena.  If any defendant still claims to have an existing personal attorney-client privilege in these documents, the defendant should, as the court as previously ordered, specifically identify any document in the United States' possession as to which privilege is claimed, and file with the Court a motion to suppress.

CONCLUSION

Wherefore, the United States respectfully requests that the Court appoint a Special Master for the purposes outline herein.

Respectfully submitted, this 23rd day of December, 2003.

FRANK D. WHITNEY
United States Attorney

BY: _____
J. GASTON B. WILLIAMS
Assistant United States Attorney

BY: _____
CLAY C. WHEELER
Assistant United States Attorney

BY: _____
JOHN STUART BRUCE
Executive Assistant U.S. Attorney

-7-

## CERTIFICATE OF SERVICE

This is to certify that on the 23rd day of December, 2003, a copy of the foregoing United States' Motion For the Court to Appoint A Special Master to Assess Claims of Attorney-Client Privilege was placed in the United States mail, with postage provided, addressed as follows:

Mr. Stanley H. Van Etten       Mr. Paul K. Sun, Jr.
Pro Se                         Attorney at Law
7924 Lake Drive            P.O. Box 3550
Raleigh, NC 27613         Raleigh, NC 27636
         (Defendant Stanley H. Van Etten)

         Mr. John P. O'Hale
         Attorney at Law
         102 South Third Street
         Smithfield, NC 27577
         (Counsel for Defendant Claude William Savage)

Ms. Bridgett Britt Aguirre     Mr. Jeffrey J. Burley
Attorney at Law                 Attorney at Law
202 East Academy Street      402 West Lamar - Suite 108
Fuquay-Varina, NC 27526      Sherman, TX 75090
         (Counsel for Defendant John David Brothers)

         Mr. David W. Long
         Attorney at Law
         P.O. Box 10096
         Raleigh, NC 27605-0096
         (Counsel for Defendant Davin Walter Brown)

                              J. GASTON B. WILLIAMS
                              Assistant United States Attorney

-8-

Ex.6

## AFFIDAVIT OF BRENT E. WOOD

BRENT E. WOOD, having been duly sworn, deposes and says of his own personal knowledge as follows:

1.     I am a citizen and resident of Wake County, North Carolina, and more than 18 years of age, and am competent to provide this affidavit.

2.     I am admitted to practice law as an attorney and counselor of law in the State of North Carolina, having been admitted to practice in August of 1989.  I practice law with Wood & Francis, PLLC (hereinafter "W&F"), and I am a principal of that firm.  I am admitted and qualified to practice as an attorney in the United States District Courts for the Eastern and Middle Districts of North Carolina as well as the United States Court of Appeals for the Fourth Circuit. My practice includes litigation matters as well as general business representation.

3.     At times prior to November 25, 1998, W&F served as legal counsel to International Heritage, Inc. and International Heritage Incorporated (hereinafter collectively "IHI"), two corporations which sought protection pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina on November 25, 1998.  Prior to November 25, 1998, IHI was a party to numerous civil actions filed against IHI and other related individuals which alleged, *inter alia*, that IHI and related parties violated the securities laws of the United States.  In particular, the United States Securities and Exchange Commission (hereinafter "SEC") filed a civil action in the United States District Court for the Northern District of Georgia against IHI and others in March of 1998.  Thereafter, civil actions, all of which attempted to certify a class, were filed alleging claims similar to those of the SEC, including two in Texas, two in Alabama, and two in North Carolina.  In addition, the Montana Securities Commissioner initiated a regulatory proceeding against IHI and others making similar allegations.  The litigation initiated against IHI and related parties, and W&F's prior representation of IHI and related parties, resulted in the compilation of a large volume of documentation which is maintained as part of the records of W&F.  Since November 25, 1998,

W&F has been retained by Holmes Harden, IHI's Trustee appointed by the Honorable A. Thomas Small of the Eastern District of North Carolina, to assist the Trustee in one litigation matter which remained pending as of the Chapter 7 filing of IHI.

4.     For the last several years, W&F has also served as legal counsel to Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC. Mayflower Holdings, Inc. is a North Carolina Corporation incorporated in 1992. Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC are North Carolina limited liability companies organized in 1995 and 1996. Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC are each separate legal entities formed to conduct separate business operations independent of each other. I currently serve as the registered agent for Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC. The business records of Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC, including records maintained by W&F in its capacity as legal counsel for those entities, are voluminous.

5.     W&F has also served as individual legal counsel to Stanley H. Van Etten, the former President of IHI. Mr. Van Etten also has, at least, an indirect relationship with Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC. Upon information and belief, Mr. Van Etten and IHI are targets in a criminal investigation currently being conducted by the Office of the United States Attorney for the Eastern District of North Carolina under the supervision of Mr. Scott Wilkinson, Assistant United States Attorney (hereinafter "AUSA Wilkinson").

6.     In or around October of 1999, AUSA Wilkinson prepared several subpoenas which appeared to seek documents related to IHI, Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and/or Mayflower Capital, LLC (or entities which may be indirectly related to those entities). Those subpoenas were originally delivered to Wade Smith and/or Melissa Hill of Tharrington Smith, individual criminal counsel for Mr. Van

Etten.

     7.      Upon review of the subpoenas delivered in or around October of 1999 to Mr. Smith and/or Ms. Hill, I realized that documents in the possession of W&F might at some point be sought by AUSA Wilkinson, directly or indirectly, by subpoena. As a result, W&F initiated a process of reviewing documents in its possession which might be responsive to the subpoenas prepared by AUSA Wilkinson. The purpose of this review was to determine what documents in the possession of W&F might be protected by either the attorney-client or attorney work-product privilege. In addition, W&F sought to diligently comply with any and all duties which it might have to current and past clients pursuant to the North Carolina Rules of Professional Conduct. At some point between October of 1999 and February of 2000, AUSA Wilkinson withdrew the subpoenas originally delivered to Mr. Smith and/or Ms. Hill.

     8.      In or around February of 2000, AUSA Wilkinson delivered to Mr. Smith and/or Ms. Hill two new subpoenas, copies of which are attached as Exhibits A and B. Exhibit A is and was a subpoena directed to the Custodian of Records of IHI (hereinafter "IHI Subpoena"). Exhibit B is and was a subpoena directed to the custodian of records of Mayflower Holdings, Inc., which sought records of Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC (hereinafter " Mayflower Subpoena"). Upon receipt of the IHI Subpoena, W&F continued and increased its review of records in its possession which might be responsive to the IHI Subpoena, even though the custodian of IHI records (the Bankruptcy Trutee) never requested such a review or any production of such records to AUSA Wilkinson and even though the IHI Subpoena was never formally served on W&F. In addition, W&F, as legal counsel for Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC, initiated a review of records in its possession and in the possession of those entities which might be responsive to the Mayflower Subpoena. The review and/or production of records by W&F in accordance with the IHI and Mayflower Subpoenas has continued through July of 2000 at great expense and effort.

     9.      In order to review and produce records in accordance with the IHI and Mayflower

Subpoenas, W&F has, between November of 1999 and July of 2000, devoted over 1108 working hours to the review and production of records, as well as the preparation of related privilege lists sought by AUSA Wilkinson. A summary of the hours worked has been prepared based upon a review by the undersigned of the billing records of W&F (which are kept in the regular course of buisiness), which summary is attached as Exhibit C. As shown by Exhibit C, W&F devoted the following total working hours to the review and production of records on a monthly basis since November of 1999:

| Month | Working Hours |
| --- | --- |
| November | 30.15 Hours |
| December | 75.8 Hours |
| January | 77.8 Hours |
| February | 61 Hours |
| March | 135.1 Hours |
| April | 62.45 Hours |
| May | 6 Hours |
| June | 256.2 Hours |
| July | 404.15 Hours |

The bulk of the review and production was conducted by Anthony Flanagan, an associate of W&F and a former Assistant United States Attorney for the Eastern District of North Carolina, who devoted over 516 hours to this project between November of 1999 and July of 2000. From an hourly billing perspective, based upon the hourly billing rates of the employees of W&F who assisted with this project, the total cost for this project between November of 1999 and July of 2000 is $124,321.50. Upon information and belief, the total amount of pages involved in this review and production project is approximately 275,000 pages.

10.    After reviewing records in its possession (as well as in the possession of Mayflower Holdings, Inc., Mayflower Aviation, LLC, Mayflower Venture Capital, LLC, and Mayflower Capital, LLC) which might be responsive to the IHI and Mayflower Subpoenas and

separating those documents which, in the good faith opinion of W&F, might be protected by either the attorney-client or attorney work-product privileges, W&F retained the assistance of two local copy services to assist with the copying of the records to be produced in accordance with the IHI and Mayflower Subpoenas. Because of the volume of documents involved, the copying costs have been very significant. Attached as Exhibit D is a summary of the copy costs incurred by W&F with regard to the production sought by AUSA Wilkinson, which shows copy costs in the total amount of $70.921.82 incurred by W&F with regard to this project.

This the 21st day of August, 2000.


_____
Brent E. Wood


Sworn to and subscribed before me this the
_____ day of August, 2000.



Notary Public
My Commission Expires:




F:\wp\vanetten.ihi.mayflower.affofWood.doc

# THE SANFORD HOLSHOUSER LAW FIRM

PLLC

SENATOR TERRY SANFORD (1917-1998)
GOVERNOR JAMES E. HOLSHOUSER, JR.

ONE EXCHANGE PLAZA
219 FAYETTEVILLE STREET
SUITE 1000
**RALEIGH, NORTH CAROLINA 27601**

WASHINGTON OFFICE
SUITE 470
901 15TH STREET N.W.
WASHINGTON, D.C. 20005
TELEPHONE 202/371-6070
FACSIMILE 202/371-6279

MAILING ADDRESS:
POST OFFICE BOX 2447
RALEIGH, NORTH CAROLINA 27602

TELEPHONE 919/755-1800
FACSIMILE 919/829-0272

August 11, 2000

**Via Hand Delivery**

Scott Wilkinson, Esq.
Assistant United States Attorney
Eastern District of North Carolina
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, North Carolina 27601-1461

      Re:    **Grand Jury Subpoena to the Law Firm of Wood & Francis**

Dear Scott:

      I am writing to confirm and thank you for our meeting today regarding the above-referenced subpoena. By way of clarification, you have confirmed that, at this time, the scope of the subpoena relates specifically to documents in the possession of the Wood & Francis law firm related to International Heritage, Inc. and/or International Heritage, Incorporation ("IHI") only, and not to any other entities, including "Van Etten-related" businesses as described in footnote 1 of your "Motion to Show Cause and to Enforce Grand Jury Subpoena," filed under seal on August 8, 2000. Thanks also for extending me the professional courtesy of allowing me the time to come up to speed in this matter, including time for me to make an independent review of the documents requested so as to ensure appropriate compliance. To this end, there have been identified three (3) groups of documents within the universe of the proposed production, as follows:

      1)      Documents heretofore identified in a letter to you from Anthony Flanagan, dated July 20, 2000, as "non-privileged documents". I refer to these documents as "the 15,000" because I am informed that this is approximately how many pages are believed to be in this group;

# THE SANFORD HOLSHOUSER LAW FIRM
PLLC

Scott Wilkinson, Esq.
August 11, 2000
Page -2-

2)      Those documents identified on the "Privilege List" (a revised copy of which being
        heretofore supplied to you by Wood & Francis) that identifies documents to which
        an attorney-client privilege has been asserted by IHI; and

3) .    The remaining documents on the privilege log not included in the two items
        above, which include documents to which an attorney-client privilege has been
        identified as being asserted by some individual or entity other than IHI.  This
        group also includes documents to which a work product privilege is being asserted
        by counsel for various individuals, including counsel for IHI.

Based on the three (3) categories identified above, we agreed that I would work towards
production of responsive documents from group 1 above for Wednesday, August 16, 2000 at
11:00 a.m.  We have further agreed that with regard to the documents which have not been
reviewed and/or produced by Wednesday, we will coordinate a date for completion of the
exercise at a future time.

As mentioned in our meeting, I have had virtually no time to look at any of the foregoing
documents given that I have spent my efforts thus far confirming my engagement and getting my
bearings in this most complicated matter.  Thus, I cannot, at this juncture, make any
representation about the qualitative nature of the designations of the documents to the various
categories.  Given your July 25, 2000 correspondence to Anthony Flanagan at Wood & Francis,
together with our conversation relative to the firm and the individuals within the firm's status as
either a "subject" or "target," I believe I have an ethical obligation to make an independent
review and determination of the documents covered by your subpoena for any and all appropriate
privileges which may be applicable to the firm or attorneys within the firm.

Notwithstanding my clients' earnest desire to be forthcoming and fully cooperative, your
pointed instruction to me that I fully inform the individual who will appear to make the return
about the potential ramifications of his/her testimony, gives me pause.  I will certainly confer
with my client on this subject.  I will also report back to you before the close of business on
Monday, August 14, 2000 (or no later than the first thing on Tuesday) regarding my due
diligence analysis, the status of my document review, and my thoughts relative to the testimony
associated with the act of production.

# THE SANFORD HOLSHOUSER LAW FIRM
PLLC

Scott Wilkinson, Esq.
August 11, 2000
Page -3-

———————————————

      Scott, it is my sincere hope that we will be able to amicably work through the various issues at hand. Be assured that my associate, Dan Cahill, and I will make every effort to work with you in a professional fashion in an effort to resolve those things we can reach agreement on and to responsibly address those matters which we will end up "agreeing to disagree" on.

                    Sincerely,

        **THE SANFORD HOLSHOUSER LAW FIRM PLLC**

        Kieran J. Shanahan

KJS/kw

cc:    Wood & Francis, PLLC

TOTAL P.04

Ex. 7

# STANLEY H. VAN ETTEN
7924 Lake Drive
Raleigh, NC 27613

**Home: (919) 847-7885**          **Facsimile: (919) 870-6481**
**Home Office (919) 841-4489**     **E-mail:** vanettens@aol.com

---

November 12, 2003

Francis & Umstead, PLLC
Mr. Charles Francis
434 Fayetteville Street Mall
Raleigh, NC 27601

Dear Mr. Francis:

I have not received any response from you concerning my letters to you of August 23, 2003 and October 9, 2003, I am optimistic that you will want to cooperate and I encourage you to do so. Although you may have not been aware of everything Brent Wood was doing, as a former partner with Wood and Francis, I believe you are liable and accountable to the ethical and legal issues I raise.

My investigation into Brent Wood and the Wood & Francis Law Firm continues and is developing. I am also looking into the relationship between Brent Wood and Kieran Shanahan, as well as how that relationship contributed and assisted in the legal and ethical issues of my concern, as well as my criminal case. I ultimately believe Mr. Wood and Mr. Shanahan willfully withheld information from you and me, further concealed the true nature of their "secret" dealings with the Government, and then willfully mislead me as a client. It is outrageous and scandalous that Wood & Francis would violate such privileges and conceal such adverse interests, but then to bill me for all of Mr. Wood's secret dealings and evidence production to the Government, is beyond comprehension.

As you are aware, I have previously alleged the firm's violation and production of attorney-client documents and several undisclosed conflict of interests, in their representation of me individually. Please refer to my previous letters of August 23, 2003 and October 9, 2003. I also possess "newly" discovered evidence I share below.

I am requesting a meeting with you to review and discuss all the evidence that again implicates unethical and possibly illegal conduct by your former partner, Brent Wood and your prior law firm Wood & Francis. I take this matter very seriously and it is something that will not "go away" without retribution.

The recent "new" evidence supports that Wood & Francis personally and improperly billed me for the costs and hours incurred for complying with a subpoena directed to Wood & Francis that

pertained to IHI and only IHI.  <u>It is now apparent that I have been footing IHI's post-bankruptcy legal fees, hidden within Van Etten and/or Mayflower billings.</u>

I have never agreed to personally incur the costs of Wood & Francis representation of IHI or copy costs associated with the firm's compliance with a subpoena for IHI records.

A significant amount of the legal hours billed in 2000 to me was for the firm's representation of IHI and not me individually.  The fraudulent law firm professional fees are in excess of 1,053.65 hours, billed and paid by me individually at a cost of $124,321.50.

Further, Wood & Francis personally and improperly billed me for copy expenses relating to the IHI subpoena, the custodian of records for Wood & Francis, in excess of $70,921.82.  I have never agreed to personally incur the copy costs associated with your complying with a subpoena for IHI records. This allegation is supported in fact by Wood & Francis billing records, my payment records, Brent Wood's Affidavit, Brent Wood's Deposition Transcript, Wood & Francis Court Filings and Mr. Shanahan's letters and other communications.  My concerns of double billing or improper billing are based purely on factual documents and records, all of which are at the hand and authority of Brent Wood and Wood & Francis. The proper party should have been the IHI Trustee, Holmes Hardin, but Brent was working for him and the estate Ex Parte too. Brent's claim for attorney fees is still pending in the IHI estate and I fully intend to explore his claim to fees in this proceeding, as well as all issues for which Brent was involved, including my multi-million dollar settlement.

In an attempt to reveal some of the evidence in support of my concerns, I will list some documents and quotes from the same herein.  All evidence documents are available when we meet, provided you agree.  If you chose not to meet, I will assume the concerns have even more merit and I will be forced to take appropriate steps in that regard.

However, for the moment and after considerable thought, I am reaching out to you because I cannot believe that you would willingly participate in such outrageous violations.  I hope you can offer some additional information or explanation, as I am in "shock and disbelief" of what the "new" evidence proves.

I am offering some additional thoughts for your consideration and request an immediate response for a private meeting, not to attack, but to share information and come to some understanding of what and how things have transpired.  I am asking for your honesty and assistance in understanding, in return, I shall offer the same.

The following is the limited version of the evidence I am still collecting:

**August 11, 2000 letter from the Sanford Holshouser Law Firm**
**To AUSA Scott Wilkinson, Representing Wood & Francis Law Firm**

- "Grand Jury Subpoena to the Law Firm of Wood & Francis, PLLC"
- "you (AUSA Wilkinson) have confirmed that, at this time (August 11, 2000), <u>the scope of the subpoena relates specifically to documents in the possession of the Wood &</u>

Francis, PLLC law firm related to International Heritage, Inc. and/or International Heritage, Incorporation only, and not to any other entities, including "Van Etten-related" businesses as described in footnote 1 of your "Motion to Show Cause and to Enforce Grand Jury Subpoena," filed under seal on August 8, 2000."

- "Given your July 25, 2000 correspondence to Anthony Flanagan at Wood & Francis, PLLC together with our conversation relative to the firm and the individuals within the firm's status as either a "subject" or "target," I believe I have an ethical obligation to make an independent review and determination of the documents covered by your subpoena for any and all appropriate privileges which may be applicable to the firm or attorneys within the firm."

- "Notwithstanding my clients' earnest desire to be forthcoming and fully cooperative, your pointed instruction tome that I fully inform the individual (Brent Wood) who will appear to make the return about the potential ramifications of his/her testimony, gives me pause."

- Who made an "independent review" for Van Etten and Mayflower, of the approximate 300,000 pages of documents and records and the 37 CD-ROMS, all of which were produced by Wood & Francis and Brent Wood to the Government?

### August 21, 2000 Affidavit of Brent Wood
### EDNC Chief Judge Boyle

- Wood & Francis, in support of its various motions "Under Seal" and in its own defense, mislead the Court by way of Mr. Wood's affidavit. Mr. Wood's affidavit clearly creates the perception of a fully compliant Wood & Francis who is itself a victim and has been unduly burdened at tremendous financial and professional cost, when in fact the firm was billing me for every hour and every cost while withholding full and fair disclosure of the same, to the Court and me.

- "Wood & Francis, PLLC devoted the following total working hours to the review and production of records on a monthly basis since November 1999: November 30.15, December 75.8, January 77.8, February 61, March 135.1, April 62.45, May 6, June 256.2 and July 404.15" for a total of 1,053.65 hours.

- "based on the hourly billing rates of the employees of W&F who assisted with this project, the total cost for this project between November of 1999 and July of 2000 is $124,321.50. Upon information and belief, the total amount of pages involved in this review and production project is approximately 275,000 pages."

- "W&F retained the assistance of two local copy services to assist with the copying of the records to be produced in accordance with the IHI and Mayflower Subpoenas." Attached as Exhibit D is a summary of the copy costs incurred by W&F with regard to the production sought by AUSA Williams, which shows copy costs in the total amount of $70,921.82 incurred by W&F with regard to this project."

- "F:\wp\vanetten.ihi.mayflower.affofWood.doc" Wood & Francis File Name

### January 9, 2002 Deposition Transcript of Brent Wood

- "Those clients which I believe are defendants in the litigation (Stan Van Etten, Mayflower Holdings, Mayflower Capital) that has been initiated and that is the subject of

this deposition have not waived the attorney-client privilege." "But I wanted to make it clear on the record that any statement I make in this deposition is not intended to be a waiver by me or by the client of the attorney-client privilege."

- "Okay, and again, most of what we are talking about here will be the time frame of probably 1999 into it looks like August 2000."
- "My recollection is that Data Imaging was engaged in the very least on behalf of Mr. Van Etten." "In all candor, I – I can't recall whether or not we were engaging them just on behalf of Mayflower Capital, Mayflower Holdings."
- "And s to the legal services that were the subject of these copies, I believe most, if not all, of the legal services were being billed to Mr. Van Etten individually…."
- "the documents being copied included some documents that I guess technically belonged to Mayflower Holdings or Mayflower Capital."
- "there were two principals at Wood & Francis, PLLC, myself and Charles Francis. Charles and I stopped practicing law together, I think the last day was September 30, 2000."
- "There are copies of invoices, beginning the dates of 6/20/2000, 6/30/2000, 7/18/2000, 8/14/2000, 8/17/2000, another invoice dated 8/17/2000, a third invoice dated 8/17/2000, invoice dated 8/23/2000, an invoice dated 8/25/2000, an invoice dated 8/28/2000, and a final invoice dated 8/31/2000"
- "No, we hired them for clients. We didn't hire them for the law firm unless it was just for the law firm. I mean, I'm sure there has been at some point some copy project that was done for the law firm –"
- "It may have been a half million copies. Really, it could have been. My recollection at one time is that the copies and the originals of a large portion of what was done took up an entire office from the floor to ceiling. And that's a lot of boxes."
- "It was a huge, huge number. It was hundreds of boxes of materials. You know, it may be two or three hundred thousand copies. It was a monumental task at best. There are certainly larger discovery projects around in the legal world, but there's not a whole lot of them."

## August 28, 2000 Letter and Agreement
### Wyrick Robbins Yates & Ponton with Tharrington Smith

- "our firm has received a Grand Jury Subpoena from the United States District for the Eastern District of North Carolina addressed to our custodian of records."
- "we are directing our inquiry to you as to whether Mr. Van Etten is willing to waive his individual attorney-client privilege with regard to all documents, files and records in our possession relating to work done for or on behalf of him individually"
- "No, Mr. Van Etten does not agree to waive the attorney-client privilege with the law firm of Wyrick Robbins Yates & Ponton LLP regarding all documents, files and records of whatever sort maintained by the firm relating to legal work done for him or on his behalf"

**Wood & Francis, PLLC Legal Representation**

- Stanley H. Van Etten U.S. Bankruptcy Court
- Mayflower Holdings and Mayflower Capital U.S. Bankruptcy Court
- IHI Bankruptcy Estate and Trustee U.S. Bankruptcy Court, Ex Parte
- Stanley H. Van Etten Criminal Investigation
- Stanley H. Van Etten SEC NDGA Court
- Stanley H. Van Etten Assertion of Attorney-Client Privilege EDNC Court
- Stanley H. Van Etten 2004 Issues (IHI President/CEO) U.S. Bankruptcy Court
- Mayflower Capital SEC Investigation and NASD Investigation
- Stanley H. Van Etten IRS IHI Issues
- Stanley H. Van Etten IHI Directors and Officers Liability Issues
- Stanley H. Van Etten SEC Settlement Issues
- Stanley H. Van Etten $5 Million Cash Bond Issues in all Courts
- Stanley H. Van Etten NCAG, GA, MT, et.al.
- In addition, many more…………

**August 16, 2000 Motion to Proceed "Under Seal"**
**Willful Concealment of "Adverse Interest" Conflicts of Interest**

- Filed on behalf of Wood & Francis, PLLC by The Sanford Holshouser Law Firm, Kieran Shanahan, for Grand Jury Subpoena issued to custodian of records for the Wood & Francis, PLLC Law Firm to produce documents and records for clients "International Heritage, Inc. and/or International Heritage Incorporated" NOT me and NOT my companies.
- This secret cooperation resulted in the production of more than 127 Banker Boxes of Van Etten, Mayflower Holdings, Mayflower Capital, et.al. documents and records "voluntarily" and without Grand Jury Subpoena, as is admitted by Mr. Shanahan and Mr. Wilkinson in the August 11, 2000 letter, which is supported by the Government's Table of Evidence.  The secret production of more than 300,000 pages of documents and records in total, not including another half-million more documents and records contained on 37 CD-ROMs produced as well, and countless interviews and testimony by Mr. Wood.
- The Government's Table of Evidence includes numerous references to evidence being "attorney-client privilege" which is then cataloged as produced by Wood & Francis on August 16, 2000, which has been and continues to be publicly available.

U.S. Bankruptcy Judge Small, in his Order, directed the attorneys NOT to release any individual persons attorney-client privilege documents or records, not even for individuals as former "officers/directors" of IHI who were only represented by legal counsel of the Company in that capacity.  Wood & Francis violated the Court's Order and my attorney-client privilege, and then billed me for its legal representation of IHI and the firm.

Although there are those in your community that may believe, I am not credible, I assure you the evidence is.  I have not received any response to my letter of October 9, 2003 letter and the only

response from my August 23, 2003 letter was a generic self-serving response from Mr. Wood. I have not received any response from anyone defending the Wood & Francis, PLLC Law Firm.

Once again, I am asking for your professional cooperation, for you to consider your ethical responsibility to the legal profession and appeal to your honesty, integrity and our previous friendship and relationship, for assistance in this regard, as I do not believe you are fully aware of Brent Wood's activities and concealed wrongdoing. If you are not, I most certainly can appreciate your shock and concern, and will work with you in that regard, provided you work with me in an honest and forthright manner. If not, I will be forced to assume you were fully aware of these issues, facts and my concerns as described herein and in my OIG Complaint.

Although not preferable by me, absent contact or a written response within five (5) business days, I must assume you do not intend to cooperate and I will continue my investigation and resort to other more formal methods of proceeding hereafter.

Sincerely yours,


Stanley H. Van Etten

EX 8

RICHARD W.
U.S.D.C. A

SEP 17 1999

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

SECURITIES AND EXCHANGE COMMISSION,          CIVIL ACTION NO.
                                              1-99-CV-0503-RWS
                        Plaintiff,

                v.



ENTERED ON DOCKET

SEP 20 1999

By:        Deputy Clerk

INTERNATIONAL HERITAGE, INC.,
STANLEY H. VAN ETTEN, CLAUDE W.
SAVAGE, LARRY G. SMITH and
INTERNATIONAL HERITAGE,
INCORPORATED, a Nevada corporation,

                        Defendants.

RECEIVED
SEP 22 1999

FINAL JUDGMENT OF PERMANENT INJUNCTION
AS TO DEFENDANT STANLEY H. VAN ETTEN

        Plaintiff, Securities and Exchange Commission ("Commission"),
having filed its complaint in this matter against defendant
Stanley H. Van Etten ("Van Etten") and others, seeking injunctive
and other relief, and said defendant having entered a general
appearance, admitted the jurisdiction of this court over him and
over the subject matter of this action, waived entry of findings
of fact and conclusions of law pursuant to Rules 52 and 65 of the
Federal Rules of Civil Procedure with respect to the relief
granted in this order, and without admitting or denying any of the

MAY. 10. 2000   1:59PM      KUTAK ROCK

allegations of the complaint and having consented to the entry of this order, it is hereby,

ORDERED that defendant Van Etten, his officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them be, and they hereby are, permanently restrained and enjoined from, directly or indirectly:

(1) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell any securities in the form of investment contracts, or any other security, through the use of any prospectus or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(2) carrying securities in the form of investment contracts, or any other security, or causing them to be carried through the mails or in interstate commerce, by means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities;

(3) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy,

2

MAY. 10. 2000  2:00PM    KUTAK ROCK

through the use or medium of any prospectus or otherwise, any interest in securities, in the form of investment contracts, or any other security, unless and until a registration statement is filed with the Commission as to such security, or while a registration statement filed with the Commission as to such security is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. 77h,

in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. 77e(a) and 77e(c).  Provided, however, that nothing in the foregoing portion of this order shall apply to any security or transaction which is exempt from the provisions of Section 5 of the Securities Act, 15 U.S.C. 77e.

II.

IT IS FURTHER ORDERED that defendant Van Etten, his agents, servants, employees, attorneys and those persons in active concert or participation with them, in connection with the purchase or sale or in the offer or sale of securities, by use of any means or instrumentalities of interstate commerce or any means or instruments of transportation or communication in interstate commerce, or by the mails or any facility of any national

3

MAY. 10. 2000   2:00PM      KUTAK ROCK

securities exchange, be, and they hereby are, restrained from, directly or indirectly:

    (1)    employing any device, scheme or artifice to defraud;

    (2)    engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person;

    (3)    obtaining money or property by means of any untrue statement of a material fact, or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (4)    making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading,

in violation of Section 17(a) of the Securities Act, 15 U.S.C. 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and Rule 10b 5, 17 C.F.R. 240.10b-5, thereunder.

III.

IT IS FURTHER ORDERED that defendant Van Etten, his officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, be and hereby are, restrained from, directly or indirectly, as aiders and abettors or otherwise, filing reports with the Commission, on Form 8-K or otherwise,

4

MAY. 10. 2000  2:00PM    KUTAK ROCK                          NO. 8828   P. 9

which are false and misleading or fail to disclose material facts
necessary to make the statements made not misleading, in violation
of Section 15(d) of the Exchange Act, 15 U.S.C. 78o(d), and Rule
15d-11, 17 C.F.R. 240.15d-11.

IV.

IT IS FURTHER ORDERED that defendant Van Etten pay
disgorgement in the amount of $7,630,450, representing his gains
from the conduct alleged in the Complaint, plus pre-judgment
interest thereon to be computed at the IRS rate on delinquent
taxes, provided that Van Etten shall:

(a) pay $50,000 of this amount to the registry of the Court
within sixty (60) days from the entry of this judgment, and pay
installments of $25,000 due every 90 days thereafter until the
cash payments total $150,000.  Upon receipt of the disgorgement
amounts by the Court, the clerk of the Court will issue a
nonrefundable check for the proceeds to the Chapter 7 Bankruptcy
Trustee ("Trustee") in In re International Heritage, Inc., Case
No. 98-02675-5-ATS (Bankr. E.D.N.C.) (that case and In re
International Heritage, Incorporated, Case No. 98-02674-5-ATS
(Bankr. E.D.N.C.) hereinafter the "Bankruptcy cases"), to be used
first for the payment of his allowed § 326(a) commissions without
reduction and all administrative fees and expenses allowed
pursuant to §§ 330 and 503 of the United States Bankruptcy Code in
the Bankruptcy cases, then for payment of any outstanding fees or

Lloyd Whitaker, the monitor in this case, then for pro rata (i) payment of claims by independent retail sales representatives ("IRSRs") of IHI who made payments to IHI and never received a product or commission and (ii) the first $300,000 of any allowed claim which the surety, ACSTAR Insurance Company ("ACSTAR"), may have against the estate; then for claims of purchasers of IHI convertible notes during 1997, then to pay claims of other IRSRs and thereafter to pay the claims of other creditors according to the priorities set forth in the United States Bankruptcy Code, provided that, notwithstanding the foregoing, none of such proceeds shall be used to pay any claims of defendants Stanley H. Van Etten, Claude W. Savage or Larry G. Smith, or of any entity controlled by them, or of any other officer or director of IHI;

(b) within 30 days of this Order, waive any and all claims, save and except any claims against insurance proceeds based on his personal claims from Executive Risk and TIG Insurance companies, he or any of his affiliated entities may have in the Bankruptcy cases, including but not limited to: (i) Proof of Claim filed in the Bankruptcy cases by Van Etten in an amount in excess of $5,420,000; (ii) Proof of Claim filed in the Bankruptcy cases by Mayflower Capital, LLC, an affiliated entity, in the amount of $1,158,520.04; and (iii) Proof of Claim filed in the Bankruptcy cases by Mayflower Holdings, Inc., an affiliated entity, in the amount of $113,456;



MAY-10 2000  2:00PM    KUTAK ROCK                                    NO. 0020   P. 9

(c) within 30 days of this Order, assign to the Trustee any and all claims which Van Etten may have against the surety bond posted in this action and the bond collateral in the amount of $3,500,000 held by ACSTAR, including any reversionary interests, relating to the Surety Bond posted pursuant to the orders of this Court; and

(d) transfer all unencumbered and currently owned shares of common stock and options of International Heritage, Incorporated, a Nevada corporation, including but not limited to 361,022 shares of stock and 5,541,800 options, to the Trustee and surrender all claims thereto within 30 days of the date of this Order

In the event Van Etten files a Petition in Bankruptcy, Van Etten shall not contest any complaint by the Commission or the Trustee to determine the nondischargeability of any debt, payment, transfer or obligation of Van Etten pursuant to this Order. Based upon defendant Van Etten's sworn representations in his Statement of Financial Condition dated May 15, 1999, and submitted to the Commission, payment of the remaining disgorgement and pre-judgment and post-judgment interest thereon is waived.  This waiver is contingent upon the accuracy and completeness of Van Etten's sworn Statement of Financial Condition.  If at any time following the entry of this Final Judgment the Commission obtains information indicating that Defendant Van Etten's representations to the Commission concerning his assets, income, liabilities, or net

7

worth were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and without prior notice to defendant Van Etten, petition this Court for an order requiring defendant Van Etten to pay the remaining portion of the disgorgement and pre-judgment and post-judgment interest thereon. In connection with any such petition, the only issue shall be whether the financial information provided by defendant Van Etten was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made. In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering defendant Van Etten to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Final Judgment, and the Commission may also request additional discovery. Defendant Van Etten may not, by way of defense to such petition, challenge the validity of this Consent or the Final Judgment, contest the allegations in the Complaint filed by the Commission, the amount of disgorgement and interest, or assert that disgorgement should not be ordered.

V.

IT IS FURTHER ORDERED THAT based upon defendant Van Etten's sworn representations in his Statement of Financial Condition dated May 15, 1999, and submitted to the Commission, the Court is

8

not ordering him to pay a civil penalty pursuant to Section 20(d)
of the Securities Act, 15 U.S.C. 77t(d), and Section 21(d) of the
Exchange Act, 15 U.S.C. 78u(d).  The determination not to impose a
civil penalty is contingent upon the accuracy and completeness of
Van Etten's sworn Statement of Financial Condition. If at any time
following the entry of this Final Judgment the Commission obtains
information indicating that defendant Van Etten's representations
to the Commission concerning his assets, income, liabilities, or
net worth were fraudulent, misleading, inaccurate or incomplete in
any material respect as of the time such representations were
made, the Commission may, at its sole discretion and without prior
notice to defendant Van Etten, petition this Court for an order
imposing a civil penalty.  In connection with any such petition,
the only issues shall be whether the financial information
provided by defendant Van Etten was fraudulent, misleading,
inaccurate or incomplete in any material respect as of the time
such representations were made, and the amount of civil penalty to
be imposed.  In its petition, the Commission may move this Court
to consider all available remedies, including, but not limited to,
ordering defendant Van Etten to pay funds or assets, directing the
forfeiture of any assets, or sanctions for contempt of this Final
Judgment, and the Commission may also request additional
discovery.  Defendant Van Etten may not, by way of defense to such
petition, challenge the validity of this Consent or the Final

9

Judgment, contest the allegations in the Complaint filed by the Commission, or assert that payment of a civil penalty should not be ordered.

VI.

IT IS FURTHER ORDERED that Van Etten will appear and testify at any trial of this matter upon the receipt of a subpoena served upon him by U.S. mail, with a copy to his counsel, and that this Court will retain jurisdiction over this matter and defendant Van Etten for all purposes and will order other and further relief that this Court deems appropriate under the circumstances.

VII.

IT IS FURTHER ORDERED THAT THE Order entered by this Court on April 3, 1998 shall be modified to conform with the terms of this order as to Van Etten.

Done and ordered at _11:00_ o'clock _A_ m. this _17th_ day of _September_, 1999 at _Valdosta_, Georgia.

_____
UNITED STATES DISTRICT JUDGE

10

*Ex. 9*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Case #1-98-CV-0803

Securities Exchange Commission Vs. Stanley H. Van Etten, et.al.
The Honorable U.S. District Judge Richard W. Story Presiding

Attorneys representing Stanley H. Van Etten (individually) throughout this matter:

Kutak Rock
Michael K. Wolensky, Esq.
225 Peachtree Street, Suite 2100
Atlanta, GA  30303
Telephone 404/ 222-4600
Facsimile 404/222-4654

Kutak Rock
Robert Brunton, Esq.
225 Peachtree Street, Suite 2100
Atlanta, GA  30303
Telephone 404/ 222-4600
Facsimile 404/222-4654

Kutak Rock
David Joel Gellen, Esq.
225 Peachtree Street, Suite 2100
Atlanta, GA  30303
Telephone 404/ 222-4600
Facsimile 404/222-4654

Wood & Francis
Brent E. Wood, Esq.
Two Hannover Square, Suite 2300
Raleigh, NC 27601
Telephone 919/754-8802
Facsimile 919/674-2010

Wood & Francis
Charles Francis, Esq.
Two Hannover Square, Suite 2300
Raleigh, NC 27601
Telephone 919/754-8802
Facsimile 919/674-2010

Wyrick, Robbins, Yates & Ponton, LLP
F. Daniel Bell, Esq.
4101 Lake Boone Trail, Suite 300
Raleigh, NC  27607
Telephone 919/781-4000
Facsimile 919/781-4865

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CIVIL ACTION NO. 1-98-CV-0803-RWS |
| Plaintiff, | |
| v. | |
| INTERNATIONAL HERITAGE, INC., STANLEY H. VAN ETTEN, CLAUDE W. SAVAGE, LARRY G. SMITH and INTERNATIONAL HERITAGE, INCORPORATED, a Nevada corporation, | |
| Defendants. | |

CONSENT TO FINAL JUDGMENT OF PERMANENT INJUNCTION
AS TO DEFENDANT STANLEY H. VAN ETTEN

1.    Defendant Stanley H. Van Etten ("Van Etten") submits to the in personam jurisdiction of this Court over him, acknowledges service of summons and the Complaint in this matter, admits the jurisdiction of this Court over the subject matter of this action, waives the entry of findings of fact and conclusions of law pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure, and hereby consents to the entry of a Final Judgment of Permanent Injunction ("Order") without further notice in the form annexed hereto and incorporated by reference herein.

2.   Defendant Van Etten, without admitting or denying any of the allegations of the Commission's Complaint, except as to jurisdiction which he admits, consents to the entry of the order attached as Exhibit A which, among other things, requires him to disgorge gains associated with his relationship to the defendants International Heritage, Inc. and International Heritage, Incorporated, based, in part, upon his intent to divest himself of any ill-gotten gains as alleged in Plaintiff's Complaint, and permanently restrains and enjoins him from violating Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933, 15 U.S.C. 77e(a), 77e(c) and 77q(a), and Sections 10(b) and 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78j(b) and 78o, and Rules 10b-5 and 15d-11, 17 C.F.R. 240.10b-5 and 240.15d-11, thereunder.

3.   Defendant Van Etten enters into this Consent voluntarily and acknowledges that no promise or threat of any kind whatsoever has been made by Plaintiff Securities and Exchange Commission or any member, officer, agent or representative thereof to induce him to enter into this stipulation and consent, save and except the allegations contained in the Complaint, other pleadings filed in this case, and press releases of the Plaintiff Securities and Exchange Commission in this matter.

4.   Defendant Van Etten waives any right he may have to appeal from the entry of the Order.

5.   Defendant Van Etten agrees that the Order may be presented by the Commission to the Court for signature without further notice.

6.   Defendant Van Etten agrees that this Consent shall be incorporated into the Order with the same force and effect as if fully set forth therein.

7.   Defendant Van Etten agrees that he will not oppose the enforcement of the Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and he hereby waives any objection he may have based thereon.

8.   Defendant Van Etten hereby understands that the Plaintiff, at its sole and exclusive discretion, may refer this matter or any information or evidence gathered in connection therewith, or derived therefrom, to any person or entity, public or private, having criminal, civil or administrative jurisdiction for action thereby.

9.   Defendant Van Etten further states that he understands that the Plaintiff cannot and does not confer upon him, or upon any other person or entity, immunity from any criminal proceeding for any actions related to or arising from this or any other matter.

10.   Defendant Van Etten acknowledges that he has read, understands, and agrees to comply with the policy of plaintiff Commission, set forth in 17 C.F.R. §202.5(e), not to permit a defendant to consent to a judgment or order that imposes a sanction while denying any allegation in the complaint. Defendant Van Etten agrees not to take any action or make any public statement denying, directly or indirectly, any allegation in the complaint. Defendant Van Etten further agrees not to take any

action or make any public statement which creates, or tends to create, the impression that the complaint is without factual basis. Nothing in this provision affects said defendant's testimonial obligations or right to take legal positions in other non-Commission litigation. Defendant Van Etten agrees to appear and testify at any trial of this case if subpoenaed by any party, and will accept service of such subpoena by U.S. mail, with a copy to his counsel.

Executed this 17 day of June, 1999.

Stanley H. Van Etten

State of North Carolina

County of Wake

On this 17th day of June, 1999, before me personally appeared Stanley H. Van Etten, known to me to be the person who executed the foregoing Stipulation and Consent and he acknowledged to me that he executed the same.

NOTARY PUBLIC                    DATED: June 17, 1999.

MY COMMISSION EXPIRES: 2-22-2004

RHONDA J. PEDITO
NOTARY PUBLIC
CUMBERLAND COUNTY, NC