**FILED**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

JAN 2 9 2004

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTERNATIONAL HERITAGE. INC. | ) | Case No. 98:02675-5-AVS |
| (TAX ID#: 56-1921093) | ) | CHAPTER 7 |
| | ) | |
| INTERNATIONAL HERITAGE | ) | Case No. 98:02674-5-AVS |
| INCORPORATED | ) | CHAPTER 7 |
| (Tax ID#: 87-0421191) | ) | |
| | ) | |
| Address: 2626 Glenwood Avenue, Suite 200 | ) | **JANUARY 29, 2004** |
| Raleigh, NC 27608 | ) | **EVIDENTIARY HEARING BRIEF** |
| | ) | |
| Debtors. | ) | |

**The Honorable A. Thomas Small, Chief United States Bankruptcy Judge Presiding**

### HEARING ORDER AND NOTICE

Motion for Formal Investigation for Impropriety by Trustee Holmes P. Harden, Motion to Remove IHI Trustee Holmes P. Harden and Stay Disbursement of Attorney Fees and Expenses, and Motion to Stay IHI Disbursements (Court Docket #553).

Notice of Deposition and Issuance of Subpoena, IHI Trustee Holmes P. Harden (Court Docket #557). Notice of Deposition and Issuance of Subpoena, IRS Revenue Agent Michael Delgado (Court Docket #558). Notice of Deposition and Issuance of Subpoena, NCAG Assistant Attorney General Kristine Lanning (Court Docket #559).

### NEWLY DISCOVERED GOVERNMENT EVIDENCE

Newly discovered Government[1] information implicates; IHI Trustee, Holmes P. Harden, former AUSA Scott Wilkinson, SEC attorney Bill Hicks and NCAG attorney Kristine Lanning, in a Collusive Scheme to Deprive Van Etten of his Constitutional Rights and to Obtain Information in Violation of Van Etten's Attorney-Client Privilege.

---

[1] U.S. Attorney's Office, Raleigh, NC. Government Table of Evidence Case #5:02-CR-263

37 ppp

570

On August 20, 2003, and December 15, 2003 through January 6, 2004, while conducting supervised Discovery of Government Evidence in the Federal Building,[2] Van Etten discovered <u>Government Documents and Records</u>, implicating the Trustee and Government in the collusive scheme alleged hereto.

On October 8, 2003, a <u>U.S. Department of Justice "Taint Team"</u> was called to Raleigh, North Carolina to further investigate Government Evidence and the information obtained in violation of attorney-client privilege, at the request of Government, AUSA Gaston Williams, attorney in charge of the criminal matter.

On November 5th and 6th, 2003, <u>a second and independent "Taint Team"</u> was sent to Raleigh, North Carolina to investigate Government Evidence for information obtained in violation of attorney-client privilege, at the direction of the <u>Office of the U.S. Inspector General.</u>

**Each independent "Taint Team" found and confirmed, that the Government did in fact Obtained Information in Violation of Van Etten's Attorney-Client Privilege, for which the investigation thereto continues.**

Because of the two (2) "Taint Teams" findings, on December 23, 2003, the Government filed a motion in U.S. District Court requesting the court to appoint a Special Master.

The first collusive activity by the individuals in U.S. Bankruptcy Court occurred on or about December of 1998. The first collusive filing in U.S. Bankruptcy Court occurred on January 4, 1999 (#32), Application for Authority to Employ and Appoint Attorney, Holmes P. Harden.

The scheme to deprive Van Etten of his constitutional rights and privileges was furthered in U.S. District Court, EDNC-Raleigh[3] and U.S. District Court NDGA-Atlanta.[4]

Since the newly discovered information implicates the IHI Trustee and the Government in a Collusive Scheme to Violate Settlement Agreements with Van Etten, Deprive Van Etten of Constitutional Rights and to Obtain Information in Violation of Van Etten's Attorney-Client Privilege, Van Etten filed his Supplemental Motions in this matter and makes request of this Court for formal investigation and other requested relief.

---

[2] EDNC Case Number 5:02-CR-263, USA V. Van Etten
[3] U.S. District Court, Eastern District of North Carolina, Raleigh, Case Number 5:02-CR-263
[4] U.S. District Court, Northern District of Georgia, Atlanta, Case Number 1-98-CV-0803

## WAIVER OF SOVEREIGN IMMUNITY 11 U.S.C. SECTION 106

More than sixty-one (61) federal, state and regulatory "governmental units," including the North Carolina Attorney General's Office, the Securities and Exchange Commission, the Internal Revenue Service and the U.S. Attorney's Office, filed claim's in U.S. Bankruptcy Court, for claim's arising out of the same transactions and occurrences for which the claim of such governmental unit arose. The list of "governmental units" filing claim hereto is <u>attached hereto as Exhibit 1.</u>

*11 U.S.C. Section 106, Waiver of Sovereign Immunity, (b); "A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."*

## CREDITORS FILING CLAIM IN U.S. BANKRUPTCY COURT

- **U.S. Attorney Creditor Claim Number 177052**, 320 New Bern Avenue, Suite 800, Raleigh, NC 27601-1461.
- **U.S. Attorney's Office Creditor Claim Number 191502**, 227 West Trade Street, Suite 1700, Carillon Building, Charlottetown, NC 28202.
- **Securities and Exchange Commission Creditor Claim Number 191504**, Atlanta Regional Office, 3475 Lenox Road, NE, Suite 1000, Atlanta, GA, 30326.
- **Securities and Exchange Commission Creditor Claim Number 191163**, 3475 Lenox Road, Suite 1000, Atlanta, GA 30326-1232.
- **North Carolina Attorney General Creditor Claim Number 1**, Assistant Attorney General, Kristine Lanning, Post Office Box 629, Raleigh, NC 27602.
- **Internal Revenue Service Claim Number 177050,** IRS Attention Special Procedures Staff, 320 Federal Place, Greensboro, NC 27402.
- **Internal Revenue Service Claim Number 191501,** IRS Attention Special Procedures Staff, Room 411, 320 Federal Place, Greensboro, NC 27401.

## JURISDICTION AND POWER OF COURT

**11 U.S.C. Section 105**, Power of Court *(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.*

**11 U.S.C. Section 106**, Sovereign Immunity; *(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:*

*(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.*

*(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.*

*(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.*

## HISTORY AND RELEVANT TIME LINE

April 1995     IHI incorporated in North Carolina.

Nov. 1995     Van Etten is named President and CEO.

July 1996     IHI files S-1 Registration Statement with SEC and NC to take the Company Public and trade stock on the NASDAQ.

Jan. 1997     IHI grows to approximately 50,000 sales representatives throughout the United States and Canada, approaching $50 million in annualized sales.

Jan. 1997     IHI sales representatives in Macon, Georgia include a dozen police officers working part-time with Police Chief and City Attorney Approval. Also, the Macon District Attorney and several prosecutors, several agents of the Georgia Bureau of Investigation, all working part-time with full Supervisory Approval.

Feb. 1997     Special Agent FBI, Jalaine Ward in Macon, Georgia declares IHI to be an illegal pyramid scheme in a public sales meeting of IHI sales

representatives and customers. SA Ward fails to disclose significant conflict of interest, as her family is Excel Communications sales representative, a competing network marketing company in Macon, Georgia, for which her husband is a top sale representative.

March 1997    N.C. Attorney General announces public investigation of IHI and Van Etten, illegal pyramid scheme, orders the company and Van Etten to cease and desist. The Attorney in Charge is Kristine Lanning.

March 1997    A "Stooge Prosecution" of IHI and Van Etten begins with the NCAG's Office (state and Kristine Lanning), on behalf of U.S. Attorney (federal and AUSA Scott Wilkinson)

June 1997    IHI and Van Etten enter into a Settlement Agreement with NCAG, settling allegations of wrongdoing and violations of NC Criminal Statutes, $100,000 penal fine and more than $1 million in restitution, monthly monitoring and risk of subsequent prosecution.

June 1997    NCAG (Kristine Lanning) solicits SEC (Bill Hicks) for formal enforcement investigation of IHI and Van Etten, post-Settlement Agreement, with no new violations or allegations of wrongdoing.

August 1997    NCAG (Kristine Lanning) solicits FBI (Joan Fleming) for investigation, U.S. Attorney (Scott Wilkinson) transfers investigation from FBI Macon/Atlanta to FBI Charlotte/Raleigh.

Nov. 1998    FTC invites NCAG (Kristine Lanning) to present a case study for training at the FTC's National Law Enforcement Summit on Pyramid Schemes, Atlanta, GA, March 1998.

Dec. 1997    NCAG (Kristine Lanning) Fax soliciting SEC to join her and NCAG in presenting case study (IHI and Van Etten) to the FTC's National Law Enforcement Summit on Pyramid Schemes in Atlanta, in March 1998.

Dec. 1997    NCAG (Kristine Lanning) Update letter to SEC (Jim Long) reporting NCAG progress in "joint" investigation and prosecution of IHI and Van Etten, reports more than 1,215 complaints filed against IHI, all solicited by NCAG with form letters and followed up with telephone call solicitations by NCAG.

Feb. 1998    NCAG (Kristine Lanning) Letter soliciting Frank Seales Jr., Chief Antitrust and Consumer Litigation Section, Office of Attorney General, "Often when several regulators simultaneously confront a pyramid scheme, its life span is dramatically shortened." "Hope to see you at the National Law Enforcement Summit on Pyramid Schemes in Atlanta on

|  | March 19 and 20, 1998! For conference registration materials and information contact the FTC at (202) 326-3129." |
|---|---|
| March 1998 | IHI stock trades publicly, symbol IHIN on the NASDAQ market, trades as high as $36 per share with more than 4,000 shareholders trading shares. The Company employed more than 250 full-time employees and more than 175,000 sales representatives, annualized sales approaching $100 million. |
| March 1998 | NCAG (Kristine Lanning) fax letter to SEC (Bill Hicks) providing information to be used in Ex Parte hearing with U.S. District Judge Story. |
| March 1998 | Same week as FTC Law Enforcement Summit on Pyramid Schemes, and in the same city, the SEC files an action against IHI and Van Etten Ex Parte in U.S. District Court. Action enjoins IHI and Van Etten, TRO, Asset Freeze and Liquidation Order, the Honorable District Judge Richard W. Story Presiding. |
| April 1998 | The Honorable Judge Story, Memorandum of Law and Opinion; "IHI is presently in compliance with both (NCAG and GA) agreements" |
| April 1998 | Van Etten posts a cash bond (individually and non-debtor assets) in the amount of five million dollars ($5,000,000) with the U.S. District Court, as surety and on behalf of IHI and co-defendants, as long as Van Etten President and Officer. |
| July 1998 | NCAG (Kristine Lanning) letter to FBI (Joan Fleming) soliciting action against IHI and Van Etten. |
| Nov. 1998 | IHI Files for Bankruptcy Protection, EDNC |
| Nov. 1998 | NCAG (Kristine Lanning) email to NCAG Pyramid Team, "I have calls in to the SEC and our Securities to see what it all means and if they can block this." "Do you think Stuart (WRAL-TV) or Ranii (N&O) would be interested?" |
| Dec. 1998 | U.S. Attorney (AUSA Scott Wilkinson) solicits IHI Trustee, Holmes P. Harden, to violate Van Etten's attorney-client privilege by providing the privilege information to the Government, and further to deprive Van Etten of his Constitutional Rights, which was then memorialized in the January 4th and January 15th filings, **earning the Trustee hundreds of thousands of dollars in commissions and fees he otherwise would have not been entitled to.** |
| Dec. 1998 | SEC (Bill Hicks) solicits IHI Trustee to enter into collusive scheme with AUSA Scott Wilkinson, offers support in fees and commissions and other assurances thereto. |

| | |
|---|---|
| Jan.1999 | IHI Trustee, Holmes Harden, files request for leave of Court and for authority to hire himself as attorney for Trustee, "maximum fees and commissions allowable by law. IHI Trustee would be entitled to 5% as Trustee and 20% as attorney for Trustee, for total compensation of more than $1 million. |
| Jan. 1999 | IHI Trustee, Holmes Harden, files Motion to Cancel Directors and Officers Liability Insurance, thereby canceling individual insurance coverage and legal fees for defense, to include Van Etten as a named individual insured. |
| Jan. 1999 | **First Attempt at Waiving Attorney-Client Privilege,** IHI Trustee files massive Settlement Agreement in Bankruptcy Court, attempting to settle the **SEC action in District Court and in agreement with the U.S. Attorney**, all in an attempt to further the Collusive Scheme against Van Etten. |
| Feb. 1999 | U.S. Attorney (FBI Agent Joan Fleming), SEC (Bill Hicks) and the NCAG (Kristine Lanning) began meeting and communicating with Clark Jones, former IHI CFO, on a regular basis. The meetings took place after business hours and at secret warehouse locations, whereby Jones delivered information requested, information obtained in violation of Van Etten's attorney-client privilege, and placed before Grand Jury for Indictment. |
| Feb. 1999 | U.S. Attorney (AUSA Scott Wilkinson, SA FBI Joan Fleming and SA IRS Scott Schiller) begin searching the IHI mainframe computer, which is in the custody and control of the IHI Trustee, **without search warrant or grand jury subpoena**, as the Honorable Chief Bankruptcy Judge, A. Thomas Small had NOT authorized the IHI Trustee's January 15th request for authority thereto, all in violation of Van Etten's attorney-client privilege, and placed before Grand Jury for Indictment. |
| Feb. 1999 | IHI Trustee files Motion to Hire Van Etten's attorney, Brent Wood. IHI Trustee and Van Etten attorney, Brent Wood, file Ex Parte Motion to Allow Van Etten's independent and disinterested attorney, Hunter Wyche, to withdraw from representation of Van Etten. IHI Trustee and Brent Wood failed to disclose significant conflicts of interest and adverse interest conflicts to the Court and to Van Etten himself. |
| April 1999 | IHI Trustee produces 14 Banker Boxes of IHI and Van Etten documents and records to U.S. Attorney, containing attorney-client privilege information. |
| May 1999 | ACSTAR Insurance Company discovers "Collusive Scheme" involving the IHI Trustee and SEC (Bill Hicks) and makes request of Trustee wot |

immediately withdraw his application for authority and settlement filed on January 15, 1999 in U.S. Bankruptcy Court.

May 1999    ACSTAR objects in Bankruptcy Court and raises issues of viability of bond and perhaps damage by collusive activities by IHI Trustee and Federal Government.

May 1999    NCAG Mike Easley appears on "60 minutes" TV broadcast on May 9, 1999 "Pyramid, Stan Van Etten" viewed by more than 15 million as "True Crime." Mike Wallace of CBS said story solicited by NCAG.

May 1999    Van Etten payments to his lawyers at Kutak Rock and Wood & Francis, for the period of November 1998 thru May 1999, is now in excess of $350,000. The U.S. Attorney (AUSA Scott Wilkinson), the IHI Trustee, the SEC (Bill Hicks) and the NCAG (Kristine Lanning) NOT ANY of these people or governmental units ever indicated that these law firms were or had been representing IHI and not Van Etten, and therefore, Van Etten continued to rely upon their advice and legal services fully, following all legal advice thereto.

June 1999    ACSTAR and IHI Trustee take "Collusive Scheme" allegations and wrongdoing out of U.S. Bankruptcy Court and "Under Seal," thereby concealing disclosure of IHI Trustee wrongdoing and the collusive scheme involving the U.S. Attorney (AUSA Scott Wilkinson), SEC (Bill Hicks), NCAG (Kristine Lanning) and the IHI Trustee.

June 1999    FBI Agent Joan Fleming Affidavit and Application for Search Warrant for IHI mainframe computer system; "The statements contained in this affidavit based on information provided by Special Agents of the FBI and the U.S. Postal Inspection Service, representatives of the North Carolina Attorney General's Office of Consumer Protection, representatives of the U.S. Securities Exchange Commission and others,"

June 1999    IHI Trustee, Holmes Harden, produces 7 backup tape drives from the IHI mainframe computer system, all of which contain thousands of attorney-client privilege communications, to the U.S. Attorney, **pursuant to the June 1999 Search Warrant. NO AUTHORITY was given to obtain information in violation of IHI or Van Etten's attorney-client privilege,** and the IHI Trustee was simultaneously arguing for Court Authority to waive IHI pre-petition bankruptcy attorney-client privilege.

June 1999    The Honorable U.S. Bankruptcy Judge Thomas Small, Order Approving Application of Trustee to Enter Into Consent to Final Judgment of Permanent Injunction, Findings of Fact, June 21, 1999, "A payment bond in the penal sum of $5,000,000 issued by ACSTAR Insurance Company and United Coastal Insurance Company was posted by debtors (Stanley H.

Van Etten)" "The bond inures to the benefit of the Commission (SEC) and is not property of either IHI bankruptcy estate." However, absent from the Order and Settlement was any release or waiver of IHI's or Van Etten's attorney-client privilege.

August 1999   IHI Trustee produces 92 Banker Boxes of documents and records, containing attorney-client privilege information of IHI and Van Etten, to the U.S. Attorney (AUSA Scott Wilkinson) without court authority.

Sept. 1999   IHI Trustee produces 20 Banker Boxes of documents and records, containing attorney-client privilege information of IHI and Van Etten, to the U.S. Attorney (AUSA Scott Wilkinson) without court authority.

Sept. 1999   Settlement Agreement, IHI Trustee, SEC and Van Etten, filed in U.S. District Court and U.S. Bankruptcy Court, Final Judgment of Permanent Injunction as to Van Etten, including payment and assignment of more than $5 million in non-debtor assets and in total, approximately $7.2 million in penal fine and restitution, but not limited thereto.

Sept. 1999   **SEC and NASD new action against Van Etten and Brokerage Business**

Jan. 2000   IHI Trustee, Holmes Harden, produces 846 Banker Boxes of documents and records to U.S. Attorney, including attorney-client privilege information of IHI and Van Etten, all of which was presented to Grand Jury for Indictment.

March 2000   **Second Attempt to Waive Attorney-Client Privilege,** IHI Trustee filed a Motion for Approval of Compromise and Settlement, **in an Agreement with the U.S. Attorney.**

May 2000   The Honorable Chief Bankruptcy Judge, A. Thomas Small, conducts a Hearing at the request of IHI Trustee in the Application to Waive IHI's Pre-Petition Attorney-Client Privilege.

June 2000   Bankruptcy Order allowing Motion for Compromise & Settlement, allowing the IHI Trustee to waive IHI's corporate pre-petition attorney-client privilege, but **NO WAIVER of Van Etten's or any other individuals privilege,** Court requests attorneys to stipulate documents and records, attorneys and information subject to individual attorney-client privilege protection thereto.

June 2000   **Judge Small Orders Van Etten and Others to Identify and Stipulate for the Record all Privilege Documents,** Van Etten stipulates to the record on June 29 and July 10, as requested by the Court, for which no

objection was ever raised by the U.S. Attorney, SEC, IHI Trustee or the NCAG in U.S. Bankruptcy Court.

| | |
|---|---|
| July 2000 | **July 14, 2000 First Date Waiver of IHI Pre-Petition Attorney-Client Privilege Communications Could be Released by Trustee or Others.** Senior U.S. District Judge W. Earl Britt, denying stay and appeal by Van Etten and others protecting individual attorney-client privilege, as **NO WAIVER of any individuals privilege would occur by way of Bankruptcy Court Order.** |
| August 2000 | Van Etten's lawyers at Kutak Rock produce 47 Banker Boxes of legal documents and records, including attorney-client privilege information, to the U.S. Attorney, all of which was presented to Grand Jury for Indictment, without Van Etten's knowledge or approval. |
| August 2000 | Van Etten's lawyers at Wood & Francis produced 134 Banker Boxes of legal documents and records, including attorney-client privilege information, to the U.S. Attorney, all of which was presented to Grand Jury for Indictment of Van Etten, without Van Etten's knowledge or approval. |
| May 2001 | Van Etten attorney Georgina Mollick produces all attorney-client privilege documents and records, including 20 floppy diskettes of more than 10 years of Van Etten legal documents and records, pursuant to Bankruptcy Court Order and WITHOUT Van Etten approval or waiver. |
| July 2002 | Search Warrants issued on information obtained in violation of attorney-client privilege, residence of Van Etten and rented storage units searched and seized. |
| Oct. 2002 | First Indictment of Van Etten and others. |
| March 2003 | Kutak Rock attorneys volunteer for interviews with U.S. Attorney, provide information in violation of Van Etten attorney-client privilege, via Bankruptcy Court Order |
| March 2003 | Superceding Indictment of Van Etten and others. |

## JANUARY 15, 1999 APPLICATION OF TRUSTEE FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT

### SEC ACTION

January 4, 1999, U.S. Bankruptcy Court Filing by IHI Trustee Holmes Harden, "The undersigned trustee, pursuant to Section 327 of the Bankruptcy Code and

Bankruptcy Rule 2014, applies to the court for authority to employ an attorney and for authority to act as attorney for the bankruptcy estate in his own behalf…" "To negotiate with the Securities and Exchange Commission…" "The Trustee proposes to employ Holmes P. Harden, to act as attorney on his own behalf so far as the same be practical and beneficial to the estate."

January 15, 1999, U.S. Bankruptcy Court Filing by IHI Trustee Holmes Harden, in collusion with former AUSA Scott Wilkinson and SEC attorney Bill Hicks, attached hereto as Exhibit 2.

- **"Trustee agrees to waive the attorney-client privilege as to prepetition advice the debtors received from their attorneys."**
- "Trustee for International Heritage, Inc. has agreed to receive $5,000,000 under the Bond and to disburse the proceeds of the Bond in the International Heritage, Inc. bankruptcy…" "The Commission agrees that Trustee's compensation for administration and disbursement of the proceeds of the band shall be paid from the proceeds of the bond in an amount equal to the maximum allowable commission authorized by 11 U.S.C. 326 without reduction."
- "Trustee for International Heritage, Inc. has agreed to receive $5,000,000 under the Bond and to disburse the proceeds of the Bond in the International Heritage, Inc. bankruptcy…"
- **"The Commission agrees that Trustee's compensation for administration and disbursement of the proceeds of the band shall be paid from the proceeds of the bond in an amount equal to the maximum allowable commission authorized by 11 U.S.C. 326 without reduction."**

IHI Trustee Harden was offered a commission and compensation package, as Trustee and as Attorney for Trustee, that could approach one million dollars, that he would not have been entitled to otherwise, as it was based entirely upon a "forced forfeiture" of Defendant Van Etten's $5 million cash bond into the IHI Estate, as inducement.  More specifically, IHI Trustee Harden was offered the opportunity to receive a 20% commission (as attorney for himself), beyond the Title 11 U.S.C. maximum Trustee commission of 5%, on what now amounts to approximately $7.5 million in estate assets.

It is here, January 15, 1999 that Van Etten alleges the IHI Trustee Holmes P. Harden waived the attorney-client privilege without any authority or release by Van Etten

or others effected.  Additionally, IHI Trustee Holmes P. Harden, by and through his participation in the collusive scheme to deprive Van Etten of Constitutional Rights and Privileges, concealed the "wholesale" release and production of all legal documents and records, communications and electronic files to the U.S. Attorney, while arguing in support of Court Authority to waive the privilege, for some 18 months, 18 months after the fact.

On or about December 1998, former AUSA Scott Wilkinson solicited SEC attorney Bill Hicks to help solicit IHI Trustee Holmes Harden, to join them in their collusive scheme, for which SEC Bill Hick's would be <u>guaranteed</u> a victory "default judgment" against IHI and Van Etten, ending the long and complicated legal action in U.S. District Court, NDGA-Atlanta.

However, on May 3, 1999, in a letter from the law firm Ward and Smith, P.A., attorney Michael P. Flanagan, writes to IHI Trustee, Holmes P. Harden, **"The issue of the viability of the bond, perhaps damaged by collusive activities of the SEC, is an entirely different issue from this and do not let counsel for the SEC lead you, individually, down this path."**

IHI Trustee Holmes Harden, News & Observer, **"Still, Harden, who is an attorney with the firm of Maupin Taylor & Ellis in Raleigh, said his first reaction when the U.S. attorney's office approached was to ask, "What is in it for the creditors?" "That led, he said, to the proposal that the U.S. attorney's office recommend that any criminal fines that might be imposed be turned over to the creditors."**

### FEBRUARY 19, 1999 APPLICATION OF TRUSTEE TO HIRE ATTORNEY

On February 19, 1999, IHI Trustee, Holmes P. Harden, hired Defendant Van Etten's legal counsel in this matter, Wood & Francis. Wood & Francis was already representing Defendant Van Etten in the U.S. Bankruptcy Court and numerous other matters of "adverse interest" to include this criminal matter.

- "Upon application of Holmes P. Harden...necessity of employment"
- "employ and appoint Brent Wood and Wood & Francis, PLLC"
- "It further appearing...Brent Wood and Wood & Francis PLLC have represented the debtor and Stan Van Etten as disclosed in the affidavit, and represent no interest adverse to said Trustee or the estate of debtor..."

On February 16, 1999, Affidavit of Disinterestedness February 16, 1999, Brent Wood and Wood & Francis, filed in U.S. Bankruptcy Court:

- "Neither Brent Wood nor Wood & Francis, PLLC represent or holds any adverse interest to the Debtor or the estate in the matters upon which they are to be engaged except as disclosed above."
- "Brent Wood and Wood & Francis, PLLC represented International Heritage, Inc. (the Debtor) and Stan Van Etten, its principal, in the pre-petition period, and continues to represent Mr. Van Etten post petition. The firm of Wood & Francis, PLLC is a prepetition creditor of International Heritage, Inc."

Unknown to Defendant Van Etten at the time, in an Ex Parte filing and request, Defendant Van Etten's only remaining independent and disinterested legal counsel, N. Hunter Wyche, was allowed to withdraw from representation of Defendant Van Etten Ex Parte, upon the consent of Brent E. Wood, <u>without any intelligent and knowing waiver by Van Etten</u>, and NEVER in writing, or full and fair disclosure of Brent Wood's adverse conflict of interest and of the collusive scheme involving former AUSA Scott Wilkinson, IHI Trustee Holmes Harden and SEC attorney Bill Hicks.

## AUGUST 9, 1999 APPLICATION OF TRUSTEE FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT

### DIRECTORS & OFFICERS LIABILITY INSURANCE COVERAGE

On August 9, 1999 IHI Trustee, Holmes P. Harden, filed Application of Trustee for Authority to Enter Into Settlement Agreement, which included Van Etten individually. The settlement required the payment of $1,787,500.00, in non-debtor assets and monies see Court Docket #185.

- "The Settlement Agreement is contingent upon the Court granting a Motion for 11 U.S.C. section 105 injunctions filed by Trustee in the Adversary Proceeding No. S-99-00043-5-AP, extending the automatic stay to all codefendants (Van Etten individually) in the underlying actions enumerate therein."

### Judicial Notice Provided in Settlement, Federal "governmental unit" Law Enforcement

On September 9, 1999, the Securities and Exchange Commission filed an Objection to the proposed settlement, Memorandum of the United States Securities and Exchange Commission in Opposition to the Application of Trustee for Authority to Enter into Settlement Agreement. See attached Exhibit 3 and as Court Docket #193.

- "The Settlement Agreement, if approved, would result in the dismissal of or injunction against the continuation of all civil actions pending against IHI and/or its Officers and Directors, **which may include the police and regulatory actions instituted by the Commission and the Montana State Auditor's Office."**

### U.S. Bankruptcy Court Order and Authorization to Enter Settlement

On September 27, 1999, U.S. Bankruptcy Judge, A. Thomas Small, Order Authorizing Trustee to Enter into Settlement Agreement; see Court Docket #197.

- **"After consideration of the Application, all objections to the Application filed,"**
- **"Van Etten, Savage and Smith, as Officers and Directors of the Debtor, are also insured under the Policy and parties to the Settlement Agreement."**
- "Trustee alleges that the Debtor (to include Van Etten individually) is an insured under the policy for losses incurred as a result of claims for Securities Activity Wrongful Acts. **Securities Activity Wrongful Acts is defined under the policy as, <u>inter alia,</u> any "violation of Securities Laws." The underlying actions include allegations of violations of both federal and state securities laws."**
- "After due consideration of the merits of each party's respective contentions regarding the coverage issues, as set forth in the coverage actions, the Trustee believes it is in the best interest of the Estate to enter into the Settlement Agreement with ERSIC (which includes Van Etten individually)."
- "Pursuant to the Settlement Agreement, ERSIC will obtain policy releases from the Debtor, Van Etten, Savage and Smith."
- **"The Settlement Agreement is contingent upon the entry of an order by the Bankruptcy Court extending the automatic stay under 11 U.S.C. section 362(a) (1) and 362(a) (3) to IHI's officers and directors, except as to the action filed by the Securities and Exchange Commission,** which stay must remain in effect at least until the settlement becomes final pursuant to Paragraph 3 of the attached Settlement Agreement."
- **"Trustee believes the proposed settlement is fair and reasonable."**
- **"Trustee is authorized to enter into this Settlement Agreement on behalf of the Debtor corporations with Court approval. Notice of the Application was properly served upon creditors and parties in interest."**

- "Wherefore, It is Ordered, Adjudged and Decreed that the Application is hereby Approved.  The Court hereby authorizes the parties to execute the Settlement Agreement in its amended form attached to this Order as Exhibit A."
- "It is Further Ordered that the automatic stay under 11 U.S.C. section 362(a) (1) and 362 (a) (3) as applied to Debtor and as applied to Debtor's Officers and Directors pursuant to this Court's Order filed August 27, 1999, except as to the action filed by the Securities and Exchange Commission, will remain in effect at least until this settlement becomes final pursuant to Paragraph 3 of the Settlement Agreement."

## MARCH 28, 2000 APPLICATION OF TRUSTEE FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT

### WAIVER OF IHI ATTORNEY-CLIENT PRIVILEGE

On March 28, 2000, the Trustee filed a Motion for Approval of Compromise and Settlement, seeking the bankruptcy court's approval of the Trustee's waiver of the attorney-client privilege with respect to pre-bankruptcy communications between the debtors and counsel.  The Trustee intended to waive the privilege in conjunction with an agreement with AUSA Scott Wilkinson.  On June 7, 2000, Bankruptcy Judge A. Thomas Small allowed the motion.  Thereafter, Van Etten filed notice of appeal of the bankruptcy court's June 7, 2000 order.  Van Etten also filed motion for stay of the bankruptcy court's June 7, 2000 Order pending appeal.  Judge Small denied the motions but temporarily stayed the effect of his order to allow Van Etten to seek a stay from the U.S. District Court.

U.S. District Judge, W. Earl Britt, July 14, 2000, ORDER;

- "This matter is before the court on the motion of Stanley H. Van Etten"
- "As noted by Judge Small, <u>Weintraub</u> does not infringe upon the privilege of parties other than the corporation"
- "In his order finding waiver, Judge Small recognized "the right of individuals to claim the attorney-client privilege on their own behalf, when appropriate, is in no way impinged by <u>Weintraub</u> or this court's order.""
- "Judge Small continued: The court specifically finds that the trustee holds the privilege on behalf of the corporate debtors, and that he can and has waived that privilege.  The court also acknowledges that many issues remain open for

resolution.  The court makes no finding regarding documents presently, withheld on grounds that they come within the work-product doctrine, or regarding document that include confidential communications between attorneys and individuals seeking legal counsel in their individual capacities."

- "Judge Small's order denying stay requires movants before 18 July 2000 to "identify any documents that he or she alleges to be subject to his or her individual claim of privilege."

- "The court does not read  these orders as requiring movants forthwith to produce documents allegedly subject to any individual claims of privilege"

- "This court and the bankruptcy court have made no findings with respect to the officers/directors individual claims of privilege."

- "As recognized by the bankruptcy court, "there is no effort afoot to carve out an exception to the attorney-client privilege, or to in any way challenge its application to the debtors documents."

May 31, 2000 Hearing before the Honorable Judge Small, concerning the same matter, IHI Trustee Holmes P. Harden, transcript;

- "I learned recently that there is a great deal of information I haven't ever seen, some 3-1/2 inch thick stack of privileged documents-lists, single spaced of privilege documents."

- **"I think it would be – it's my obligation to see what's in those documents."**

- **"You might as well argue we already waived the privilege when we did the settlement with the SEC."**

- **"one of the terms that they insisted upon was that the trustee waive the attorney-client privilege, and in  this circuit, a waiver for one purpose is a waiver for everything else.  So, you know, if that waiver for that litigation was a valid waiver – it may or may not have been, Your Honor – I don't know whether the SEC got hold of any**

**confidential information, but we did agree to provide that to them.  It occurred at the end of that case."**

- "If we don't do this deal, I think the U.S. Attorney is going to do one of two things, or both.  He's going to go over to the District Court and argue the crime fraud exception to the waiver of the attorney-client privilege, or to the attorney-client privilege in lieu of the waiver, and I'm going to get dragged into this"

Between January 1999 and July 2000, without Court Authority or Order, IHI Trustee Holmes P. Harden, former AUSA Scott Wilkinson, SA FBI Joan Fleming, SA IRS Scott Schiller and SEC attorney Bill Hicks, collectively and collusively violated Defendant Van Etten's constitutional rights and his attorney-client privilege, in U.S. Bankruptcy Court and U.S. District Court Authority, in the following; 1). The conspiracy to violate Van Etten's constitutional rights, and 2) the wholesale search and seizure of all IHI Computers and electronic files, for the specific purpose of obtaining information in violation of Van Etten's attorney-client privilege, and 3) the wholesale search and seizure of more than 1,000 Banker Boxes of legal documents and records in the possession of the IHI Trustee, and the law firms Wood & Francis and Kutak Rock.  The Government **FAILED** to obtain Court Authority for corporate pre-bankruptcy waiver of attorney-client privilege until July of 2000 (some 18 months after the fact) and **FAILED** to obtain a legal search warrant until June 16, 1999, for the IHI Computer System, more than 4 months after the first search and seizure occurred, and verified by the Government's Custodian of Records.  The Government's Table of Evidence Exhibits irrefutably supports these allegations and violations.

### NORTH CAROLINA ATTORNEY GENERAL'S OFFICE

Van Etten has alleged in his appeal that the Federal Government prosecuted Van Etten "Stooge Prosecutions" in secret investigative and prosecution actions with the State of North Carolina Attorney General's Office and the State of Georgia and the State of Montana, which resulted in three (3) separate penal prosecutions and settlements, which included Van Etten individually.  The U.S. Attorney has denied this allegation.

The North Carolina Attorney General's Office referred Van Etten's case to the Securities and Exchange Commission for prosecution in U.S. District Court, Northern District of Georgia, Atlanta Division, and the U.S. Attorney, Raleigh, North Carolina.

In a letter from NCAG Kristine L. Lanning to Mr. Frank Seales Jr., Chief Antitrust and Consumer Litigation Section Office of Attorney General, <u>attached as Exhibit 4.</u>

- "On June 3, 1997, we entered into an agreement with IHI (enclosed)."
- "Stan Van Etten is the President of IHI."
- "We will provide whatever assistance is possible,"
- "Often when several regulators simultaneously confront a pyramid scheme, its life span is dramatically shortened."
- "Hope to see you at the National Law Enforcement Summit on Pyramid Schemes in Atlanta on March 19 and 20, 1998! For Conference registration materials and information contact the FTC at (202) 326-3129."

The State of North Carolina has never filed or threatened new action, civil or criminal, against IHI or Van Etten, not since the June 3, 1997 Settlement Agreement. In the SEC action in U.S. District Court, the Honorable Richard W. Story, in his **Memorandum Opinion and Order, Findings of Fact, "In the Spring of 1997, North Carolina's Attorney General's Office began an investigation of IHI operations. On June 3, 1997, Defendants** (which includes Van Etten individually) **entered into an agreement with the State of North Carolina," and <u>"IHI is presently in compliance with both (NC and GA) agreements."</u>**

Additionally, the State of North Carolina, Assistant Attorney General, Kristine L. Lanning, filed a Notice of Appearance and a Creditor Claim in U.S. Bankruptcy Court, Case Number 98-02675. Kristine L. Lanning is the "attorney in charge" for the IHI and Van Etten criminal investigations and penal settlements thereto. The facts and issues of the North Carolina action and settlement arose from the same transactions and occurrences, facts and issues, in the SEC's U.S. District Court action, the State of Georgia action, the State of Montana action and ALL settlements in U.S. Bankruptcy Court thereto, whereby the U.S. Attorney's Office criminal action against Van Etten are derived as well.

The NCAG's Office was an invited (Federal Trade Commission, federal government, law enforcement unit) to present as "law enforcement" expert at the National Law Enforcement Summit on Pyramid Schemes in March of 1998. The NCAG's "case study" and law enforcement training (federal, state and regulatory) was that of IHI and Van Etten, which was presented and trained March 18 to March 20 in Atlanta, Georgia. The NCAG's Office presentation included information from and in attendance by the U.S. Attorney's Office, the FBI, the State of Georgia and the Securities and Exchange Commission. Additionally, the FTC National Law Enforcement Summit on Pyramid Schemes was held in the same city and simultaneous (at conference conclusion) to the state of North Carolina, state of Georgia and the SEC's Ex Parte action filed in U.S. District Court, NDGA-Atlanta, before the Honorable Richard W. Story. The multimillion-dollar Settlement Agreement for which this action was settled in U.S. Bankruptcy Court, before the Honorable A. Thomas Small, Case Number 98-02675, is a part of Van Etten's Motion to Dismiss Appeal filed in the original instance.

Van Etten argues that his current/subsequent[5] federal prosecution violates his rights under the Double Jeopardy Clause of the Fifth Amendment. Acknowledging the vitality of the dual-sovereignty doctrine, Van Etten nevertheless argues that the current/subsequent federal prosecution falls into an exception to the dual-sovereignty doctrine.

The States of North Carolina, Georgia and Montana, and the United States are each separate sovereigns in our federal system and for purposes of the Double Jeopardy Clause. Accordingly, Van Etten's prosecution by the United States after multiple "stooge" or "sham" prosecutions by the states of North Carolina, Georgia and Montana, all for the same acts and at the direction and control of the federal government.

This brings us to another relevant circumstance relied upon by Van Etten in support of his argument. In the course of investigating Van Etten, former (terminated for cause in this matter) Assistant United States Attorney Scott Wilkinson solicited IHI

---

[5]Investigations and Prosecutions; 1st state of North Carolina, 2nd state of Georgia, 3rd state of Montana, 4th federal governmental unit SEC in U.S. District Court, 5th multiple federal, state and regulatory (including law enforcement) settlements in U.S. Bankruptcy Court.

Trustee Holmes P. Harden and SEC attorney in charge Bill Hicks in a collusive scheme to violate Van Etten's rights and attorney-client privilege, starting in December of 1998. During the collusive scheme AUSA Wilkinson offered IHI Trustee Harden the opportunity to earn up to a million dollars ($1,000,000), in fees and commission, on non-debtor assets for his participation in the scheme.

AUSA Wilkinson improperly influenced a U.S. Bankruptcy Court Trustee's independent judgment, management and in the assessment of the estate and parties of interest.   Van Etten argues that former AUSA Wilkinson created an irreconcilable "adverse" conflict of interest to Van Etten and the IHI Estate, which eventually led to the wholesale violation of his privilege.

In a letter from NCAG Kristine Lanning to SA-FBI Joan Fleming, attached as Exhibit 5;

- "Here is a tape of a newscast featuring Stan Van Etten and IHI.  It focuses on the striking similarities between IHI and Gold Unlimited,"
- "We thought it may be of interest to you."

In an email from Kristine Lanning, dated November 25, 1998 (same day as filing of bankruptcy petition by IHI), to "Pyramid Team", see attached as Exhibit 6;

- "I've spoken to MT and have a copy of the notice."
- "AL, FL, GA, IL, KS, LA, MT, SC, TX and WA."
- "I have calls to the SEC and our Securities to see what it all means and they can block this."
- "Do you think Stuart (WRAL-TV) or Ranii (N&O Reporter) would be interested?" Note, more than 125 negative newspaper articles and TV shows produced and aired, written and printed by these two individual reporters, negative primarily to Van Etten individually.

In a fax letter to SEC enforcement attorney, Jim Long, three (3) months prior to the FTC National Law Enforcement Summit on Pyramid Schemes, also three (3) months prior to the SEC's Ex Parte Action in U.S. District Court, NCAG Kristine Lanning says, see attached hereto as Exhibit 7;

- "I want to share a brief update on IHI."

- "They have not yet responded to our December 12th letter, attached, finding their new policy unacceptable."
- "I'll probably be in Atlanta on March 18, 1998, for an FTC conference on pyramids. Maybe you and/or others from your office can participate on some level."
- "I'll try to stop by your place."

In a letter and fax dated March 18, 1998, same date as National Law Enforcement Summit on Pyramid Schemes in Atlanta, from NCAG Kristine Lanning to SEC attorney in charge of IHI and Van Etten investigation and action, Bill Hicks, says, <u>attached as Exhibit 8;</u>

- "IHI 4/29/1997 Correspondence"
- "WP" and "LP" indicating the waiver of law enforcement privilege and work product
- "IHI marketing program is in direct violation of North Carolina's pyramid statute, (criminal statute) G.S. 14-291.2, and Unfair and Deceptive Practices Act, G.S. 75-1.1."
- "We must insist that IHI cease operations in North Carolina"
- "Please inform us of your client's intentions by May 6, 19997."
- Fax Transmission Confirmation "Activity Report 03-18-1998 15:24" to 30 federal, state and regulatory governmental units, including law enforcement.

## VINDICTIVE PROSECUTION

Van Etten also contends that his federal prosecution is an example of vindictive prosecution that violates his due-process rights under the Fifth Amendment.

Van Etten argues that vindictiveness vel non can only be made on the basis of evidence pertaining to the prosecutor's motives, treating the question as one of fact, requiring the review of the entire record. In review, there appears to be a very distinctive pattern implicating the state of North Carolina in a willful abuse of prosecutorial power and influence on federal government prosecution. The former North Carolina Attorney General, referring party to U.S. Attorney for federal prosecution in August of 1997, now the Governor for the State of North Carolina, and the benefactor/creator of a CBS 60 Minutes TV broadcast (in favor of Government and negative to Van Etten) and a "True Crimes" national best-selling book titled <u>Con Men</u> published by Simon & Schuster (in favor of Government and negative to Van Etten), revealing a vicious and relentless

prosecution of Van Etten, **all in advance of any trial by court and jury on the charges**, and any fair judgment thereto.


## ARGUMENT

The Totality of Prosecutions and Penalties for the same acts and offenses constitute double jeopardy and a violation of Due Process Under the Fifth Amendment to the U.S. Constitution.

The Supreme Court of the Unites States many times has held that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) and *Witte v. United States*, 515 U.S. 389, 395-396 (1995). In drafting his initial version of what came to be our Double Jeopardy Clause, James Madison focused explicitly on the issue of multiple punishment: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." 1 Annals of Cong. 434 (1789-1791) (J. Gales ed. 1834). The Supreme Court of the United States has long held that multiple punishments for the same offense violate the Double Jeopardy Clause. Two recognizable methods by which a government can illegally impose multiple punishments are through civil penal penalties and through a "sham prosecution" by the federal government.

### THE DUAL SOVEREIGNTY DOCTRINE HAS LIMITATIONS

Cooperation between federal and state authorities in criminal law enforcement is to be desired and encouraged, for cooperative federalism in this field can indeed profit the Nation and the States in improving methods for carrying out the endless fight against crime. But the normal and healthy situation consists of state and federal officers cooperating to apprehend lawbreakers and present the strongest case against them at a single trial, be it state or federal. Cooperation in order to permit the Federal Government to harass the accused so as to deny him his protection under the Fifth Amendment is not to be tolerated as a legitimate requirement of federalism. The lesson of the history which wrought the Fifth Amendment's protection has taught us little if that shield may be

shattered by reliance upon the requirements of federalism and state sovereignty to sustain this transparent attempt by the Federal government to impose multiple punishments. It is exactly this kind of successive punishment by federal officers that the Fifth Amendment was intended to prohibit.

One limitation of the dual sovereignty doctrine is referred to as the "sham prosecution" exception. This exception prohibits federal and state authorities from manipulating a system to achieve the equivalent of a second prosecution. *Bartkus v. Illinois*, 359 U.S. 121 (1959). If the State is a mere tool of the federal authorities and the state prosecution is a mere sham and a cover for a second federal prosecution, then the federal prosecution violates the Double Jeopardy Clause. *U.S. v. Trammell*, 133 F.3d 1343 (10th Cir. 1998). This limitation prevents the federal government from "working behind the scenes in a non-federal forum" and from "orchestrating the process and prosecution in the non-federal forum". *Id.* at 1348.

This limitation parallels the facts in this case and the doctrine should be applied where the Federal government collusively works with State governments and agencies to deprive a defendant from due process, civil rights and liberties when all of the investigations pertain to the same circumstances, acts and offenses. When the United States Attorneys Office is a party that intentionally and conspiratorially oppressed Van Etten's Constitutional Rights in violation of "Conspiracy against rights" under Title 18 Part I, Chapter 13, Sec. 241, their conduct is egregious and violates due process as much as if not more than the federal government working behind the scenes manipulating a system to achieve the equivalent of a second prosecution. The normal and healthy situation consists of state and federal officers cooperating to apprehend lawbreakers and present the strongest case against them at a single trial, be it state or federal. Cooperation in order to permit the Federal Government to conspire and harass the accused so as to deny him his protection under the Fifth Amendment is not to be tolerated as a legitimate requirement of federalism.

## CASE FACTS

By March 1997, the N.C. Attorney General, the GA Attorney General, the U.S. Attorney General, the Atlanta and Charlotte FBI Offices and IRS began formal

investigations into IHI. Van Etten, as the President and CEO of IHI was immediately considered a target of their investigation.

The timeline in Section III, herein (Page 6), illustrates the main governments and government agencies involved, the time in which they became involved, the time in which relevant findings were made by each government and/or agency and the time in which they resolved their issues with IHI and Van Etten. The timeline of events alone suggests an elaborate web of cooperation between and among the various federal and state governments and/or agencies.

Further investigation has revealed that the communication, the sharing of records and resources, personnel and witnesses, settlements and causes of action were calculated and designed to deceive Van Etten, including his attorney of record[6], and deprive Van Etten of his procedural and due process rights. The timing between one cause of action and the settlement of another is inherently suspect. The "tit for tat" agreements, explained in further detail herein, between the agencies have deprived Van Etten of his constitutional rights. As one example, the Bankruptcy Trustee and SEC settlement agreements were contingent upon one another. The sole purpose of this contingency was designed to allow the IHI Trustee to bring in the 5 million dollar bond that Van Etten individually posted with the SEC into the IHI estate. The bond was not subject to the Bankruptcy Court. In exchange, IHI Trustee would waive the IHI attorney-client privilege for the U.S. Attorney's Office in Raleigh, NC.

The NCAG's Office received in January 1997 a letter purportedly written by David Crowe, the co-owner of Gold Unlimited, who alleged that IHI is a pyramid scheme based off the Gold Unlimited Model.[7] The NCAG shared the letter with the U.S. Attorney's Office. See FBI Agent Joan Fleming Affidavit attached hereto as <u>Exhibit 9</u>, and the March 15, 1999 Alan Hirsch Deposition Transcript attached hereto as <u>Exhibit 10</u> which confirms the USAG time of notice and involvement.

By April 1997, the North Carolina Attorney General's Office, the North Carolina Secretary of State's Office and the Raleigh U.S. Attorneys Office all considered IHI to be

---

[6] Van Etten is investigating the extent to which his former attorney, Brent Wood, non-disclosure of certain information was prejudicial to Van Etten and his involvement and participation with the U.S. Attorney's Office, Holmes Hardin and the SEC to the detriment of Van Etten and multiple conflicts of interests that required Brent Wood from withdrawing as counsel of record.

Gold Unlimited was convicted as an illegal pyramid scheme in the State of Kentucky.

operating as an identical "scheme" and "enterprise" as Gold Unlimited. By May 1997 the SEC started their investigation of IHI and Van Etten. The NCAG sent a letter to the SEC on June 3, 1997 updating the SEC with the NCAG investigation and settlement, as the SEC had a simultaneous investigation ongoing on the same securities issues. On June 3, 1997 the NCAG and Van Etten entered into a Agreement. In August 1997, only two months after the Agreement with the NCAG, the NCAG made a formal referral to the FBI to take criminal action against IHI and Van Etten. The Agreement with the NCAG was disingenuous and part of an elaborate scheme to cooperate with other Federal Government agencies in the prosecution of IHI and Van Etten.

By May 1997, all the government agencies were cooperating together and sharing information about IHI and Van Etten. At least two members, Mr. Lawson and Ms. Lanning, of the NCAG Office testified in Atlanta pertaining to the SEC matter and NCAG attorneys were listed as witnesses for the SEC action against IHI and Van Etten. Further, when the NCAG was questioned pertaining to their relationship with the SEC and other government agencies such as the U.S. Attorney's Office, Alan Hirsch refused to answer and claimed privileges.

At the deposition of Alan Hirsch on March 15, 1999, Mr. Sturgis, counsel for NCAG and Alan Hirsch, in response to Brent Wood's, Esq. questions, representing Van Etten, "What privileges are you referring to?" and Mr. Sturgis replied; "Attorney work product, common interest privilege, also known as joint prosecution privilege, and investigation privilege." An excerpt of the transcript follows:

Q: "Is – has the Attorney General's Office been involved in some criminal investigation?"
A: "Are you asking, are we conducting a criminal investigation?"
Q: "Yes"
A: "That would be a matter that is privileged."
Q: "Well, I want to know what drug crimes are involved here. You mentioned a drug prosecution privilege."
A: "I said a joint prosecution privilege which is different from –"
Q: "It's just that Mr. Hirsch has told me a number of times that there's nothing criminal that his office does, so – that's what's been stated in letters to me. So that's what I want to understand, is if there's something criminal involved in this, then I want to – I want to understand that so that I can understand these privileges that are being asserted."
Q: "Is currently an investigation ongoing regarding International Heritage?"
A: "Objection. Investigative privilege."

Q: "In the first paragraph of this Exhibit 1 (NCAG website home page) it states that "The Consumer Protection Office most often takes action pursuant to state and federal laws......."

Q: "Has your office ever corresponded with the Securities and Exchange Commission relating to International Heritage?"

A: Counsel, "Same objection. Please don't answer the question."

Q: "Has your office ever corresponded with regulators in the state of Georgia relating to International Heritage?"

A: Counsel, "Same objection. Please don't answer the question."

Q: "Would the same objection and same instruction be applicable for each state and federal regulatory agency that I would ask him about?"

A: Counsel, "I don't know which ones you would ask him about, but assuming that it would be in regard to pyramid or similar statutes, I mean, I – if you ask –"

Q: "I'll – I'll – limit to pyramid or securities or –"

A: Counsel, "Deceptive practices"

Q: "deceptive practices"

A: Counsel, "consumer protection kind of matters?"

Q: "yes, that is correct"

A: "Yes, that – yes, it would be."

Q: "Have any state or federal regulators requested copies of any parts of your files that are maintained relating to International Heritage?"

A: Counsel, "We're going to have to make the same objection and request the witness not to answer."

Q: "I want to again state for the record that I'm going to reserve the right to seek sanctions relating to – to all of this."

See Exhibit 10, Pages 1-9, 66-68, Alan Hirsch Deposition Transcript dated March 15, 1999. There is no reason to assert a privilege unless there was cooperation. The only issue is the extent of their cooperation and who was in charge of facilitating the interdependence by and between the government agencies. Van Etten should be permitted to take the depositions of government agents in order to determine the extent of the USAG involvement and cooperation in the investigations and prosecution with the SEC, NCAG and their involvement with the IHI Bankruptcy. All that needed to be decided was the timing and the order of prosecution. In fact, the NCAG solicited other government entities to go after IHI and Van Etten. In a letter dated February 18, 1998, Kristine Lanning of the NCAG's Office solicits the State of Virginia to attend the FTC Law Enforcement Workshop and Training on Pyramid Schemes, Atlanta, GA on March 18-19, 1998, simultaneous to the Ex Parte SEC action, TRO and Asset Freeze, with Court Appointed Receiver, where the NCAG was a promoted and featured FTC Law

Enforcement Training Presenter, case study IHI and Van Etten, multiple jurisdiction attack shortening the life and ability to defend, Pyramid. All Governmental units of Law Enforcement, Federal, State and Regulatory, in attendance. Clearly, it was the NCAG purpose to collapse IHI. Ms. Lanning states "Often when several regulators simultaneously confront a pyramid scheme, its life span is dramatically shortened." See Exhibit 4. It is apparently clear that the NCAG participated in rallying other states and agencies to prosecute IHI and Van Etten. Ms. Lanning was even inviting them to the National Law Enforcement Summit. The NCAG knew that the U.S. Attorney's Office would be prosecuting Van Etten after the SEC civil litigation was complete. The NCAG $100,000 fine was "a quick grab" at IHI and Van Etten before IHI and Van Etten was prosecuted by the other government agencies.

Concededly, Van Etten has just scratched the surface and does not know the full extent of the cooperation and manipulation between the federal and state governments and agencies. Van Etten was summarily denied and should have been afforded an evidentiary hearing on his double jeopardy claim based on multiple punishments. Van Etten herein presents enough evidence to warrant an evidentiary hearing and the examination of the federal and state government officials to further explore his double jeopardy claim based on multiple punishments and abuse of power, including a Conspiracy Against Rights, Van Etten's Constitutional rights.

## COLLUSION AMONG AGENCIES, IMPOSITION OF CIVIL PENAL FINES AND RELINQUISHED RIGHTS CONSTITUTE PRIOR PUNISHMENT

In *United States v. Halper*, 490 U.S. 435, (1989), the United States Supreme Court held that civil penalties under certain circumstances may constitute punishment for purposes of double jeopardy analysis. The Court noted first that in identifying the inherent nature of a proceeding, labels of "criminal" and "civil" were not of paramount importance and "that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.* at 447. *Halper* made clear that double jeopardy analysis concerning a particular fine consists of balancing the amount of the penalty with the loss the government has suffered

due to the unlawful actions of the person fined; if an offender's sanction is "overwhelmingly disproportionate to the damages he caused," the penalty constitutes punishment for purposes of Double Jeopardy Clause. *Id.* at 449, see also *State of North Carolina v. Wilson*, 488 S.E.2d 303, 305 (N.C.App. 1997).

The constitutional protection against double jeopardy is "intrinsically personal." *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 779 (1937). As the Supreme Court said in *United States v. MacDonald*, "a double jeopardy claim…requires at least a colorable showing that a defendant once before has been in jeopardy…" 435 U.S. 850, 862 (1978). Moreover, "[w]ithout risk of a determination of guilt, jeopardy does not attach…" *Serfass v. United States*, 420 U.S. 377, 391-392 (1975).

## CASE FACTS

Van Etten was personally investigated, accused and threatened with criminal prosecution by the NCAG. Van Etten executed the NCAG Agreement individually as well as in his corporate capacity. Van Etten was named personally in the SEC proceedings and signed in his individual capacity in the resulting Final Judgment of Permanent Injunction. Van Etten posted a 5 million dollar surety penal bond that eventually went into the IHI bankruptcy estate. The Settlement Agreement with the IHI Chapter 7 Trustee was contingent upon the SEC Agreement and Van Etten signed in his individual capacity and relinquished many of his legal rights therein including the 5 million dollar penal bond. The SEC, the NCAG and the Chapter 7 Bankruptcy Trustee all worked together and their agreements reflect their cooperation and collusion to defeat Van Etten of all of his property and legal rights and subjected him to multiple punishments. After the NCAG Agreement, the SEC Agreement and the Bankruptcy Agreement, the IHI Bankruptcy Trustee waived IHI's attorney-client privileges at the direction of AUSA Scott Wilkenson.

## NCAG

In March 1997, the NCAG opened an investigation to determine whether IHI was violating certain North Carolina Acts. From the beginning, the NCAG aggressively pursued, pressured and threatened criminal prosecution of Van Etten individually. Alan

F. Hirsch, Assistant North Carolina Attorney General and Senior Attorney, in person and in front of multiple witnesses, threatened to criminally prosecute Van Etten personally, "one count for every sales representative in the Company", unless he agreed to execute an Agreement and pay a $100,000 fine.   Van Etten was personally targeted because he was the then President and CEO of IHI.  A month later, the NCAG concluded IHI had violated those Acts and advised IHI of its conclusions on April 29, 1997.  On June 3, 1997, Van Etten, IHI and others and the NCAG entered into an Agreement.   Van Etten was named in his individual capacity in the Agreement and Consent Order.

Van Etten agreed to pay the $100,000 penal fine, individually and on behalf of the Company, immediately thereto, to avoid further threats of criminal prosecution and harassment.  On June 6, 1997 Brent Wood sent a letter that specifically addressed the threat to prosecute Van Etten criminally if Van Etten did not sign the proposed agreement and pay a $100,000 fine. The letter was addressed to Kristine Lanning and copied Alan S. Hirsch, Senior Enforcement Attorney and Assistant Attorney General.

The $100,000 fine was arbitrarily determined and is penal to Defendant Van Etten. The Government has never shown an accounting of their investigation or otherwise demonstrated a determinable loss. *Halper* requires us to ascertain the "purposes actually served by the sanction" and "balancing the amount of the penalty with the loss the government has suffered". *Halper* at 447, 449.  The Agreement states the $100,000 is to cover costs of investigation, attorneys' fees and for consumer protection and enforcement purposes.

The investigation from start to finish lasted less than one (1) month.  From the date of accusation through the date of Agreement was less than three (3) months, starting sometime in March 1997 and concluding with an Agreement on June 6, 1997.  The costs of the investigation and attorney fees together over this period of time would be nominal. The remaining amount toward "consumer protection and enforcement purposes" is purely penal and relate in no way to any loss the Government has suffered in their one month investigation of IHI.  The only purpose this category serves is to act as a "catch all" as a deterrent and as retribution, therefore to indiscriminately punish the defendant monetarily.  Alan S. Hirsch substantiates this in his March 15, 1999 deposition:

Q.   Pursuant to the Agreement between the Attorney General's Office and International Heritage and others, some payments had to be made to the Attorney General's Office.

A.   That's correct.

Q.   Do you know if all those payments were made?

A.   I believe they were, yes.

Q.   What was the money used for?

A.   You know, that's a good question. I don't really know the answer...

Q.   Do you know if there's been some accounting of expenses that are allegedly related to International Heritage?

A.   I don't believe there have been.

Q.   But there has been no accounting of that, right?

A.   To my knowledge, no. In fact, I'm confident there has not been.

See Deposition Pages 1, 2, 100-102 attached hereto as Exhibit 10.

The Government has admitted that there has been no accounting of expenses that are allegedly related to IHI and therefore the $100,000 fine was arbitrarily chosen and could only serve as a punishment to IHI and those named in the Agreement. The Government is unaware for what purpose the money was actually used for and there has been no accounting for its use.

The Agreement is penal and considered with the collusion by and between the other government agencies as herein alleged, the Judgment and Agreements thereto, the Federal Government should be prohibited from further punishing Van Etten and placing him further jeopardy.

## SEC

No one can refute that the SEC and the Chapter 7 Bankruptcy Trustee worked together. The Agreements reflect their contingency, cooperation and collusion to defeat Van Etten of all of his property (i.e. 5 million dollar bond, officer and director's insurance), subject him to multiple punishments and deprive him of his legal rights. The question remains as to the extent of the SEC involvement with the U.S. Attorney's Office, the IHI Bankruptcy and the NCAG. Van Etten previously explored this inquiry.

Plaintiff SEC's Response to Defendants' First Interrogatories and Requests for the Production of Documents in July 22, 1998 state:

Interrogatory No. 1: "Identify any and all persons who have given testimony or been interviewed by Plaintiff in connection with the investigation."

SEC: "The Commission objects to the interrogatory to the extent it calls for the production of information subject to the attorney client, law enforcement or government deliberative process privilege, or is protected by the work product doctrine."

- Michael B. McDaniel Georgian Bureau of Investigation, 433 Cherry Street, Galleria-3f, Macon, Georgia 31201
- Kristine L. Lanning North Carolina Attorney General's Office, Post Office Box 629, Raleigh, NC 27602
- Peter H. Lawson North Carolina Attorney General's Office, Post Office Box 629, Raleigh, NC 27602
- Brad Houston Georgia Consumer Affairs, Georgia Attorney General's Office, 2 Martin Luther King, Jr. Drive, Suite 356 E, Atlanta, GA 30334
- Brenda Womack Georgia Consumer Affairs, Georgia Attorney General's Office, 2 Martin Luther King, Jr. Drive, Suite 356 E, Atlanta, GA 30334
- Tryllis Hallford Georgia Consumer Affairs, Georgia Attorney General's Office, 2 Martin Luther King, Jr. Drive, Suite 356 E, Atlanta, GA 30334
- Monty Mohr Georgia Consumer Affairs, Georgia Attorney General's Office, 2 Martin Luther King, Jr. Drive, Suite 356 E, Atlanta, GA 30334
- Robert Allen Macon Georgia Police Department, Macon Georgia
- Jalene Ward, U.S. Department of Justice, Federal Bureau of Investigation, Macon, Georgia
- Fred Sargeson Montana State Auditor's Office, Helena, Montana
- Paul D. Boyd U.S. Postal Inspector, Kentucky, Gold Unlimited Case

Interrogatory No. 20: "Identify any and all communications with any law enforcement agency or authority."

**SEC: "The Commission objects to this interrogatory and asserts the law enforcement privilege."**

SEC: "The Commission generally objects to all defendants' requests and accompanying definitions and instructions to the extent that they call for documents protected by attorney-client privilege, the work product immunity doctrine, the government law enforcement privilege or the government deliberative process privilege."

Van Etten has brought forward sufficient evidence to warrant an evidentiary hearing and the taking of government agent depositions.    The District Court too cavalierly denied Van Etten's Motion to Dismiss.

Typically, an SEC disgorgement order seeks to deprive the wrongdoer of his or her unlawful profits and thereby eliminate the incentive for violating the securities laws. *S.E.C. v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993).  The purpose of disgorgement is to deprive a person of 'ill-gotten gains' and prevent unjust enrichment.  *Hateley v. S.E.C.*, 8 F.3d 653, 656 (9th Cir. 1993).  The Double Jeopardy Clause does apply to civil penalties if they are "so extreme and so divorced from the Governments damages and expenses as to constitute punishment." *Unites States v. Ursery*, 518 U.S. 267 (1996).  A civil penalty that bears no rational relationship to actual damages "may not fairly be characterized as remedial, but only as a deterrent or retribution," and thus constitutes "punishment" for purposes of double jeopardy.  *Halper*, 490 U.S. at 449. since the SEC and Bankruptcy Court's Settlement Agreements were contingent upon one another, they should be considered as a whole, as you can not have one without the other.

## CASE FACTS

On March 16, 1998, the Securities Exchange Commission ("SEC") filed a Complaint in Atlanta Georgia alleging several security violations against International Heritage, Inc. ("IHI"), Van Etten individually and others.  Van Etten served as the President and CEO of IHI.  Since inception of the SEC investigation, Van Etten has fully and completely cooperated with the SEC as he was individually named as a party in the Complaint.  On September 17, 1999 the Atlanta Court entered a Final Judgment of Permanent Injunction as to Van Etten.

Van Etten was ordered to pay a disgorgement in the amount of $7,630,450, representing "his gains" from the conduct alleged in the SEC Complaint provided that (a) Van Etten pay $50,000 of this amount to the registry of the Court within 60 days and installments of $25,000 due every 90 days thereafter until the cash payments total $150,000 (the $150,000 proceeds were sent to the Chapter 7 Bankruptcy Trustee. In re International Heritage, Inc., Case No. 98-02675-5-ATS (Bankr. E.D.N.C.) and In re

International Heritage, Incorporated, a Nevada corporation, Case No. 98-02674-5-ATS (Bankr. E.D.N.C.), (b) waive any and all claims Van Etten or any affiliated company may have in either of the Bankruptcy cases, an amount in excess of $6,500,000 (c) assign to the Trustee any and all claims which Van Etten may have against the surety bond posted and the bond collateral in the amount of $3,500,000 held by ACSTAR, which was formerly a cash surety bond posted individually by Van Etten (d) transfer all unencumbered and currently owned 361,022 shares of common stock and 5,541,600 options of International Heritage, Incorporated, a Nevada corporation to the Trustee. Based upon Van Etten's sworn representations in his Statement of Financial Condition dated May 15, 1999, payment of the remaining disgorgement and pre/post judgment interest was waived. Since September 19, 1999 and as evidenced by the court's docket, Van Etten has fully complied with the Permanent Injunction.

Van Etten was named personally in the SEC Complaint and therefore from the beginning was always in personal jeopardy. Van Etten acted accordingly and defended himself in those proceedings. The Court waived the remaining disgorgement and agreed not to impose a civil penalty because of Van Etten's financial condition.

The amount of disgorgement was excessive and penal to Van Etten. In addition to the disgorgement, Van Etten was required to surrender his securities licenses and close his broker-dealer investment-banking firm. Van Etten has been left with virtually nothing monetarily and can no longer engage in a business he has been a part of over the past 15 years. Van Etten has not been re-licensed and is currently unemployed. Defendant is currently without the financial resources to hire an attorney to represent him in the herein proceedings as has been indigent since the District Court proceedings have began. Van Etten has sold his last major asset, the marital residence. Van Etten's family, his wife and three boys, have moved to Florida seeking financial and emotional support of their families.

The Final Judgment of Permanent Injunction is penal as it does not bear a rational relationship to the actual damages and costs caused by Van Etten. Furthermore, considered with the collusion by and between the other government agencies and the Judgment and Agreements thereto, the Federal Government should be prohibited from punishing Van Etten and placing him in double jeopardy.

## BANKRUPTCY COURT

The Settlement Agreement entered into in June 1999 by and among Holmes P. Harden, Chapter 7 Trustee of IHI and Van Etten was contingent upon Van Etten's Consent to Final Judgment of Permanent Injunction with the SEC. See January 15, 1999 IHI Trustee Filing for Authority to Settle SEC and Waive Privilege attached hereto as <u>Exhibit 9</u>.   In May 1999 ACSTAR Insurance Company filed objection to "Collusive Scheme" filing of January 15, 1999 and demands IHI Trustee to withdraw or face serious legal consequences. The issue was the Trustee bringing in the SEC bond into the IHI estate. This issue was argued up to 4th Circuit "Under Seal" and thereafter settled "Under Seal".

IHI Trustee Harden has court authority to receive 5% of distribution proceeds as Trustee and 20% of distribution proceeds as attorney for Trustee at distribution too, the estate currently has in excess of $7 million in cash, creating the promised payday, without court intervention or other, causing Trustee to have an irreversible adverse conflict against the estate, all interested parties and more importantly, Van Etten in the loss of his privilege and the collusive scheme to now prosecute Double Jeopardy in an attempt to conceal Government wrongdoing.

IHI Trustee Harden admits terminated AUSA and Attorney in Charge Scott Wilkenson solicited waiver and settlement with Van Etten and all closely held companies; Harden has been quoted as saying:

- "As Trustee, I don't want to hide any facts from anybody,"

- "I don't have a dog in any fight between the U.S. Attorney and any individual."

- "The bankruptcy rules are murky on whether on authority to waive the privileges,"

- "My first reaction when the U.S. Attorneys Office approached was to ask, what is in it for the creditors?"   "The proposal that the U.S. Attorneys Office recommended that any criminal fines that might be imposed be turned over to the creditors."   "There was no downside – and considerable upside – to waiving the privileges."

Van Etten had relinquished many of his protected legal property rights in order to resolve the outstanding litigation with the SEC. Van Etten urges this Court to read the Agreements collectively and to look at the timeline in which they occurred and the alleged collusion by and between the government agencies and the results thereof. The Settlement Agreement is penal and considered with the collusion with other government agencies, agents and the Judgment and Agreements thereto, the Federal Government should be prohibited from punishing Van Etten and placing him in further jeopardy.

The Government may contend that *Hudson v. U.S.*, 522 U.S. 93, 99 (1997) is controlling which re-applied the two-part test which was exemplified in *U.S. v. Ward*, 448 U.S. 242 (1980). The Ward-Hudson test applies to *in rem forfeiture* proceedings and is inapplicable to *in personam penalties/fines* and the herein facts. See *Unites States v. Ursery*, 518 U.S. 267 (1996).

## CONCLUSION

The Government may contend that Van Etten voluntarily entered into the agreements with the SEC, NCAG and Bankruptcy Trustee. The Government may also point out that counsel represented Van Etten. Van Etten is currently investigating his former legal counsel's role in the above, (i.e adverse actions, non-disclosure of information, not being fully informed in decision making, numerous conflicts of interest etc.) including but not limited to Brent Wood of Wood and Francis, Raleigh, NC and Kutak Rock, Atlanta, GA. Both Kutak Rock and Brent Wood have turned over hundreds of thousands of documents to the USAG Office. As one example, Mr. Wood entered his appearance in the IHI Bankruptcy on behalf of Van Etten on December 7, 1998. On February 18, 1999 the Trustee filed an application for authority to employ Mr. Wood. An Order was issued on February 19, 1999 approving the Trustee's employment of Mr. Wood. Van Etten did not give his informed consent to Mr. Wood to represent the Trustee or the IHI estate. The only firm representing Van Etten without any conflict at this time was N. Hunter Wyche, Jr. who was allowed to withdraw on July 5, 1999. In further support, please find letter dated November 12, 2003 to Mr. Charles Francis who was Brent Wood's partner at the time in question. Van Etten will not make any further allegations against either firm at this time in order to protect his attorney-client privilege

as Van Etten has been aggressively asserting his protection of attorney-client privilege and this is a highly contested issue in the District Court.

For the foregoing reasons and the reasons set forth in Van Etten's Motion to Dismiss, Van Etten respectfully requests this Court grant his interlocutory appeal and stay the District Court proceedings until Van Etten has been afforded the opportunity to examine the aforementioned government officials.

This Court should remand this matter to the District Court with instructions granting Van Etten an evidentiary hearing and the opportunity to examine; 1). IHI Trustee Holmes P. Harden, and 2). NCAG Kristine Lanning, and 3). IRS Agent Michael Delgado, and 4). SEC Bill Hicks, and 5). Former AUSA Scott Wilkinson. Van Etten requests any other relief this Honorable Court deems just and proper.

Respectfully submitted, this 29th day of January 2004.

Stanley H. Van Etten, Pro Se
7924 Lake Drive
Raleigh, NC  27613

**CERTIFICATE OF SERVICE**

This is to certify that I have this 29th day of January 2004, served a copy of the foregoing upon the United States Government, United States Attorneys' Office, in this criminal matter, by REGULAR U.S. MAIL of the same in person to:

Holmes P. Hardin
Chapter 7 Trustee
P.O. Drawer 19764
Raleigh, NC  27619

## Counsel Service E-mail, Fax or by U.S. Mail

Mr. David W. Long
Attorney at Law for Defendant Brown
P.O. Box 10096
Raleigh, NC 27605
(919) 783-2808
(919) 783-1075 Fax

Ms. Bridgett B. Aguirre
Attorney for Defendant Brothers
202 East Academy Street
Fuquay-Varina, NC  27526

Mr. Jeffrey L. Burley
Attorney for Defendant Brothers
402 Lamar Street, Suite 108
Sherman, TX 75090

Mr. John P. O'Hale
Attorney at Law for Defendant Savage
102 South Third Street
Smithfield, NC 27577

Paul K. Sun, Jr.
Attorney at Law
P.O. Box 33550
Raleigh, NC  27636
(Stand-by Counsel for Pro Se Defendant Van Etten)

Assistant United States Attorney
Mr. Gaston Williams
Federal Building, Suite 800
310 New Bern Avenue
Raleigh, NC 27601

_____
Stanley H. Van Etten
*Pro Se* Defendant