1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DISTRICT OF GEORGIA

 3     ────────────────────────────────

 4     SECURITIES AND EXCHANGE
       COMMISSION,

 5                    Plaintiff,

 6            vs.                        NO. 1-98-CV-0803-RWS

 7     INTERNATIONAL HERITAGE, INC.,
       STANLEY H. VAN ETTEN,
 8     CLAUDE W. SAVAGE,                        COPY
       LARRY G. SMITH and
 9     INTERNATIONAL HERITAGE,
       INCORPORATED, a Nevada
10     corporation,

11                    Defendants.
       ────────────────────────────────
12
                       Raleigh, North Carolina
13                     Monday, March 15, 1999

14         Videotaped deposition of ALAN S. HIRSCH, a

15     witness herein, called for examination by counsel for

16     the Defendant Stanley H. Van Etten, in the

17     above-entitled matter, the witness being duly sworn

18     by ROBIN J. SHAYS, a Notary Public in and for the

19     State of North Carolina, taken at the law offices of

20     Wood & Francis, PLLC, 434 Fayetteville Street Mall,

21     Raleigh, North Carolina, at 10:20 a.m. on Monday,

22     March 15, 1999, and the proceedings being taken down

23     by stenotype by ROBIN J. SHAYS, Registered

24     Professional Reporter, and transcribed by her

25     personally.
```

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136



EXHIBIT
10

FPDC002861

83RPP

570C

2

```
 1   APPEARANCES:

 2

 3        On behalf of the Plaintiff:

 4             WILLIAM P. HICKS, ESQ.
               U.S. Securities and Exchange Commission
 5             3475 Lenox Road, NE, Suite 1000
               Atlanta, Georgia  30325-1232
 6             (404) 842-7675

 7

         On behalf of the Defendant Stanley H. Van Etten:
 8
               BRENT E. WOOD, ESQ.
 9             Wood & Francis, PLLC
               Two Hannover Square
10             434 Fayetteville Street Mall, Suite 2300
               Raleigh, North Carolina  27601
11             (919) 828-0801

12
         On behalf of the nonparty witness:
13
               K. D. STURGIS, ESQ.
14             Assistant Attorney General
               Consumer Protection/Antitrust
15             State of North Carolina
               Department of Justice
16             114 West Edenton Street
               Raleigh, North Carolina  27602
17             (919) 716-6000

18
     ALSO PRESENT:
19
               Stanley H. Van Etten
20             Larry Schadle, Videographer

21

22

23

24

25
```

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002862

3

C O N T E N T S

| WITNESS | EXAMINATION BY COUNSEL FOR |
|---------|----------------------------|

|         | PLAINTIFF | DEFENDANT |
|---------|-----------|-----------|
| ALAN S. HIRSCH | | |
| By Mr. Wood | | 10, 139 |
| By Mr. Hicks | 133 | |

* * * *

E X H I B I T S

EXHIBIT NO.                                                    PAGE

1    Consumer Protection web page dated 3/11/99,
     http://www.jus.state.nc.us/cpsmain/
     cpsmain.htm                                               44

2    Letter dated 1/19/96 to Mr. Dan Bell
     from Kristine Lanning                                     62

3    Letter dated 4/29/97 to Mr. F. Daniel
     Bell, III, from Kristine Lanning                          74

4    Document entitled "Timeline of North
     Carolina's Investigation Against
     International Heritage, Inc. and
     Statement by Attorney General Mike
     Easley" dated March 17, 1998                              90

5    Copy of newspaper article entitled "IHI
     to pay for probe" from The Charlotte
     Observer, June 5, 1997                                    105

6    Document entitled "Minimum Required
     Features of Marketing Plan"                               110

7    Web page Memorandum to "Consumers With
     Outstanding Complaints Against IHI" dated
     August 10, 1998, http://www.jus.state.nc.
     .us/cpsmain/inther2.htm                                   121

8    Copy of Statute 14-291.2 "Pyramid and
     chain schemes prohibited" pages 895-896                   127

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002863

4

```
 1                    P R O C E E D I N G S
 2            THE VIDEOGRAPHER:  This is the videotape
 3     deposition of Mr. Alan Hirsch taken by the
 4     defendant in the matter of Securities and Exchange
 5     Commission, plaintiff, versus International
 6     Heritage, Incorporated, et al., defendants; Civil
 7     Action No. 1-98-CV-0803-RWS.
 8            This deposition is being held in the law
 9     offices of Wood & Francis, 434 Hannover Square,
10     located in Raleigh, North Carolina.  Today's date
11     is March 15, 1999.  The time is 10:20 a.m.
12            The court reporter's name is Robin Shays
13     with the firm of American Court Reporting located
14     in Hillsborough, North Carolina.
15            The videographer is Larry Schadle with
16     the firm of Video Visions located in Cary, North
17     Carolina.
18            Would counsel now please introduce
19     themselves.
20            MR. WOOD:  My name is Brent Wood and I
21     represent the defendant, Stanley Van Etten, in the
22     litigation that has already been referenced and has
23     been brought by the Securities and Exchange
24     Commission.
25            Consistent with our earlier statements in
```

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002864

5

1    previous discovery taken by the SEC, we take the

2    position that the bankruptcy stay operates as a

3    stay to this litigation.  The Securities and

4    Exchange Commission disagrees, but we are

5    proceeding forward with discovery as the SEC has.

6            This is a deposition that we are -- we

7    have noticed of Mr. Alan Hirsch.  We have

8    subpoenaed him and he has -- we've agreed upon this

9    date and he has appeared today with counsel.

10           MR. HICKS:  My name is Bill Hicks.  I

11   represent the Securities and Exchange Commission.

12           MR. STURGIS:  And I'm K. D. Sturgis.  I

13   represent the nonparty witness, Alan Hirsch.

14           THE VIDEOGRAPHER:  Will the court

15   reporter please swear in the witness.

16               (Witness sworn.)

17           MR. STURGIS:  Okay.  Mr. Wood, a couple

18   of preliminary things, one, I wanted to just on the

19   record clear up.

20           You sent us a letter on March 10, 1999,

21   indicating that you rescheduled the deposition at

22   his request.  It's our understanding that he did

23   not have a conflict on the earlier date, that some

24   others had some conflicts.  And we just wanted to

25   clarify that we were prepared to go ahead at the

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002865

6

1    earlier time as well.

2            And at this point, I guess we need to

3    clarify issues of privilege.  We expect you may ask

4    Mr. Hirsch some things that are privileged, and if

5    you do that, he will be inclined to give you as

6    much of an answer as he reasonably can, if it's

7    understood between the parties that to the extent

8    that he does testify about anything that's

9    privileged, that that does not constitute a waiver

10   beyond the extent of his testimony.

11           If that's something that you are

12   agreeable to, then I think we'll be able to give

13   you perhaps more information than you would

14   otherwise be getting.

15           MR. WOOD:  What privileges are you

16   referring to?

17           MR. STURGIS:  Attorney work product,

18   common interest privilege, also known as joint

19   prosecution privilege, and investigative privilege.

20           MR. WOOD:  Is -- has the Attorney

21   General's Office been involved in some criminal

22   investigation?

23           MR. STURGIS:  Are you asking, are we

24   conducting a criminal investigation?

25           MR. WOOD:  Yes.

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002867

7

1         MR. STURGIS:  That would be a matter that

2  is privileged.

3         MR. WOOD:  Well, I want to know what drug

4  crimes are involved here.  You mentioned a drug

5  prosecution privilege.

6         THE WITNESS:  I said a joint prosecution

7  privilege which is different from --

8         MR. WOOD:  Okay.  I thought you said drug

9  prosecution.

10        MR. STURGIS:  No.  No.  Are there any

11  things that we need to know about drugs?

12        MR. WOOD:  No.

13        MR. STURGIS:  Okay.

14        MR. WOOD:  It's just that Mr. Hirsch has

15  told me a number of times that there's nothing

16  criminal that his office does, so -- that's what's

17  been stated in letters to me.  So that's what I

18  want to understand, is if there's something

19  criminal involved in this, then I want to -- I want

20  to understand that so that I can understand these

21  privileges that are being asserted.

22        If you're asking for some consent from me

23  today, I can't give that.  We have been operating

24  under the rules of civil procedure and we'll move

25  forward along those lines.

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002860

```
1              MR. STURGIS:  Okay.  That's fine.

2              MR. WOOD:  So I can't consent to him --

3    he can -- I want him to give the responses.  I am

4    not aware of any privileges that would apply in

5    this situation.  I've looked at your objection and

6    we disagree with your objection.  We think it's

7    inappropriate.  We think either under North

8    Carolina law or under federal law, civil procedure

9    rules, Mr. Hirsch needs to answer fully in this

10   situation.

11             MR. STURGIS:  Okay.  Well, we're trying

12   to anticipate just what your questions are and this

13   all may be a moot discussion simply because your

14   questions may not go in the direction that I am

15   guessing they may.  So we'll just deal with it as

16   it comes along.

17             But as I understand it, you are not

18   willing to agree that any response that he gives

19   that may encompass privileged matters is not a

20   waiver of any further privilege; is that correct?

21             MR. WOOD:  That is correct.  And we don't

22   believe any privileges apply.  So we don't think

23   it's necessary for an issue like that to even be a

24   concern here today.

25             MR. STURGIS:  All right.  Well, fire
```

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002863

1   away.  I appreciate the chance to --

2          MR. WOOD:  I do want to understand for

3   the record who you represent.

4          MR. STURGIS:  I'm with the Attorney

5   General's Office and you have subpoenaed Mr. Hirsch

6   as a deputy attorney general with the office.

7          MR. WOOD:  I have subpoenaed Mr. Hirsch

8   individually.  I am not deposing the North Carolina

9   Attorney General's Office.  I'll reserve the right

10  to do that at a later time.  But I am -- I have

11  subpoenaed Mr. Hirsch.

12          I served him at his office as a

13  convenience to him, because I thought that would be

14  the place that he most likely would prefer to

15  receive that rather than at his personal address.

16          MR. STURGIS:  Right.  And to the extent

17  that your deposition will cover things that concern

18  him in his official capacity, we treat it as Alan

19  Hirsch as deputy attorney general, and therefore, I

20  am here representing him in that official capacity.

21

22  Whereupon,

23               ALAN S. HIRSCH,

24          having been previously sworn,

25       was examined and testified as follows:

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002869

1    DIRECT EXAMINATION BY COUNSEL FOR DEFENDANT VAN ETTEN

2          BY MR. WOOD:

3          Q    Mr. Hirsch, obviously we know each other

4    and I'm going to be conducting your deposition

5    today, and I presume you know what a deposition is.

6          A    I do.

7          Q    If during the course of the deposition, I

8    ask you a question and you don't understand my

9    question, then please let me know.  I would prefer

10   and I would assume you would prefer that the record

11   be clear so that --

12         A    That's correct.

13         Q    -- you know what I've asked and I know

14   what you've answered for any previous (sic) use of

15   this deposition.

16              This is a deposition in litigation, a

17   very serious litigation, that's been initiated by

18   the Securities and Exchange Commission against my

19   client, and so I will be having questions.  If you

20   will respond verbally, then I would appreciate it.

21              For the record, could you please give me

22   your name?

23         A    Yes, I'm Alan Hirsch.

24         Q    The other thing I will tell you too, if

25   you need a break for your personal convenience, let

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002870

64

1      A    You know, it was probably, again, 15 or

2    20 years ago, so I don't recall the details of the

3    case.  But as I recall, a solicitor entered the --

4    the office of the Attorney General in the Justice

5    Building and handed out flyers for some sale.  I

6    don't remember if it was a going-out-of-business

7    sale -- something which violated -- for some reason

8    violated one of the consumer protection laws.  So I

9    was literally a witness because I was handed a

10    flyer.

11        Q    You've been handed what's been marked as

12    Deposition Exhibit No. 2.  Do you recognize this

13    document?

14        A    Let me take a moment, please.

15            (Witness reviews document.)

16        A    I don't think so, Brent.  I mean, I can't

17    say with a certainty that I haven't seen it before.

18    Of course, you know, there are thousands of

19    documents -- probably dozens of documents I read

20    every day and this was -- this is dated

21    January '96, so it was three and -- three years and

22    some ago.  And particularly because I've seen so

23    many International Heritage documents, I can't say

24    for certainty that I haven't seen it.  But I don't

25    recall seeing it.

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002925

65

1      Q     Do you know whether or not, after seeing

2    this document, your office received any information

3    from International Heritage either directly or

4    through Mr. Bell?

5      A     I do not.

6      Q     So this doesn't jog your memory as to

7    whether or not something was provided prior to

8    early '97 or --

9      A     That's correct.  And again, Brent, let me

10   say as I said before, simply because something came

11   to the office didn't mean that I would know about

12   it.  I mean, we have, you know, 40-some people that

13   are -- that are working there.

14     Q     And based upon this letter, it would

15   confirm with you that Ms. Lanning would be probably

16   the more appropriate person to ask these questions

17   relating to IHI, that is this letter and what

18   documentation was provided and things like that?

19     A     Well, to the extent that those questions

20   have any relevance to the case that we're in, yes,

21   that's -- that's right.

22     Q     But the North Carolina Attorney General's

23   Office isn't a party in this case.

24     A     That's correct.

25     Q     But members of the North Carolina

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002926

66

1   Attorney General's Office have been listed as --

2   as -- in the case as -- as witnesses.

3        A    That I don't know.  Certainly no one has

4   discussed with me the possibility of being a

5   witness in this case.

6        Q    But Mr. Lawson did in fact testify in

7   Atlanta.  You're aware of that, right?

8        A    He did, yes.

9        Q    And Ms. Lanning went down to Atlanta when

10  the SEC initiated its action and spent several days

11  there as well; is that correct?

12       A    I believe that that's correct, yes.

13       Q    Was Ms. Lanning supposed to be a witness

14  down in Atlanta?

15       A    Not that I know of.

16       Q    What was the purpose of Ms. Lanning going

17  down to Atlanta in March of 1998?

18            MR. STURGIS:  Objection.  Common interest

19  privilege.  Mental impressions also about what was

20  a purpose or strategy in any particular action of

21  the office.

22            MR. WOOD:  So you're instructing him not

23  to answer?

24            MR. STURGIS:  That's correct.

25            BY MR. WOOD:

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002927

67

1          Q     Has your office ever corresponded with

2     the Securities and Exchange Commission relating to

3     International Heritage?

4          MR. STURGIS:  Same objection.  Please

5     don't answer the question.

6          BY MR. WOOD:

7          Q     Has your office ever corresponded with

8     regulators in the State of Georgia relating to

9     International Heritage?

10         MR. STURGIS:  Same objection.  Please

11    don't answer the question.

12         MR. WOOD:  Would the same objection and

13    same instruction be applicable for each state or

14    federal regulatory agency that I would ask him

15    about?

16         MR. STURGIS:  I don't know which ones you

17    would ask him about, but assuming that it would be

18    in regard to pyramid or similar statutes, I mean,

19    I -- if you ask --

20         MR. WOOD:  I'll -- I'll limit it to

21    pyramid or securities or --

22         MR. STURGIS:  Deceptive practices.

23         MR. WOOD:  -- deceptive practices --

24         MR. STURGIS:  Consumer protection kind of

25    matters?

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002928

68

1        MR. WOOD:  Yes, that is correct.

2        MR. STURGIS:  Yes, that -- yes, it would

3   be.

4        MR. WOOD:  And would the same objection

5   and instruction apply with regard to written

6   communications as well as --

7        MR. STURGIS:  Yes, it would.

8        MR. WOOD:  Your -- and just to clarify

9   one more.  That would also apply with regard to the

10   North Carolina Secretary of State, their securities

11   division?

12        MR. STURGIS:  That is correct.

13        BY MR. WOOD:

14   Q    Have any state or federal regulators

15   requested copies of any parts of your files that

16   are maintained relating to International Heritage?

17        MR. STURGIS:  We're going to have to make

18   the same objection and request the witness not to

19   answer.

20        MR. WOOD:  As to just whether they've

21   asked for them or not?

22        MR. STURGIS:  Correct.

23        MR. WOOD:  I want to again state for the

24   record that I'm going to reserve the right to seek

25   sanctions relating to -- to all of this.

FPDC002929

69

1          MR. STURGIS:  Well, you certainly have

2    whatever rights you have.  But you know, I think

3    that would be unfortunate.  But if you need to do

4    that, you know, that's for you to decide.

5          BY MR. WOOD:

6     Q    Have members of the media requested any

7    of the files relating to International Heritage?

8     A    Members of the media have requested

9    information.  I don't know whether they've actually

10   requested the file -- you know, the specific files

11   or not.  I know that fair bits of information have

12   been sent.

13    Q    And have they put any of their requests

14   in writing?

15    A    I don't know.

16    Q    Who would know?

17    A    Well, again, I think the -- you know,

18   Kristine would have -- would certainly be the next

19   person to ask.  Whether she knows of her own

20   knowledge or would be able to point you to someone

21   else, I don't know.  But I -- I would expect that

22   she would be -- she would know how all that worked.

23    Q    Have you communicated with any members of

24   the media relating to International Heritage?

25    A    I have.

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002930

70

1      Q      Who have you spoken to, the media?

2      A      Oh, gosh.  Nobody recently.  No, I take

3  that back.  I've talk -- I've spoken to 60 Minutes

4  recently.  But beyond the last few months, David

5  Ranii, a reporter at the Raleigh News & Observer; a

6  television reporter -- I think actually two

7  television reporters in the

8  Greensboro/Winston-Salem area.  The name Scott

9  Brooks jumps out at me.  There was one other

10  whose -- whose name I don't recall at the moment.

11  Adam someone.  Stuart Watson, who is a reporter for

12  WRAL TV in Raleigh.  I recall a reporter from the

13  Atlanta Constitution -- I don't recall his name --

14  probably at least a year ago, more than a year ago.

15  Maybe it was a her.  I don't recall, but a reporter

16  from the Atlanta Constitution.

17          There was quite a bit of media interest.

18  I think there were probably more, but that's what I

19  remember at the moment.

20      Q      Who have you spoken to with 60 Minutes?

21      A      The main fellow's name was John Wells.

22  He brought with him an associate whose name I do

23  not remember.  But they were together.

24      Q      Has anyone with 60 Minutes requested any

25  documentation from your office?

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002931

1      A      They have.

2      Q      Has your office provided any

3  documentation to them?

4      A      We have provided public records, yes.

5  Much of which, I believe, was material that was

6  submitted to us by International Heritage.

7      Q      Have you provided to them any information

8  that you're objecting to producing today?

9      A      I don't believe so.

10     Q      Have -- has your office had to assert an

11 objection similar to the one that's being asserted

12 with regard to the subpoena that we have served and

13 as to any members of the media or any other entity?

14     A      I'm sorry.  I didn't follow the question.

15     Q      Your office is asserting -- is asserting

16 an objection as to documents that we are requesting

17 and as to certain questions we are asking today.

18     A      Yes, that's correct.

19     Q      Has your office asserted that objection

20 relating to any material that has previously been

21 requested from other parties relating to

22 International Heritage?

23         MR. STURGIS:  I have to object.  The --

24 we have a subpoena here which is a formal process

25 and the way to deal with that if you have problems

FPDC002932

72

1    is an objection.

2            If you would specify what you mean by an

3    objection or asserting an objection.  I think it's

4    quite a different process when somebody calls you

5    up and -- and requests something.

6            BY MR. WOOD:

7        Q    Do you understand the question?

8        A    No.

9        Q    Your -- the objections that you have

10   asserted are based on privileges.

11       A    That's correct.

12       Q    And what I want to know is, have you

13   asserted a similar objection based upon a similar

14   privilege as to requests that have been made by

15   other parties to produce documents that are within

16   your files?

17       A    You mean in other cases or?

18       Q    No, only as to International Heritage.

19       A    To the best of my knowledge, this is the

20   only subpoena and the only deposition that we have

21   been asked to -- only subpoena that we've received

22   and only deposition that we've been asked to

23   attend.  So certainly no formal objections would

24   have been raised.

25            If matters are -- are privileged, then we

FPDC002936

73

1    would not give them out to others as well in the --

2    in the informal basis.  But there's been no reason

3    to raise an objection because yours is the only

4    formal proceeding.

5              Does that answer your question?

6        Q    You would agree, though, that if, let's

7    say 60 Minutes were to ask you for the same

8    documentation that I have asked you for --

9        A    Yes?

10       Q    -- that if your privilege is appropriate,

11   you would need to raise that same objectional

12   privilege and not produce the documentation to

13   them.

14       A    Well, yeah --

15             MR. STURGIS:  I'm going to object that it

16   calls for a legal conclusion, but you can go ahead

17   and answer the question.

18             THE WITNESS:  I guess what I'm trying to

19   say, Brent -- I'm not trying to be -- to be

20   anything other than very straightforward, is that

21   the use of the words "privilege" and "objection"

22   are specific to the formal compulsory process.  We

23   wouldn't have to raise a privilege or an objection

24   when someone else who does not have compulsory

25   process simply asks.  We would simply decline to

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002934

74

```
1    provide those materials.
2              BY MR. WOOD:
3         Q    Have you declined to provide any
4    materials to anyone other than me as counsel for
5    Mr. Van Etten or former counsel for International
6    Heritage?
7         A    I do not believe.  Now again, most --
8    most of this is not to my own knowledge, so I can't
9    be certain.  But I do not believe that we have
10   provided any materials to anyone that we now claim
11   are privileged.
12        Q    And have you declined to produce certain
13   materials to other --
14        A    Well, nobody else has asked for
15   everything.  So, rather than asking for everything
16   and then saying we decline to produce specifics,
17   generally speaking, people ask for specific
18   materials.  And then we will either produce those
19   or not.  But I don't believe -- you know, I don't
20   know, Brent.  There's a lot of stuff in the file.
21   I doubt it.
22              (Exhibit 3 marked for
23              identification.)
24              BY MR. WOOD:
25        Q    Mr. Hirsch, I'm handing you what's been
```

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

FPDC002935

75

1    marked as Exhibit 3 for this deposition.  And do

2    you recognize this document, save and except the

3    top part which is a fax indication or an a

4    indication that the document has been faxed by and

5    through several people, and also the handwritten

6    part that says, To Brent, from Angie, IHI?

7         A    Let me take a moment and -- and read it.

8              (Witness reviews document.)

9         A    Yes, I recall this letter.

10        Q    What is this letter?

11        A    Well, it's a letter dated April 29, 1997

12   from Kristine Lanning to Dan Bell, which in summary

13   determines that the Attorney General's Office has

14   concluded that -- that the IHI program was in

15   violation of North Carolina law and asking that an

16   agreement be entered setting out the method by

17   which IHI would comply with the law.

18             That's my quick summar -- summary.

19        Q    Do you know whether or not this was the

20   first notice that your office had given to

21   International Heritage that your office may have

22   considered them to be in violation of North

23   Carolina law?

24        A    I don't know for certain.  The tenor of

25   the letter suggests that it's probably the first

AMERICAN COURT REPORTING SERVICES, INC.   (919) 932-9136

IHDC002930

76

1    time that International Heritage was advised of the

2    ultimate conclusion, yes.

3        Q    This letter is copied to Forrest Goldston

4    with the North Carolina Secretary of State's

5    office.

6        A    That's correct.

7        Q    Do you know why it would be copied to

8    him?

9            MR. STURGIS:  Objection as to purpose or

10   strategy or their mental impressions.  Please don't

11   answer the question.

12           BY MR. WOOD:

13       Q    Would you have approved this letter

14   before it was sent out?

15       A    I believe so.

16       Q    But you don't recall doing that?

17       A    I believe that I did.  I mean, I do

18   recall, but again, a lot of things happen.  I can't

19   be certain, but I believe so, yes.

20       Q    In the last sentence of the second

21   paragraph, the letter says, We require legitimate

22   network marketing company -- or excuse me --

23   legitimate network marketing programs to make at

24   least 70 percent of sales to retail customers who

25   are not now and will not become participants in the

AMERICAN COURT REPORTING SERVICES, INC.    (919) 932-9136

FPDC002937