UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

**FILED**

MAR 1 5 2005

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | | |
|---|---|---|
| IN RE: | ) | Case No. 98:02675-5-AVS |
| | ) | Chapter 7 |
| INTERNATIONAL HERITAGE. INC. | ) | |
| (TAX ID#: 56-1921093) | ) | Case No. 98:02674-5-AVS |
| | ) | Chapter 7 |
| INTERNATIONAL HERITAGE | ) | |
| INCORPORATED | ) | |
| (Tax ID#: 87-0421191) | ) | |
| | ) | |
| Address: 2626 Glenwood Avenue, Suite 200 | ) | |
| Raleigh, NC  27608 | ) | |

### Memorandum of Law in Support of Appeal

Now comes Stanley H. Van Etten, Pro Se, and in support of his Appeal show the Court the following:

### Statement of Issues

Whether the Bankruptcy Court erred by entering Order Dismissing Motion to Show Cause and Request for Remedial Action, thereby denying Van Etten's Request of Court to conduct a Judicial Inquiry of the admitted violations to Van Etten's individual attorney-client privilege and other individual privileges protected within the Work Product Doctrine, as to the unauthorized waiver and release of Debtors' documents and records that are subject to an individual claim of privilege, which was identified and asserted pursuant to Court Order, which was/is accepted and recognized by Debtors' Trustee?

Whether the Bankruptcy Court erred by relying exclusively on the Bankruptcy Court Order dated June 7, 2000, ignoring two additional Court Orders regarding the same Debtors' privilege subject matter, both argued by Van Etten; (1) U.S. Bankruptcy Court Order, Order Denying Motions for Stays Pending Appeals and Order Directing Appellants to Identify Documents, dated June 28, 2000, and (2) U.S. District Court Order dated July 14, 2000, affirming both the June 7, 2000 and June 28, 2000 Bankruptcy Court Orders?

Whether the Bankruptcy Court violated Van Etten's Individual Rights and Privileges, as protected within the Fifth and/or Sixth Amendment(s) of the United States Constitution, in Dismissing Van Etten's Motion to Show Cause and Request for Remedial Action, thereby denying Van Etten's Request of Court to Conduct a Judicial Inquiry,

1

inquiry as to specific and admitted violations against Van Etten's Individual Rights and Privileges?

## Relevant Facts

On March 16, 2000, Assistant United States Attorney, Scott L. Wilkinson (hereinafter "AUSA Wilkinson") solicited Debtors' Trustee, Holmes P. Harden (hereinafter "Trustee Harden"), to file a motion in bankruptcy court requesting the court's authority to waive Debtors' pre-bankruptcy attorney-client privilege and privileges found in the Work Product Doctrine. See AUSA Wilkinson Letter attached hereto as Exhibit 1.

> AUSA Wilkinson: "With respect to the above-referenced subpoena, this office has previously requested that you, in your capacity as the Trustee for IHI and IHI, Inc., waive the attorney-client and work product privileges with respect to prebankruptcy communications involving the law firm of Wood & Francis and with respect to Georgina M. Mollick…"

> Trustee Harden: "The undersigned trustee…respectfully moves the Court pursuant to Bankruptcy Rules 6004 and 9019 for an order approving a waiver of the attorney client and work product privileges with respect to pre-bankruptcy communications between the debtors and their legal counsel in exchange for which the Office of the United States Attorney…will agree not to recommend or seek the imposition of any criminal penalties, fines or forfeitures against the debtor corporations, and to recommend and use its best efforts to insure that any restitution imposed in any criminal proceedings against any individuals and/or entities affiliated or otherwise associated with one or both debtors will be distributed to the creditors of International Heritage, Inc."

June 28, 2000, Bankruptcy Court Order Denying Motions for Stays Pending Appeals and Order Directing Appellants to Identify Documents, attached hereto as Exhibit 2.

> Judge Small: "The trustee objects to the stays and requests that the court require 'each of the Movants to identify with specificity for the Trustee each document that he or she alleges to be subject to his or her individual claim of privilege and that all documents not so identified be ordered delivered to the Trustee immediately.'"

Judge Small: "If a stay is not granted by the district court, each appellant shall, before July 18, 2000, identify any documents that he or she alleges to be subject to his or her individual claim of privilege."

July 14, 2000, District Court Order Affirming Bankruptcy Judge Small, Order Denying Motions for Stays Pending Appeals and Order Directing Appellants to Identify Documents, attached hereto as Exhibit 3.

Judge Britt: "Movants assert that if a stay is not entered, their individual attorney-client privileges would be waived or lost during the pendency of appeal and therefore would effectively moot the appeal."

Judge Britt: "Movants claim that without a stay such documents necessarily will be turned over to the trustee, the United States Attorney, or others and will result in a waiver of the individuals' attorney-client privilege. From the record presently before the court, it does not appear that this will occur."

Judge Britt: "Judge Small's order denying a stay requires Movants before 18 July 2000 to "identify any documents that he or she alleges to be subject to his or her individual claim of privilege." (Id., Ex. E at 2 (emphasis added).) The order says nothing of the production of these documents."

Judge Britt: "The court does not read these orders as requiring movants forthwith to produce documents allegedly subject to any individual claims of privilege. Of course, at some point, depending on the resolution of the individual claims issue, the documents may be subject to production. That issue is not before the court. Movants have not shown they will suffer irreparable harm in the absence of a stay."

On July 18, 2000, Van Etten, by and through his individual legal counsel Brent E. Wood, of the law firm Wood & Francis, pursuant to both the U.S. Bankruptcy Court Order of June 28, 2000 and the U.S. District Court Order of July 14, 2000 (hereinafter "Courts' Orders'"), produced the Courts' Ordered Privilege List, which is attached hereto as Exhibit 4[1].

---

[1] The July 18, 2000 Courts' Ordered Privilege List is 617-pages in total. Van Etten has attached the first and last page of the Privilege List the herein filing. Should the Court request a copy of the full 617-page Privilege List, Van Etten will immediately produce the same, as all parties in interest already have the full 617-page Privilege List.

3

> Wood: "With regard to this privilege list, my firm currently represents Stanley H. Van Etten only..."
>
> Wood: "Pursuant to the Orders of the Honorable W. Earl Britt and the Honorable A. Thomas Small in the above-referenced proceedings.  I have enclosed a detailed privilege list, which identifies each and every privileged document, which I believe to be in my possession relating to work performed for International Heritage, Inc. or International Heritage Incorporated (or related individuals). This list also identifies to whom I believe the privilege would run for each document."

Van Etten's July 18, 2000 Privilege List was accepted by Debtors' Trustee, Holmes P. Harden, without objection.  Trustee Harden informs Van Etten that he has never authorized, directly nor indirectly, any person to waive and/or release any privileged document listed within the Courts' Ordered July 18, 2000 Privilege List, and further recognizes each Debtors' privilege document listed therein as subject to an identified and applicable individual privilege.

On July  20, 2000, Van Etten, by and through his individual legal counsel, Anthony Flanagan of the law firm Wood & Francis, and pursuant to Courts' Orders', produced the Courts' Ordered Privilege List to AUSA Wilkinson, which is attached hereto as Exhibit 5.

> "Please note that the attached privileged list has been forwarded to Holmes Hardin in accordance with Judge Small's Order that we identify all documents thought to be privileged by July 18, 2000."

Van Etten's Courts' Ordered July 18, 2000 Privilege List was accepted by AUSA Wilkinson without objection.

However, on July 27, 2000, AUSA Wilkinson, apparently NOT satisfied with the Courts' Orders', caused a "NEW" Grand Jury Subpoena to be issued which compelled the production of the same/identical Debtors' documents and records, as previously compelled by the Grand Jury Subpoena served on Debtors' Trustee, which gave rise to the contested privilege subject matter for which both the bankruptcy court and district court issued Courts' Orders' resolving the same, without informing either court or the parties in interest of the "NEW" Grand Jury Subpoena.

The issuance of the July 27, 2000, "NEW" Grand Jury Subpoena (hereinafter "GJS"), issued to the Custodian of Records for Wood & Francis, PLLC, created a MISAPPREHENSION, wherein Judge Small, Judge Britt, Van Etten and others unknowingly relied upon.  A copy of that GJS is attached as Exhibit 6.

4

GJS: "Custodian of Records Wood & Francis, PLLC"

GJS: "Any and all files, correspondence, notes, internal memorandum, telephone memorandum, billing statements, payment records or other type record or document, of any description, whether on paper, film, computer diskette or other electronic medium, in your possession or subject to your custody or control, or that of any former or present partner, shareholder, associate or employee, which, in any way, relate to: **International Heritage, Inc. and/or International Heritage Incorporated** its predecessor, successor or affiliated entities, or any owner, partner, shareholder, officer, director, agent or employee thereof, whether individually or operating or doing business under the name of or in connection with any other person, entity partnership or joint venture, **for the period of April 1, 1995 through and including November 25, 1998."**

On August 16, 2000, Wood & Francis, by and through its criminal counsel, Kieran Shanahan of the firm Sanford Holshouser , filed a Motion to Quash and/or Modify the July 27th Grand Jury Subpoena and  Motion to Proceed "Under Seal." A copy of the Motion(s) is attached as Exhibit 7.

Shanahan:  "GRAND   JURY   SUBPEONA   DUCES TECUM, DATED AUGUST 15, 2000 (CUSTODIAN OF RECORDS, WOOD & FRANCIS, PLLC)"

Shanahan: **"COMES NOW** Custodian of Records, Wood & Francis, PLLC, by and through its undersigned counsel, and hereby moves the Court for an Order Quashing and/or Modifying the above-referenced Grand Jury Subpoena"

Shanahan: On or about July 27, 2000, Assistant United States Attorney Scott L. Wilkinson caused a Grand Jury Subpoena to be issued, addressed to "Custodian of Records, Wood & Francis, PLLC," which, in essence, calls for the production of all files, correspondence, notes, internal memoranda, etc. regarding International Heritage, Inc and/or International Heritage Incorporated during the time period April 1, 1995 through November 25, 1998. Respondent has/had an attorney-client relationship with these entities and other related persons."

5

Mr. Shanahan: "Undersigned counsel was first contacted and retained to assist Respondent in complying with the Subpoena on Friday, July 28, 2000"

Mr. Shanahan: "Respondent has not had ample time to consider the Subpoena, locate documents which would be responsive to the Subpoena, receive the full benefit of advice of counsel, and otherwise be prepared to respond and comply with the Subpoena. Additionally, Counsel for the case cannot adequately assist Respondent in complying with a Subpoena seeking massive production of documents on little more than two-weeks notice." Morever, the terms of the Subpoena are oppressive and have/or will require literally hundreds of hours of work and effort on the part of Respondent to comply."

Mr. Shanahan: "Complying with the Subpoena has created a conflict between Respondent and one or more of its existing clients."

Mr. Shanahan: "Complying with the Subpeona as written causes Respondent to run the significant chance of inadvertently violating an attorney-client privilege and/or an attorney work-product privilege. **In this regard, the documents sought include documents which are the subject of litigation in a United States Bankruptcy Court proceeding relative to International Heritage, Inc. and/or International Heritage, Incorporated.**"

Mr. Shanahan: "Finally, and perhaps most importantly, this Subpoena does not just seek production of records, but it seeks testimony and the creation of documents from the Respondent."

Shanahan: "The Custodian of Records in this case is one of two partners within the Respondent law firm. **Counsel for the Government has notified undersigned counsel that this attorney currently is a subject/target of the investigation.**"

Shanahan: **"With regard to certain documents previously described to the Government as "IHI privilege documents," undersigned counsel will submit these documents, Under Seal, to the Clerk of Court and respectfully requests that the Clerk be directed to maintain these documents under seal until such time as**

6

> this Court can enter an Order regarding dissemination
> of said documents to the Grand Jury, pursuant to its
> Subpoena."

On August 16, 2000, the same day as the above Wood & Francis Motion(s) were filed, but prior to any Hearing thereto, Wilkinson compelled Brent E. Wood individually and as Custodian of Records for Wood & Francis, to appear before the Grand Jury, wherein Mr. Wood testified and produced all of Debtors' and Van Etten's privileged documents and records, more specifically, all Debtors' documents previously identified as subject to an applicable and identified privilege as to an individual, all of which were listed within the Courts' Ordered July 18, 2000 Privilege List compiled and submitted by Van Etten.

Trustee Harden informs Van Etten that he never authorized, directly nor indirectly, neither Mr. Wood nor AUSA Wilkinson, to waive and/or release any of Debtors' privileged documents listed within the Courts' Ordered July 18, 2000 Privilege List compiled and submitted by Van Etten, which was accepted and recognized by Trustee Harden, without exception.

Van Etten's Motion to Show Cause and Request for Remedial Action, at page 6 and evidenced at Exhibit 8, irrefutably prove AUSA Wilkinson and Brent Wood, individually and collectively, violated Courts' Orders' in the secret and unauthorized waiver and release of approximately 30,000 pages of Debtors' Privileged Documents and records, all of which are listed and described in detail within the Courts' Ordered July 18, 2000 Privilege List, which was compiled and produced by Van Etten to Trustee Harden, who accepted the same without exception, thereby recognizing and asserting privilege to each Debtors' document listed therein.

AUSA Wilkinson's Grand Jury Exhibit Notebook for August 16, 2000 reveals the following, see Exhibit 8 and page 6 within Van Etten's Motion to Show Cause filing;

> Production Log B, 336-pages "Personal/Dual Priv" "Produced
> to GJ by BEW 8/16/00" word processing file name,
> "f:\wp\IHIPrivilegedLists\MasterList2WOIHI.b.xls  (sheet  1)"
> "Page 1 of 336" initialed by Brent Wood "BW"

Additionally, during a July 21, 2004 Hearing before Chief Judge Boyle, AUSA Clay Wheeler informed the Court that the Government had in fact received into evidence all of the Debtors' privileged documents and records listed within the Courts' Ordered July 18, 2000 Privilege List.

Van Etten contends Wilkinson compelled Brent Wood to produce Debtors' documents and records listed with the Courts' Ordered July 18, 2000 Privilege List, compiled and produced by Van Etten to Trustee Harden, on the afternoon of August 16, 2000, produced NOT UNDER SEAL, thereby rendering the Wood & Francis motions MOOT, is conduct prejudicial to the administration of justice.

## The Rules Governing Criminal Discovery Have Limitations

On March 16, 2000, Assistant United States Attorney, Scott L. Wilkinson (hereinafter "AUSA Wilkinson") solicited the Trustee in the above-referenced bankruptcy proceedings, "With respect to the above-referenced subpoena, this office has previously requested that you, in your capacity as the Trustee for IHI and IHI, Inc., waive the attorney-client and work product privileges with respect to prebankruptcy communications involving the law firm of Wood & Francis...". A copy of that Letter is attached as <u>Exhibit 1.</u>

With respect to the Fifth Amendment privilege against self-incrimination, Van Etten contends Wilkinson, acting as a "laboring oar" by and through the civil proceedings in U.S. Bankruptcy Court, compelled Van Etten to be a witness against himself in a scheme to obtain evidence to be used against Van Etten in the subsequent criminal prosecution, a prosecution that Wilkinson willfully delayed, in conduct prejudicial to the administration of justice and in violation of Van Etten's individual rights and privileges.

While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive. Compare Rules 26 through 37, Fed. R. Civ. P., 27 U.S.C.A. with Rules 15, 16, and 1, Fed. R. Crim. P., 18 U.S.C.A. Separate policies and objectives (criminal v. civil) support these different rules.

A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.

Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. Campbell, 307 F.2d at 487.

Civil discovery rests upon "a broad footing of full mutual disclosure of information," while the rules of criminal discovery "restrict disclosures to a minimum." United States v. Simon, 262 F. Supp. 64, 3 (S.D.N.Y. 1966), rev'd on other grounds, 373 F.2d 649 (2d Cir. 1967), cert. granted sub nom., Simon v. Wharton, 386 U.S. 1030 (1967), vacated as moot, 389 U.S. 425 (1968).

According to the district court in Simon, **if there is a reasonable probability that either the prosecution or the defense will be able to secure a full disclosure of the other side's case while relying on the rules to prevent disclosure of its own, there is, unfairness likely to affect the result of the trial of such importance and significance as to require the intervention of the court to ensure the fair administration of criminal justice and the rules governing it.** (emphasis added) Simon, 262 F. Supp. at 73-74.

In United States v. Parrott, 248 F. Supp. 196 (D.D.C. 1965), the court dismissed the indictment because the defendants had testified fully at the trial of an SEC injunctive action without being informed that the SEC had already recommended criminal prosecution. The Court's holding was very broad: "The Court holds that the government may not bring a parallel civil proceeding and avail itself of civil discovery devices to obtain evidence for subsequent criminal prosecution." Parrott, 248 F. Supp. at 202.

Similarly, in U.S. v. Tison, the court held it was "improper for the Government to institute a civil action to generate discovery for a criminal case." United States v. Tison, 780 F.2d 1569, 1573 (11th Cir. 1986). See also, Kordel, 397 U.S. 11-12; Unruh, 855 F.2d at 1374; United States v. Teyibo, 877 F. Supp. 846, 855-857 (S.D.N.Y. 1995), aff'd, 101 F.3d 681 (2d Cir. 1996).

Likewise, in the Supreme Court case, Midwest Investments, Inc., et. al., Petitioners v. Securities and Exchange Commission, (No. 96-930), the petitioners asked whether the Securities and Exchange Commission brought their civil law enforcement action in order to obtain evidence for use in a future criminal proceeding and if so, whether that provides a basis for relief in a subsequent criminal prosecution. In the Court's opinion, "If petitioners are ever indicted for their activities..., and if they can substantiate their claims of bad faith, they may seek appropriate relief in the criminal proceedings."

The U.S. Attorneys Office initiated the "matter in issue" herein as a parallel civil proceeding to avail itself of civil discovery devices to obtain evidence for the subsequent criminal prosecution of Van Etten and others, for the identical "matter in issue" compromised and settled in Courts' Orders in Bankruptcy Court. Van Etten fully testified at the SEC's Preliminary Injunction Hearing and throughout the injunctive action. Van Etten fully testified at the above-referenced bankruptcy proceedings 20004 Examination and 341 Meeting of Creditors.

In *United States v. Parrott*, 248 F. Supp. 196 (D.D.C. 1965), the court dismissed the indictment because the defendants had testified fully at the trial of an SEC injunctive action without being informed that the SEC had already recommended criminal prosecution. The Court's holding was very broad: "The Court holds that the government may not bring a parallel civil proceeding and avail itself of civil discovery devices to obtain evidence for subsequent criminal prosecution." Parrott, 248 F. Supp. at 202.

In *Midwest Investments, Inc., et. al., Petitioners v. Securities and Exchange Commission*, (No. 96-930), the petitioners asked, "Whether petitioners' claim that the Securities and Exchange Commission brought this civil law enforcement action in order to obtain evidence for use in a future criminal proceeding provides a basis for relief in this case." In the Court's Opinion, "If petitioners are ever indicted for their activities at Midwest, and if they can substantiate their claims of bad faith, they may seek appropriate relief in the criminal proceedings." See also, Kordel, 397 U.S. 11-12; Unruh, 855 F.2d at 1374; United States v. Teyibo, 877 F. Supp. 846, 855-857 (S.D.N.Y. 1995), aff'd, 101 F.3d 681 (2d Cir. 1996).

9

*Paul Harrigan & Sons, Inc.*, 14 F.R.D. at 335; *see also Holzbaugh*, 13 F.R.D. at 237. In *Perry v. McGuire*, 36 F.R.D. 272, 23 (S.D.N.Y. 1964), civil discovery was stayed pending the determination of parallel criminal proceedings, since "it seems clear that to require defendant Blumner to respond to over 100 interrogatories at this time would be oppressive and would infringe on his constitutional rights."

*Jones v. B.C. Christopher & Co.*, 466 F. Supp. 213, 224 (D. Kan. 1979), the court recognized that civil defendants (also defendants in a closely-related criminal case) who invoke the privilege "must be protected as a matter of common sense, " for "otherwise such persons might run the risk of suffering sanctions or default in a civil action on the one hand, or assisting their own criminal prosecution on the other."

In *Gordon v. FDIC*, 427 F.2d 578, 580 (D.C. Cir. 1970), the court recognized that: There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. In such a case, "a court properly provides a protective order to prevent discovery, such as interrogatories, which 'may well provide proof to the Government from which it may establish the criminal charges against the indicted defendants.'" *Gordon*, 427 F.2d at 580. In *Gordon*, while the Court of Appeals could not say that the district court abused its discretion in denying a total stay of the civil litigation, the cause was remanded to permit reconsideration, in light of the possibility of self-incrimination.

In *SEC v. Vesco*, 16 F.R. Serv. 2d at 1240, an SEC injunctive action against defendants who faced "imminent" criminal prosecution, the court decided to grant a protective order, unless the SEC conferred immunity upon defendants, because it was "highly probably that defendants will suffer grave, irreparable civil and criminal consequences should they choose either course of action, testifying at the depositions or invoking the protection of the Fifth Amendment." Balancing the relative hardships, the court concluded that the threatened harm to defendants' constitutional rights outweighed the SEC's interest in enjoining any scheme to defraud. A number of courts have held that relief from discovery may be necessary to protect substantial rights under "special circumstances" where concurrent civil and criminal prosecutions are in issue. Courts issuing discretionary stays based on Fifth Amendment considerations have relied on the apparent unfairness of forcing a litigant to choose between invoking the Fifth Amendment in a civil case, thus risking loss there or answering questions in the civil context, thus risking subsequent criminal prosecution. *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084 (5th Cir. 1979) (case stayed until statute of limitations ran on potential criminal prosecution); *United States v. A Certain Parcel of Land*, Moultonboro, 781 F. Supp. 830, 834 (D.N>H> 1992) ("Court should endeavor to accommodate the claimant's fifth amendment rights in forfeiture proceedings.")

In *United States v. U.S. Currency*, 626 F.2d 11 (6 Cir. 1980) (dismissal reversed, "Clearly appellees should not be compelled to choose between the exercise of their Fifth

10

Amendment privilege and the substantial sums of money which are the subject of this forfeiture proceeding..."

Wilkinson's scheme and conduct within the IHI Bankruptcy proceeding in U.S. Bankruptcy Court, acting as a "laboring oar" therein, for the period November 25, 1998 through July 29, 2002, was prejudicial to the administration of justice and in violation of Van Etten's individual rights and privileges.

### Fifth and Sixth Amendment Argument

Wood & Francis was NOT the Custodian of Records for IHI. Trustee Harden was NOT the Custodian of Records for IHI. Van Etten was the Custodian of Records for IHI, for specific documents and records identified within the Courts' Ordered July 18, 2000 Privilege List, totaling approximately 30,000 pages of Debtors' privileged documents and records. A copy of Letter of Custodianship is attached as <u>Exhibit 8.</u>

Wood & Francis was Van Etten's individual legal counsel serving as Van Etten's "storing agent" for all of Van Etten's individual legal document and records, including the Debtors' privileged documents and records (those listed within the Courts' Ordered July 18, 2000 Privilege List) as Van Etten was the Custodian of Records for Debtors' privileged documents and records.

Brent Wood in response to a North Carolina State Bar Grievance Committee request for information, regarding the unauthorized waiver and release of privileged documents and records listed within Courts' Ordered July 18, 2000 Privilege List;

> Wood: "I immediately recognized that, because of the large volume of records that W&F retained as a result of the litigation initiated by the Securities and Exchange Commission and the class-action plaintiffs, **some of the records sought by the United States Attorney's Office from Mr. Van Etten were technically in our possession as Mr. Van Etten's lawyer in that litigation.**"

> Wood: **"Because of the role that I and W&F took with regard to the litigation initiated by the Securities and Exchange Commission and the class-action plaintiffs, we became a clearing house and storing agent for many different forms of documents."** (emphasis added)

On June 22, 1999, the Trustee in the above-captioned bankruptcy proceedings filed an Application of Trustee for Authority to Enter Into Settlement Agreement. A copy of that Motion is attached as <u>Exhibit 9.</u>

The substance of this Motion was the Trustee's request of an "order authorizing him to enter into a Settlement Agreement with Stanley H. Van Etten ("Van Etten"), Mayflower Holdings, Inc., Mayflower Venture Capital, LLC, Mayflower Aviation, LLC, Mayflower Capital, LLC and Mayflower Hunt Club (the "Mayflower Companies") in exchange for "the unfettered turnover of $4.1 million in funds for payment of claims in these bankruptcy cases, and "Van Etten shall withdraw his objection to the Trustee's Application to enter Stipulation and Consent to Final Judgment of Permanent Injunction with regard to the SEC settlement; however, Van Etten will not withdraw his objection to the Trustee's waiver of the Debtor's attorney-client privilege. Furthermore, Van Etten will not waive his attorney-client privilege, but will waive argument relating to his objection to the Trustee's waiver of the attorney-client privilege.," and "The Trustee does release Van Etten and the Mayflower Companies from all claims and causes of action through the date of the Settlement Agreement." **The Trustee's Motion required the approval of both the U.S. District Court and the U.S. Bankruptcy Court, and the individual signature of Brent E. Wood, as a party to the Agreement.**

On July 22, 1999, an Order Authorizing Trustee to Enter Into Settlement Agreement was entered by Judge Small, in U.S. Bankruptcy Court. A copy of that Order is attached as Exhibit 10.

On November 2, 1999, the fully-executed and fully-authorized, both U.S. District Court and U.S. Bankruptcy Court, Settlement Agreement was filed in the above-referenced bankruptcy proceedings. A copy of the fully-executed Settlement Agreement is attached as Exhibit 11.

### The Bankruptcy Court Must Conduct A Judicial Inquiry

It is an irrefutable fact that Wood & Francis was concurrently Van Etten's Lead-Defense-Counsel in the Federal Criminal Investigation of IHI, Van Etten and others when AUSA Wilkinson caused a Grand Jury Subpoena to be issued to the Custodian of Records for Wood & Francis, who was (the firm and attorneys) then both a "subject" and "target" within the same federal criminal investigation.

Not one of these directly adverse conflicts, against Van Etten, were disclosed, as required by the Rules of Professional Conduct, not to Van Etten and not to either the bankruptcy court nor the district court, during the pendency of the contested privilege subject matter for which Courts' Orders' were issued resolving the same. **Van Etten contends these undisclosed directly adverse, both material and personal, conflicts of interest were non-waivable and therefore this conduct, AUSA Wilkinson and Brent Wood, is and remains prejudicial to the administration of justice, in both the bankruptcy court and district court.**

"[T]he standard test to determine if a conflict is non-waiveable is whether a 'disinterested lawyer would conclude that the client should not agree to the representation under the circumstances.'" (quoting Model Rule 1.7, Comment 5).

It is true that in a situation of retained counsel, "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Cuyler v. Sullivan, 446 U. S. 335, 347 (1980).

In the Supreme Court case, Cuyler v. Sullivan (1980), the court found that the trial judge could rely upon the absence of any objection by counsel, since counsel has **"an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict arises during the course of trial."** (emphasis added). The Court noted, however, that there might be cases where the trial court "reasonably should know" from the surrounding circumstances that a particular conflict exists and then it has an obligation to make an inquiry on its own initiative.

The Supreme Court in Holloway v. Ark. (1978) established that, under some circumstances, the trial court has a constitutional obligation to inquire into the existence of an actual conflict, and that violation of that duty will constitute in itself an abridgment of the defendant's constitutional right to counsel. **Once the represented party establishes that "a conflict of interest actually affected the adequacy of his representation," he is automatically entitled to relief. Holloway.** (emphasis added)

To establish incompetence based in counsel's performance in a multiple representation situation, the represented parties must show "an actual conflict of interest that adversely affected counsel's his lawyer's performance." Cuyler v. Sullivan (1980). Flasser v. U.S. (1942) is illustrative.

The presumption of prejudice is deemed appropriate because, citing Burger v. Kemp (1987);

- (i) "the duty of loyalty to a client is "perhaps the most basic" responsibility of counsel,"
- (ii) "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests...due in part to the fact that the conflict may affect almost every aspect of the lawyer's preparation and presentation of the case,"
- (iii) "lawyers are charged with knowledge that they are obliged to avoid such a conflict" and,"
- (iv) "a judge can avoid the problem by questioning the defendant, in any case presenting a situation that may give rise to a conflict, in order to determine whether the defendant is aware of the possible conflict and whether he has waived his right to conflict-free representation."

Van Etten contends Wilkinson knowingly created a directly adverse and prejudicial conflict of interest against Van Etten and his individual rights and privileges, in the issuance of the "NEW" GJS to the Custodian of Records for Wood & Francis, who was then concurrently representing Van Etten individually in the same federal criminal investigation wherein the GJS was issued, and AUSA Wilkinson further concealed the

13

same from both Judge Small in Bankruptcy Court and Judge Britt during Appeal of the Bankruptcy Court's Orders in District Court.

Van Etten contends Wilkinson's conduct in the issuance of the "NEW" Grand Jury Subpoena (July 27, 2000, issued to Custodian of Records for Wood & Francis), compelling the production of the same Debtors' privileged documents and records, as was contested and resolved by Courts' Orders', was and remains prejudicial to the administration of justice.

Van Etten contends the admissions within the August 16, 2000 Motion(s) filed by Wood & Francis irrefutably prove that both Wood & Francis and AUSA Wilkinson both knew the issuance of a July 27, 2000 GJS caused an immediate and irreversible, directly adverse conflict of interest against Van Etten, both personal and material, while Wood & Francis continued to represent Van Etten individually within the same federal criminal investigation wherein the Wood & Francis GJS was issued. Neither Wilkinson nor Wood & Francis disclosed this direct and material adverse interest conflict to Chief Judge Boyle, Bankruptcy Judge Small nor Senior District Court Judge Britt, thereby creating a MISAPPREHENSION for which subsequent court orders have wrongfully relied. Van Etten contends this conduct was prejudicial to the administration of justice.

Respectfully submitted this 14th day of March 2005.


Stanley H. Van Etten
7949 Bridgestone Drive
Orlando, Fl 32835
(407) 292-2161
vanettens@aol.com

14

## CERTIFICATE OF SERVICE

I, Stanley H. Van Etten, do hereby certify that all parties listed below are served a copy of the herein response, by mailing a complete copy thereof to each such party at the address indicated below with its proper postage attached and deposited in an official depository under the exclusive care and custody of the United States Post Office, to include those parties requesting electronic service via email, and/or by electronic mail service to the email address for each.

Marjorie K. Lynch
Bankruptcy Administrator
P.O. Box 3039
Raleigh, NC 27602-3039

Terri L Gardner
Poyner & Spruill, LLP
PO DRAWER 10096
RALEIGH, NC 27605-0096

Holmes P Harden
Maupin, Taylor & Ellis, Pa
P. O. Drawer 19764
Raleigh, NC 27619

Stephani Wilson Humrickhouse
Nicholls & Crampton, P.A.
PO Box 18237 Raleigh, NC 27619

Wood & Francis, PLLC
P.O. Box 164
Raleigh, NC 27602

Scott Wilkinson
617 Sarah Lawrence Court
Raleigh, NC 27609

Office of the U.S. Attorney
AUSA Neal Fowler
310 New Bern Avenue
Suite 800
Raleigh, NC 27601

Brent Wood
1135 Kildaire Farm Road
Suite 311-8
Cary, NC 27511

Respectfully submitted,

Stanley H. Van Etten, Pro Se
7949 Bridgestone Drive
Orlando, Fl 32835
(407) 292-2161
vanettens@aol.com

# NICHOLLS & CRAMPTON, P.A.

### ATTORNEYS AT LAW

W. Sidney Aldridge
Robin Adams Anderson
Gregory B. Crampton†
Nicholas J. Dombalis II
Misty Coble Hedspeth
Stephani W. Humrickhouse†
F. Timothy Nicholls
Kevin L. Sink††
† Board Certified Specialist in Bankruptcy Law
†† Board Certified Specialist in Business
  Bankruptcy Law

4300 Six Forks Road
Suite 700
Raleigh, North Carolina 27609

*Mailing Address:*
Post Office Box 18237
Raleigh, North Carolina 27619

(919) 781-1311
FAX (919) 782-0465

June 8, 2004

**VIA U.S. MAIL**

Mr. Stan Van Etten
10504 Tredwood Drive
Raleigh, NC  27615

     RE:    International Heritage, Inc.

Dear Stan:

    In accordance with the request set forth in your June 3, 2004, email to me, I have enclosed a copy of the March 16, 2000, letter from Scott L. Williamson to Holmes P. Harden.

    Please call me if you have any questions.

        Sincerely,

        Stephani W. Humrickhouse

SWH/tr

Enclosure

cc:    Holmes P. Harden
       Paul Sun w/enc.

O:\CLIENT\CHP7TR\InternationalHeritage\LETTERS\vanetten.stan.001.wpd

*P.S. Resent 6/15/04 due to change of address and forwarding time expired.*

## MAUPIN TAYLOR, P.A.
### ATTORNEYS AT LAW
HIGHWOODS TOWER ONE, SUITE 500
3200 BEECHLEAF COURT
RALEIGH, NORTH CAROLINA 27604-1064

**MAILING ADDRESS**
POST OFFICE DRAWER 19764
RALEIGH, NORTH CAROLINA  27619-9764
TELEFAX (919) 981-4300

TELEPHONE (919) 981-4000

**DURHAM/RESEARCH TRIANGLE PARK OFFICE**
SUITE 480, BETA BUILDING
2222 CHAPEL HILL - NELSON HIGHWAY
DURHAM, NORTH CAROLINA 27713
TELEPHONE (919) 361-4900

# FACSIMILE TRANSMISSION

### CONFIDENTIAL [ ]           RUSH [ x ]

TO: *Stephani Humrickhouse, Esq.*       FROM:  *Holmes P. Harden, Esq.*

_____

_____              MAUPIN TAYLOR, P.A.
                                       POST OFFICE DRAWER 19764
_____              RALEIGH, NORTH CAROLINA  27619-9764
                                       **DIRECT DIAL #:  *981-4011***

CITY: _____        DATE: *June 8, 2004*

FACSIMILE #:  **782-0465** _____   OUR FILE NUMBER:        *BANK7A-HFN*

TOTAL NUMBER OF PAGES, INCLUDING COVER SHEET: 3

        The material transmitted and communicated herein ("communication") is intended only for the use of the individual or entity to which it is addressed, and may contain information that constitutes work product, or is subject to attorney-client privilege, or is confidential and exempt from disclosure under applicable law.  If the reader of this communication is not the intended recipient or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

## MESSAGE:

                        Original to follow by mail?  ____ Yes   _x_ No

                        We are transmitting from Group III equipment.

Facsimile #:  919/981-4300                                    Help #:  919/981-40

RALEIGH\382629_1



**U.S. Department of Justice**

**Janice McKennie Cole**

*United States Attorney*
*Eastern District of North Carolina*

*310 New Bern Avenue*                         *Telephone 919/856-4530*
*Suite 800 Federal Building*                  *Criminal FAX 919/856-4687*
*Raleigh, North Carolina 27601-1461*          *Civil FAX 919/856-4821*

March 16, 2000

Holmes P. Harden                    <u>**VIA FACSIMILE AND MAIL**</u>
Maupin Taylor & Ellis, P.A.               (919) 981-4300
3200 Beechleaf Court
Raleigh, N.C.  27604-1064

    RE:   Grand Jury Subpoena <u>Duces Tecum</u>, Holmes P. Harden,
        Trustee in Bankruptcy for International Heritage, Inc.
        ("IHI") and International Heritage, Incorporated ("IHI,
        Inc."), dated April 30, 1999

Dear Mr. Harden:

    With respect to the above-referenced subpoena, this office has
previously requested that you, in your capacity as the Trustee for
IHI and IHI, Inc., waive the attorney-client and work product
privileges with respect to prebankruptcy communications involving
the law firm of Wood & Francis and with respect to Georgina M.
Mollick, who served as in-house legal counsel for the same. This
request would also necessarily include any other legal counsel
utilized by or on behalf of IHI or IHI, Inc. <u>See Commodity Futures
Trading Commission v. Weintraub</u>, 471 U.S. 343, 105 S.Ct. 1986
(1985).

    Pursuant to our conversations over the past several days, you
are aware that this office and the Federal Bureau of Investigation
are conducting an ongoing federal criminal investigation of IHI and
IHI, Inc., and many of their principal officers and employees and
associated entities and individuals. In light of the present legal
status of IHI/IHI, Inc. and their status within the bankruptcy
proceedings, it does not appear likely that these companies would
be the subject of any indictments or criminal prosecutions that may
arise from the present investigation.

    In the event that the prosecution of IHI or IHI, Inc. is
deemed warranted, however, and upon their conviction thereon, this
office agrees that it will not recommend or seek the imposition of
any criminal penalties, fines or forfeiture against IHI or IHI,
Inc.

Holmes P. Harden
March 16, 2000
Page Two

Alternatively, this office agrees, to the extent allowed by
law, that it will use its best efforts to insure that any penalties
or fines which may be imposed by the Court, in its discretion,
would be subordinated to all claims other than those of IHI and
IHI, Inc. and/or its shareholders in the bankruptcy proceedings
involving IHI, No. 98-02675-5-ATS, and IHI, Inc., No. 98-02674-5-
ATS.

Thank you for your attention to this matter.  If you have any
questions or comments regarding this matter, please contact me.

Sincerely,

JANICE McKENZIE COLE
United States Attorney

SCOTT L. WILKINSON
Assistant United States Attorney
Criminal Division

SLW:mc

cc:  Marjorie K. Lynch, Bankruptcy Administrator
     (via facsimile only)



**U.S. Department    Justice**

**Janice McKenzie Cole**

*United States Attorney*
*Eastern District of North Carolina*

---

*310 New Bern Avenue*
*Suite 800 Federal Building*
*Raleigh. North Carolina  27601-1461*

*Telephone 919/856-4530*
*Criminal FAX 919/856-4487*
*Civil FAX 919/856-4821*

April 30, 1999

Holmes P. Harden
Trustee in Bankruptcy for International Heritage Inc.
   and International Heritage Incorporated
3200 Beechleaf Court
Raleigh, N.C.  27619

> RE:  Grand Jury Subpoena <u>Duces Tecum</u>, Holmes P. Harden,
>       Trustee in Bankruptcy, dated April 30, 1999

Dear Sir or Madam:

The attached subpoena requires your appearance before a Federal Grand Jury in Raleigh, N.C. on May 18, 1999.

If you prefer, you may comply with the requirements of the subpoena by turning over any responsive documents to the Federal Agent who serves this subpoena upon you and requesting that they cause them to be returned to the Grand Jury for you. If you choose to follow this course of action, it will not be necessary for you to physically appear before the Grand Jury on the subpoena date.

If you have any questions concerning the requirements of this subpoena, please contact me at (919) 856-4099.

Sincerely,

JANICE McKENZIE COLE
United States Attorney

SCOTT L. WILKINSON
Assistant United States Attorney
Criminal Division

SLW:mc

Enclosures

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

# United States District Court

Eastern ———— **DISTRICT OF** ———— North Carolina

TO: Holmes P. Harden
    Trustee in Bankruptcy for
       International Heritage Inc. and
       International Heritage Incorporated
    3200 Beechleaf Court
    Raleigh, N.C.  27619

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:
[X] PERSON      [X] DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| Federal Building<br>310 New Bern Avenue<br>Raleigh, North Carolina | Grand Jury Room<br>Sixth Floor |
| | DATE AND TIME<br>May 18, 1999<br>9:00 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

See Attachments  I  and  II.

☐ *Please see additional information on reverse*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | DATE |
|---|---|
| DAVID W. DANIEL | April 30, 1999 |
| (BY) DEPUTY CLERK<br>*Teri Carpenter* | |

This subpoena is issued on application
of the United States of America

USAO No. 98-R-00015

NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY
SCOTT L. WILKINSON
310 New Bern Avenue
Suite 800, Federal Bldg.
Raleigh, N.C.  27601-1461
(919) 856-4099

*"If not applicable, enter "none"

## ATTACHMENT I

Any and all files, correspondence, notes, internal memorandum, telephone memorandum, billing statements, payment records or other type records or documents, of any description (whether on paper, film, computer diskette or other electronic medium) in your possession, or subject to your custody or control which relate, in any way, to **International Heritage Inc. and/or International Heritage Incorporated**, or any affiliate or other related entity for the time period of April 1995 through and including April 30, 1999.

The terms "documents or other type records" as used herein includes, but is not limited to, any written, printed, typed, recorded or graphic matter, however produced or reproduced, including drafts of documents and records, excerpts or summaries and all originals and copies that are non-identical because of notations or otherwise.

You are directed to produce all responsive documents and records that are in your possession, custody or control, including documents or records in the possession, custody or control of any representative, agent, attorney or other person acting on your behalf.

## <u>ATTACHMENT II</u>

1.    ALL DOCUMENTS AND RECORDS PRODUCED, WHETHER ON PAPER, FILM, COMPUTER OR OTHER ELECTRONIC MEDIUM, SHALL BE <u>**ORIGINALS**</u>.  If originals are not available, the best available copies shall be produced.

2.  All responsive documents and records shall be produced in their original condition and shall not be altered in any manner. For example, documents and records shall be produced in the order they are found; if a document is stapled or paperclipped, it shall be produced in this form.

3.    All file folders, labels and envelopes which are associated with subpoenaed documents and records shall also be produced in their original condition and order.  In other words, where the subpoena calls for a certain class of documents or records, the same shall be produced along with the file folders, file indexes, etc. by which the documents and records are filed and/or organized.

IN THE UNITED STATES BANKRUPTCY COURT **FILED**
FOR THE EASTERN DIVISION
RALEIGH DIVISION

MAR 2 8 2000

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

| | | |
|---|---|---|
| INTERNATIONAL HERITAGE, INC. | ) | CASE NO. 98-02675-5-ATS |
| | ) | |
| INTERNATIONAL HERITAGE, | ) | CASE NO. 98-02674-5-ATS |
| INCORPORATED, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

### MOTION FOR APPROVAL OF
### COMPROMISE AND SETTLEMENT

The undersigned trustee in bankruptcy in the above-captioned case respectfully moves the Court pursuant to Bankruptcy Rules 6004 and 9019 for an order approving a waiver of the attorney client and work product privileges with respect to pre-bankruptcy communications between the debtors and their legal counsel  in exchange for which the Office of the United States Attorney for the Eastern District of North Carolina will agree not to recommend or seek the imposition of any criminal penalties, fines or forfeitures against the debtor corporations,and to recommend and use its best efforts to insure that any restitution imposed in any criminal proceedings against any individuals and/or entities affiliated or otherwise associated with one or both debtors will be distributed to the creditors of International Heritage, Inc.

Trustee is of the opinion that waiving the aforesaid privileges is in the best interest of the expeditious administration of the estates because it will minimize the need for the estates to participate in a defense of any criminal prosecution by the United States Attorney and may result in the generation of funds with which to pay claims in the International Heritage, Inc. case.

WHEREFORE, trustee prays that the Court enter an order allowing the undersigned to waive the attorney client and work product privileges according to the terms set forth above.

243945

Respectfully submitted this _28_ day of March, 2000.

MAUPIN TAYLOR & ELLIS, P.A.

BY: _____

Holmes P. Harden, Trustee
3200 Beechleaf Court, Suite 500
Post Office Drawer 19764
Raleigh, North Carolina 27619-9764
Telephone:  919/981-4000
Facsimile: 919/981-4300

243945

EXHIBIT

2

**FILED**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

JUN 28 

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

IN RE:

INTERNATIONAL HERITAGE, INC.,
INTERNATIONAL HERITAGE
INCORPORATED,

      DEBTORS

CASE NO.

98-02675-5-ATS
98-02674-5-ATS

## ORDER DENYING MOTIONS FOR STAYS PENDING APPEALS AND ORDER DIRECTING APPELLANTS TO IDENTIFY DOCUMENTS

On June 7, 2000, the court entered orders allowing Holmes P. Harden, the chapter 7 trustee for International Heritage, Inc. and International Heritage Incorporated, to enter into a settlement with the United States Attorney for the Eastern District of North Carolina. As part of the settlement, the trustee waived the attorney-client privilege with respect to the debtors' prepetition communications with counsel. Appeals were filed by Georgina Mollick, John Brothers and Dee Brothers, Claude Savage, Stanley H. Van Etten and Wood & Francis, PLLC. The appellants filed motions for stays of the court's orders of June 7, 2000, pending the appeals. The trustee objects to the stays and requests that the court require "each of the movants to identify with specificity for the Trustee each document that he or she alleges to be subject to his or her individual claim of privilege and that all documents not so identified be ordered delivered to the Trustee immediately." (Trustee's Response, June 26, 2000).

251
253
255 257

261

"[A] party seeking a stay pending appeal must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that the parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970).

The trustee maintains that it is well established that a trustee for a chapter 7 corporation may waive the attorney-client privilege for the corporation and that it is unlikely that the orders of June 7, 2000, will be modified on appeal. Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 105 S. Ct. 1986 (1985). The court agrees with the trustee and will not grant a stay pending appeal. However, the court will temporarily stay the effect of the order for 10 days to permit the appellants to request a stay from the United States District Court. FED. R. BANKR. P. 8005.

If a stay is not granted by the district court, each appellant shall, before July 18, 2000, identify any documents that he or she alleges to be subject to his or her individual claim of privilege.

SO ORDERED.

DATED:    28 JUN 2000

A. Thomas Small
Bankruptcy Judge

2

U.S. Bankruptcy Court for the Eastern District of North Carolina
CLERK, U.S. BANKRUPTCY COURT
POST OFFICE BOX 1441
RALEIGH, N.C. 27602-1441

In Re a *Petition for Relief under Chapter 7 of Title 11, U.S. Code*, filed by or against the below-named Debtor on November 25, 1998:
DEBTOR: INTERNATIONAL HERITAGE, INC. of C/O MAYFLOWER CAPITAL, LLC, 2626 GLENWOOD AVENUE, SUITE 100, RALEIGH, NC 27608; SSN: N/A, EIN: 56-1921093
CASE NO. 98-02675-5-ATS

---

### ORDER AND NOTICE
### BY THE COURT

---

### CERTIFICATE OF MAILING

I am a regularly appointed and qualified deputy clerk in the office of the clerk, in and for said court and district, and I hereby certify that a copy of the attached document was mailed in a postage prepaid envelope addressed to the following at their respective addresses, by placing said envelope in the regular mail in Raleigh, NC, on this date.

DATED:    **28 JUN 2000**

_____
DEPUTY CLERK


INTERNATIONAL HERITAGE, INC.
C/O MAYFLOWER CAPITAL, LLC
RALEIGH, NC 27608



Terri L. Gardner
PO Drawer 1389
Raleigh, NC 27602

Holmes P. Harden
P.O. Box 17169
Raleigh, NC 27619

Bankruptcy Administrator

Joseph B. Cheshire V
John Keating Wiles
Post Office Box 1029
Raleigh, NC 27602

Stephen T. Smith
Post Office Box 150
Raleigh, NC 27602

John P. O'Hale
Jeffrey M. Cook

102 S. 3rd Street
Smithfield, NC  27577-0454

Brent E. Wood
Post Office Box 164
Raleigh, NC  27602

**EXHIBIT**
**3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

FILED

JUL 1 4 2000

DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLERK

No. 5:00-MC-23-BR

IN RE INTERNATIONAL HERITAGE, INC.    )
                                      )
INTERNATIONAL HERITAGE,               )
       INCORPORATED,                  )
                                      )       ORDER
              Debtor.                 )
                                      )

     This matter is before the court on the following: (1) the motions of Stanley H. Van Etten and Wood & Francis, PLLC, Claude Savage, and John Brothers and Dee Brothers to modify the bankruptcy court's order denying stay pending appeal or, alternatively, for a stay pending appeal; (2) the motion of Georgina Mollick for leave to join the aforementioned motion filed by Van Etten and Wood & Francis; (3) the amended motion of Van Etten and Wood & Francis to modify the bankruptcy court's order denying stay pending appeal or, alternatively, for a stay pending appeal; and (4) the motion of Van Etten and Wood & Francis to shorten the response time to the aforementioned amended motion.

## I. BACKGROUND

     On 25 November 1998, the debtors, International Heritage, Inc. and International Heritage Incorporated, filed a petition under Chapter 7 of the Bankruptcy Code. (Van Etten and Wood & Francis' Mem. of Law, Ex. D (Order Allowing Motion for Approval of Compromise and Settlement) at 1.) On 28 March 2000, the trustee filed a Motion for Approval of Compromise and Settlement, seeking the bankruptcy court's approval of the trustee's waiver of the attorney-client privilege with respect to pre-bankruptcy communications between the debtors and counsel. (See id., Ex. A.) The trustee intended to waive the privilege in conjunction with an agreement with

the United States Attorney for the Eastern District of North Carolina. (Id.) Movants[1] here

objected to the motion. On 7 June 2000, Bankruptcy Judge A. Thomas Small allowed the motion.

Thereafter, movants filed notices of appeal of the bankruptcy court's 7 June 2000

order(s).[2] Movants also filed motions for stay of the bankruptcy court's 7 June 2000 order

pending appeal. (Id., Ex. E.) Judge Small denied the motions but temporarily stayed the effect of

his order to allow movants to seek a stay from this court. (Id.)

## II. DISCUSSION

### A. Motion to Shorten Response Time

Movants filed and served the motions sub judice on 10 and 11 July 2000 and requested a

shortening of the response time to two (2) days. Normally, the trustee and any other interested

party would have twenty days therefrom to respond. See Local Rule 4.05(a), EDNC. However,

unless the court orders a stay, movants must comply with the bankruptcy court's order requiring

identification of privileged documents by 18 July 2000– a date well before any response is due.

The trustee objects to this motion. However, he has provided the court with a copy of his

response to movants' motions for stay filed in the bankruptcy court. (See Resp. to Mot. to

Shorten Time, Ex. A.) Trustee's response to the instant motion and his response filed in the

bankruptcy court provide this court with sufficient briefing (in conjunction with Van Etten and

Wood & Francis' briefs) on which to rule on the motions before it. Therefore, the trustee is not

---

[1] Although not entirely clear from the record before the court, it appears movants Van Etten, Savage, John Brothers, and Dee Brothers were officers and/or directors of debtor International Heritage, Inc. Movant Wood & Francis provided pre-bankruptcy legal advice jointly to International Heritage, Inc., Van Etten, Savage, and other unspecified officers and directors of International Heritage, Inc. and maintains custody of the allegedly privileged documents. Movant Mollick provided pre-bankruptcy legal advice to International Heritage, Inc. and Van Etten and subsequently became in-house counsel for debtors.

[2] The appeals to this court are not yet ripe.

2

prejudiced by any reduction in response time.  The motion is therefore ALLOWED.

**B. Motion of Georgina Mollick for Leave to Join Van Etten and Wood & Francis' Motion**

The motion is ALLOWED, and Mollick is deemed to have filed a motion to the same

extent as Van Etten and Wood & Francis.

**C. Motions and Amended Motion to Modify Bankruptcy Court's Order Denying Stay Pending Appeal or, Alternatively, for a Stay**

By virtue of their amended motion, movants contend that pursuant to Fed. R. Bankr. P.

7062 and Fed. R. Civ. P. 62(d), the court is required to enter a stay upon the movants' posting of a

supersedeas bond.  Fed. R. Civ. P. 62(d) does provide in relevant part:

> When an appeal is taken the appellant by giving a supersedeas bond
> may obtain a stay subject to the exceptions contained in subdivision
> (a) of this rule. . . .  The stay is effective when the supersedeas bond
> is approved by the court.

As one court has noted, "[t]he language of subsections (a) and (d) [of Rule 62], when read

together, suggests that all types of judgments other than those specifically excepted in subsection

(a) may be stayed pending appeal as a matter of right, if the appellant posts supersedeas bond."

Yankton Sioux Tribe v. Southern Mo. Waste Management Dist., 926 F. Supp. 888, 889 (D.S.D.

1996).  Even so, "courts have interpreted Rule 62(d) as entitling an appellant to a stay as a matter

of right . . . where the appeal is taken from a monetary judgment or its equivalent."  Id. at 890.

(citations omitted).  Movants do not appeal from a money judgment or its equivalent and, as such,

the posting of a supersedeas bond would serve no purpose.  See id.  Accordingly, a stay is not

warranted on this ground.

Whether to issue a stay is within the discretion of the trial court.  Connecticut Hosp. Ass'n

v. O'Neill, 863 F. Supp. 59, 60-61 (D. Conn. 1994).  The factors which the court must consider

are: (1) whether there is a "strong showing" that the applicant is likely to succeed on the merits;

3

(2) whether the applicant will suffer irreparable injury absent the stay; (3) whether the stay will not substantially harm the other parties; and (4) whether the public interest will be served by the stay. Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970). With respect to these factors, the applicant bears the burden of persuasion. See Long, 432 F.2d at 979. Furthermore, "when a party seeking a stay makes application to an appellate judge following the denial of a similar motion by a trial judge, th[at] burden of persuasion . . . is substantially greater than it was before the trial judge." Id. (citations omitted). The court will now address the factors noted above in determining whether a stay will issue.

    1.    Likelihood of Success on the Merits

    The law on which Judge Small based his decision is clear. "[T]he trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 358 (1985). While movants attempt to distinguish Weintraub and argue that waiver is not in the best interests of the debtors' estate, these same arguments were made to Judge Small and rejected. (Van Etten and Wood & Francis' Mem. of Law, Ex. D (Order Allowing Motion for Approval of Compromise and Settlement) at 3-5.) Movants also contend that waiver of the corporation's attorney-client privilege by the trustee is not proper because it compromises the officers' and directors' individual privileges. This argument too was made before the bankruptcy court. (Id. at 4.) As noted by Judge Small, Weintraub does not infringe upon the privileges of parties other than the corporation. (Id. at 5 (citing Weintraub, 471 U.S. at 350).) This court, like the bankruptcy court, is bound by Weintraub. At this juncture, movants have not made a "strong showing" that they are likely to prevail on the merits of their appeal.

    2.    Irreparable Injury to Movants

Movants assert that if a stay is not entered, their individual attorney-client privileges would be waived or lost during the pendency of appeal and therefore would effectively moot the appeal. As a result of the trustee's waiver of the corporation's privilege, documents will be produced to the trustee and presumably turned over to the United States Attorney. According to movants, the documents, or at least some of them, contain confidential pre-bankruptcy communications between attorneys, the debtor corporations, and the individual officer/director movants generated in the context of the attorneys' joint representation of the corporations and individuals. Movants claim that without a stay such documents necessarily will be turned over to the trustee, the United States Attorney, or others and will result in a waiver of the individuals' attorney-client privilege. From the record presently before the court, it does not appear that this will occur.

In his order finding waiver, Judge Small recognized "[t]he right of individuals to claim the attorney-client privilege on their own behalf, when appropriate, is in no way impinged by Weintraub or this court's order." (Van Etten and Wood & Francis' Mem. of Law, Ex. D (Order Allowing Motion for Approval of Compromise and Settlement) at 5.) Judge Small continued:

> The court specifically finds that the trustee holds the privilege on behalf of the corporate debtors, and that he can and has waived that privilege. The court also acknowledges that many issues remain open for resolution. The court makes no finding regarding documents presently withheld on grounds that they come within the work-product doctrine, or regarding documents that include confidential communications between attorneys and individuals seeking legal counsel in their individual capacities.

(Id. at 6.)

Judge Small's order denying a stay requires movants before 18 July 2000 to "identify any documents that he or she alleges to be subject to his or her individual claim of privilege." (Id.

5

Ex. E at 2 (emphasis added).)  The order says nothing of the production of these documents.

The court does not read these orders as requiring movants forthwith to produce documents allegedly subject to any individual claims of privilege.  Of course, at some point, depending on the resolution of the individual claims issue, the documents may be subject to production.  That issue is not before this court.  Movants have not shown they will suffer irreparable harm in the absence of a stay.

     3.    Harm to Trustee

According to the trustee, a stay pending appeal would prejudice him by delaying receipt of records necessary to file suit regarding avoidable transfers.  (Resp. to Mot. to Shorten Time.)  Any Avoidance action must be filed by 25 November 2000.  (Id.)  Pointing to the trustee's more than one-year delay in seeking to review privileged documentation, movants question the merit of the trustee's argument.  Despite any delay on the part of the trustee in attempting to obtain purportedly privileged documents, the court accepts the inability to file avoidance actions as a possible harm to the trustee should the stay issue.

     4.    Public Interest

Movants cite the public interest in promoting full and frank discussions between attorneys and clients.  Movants again raise the concern that their individual claims of privilege will be waived in the absence of a stay.  As discussed supra, the court does not see this as the case.  This court and the bankruptcy court have made no findings with respect to the officers/directors' individual claims of privilege.  By virtue of the Supreme Court's decision in Weintraub, the rule is clear with respect to the ability of the trustee to waive the attorney-client privilege on behalf of the debtor corporation.  As recognized by the bankruptcy court, "there is no effort afoot to carve out an exception to the attorney-client privilege, or to in any way challenge its application to the

debtors' documents." (Van Etten and Wood & Francis' Mem. of Law, Ex. D (Order Allowing Motion for Approval of Compromise and Settlement) at 6.) The public interest would not be furthered by a stay of the bankruptcy court's 7 June 2000 order.

In balancing these factors, see Long, 432 F.2d at 981, the courts finds movants have failed to meet their burden for issuance of a stay pending appeal. The motions of Van Etten and Wood & Francis (including their amended motion), Savage, John Brothers and Dee Brothers, and Mollick to modify the bankruptcy court's order denying stay pending appeal or, alternatively, for a stay pending appeal are DENIED.

This 14 July 2000.

W. EARL BRITT
Senior United States District Judge

ihi/acp

I certify the foregoing to be a true and correct
copy of the original.
David W. Daniel, Clerk
United States District Court
Eastern District of North Carolina
By _____
Deputy Clerk

7

ATTORNEYS AT LAW

**RALEIGH OFFICE**
3200 BEECHLEAF COURT
SUITE 500
RALEIGH, NC 27604-1064
TELEPHONE 919.981.4000
TELEFAX 919.981.4300

MAILING ADDRESS
POST OFFICE BOX 19764
RALEIGH, NC 27619-9764

WWW.MAUPINTAYLOR.COM

**HOLMES P. HARDEN**
BOARD CERTIFIED SPECIALIST
IN BANKRUPTCY LAW

# Maupin Taylor P.A.

RTP OFFICE
480 BETA BUILDING
HEADQUARTERS PARK
2222 CHAPEL HILL-NELSON HWY
DURHAM, NC 27713
TELEPHONE 919.361.4900
TELEFAX 919.361.2262

MAILING ADDRESS
POST OFFICE BOX 13646
RESEARCH TRIANGLE PARK, NC
27709-3646

**WILMINGTON OFFICE**
LANDFALL PARK NORTH
1985 EASTWOOD ROAD
SUITE 200
WILMINGTON, NC 28403
TELEPHONE 910.256.5135

June 23, 2004

Mr. Stanley H. Van Etten
7924 Lake Drive
Raleigh, NC 27613

     Re:    International Heritage, Inc. – Case No. 98-02675-5-ATS
           International Heritage Incorporated – Case No. 98-02674-5-ATS

Dear Mr. Van Etten:

     Per Stephani Humrickhouse's request, I am forwarding the enclosed copy of Brent Wood's July 18, 2000 letter and privilege log enclosure directly to you.

     Sincerely,

     Holmes P. Harden

Enclosure

cc: Stephani Humrickhouse, Esq.

RALEIGH\419696_ 1



# WOOD & FRANCIS, PLLC
### ATTORNEYS & COUNSELORS AT LAW

JOHN S. AUSTIN
JULIE L. BELL
R. GENE DAVIS, JR.
ANTHONY E. FLANAGAN
CHARLES T. FRANCIS
BRENT E. WOOD

MAILING ADDRESS:
POST OFFICE BOX 164
RALEIGH, NORTH CAROLINA 27602

TWO HANNOVER SQUARE
434 FAYETTEVILLE STREET MALL
SUITE 2300
RALEIGH, NORTH CAROLINA 27601

———————
OF COUNSEL

ALAN D. WOODLIEF, JR.

July 18, 2000

TELEPHONE (919) 828-0801
TELECOPY (919) 828-0804

### *VIA HAND DELIVERY*

Holmes P. Harden, Esq.
Maupin, Taylor & Ellis, P.A.
3200 Beechleaf Ct., Suite 500
P. O. Drawer 19764
Raleigh, NC  27619-9764

**Re:**    ***In re International Heritage, Incorporated and International Heritage, Inc.*
Chapter 7 Bankruptcy Cases 98-02674 / 02675-5- ATS (ED NC)**

Dear Holmes:

Pursuant to the Orders of the Honorable W. Earl Britt and the Honorable A. Thomas Small in the above-referenced proceedings, I have enclosed a detailed privileged list which identifies each and every privileged document which I believe to be in my possession relating to work performed for International Heritage, Inc. or International Heritage, Incorporated (or related individuals). This list also identifies to whom I believe the privilege would run for each document. With regard to this privilege list, my firm currently represents Stanley H. Van Etten only; therefore, I cannot represent to you that each individual for whom we have claimed a privilege on the attached documents would agree with our assessment on each and every occasion. However, I can assure you that this lengthy privilege list has been prepared in good faith and, also, should provide to you the information that you might need in the bankruptcy proceedings.

As I believe I have indicated to you in the past, I seriously doubt that any document on this privilege list will in any way assist you in the bankruptcy proceedings. If, after reviewing this privilege list, you believe that there may be some documents specifically identified in the privilege list which might be of assistance to you in the bankruptcy proceedings, I hope you will simply contact me and discuss those documents with me. For example, the privilege list will identify drafts of contracts that may or may not have been finalized. If a particular contract was finalized between International Heritage, Inc. and a third party, I do not believe it would be privileged and I will gladly assist you in trying to locate that document if it is within my file. Again, the only way that I might be able to assist you is if you were to contact me with a specific request. I have never withheld from you documentation which I believed might assist you in the bankruptcy proceedings. For this reason, well over a year ago, I indicated to you that I had documents in my possession which I was willing to share with you.

Holmes P. Harden, Esq.
July 18, 2000
Page 2

For your information, the attached privilege list is a second draft of an original privilege list which was prepared and delivered to Mr. Scott Wilkinson, Assistant United States Attorney for the Eastern District of North Carolina. The original draft of the privilege list was also delivered to you as an attachment to the Memorandum of Law which was filed on Monday, July 10th. In order to completely fulfill our ethical responsibilities to our various clients who have been associated with International Heritage, Inc. and International Heritage, Incorporated (including those two debtors), we prepared the attached, extensive privilege list since the hearing before Judge Small on the privilege issue. Obviously, as you may be able to imagine, my associates and staff have been reviewing records in our possession for more than the last six months (not continuously, but over that period of time). The initial review of documents in our possession led to the production of approximately 170,000 pages of documents to Mr. Scott Wilkinson. That initial review of documents also led to the creation of the original privilege list that was attached to the Memorandum of Law filed on July 10, 2000. After the last hearing before Judge Small, a second review of the documents which we had held as privileged took place. In many ways, this project was much more difficult and time consuming than the original project, primarily because of the amount of information which we attempted to extract from each document. The second review led to the creation of the attached privilege list.

As a result of our work, Mr. Wilkinson now has possession of most of the documents which were in our possession and related to the Debtors. Following the hearing before Judge Small, you did finally request from me an opportunity to review documents in my possession relating to the Debtors. Mr. Wilkinson has those documents and I would ask you to communicate with him about obtaining those documents that you might need in the bankruptcy proceedings since, technically, you would be the custodian for at least some of those documents.

Even though I would encourage you to try to seek those documents from Mr. Wilkinson, I remain ready, willing and able to assist you. We have retained copies of each of the documents that were delivered to Mr. Wilkinson. If you would like to review the copies of documents in our possession, I would ask that you coordinate that review through Anthony Flanagan of my office. Mr. Flanagan has very professionally overseen this entire project and will make available to you or your representatives copies of the documents which have already been delivered to Mr. Wilkinson if Mr. Wilkinson cannot make those available to you. Please remember that there are more than 170,000 pages of documents that are not privileged which you or your staff might be reviewing if you begin this process at my office.

If you have any questions, I hope you will call. I am

Sincerely yours,

Brent E. Wood

BEW/rjp
Enclosure
cc:    Terri Gardner, Esq. (w/o encl)
       Anthony E. Flanagan, Esq.

| Page | Date | | Type | Author | Recipient | CC | | Description | Creator | | Persons | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| I001P-0002 | 11/29/95 | n/a | memo | Georgina Mollick | Janet Quick | | n/a | regarding new address for IHI | Wood & Francis | Yes | IHI | No | n/a |
| I001P-0003 | 5/1/95 | n/a | e-mail | George Ragsdale | Georgina Mollick | | n/a | regarding IHI as new client | Wood & Francis | Yes | IHI | No | n/a |
| I001P-0004 | 4/28/95 | n/a | e-mail | Georgina Mollick | Raleigh Attorneys at Ragsdale, Liggett, and Foley | | n/a | regarding Claude Savage and Larry Smith forming new company (IHI); new client | Wood & Francis | Yes | Claude Savage, Larry Smith | No | n/a |
| I001P-0005 | 10/26/95 | n/a | memo | Georgina Mollick | Claude Savage, Larry Smith, Stan Van Wood | | n/a | regarding additional comments to Stan Van Etten's employment agreement with IHI | Wood & Francis | Yes | IHI, Claude Savage, Larry Smith, Stan Van Etten | No | n/a |
| I001P-0006 - I001P-0008 | 10/5/95 | n/a | fax | Georgina Mollick | Gary Johnson, IHI employee | | n/a | regarding financials of IHI for dissenting shareholder package | Wood & Francis | Yes | IHI | No | n/a |
| I001P-0009 | 10/5/95 | n/a | memo | Georgina Mollick | IHI file | | n/a | regarding payment to only rescinding shareholder | Wood & Francis | Yes | IHI | No | n/a |
| I001P-0010 - I001P-0011 | 10/3/95 | n/a | fax | Georgina Mollick | Gary Johnson | | n/a | fax cover sheet regarding preparation of a check (fax not attached) | Wood & Francis | Yes | IHI | No | n/a |
| I001P-0012 | 9/6/95 | n/a | memo | Georgina Mollick | Stan Van Etten | Dwight Hallman, Gary Johnson, John Brothers, Sheila Stansell | n/a | regarding placing the date of publication on all company correspondence and forms | Wood & Francis | Yes | IHI | No | n/a |
| I001P-0013 | 9/19/95 | n/a | memo | Georgina Mollick | IHI file | | n/a | regarding shareholder Jack Weatherly | Wood & Francis | Yes | IHI | No | n/ |

| ID | Date | | Type | | | | Invoice for services rendered during | | | | | SEC & bankruptcy petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1151P-0356 | 11/20/98 | N/A | Document | Georgina Mallick | IHI | N/A | Invoice for services rendered during November | Wood & Francis | Yes | IHI | Yes | IHI |
| 1151P-0360 1151P-0366 | 11/20/98 | N/A | Fax | Anna Washburn | Brent Wood and Angie Cox | | Fax re letter from Terry Garner to Stan Van Etten re engagement of Smith Debnam | Wood & Francis | Yes | IHI, Stan Van Etten | Yes | Bankruptcy |
| 1151P-0367 | 11/23/98 | N/A | Document | Wood & Francis | N/A | N/A | Trust account disbursements for IHI in Wood & Francis trust account | Wood & Francis | Yes | IHI | N/A | N/A |
| 1151P-0368 | 11/23/98 | N/A | Fax | Anna Washburn | Brent Wood | N/A | Fax re check disbursements that day | Wood & Francis | Yes | IHI | N/A | N/A |
| 1151P-0370 | 11/23/98 | N/A | | | | | | | | | | |