FILED
NOV 16 2007
PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

Clerk
U.S. Bankruptcy Court
P. O. Box 1441
Raleigh, North Carolina 27602-1441
11-11-2007

Case No: 98-02675-5-ATS
Chapter 7

Honorable Court;

Am writing this to try to show documentation for Claim No: 009633 . Attached is what could be found regarding the above case. My home was invaded in July of 2003 while out of town, therefore all the years of paperwork will not be complete.

I am not asking for, nor do I want a hearing in this matter. Why should I have to go out of my way for something that is already mine? I worked hard for this money and loaned it in good faith, along with paying taxes from forms sent to me.

In closing, all I am asking for is a fair and honest decision from the court.

Thank you for your time in this matter.

Sincerely,

Lonnie T. Evans

cc:
Holmes P. Harden
file

Holmes P. Harden, Trustee for IHI
P.O. Box 536
Benson, NC 27504

Claim No.: 009633
Amount: $1,569.50

0001 0001741 00000000 001 001 01741 INS: 0 0

LONNIE T. EVANS
300 S. 9TH AVENUE
DILLON, SC 29536

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE: INTERNATIONAL HERITAGE, INC. Debtor. | CASE NO: 98-02675-5-ATS<br>CHAPTER 7 |
|---|---|

**NOTICE OF OBJECTION TO CLAIM**

NOTICE IS HEREBY GIVEN of the Trustee's Objection to Claim filed with the court on October 26, 2007 pursuant to which the trustee objects to one or more proofs of claim filed by you in the above-captioned case.

NOTICE IS FURTHER GIVEN THAT the specific basis of the Trustee's objection to your claim is as follows: **The legal basis for your claim is unclear and/or there is no documentation attached to your claim or the attached documentation does not substantiate the amount claimed. Trustee requests denial of claim.**

**You should read this objection carefully and discuss it with your attorney if you have one. ANY CORRESPONDENCE MUST BE IN WRITING. Your claim may be reduced, modified, or disallowed in its entirety if the bankruptcy court sustains the trustee's objections.**

NOTICE IS FURTHER GIVEN that if no response to the trustee's objection explaining your position and requesting a hearing is filed in writing with the CLERK, U.S. BANKRUPTCY COURT, P. O. BOX 1441, RALEIGH, NORTH CAROLINA 27602-1441 with a copy to Holmes P. Harden, Trustee for IHI at P. O. Box 536, Benson, NC 27504 within 30 days of the date of this notice, the relief requested by the Trustee may be granted without hearing or further notice. **If a hearing is requested such hearing will be held on November 29, 2007 at 1:00 p.m. at the United States Bankruptcy Courthouse and Post Office Building, Room 208, 300 Fayetteville Street Mall, Raleigh, North Carolina. Any party requesting a hearing shall attend said hearing in support of such request or (s)he may be assessed with costs.**

**Dated: October 26, 2007**

**BY: /s/ Holmes P. Harden**
**Holmes P. Harden, Trustee**



May 24, 1988

To:         Investment Plan Participants

From:       Joe Wilbanks

Subject:    Mohasco Stock Tender Offer
            Instructions to Bankers Trust Company


The attached materials pertain to your Fund C account of the Investment Plan. You will recall that Fund C consists of Mohasco Corporation stock. This is the fund within the Plan in which the company's matching contributions have been vested and in which many participants have also invested contributions.

As you are aware, a tender offer has been made for the purchase of Mohasco's stock, and shareholders (or in the case of the Investment Plan, "unit holders" of share equivalents in Fund C) must make personal financial decisions as to whether or not to "sell" their shares (or share equivalents) to the group that is making the purchase offer.

You will see in the attached materials that Bankers Trust, which is the Trustee of the Investment Plan, must be notified directly by you as to your personal wishes with regard to your share equivalents in Plan Fund C. Please read the material carefully, make your decision and act in accordance with the instructions.

If you are a direct shareholder in Mohasco (for example, by way of the PAYSOP distribution earlier this year or other direct purchase), you have already received (or shortly will) some of the material enclosed, as well as a lengthy blue form called "Letter of Transmittal". That is a completely separate issue. You need to make a decision on this enclosed material separate from, and in addition to, any other response you may make to the tender offer. Please note that while the tender offer expires on June 10. your reply for Investment Plan purposes must be in by noon June 9, so that the Trustee can act in a timely fashion. Bankers Trust will tender only the total amount of shares authorized by all responding Investment Plan Participants. The remaining stock in Fund C will not be tendered. It will be allocated to the account of the participants who did not tender and will be treated as described in the Bankers Trust communication.

There is a special procedure for calculating the actual cash that will be paid for individual shares tendered. The total amount of shares that are tendered from all sources will determine the amount paid in cash and/or in debentures. Depending upon the number of all shares actually tendered, the cash amount may be as high as $36.50 and cannot be less than $34.00. Any difference between the cash amount paid and $36.50 may be in the form of debentures.

**Mohasco Corporation**

4401 Fair Lakes Court
Fairfax, Virginia 22033
703/968-8000

May 13, 1988

To Our Shareowners:

As you are aware, in February of this year your Board of Directors instructed Merrill Lynch Capital Markets, the Company's financial advisor, to explore discussions with potential buyers of the Company, as well as other alternatives to maximize shareowner value. We are very pleased to inform you that, following contacts with, and provision of information to, a number of possible buyers, your Board of Directors has approved a transaction in which Mohasco will be acquired by MHS Holdings Corp., a new company the equity interest of which will be owned by an investor group including Citicorp Capital Investors Ltd.

Mohasco has entered into a merger agreement with MHS providing for the acquisition of the Company by MHS in two steps.

The first step is the cash tender offer being commenced today by a subsidiary of MHS at $36.50 per share in cash for up to 11,393,902 shares of Mohasco common stock, subject to shares representing, together with shares held by MHS, two-thirds of the outstanding shares on a fully diluted basis being tendered, as well as to the obtaining of the necessary financing for the transaction.

The second step of the acquisition will be a merger which will result in Mohasco becoming a wholly-owned subsidiary of MHS. In the merger (if the maximum number of shares tendered for are purchased in the tender offer) each remaining common share of Mohasco will be exchanged for a new issue of subordinated debentures which, in the joint opinion of the financial advisors to the parties (or in the opinion of another investment banking firm, if such advisors are unable to agree), will have a market value on a fully distributed basis equal to $36.50.

**Your Board of Directors, by the unanimous vote of those present, has determined that the tender offer and the merger are fair to and in the best interests of Mohasco's shareowners and recommends that shareowners accept the tender offer.** We believe this transaction affords excellent value to our shareowners. Shareowners are urged to consult their tax advisors to determine the particular tax consequences to them of the tender offer and the merger referred to above.

Included herewith are MHS's Offer to Purchase dated May 13, 1988 and a related Letter of Transmittal. These documents set forth the terms and conditions of the tender offer.

Also enclosed is a copy of Mohasco's Solicitation/Recommendation Statement on Schedule 14D-9 (excluding the exhibits thereto) which sets forth certain information concerning the tender offer, including a description of certain factors considered by your Board of Directors in approving the transaction with MHS and in recommending that shareowners tender their shares pursuant to the tender offer.

Your Board of Directors previously declared the regular quarterly $.07 per share dividend payable on June 15 to shareowners of record as of the close of business on June 1. If you continue to own your shares on June 1 you will be entitled to receive that dividend regardless of whether you tender your shares into the tender offer.

Shareowners should read carefully the enclosed materials before making any decision with respect to the tender offer.

Herbert J. Broner

HERBERT J. BRONER
Chairman of the Board, President and Chief Executive Officer

Bankers Trust Company
Box 1997 G.P.O.
New York, N.Y. 10117-0024

May 21, 1988

Re: Investment Plan of Mohasco Corporation

Dear Plan Participant:

MHS Acquisition Corporation, a New York corporation (the "Purchaser"), has made a tender offer to purchase for cash up to 11,393,902 shares of the common stock (the "Shares") of Mohasco Corporation, a New York corporation (the "Company"), at a purchase for cash price of $36.50 per Share. The Offer is being made to all of the Company's stockholders, including Bankers Trust Company, as Trustee (the "Trustee") of the Company's Investment Plan (the "Plan"). Copies of the Purchaser's offer to purchase, dated May 13, 1988 (the "Offer"), and the Company's response, also dated May 13, 1988, to the Offer on Schedule 14D-9, are enclosed with this letter. The Offer is being made pursuant to an agreement and plan of merger, dated May 9, 1988, entered into by MHS Holdings Corporation, a Delaware corporation ("Holdings") which owns all the stock of Purchaser, the Purchaser and the Company (the "Merger Agreement"). If the Offer is successfully completed, the Purchaser will be merged with and into the Company (the "Merger") and Holdings will own 100% of the Company's stock. Pursuant to the Merger Agreement, the Company has agreed, not later than immediately prior to consummation of the Offer, to redeem certain preference share purchase rights (the "Rights") issued pursuant to a Rights Agreement, dated as of February 25, 1988. Thus the Offer does not include an offer to purchase any Rights. Holders of Rights will have no rights with respect thereto other than to receive the redemption price of $.01 per Share. The redemption price will be credited to the Plan account of participants.

The Offer will expire at 12:00 Midnight, New York City time, on Friday, June 10, 1988, unless the Offer is extended. If any other formal offer to purchase the Shares should be made, the Trustee will distribute the relevant offer documents to you at that time.

If more than 11,393,902 Shares are tendered pursuant to the Offer, the Purchaser will purchase shares on a pro rata basis from the tendering stockholders. If the Offer is successful, upon the completion of the Merger, Shares which are not purchased pursuant to the Offer (including shares which are not accepted if more than 11,393,902 Shares are tendered) will be exchanged for subordinated debentures of Holdings (the "Merger Debentures") and, if fewer than 11,393,902 Shares are tendered, cash (based upon a formula taking into consideration the difference between 11,393,902 Shares and the number of Shares actually tendered). Each of the Merger Debentures is intended to have an initial market value on a fully distributed basis which, in the opinion of the financial advisors to the parties, should equal $36.50. There can be no assurance that there will be any market for the Merger Debentures after the Merger. The Merger Debentures are more fully described at Section 14 of the Offer enclosed herewith.

The Trust Agreement under the Plan (the "Trust Agreement") provides that each participant may instruct the Trustee to tender or retain the Shares attributable to his or her account in the Company stock fund in the Plan (the "Plan Shares"). The Trust Agreement also provides that the Trustee will not tender any Plan Shares for which no valid and timely instructions are received. For your information, the reverse side of the enclosed election card indicates an approximation of the equivalent number of Plan Shares represented by the units credited to your Company stock fund account under the Plan. Each Plan participant must therefore decide individually how to direct the Trustee. Instructions received by the Trustee from Plan participants will be kept in strict confidence by the Trustee. Among the factors you might wish to consider are:

1. There will be no distribution to any Plan participant of the cash proceeds from the tender of his or her Plan Shares.

2. If you choose to tender your Plan Shares, the cash proceeds, when received by the Trustee, will be temporarily invested on your behalf in a short-term investment fund under the Plan, and Merger Debentures,

**Offer to Purchase for Cash**
**Up to 11,393,902 Shares of Common Stock**
**of**

# Mohasco Corporation

**by**

# MHS Acquisition Corporation

**a Wholly Owned Subsidiary of**

# MHS Holdings Corporation

**at**

## $36.50 Net Per Share

**THE OFFER, PRORATION PERIOD AND WITHDRAWAL RIGHTS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON FRIDAY, JUNE 10, 1988, UNLESS THE OFFER IS EXTENDED.**

**THE BOARD OF DIRECTORS OF MOHASCO CORPORATION HAS UNANIMOUSLY APPROVED (WITH ONE DIRECTOR ABSENT) THE OFFER AND THE MERGER REFERRED TO HEREIN AND RECOMMENDS THAT SHAREHOLDERS ACCEPT THE OFFER AND APPROVE THE MERGER.**

---

**THIS OFFER IS CONDITIONED UPON, AMONG OTHER THINGS, (1) SHARES REPRESENTING, TOGETHER WITH ANY SHARES HELD BY HOLDINGS AND THE PURCHASER, AT LEAST TWO-THIRDS OF THE VOTING POWER, DETERMINED ON A FULLY DILUTED BASIS, OF ALL OUTSTANDING SECURITIES ENTITLED GENERALLY TO VOTE IN THE ELECTION OF DIRECTORS OF THE COMPANY BEING PROPERLY TENDERED AND NOT WITHDRAWN PRIOR TO THE EXPIRATION OF THE OFFER AND (2) HOLDINGS AND THE PURCHASER HAVING OBTAINED THE FINANCING NECESSARY TO CONSUMMATE THE OFFER AND THE MERGER AND TO PAY RELATED FEES AND EXPENSES AND THE PROCEEDS OF SUCH FINANCING BEING AVAILABLE. SEE SECTION 16 FOR OTHER CONDITIONS TO THE OFFER.**

---

**IMPORTANT**

Any shareholder desiring to tender all or any portion of his or her Shares should either (1) complete and sign the Letter of Transmittal (or a facsimile thereof) in accordance with the instructions in the Letter of Transmittal, mail or deliver it and any other required documents to the Depositary and either deliver the certificates for such Shares to the Depositary along with the Letter of Transmittal or deliver such Shares pursuant to the procedure for book-entry transfer set forth in Section 3, or (2) request his or her broker, dealer, commercial bank, trust company or other nominee to effect the transaction for him or her. A shareholder whose Shares are registered in the name of a broker, dealer, commercial bank, trust company or other nominee must contact such broker, dealer, commercial bank, trust company or other nominee if he or she desires to tender such Shares.

A shareholder who desires to tender Shares and whose certificates for such Shares are not immediately available, or who cannot comply with the procedure for book-entry transfer on a timely basis, may tender his or her Shares by following the procedure for guaranteed delivery set forth in Section 3.

Questions or requests for assistance or for additional copies of this Offer to Purchase, the Letter of Transmittal or the Notice of Guaranteed Delivery may be directed to Kissel-Blake Inc. (the "Information Agent") at its address and telephone numbers set forth on the back cover of this Offer to Purchase. A shareholder may also contact brokers, dealers, commercial banks or trust companies for assistance concerning the Offer.

---

*The Information Agent is:*

**KISSEL-BLAKE INC.**



**Mohasco Corporation**

4401 Fair Lakes Court
Fairfax, Virginia 22033
703/968-8000

October 30, 1989

## NOTICE

Enclosed are certificates for (i) $36.50 principal amount of 16⅞% Subordinated Pay-In-Kind Debentures (the "Merger Debentures") due 2004 of MHS Holdings Corporation ("Holdings") and (ii) a warrant to purchase, under certain circumstances, .155636 of a share (subject to adjustment) of common stock of Holdings and a sticker to be affixed to the Merger Debentures detailing certain tax information relating to the Merger Debentures. If you are entitled to a cash payment in lieu of issuance of Debentures with a principal amount in other than an integral multiple of $1,000 (the "Fractional Debentures"), a check will be forwarded to you by Bankers Trust Company as Exchange Agent upon the sale of the Fractional Debentures.

Enclosures




VOID AFTER 5:00 P.M., PITTSBURGH TIME,
ON THE FIRST ANNIVERSARY
OF THE TRIGGERING EVENT (AS DEFINED BELOW)

No.W 1227

# MHS HOLDINGS CORPORATION

## COMMON STOCK PURCHASE WARRANT

Certificate for
*****43*****
Warrants

This certifies that, for value received,

CUSIP 553024 11 8

LONNIE T EVANS

*43*********
**43********
***43*******
****43******
*****43*****

FORTY THREE

, or registered assigns (the "Holder"), is entitled to purchase from MHS Holdings Corporation, a Delaware corporation (the "Company"), on any business day during the one-year period (the "Exercise Period") beginning on the earliest to occur of (a) the date 180 days after a registration statement filed under the Securities Act of 1933, as amended (the "Securities Act"), for a public offering by the Company of any class or series of its common stock ("Common Stock") on a firm commitment underwritten basis is declared effective and the Common Stock registered thereby is issued and sold, which public offering results in net proceeds to the Company of not less than $30,000,000, other than a registration statement on Form S-4 relating to an acquisition transaction or on another form relating to certain issuances of Common Stock to employees, officers or directors of the Company or its subsidiaries (including Mohasco Corporation) (an "IPO"), (b) the closing of a merger, consolidation or other business combination by the Company with one or more persons in which the Company is the surviving corporation or a purchase of assets by the Company from one or more other persons, if as a result thereof a class of Common Stock is registered under the Securities Exchange Act of 1934, as amended, (a "Surviving Combination") or (c) September 22, 1994 (the earliest to occur of the foregoing events described in clauses (a) through (c) being referred to as the "Triggering Event"), the number of Warrants to purchase .155636 of a Class A share of Common Stock (a "Warrant Share") shown above at a purchase price per Warrant Share of $.155636 (the "Warrant Price"); *provided, however,* that Warrants may only be exercised to the extent the exercise thereof entitles the Holder to receive a whole number of Class A shares of Common Stock. Outstanding Warrants not exercised prior to 5:00 p.m., Pittsburgh time, on the first anniversary of the Triggering Event shall become void and all rights hereunder and all rights in respect hereof shall cease as of such time.

This Warrant Certificate is issued under and in accordance with the Warrant Agreement dated as of August 15, 1989 (the "Warrant Agreement") between the Company and Pittsburgh National Bank, as warrant agent (the "Warrant Agent") and is subject to the terms and provisions contained in the Warrant Agreement, to all of which the Holder of this Warrant Certificate by acceptance hereof consents. The Warrant Agreement is hereby incorporated herein by reference and made a part hereof. A copy of the Warrant Agreement may be obtained by the Holder hereof upon written request to the Company or the Warrant Agent.

The Warrants are callable by the Company at any time, or from time to time, after (i) the occurrence of a Change In Control of the Company (as defined in the Warrant Agreement) or (ii) September 22, 1992, if the Warrants are not then immediately exercisable. If the Company exercises its call rights with respect to Warrants pursuant to clause (i) and the Change In Control of the Company provides for the payment to all stockholders of Market Value Consideration (as defined in the Warrant Agreement), then the call price per Warrant will be equal to the Market Spread (as defined in the Warrant Agreement), all as more fully described in the Warrant Agreement. If the Company exercises its call rights with respect to Warrants pursuant to clause (i) and the Change In Control of the Company does not provide for the payment to all stockholders of Market Value Consideration, then the call price per Warrant will be equal to the Appraised Spread, (as defined in the Warrant Agreement). If the Company exercises its call rights with respect to Warrants pursuant to clause (ii), the call price per Warrant will be equal to the Appraised Spread, all as more fully described in the Warrant Agreement.

In the event (i) the Warrants are not then immediately exercisable, (ii) a Change In Control of the Company has occurred and (iii) the Company has not exercised its call rights described above with respect to all outstanding Warrants, the Company shall be obligated to offer to repurchase for cash all outstanding Warrants in either one or three separate annual transactions (each, a "Repurchase Offer") on the terms and subject to the conditions set forth in the Warrant Agreement. The Holder hereof may, but shall not be obligated to, accept each such Repurchase Offer. In the event that the Company's consummation of a Repurchase Offer would violate the provisions of applicable law or result in a default under any of its indentures, mortgages, loan agreements or other agreements or instruments, or in the event the payment of a dividend or an advance by Mohasco Corporation ("Mohasco") to permit the Company to pay the repurchase price in a Repurchase Offer would violate the provisions of any law, rule or regulation applicable to Mohasco, or result in a default under any of Mohasco's indentures, mortgages, loan agreements or other agreements or instruments, the Company need not make a Repurchase Offer or, if such Repurchase Offer has commenced, the Company may terminate such Repurchase Offer. If all limitations upon the Company's ability to repurchase Warrants are removed prior to the Expiration Date and, at the time, no IPO or Surviving Combination has occurred, the Company's repurchase obligations shall be reinstated as provided in the Warrant Agreement.

Warrants may be exercised in whole or in part by surrender of this Warrant Certificate with the Purchase Form on the reverse hereof duly executed accompanied by payment of the Warrant Price at the office designated by the Warrant Agent in Pittsburgh, Pennsylvania or New York City, New York. Payment of such price shall be made by cash or certified or official bank check payable to the order of the Company.

As provided in the Warrant Agreement, the Warrant Price and the number and kind of securities, cash or property which may be purchased upon the exercise of the Warrants evidenced by this Warrant Certificate are, upon the happening of certain events, subject to modification and adjustment.

Upon any partial exercise of the Warrants evidenced by this Warrant Certificate, there shall be countersigned and issued to the Holder hereof a new Warrant Certificate in respect of the Warrant Shares as to which the Warrants evidenced by this Warrant Certificate shall not have been exercised. This Warrant Certificate may be exchanged at the office designated by the Warrant Agent in Pittsburgh, Pennsylvania or New York City, New York by surrender of this Warrant Certificate properly endorsed either separately or in combination with one or more other Warrant Certificates for one or more new Warrant Certificates evidencing the right of the Holder thereof to purchase the same aggregate number of Warrant Shares as were purchasable on exercise of the Warrants evidenced by the Warrant Certificate or Certificates exchanged. This Warrant Certificate is transferable at the office designated by the Warrant Agent in Pittsburgh, Pennsylvania or New York City, New York in the manner and subject to the limitations set forth in the Warrant Agreement.

The registered Holder hereof on the books of the Company may be treated by the Company and the Warrant Agent as the absolute owner hereof for any purpose and as the person entitled to exercise the rights represented hereby. Prior to the transfer hereof on the books of the Company, any notice to the contrary notwithstanding and until such transfer on such books, the Company may treat the registered Holder hereof on the books of the Company as the owner for all purposes.

Neither the Warrants nor this Warrant Certificate entitles any Holder hereof to any of the rights of a stockholder of the Company.

This Warrant Certificate shall not be valid or obligatory for any purpose until it shall have been countersigned by the Warrant Agent.

Dated:

Countersigned: 09/22/89

PITTSBURGH NATIONAL BANK
as Warrant Agent

By [signature]
Authorized Signature

MHS HOLDINGS CORPORATION CORPORATE SEAL 1988 DELAWARE

Attest: [signature]
Secretary

MHS HOLDINGS CORPORATION
By [signature]
President

AMERICAN BANK NOTE COMPANY

HOLDERS SHOULD BE AWARE THAT THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT AND THAT DENOMINATION OF PAYMENTS RECEIVED ON THIS SECURITY (WHETHER AS INTEREST OR PRINCIPAL) WILL NOT BE DETERMINATIVE FOR FEDERAL INCOME TAX PURPOSES.

REGISTERED

R 435

REGISTERED

$ *****1000*****

# MHS HOLDINGS CORPORATION

**16⅞% SUBORDINATED PAY-IN-KIND DEBENTURE DUE 2004**

CUSIP 553024 AA 8

SEE REVERSE FOR CERTAIN DEFINITIONS

**MHS Holdings Corporation,** a Delaware corporation, promises to pay to

**16⅞% DUE 2004**

LONNIE T EVANS
300 S 9TH AVENUE
DILLON SC 29536

*****1000*****
******1000****
*******1000***

**16⅞% DUE 2004**

or registered assigns, the principal sum of

*ONE THOUSAND*

**DOLLARS**

on the date of maturity.

REGISTERED

Interest Payment Dates: April 1 and October 1
Record Dates: March 15 and September 15
Date of Maturity: September 22, 2004

Dated: 12/01/89

**TRUSTEE'S CERTIFICATE OF AUTHENTICATION**
This is one of the Securities described in the within-mentioned Indenture.
**BANKERS TRUST COMPANY,**
as Trustee
By

Authorized Signature

MHS HOLDINGS CORPORATION CORPORATE SEAL 1988 DELAWARE

**MHS HOLDINGS CORPORATION**

By Treasurer

By President

AMERICAN BANK NOTE COMPANY



Bankers Trust Company
Four Albany Street, New York, New York 10015

Mailing Address:
P.O. Box 318, Church Street Station
New York, New York 10015

April 1, 1990

TO THE HOLDERS OF
MHS HOLDINGS CORPORATION
16 7/8% SUBORDINATED PAY IN KIND DEBENTURES
DUE 2004

MHS Holdings Corporation has elected to pay the April 1, 1990 interest payment for the above captioned issue in additional debentures in lieu of a cash payment. The attached certificate, therefore, represents the amount of interest payable to you on April 1, 1990. The rate per dollar is .088594.

If you have any additional questions or problems relating to this certificate please feel free to contact Jean O'Keefe at Bankers Trust Company at (212)250-6120.

BANKERS TRUST COMPANY,
AS PAYING AGENT

R 000000870 M 03105-0006

HOLDERS SHOULD BE AWARE THAT THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT AND THAT DENOMINATION OF PAYMENTS RECEIVED ON THIS SECURITY (WHETHER AS INTEREST OR PRINCIPAL) WILL NOT BE DETERMINATIVE FOR FEDERAL INCOME TAX PURPOSES.

REGISTERED

R 870

REGISTERED

# MHS HOLDINGS CORPORATION

**16⅞% SUBORDINATED PAY-IN-KIND DEBENTURE DUE 2004**

CUSIP 553024 AA 8

**SEE REVERSE FOR CERTAIN DEFINITIONS**

**MHS Holdings Corporation,** a Delaware corporation, promises to pay to

**16⅞% DUE 2004**

LONNIE T EVANS
300 S 9TH AVENUE
DILLON SC 29536

********88.59******
*********88.59*****
**********88.59****

**16⅞% DUE 2004**

or registered assigns, the principal sum of

*EIGHTY EIGHT 59/100*

**DOLLARS**

on the date of maturity.

REGISTERED

Interest Payment Dates: April 1 and October 1
Record Dates: March 15 and September 15
Date of Maturity: September 22, 2004

Dated: 04/01/90

**TRUSTEE'S CERTIFICATE OF AUTHENTICATION**
This is one of the Securities described in the within-mentioned Indenture.
**BANKERS TRUST COMPANY,**
as Trustee

By
Authorized Signature

MHS HOLDINGS CORPORATE SEAL 1988 DELAWARE

**MHS HOLDINGS CORPORATION**

By
Treasurer

By
President

AMERICAN BANK NOTE COMPANY.



HOLDERS SHOULD BE AWARE THAT THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT AND THAT DENOMINATION OF PAYMENTS RECEIVED ON THIS SECURITY (WHETHER AS INTEREST OR PRINCIPAL) WILL NOT BE DETERMINATIVE FOR FEDERAL INCOME TAX PURPOSES.

REGISTERED

R 6138

REGISTERED

$ ***91.85***

# MHS HOLDINGS CORPORATION

## 16⅞% SUBORDINATED PAY-IN-KIND DEBENTURE DUE 2004

CUSIP 553024 AA 8

SEE REVERSE FOR CERTAIN DEFINITIONS

**MHS Holdings Corporation,** a Delaware corporation, promises to pay to

**16⅞%**
**DUE 2004**

LONNIE T EVANS
300 S 9TH AVENUE
DILLON SC 29536

***91.85*********
****91.85********
*****91.85*******
******91.85******
*******91.85*****

**16⅞%**
**DUE 2004**

or registered assigns, the principal sum of

**NINETY-ONE AND 85/100**

**DOLLARS**

on the date of maturity.

REGISTERED

Interest Payment Dates: April 1 and October 1
Record Dates: March 15 and September 15
Date of Maturity: September 22, 2004

Dated: 10/01/90

**TRUSTEE'S CERTIFICATE OF AUTHENTICATION**
This is one of the Securities described in the within-mentioned Indenture.
**BANKERS TRUST COMPANY,**
as Trustee
By
Authorized Signature

MHS HOLDINGS CORPORATION CORPORATE SEAL 1988 DELAWARE

**MHS HOLDINGS CORPORATION**

By
Treasurer

By
President

AMERICAN BANK NOTE COMPANY.

53024AA8 R 00006138 LON T EVANS 01 000000000



Four Albany Street, New York, New York 10006

CORPORATE TRUST AND AGENCY GROUP

Mailing Address:
P.O. Box 318, Church Street Station
New York, New York 10008

April 1, 1991

TO THE HOLDERS OF
MHS HOLDINGS CORPORATION
16 7/8% SUBORDINATED PAY-IN-KIND DEBENTURES DUE 2004

MHS Holdings Corporation has elected to pay the April 1, 1991 interest payment for the above captioned issue in additional debentures in lieu of a cash payment. The attached certificate, therefore, represents the amount of interest payable to you on April 1, 1991. The rate per dollar is .084375.

BANKERS TRUST COMPANY,
AS PAYING AGENT

HOLDERS SHOULD BE AWARE THAT THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT AND THAT DENOMINATION OF PAYMENTS RECEIVED ON THIS SECURITY (WHETHER AS INTEREST OR PRINCIPAL) WILL NOT BE DETERMINATIVE FOR FEDERAL INCOME TAX PURPOSES.

REGISTERED

R 7164

AS REQUIRED BY SECTION 1275 OF THE UNITED STATES INTERNAL REVENUE CODE OF 1986 AND THE TREASURY REGULATIONS PROMULGATED THEREUNDER, THE COMPANY SETS FORTH THE FOLLOWING INFORMATION CONCERNING "ORIGINAL ISSUE DISCOUNT" ON THIS SECURITY: (i) THE AMOUNT OF ORIGINAL ISSUE DISCOUNT PER $1,000 PRINCIPAL AMOUNT IS $5,924.99; (ii) THE ISSUE DATE IS SEPTEMBER 22, 1989; (iii) THE YIELD TO MATURITY IS 41.77%; AND (iv) THE AMOUNT OF THE ORIGINAL ISSUE DISCOUNT ALLOCABLE TO THE SHORT ACCRUAL PERIOD ENDING OCTOBER 1, 1989, CALCULATED UNDER THE APPROXIMATE METHOD, IS $1.46 PER $1,000 PRINCIPAL AMOUNT.

HOLDERS SHOULD BE AWARE THAT THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT AND THAT THE DENOMINATION OF PAYMENTS RECEIVED ON THIS SECURITY (WHETHER AS INTEREST OR PRINCIPAL) WILL NOT BE DETERMINATIVE FOR FEDERAL INCOME TAX PURPOSES.

REGISTERED

$

# MHS HOLDINGS CORPORATION

## 16⅞% SUBORDINATED PAY-IN-KIND DEBENTURE DUE 2004

CUSIP 553024 AA 8

SEE REVERSE FOR CERTAIN DEFINITIONS

**MHS Holdings Corporation,** a Delaware corporation, promises to pay to

LONNIE T EVANS
300 S 9TH AVENUE
DILLON SC 29536

***99.60********
****99.60*******
*****99.60******
******99.60*****
*******99.60****

**16⅞%**
**DUE 2004**

**16⅞%**
**DUE 2004**

or registered assigns, the principal sum of

**NINETY-NINE AND 60/100**

**DOLLARS**

on the date of maturity.

REGISTERED

Interest Payment Dates: April 1 and October 1
Record Dates: March 15 and September 15
Date of Maturity: September 22, 2004

Dated: 04/01/91

**TRUSTEE'S CERTIFICATE OF AUTHENTICATION**
This is one of the Securities described in the within-mentioned Indenture.
**BANKERS TRUST COMPANY,**
as Trustee
By

Authorized Signature

MHS HOLDINGS CORPORATION CORPORATE SEAL 1988 DELAWARE

**MHS HOLDINGS CORPORATION**

By

Treasurer

By

President

AMERICAN BANK NOTE COMPANY.

553024AA8 R 00007164 LON T EVANS 01 000000000



Bankers Trust Company
Four Albany Street, New York, New York 10006

CORPORATE TRUST AND AGENCY GROUP

Mailing Address:
P.O. Box 318, Church Street Station
New York, New York 10008
FAX: 212-250-6961/6392

October 1, 1991

TO THE HOLDERS OF
MHS HOLDINGS CORPORATION
16 7/8% SUBORDINATED PAY-IN-KIND DEBENTURES DUE 2004

MHS Holdings Corporation has elected to pay the October 1, 1991 interest payment for the above captioned issue in additional debentures in lieu of a cash payment. The attached certificate, therefore, represents the amount of interest payable to you on October 1, 1991. The rate per dollar is .084375.

BANKERS TRUST COMPANY,
AS PAYING AGENT

REGISTERED

R 9082

HOLDERS SHOULD BE AWARE THAT THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT AND THAT DENOMINATION OF PAYMENTS RECEIVED ON THIS SECURITY (WHETHER AS INTEREST OR PRINCIPAL) WILL NOT BE DETERMINATIVE FOR FEDERAL INCOME TAX PURPOSES.

[RE]QUIRED BY SECTION 1275 OF THE UNITED STATES INTERNAL REVENUE COD[E] [AND] THE TREASURY REGULATIONS PROMULGATED THEREUNDER, THE COMPANY SE[TS] FO[RTH T]HE FOLLOWING INFORMATION CONCERNING "ORIGINAL ISSUE DISCOUNT" ON THIS SECURITY (i) THE AMOUNT OF ORIGINAL ISSUE DISCOUNT PER $1,000 PRINCIPAL AMOUNT IS $5,924.99, (ii) THE ISSUE DATE IS SEPTEMBER 22, 1989; (iii) THE YIELD TO MATURITY IS 41.77%; AND (iv) THE AMOUNT OF THE ORIGINAL ISSUE DISCOUNT ALLOCABLE TO THE SHORT ACCRUAL [P]ERIOD ENDING OCTOBER 1, 1989, CALCULATED UNDER THE APPROXIMATE METHOD, IS $1.46 [PE]R $1,000 PRINCIPAL AMOUNT.

HOLDERS SHOULD BE AWARE THAT THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT AND THAT THE DENOMINATION OF PAYMENTS RECEIVED ON THIS SECURITY (WHETHER AS INTEREST OR PRINCIPAL) WILL NOT BE DETERMINATIVE FOR FEDERAL INCOME TAX PURPOSES.

REGISTERED

$ **108**

# MHS HOLDINGS CORPORATION

## 16⅞% SUBORDINATED PAY-IN-KIND DEBENTURE DUE 2004

CUSIP 553024 AA 8

SEE REVERSE FOR CERTAIN DEFINITIONS

**MHS Holdings Corporation,** a Delaware corporation, promises to pay to

16⅞% DUE 2004

LONNIE T EVANS
300 S 9TH AVENUE
DILLON SC 29536

****108*********
*****108********
******108*******
*******108******
********108*****

or registered assigns, the principal sum of

**ONE HUNDRED EIGHT**

DOLLARS

on the date of maturity.

16⅞% DUE 2004

REGISTERED

Interest Payment Dates: April 1 and October 1
Record Dates: March 15 and September 15
Date of Maturity: September 22, 2004

Dated: 10/01/91

**TRUSTEE'S CERTIFICATE OF AUTHENTICATION**
This is one of the Securities described in the within-mentioned Indenture.
**BANKERS TRUST COMPANY,**
as Trustee
By
Authorized Signature

MHS HOLDINGS CORPORATION CORPORATE SEAL 1988 DELAWARE

By
Treasurer

**MHS HOLDINGS CORPORATION**
By

President

AMERICAN BANK NOTE COMPANY

AA8 R 00009082 LON T EVANS 01 000000000