UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:
INTERNATIONAL HERITAGE, INC.                )
INTERNATIONAL HERITAGE,                     )        CASE NOS.: 98-02675-5-ATS and
INCORPORATED                                )                 98-02674-5-ATS
                        Debtors             )              CHAPTER 7

MOTION TO COMPEL PROVISION OF INFORMATION CONCERNING THE ESTATE

        NOW COMES Acstar Insurance Company ("Acstar"), by and through its
undersigned counsel, and files this motion to compel the Chapter 7 trustee to furnish it with
information concerning the estate and the estate's administration in accordance with
11 USC § 704(7).  In support of this motion, Acstar shows the Court as follows:

        1.      International Heritage, Inc. and International Heritage, Incorporated filed
voluntary petitions in bankruptcy on November 25, 1998 and Holmes P. Harden was appointed
Chapter 7 trustee.  These cases remain pending.

        2.      On or about March 16, 1998, the Securities and Exchange Commission
("SEC") brought a civil action against the debtors and others titled "Securities and Exchange
Commission v. International Heritage, Inc., Stanley H. Vann Etten, Claude W. Savage, Larry G.
Smith, and International Heritage, Incorporated, a Nevada Corporation," Civil Action
No. 1-98-CV-0803-RWS (the "Civil Action"), in the United States District Court for the
Northern District of Georgia.

        3.      On June 21, 1999, this Court entered an Order Approving Application of
Trustee to Enter into Consent to Final Judgment of Permanent Injunction.  Attached thereto was
an Exhibit A entitled "Consent to Final Judgment of Permanent Injunction as to Defendants
International Heritage, Inc. and International Heritage, Incorporated, a Nevada Corporation."

The Consent to Final Judgment was later entered in the Civil Action on August 24, 1999. These pleadings are attached hereto as "Exhibit A."

4.    As a result of the aforementioned pleadings, the Chapter 7 trustee received approximately $4,315,308.30 in connection with the settlement of the Civil Action. Of those funds, $4.1M was received from Acstar. Those funds were to be used as follows:

a. First, to pay statutory commission under 11 USC § 326(a);

b. Second, to pay allowed administrative claims pursuant to 11 USC §§ 330 and 503;

c. Third, to pay the outstanding fees of Lloyd Whitaker (monitor in the SEC case);

d. Fourth, to pay the following claims *pro rata*:

(i)    Allowed claims filed by independent retail sales representatives (IRSRs) who made payments to IHI and never received a product or commission

AND

(ii)    **Acstar's $300,000.00 "priority" claim**;

e. Fifth, to pay claims of purchasers of IHI convertible notes during 1997;

f. Sixth, to pay other IRSRs; and finally

g. Seventh, to payment other creditors according to the priorities set forth in the Bankruptcy Code.

5.    Acstar has received the following payments from the Trustee:

a.    $75,601.51 check dated January 11, 2008 (first interim payment on claim number 015716, payment 25.20%).

b.    $21,161.27 check dated December 19, 1008 (second distribution of SEC settlement funds, claim number 015716. This payment was also represented in the cover letter to be the "second and final distribution of funds contributed to the estate by the Securities and Exchange Commission." Copies of the checks are attached as "Exhibit B."

6.    Acstar's $300,000.00 priority claim should be paid in full from the proceeds from the settlement of the Civil Action. This is also consistent with this Court's Order

Allowing Objection to Claim filed January 3, 2000 (page 7), a copy of which is attached hereto as "Exhibit C."

       7.     On April 7, 2009, the undersigned sent a letter to the trustee requesting information and documentation relative to the calculation of the disbursements made. A copy of that letter is attached hereto as Exhibit D.

       8.     The trustee responded via email on May 4th as follows: "Paul: No fees were paid to Lloyd Whitaker. The other numbers you want will be set forth in our proposed final distribution later this year. There is no compelling reason why we should essentially go through our entire case closing procedure to get you that information now. We can't just hit a button and make these numbers jump on a screen. Your request is unrealistic and burdensome at this time."

       9.     In order for the Chapter 7 trustee to properly calculate the distribution to Acstar on its priority claim, the trustee would need the requested figures.

      10.     Acstar must confirm it has received proper payment. If the information cannot be provided, Acstar would ask the Court to prohibit any further distribution from this bankruptcy estate until the numbers are provided and verified. 11 USC § 704(a)(7) requires the trustee to furnish such information concerning the estate and the estate's administration as is requested by a party in interest. This request is not unreasonable.

      WHEREFORE, Acstar prays unto the Court as follows:

      1.     For an order compelling the trustee to provide Acstar's counsel with the figures and information requested in its April 7, 2009 letter.

      2.     For an order prohibiting the Chapter 7 trustee from making any distribution until the accuracy of the calculation for the distribution to Acstar has been verified.

      3.     For such other and further relief as to the Court may seem just and proper.

This the 11th day of June, 2009.

/s/ *Paul A. Fanning*
Paul A. Fanning
N.C. State Bar I.D. No.:  025477
E-mail: paf@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC  27835-8088
Telephone:  (252) 215-4000
Facsimile:  (252) 215-4077
Attorneys for Acstar Insurance Company

<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that I have this day served a copy of the foregoing MOTION TO COMPEL PROVISION OF INFORMATION CONCERNING THE ESTATE by electronic notice or by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail addressed to the following person at the following address which is the last address known to me:

        Mr. Holmes P. Harden
        Williams, Mullen, Maup & Taylor
        PO Drawer 19764
        Raleigh, NC  27619-9764

        This the 11th day of June, 2009.


        /s/ *Paul A. Fanning*
        Paul A. Fanning
        N.C. State Bar I.D. No.:  025477
        E-mail:  paf@wardandsmith.com
        For the firm of
        Ward and Smith, P.A.
        Post Office Box 8088
        Greenville, NC  27835-8088
        Telephone:  (252) 215-4000
        Facsimile:  (252) 215-4077
        Attorneys for Acstar Insurance Company


990138-00001-001
ND: 4840-4147-9427, v.  1

# EXHIBIT A

**FILED**

■ 21 1999

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| INTERNATIONAL HERITAGE, INC. | )    CHAPTER 7 |
| | )    CASE NO. 98-02675-5-ATS |
| | ) |
| INTERNATIONAL HERITAGE, | ) |
| INCORPORATED, | )    CHAPTER 7 |
| | )    CASE NO. 98-02674-5-ATS |
| Debtors. | ) |

ORDER APPROVING APPLICATION OF TRUSTEE
TO ENTER INTO CONSENT TO FINAL JUDGMENT
OF PERMANENT INJUNCTION

The Application of Holmes P. Harden, Trustee for the above-captioned debtors,
requesting an order authorizing the execution of a Stipulation and Consent to Final Judgment of
Permanent Injunction having come on for the consideration of the undersigned and the objections
to same of Chittenden Bank, Acstar Insurance Company, the debtors and Stanley H.Van Etten
having been withdrawn as indicated herein, and L.C. Gilbert having presented no evidence or
argument in support of his objection, it appears to the court as follows:

FINDINGS OF FACT

1.     International Heritage, Inc. and International Heritage, Incorporated filed
voluntary petitions in bankruptcy on November 25, 1998 and Holmes P. Harden was appointed
Chapter 7 Trustee.

2.     On or about March 16, 1998, the Securities and Exchange Commission
("*Commission*") brought a civil action against the debtors and others styled *Securities and*

RAL/200435/1

*Exchange Commission v. International Heritage, Inc. Stanley H. Van Etten, Claude W. Savage, Larry G. Smith, and International Heritage Incorporated, a Nevada Corporation*, Civil Action No. 1-98-CV-0803-RWS ("Civil Action"), in the United State District Court for the Northern District of Georgia alleging prepetition violations of the securities laws and seeking a final judgment permanently enjoining debtors from further violation of the law and the establishment of an amount of disgorgement of profits derived from allegedly fraudulent activities and the imposition of civil penalties. A payment bond in the penal sum of $5,000,000 ("*Bond*") issued by ACSTAR Insurance Company and United Coastal Insurance Company (the "*Sureties*") was posted by debtors to satisfy any amounts that may be ordered paid to the Commission in the Civil Action. The Sureties hold $3,500,000 as collateral for the Bond, which amount is refundable only if the debtors prevail in the Civil Action. The bond inures to the benefit of the Commission and is not property of either bankruptcy estate.

3.     The Commission filed proofs of claim dated January 4, 1999 in the International Heritage, Inc. case and in the International Heritage, Incorporated cases in the amount of $6,450,000.00. The claims are unliquidated, contingent, unsecured claims consistent with the Commission's prayer for disgorgement in the above-referenced civil action.

4.     A copy of the Trustee's proposed Consent to Final Judgment of Permanent Injunction settling the Civil Action as to the debtors is attached hereto as Exhibit A and is incorporated herein by reference.

5.     Pursuant to the proposed settlement of the Civil Action, the Commission proposes to authorize disbursement of bond proceeds in the amount of $4.1 million by the Chapter 7 Trustee in the International Heritage, Inc. case and to reduce its claims in each of the bankruptcy

cases by the amount paid by the Sureties to the Clerk of Court for the United States District Court for the Northern District of Georgia for the benefit of the Commission pursuant to a judgment of disgorgement entered against the defendants in the Civil Action and disbursed with the consent and direction of the Commission by the Trustee in the International Heritage, Inc. bankruptcy.

6.      The Sureties have agreed to pay and the Trustee for International Heritage, Inc. has agreed to receive $4.1 million under the Bond and to disburse the proceeds of the Bond in the International Heritage, Inc. bankruptcy case according to Paragraph V of Exhibit A(1) attached hereto. The Commission stipulates that the United States Bankruptcy Court for the Eastern District of North Carolina has jurisdiction pursuant to 28 U.S.C. § 1334 over the administration of the surety bond, and further stipulates that any and all proceeds of such bond shall be first subject to a payment to the Trustee of an amount equal to the full statutory commission permitted pursuant to 11 U.S.C. § 326(a) without reduction notwithstanding the foregoing stipulation that the bond is not property of the IHI estate, and in addition to the aforesaid payment to Trustee, to payment of all allowed IHI administrative claims. It is further agreed that the Sureties shall have claims in the International Heritage, Inc. bankruptcy case as set forth in Paragraph V of Exhibit A(1) attached hereto. The Sureties and the Trustee have also agreed to execute the mutual releases attached hereto as Exhibit B.

7.      The Trustee and the SEC agree that Chittenden Bank shall have an allowed claim in the categories described in Paragraph V of Exhibit A(1) attached hereto (the "Categories") where Chittenden Bank can establish that it has received and paid chargeback requests from credit card holders who would have qualified for an allowed claim in the Categories. The

Categories are "claims of independent retail sales representatives who made payment to either of the debtors and did not receive a product or commission, and allowed claims of purchasers of convertible notes from either debtor in 1997." Chittenden Bank shall receive the same pro-rata distribution on account of its claim as any other holder of an allowed claim in the Categories.

8.    The proposed Consent to Final Judgment of Permanent Injunction is intended to settle the Civil Action only as to the debtors. However, the parties have acknowledged that the settlement between the Debtors and the Commission is contingent upon a corresponding settlement of the Civil Action between the Commission and Stanley H. Van Etten ("Van Etten").

9.    Pursuant to the proposed settlement of the Civil Action, Trustee agrees to waive the attorney-client privilege as to prepetition advice the debtors received from their attorneys. Van Etten does not waive the privilege and does not consent to the Trustee's waiver, but he has agreed to waive argument against the Trustee's waiver to the court. The debtors have withdrawn their objection to the waiver of the privilege.

10.    The above-described settlement of the Civil Action is contingent upon final approval of the Commission, is currently under consideration by the Commission, and is expected to be approved simultaneously with the Commission's approval of a proposed settlement of the Civil Action as to Van Etten. The above-described settlement of the Civil Action is further contingent upon this court's entry of an order approving a compromise and settlement of the Trustee's claims against Van Etten, which shall be the subject of a separate motion by the Trustee and which will be ruled upon by separate order of this court.

11.    Notice of the Trustee's Application was sent to creditors and other parties in interest in accordance with law.

RAL/200435/1                                 4

12.    The Trustee believes the proposed settlement of the Civil Action is fair and reasonable.

CONCLUSIONS OF LAW

13.    The Trustee is authorized to enter into a settlement on behalf of the debtors with court approval.

14.    It is appropriate and consistent with the Trustee's duties to enter into the Consent to Final Judgment of Permanent Injunction with the Commission, which Consent to Final Judgment of Permanent Injunction by its terms reduces the Commission's claims in each International Heritage bankruptcy case by up to $4.1 million in each case, assures the payment of all § 503 and § 330 expenses of administration of the International Heritage, Inc. bankruptcy including payment of allowed professional fees and all other allowed administrative claims, and is given without admitting or denying the factual allegations of the Complaint.

15.    The proposed settlement of the Civil Action is fair and reasonable and is in the best interest of the expeditious administration of the Debtors' estates because it will dispose of significant litigation against the debtors without undue expense, will result in the reduction of a substantial portion of a principal unsecured claim in each of these cases, will fund the payment of administrative expense and other claims, and will return more money to creditors of International Heritage, Inc. than the estates would receive by way of refund of the $3,500,000 posted as collateral for the Bond if the debtors achieved a verdict of no liability in the Civil Action.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that upon approval of the above-described settlement of the Civil Action by the United States Securities and Exchange Commission, upon the Commission's approval of a settlement of the Civil Action as to Van

RAL/200435/1

5

Etten, and upon this court's entry of an order approving a compromise and settlement of the Trustee's claims against Stanley Van Etten, the Trustee shall enter into the Consent to Final Judgment of Permanent Injunction in the form attached hereto as Exhibit A on behalf of the debtor corporations and the Trustee and the Sureties shall execute the mutual releases attached hereto as Exhibit B.

Dated: **JUN 21 1999** _____

_____
United States Bankruptcy Court Judge

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1-98-0803-RWS |
| INTERNATIONAL HERITAGE, INC., STANLEY H. VAN ETTEN, CLAUDE W. SAVAGE, LARRY G. SMITH, and INTERNATIONAL HERITAGE, INCORPORATED, a Nevada Corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### CONSENT TO FINAL JUDGMENT OF PERMANENT INJUNCTION AS TO DEFENDANTS INTERNATIONAL HERITAGE, INC. AND INTERNATIONAL HERITAGE, INCORPORATED, A NEVADA CORPORATION

1.    Defendants International Heritage, Inc. ("IHI") and International Heritage, Incorporated, a Nevada corporation ("IHI Incorporated") submit to the *in personam* jurisdiction of this Court over them, acknowledge service of summons and the Complaint in this matter, admit the jurisdiction of this Court over the subject matter of this action, waive the entry of findings of fact and conclusions of law pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure, and hereby consent to the entry of a Final Judgment of Permanent Injunction ("Order") without further notice in the form annexed hereto and incorporated by reference herein.

RAL/179662/1                    **EXHIBIT A**

2.     Defendants IHI and IHI Incorporated, without admitting or denying any of the allegations of the Commission's Complaint, except as to jurisdiction which they admit, consent to the entry of the order attached as Exhibit A(1) which permanently restrains and enjoins IHI and IHI Incorporated from violating Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933, ("*Securities Act*") 15 U.S.C. 77e(a), 77e(c) and 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("*Exchange Act*"), 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5, thereunder, and permanently restrains and enjoins IHI Incorporated from violating Section 15(d) of the Exchange Act, 15 U.S.C. 78o(d), and Rule 15d-11, 17 C.F.R. 240.15d-11, thereunder, and which requires IHI to pay disgorgement.  IHI further stipulates that although such disgorgement may be paid pursuant to a surety bond posted with the Court on behalf of IHI, such bond is not an asset of the bankruptcy estate of IHI.

3.     Defendants IHI and IHI Incorporated enter into this Consent voluntarily and acknowledge that no promise or threat of any kind whatsoever has been made by Plaintiff Securities and Exchange Commission or any member, officer, agent or representative thereof to induce them to enter into this stipulation and consent.

4.     Defendants IHI and IHI Incorporated waive any right they may have to appeal from the entry of the Order.

5.     Defendants IHI and IHI Incorporated agree that the Order may be presented by the Commission to the Court for signature without further notice.

6.     Defendants IHI and IHI Incorporated agree that this Consent shall be incorporated into the Order with the same force and effect as if fully set forth therein.

RAL/179662/1

7.      Defendants IHI and IHI Incorporated agree that they will not oppose the enforcement of the Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and they hereby waive any objection they may have based thereon.

8.      Defendants IHI and IHI Incorporated hereby understand that the Plaintiff, at its sole and exclusive discretion, may refer this matter or any information or evidence gathered in connection therewith, or derived therefrom, to any person or entity, public or private, having criminal, civil or administrative jurisdiction for action thereby.

9.      Defendants IHI and IHI Incorporated further state that they understand that the Plaintiff cannot and does not confer upon them, or upon any other person or entity, immunity from any criminal proceeding for any actions related to or arising from this or any other matter.

10.      Defendants IHI and IHI Incorporated acknowledge that they have read, understand, and agree to comply with the policy of plaintiff Commission, set forth in 17 C.F.R. § 202.5(e), not to permit a defendant to consent to a judgment or order that imposes a sanction while denying any allegation in the complaint.  Defendants IHI and IHI Incorporated agree not to take any action or make any public statement denying, directly or indirectly, any allegation in the complaint.  Defendants IHI and IHI Incorporated further agree not to take any action or make any public statement which creates, or tends to create, the impression that the complaint is without factual basis.  Nothing in this provision affects said defendants' testimonial obligations or right to take legal positions in other non-Commission litigation.

11.      Defendants IHI and IHI Incorporated agree to and hereby waive the attorney-client privilege with regard to all communications between IHI or IHI Incorporated or their

RAL/179662/1

representatives and any attorney which occurred prior to the appointment of the Chapter 7 Trustee for said defendants, and further agree to remain a party to this litigation for purposes of discovery.

   This the ___ day of January, 1999.

       INTERNATIONAL HERITAGE, INC. and
       INTERNATIONAL HERITAGE, INCORPORATED,
       a Nevada corporation


       By:_____
        Holmes P. Harden, Trustee in Bankruptcy


State of North Carolina

County of _____

   On this ___ day of June, 1999, before me personally appeared Holmes P. Harden, known to me to be the person who executed the foregoing Stipulation and Consent and he acknowledged to me that he executed the same.

   This _____ day of June, 1999.


      _____
      Notary Public

My Commission Expires:


_____

RAL/179662/1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL HERITAGE, INC.,<br>STANLEY H. VAN ETTEN, CLAUDE W.<br>SAVAGE, LARRY G. SMITH and<br>INTERNATIONAL HERITAGE,<br>INCORPORATED, a Nevada corporation,<br><br>Defendants | CIVIL ACTION NO.<br>1-98-CV-0803-RWS |

CONSENT FINAL JUDGMENT OF PERMANENT INJUNCTION
AS TO DEFENDANTS INTERNATIONAL HERITAGE, INC.
AND INTERNATIONAL HERITAGE, INCORPORATED,
A NEVADA CORPORATION

Plaintiff, Securities and Exchange Commission ("Commission"), having filed its complaint in this matter against defendants International Heritage, Inc. ("IHI") and International Heritage, Incorporated, a Nevada corporation ("IHI Incorporated") and others, seeking injunctive and other relief, and defendants IHI and IHI Incorporated having entered general appearances, admitted the jurisdiction of this court over them and over the subject matter of this action, waived entry of findings of fact and conclusions of law pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure with respect to the relief granted in this order, and without admitting or denying any of the allegations of the complaint having consented to the entry of this order, it is hereby,

RAL/200827/1                    **EXHIBIT A(1)**

# I.

ORDERED that defendant IHI, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them be, and they hereby are, permanently restrained and enjoined from, directly or indirectly:

(1)    making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell any securities through the use of any prospectus or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(2)    carrying securities or causing them to be carried through the mails or in interstate commerce, by means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities;

(3)    making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, any interest in securities, unless and until a registration statement is filed with the Commission as to such security, or while a registration statement filed with the Commission as to such security is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. 77h,

in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. 77e(a) and 77e(c). Provided, however, that nothing in the foregoing portion of the preliminary injunction shall apply to any

security or transaction which is exempt from the provisions of Section 5 of the Securities Act, 15 U.S.C. 77e.

## II.

IT IS FURTHER ORDERED that defendant IHI, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, in the offer or sale of securities, by use of any means or instruments of transportation or communication in interstate commerce, or by the mails, be, and they hereby are, restrained from, directly or indirectly:

(1) employing any device, scheme or artifice to defraud;

(2) engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or

(3) obtaining money or property by means of any untrue statement of a material fact, or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,

in violation of Section 17(a) of the Securities Act, 15 U.S.C. 77q(a).

## III.

IT IS FURTHER ORDERED that defendants IHI and IHI Incorporated, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, in connection with the purchase or sale of securities, by use of any means or instrumentalities of interstate commerce, or by the mails or any facility of any national securities exchange, be, and they hereby are, restrained from, directly or indirectly:

(1) employing any device, scheme or artifice to defraud;

RAL/200827/1         3

(2)    engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or

(3)    making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading,

in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5, thereunder.

## IV.

IT IS FURTHER ORDERED that defendant IHI Incorporated, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, be and hereby are, restrained from, directly or indirectly, filing reports with the Commission, on Form 8-K or otherwise, which are false and misleading or fail to disclose material facts necessary to make the statements made not misleading, in violation of Section 15(d) of the Exchange Act, 15 U.S.C. 78o(d), and Rule 15d-11, 17 C.F.R. 240.15d-11.

## V.

IT IS FURTHER ORDERED that disgorgement is set against defendant IHI in the amount of $6,533,179, representing its ill-gotten gains from the scheme described in the complaint, plus prejudgment interest. $4.1 million of said disgorgement may be satisfied from the surety bond which has been posted in this matter, which is not the property of IHI or of the bankruptcy estate of IHI. Payments on the bond shall be made by the surety as follows: $600,000 within 30 days of this Order; an additional $750,000 within 120 days of this Order; an additional $750,000 within 210 days of this Order; and the remaining $ 2 million within 300 days of this Order.  The payments on the bond shall

be deposited into the registry of this Court. However, upon this Court's receipt of such payments by the surety, the clerk of the Court will issue a nonrefundable check in the same amount to the Chapter 7 bankruptcy trustee in In re International Heritage, Inc., Case No. 98-02675-5-ATS (Bankr. E.D.N.C.) (that case and In re International Heritage, Incorporated, Case No. 98-02674-5-ATS (Bankr. E.D.N.C.) hereinafter the "Bankruptcy cases"), to be used first for the payment of his allowed § 326(a) statutory commission without reduction and then for all administrative claims allowed pursuant to §§ 330 and 503 of the United States Bankruptcy Code in the Bankruptcy cases, then for payment of any outstanding fees of Lloyd Whitaker, the monitor in this case, then for pro rata (i) payment of claims by independent retail sales representatives ("IRSRs") of IHI who made payments to IHI and never received a product or commission and (ii) the first $300,000 of any allowed claim which the surety (ACSTAR Insurance Company) may have against the estate; then for claims of purchasers of IHI convertible notes during 1997. To the extent allowed by the Bankruptcy Court, proceeds can be used for pro rata payments to Chittenden Bank based on amounts paid by it to persons in categories i and ii, above, on chargeback requests from such persons as credit card holders. Any remaining proceeds shall thereafter be used to first pay claims of other IRSRs and thereafter to pay the claims of other creditors according to the priorities set forth in the United States Bankruptcy Code. Notwithstanding the foregoing, none of such proceeds shall be used to pay any claims of defendants Stanley H. Van Etten, Claude W. Savage or Larry G. Smith, or of any entity controlled by them, or of any other officer or director of IHI. Any disgorgement paid by the other defendants in this matter may, upon motion by the Commission, be transferred to the trustee for disbursement pursuant to the above terms.

RAL/200827/1

5

## VI.

IT IS FURTHER ORDERED that based upon Defendant IHI's bankruptcy schedules dated __ _____, and Defendant IHI Incorporated's bankruptcy schedules dated _____, both submitted to the Commission, the Court is not ordering IHI or IHI Incorporated to pay a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. 78u(d).  The determination not to impose a civil penalty is contingent upon the accuracy and completeness of each defendant's bankruptcy schedules.  If at any time following the entry of this Final Judgment the Commission obtains information indicating that IHI's or IHI Incorporated's representations in its bankruptcy schedules concerning its assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion, petition this Court for an order imposing a civil penalty payable in the bankruptcy cases, pursuant to 11 U.S.C. § 726(a)(4) if funds are available in accordance with IV, above against such defendant.  In connection with any such petition, the only issues shall be whether the financial information provided by such defendant was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, and the amount of civil penalty to be imposed. [In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering such defendant to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Final Judgment, and the Commission may also request additional discovery.] Such defendant may not, by way of defense to such petition, challenge the validity of this Consent or the

RAL/200827/1

6

Final Judgment, contest the allegation in the Complaint filed by the Commission, or assert that payment of a civil penalty should not be ordered.

## VII.

IT IS FURTHER ORDERED that, pending further order of this court, defendants IHI and IHI Incorporated, their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them, and each of them, are restrained and enjoined from destroying, transferring or otherwise rendering illegible all books, records, papers, ledgers, accounts, statements and other documents employed in any of such defendants' business, which reflect the business activities of any of the defendants, or which reflect the transactions described in the Commission's Complaint.

## VIII.

IT IS FURTHER ORDERED that this Court will retain jurisdiction over this matter and the defendants and will order other and further relief that this Court deems appropriate under the circumstances, and that defendants IHI and IHI Incorporated will remain parties to this case for purposes of discovery.

Done and ordered at _____ o'clock _____ m. this _____ day of _____, 1999 at _____, Georgia.

_____
UNITED STATED DISTRICT JUDGE

AGREED

_____
ACSTAR Insurance Company and
United Coastal Insurance Company
By:

## RELEASE

For valuable consideration, the receipt of which is hereby acknowledged, Acstar Insurance Company and United Coastal Insurance Company and their respective successors and assigns do hereby release, forever discharge and promise never to sue Holmes P. Harden, individually, as Chapter 7 Trustee for International Heritage, Inc., and International Heritage, Incorporated, or as a principal in the law firm of Maupin Taylor & Ellis, P.A., or the law firm of Maupin Taylor & Ellis, P.A., their agents, attorneys, employees, officers, directors, and insurance carriers (together referred to as "Harden") for any and all damages and claims arising from or related to the civil action styled United States Securities and Exchange Commission v. International Heritage, Inc., Stanley H. Van Etten, Claude W. Savage, Larry G. Smith, and International Heritage, Incorporated, a Nevada corporation, in the Northern District of Georgia, Atlanta Division, Civil Action No. 1-98-0803-RWS, including but not limited to Harden's filing of the Application of Trustee to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction (which application was filed in the bankruptcy cases of International Heritage, Inc., Case No. 98-02675-5-ATS and International Heritage, Incorporated, Case No. 98-02674-5-ATS) and any claims relating to the subsequent Consent Order, and any claims against Harden arising from, under, or against Payment Bond No. 7719 dated June 5, 1998 and a related Indemnity Agreement which were executed in connection with the aforesaid civil action.

ACSTAR INSURANCE COMPANY

By:_____

UNITED COASTAL INSURANCE COMPANY

By:_____

RAL/199645/1

**EXHIBIT B**

## RELEASE

For valuable consideration, the receipt of which is hereby acknowledged, Holmes P. Harden, individually and as Chapter 7 Trustee for International Heritage, Inc. and International Heritage, Incorporated does hereby release, forever discharge and promise never to sue Acstar Insurance Company and United Coastal Insurance Company and their respective successors and assigns for any and all damages and claims arising from or relating to the civil action styled <u>United States Securities and Exchange Commission v. International Heritage, Inc., Stanley H. Van Etten, Claude W. Savage, Larry G. Smith and International Heritage, Incorporated, a Nevada Corporation</u>, in the Northern District of Georgia, Atlanta Division, Civil Action No. 1-98-0803-RWS, including but not limited to the filing of a Response to the Application of Trustee to Enter into Stipulation and Consent to Final Judgment of Permanent Injunction by the said Holmes P. Harden and any claims relating to Acstar Insurance Company and United Coastal Insurance Company's original refusal to agree to the Application and pay funds to the United States of America through the Securities and Exchange Commission.

_____ (SEAL)
Holmes P. Harden, Individually and as
   Chapter 7 Trustee for International
   Heritage, Inc. and International
   Heritage, Incorporated

990138-0001-001
GVLMAIN\206359.1

**U.S. Bankruptcy Court for the Eastern District of North Carolina**
U.S. BANKRUPTCY COURT, PO BOX 1441, RALEIGH, NC 27602-1441

In Re a *Petition for Relief under chapter* 7 of *Title 11, U.S. Code*, filed by or against the below-named Debtor(s) on November 25, 1998:

DEBTOR:   **INTERNATIONAL HERITAGE, INC. of 2626 GLENWOOD AVE., #200,**
RALEIGH NC 27608,   SSAN: NA            TAX ID: 56-1921093

CASE NO. **98-02675-5-ATS**

---

**ORDER AND NOTICE
BY THE COURT**

---

## CERTIFICATE OF MAILING

I am a regularly appointed and qualified deputy clerk in the office of the clerk, in and for said court and district, and I hereby certify that a copy of the attached document was mailed in a postage prepaid envelope addressed to the following at their respective addresses, by placing said envelope in the regular mail in Raleigh, NC, on this date.

DATED:   **JUN 21 1999**

_Arvar Moell_
DEPUTY CLERK

INTERNATIONAL HERITAGE, INC.
2626 GLENWOOD AVE., #200
RALEIGH, NC 27608

Terri L. Gardner
P. O. Box 26268
Raleigh,   NC 27611-6268

Holmes P. Harden
P.O. Box 17169
Raleigh,   NC 27619

Paul A. Fanning
Post Office Box 8088
Greenville, NC   27835-8088

N. Hunter Wyche, Jr.
Post Office Box 12347
Raleigh, NC   27605

Brent Wood
Post Office Box 164
Raleigh, NC   27602

Louis P. Rochking
One Woodward Ave.
Suite 2400
Detroit, MI  48226

Kathryn N. Koonce
Post Office Box 10096
Raleigh, NC  27605-0096

Ronald H. Garber
Post Office Drawer 1429
Raleigh, NC  27602

Lloyd W. Gathings
Robert W. Shores
Post Office Box  10545
Birmingham, AL  35202-0545

Susan R. Sherrill
U.S. Securities & Exchange Commission
Suite 1000
3475 Lenox Rd, NE
Atlanta, GA 30326-1232

GA

# **EXHIBIT B**



Holmes P. Harden, Trustee for IHI
P.O. Box 536
Benson, NC 27504

OONN 0000195 00000000 001 001 00195 INS: 0 0

ACSTAR INSURANCE COMPANY
C/O MICHAEL FLANAGAN /PAUL FANNING
POST OFFICE BOX 8088
GREENVILLE, NC 27835-8088

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                    )
                                          )    CASE NO.:  98-02675-5-ATS
INTERNATIONAL HERITAGE, INC.,             )
                                          )    CHAPTER 7
          Debtor                          )

The attached check payable to ACSTAR INSURANCE COMPANY is an interim payment for the claim 015716. Please cash this check upon receipt to avoid any delays in future distributions.

I0331 v0.02

---

ORIGINAL DOCUMENT IS PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER   DO NOT CASH IF THE WORD VOID IS VISIBLE

Holmes P. Harden, Trustee for IHI                                   CHECK NUMBER          32-1
P.O. Box 536                          **BANK OF AMERICA**            0000010094            ----
Benson, NC 27504                                                                          1110

| CASE NUMBER | DEBTOR |
|---|---|
| 98-02675-5-ATS | International Heritage, Inc. |

DATE OF CHECK
01/11/2008

**PAY:**  Seventy Five Thousand Six Hundred One DOLLARS and 51 CENTS

CHECK AMOUNT
$75,601.51
VOID AFTER 90 DAYS

**PAY TO THE ORDER OF:**  ACSTAR INSURANCE COMPANY
C/O MICHAEL FLANAGAN /PAUL FANNING
POST OFFICE BOX 8088
GREENVILLE, NC 27835-8088

**MEMO:** 1st interim payment on Claim 015716, Payment 25.20%

Trustee
THIS CHECK VOID AFTER 90 DAYS

DOCUMENT CONTAINS A TRUE WATERMARK  DO NOT CASH IF THE WATERMARK IS NOT VISIBLE. SEE REVERSE SIDE FOR COMPLETE SECURITY FEATURES

⑈"0000010094"⑈ ⑆⑈11100001⑉⑆ 375 384 6835"⑈

Holmes P. Harden, Trustee for IHI
P.O. Box 536
Benson, NC 27504



000 0000207 00010100 001 001 00207 INS: 0 0

ACSTAR INSURANCE COMPANY
C/O MICHAEL FLANAGAN /PAUL FANNING
POST OFFICE BOX 8088
GREENVILLE NC  27835-8088

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.:  98-02675-5-ATS |
| INTERNATIONAL HERITAGE, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |

This is the second and final distribution of funds contributed to the estate by the Securities and Exchange Commission. There will be a final distribution of estate funds after October, 2009. All correspondence must be in writing to Holmes P. Harden, Trustee for IHI, P. O. Box 536, Benson, NC 27504.   Please cash the check within 90 days or the check will be issued to the U. S. Bankruptcy Court as unclaimed dividends.

I0331 v0.04

Holmes P. Harden, Trustee for IHI
P.O. Box 536
Benson, NC 27504

**BANK OF AMERICA**

CHECK NUMBER
0000001220

32-1
1110

| CASE NUMBER | DEBTOR |
|---|---|
| 98-02675-5-ATS | International Heritage, Inc. |

DATE OF CHECK
12/19/2008

**PAY:**  Twenty One Thousand One Hundred Sixty One DOLLARS and 27 CENTS

CHECK AMOUNT
$21,161.27
VOID AFTER 90 DAYS

PAY TO THE ORDER OF:  ACSTAR INSURANCE COMPANY
                      C/O MICHAEL FLANAGAN /PAUL FANNING
                      POST OFFICE BOX 8088
                      GREENVILLE NC  27835-8088

**MEMO:** 2nd Distribution of SEC Funds Settlement Funds, Claim #015716

Trustee

THIS CHECK VOID AFTER 90 DAYS

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

FILED

JAN 3 2000

PEGGY B. DEANS, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF N.C.

IN RE:                                    CASE NO.

INTERNATIONAL HERITAGE, INC.,             98-02675-5-ATS

INTERNATIONAL HERITAGE,                   98-02674-5-ATS
INCORPORATED,

        DEBTORS

## ORDER ALLOWING OBJECTION TO CLAIM

The matter before the court is the objection filed by Holmes P. Harden, chapter 7 trustee for International Heritage, Inc. and International Heritage, Incorporated, to the amended proof of claim filed by ACSTAR Insurance Company. A hearing was held in Raleigh, North Carolina on December 2, 1999. The objection will be allowed.

International Heritage, Inc. and International Heritage, Incorporated (together "IHI") both filed petitions for relief under chapter 7 of the Bankruptcy Code on November 25, 1998. Holmes P. Harden was appointed trustee in each case.

At the time of the bankruptcy petitions, IHI and its principals were defendants in a civil action brought by the Securities and Exchange Commission in the United States District Court for the Northern District of Georgia. Securities and Exchange Commission v. International Heritage, Inc., Stanley H. Van Etten, Claude W. Savage, Larry G. Smith, and International

Heritage, Incorporated, a Nevada Corporation, Civil Action No. 1-98-CV-0803-RWS.

In July 1998, ACSTAR and United Coastal Insurance Company posted a $5,000,000 surety bond with the District Court "to assure that the liquid assets of Principal [IHI] are not diminished during the pendency in the action" and to assure "that such FIVE MILLION DOLLARS sum will be available to satisfy any amounts that may be ordered paid by Principal [IHI] in the above proceeding." (Payment Bond No. 7719, Attached to ACSTAR's Amended Proof of Claim). IHI signed an indemnity agreement in favor of ACSTAR and United, and $3,500,000 in cash was paid to ACSTAR as collateral.

Mr. Harden, IHI's trustee, negotiated an agreement with the SEC and applied to this court for authority to settle the civil action in the Northern District of Georgia. ACSTAR, which would have been responsible for paying up to $5,000,000 of any judgment in the civil action, objected, and a hearing was scheduled for May 5, 1999. At the hearing, the court suggested that mediation might be helpful in bringing about a "global" resolution of the disputes involving IHI, IHI's principals, the SEC, ACSTAR, and other objecting creditors.

The court was advised that an agreement had been reached, and on June 21, 1999, the court entered an Order Approving Application of Trustee to Enter into Consent to Final Judgment of Permanent Injunction that authorized the trustee to settle the civil action pending in the Northern District of Georgia. U.S. District Judge Richard W. Story approved the settlement and a Consent Final

Judgment of Permanent Injunction as to Defendants International Heritage, Inc. and International Heritage, Incorporated, a Nevada Corporation was entered on September 20, 1999.

The final judgment provided that IHI would disgorge $6,533,179, but that ACSTAR would only have to pay $4,100,000 under the $5,000,000 payment bond. Additionally, even though ACSTAR held cash collateral of $3,500,000, it was allowed to pay the $4,100,000 obligation in installments.

The SEC was not the only entity making claims against IHI for securities violations, and ACSTAR was not the only insurer with exposure for IHI's obligations.  IHI and its principals were insured under a $5,000,000 Directors and Officers Liability Insurance Policy issued by Executive Risk Specialty Insurance Co. Although Executive Risk paid $500,000 in attorney's fees defending claims against IHI and its principals, it denied coverage under the policy, and two proceedings to determine the extent of Executive Risk's liability were pending.  Executive Risk Specialty Ins. Co. v. International Heritage, et. al., Case No. 5:98-CV-542-F(3)(E.D.N.C.) and Holmes P. Harden, Trustee in Bankruptcy for International Heritage, Inc. v. Executive Risk Specialty Ins. Co., Adversary Proceeding No. S-99-00015-5-AP (Bankr. E.D.N.C.).

The trustee negotiated an agreement with Executive Risk that provided that Executive Risk would pay $1,787,500 to the trustee, and on August 9, 1999, Mr. Harden applied to the court for authority to settle the two pending law suits. ACSTAR objected to the settlement on the ground that it claimed a security interest in

3

the proceeds of the settlement and wanted assurances that its security interest would be recognized.  The trustee argued that ACSTAR did not have a perfected security interest in the insurance proceeds, and the settlement was approved on September 27, 1999, with the understanding that the dispute regarding ACSTAR's interest in the proceeds would be determined at a later date.

ACSTAR, which had previously filed a proof of claim on March 18, 1999, filed an amended proof of claim in which it asserted that pursuant to the payment bond and indemnity agreement, it has a claim of $805,781.41, and that the claim is secured by a perfected security interest in the proceeds realized from the Executive Risk settlement.  ACSTAR's secured claim is also based on principles of subrogation.  The trustee filed an objection to ACSTAR's amended proof of claim, and the hearing was held on December 2, 1999.

The trustee argues that ACSTAR does not have a perfected security interest in the proceeds from the Executive Risk settlement, and the court agrees.

The Indemnity Agreement in favor of ACSTAR provides that IHI will hold ACSTAR harmless from all liability on the payment bond. (Indemnity Agreement para. 2, Attachment to Amended Proof of Claim).  The Indemnity Agreement also provides in paragraph 6 that

> The Indemnitors hereby transfer, assign, pledge and convey to the Surety a security interest in 1) all equipment, tools and material in which the Indemnitor, have any interest, whether on site or elsewhere or on order; 2) all sums due or to become due to Indemnitors or any of them in connection with any contract; and 3) all subcontracts let by Indemnitors in connection with any contract.

4

Clearly, ACSTAR does not have a valid perfected security interest in the insurance settlement proceeds under Article 9 of the Uniform Commercial Code as enacted in North Carolina.  It is doubtful that the description contained in the Indemnity Agreement "all sums due or to become due . . . in connection with any contract" is sufficient to create a security interest in the Executive Risk insurance policy, but, in any event, ACSTAR never filed a financing statement.  N.C. GEN. STAT. § 25-9-302.  ACSTAR maintains that a financing statement was not required under North Carolina General Statute § 25-9-104(g), but ACSTAR has offered no evidence of any other form of perfection.  There is no loss payable clause, no written assignment of the policy, and no evidence that Executive Risk was ever notified of ACSTAR's security interest.

According to ACSTAR, it has an equitable lien that arises under principles of equitable subrogation, and the lien is not subject to Article 9 of the Uniform Commercial.  However, the equities in this case do not justify an equitable lien in favor of ACSTAR.  There are circumstances in which a surety is allowed an equitable lien on contract proceeds, but typically those situations involve contracts directly related to payments or performance under the bond.  The Executive Risk policy has no connection with the payment that ACSTAR agreed to make under its bond.  The policy proceeds are property of the debtors' estates and do not arise from and are not related to ACSTAR's undertaking under the payment bond.

ACSTAR maintains that the Executive Risk policy protected IHI from liability related to securities law violations, and since

5

ACSTAR's liability arose from IHI's securities law infractions, ACSTAR is entitled to the insurance proceeds. Nevertheless, the SEC was not the only entity with claims against IHI based on violations of securities laws, and ACSTAR has no entitlement to the insurance proceeds. It would be inequitable and unfair to the victims of IHI's securities law infractions to allow ACSTAR to claim the Executive Risk proceeds. ACSTAR was a resource for redressing the losses of those injured by IHI but IHI's victims have not been paid in full, and it would be unjust to permit ACSTAR to invade other sources available to those who have been harmed by IHI's actions.

According to ACSTAR, Executive Risk should have paid the SEC judgment before ACSTAR's bond could be called. It is true that the terms of the Payment Bond required that IHI's assets be applied to the judgment before ACSTAR was required to make payment, but notwithstanding that provision, ACSTAR agreed to pay $4,100,000 to settle its obligations under the bond.

At the hearing on May 5, 1999, the court suggested that the parties attempt to reach a "global" settlement through mediation. The parties, including ACSTAR, agreed to mediate, and the court was advised that an agreement had been attained. The court was under the impression that a comprehensive settlement was what was being presented for approval, and that is what the court authorized.

The form of the release to be signed by ACSTAR was attached to the agreement presented to the court for approval, but the release was changed by ACSTAR before it was executed.

6

Nevertheless, under either version of the release, ACSTAR's claims against IHI arising from the payment bond are extinguished except as specifically provided in the settlement agreement.

According to ACSTAR, its release only absolves the trustee from his personal liability and does not affect ACSTAR's rights against the bankruptcy estates. It appears that prior to the settlement, ACSTAR notified the trustee that it would hold him and his law firm personally responsible for any loss ACSTAR sustained as a result of the proposed settlement with the SEC. Understandably, the trustee insisted on a release from personal liability as part of the settlement, but it would have been entirely improper for the trustee to compromise assets of the estates solely to gain a release for himself. Certainly ACSTAR could not have expected the court to have approved such an arrangement.

The trustee is the representative of the IHI bankruptcy estates, and the settlement with ACSTAR resolved the estates' claim against ACSTAR and ACSTAR's claim against the estates. ACSTAR agreed to pay $4,100,000 which is less than the full amount of the $5,000,000 payment bond. Additionally, ACSTAR was allowed to pay $4,100,000 in installments and to retain the income from the $3,500,000 cash collateral that it holds. Finally, ACSTAR was to have a $300,000 claim against the proceeds paid to the IHI trustee from the SEC settlement that has payment priority that assures the claim will be paid in full.

7

According to the terms of the settlement as approved by this court on June 21, 1999, ACSTAR was to have "claims in the International Heritage, Inc. bankruptcy case as set forth in Paragraph V of Exhibit A(1) attached hereto." (Order Approving Application of Trustee to Enter into Consent to Final Judgment of Permanent Injunction at p. 3). Exhibit A(1) to the approved settlement is a draft of the final judgment that was signed by Judge Story. Judge Story's order provided that after ACSTAR's $300,000 claim is paid, the next classes to be paid from the SEC settlement proceeds are the claims of 1997 purchasers of IHI convertible notes, followed by the claims of other independent retail sales representatives. (Consent Final Judgment of Permanent Injunction as to Defendants International Heritage, Inc. and International Heritage, Incorporated, a Nevada Corporation at p. 6). ACSTAR's claim to the SEC settlement proceeds in excess of the priority claim for $300,000 is subordinate to the claims of purchasers of convertible notes in 1997 and the claims of independent sales representatives.

The settlement approved by this court and Judge Story's order also provide that any other disgorgement may be transferred to the trustee and be disbursed pursuant to the same terms. (Consent Final Judgment at p. 6). Consequently, ACSTAR's claim with respect to other funds received by the trustee is also subordinate to the claims of purchasers of convertible notes and to the claims of independent sales representatives. Subordination of ACSTAR's claim

8

is consistent with a comprehensive settlement and with the terms of the release and Judge Story's order.

Accordingly, the trustee's objection to the amended proof of claim filed by ACSTAR is **ALLOWED**.

**SO ORDERED**.

DATED:   **0 3** JAN 2000

A. Thomas Small
Bankruptcy Judge

9

# **EXHIBIT D**

*File*

 **WARD AND SMITH, P.A.**

PAUL A. FANNING, Attorney at Law

Post Office Box 8088
Greenville, NC  27835-8088
Overnight Delivery:
120 West Fire Tower Road
Winterville, NC  28590

P: 252.215.4027
F: 252.215.4077
paf@wardandsmith.com

April 7, 2009

<u>VIA E-MAIL</u>
<u>ORIGINAL VIA U.S. MAIL</u>

Mr. Holmes P. Harden
Williams Mullen Maupin Taylor
PO Drawer 19764
Raleigh, NC  27619-9764

**COPY**

RE:    International Heritage, Inc.
       Chapter 7 Case No. 98-02675-5-ATS
       Our Client: ACSTAR Insurance Company
       Our File 990138-00001-001

Dear Holmes:

I hope this letter finds you well.  Our client has asked me to investigate the status of its allowed claims in the referenced bankruptcy case.  In accordance with the bankruptcy court's Order Approving Application of Trustee to Enter into Consent to Final Judgment of Permanent Injunction filed on June 21, 1999, our client received an elevated claim in the amount of $300,000.00.  Our client received $75,601.51 in January 2008 and $21,161.27 in January 2009.

It has taken me some time to review the pleadings from the SEC litigation in the Northern District of Georgia (98-CV-0803-RWS), the above-referenced Order, and more than 18,400 documents filed in the referenced bankruptcy case.  My investigation reveals the following, and I am hopeful that you can fill in the blanks.

The bankruptcy estate has received $4,315,308.30 in connection with the SEC settlement.  In accordance with the Consent Final Judgment approved by the bankruptcy court and entered in the Northern District of Georgia, that amount was to be distributed as follows:

    1.      First, to pay your statutory commission under 11 USC § 326(a);

ASHEVILLE        GREENVILLE        NEW BERN        RALEIGH        WILMINGTON

www.wardandsmith.com

WARD AND SMITH, P.A.

April 7, 2009
Page 2

2.   Second, to pay allowed administrative claims pursuant to 11 USC §§ 330 and 503;

3.   Third, to pay the outstanding fees of Lloyd Whitaker (monitor in the SEC case);

4.   Fourth, to pay the following claims pro rata:

(i)   Allowed claims filed by independent retail sales representatives (IRSRs) who made payments to IHI and never received a product or commission

AND

(ii)   ACSTAR's $300,000.00 "priority" claim;

5.   Fifth, to pay claims of purchasers of IHI convertible notes during 1997;

6.   Sixth, to pay other IRSRs; and finally

7.   Seventh, to payment other creditors according to the priorities set forth in the Bankruptcy Code.

I was not able to find any pleading, document, order or other authority directing or approving any distribution. Therefore, I am hoping that you will provide me with the following numbers to satisfy our client's inquiry:

1.   Statutory commission;

2.   Allowed administrative claims;

3.   Fees paid to Lloyd Whitaker; and

4.   Allowed claims of IRSRs who were determined to have made payments to IHI but never received a product or commission

With these numbers, I can properly report to our client whether they have received all that they are entitled to in connection with their "priority" claim allowed by the bankruptcy court. Thank you in advance for your time and consideration and for providing this information.

Yours very truly,

Paul A. F——

PAF:admin
ND: 4850-0130-4579, v. 1
cc:   Mr. Gary Case

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION


N RE:
INTERNATIONAL HERITAGE, INC.          )
INTERNATIONAL HERITAGE,               )          CASE NOS.:  98-02675-5-ATS and
INCORPORATED                          )                  98-02674-5-ATS
                    Debtors           )                  CHAPTER 7


**NOTICE OF MOTION AND**
**OPPORTUNITY FOR HEARING**
**AND**
**CERTIFICATE OF SERVICE**


NOTICE IS HEREBY GIVEN of the Motion to Compel Provision of Information Concerning the Estate filed simultaneously herewith by the attorney for Acstar Insurance Company in the above-captioned case; and,

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided that no response and request for a hearing is made by the Debtors or other party in interest in writing to the Clerk of this Court within fifteen (15) days from the date of this Notice; and,

FURTHER NOTICE IS HEREBY GIVEN that if a response and a request for hearing is filed by the Debtor or other party in interest named herein in writing within the time indicated, a hearing will be conducted on the Motion and response thereto at a date, time and place to be later set by this court and all interested parties will be notified accordingly.  If no request for a hearing is timely filed, the Court may rule on the Motion and response thereto ex parte without further notice.

This the 11th day of June, 2009.

/s/*Paul A. Fanning*_____
Paul A. Fanning
N.C. State Bar I.D. No.:  025477
E-mail:  paf@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC  27835-8088
Telephone:  (252) 215-4000
Facsimile:  (252) 215-4077
Attorneys for Acstar Insurance Company

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing MOTION and NOTICE OF MOTION by electronic notice through CM/ECF or by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail addressed to the following person at the following address which is the last address known to me:

Mr. Holmes P. Harden
Williams, Mullen, Maup & Taylor
PO Drawer 19764
Raleigh, NC  27619-9764

I certify under penalty of perjury that the following is true and correct.

This the 11th day of June, 2009.


/s/*Paul A. Fanning*
Paul A. Fanning


730098-11371-001
ND: 4821-3792-1027, v.  1